## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-_____ (____) |
| | ) |
| Debtors.[1] | ) (Joint Administration Requested) |
| | ) |
| | ) |

### MOTION OF DEBTORS FOR INTERIM AND
### FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) PAY
### THEIR PREPETITION INSURANCE PROGRAMS OBLIGATIONS
### AND (B) MAINTAIN THEIR POSTPETITION INSURANCE PROGRAMS

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

### RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Interim Order***") and **Exhibit B** (the "***Proposed Final Order***," and together with the Proposed Interim Order, the "***Proposed Orders***"), respectively, authorizing, but not directing, the Debtors to: (a) pay or setoff prepetition claims arising under their ordinary course Insurance Programs (as defined below), if any, and (b) maintain their Insurance Programs in the ordinary course postpetition.

### JURISDICTION

2.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), and 363(c) of the Bankruptcy Code (as defined below) and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

3.      On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in these cases, and no committees have been appointed.

4.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* (the "***Welch Declaration***") filed contemporaneously herewith, which is fully incorporated herein by reference.

RLF1 24127380v.1

## THE DEBTORS' INSURANCE PROGRAMS

5.        In the ordinary course of business, the Debtors maintain certain insurance policies that are administered by various insurers (the "***Insurers***"), which provide coverage to the Debtors for, among other things, third-party liability (including but not limited to products hazard, completed operations hazard, and general liability), crime, casualty, cargo, worker's compensation[2] and employer's liability, directors' and officers' liability,[3] first-party property losses, and various other liability and property losses, liabilities, and claims (such insurance policies issued for the policy periods that include the filing date are referred to herein collectively as the "***Insurance Policies***")[4].  The majority of the Insurance Policies are held in the name of Debtor Mallinckrodt plc and cover both the Debtors and their non-Debtor affiliates as subsidiaries of Mallinckrodt plc, but certain insurance policies are held by other Debtors directly.  A detailed list of the Insurance Policies is attached hereto as **Exhibit C**.[5]  The Insurance Policies are essential to the preservation of the Debtors' businesses, property, and assets, and, in some cases, the coverage may be required by law or regulation, or obligated by contract.  The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry.

---

[2]    The Debtors have separately sought authorization to honor their obligations under their workers' compensation programs (including making prepetition payments associated with insurance premiums) as part of the contemporaneously filed *Motion of Debtors for Interim and Final Orders Authorizing the Debtors to (a) Pay Certain Employee Compensation and Benefits, (b) Maintain and Continue Such Benefits and Other Employee Related Programs, (c) Pay Prepetition Claims of Contracted Labor, and (d) Granting Related Relief from the Automatic Stay With Respect to Workers' Compensation Claims*.  While the Debtors have included reference to their workers' compensation insurance programs and the attendant premiums associated with that coverage in this Motion, they are not seeking authority to pay those amounts in this Motion.

[3]    Prior to the Petition Date, the Debtors purchased six years of runoff or "tail" coverage for the D&O policies covering the period from June 28, 2018 to June 28, 2019 and the period from June 28, 2019 to June 28, 2020.

[4]    The Debtors also have insurance coverage for prior policy periods that, for the avoidance of doubt, are not subject to this Motion.

[5]    The Debtors request authority to honor obligations and renew all insurance policies, as applicable, notwithstanding any failure of the Debtors to include a particular insurance policy on **Exhibit C**.  The Debtors reserve the right to supplement this list as appropriate in the event that any Insurance Policy was inadvertently omitted.

6.     The Debtors and their non-Debtor affiliates typically obtain the Insurance Policies through Aon Risk Services Central, Inc. ("**Aon**") and Marsh USA Inc. ("**Marsh**" and, together with Aon, the "**Brokers**"), pursuant to (a) that certain Engagement Letter Amendment #7 between Aon and Mallinckrodt plc covering the period from September 28, 2020 to September 28, 2021 (the "**Aon Policy Contract**"), (b) that certain Statement of Work No. 6 to Master Service Agreement between Aon and Mallinckrodt LLC covering the period from December 31, 2019 to December 30, 2020 (the "**Aon Services Contract**" and, together with the Aon Policy Contract, the "**Aon Broker Contracts**"), and (c) that certain Agreement between Marsh and Mallinckrodt plc covering the period from June 28, 2020 through June 27, 2021 (the "**Marsh Broker Contract**" and, together with the Aon Broker Contracts, the "**Broker Contracts**").   The Broker Contracts are generally renegotiated annually at contract expiration to take into account changes in coverage requirements.   The Brokers assist in obtaining comprehensive insurance coverage and provide related services, including procuring and negotiating the Insurance Policies on advantageous terms and at competitive rates.

7.     In exchange for the receipt of these services, the Debtors are obligated to pay certain fees.   The Aon Broker Contracts provide for fees payable to Aon of (a) $175,000 under the Aon Policy Contract, paid in two equal installments,[6] for services related to covered policy placements and administration and (b) $73,000 *plus* reimbursable expenses under the Aon Services Contract for consultant support for property loss control engineering including technical engineering advice in risk control assessment and evaluation, maintenance and repair of buildings, building safety systems including sprinkler and ventilation systems, and protection processes and procedures.   The

---

[6]   The Debtors paid the first installment upon renewal of the Aon Policy Contract, and the remaining $87,500 is due on April 1, 2021.

fees under the Aon Services Contract are paid annually when the contract is renewed and the reimbursable expenses are paid at the end of the term.  For the current service years, the Debtors have incurred approximately $160,500 in costs related to fees and expenses under the Aon Broker Contracts.

8.      Similarly, the Marsh Broker Contract provides for an annual fee of $200,000, payable in equal quarterly installments to Marsh, for primary casualty broking and consulting for certain insurance products, including automobile and general liability, products liability,  workers compensation, and multinational advisory services.[7]  From June 28, 2020 through the Petition Date, the Debtors have incurred approximately $50,000 in costs related to this fee.

9.      As part of the Insurance Programs and in order to maintain certain of the Insurance Policies and to comply with state and local laws, the Debtors have certain risk engineering services audits and inspections performed by third-parties One CIS Insurance Company ("*One CIS*") and Westport Insurance Corporation, a subsidiary of Swiss Re AG (together, the "***Insurance Services Providers***").  The Insurance Services Providers provide risk engineering services audits to identify and mitigate risks associated with the Debtors operations, and also conduct inspections of certain property and equipment, such as boilers and pressure vessels.  The Insurance Services Providers work with the Debtors to address and mitigate any issues, and also report back to the Brokers, Insurers and their underwriters, and local and state governmental units, if applicable.  For these services, the Debtors pay (i) One CIS $28,400 per year pursuant to that certain Boiler and Pressure Vessel Inspection Quotation dated September 29, 2020, which will come due during the interim period, and (ii) Westport Insurance Corporation $100,000 per year as part of Insurance Policy

---

[7]     The Marsh Broker Contract also includes commission-based fees that are fully earned at time of placement and paid as part of the premium.

NAP 2003715 00.  Failure to pay the obligations owed to the Insurance Services Providers could result in the Debtors being noncompliant with certain Insurance Policies and state and local laws, each of which could cause the Debtors to lose coverage under their Insurance Policies or cause the Debtors to shut down operations within those jurisdictions.

10.     The manner in which the Debtors pay premiums, Brokers' fees, and other costs associated with the Insurance Policies depends on the Insurance Policy.  For Insurance Policies held in the name of a Debtor other than Mallinckrodt plc, the named insured Debtor pays the applicable Broker or Insurer directly.  The majority of the Debtors' Insurance Policies, however, are held in the name of Debtor Mallinckrodt plc and provide coverage for the Debtors and non-Debtor affiliates as subsidiaries of the named insured.  Therefore, Mallinckrodt plc pays the Insurer, Broker (which in turn pays the applicable Insurer), or Insurance Services Provider on account of the collective insurance related obligations of itself, the Debtors, and certain of their non-Debtor affiliates.  As described in the Cash Management Motion,[8] the Debtors and the non-Debtor affiliates are thereafter obligated to reimburse Debtor Mallinckrodt plc (either directly or indirectly)[9] for their allocated share of such amounts on a monthly basis.  In some instances, Debtor Mallinckrodt plc may setoff amounts owed by non-Debtor affiliates on account of these obligations against amounts owed by Mallinckrodt plc to such non-Debtor affiliates in lieu of making cash transfers on account of their obligations.  For the avoidance of doubt, by this Motion, the Debtors seek authority to make payments directly to the Insurers, Brokers, or Insurance Services Providers

---

[8]   The "**Cash Management Motion**" means the *Motion of Debtors for Interim and Final Orders (a) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, (b) Authorizing Continuation of Existing Deposit Practices, (c) Waiving Certain U.S. Trustee Guidelines, (d) Authorizing Continuation of Intercompany Transactions, and (e) Granting Superpriority Status to Postpetition Intercompany Claims*, filed concurrently herewith.

[9]   References in this Motion to the Debtors' reimbursement of Mallinckrodt plc are meant to include both instances in which Mallinckrodt plc is reimbursed directly by other Debtors as well as instances in which the Debtors reimburse Mallinckrodt plc indirectly through another Debtor.

on account of the Prepetition Insurance Obligations and to make cash payments to, or setoff against amounts owed by Debtor Mallinckrodt plc to, the non-Debtor affiliates on account of the Prepetition Insurance Obligations.

11.     The total amount paid in annual premiums and payments associated with the Insurance Policies is approximately $28,600,000.  The Insurance Policies renew at various times throughout each year, and the majority of the Insurance Policies were renewed on June 28, 2020, but certain Insurance Policies were renewed on September 28, 2020 (the "***September Policies***"). Due to certain invoicing and payment terms, the Debtors have not yet paid all the applicable premiums for the September Policies, but anticipate paying such premiums totaling approximately $150,000 during the interim period.

12.     For most Insurance Policies, including the September Policies, the Debtors pay all of the annual premiums due for each of the policies at the beginning of each particular policy period, although certain Insurance Policies from time to time may permit monthly premium payments as negotiated at renewal.  With the exception of the premiums for the September Policies and the fees payable to One CIS, the Debtors are not aware of any pending requests for payment under the Insurance Policies.  However, in the event that a request for payment of additional amounts attributable to the period before the Petition Date is outstanding or is received by the Debtors in accordance with the Insurance Policies and related services, the Debtors request authority to make payments or setoffs on account of the prepetition amounts to the Brokers, Insurance Carriers, and Insurance Services Providers (the "***Prepetition Insurance Obligations***"). The Debtors further request authority to renew, replace,[10] modify, extend, or add to the existing

---

[10]   "***Replace***" means to purchase an equivalent new insurance policy, bond, letter of credit, or contract upon expiration of the term or period of the existing policy, bond, letter of credit, or contract.

Insurance Policies, including the September Policies and the Aon Policy Contract for services related to covered policy placements, or to obtain new insurance policies postpetition.

## THE DEBTORS' BONDING PROGRAM

13.    In the ordinary course of business, the Debtors are required by certain applicable statutes, rules, and regulations to maintain bonds in favor of certain third parties to secure the Debtors' payment or performance of certain obligations, often to governmental units or other public agencies (the "***Bonding Program***").  The Bonding Program covers a range of obligations, including, among other things, obligations related to customs, state and District of Columbia programs, licensing, environmental obligations, compliance with Irish law, and utilities (the "***Covered Obligations***").  A detailed list of the bonds that are currently maintained by the Debtors, as well as their expiration dates, is attached hereto as **Exhibit D**.[11]  The Debtors believe that the Bonding Program provides coverage that is typical in scope and amount for businesses within the Debtors' industry.

14.    As of the Petition Date, the Debtors' outstanding surety bonds were issued by three sureties: One Beacon Insurance Company, Liberty Mutual Insurance Companies, and Tokio Marine Europe S.A.[12] (the "***Sureties***").  The premiums for the surety bonds are generally determined on an annual basis and are paid directly by the Debtors when the bonds are issued and annually upon renewal.  The total amount paid in annual premiums and payments associated with all of the surety bonds is approximately $90,000.

15.    The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment of their obligations covered by the surety bond from the beneficiary of the surety to

---

[11]    The Debtors request authority to honor obligations and renew all bonds, as applicable, notwithstanding any failure of the Debtors to include a particular bond on **Exhibit D**.

[12]    The surety bonds issued by Tokio Marine Europe S.A. were arranged through Michael Kennedy Insurance Group.

the surety.  If the Debtors fail to pay Covered Obligations, the applicable surety will pay the Debtors' obligations up to a specified amount.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, the surety is entitled to recover the full amount of that loss from the Debtors.

16.     To continue their business operations, the Debtors must be able to provide financial assurances to federal, state, and foreign governments, regulatory agencies, and other third parties. This, in turn, requires the Debtors to maintain the existing Bonding Program, including paying the premiums and any related fees as they come due, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of their businesses, requesting releases from obsolete bonding obligations, and executing other agreements in connection with the Bonding Program.  The success of the Debtors' efforts to operate effectively and efficiently will depend on the maintenance of the Bonding Program on an uninterrupted basis.  And importantly, no feasible alternative to maintaining the Bonding Program exists.

17.     As of the Petition Date, the Debtors believe that all premium payments due and owing under the Bonding Program have been paid in full and the Debtors are not aware of any pending requests for payment by the Sureties.  However, the Debtors request that they be authorized to maintain the Bonding Program in the same manner as they did prepetition and to pay any prepetition claims arising under the Bonding Program (the "***Prepetition Bonding Obligations***").  The Debtors further request authority to honor the current bonds in place and renew, replace, modify,  extend, or add to the Bonding Program as needed, including through the issuance of new surety bonds, postpetition.

## **LETTERS OF CREDIT**

18.     The Debtors have outstanding seven (7) letters of credit (the "***Letters of Credit***" and, together with the Insurance Policies and Bonding Program and collateral therefor discussed below, the "***Insurance Programs***") totaling approximately $14,900,000.  The Letters of Credit

cover a range of obligations, including, among other things, obligations related to single-source suppliers, environmental obligations, regulatory requirements, and insurance related obligations. A detailed list of the Letters of Credit that are currently maintained by the Debtors, as well as their expiration dates, is attached hereto as **Exhibit E**.[13]

19.     As of the Petition Date, the Debtors do not believe there are any payments due and owing on account of the Letters of Credit and the Debtors are not aware of any pending requests for payment on the Letters of Credit (the "***Prepetition Letters of Credit Obligations***" and, together with the Prepetition Insurance Obligations, Prepetition Bonding Obligations, and collateral obligations related thereto discussed below, the "***Prepetition Insurance Programs Obligations***"). The Debtors request authority to honor the current Letters of Credit and renew, replace, modify, extend, or add to the Letters of Credit as needed postpetition, including through the issuance of new Letters of Credit.

## COLLATERAL FOR INSURANCE PROGRAMS

20.     With respect to certain components of their Insurance Programs, the Debtors have posted collateral, or will need to post new collateral, in favor of and as required by relevant Insurers, Brokers, Sureties, and banks issuing the Letters of Credit, to secure certain of their obligations thereunder.  As of the Petition Date, the Debtors have posted in the aggregate approximately $25,000,000 in collateral in various escrow or trust accounts to secure such obligations under their Insurance Programs.  The Debtors expect to post an additional collateral in favor of Allianz Global Corporate & Specialty SE in support of the International Casualty General Liability policy (policy no. BOWCI2000421), effective as of June 28, 2020, during the interim

---

[13]    The Debtors request authority to honor obligations and renew all Letters of Credit, as applicable, notwithstanding any failure of the Debtors to include a particular Letter of Credit on **Exhibit E**.

period.[14] This insurance is required by several foreign (non-US, non-Canadian) countries for regulatory compliance to conduct business in the country, and failure to post collateral for this insurance could cause significant disruptions in the Debtors' foreign business operations. The Debtors request authority to honor the collateral posted prepetition and renew, replace, modify, extend, or add to the posted collateral as needed postpetition, including through the posting of additional collateral.

## BASIS FOR RELIEF

I.   **PAYING PREPETITION INSURANCE PROGRAMS OBLIGATIONS AND PAYING TO MAINTAIN THE INSURANCE PROGRAMS IS NECESSARY TO COMPLY WITH VARIOUS LEGAL REQUIREMENTS AND GUIDELINES**

21.     Maintaining coverage under the Insurance Programs on an uninterrupted basis is essential to the continued operation of the Debtors' businesses and, in some cases, is required under the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "***Operating Guidelines***"), laws and regulations applicable to the Debtors' businesses, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments. *See* Operating Guidelines Sec. 3 (requiring maintenance of appropriate insurance coverage).

22.     The Debtors believe that the ordinary course maintenance of their Insurance Programs, including but not limited to paying all Prepetition Insurance Programs Obligations, satisfying all postpetition commitments to the Insurers, renewing the Insurance Policies, securing new insurance or entering into new insurance contracts, and otherwise maintaining the Insurance Programs, without further order of the Court, is necessary and essential to the Debtors' achievement of their chapter 11 objectives, especially where, as here, the Debtors' failure to maintain necessary or prudent insurance coverage, including but not limited to paying premiums,

---

[14]   For the avoidance of doubt, the Debtors may be required to extend a new letter of credit in favor of Allianz Global Corporate & Specialty SE in lieu of posting collateral.

RLF1 24127380v.1

renewing policies, and securing new policies, as appropriate, could have disastrous consequences for the Debtors' estates.

23.     Many of the required insurance policies cannot be directly purchased by the Debtors and can only be placed through a broker.  Should the Brokers terminate the Broker Contracts and their relationships with the Debtors, the Debtors would be in the unfavorable position of having to find a new broker while in chapter 11, likely at greater expense and resulting in additional costs and inefficiencies.  Accordingly, maintaining their relationships with the Brokers allows the Debtors to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner and to realize savings in securing and maintaining the Insurance Policies.  The Debtors, therefore, believe that it is necessary and essential to continue their business relationships with the Brokers.

24.     Further, without the services of the Insurance Services Providers, the Debtors risk being noncompliant with certain Insurance Policies and local laws and losing coverage under their Insurance Policies, which could result in the Debtors being required to shut down their operations within those jurisdictions.  The Debtors, therefore, believe that it is necessary and essential to continue their business relationships with the Insurance Services Providers.

25.     With the exception of the premiums for the September Policies and the fees payable to One CIS, the Debtors do not believe that there are any accrued and unpaid amounts owed to the Brokers as of the Petition Date.  Nevertheless, insofar as the employment of the Brokers and Insurance Services Providers is necessary for the ordinary course maintenance of the Insurance Policies in the most efficient, cost-effective manner (and has the additional benefit of positioning the Debtors to obtain the most competitive rates and high-quality service from the Brokers and Insurance Services Providers in connection with any renewals of the Insurance Policies), the

12

Debtors believe that, out of an abundance of caution, they should be authorized to continue to pay, as they come due, any Brokers' fees or other amounts owed to the Brokers under the Broker Contracts and any Insurance Services Providers' fees.

## II.    PAYING PREPETITION INSURANCE PROGRAMS OBLIGATIONS IS A SOUND EXERCISE OF BUSINESS JUDGMENT

26.    To the extent that payment of any of the Prepetition Insurance Programs Obligations would be deemed to constitute a use of property outside the ordinary course of business, the relief requested is appropriate under section 363(b)(1) of the Bankruptcy Code. Under section 363(b)(1) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Generally, the debtor is only required to "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code). This standard prohibits other parties from second guessing the debtor's business judgment if the debtor has shown that the proposed use will benefit the debtor's estate. *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

27.    The Debtors' sound business judgment supports paying the Prepetition Insurance Programs Obligations because the failure to pay the obligations could result in:    (a) the cancellation, or attempted cancellation, of the Insurance Policies, the surety bonds, or the Letters

of Credit; (b) the Debtors' inability to obtain renewal or replacement of the Insurance Policies, surety bonds, or Letters of Credit on terms that are as competitive; and (c) the violation of the Operating Guidelines, applicable laws and regulations, various contractual commitments, or the fiduciary duties of the Debtors as debtors in possession. Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates and would create unnecessary risks that far outweigh the cost of paying the applicable prepetition amounts. Accordingly, the Debtors should be authorized to pay the Prepetition Insurance Programs Obligations under section 363(b) of the Bankruptcy Code.

## III. PAYING PREPETITION INSURANCE PROGRAMS OBLIGATIONS IS NECESSARY TO THE DEBTORS' REORGANIZATION

28.     The Debtors also should be authorized to pay the Prepetition Insurance Programs Obligations because doing so is necessary to the success of their reorganization. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Courts have interpreted this provision to authorize payments on prepetition claims where the payments are essential to the success of the debtor's reorganization under what is known as the "necessity of payment doctrine." *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) ("Thus, the 'necessity of payment' doctrine…teaches no more than, if a payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor's business] during reorganization, payment may be authorized…"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) "provides a statutory basis for payment of pre-petition claims" under necessity of payment doctrine); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) ("The appropriate standard…is commonly referred to as 'the necessity of payment doctrine.'").

14

29.     Paying the Prepetition Insurance Programs Obligations is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, or proceeds provided under the Insurance Programs, and to maintain good relationships with the Insurers, the Brokers, the Insurance Services Providers, and the Sureties.  If any of those risks were to materialize, they could cause substantial disruptions and expose the Debtors to liabilities significantly greater than the amount of the obligations to be paid.  These consequences could derail the Debtors' restructuring efforts, and, therefore, paying the Prepetition Insurance Programs Obligations should be approved under section 105(a) of the Bankruptcy Code and the necessity of payment doctrine.

## IV.     THE DEBTORS SHOULD BE AUTHORIZED TO MAINTAIN THE INSURANCE PROGRAMS POSTPETITION, INCLUDING BUT NOT LIMITED TO ENTERING  NEW INSURANCE PROGRAMS

30.     The Debtors submit that section 363(c) of the Bankruptcy Code provides statutory authority for the Debtors' request for authorization to satisfy all of the Debtors' postpetition commitments with respect to the Insurers, the Brokers, and the Sureties, renew the Insurance Policies, surety bonds, and Letters of Credit, enter into new insurance policies, surety bonds, and Letters of Credit, and otherwise maintain the Insurance Programs as appropriate in the ordinary course of business and in the Debtors' sole discretion.  Section 363(c) provides that a debtor in possession may "enter into transactions" in the ordinary course without notice or a hearing.  *See* 11 U.S.C. § 363(c).  In evaluating whether a transaction is in the ordinary course, a court must determine whether it is "of the sort commonly undertaken by companies in [the debtor's] industry" and whether it subjects a hypothetical creditor "to economic risk of a nature different from those he accepted when he decided to extend credit." *In re Roth Am., Inc.*, 975 F.2d 949, 952–53 (3d Cir. 1992).

31.     Maintaining the Insurance Programs and honoring postpetition obligations arising thereunder and under the Broker Contracts, including undertaking renewals of the Insurance Policies, the surety bonds, and Letters of Credit as they expire or entering into new insurance arrangements, surety contracts, or Letters of Credit, are each the type of ordinary course transactions contemplated by section 363(c) of the Bankruptcy Code.  In the event, however, that this Court believes that any actions are not properly characterized as transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that this Court authorize the Debtors to take actions pursuant to section 363(b) of the Bankruptcy Code as a sound exercise of their business judgment.

## V.     THE COURT SHOULD AUTHORIZE BANKS TO HONOR AND PAY CHECKS ISSUED AND ELECTRONIC FUNDS TRANSFERRED TO PAY THE PREPETITION INSURANCE PROGRAMS OBLIGATIONS

32.     The Debtors further request that the Court authorize, but not direct, their banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Prepetition Insurance Programs Obligations, regardless of whether such checks were presented before or after the Petition Date.  The Debtors expect to have sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Prepetition Insurance Programs Obligations.  As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Prepetition Insurance Programs Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

16

## VI.   INTERIM RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

33.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the Welch Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable.[15]

34.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

### **RESERVATION OF RIGHTS**

35.     Nothing in this Motion shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission

---

[15]   *See* the Welch Declaration filed concurrently with this Motion.

that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

36.      Notice of this Motion will be given to: (a) Office of the United States Trustee for the District of Delaware; (b) counsel to the ad hoc group of the Debtors' prepetition secured lenders; (c) the agent under the Debtors' secured term and revolving financing facilities; (d) counsel to the ad hoc group of holders of the Debtors' unsecured notes; (e) the indenture trustees for the Debtors' outstanding notes; (f) counsel to the ad hoc committee of governmental entities holding opioid claims; (g) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (h) the United States Attorney's Office for the District of Delaware; (i) the attorneys general for all 50 states and the District of Columbia; (j) the United States Department of Justice; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Drug Enforcement Agency; (n) the United States Food and Drug Administration; (o) the Insurers; (p) the Brokers; (q) the Sureties; (r) the issuers of the Letters of Credit; and (s) all parties entitled to notice pursuant to Local Rule 9013-1(m).  The Debtors submit that, under the circumstances, no other or further notice is required.

37.     A copy of this Motion is available on (a) the Court's website, www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at http://restructuring.primeclerk.com/Mallinckrodt.

## NO PRIOR MOTION

38.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Orders, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: October 12, 2020
     Wilmington, DE

*/s/ Michael J. Merchant*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    merchant@rlf.com
    steele@rlf.com
    schlauch@rlf.com

- and -

George A. Davis (*pro hac vice* pending)
George Klidonas (*pro hac vice* pending)
Andrew Sorkin (*pro hac vice* pending)
Anupama Yerramalli (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone:    (212) 906-1200
Facsimile:    (212) 751-4864
Email:    george.davis@lw.com
    george.klidonas@lw.com
    andrew.sorkin@lw.com
    anu.yerramalli@lw.com

- and -

Jeffrey E. Bjork (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:    (213) 485-1234
Facsimile:    (213) 891-8763
Email:    jeff.bjork@lw.com

- and -

Jason B. Gott (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767
Email:    jason.gott@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

## **EXHIBIT A**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-_____ (____) |
|  | ) |
| Debtors. [1] | ) (Jointly Administered) |
|  | ) |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO (A) PAY**
**THEIR PREPETITION INSURANCE PROGRAMS OBLIGATIONS**
**AND (B) MAINTAIN THEIR POSTPETITION INSURANCE PROGRAMS**

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order (this "***Interim Order***") granting them authority, in their discretion, to (a) pay or setoff prepetition claims arising under their ordinary course Insurance Programs, if any, and (b) maintain their Insurance Programs in the ordinary course postpetition; and the Court having reviewed the Motion and the Welch Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion (the "***Hearing***"); and upon the Welch Declaration and the record of the Hearing and all the proceedings before the Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain and continue their Insurance Programs.

3.      The Debtors are authorized, but not directed, to (a) pay to the Insurers, Brokers, Insurance Services Providers, and the Sureties and (b) pay or setoff against amounts owed by non-Debtor affiliates any amounts owed on account of the Insurance Programs or maintenance of the Insurance Programs, whether arising prepetition or postpetition, including the fees, costs, and commissions of the Insurance Services Providers and Brokers in connection with the Insurance Programs and the Broker Contracts, as applicable, in the ordinary course of business; *provided*, that the Debtors shall not pay any prepetition amounts arising under the Insurance Programs before the applicable due date.

4.      Payments and setoffs on account of Prepetition Insurance Programs Obligations, including the posting of new collateral or the issuance of new letters of credit, under the Motion and this Interim Order shall not exceed $2,750,000 in the aggregate without further order of this Court.

5.      The Debtors are authorized, but not directed, to renew, replace, modify, extend, or add to their Insurance Programs or Broker Contracts in the ordinary course of business as needed, including but not limited to entering into new insurance policies, broker contracts, insurance

2

services agreements, surety bonds, and letters of credit through renewal or purchase of new insurance coverage or insurance policies, broker contracts, insurance services agreements, surety bonds, and letters of credit, including but not limited to, in each case, by posting collateral as required by the Insurers, Brokers, Sureties, or banks issuing the Letters of Credit.

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Prepetition Insurance Programs Obligations that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Interim Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order.

7.      The final hearing on the Motion (the "***Final Hearing***") will be held on [●], at [●] (Eastern Time).  Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (Eastern Time) on _____, _____, 2020, and served on the following parties: (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane M. Leamy (Jane.M.Leamy@usdoj.gov)); (b) Mallinckrodt plc, 675 McDonnell Blvd., Hazelwood, Missouri 63042 (Attn: Stephanie D. Miller (corporate.secretary@mnk.com)); (c) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: George Davis (George.Davis@lw.com), George Klidonas (George.Klidonas@lw.com), Anupama Yerramalli (Anu.Yerramalli@lw.com), and Andrew

3

Sorkin (Andrew.Sorkin@lw.com)), Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071 (Attn: Jeffrey Bjork (Jeff.Bjork@lw.com)), and 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611 (Attn: Jason Gott (Jason.Gott@lw.com)), proposed counsel for the Debtors; (d) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins (collins@rlf.com) and Michael J. Merchant (merchant@rlf.com)), proposed co-counsel for the Debtors; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Andrew N. Rosenberg (arosenberg@paulweiss.com), Alice Belisle Eaton (aeaton@paulweiss.com), Claudia R. Tobler (ctobler@paulweiss.com), and Neal Paul Donnelly (ndonnelly@paulweiss.com)), counsel for the ad hoc group of holders of the Debtors' unsecured notes; and (f) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn:  Richard S. Cobb (cobb@lrclaw.com)), co-counsel for the ad hoc group of holders of the Debtors' unsecured notes.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

8.      Nothing in the Motion or this Interim Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (a) an admission of the validity of any claim against the Debtors; (b) an admission with respect to the validity, extent, or perfection of any lien; (c) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (d) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (e) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

9.      Nothing in the Motion or this Interim Order or the relief granted herein is to be construed as providing any Insurer with any additional rights against the Debtors, including, without limitation, the ability to cancel, limit, or otherwise modify the Debtors' insurance coverage under the Insurance Policies.

10.     Nothing in the Motion or this Interim Order or the relief granted herein is to be construed as permitting the Debtors to settle, reduce, or compromise the amount of coverage under any current or prior insurance policies, including any policies currently subject to an extended reporting period, absent further order of the Court.

11.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

12.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

14.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

RLF1 24127380v.1

# EXHIBIT B

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-_____ (___) |
| | ) |
| Debtors. [1] | ) (Jointly Administered) |
| | ) |
| | ) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (A) PAY**
**THEIR PREPETITION INSURANCE PROGRAMS OBLIGATIONS**
**AND (B) MAINTAIN THEIR POSTPETITION INSURANCE PROGRAMS**

Upon the motion (the "***Motion***")[2] of the Debtors for a final order (this "***Final Order***") granting them authority, in their discretion, to (a) pay or setoff prepetition claims arising under their ordinary course Insurance Programs, if any, and (b) maintain their Insurance Programs in the ordinary course postpetition; and the Court having reviewed the Motion and the Welch Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held, if necessary, to consider the relief requested in the Motion (the "***Hearing***"); and upon the Welch Declaration and the record of the Hearing and all the proceedings before the Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to continue their Insurance Programs.

3.      The Debtors are authorized, but not directed, to (a) pay to the Insurers, Brokers, Insurance Services Providers, and the Sureties and (b) pay or setoff against amounts owed by non-Debtor affiliates any amounts owed on account of the Insurance Programs or maintenance of the Insurance Programs, whether arising prepetition or postpetition, including the fees, costs, and commissions of the Insurance Services Providers and Brokers in connection with the Insurance Programs and the Broker Contracts, as applicable, in the ordinary course of business; *provided* that the Debtors shall not pay any prepetition amounts arising under the Insurance Programs before the applicable due date.

4.      The Debtors are authorized, but not directed, to renew, replace, modify, extend, or add to their Insurance Programs or Broker Contracts in the ordinary course of business as needed, including but not limited to entering into new insurance policies, broker contracts, insurance services agreements, surety bonds, and letters of credit through renewal or purchase of new insurance coverage or insurance policies, broker contracts, insurance services agreements, surety bonds, and letters of credit, including but not limited to, in each case, by posting collateral as required by the Insurers, Brokers, Sureties, or banks issuing the Letters of Credit.

2

5.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Critical Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Final Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Final Order.

6.      Nothing in the Motion or this Final Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (a) an admission of the validity of any claim against the Debtors; (b) an admission with respect to the validity, extent, or perfection of any lien; (c) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (d) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (e) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

7.      Nothing in the Motion or this Final Order or the relief granted herein is to be construed as providing any Insurer with any additional rights against the Debtors, including,

without limitation, the ability to cancel, limit, or otherwise modify the Debtors' insurance coverage under the Insurance Policies.

8.      Nothing in the Motion or this Final Order or the relief granted herein is to be construed as permitting the Debtors to settle, reduce, or compromise the amount of coverage under any current or prior insurance policies, including any policies currently subject to an extended reporting period, absent further order of the Court.

9.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

10.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

11.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order.

12.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.

RLF1 24127380v.1

# EXHIBIT C

## Insurance Policies[1]

| Policy Named Insured | Policy Type | Insurer | Policy Term | Policy Number | Total Program Cost |
|---|---|---|---|---|---|
| **CARGO** | | | | | |
| Mallinckrodt plc | Cargo Master | Zurich | 09/28/2020 - 09/27/2021 | 5845097-06 | $191,500 |
| Mallinckrodt Canada ULC | Cargo Canada | Zurich | 09/28/2020 - 09/27/2021 | 5845097-06 | $8,865 |
| Mallinckrodt plc | Cargo FOS | Zurich | 09/28/2020 - 09/27/2021 | 5845097-06 | $13,129 |
| Mallinckrodt plc | Cargo UK | Zurich | 09/28/2020 - 09/27/2021 | OC971243600 | $8,275 |
| **DIRECTORS & OFFICERS** | | | | | |
| Mallinckrodt plc | 2020-21 Primary D&O | Axa XL | 06/28/2020 - 06/28/2021 | FINMW2000671 | $658,879 |
| Mallinckrodt plc | 2020-21 1st Excess ABC | Generali | 06/28/2020 - 06/28/2021 | FINMW2000487 | $525,408 |
| Mallinckrodt plc | 2020-21 2nd Excess ABC | Hiscox (50%) Beazley (50%) | 06/28/2020 - 06/28/2021 | FINMW2000612 | $2,157,297 |
| Mallinckrodt plc | 2020-21 Lead Side A / DIC | Allied World | 06/28/2020 - 06/28/2021 | FINMW2000603 | $884,333 |
| Mallinckrodt plc | 2020-21 1st Excess Side A / DIC | Berkshire | 06/28/2020 - 06/28/2021 | FINMW2000549 | $855,509 |
| Mallinckrodt plc | 2020-21 2nd Excess Side A / DIC | Beazley | 06/28/2020 - 06/28/2021 | FINMW2000552 | $814,979 |
| Mallinckrodt plc | 2020-21 3rd Excess Side A / DIC | Axa XL | 06/28/2020 - 06/28/2021 | FINMW2000664 | $658,879 |
| Mallinckrodt plc | 2019-20 Primary D&O (with 6 Year Tail) | Axa XL | 06/28/2019 - 06/28/2026 | FINMW1900477 | $580,153 |
| Mallinckrodt plc | 2019-20 1st Excess ABC (with 6 year Tail) | Generali | 06/28/2019 - 06/28/2026 | FINMW1900504 | $492,960 |
| Mallinckrodt plc | 2019-20 2nd Excess ABC (with 6 year Tail) | Allianz; Starstone | 06/28/2019 - 06/28/2026 | FINMW1900488 | $2,036,117 |
| Mallinckrodt plc | 2019-20 3rd Excess ABC (with 6 year Tail) | Hiscox; Beazley | 06/28/2019 - 06/28/2026 | FINMW1900482 | $1,212,555 |
| Mallinckrodt plc | 2019-20 4th Excess ABC (with 6 year Tail) | Munich Re | 06/28/2019 - 06/28/2026 | FINMW1900485 | $660,440 |
| Mallinckrodt plc | 2019-20 5th Excess ABC (with 6 year Tail) | Aviva | 06/28/2019 - 06/28/2026 | FINMW1900506 | $509,956 |
| Mallinckrodt plc | 2019-20 Lead Side A / DIC (with 6 year Tail) | Allied World | 06/28/2019 - 06/28/2026 | FINMW1901139 | $501,408 |
| Mallinckrodt plc | 2019-20 1st Excess Side A / DIC (with 6 year Tail) | Navigators, et.al. | 06/28/2019 - 06/28/2026 | FINMW1900479 | $1,639,562 |
| Mallinckrodt plc | 2019-20 2nd Excess Side A / DIC (with 6 year Tail) | Beazley Syndicates AFB | 06/28/2019 - 06/28/2026 | FINMW1900507 | $1,644,069 |
| Mallinckrodt plc | 2019-20 3rd Excess Side A / DIC (with 6 year Tail) | Axa XL | 06/28/2019 - 06/28/2026 | FINMW1901117 | $580,153 |
| Mallinckrodt plc | 2018-2019 Primary ABC (with 6 year Tail)- | XL | 06/28/2018 - 06/28/2025 | FINMR1800183 | $444,715 |

---

[1]   This list of Insurance Policies does not include the Debtors' workers' compensation insurance policies.

| Mallinckrodt plc | 2018-2019 1st Excess ABC (with 6 year Tail) | Chubb | 06/28/2018 - 06/28/2025 | FINMR1800195 | $222,638 |
|---|---|---|---|---|---|
| Mallinckrodt plc | 2018-20192nd Excess ABC (with 6 year Tail) | Aviva | 06/28/2018 - 06/28/2025 | FINMR1800194 | $329,237 |
| Mallinckrodt plc | 2018-2019 3rd Excess ABC (with 6 year Tail) | HCC | 06/28/2018 - 06/28/2025 | FINMR1800190 | $202,607 |
| Mallinckrodt plc | 2018-2019 4th Excess ABC (with 6 year Tail) | Allied World | 06/28/2018 - 06/28/2025 | FINMR1800193 | $1,011,439 |
| Mallinckrodt plc | 2018-2019 5th Excess ABC (with 6 year Tail) | Markel | 06/28/2018 - 06/28/2025 | FINMR1800491 | $648,883 |
| Mallinckrodt plc | 2018-2019 –Lead Side A (with 6 year Tail) | Navigators | 06/28/2018 - 06/28/2025 | FINMR1800185 | $366,890 |
| Mallinckrodt plc | 2018-2019 1st Excess Side A (with 6 year Tail) | XL | 06/28/2018 - 06/28/2025 | FINMW1800492 | $377,407 |
| **EXCESS LIABILITY** | | | | | |
| Mallinckrodt plc | Primary / Lead Umbrella Liability ($50M) | HDI | 06/28/2020 - 06/28/2021 | BOWCI2000424 002 | $1,558,038 |
| Mallinckrodt plc | 1st Excess Liability ($30M) | Allianz | 06/28/2020 - 06/28/2021 | BOWCI1900312 | $879,538 |
| **EXECUTIVE RISK - FINPRO** | | | | | |
| Mallinckrodt plc | Crime Primary- UK | Axa XL & Navigators | 06/28/2020 - 06/28/2021 | FINMW2000512 001 | $106,588 |
| Mallinckrodt plc | EPLI | Markel | 06/28/2020 - 06/28/2021 | MKLB25GL0001819 | $187,870 |
| Mallinckrodt plc | Fiduciary | Axa-XL | 06/28/2020 - 06/28/2021 | FINMW2000513 001 | $120,438 |
| Mallinckrodt plc | Excess Fiduciary | Hudson | 06/28/2020 - 06/28/2021 | SXS31210271 | $64,228 |
| Mallinckrodt plc | Special Crime | Great American | 06/28/2020 - 06/28/2021 | SC1273610987 | $14,627 |
| **INTERNATIONAL** | | | | | |
| Mallinckrodt plc | Local Property UK | Swiss Re | 09/28/2020 - 09/27/2021 | TBD | $5,221 |
| Mallinckrodt plc | Local Property Canada | Swiss Re | 09/28/2020 - 09/27/2021 | TBD | $7,691 |
| Mallinckrodt plc | Local Property Ireland | Swiss Re | 09/28/2020 - 09/27/2021 | TBD | $71,187 |
| Mallinckrodt plc | Local Property - Netherlands | Swiss Re | 09/28/2020 - 09/27/2021 | TBD | $18,526 |
| Mallinckrodt plc | Auto - PR | AIG | 06/28/2020 - 06/28/2021 | 201-1002575-03 | $2,437 |
| Mallinckrodt Chemical Ltd, Mallinckrodt Pharmaceuticals & Therakos (UK) Ltd | Employers Liability;Motor;PA Travel - UK | Zurich/Chubb | 06/28/2020 - 06/28/2021 | JB803990 | $41,767 |
| Mallinckrodt Chemical Ltd, Mallinckrodt Pharmaceuticals & Therakos (UK) Ltd | Employers Liability - Ireland | AIG | 06/28/2020 - 06/28/2021 | EML41875 | $1,625 |
| Mallinckrodt Pharmaceutical Ireland Ltd | Employers Liability and Fleet Commercial Motor - Ireland | AIG | 06/28/2020 - 06/28/2021 | EML66602 | $33,459 |
| Mallinckrodt Canada ULC and Ikaria Canada Inc. Therakos Company | GL - Including Hired and Nonowned - Canada | AIG | 06/28/2020 - 06/28/2021 | GL 488 5660 | $24,133 |
| Mallinckrodt plc | International Casualty - GL | Allianz | 06/28/2020 - 06/28/2021 | BOWCI2000421 | $140,590 |

| PRIMARY CASUALTY | | | | | |
|---|---|---|---|---|---|
| Mallinckrodt plc | Auto - US | AIG | 06/28/2020 - 06/28/2021 | CA 4594354 - AOS CA 4594355 - MA CA 4594356 - VA | $150,867 |
| Mallinckrodt plc | GL (Excluding Products) | AIG | 06/28/2020 - 06/28/2021 | 1728939 | $60,114 |
| PRIMARY PRODUCTS | | | | | |
| Mallinckrodt plc | Primary Product Liability | Ironshore | 06/28/2020 - 06/28/2021 | 3664102 | $783,968 |
| Mallinckrodt plc | Products Liability 1st Excess | Chubb | 06/28/2020 - 06/28/2021 | G27086986 008 | $738,780 |
| Mallinckrodt plc | Products Liability 2nd Excess | TDC | 06/28/2020 - 06/28/2021 | LSX-000132003 | $488,250 |
| Mallinckrodt plc | Products Liability 3rd Excess | Northstar | 06/28/2020 - 06/28/2021 | EXSS102320 | $305,417 |
| Mallinckrodt plc | Products Liability 4th Excess | Chubb | 06/28/2020 - 06/28/2021 | G71538965002 | $53,802 |
| Mallinckrodt plc | Products Liability 5th Excess | Ironshore | 06/28/2020 - 06/28/2021 | 4108801 | $119,261 |
| PROPERTY | | | | | |
| Mallinckrodt plc | Property - 8.5% of $500M | Scor | 09/28/2020 - 09/27/2021 | PTNAM2005886 | $219,113 |
| Mallinckrodt plc | Property - 2.75% of $250M xs $250M | Hannover | 09/28/2020 - 09/27/2021 | PTNAM2005893 | $19,470 |
| Mallinckrodt plc | Property - 1.62% of $250M | Sompo | 09/28/2020 - 09/27/2021 | ARP30001999100 | $45,131 |
| Mallinckrodt plc | Property - 10% of $250M xs $250M | Partner Re | 09/28/2020 - 09/27/2021 | PTNAM2005890 | $64,236 |
| Mallinckrodt plc | Property - 7.5% of $500M | AXA-XL-Aviva (QS) | 09/28/2020 - 09/27/2021 | PTNAM2004301 | $382,856 |
| Mallinckrodt plc | Property - 10% of $500M | Liberty LIU | 09/28/2020 - 09/27/2021 | 1000223250-08 | $304,688 |
| Mallinckrodt plc | Property - 10% of $500M | HDI | 09/28/2020 - 09/27/2021 | CPD5497702S | $278,438 |
| Mallinckrodt plc | Property - 15% of $500M | Allianz | 09/28/2020 - 09/27/2021 | USP00034520 | $383,699 |
| Mallinckrodt plc | Property - 20% of $500M | Swiss Re | 09/28/2020 - 09/27/2021 | NAP 2003715 01 | $ 638,726 |
| Mallinckrodt plc | Property - 7.5% of $250M xs $250M | Starr Tech | 09/28/2020 - 09/27/2021 | PGLN18215603 | $173,409 |
| Mallinckrodt plc | Property - 5% of $250M xs $250M | Helvetia | 09/28/2020 - 09/27/2021 | PTNAM2005897 | $128,515 |

## EXHIBIT D

### Surety Bonds

| SURETY BONDS | | | | | | |
|---|---|---|---|---|---|---|
| **Debtor** | **Beneficiary Name** | **Bond Type** | **Bond Amount** | **Start Date** | **End Date** | **Surety** |
| ACTHAR IP UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| INO THERAPEUTICS, LLC | WISCONSIN DEPARTMENT OF SAFETY AND PROFESSIONAL SERVICES | License Bond | $5,000.00 | 6/26/2020 | 6/26/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | U.S. CUSTOMS AND BORDER PROTECTION | License Bond | $50,000.00 | 1/8/2020 | 1/7/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | STATE OF NEBRASKA DEPARTMENT OF HEALTH & HUMAN SERVICES | License Bond | $100,000.00 | 6/26/2020 | 6/26/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | THE PEOPLE OF THE STATE OF CALIFORNIA | License Bond | $100,000.00 | 6/26/2020 | 6/26/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | STATE OF MARYLAND BOARD OF PHARMACY | License Bond | $100,000.00 | 6/26/2020 | 6/26/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 11/29/2019 | 11/29/2020 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 11/29/2019 | 11/29/2020 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | ARIZONA STATE BOARD OF PHARMACY | Performance | $100,000.00 | 2/3/2020 | 2/3/2021 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 10/25/2019 | 10/25/2020 | ONE BEACON INSURANCE COMPANY |
| INO THERAPEUTICS, LLC | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 10/25/2019 | 10/25/2020 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT ARD IP UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT ARD LLC | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 12/19/2019 | 12/19/2020 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT ARD LLC | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 11/28/2019 | 11/28/2020 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT BUCKINGHAM UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT ENTERPRISES LLC | DISTRICT OF COLUMBIA | Notary Public | $2,000.00 | 9/15/2019 | 9/14/2024 | LIBERTY MUTUAL INSURANCE COMPANIES |

| | | | | | | |
|---|---|---|---|---|---|---|
| MALLINCKRODT HOSPITAL PRODUCTS | U.S. CUSTOMS AND BORDER PROTECTION | License Bond | $70,000.00 | 1/29/2020 | 1/28/2021 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT HOSPITAL PRODUCTS INC. | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 12/19/2019 | 12/19/2020 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT HOSPITAL PRODUCTS INC. | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 11/28/2019 | 11/28/2020 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT HOSPITAL PRODUCTS IP UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT IP UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT MANUFACTURING LLC | U.S. CUSTOMS AND BORDER PROTECTION | Customs | $50,000.00 | 1/8/2020 | 1/7/2021 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT PHARMACEUTICALS IRELAND LIMITED | U.S. CUSTOMS AND BORDER PROTECTION | Performance | $50,000.00 | 1/8/2020 | 1/7/2021 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT PHARMACEUTICALS IRELAND LIMITED | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 11, 2020 | September 10, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT PHARMA IP TRADING UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT PHARMA IP TRADING UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT VETERINARY, INC. | U.S. ENVIRONMENTAL PROTECTION AGENCY | Environmental | $1,489,513.00 | 3/15/2020 | 3/15/2021 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT WINDSOR IRELAND FINANCE UNLIMITED COMPANY | PERSON NOMINATED BY EITHER OR BOTH THE IRISH REGISTRAR OF COMPANIES AND THE IRISH REVENUE COMMISSIONERS | Surety bond | EUR25,000 | September 8, 2020 | September 7, 2022 | TOKIO MARINE EUROPE S.A. (ARRANGED THROUGH MICHAEL KENNEDY INSURANCE GROUP) |
| MALLINCKRODT, LLC | EPA REGIONAL ADMINISTRATOR OR REGIONAL SUPERFUND DIRECTOR FOR EPA REGION 7 | Environmental | $224,000.00 | 8/1/2020 | 8/1/2021 | ONE BEACON INSURANCE COMPANY |
| MALLINCKRODT, LLC | EPA REGIONAL ADMINISTRATOR OR REGIONAL SUPERFUND DIRECTOR FOR EPA REGION 7 | Warranty | $720,000.00 | 8/14/2020 | 8/14/2021 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | CITY OF ST. LOUIS DEPARTMENT OF PUBLIC SAFETY | Contractor License | $25,000.00 | 6/19/2020 | 6/19/2021 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | CITY OF ST. LOUIS DEPARTMENT OF PUBLIC SAFETY | Electrical Contractor | $25,000.00 | 1/1/2020 | 12/31/2020 | ONE BEACON INSURANCE COMPANY |

| | | | | | | |
|---|---|---|---|---|---|---|
| SPECGX LLC | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 12/19/2019 | 12/19/2020 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 11/28/2019 | 11/28/2020 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | STATE OF MARYLAND BOARD OF PHARMACY | License Bond | $100,000.00 | 12/5/2019 | 12/5/2020 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | STATE OF MARYLAND BOARD OF PHARMACY | Performance | $100,000.00 | 5/28/2020 | 5/28/2021 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | BUREAU OF CUSTOMS AND BORDER PROTECTION | Performance | $200,000.00 | 12/27/2019 | 12/27/2020 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | NORTH CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY | Performance | $2,000,000.00 | 2/15/2020 | 2/15/2021 | ONE BEACON INSURANCE COMPANY |
| SPECGX LLC | NORTH CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY | Performance | $4,730,503.00 | 2/15/2020 | 2/15/2021 | ONE BEACON INSURANCE COMPANY |
| ST SHARED SERVICES LLC | U.S. CUSTOMS AND BORDER PROTECTION | Performance | $50,000.00 | 12/18/2019 | 12/18/2020 | ONE BEACON INSURANCE COMPANY |
| STRATATECH CORPORATION | U.S. CUSTOMS AND BORDER PROTECTION | Performance | $50,000.00 | 4/26/2020 | 4/26/2021 | ONE BEACON INSURANCE COMPANY |
| THERAKOS INC. | IOWA BOARD OF PHARMACY | Performance | $100,000.00 | 11/28/2019 | 11/28/2020 | ONE BEACON INSURANCE COMPANY |
| THERAKOS, INC. | BUREAU OF CUSTOMS AND BORDER PROTECTION | Performance | $50,000.00 | 1/8/2020 | 1/7/2021 | ONE BEACON INSURANCE COMPANY |
| THERAKOS, INC. | MISSISSIPPI BOARD OF PHARMACY | Performance | $100,000.00 | 12/19/2019 | 12/19/2020 | ONE BEACON INSURANCE COMPANY |

3

# EXHIBIT E

## Letters of Credit

| LETTERS OF CREDIT | | | |
|---|---|---|---|
| **Debtor** | **Value** | **Issuing Branch Parent Bank Name** | **Beneficiary** |
| MIFSA | $8,235,001.00 | Deutsche Bank AG | AIG |
| Mallinckrodt LLC | $22,309.00 | Citibank | Insurance Company of North America |
| MIFSA on behalf of Mallinckrodt LLC | $250,000.00 | Deutsche Bank AG | Carnforth Limited |
| MIFSA on behalf of Mallinckrodt US Holdings LLC | $421,864.00 | Deutsche Bank AG | Utah Water Quality Board Executive Secretary |
| MIFSA on behalf of Mallinckrodt US Holdings LLC | $143,963.93 | Deutsche Bank AG | Sutton Brook Disposal Area Superfund Site Group Settlement Account Trust |
| MIFSA on behalf of Mallinckrodt US Holdings LLC | $3,256,500.00 | Deutsche Bank AG | New Jersey Department of Environmental Protection |
| MIFSA on behalf of SpecGx LLC | $2,500,000.00 | Deutsche Bank | Eastman Chemical Company |