# BUXTON 🐎 HELMSLEY

**FILED**

**New York Headquarters**
1185 Avenue of the Americas, Floor 3
New York, N.Y.  10036

**Mr. Alexander E. Parker**
*Senior Managing Director*
E.  alexander.parker@buxtonhelmsley.com
T.  +1 (212) 951-1530
F.  +1 (212) 951-1530

2020 OCT 27  AM 10: 10

CLERK
BANKRUPTCY COURT
DISTRICT OF DELAWARE

**VIA REGISTERED U.S. POSTAL MAIL ONLY**

October 13, 2020

The Honorable John T. Dorsey
Delaware Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, DE  19801

## MOTION FOR APPOINTMENT OF EQUITY COMMITTEE
Mallinckrodt, plc. Chapter 11 Bankruptcy, dated October 12, 2020 (Case No.: 20-12522)

Your Honor:

I write to you on behalf of The Buxton Helmsley Group, Inc., an asset management firm based in New York, N.Y., and – more importantly – our investors, who retained a minority, but significant (to our firm) interest in Mallinckrodt plc. common stock (hereinafter, "Mallinckrodt", formerly listed and traded on the New York Stock Exchange under ticker "MNK").

These Chapter 11 restructuring plans proposed by management were negotiated in the worst of faith, with absolutely no attempt or intent to uphold their fiduciary duty to shareholders. **The current restructuring plans give no consideration to shareholder interests, despite an immense ~$1.5 billion in shareholders equity** (after adding ~$380 million to shareholder's equity with their ~$265 million Acthar Gel litigation settlement). Management has abandoned and violated their fiduciary duty, corruptly vouching to wipe out existing shareholders, when **there is very surely immense value that could be returned to shareholders in the event of a liquidation (if that were the only other option). This company is far from hopelessly insolvent and that value belongs to the shareholders, whether management wants to liquidate or reorganize their capital structuring.** Management is even more appallingly – at the same time of attempting to wipe out shareholders with immense equity – vouching to give opioid litigants a much sweeter deal than the original settlement agreement in principle (their settlement now being received on a much more advanced timeline). **It is very clear management has abandoned the interest of shareholders and shareholder rights must be properly represented in this case in order for truly equitable justice to be had.**

**It should illustrate to you the "ethics" of our management, the bonuses that they awarded themselves just days ahead of the bankruptcy filing, in an attempt to sidestep your courtroom and bankruptcy procedures for compensation authorization.** As a side note, I greatly hope that you will claw back those executive bonuses, given there is no reason they should receive value any more than the zero value they "negotiated" for shareholders. We trusted them to act ethically and it is clear they lack that ability, not only with regards to shareholder interests, but even with sneaky compensation attempts that they knew a judge would likely take issue to. They lack ethics on every and all fronts.

With $1.5 billion in asset equity belonging to shareholders and a corrupt management team (being steered by a just as corrupt board of directors), it is imperative that equity holders have an advocate in this process, as we have none now. Those who have a fiduciary duty to protect shareholders in this case are now attempting to commit highway robbery, attempting to pillage the billions in retirement assets of many that they were so entrusted to safeguard. **If creditors cannot agree to current shareholders retaining the ~$1.5 billion in equity belonging to them, the only other fair resolution is to liquidate this company. It is very likely that there would actually be enhanced equity in the event of a liquidation, given the very likely synergies and greater efficiency that other pharmaceutical companies could experience as part of acquiring Mallinckrodt assets.**

This request for an equity committee is very substantiated, for the following reasons:
- **This company is far from "hopelessly insolvent"**, with an even larger margin of equity belonging to shareholders as a result of the settlements as part of this restructuring proposal. Our equity would – again – very likely be worth even more than current GAAP book value in the event of a liquidation, given the synergies and efficiency improvements that could be experienced as a result of assets being sold to competitors.
- **An equity committee would be far from an "undue burden"**, given the billions in equity belonging to shareholders, the sheer size of this company, and the fact that the representation we counted on (our management and board) has failed us miserably, and clearly lacks the moral compass required for us to trust them any further in this process. **The loss that will be incurred by the many investors who entrusted our management and board to protect our interests will far supercede the (relatively, much minor) burden of putting in place a committee that will protect our interests, since our current management and board clearly have switched to siding with the interests of creditors and only themselves.**
- A creditor committee has an economic incentive to claim no equity value exists. At present, creditors have representation for their interests, when equity holders have none, leaving the scale of representation far out of balance and this case on course for an extremely disastrous outcome that will result in losses for many, many retirement accounts – people who should not be the victims of a corrupt management's actions.

I would like to preemptively strike possible objections to this motion, to ensure your time is not wasted any more than what this management is already causing:
- **If Mallinckrodt management denies violating their fiduciary duty as part of the restructuring negotiations that have taken place and insists on their claim that Mallinckrodt's balance sheet is similar to the unfolding of a ponzi scheme (with a very sizable margin of portrayed equity vanishing into thin air)**, that even further strengthens the grounds for equity holders being appointed independent counsel to get trustable clarity on whatever value does truly exist and was not fictionally made up by our then obviously inept and corrupt management. If billions in shareholder's equity has vanished into thin air, it is imperative an equity committee completes an independent investigation so that we may turn over the results of that investigation

for Securities and Exchange Commission action (and class-action lawsuits) on grounds of highly misleading (and possibly, fraudulent) financial statements.

- **If there is an objection made on grounds that the bond market is an accurate representation of a shortfall in shareholder's equity, I think they need to refer, perhaps, to the case of Enron (or the many other financial accounting blunders in the history of corporate accounting), where they will quickly realize that argument of market efficiency holds no water in proof of concept.** Neither the bond market, nor the equity market, possess detailed enough information (based on that of which has been publicly disseminated by management) in order to make valuation judgements that would have more perceived integrity than of those financial statements which Mallinckrodt management prepared. Therefore, the market's opinion in no way could have the integrity and trustworthiness of an independent equity holder committee's investigation, given the market's access to less detailed company information than that of management, and no more information than what management decides to publicly disseminate. Thus far, the market has only been able to rely on management's portrayal of shareholders' equity, which both management and the creditor's committee and implicitly allege that management made great mistakes of judgment with regards to. Non-GAAP, marketable values of assets clearly were not portrayed in the case of bond (or equity) trading values of Enron either (quite the opposite of the possible claims here), so that claim of market knowledge superseding that of the information portrayed by management is debunked with not only the story of Enron, but also countless other accounting blunders in finance history.

I believe it to be also critical to point out and include the letter that I sent to the Mallinckrodt board of directors on September 28, 2020, in which I warned Mallinckrodt that their Chapter 11 contemplations were not in the best interest of shareholders, given that the plaintiffs of outstanding litigation would be far less likely to settle (with a Chapter 11 threat instead of a Chapter 7 filing threat), knowing they would receive equity in a very profitable company if they merely held out. And, just as I thought, they not only followed through on a Chapter 11 reorganization, but switched to the interests of the opposing litigants, offering them a sweeter deal than even before, not in return for anything of value to shareholders. They then not only decided it was acceptable to attempt wiping out billions in shareholder's equity, but steal from shareholders in the form of bonuses for their "hard work" negotiating for us (much sarcasm implied) as part of these restructuring plans.

**I will begin closing with that I very much hope both creditors and existing shareholders realize that it will be in everyone's best interest to throw out the current management and board of directors upon resolution of this bankruptcy case. With them stabbing longstanding shareholders in the back here, you can bet they will do it again, if it means their personal gain.**

The equity holders' rights are not at all represented at present, with management engaging in the most traitorous of actions and proving that they cannot be trusted to protect shareholders through the course of this bankruptcy process. Their actions singlehandedly underscore the need for independent equity holder representation to gain clarity and true equitable justice in this bankruptcy case of Mallinckrodt, Plc.

(Continued on Next Page)

I greatly appreciate your attention to this motion and look forward to your response.


Most Sincerely,


Alexander E. Parker
Senior Managing Director
The Buxton Helmsley Group, Inc.

**EXHIBIT A:**

**Letter to Mallinckrodt Board of Directors**
**September 28, 2020**

# BUXTON 🐎 HELMSLEY

**New York Headquarters**
1185 Avenue of the Americas, Floor 3
New York, N.Y. 10036

**Mr. Alexander E. Parker**
*Senior Managing Director*
E.  alexander.parker@buxtonhelmsley.com
T.  +1 (212) 951-1530
F.  +1 (212) 951-1530

**VIA REGISTERED U.S. POSTAL MAIL ONLY**

September 28, 2020

Mr. Angus Russell, Chairperson of the Board

Mr. Mark Trudeau, Chief Executive Officer, President, and Director

Mr. David Carlucci, Director

Mr. J. Martin Carroll, Director

Mr. Paul R. Carter, Director

Mr. David Norton, Director

Mr. Carlos V. Paya, M.D., Ph.D., Director

Ms. JoAnn Reed, Director

Ms. Anne C. Whitaker, Director

Mr. Kneeland Youngblood, M.D., Director

Mallinckrodt plc. – New Jersey Principal Office

1425 U.S. Route 206

Bedminster Township, N.J. 07921

Re:  Chapter 11 Bankruptcy Contemplation

Ladies and Gentlemen:

I write to you on behalf of The Buxton Helmsley Group, Inc., an asset management firm headquartered in New York, N.Y., and – more importantly – our investors, who currently retain a significant interest in the common stock of Mallinckrodt plc., and have for some time (even prior to the commencement of the CMS-related litigation). I had sent in an e-mail to investor relations this afternoon (September 28, 2020), outlining my concerns with the path that you are publicly contemplating, and also its negative byproduct effects that it quite obviously is having on the settlement of the outstanding opioid and CMS litigation.

I will start with that the public contemplation of a Chapter 11 filing is not as powerful of a negotiating tactic as a Chapter 7 filing threat would be. The only reason that a Chapter 11 filing should be contemplated is if creditors agree for us to retain our equity in the assets of the company, or better. If that is not possible, the only thing that should be

contemplated is a Chapter 7 filing for liquidation of the company, as our equity is valuable and there is no reason it should be wiped out. If the company continues with its contemplated Chapter 11 filing without a plan supported by creditors that current Mallinckrodt shareholders retain their interest in the company, that would be breach of your fiduciary duty, being that you are choosing the route of less assurance that existing shareholders receive consideration for their rightful equity in the company's assets – there is significant equity on the company's books that belongs to the shareholders. I also believe that it is highly detrimental and a breach of duty to use the threat of a Chapter 11 filing against those plaintiffs in the opioid and CMS litigation, being that is only to ensure the retention of the executives' jobs and being that those litigation plaintiffs would actually likely be better off with a Chapter 11 reorganization versus a Chapter 7 filing, given that they would likely receive their claim values on a much more accelerated timeline than they would with a settlement, if it were simply equitized (given that the current opioid settlement is set to pay out over multiple years). With a Chapter 7 filing, they would have no assurance that they would receive consideration for their claims, while they would almost surely receive equity in the reorganized company. The only other beneficiaries to such a reorganization where shareholders would almost surely get wiped out, would be the executives. If this ship goes down, the executives should not fare better than the current shareholders, otherwise it is quite blatantly clear that you did not act in their best interest. You should be impacted just the same as us shareholders. It is all too easy for you to simply throw in the towel, and you need to attempt to make these settlements and ensure the continuity of this company as though your jobs depend on it.

To get to the point, I am telling all of you this, as I believe that your current actions are not in the best interest of shareholders. I also worry that you will simply throw in the towel with a Chapter 11 reorganization, when that is very clearly – for the many reasons I outlined above – not in the best interest of shareholders. I must warn that if a bankruptcy filing is made not that is not in the best interest of shareholders, I will immediately prompt the filing of a class-action lawsuit against the company to both halt the bankruptcy process and ensure that we receive the value that we are entitled to (or at least maximize our chances of it). The value of this company is not something that should just be wiped away merely because it is the easy way out; this is a chunk of the retirement nest egg of many, and you must treat this situation accordingly. I am very well connected with law firms specializing in class-action litigation surrounding securities matters and have previously been a part of such class-action and whistleblower litigation. If anything is done here that is not in the best interest of shareholders, this will get very messy, as I will stand up for all shareholders here – you can count on it.

On behalf of all shareholders, I appreciate your attention to this matter and ensuring that a fair outcome is had for all.

Most Sincerely,

Alexander E. Parker
Senior Managing Director
The Buxton Helmsley Group, Inc.