# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | § §<br>§ | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | § §<br>§ | Case No. 20-12522 (JTD) |
| Debtors.[1] | § §<br>§ | (Jointly Administered) |
| | § §<br>§ | **Re: Docket No. 103** |

**FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
361, 362, 363, 503, AND 507, AND BANKRUPTCY RULES 4001 AND 9014 (I)
AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;
(III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of the above-referenced debtors, as debtors in possession

(collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**"), pursuant to sections 105,

361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "**Local Rules**"), seeking, among other things:

> (a)  authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as defined below), solely in accordance with the terms of the interim order entered on October 14, 2020 [D.I. 213] (together with all annexes and exhibits thereto, the "**Interim Order**") and this final order (together with all annexes and exhibits hereto, the "**Final Order**"), and (ii) grant adequate protection to the Prepetition Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (including Cash Collateral);

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Mallinckrodt.  The debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

(b)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(c)    except to the extent of the Carve Out (as defined below), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined below) under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law;

(d)    to the extent set forth herein, for the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)    that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of this Final Order;

(f)    waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(g)    granting related relief;

and the Interim Hearing having been held by the Court on October 14, 2020; and the Final Hearing having been held on November 10, 2020 pursuant to Bankruptcy Rule 4001, and notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Final Order; and the Court having considered the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* (the "**Welch Declaration**") and the declaration of Randall S. Eisenberg in support of the Motion [D.I. 135], the Approved Budget (as defined below) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Final Hearing; and the Court having considered the relief requested in the Motion, and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Final Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion;

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.      *Petition Date*.   On October 12, 2020 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.      *Debtors in Possession*.   Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.      *Jurisdiction and Venue*.   The Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court may enter a final order consistent with Article III of the United States Constitution.

D.      *Committees*.   On October 27, 2020, the Office of the United States Trustee for the District of Delaware appointed, pursuant to section 1102 of the Bankruptcy Code:  (a) an official committee of unsecured creditors in these Cases (the "**Unsecured Creditors Committee**"); and (b) an official committee of holders of opioid claims (the "**Opioid Claimants Committee**" and, together with the Unsecured Creditors Committee, the "**Committees**" and each a "**Committee**").

E.      *Debtors' Stipulations* .   Subject only to the rights of parties in interest specifically set forth in paragraph 20 of this Final Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that (collectively, paragraphs E(a) through E(f) below are referred to herein as the "**Debtors' Stipulations**"):

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

(a) *First Lien Loans*.

(i) Under that certain Credit Agreement, dated as of March 19, 2014, among Mallinckrodt plc ("**Parent**"), Mallinckrodt International Finance S.A. (in such capacity, the "**Lux Borrower**"), Mallinckrodt CB LLC (in such capacity, the "**Co-Borrower**"), Deutsche Bank AG New York Branch, as administrative agent and collateral agent (in its capacities as such and including any successors thereto, the "**Administrative Agent**"), the lenders and issuing banks under the Revolving Facility (as defined in the Credit Agreement) from time to time party thereto (as defined below, the "**Revolving Lenders**"), and the lenders under the Term Facility (as defined in the Credit Agreement) from time to time party thereto (as defined below, the "**Term Lenders**" and together with the Revolving Lenders, the "**First Lien Lenders**" and, together with the Administrative Agent, and each of the other Secured Parties (as defined in the Credit Agreement), the "**Prepetition First Lien Loan Secured Parties**") (such credit agreement, as amended, restated, or otherwise modified from time to time, including by, that certain Incremental Assumption Agreement No. 1, dated as of August 14, 2014, that certain Refinancing Amendment No. 1 and Incremental Assumption Agreement No. 2, dated as of August 28, 2015, that certain Letter Agreement dated as of September 30, 2016, that certain Refinancing Amendment No. 2 and Incremental Assumption Agreement No. 3, dated as of February 28, 2017, that certain Incremental Assumption Agreement No. 4, dated as of February 13, 2018, and that certain Amendment dated as of February 21, 2018, the "**Credit Agreement**" and, together with all other documentation executed in connection therewith, including without limitation, the Security Documents (as defined in the Credit Agreement), the Subsidiary Guarantee Agreement (as defined in the Credit Agreement) executed in

connection therewith, and all other Loan Documents (as defined in the Credit Agreement), the "**Credit Documents**")), certain of the Prepetition Loan Parties (as defined below) borrowed loans thereunder (the "**First Lien Loans**") in the total aggregate principal amount outstanding of $2,804,700,630.57.   As used herein, the "**Prepetition Loan Parties**" shall mean, collectively, Parent, Lux Borrower, Co-Borrower, Additional Borrowers (as defined in the Credit Agreement), and other Loan Parties (as defined in the Credit Agreement).

(ii)    As of the Petition Date, the Prepetition Loan Parties were jointly and severally indebted to the Prepetition First Lien Loan Secured Parties pursuant to the Credit Documents, including that certain Subsidiary Guarantee Agreement (as defined in the Credit Agreement), without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of not less than $900,000,000 on account of outstanding Revolving Facility Loans under (and as defined in) the Credit Agreement, (y) in the aggregate principal amount of not less than $1,904,700,630.57 on account of outstanding Term Loans under (and as defined in) the Credit Agreement, *plus*, (z) in the case of each of the preceding clauses (x) and (y), accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Credit Documents and all other Obligations (as defined in the Credit

Agreement) owing under or in connection with the Credit Documents (collectively, clauses (x), (y), and (z), the "**Prepetition First Lien Secured Loan Indebtedness**").

(iii)    *First Lien Loan Collateral*.    In connection with the Credit Agreement, certain of the Debtors entered into the Security Documents (as defined in the Credit Agreement).  Pursuant to the Security Documents and the other Credit Documents, the Prepetition First Lien Secured Loan Indebtedness is secured by valid, binding, perfected, and enforceable first-priority security interests in and liens (the "**Prepetition First Priority Loan Liens**") on all of the Collateral (as defined in the Security Documents) (the "**Prepetition Collateral**") consisting of substantially all of each Prepetition Loan Party's assets.

(iv)    *Validity, Perfection, and Priority of Prepetition First Priority Loan Liens and Prepetition First Lien Secured Loan Indebtedness*.    Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition First Priority Loan Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition First Priority Loan Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (iii) the Prepetition First Priority Loan Liens are subject and subordinate only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition First Lien Secured Parties' (as defined below) liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition First Lien Secured Parties' liens or security interests as of the Petition Date (such liens, the "**Permitted Prior**

**Liens**"); (iv) the Prepetition First Priority Loan Liens were granted to or for the benefit of the Administrative Agent and the other Prepetition First Lien Loan Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition First Lien Secured Loan Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors; (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition First Priority Loan Liens or Prepetition First Lien Secured Loan Indebtedness exist, and no portion of the Prepetition First Priority Loan Liens or Prepetition First Lien Secured Loan Indebtedness is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition First Lien Loan Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and

employees arising out of, based upon, or related to their loans under the Credit Documents, the Prepetition First Lien Secured Loan Indebtedness, or the Prepetition First Priority Loan Liens.

(b)    *First Lien Notes.*

(i)    Under that certain Indenture, dated as of April 7, 2020 (the "**First Lien Indenture**" and, together with the other Note Documents (as defined in the First Lien Indenture), as amended, restated, or otherwise modified from time to time, the "**First Lien Notes Documents**" and, together with the Credit Documents, the "**Prepetition Documents**"), for the 10.00% first lien senior secured notes (the "**First Lien Notes**") due April 15, 2025, by and among Mallinckrodt International Finance S.A. and Mallinckrodt CB LLC, as issuers (the "**First Lien Notes Issuers**"), the guarantors party thereto from time to time (the "**First Lien Notes Guarantors**"), Wilmington Savings Fund Society, FSB, as indenture trustee (including any successors thereto, the "**First Lien Indenture Trustee**"), and Deutsche Bank AG New York Branch, as collateral agent (including any successors thereto; together with the First Lien Indenture Trustee, the "**First Lien Notes Agents**"; the First Lien Notes Agents and the holders of First Lien Notes, collectively, the "**First Lien Notes Secured Parties**"; the Administrative Agent and the First Lien Notes Agents, together, the "**Prepetition First Lien Agents**"; and the First Lien Notes Secured Parties and the Prepetition First Lien Loan Secured Parties, collectively, the "**Prepetition First Lien Secured Parties**").  As used herein, the "**Prepetition First Lien Notes Parties**" shall mean, collectively, the First Lien Notes Issuers, and the guarantors party to the First Lien Notes Documents from time to time.

(ii)    As of the Petition Date, the Prepetition First Lien Notes Parties were jointly and severally indebted to the Prepetition First Lien Notes Secured Parties pursuant to the First Lien Notes Documents, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $495,032,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, premiums, costs, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the First Lien Notes Documents and all other First Priority Notes Obligations (as defined in First Lien Indenture) owing under or in connection with the First Lien Notes Documents (collectively, the "**Prepetition First Lien Notes Indebtedness**" and, together with the Prepetition First Lien Secured Loan Indebtedness, the "**Prepetition First Lien Indebtedness**").

(iii)    *First Lien Notes Collateral*.  In connection with the First Lien Indenture, certain of the Debtors entered into the First Lien Collateral Documents (as defined in the First Lien Indenture).  Pursuant to the First Lien Collateral Documents and the other First Lien Notes Documents, the Prepetition First Lien Notes Indebtedness is secured by valid, binding, perfected, and enforceable first-priority security interests in and liens on the Prepetition Collateral held by the Prepetition Lien First Notes Parties pursuant to the First Lien Notes Documents (the "**Prepetition First Lien Notes Liens**" and, together with the Prepetition First Lien Loan Liens, the "**Prepetition First Liens**").

(iv)    *Validity, Perfection, and Priority of Prepetition First Lien Notes Liens and Prepetition First Lien Notes Indebtedness*.  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition First Lien Notes Liens encumber all of the Prepetition Collateral held by the Prepetition First Lien Notes Parties, as the same existed on the Petition Date; (ii) the Prepetition First Lien Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral held by the Prepetition First Lien Notes Parties; (iii) the Prepetition First Lien Notes Liens are subject and subordinate only to Permitted Prior Liens; (iv) the Prepetition First Lien Notes Liens were granted to or for the benefit of the First Lien Notes Agents and the other First Lien Notes Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition First Lien Notes Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors; (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition First Lien Notes Liens or Prepetition First Lien Notes Indebtedness exist, and no portion of the Prepetition First Lien Notes Liens or Prepetition First Lien Notes Indebtedness is subject to any challenge, cause of action, or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (vii) the Debtors and their

10

estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition First Lien Notes Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the First Lien Notes Documents, the Prepetition First Lien Notes Indebtedness, or the Prepetition First Lien Notes Liens.

(c)     *Second Lien Notes.*

(i)     Under that certain Indenture, dated as of December 6, 2019 (the "**Second Lien Indenture**" and, together with the other Note Documents (as defined in the Second Lien Indenture), as amended restated, or otherwise modified from time to time,  the "**Second Lien Notes Documents**")), for the 10.00% second lien senior secured notes (the "**Second Lien Notes**") due April 15, 2025, by and among Mallinckrodt International Finance S.A. and Mallinckrodt CB LLC, as issuers of the Second Lien Notes (in such capacities, the "**Second Lien Notes Issuers**"), the guarantors party thereto from time to time (the "**Second Lien Notes Guarantors**"), and Wilmington Savings Fund Society, FSB, as indenture trustee and as collateral agent (including any successors thereto, the "**Second Lien Collateral Agent**"; the Second Lien Collateral Agent and the holders of Second Lien Notes, the "**Prepetition Second Lien Notes Secured Parties**" and, together with the Prepetition First Lien Secured Parties, the "**Prepetition Secured Parties**").  As

used herein, the "**Prepetition Second Lien Notes Parties**" shall mean, collectively, the Second Lien Notes Issuers, and the guarantors party to the Second Lien Notes Documents from time to time.

(ii)    As of the Petition Date, the Prepetition Second Lien Notes Parties were jointly and severally indebted to the Prepetition Second Lien Notes Secured Parties pursuant to the Second Lien Notes Documents, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $322,868,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, premiums, costs, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Second Lien Notes Documents and all other Second Priority Notes Obligations (as defined in the Second Lien Indenture) owing under or in connection with the Second Lien Notes Documents (collectively, the "**Prepetition Second Lien Notes Indebtedness**" and, together with the Prepetition First Lien Secured Loan Indebtedness and the Prepetition First Lien Notes Indebtedness, the "**Prepetition Secured Indebtedness**").

(iii)    *Second Lien Notes Collateral*.  In connection with the Second Lien Indenture, certain of the Debtors entered into the Second Lien Collateral Documents (as defined in the Second Lien Indenture).  Pursuant to the Second Lien Collateral Documents and the other Second Lien Notes Documents, the Prepetition Second Lien Notes Indebtedness is secured by valid, binding, perfected, and enforceable second-priority

RLF1 24341646v.2

security interests in and liens on the Prepetition Collateral held by the Prepetition Second Lien Notes Parties pursuant to the Second Lien Notes Documents (the "**Prepetition Second Lien Notes Liens**" and together with the Prepetition First Liens, the "**Prepetition Liens**").

(iv)    *Validity, Perfection, and Priority of Prepetition Second Lien Notes Liens and Prepetition Second Lien Notes Indebtedness.*  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (i) the Prepetition Second Lien Notes Liens encumber all of the Prepetition Collateral held by the Prepetition Second Lien Notes Parties, as the same existed on the Petition Date; (ii) the Prepetition Second Lien Notes Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral held by the Prepetition Second Lien Notes Parties; (iii) the Second Lien Notes are subject and subordinate only to the Permitted Prior Liens and the Prepetition First Liens; (iv) the Prepetition Second Lien Notes Liens were granted to or for the benefit of the Second Lien Collateral Agent and the other Prepetition Second Lien Notes Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition Second Lien Notes Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors; (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Second Lien Notes Liens or Prepetition Second Lien Notes Indebtedness exist, and no portion of the Prepetition Second Lien Notes Liens or Prepetition Second Lien Notes Indebtedness is subject to any challenge, cause of action, or defense including

impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Second Lien Notes Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Second Lien Notes Documents, the Prepetition Second Lien Notes Indebtedness, or the Prepetition Second Lien Notes Liens.

(d)     *Cash Collateral*.  Substantially all of the Prepetition Loan Parties' cash, including any amounts generated by the collection of accounts receivable, all cash proceeds of the Prepetition Collateral, and the Prepetition Loan Parties' banking, checking, or other deposit accounts with financial institutions as of the Petition Date or deposited into the Prepetition Loan Parties' banking, checking, or other deposit accounts with financial institutions after the Petition Date constitutes cash collateral of the Prepetition First Lien Secured Parties within the meaning of Bankruptcy Code section 363(a) (the "**Cash Collateral**").

14

(e)      *Bank Accounts*.  The Debtors acknowledge and agree that, as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system.

(f)      *Intercreditor Agreements*.  The Administrative Agent, the First Lien Indenture Trustee and the Second Lien Collateral Agent are parties to (i) the Second Lien Intercreditor Agreement, dated as of December 6, 2019 (as amended, restated, or otherwise modified from time to time, the "**1L-2L Intercreditor Agreement**"), which governs, among other things, the respective rights, interests, obligations, priority, and positions of the First Lien Claimholders and the Second Lien Claimholders (each as defined in the 1L-2L Intercreditor Agreement) with respect to the assets and properties of the Debtors and other obligors.  The Administrative Agent, the First Lien Indenture Trustee, and the First Lien Notes Collateral Agent are parties to the First Priority Intercreditor Agreement, dated as of April 7, 2020 (as amended, restated, or otherwise modified from time to time, the "**First Priority Intercreditor Agreement**" and, together with the 1L-2L Intercreditor Agreement, the "**Intercreditor Agreements**"), which governs, among other things, the respective rights, interests, obligations, priority, and positions of the Credit Agreement Secured Parties and the Additional Secured Parties (each as defined in the First Priority Intercreditor Agreement) with respect to the assets and properties of the Debtors and other obligors.  The Parent, the Lux Borrower, the Co-Borrower, and the Loan Parties acknowledged and agreed to the 1L-2L Intercreditor Agreement, and the Parent, the Lux Borrower, the Co-Borrower, and the Loan Parties acknowledged and agreed to the First Priority Intercreditor Agreement.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Credit

Documents, any of the First Lien Notes Documents, or any of the Second Lien Notes Documents shall (a) remain in full force and effect, (b) continue to govern the relative obligations, priorities, rights and remedies of (i) the Credit Agreement Secured Parties and the Additional Secured Parties (each as defined in the First Priority Intercreditor Agreement) in the case of the First Priority Intercreditor Agreement; *provided* that nothing in this Final Order shall be deemed to provide liens to any of the Credit Agreement Secured Parties or the Additional Secured Parties on any assets of the Debtors except as set forth herein, and (ii) the First Lien Claimholders and Second Lien Claimholders (each as defined in the 1L-2L Intercreditor Agreement) in the case of the 1L-2L Intercreditor Agreement, and (c) not be deemed to be amended, altered or modified by the terms of this Final Order.

   F. ***Adequate Protection.*** The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, as a condition for the use of their Prepetition Collateral, including the Cash Collateral, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any postpetition diminution in value of their respective interests in the Prepetition Collateral as of the Petition Date resulting from the Carve Out, the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral), the grant of a lien under section 364 of the Bankruptcy Code, and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code ("**Diminution in Value**").  The foregoing shall not, nor shall any other provision of this Final Order be construed as, a determination or finding that there has been or will be any Diminution in Value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

G.      ***Need to Use Cash Collateral***.  The Debtors have an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral (subject to and in compliance with the Approved Budget (as defined below)), in order to, among other things, (i) permit the orderly continuation of their businesses, (ii) pay certain Adequate Protection Payments; and (iii) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors.  An immediate and critical need exists for the Debtors to use the Cash Collateral, consistent with the Approved Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases.  The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their estates.  Absent entry of this Final Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

H.      ***Notice***.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 4001-2, notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors.  The notice given by the Debtors of the Motion, the relief requested herein, and of the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 4001-2.

I.      ***Consent by Prepetition Secured Parties.***  To the extent required, the Prepetition Secured Parties have consented or are deemed to consent under the applicable Intercreditor Agreement to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Final Order.***Relief Essential; Best Interest***.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2.  The relief requested in the Motion (and as provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and

17

preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

K.    ***Arm's-Length, Good Faith Negotiations***.  The terms of this Final Order were negotiated in good faith and at arm's-length between the Debtors and the Prepetition Secured Parties.  The Prepetition First Lien Loan Secured Parties, the Prepetition First Lien Notes Secured Parties and the Prepetition Second Lien Notes Secured Parties have acted without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral, including in respect of the granting of the Adequate Protection Liens (as defined below) and all documents related to and all transactions contemplated by the foregoing.

Now, therefore, upon the record of the proceedings heretofore held before this Court with respect to the Motion, the evidence adduced at the Final Hearing, and the statements of counsel thereat, and based upon the foregoing findings and conclusions,

**IT IS HEREBY ORDERED THAT:**

1.    ***Motion Granted***.  The Motion is granted on a final basis as set forth herein, and the use of Cash Collateral is authorized subject to the terms of this Final Order.

2.    ***Objections Overruled***.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

3.    ***Authorization to Use Cash Collateral; Budget***.

(a)    *Authorization*.  Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtors' use of Cash Collateral until the applicable Termination Date

18

(as defined below), in each case, solely and exclusively in a manner consistent with this Final Order and the Approved Budget, and for no other purposes; *provided, however* that the foregoing authorization to use Cash Collateral is not intended to permit the Debtors to use the approximately $25,000,000 of cash posted in connection with certain insurance programs, and described in the Debtors' motion seeking authority to maintain and continue insurance programs [D.I. 5], except as currently used.

(b)      *Approved Budget; Budget Period*.    As used in this Final Order: (i) "**Approved Budget**" means the budget annexed hereto as <u>Exhibit 1</u>, as such Approved Budget may be modified from time to time by the Debtors subject to not receiving notice of an objection from the Administrative Agent acting at the direction of the Required Lenders (as defined in the Credit Agreement, the "**Required Lenders**") in their reasonable discretion as set forth in paragraph 3(e) of this Final Order; and (ii) "**Budget Period**" means the rolling four-week (4-week) period set forth in the Approved Budget in effect at such time.

(c)      *Budget Testing*.  The Debtors may use Cash Collateral strictly in accordance with the Approved Budget, subject to Permitted Variances (as defined below).   Permitted Variances shall be tested on a rolling four (4) week basis beginning on October 30, 2020 and on every second Friday thereafter (each such date, a "**Testing Date**").   On or before 5:00 p.m. (prevailing Eastern time) on the fourth (4th) business day following each Testing Date, the Debtors shall prepare and deliver to the Administrative Agent, RPA Advisors, LLC, White & Case LLP, Fox Rothschild LLP, and any local counsel retained in connection with foreign proceedings related to these Cases, as advisors to the Administrative Agent (the "**Administrative Agent Advisors**"), the ad hoc group of revolving loan participants (the "**Ad Hoc Revolving Loan Participants Group**"), Jones Day and Cousins Law, LLP, as counsel to the Ad Hoc Revolving Loan

Participants Group (the "**Ad Hoc Revolving Loan Participants Advisors**"), the ad hoc group of Term Lenders (the "**Ad Hoc First Lien Term Lender Group**"), Evercore Group, LLC, Gibson, Dunn & Crutcher LLP, Troutman Pepper Hamilton Sanders LLP and any local counsel retained in connection with foreign proceedings related to these Cases, as advisors to the Ad Hoc First Lien Term Lender Group (the "**Ad Hoc First Lien Term Lender Advisors**,"), the First Lien Indenture Trustee, counsel to the First Lien Indenture Trustee, the Ad Hoc First Lien Notes Group,[3] the Ad Hoc First Lien Notes Advisors[4] (collectively with the Administrative Agent, the Administrative Agent Advisors, the Ad Hoc Revolving Loan Participants Group, the Ad Hoc Revolving Loan Participants Advisors, and the Ad Hoc First Lien Term Lender Group, the Ad Hoc First Lien Term Lender Advisors, the First Lien Indenture Trustee, counsel to the First Lien Indenture Trustee, and the Ad Hoc First Lien Notes Group, the "**First Lien Notice Parties**"), the Ad Hoc Second Lien Notes Group (as defined below) and the Ad Hoc Second Lien Notes Advisors (as defined below and with the Ad Hoc Second Lien Notes Group, the "**Second Lien Notes Notice Parties**" and, collectively with the First Lien Notice Parties, the "**Notice Parties**"), in form and substance reasonably satisfactory to the Notice Parties, a variance report (the "**Variance Report**") setting forth: (i) the Debtors' actual disbursements, excluding Restructuring Professional Fees and Customer Rebates (each as defined below) (the "**Actual Disbursements**") on a line-by-line and aggregate basis during the two and four week periods ending on the applicable Testing Date; (ii) the Debtors' actual cash receipts (the "**Actual Cash Receipts**") on a line-by-line and aggregate basis during the four weeks preceding the applicable Testing Date; (iii) the Debtors' net cash flow

---

[3]  "**Ad Hoc First Lien Notes Group**" means an ad hoc group of holders of First Lien Notes formed by the holders of a majority in aggregate principal amount of First Lien Notes (if any).

[4]  "**Ad Hoc First Lien Notes Group Advisors**" means the legal and financial advisors to the Ad Hoc First Lien Notes Group.

during the two and four week periods preceding the applicable Testing Date, calculated by subtracting Actual Disbursements from Actual Cash Receipts (the "**Actual Net Cash Flows**"); (iv) customer rebate on-demand payments ("**Customer Rebates**"); (v) Restructuring Professional Fees; (vi) a comparison (whether positive or negative, in dollars and expressed as a percentage) of the aggregate and line-item Actual Cash Receipts and Actual Disbursements, and aggregate Actual Net Cash Flows, Restructuring Professional Fees and Customer Rebates, for the prior two and four week periods to the amounts set forth in the Approved Budget for such prior two and four week periods; and (vii) any Positive Variances (as defined below) that have been carried forward to the Budget Period as of the applicable Testing Date.[5]  For purposes of this paragraph 3(c) and the following paragraph 3(d), the Debtors' Actual Cash Receipts, Actual Disbursements and Actual Net Cash Flows for any prepetition period shall be deemed to be the budgeted or projected amounts for such prepetition period.

(d)      *Permitted Variances*.  The Debtors shall not permit: (i) aggregate Actual Disbursements to be more than 120% of the aggregate projected disbursements for the relevant four-week budgeted period as set forth in the Approved Budget applicable to each week in such period (such deviations from the applicable projected amount set forth in the Approved Budget satisfying the foregoing, the "**Permitted Variances**"); *provided* that, for the avoidance of doubt, the cash disbursements considered for determining compliance with this covenant shall exclude the Debtors' disbursements in respect of restructuring professional fees (including, without limitation, amounts paid to professionals to the Committees, payments made to the Prepetition

---

[5]      Notwithstanding anything to the contrary set forth in this Final Order, Variance Reports and Proposed Budgets shall not be delivered to (and may not be shared with) any members of the Ad Hoc Revolving Loan Participants Group, the Ad Hoc First Lien Term Lender Group, the Ad Hoc First Lien Notes Group or the Ad Hoc Second Lien Notes Group or any other Prepetition Secured Parties except to the extent bound by obligations of confidentiality pursuant to either (i) the Credit Agreement (as "private side" lenders) or (ii) a separate confidentiality agreement entered into with the Debtors.

Secured Parties on account of professional fees under paragraph 4(g) of this Final Order, and professional fee payments to other creditors or creditor groups (such excluded cash disbursements, the "**Restructuring Professional Fees**")) and Customer Rebates; and *provided, further*, that the Debtors may carry forward Actual Disbursements in respect of "Total Operating Disbursements" (as identified in the applicable Approved Budget) below the budgeted amounts from the week ending on any Testing Date (a "**Positive Variance**") for use in connection with the testing of Actual Disbursements pursuant to this clause (i) over the four-week period immediately following such Testing Date (but not any subsequent period); and (ii) the Debtors' unrestricted cash and cash equivalents ("**Liquidity**") to be less than $400,000,000 at the end of any week (such amount, the "**Minimum Liquidity Amount**").   Any amendment, modification or supplement to this Final Order that would result in Restructuring Professional Fees of one or both Committees becoming subject to budget compliance testing in accordance with this paragraph 3(d) shall not be effective unless (i) consented to in writing by the affected Committee(s) or (ii) ordered by the Court after reasonable notice to the Committees of such amendment, modification or supplement.

(e)     *Proposed Budget Updates*.  On or before the second (2nd) day before the end of each Budget Period, the Debtors shall deliver to the Notice Parties a rolling 13-week cash flow forecast of the Debtors substantially in the format of the initial Approved Budget (each, a "**Proposed Budget**"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), shall become the Approved Budget effective *unless* the Administrative Agent (as directed by the Required Lenders in their reasonable discretion) notifies the Debtors of any reasonable objection to the Proposed Budget within four (4) business days after receipt of the Proposed Budget (the "**Approval Deadline**").  For the avoidance of doubt, the Debtors' use of Cash Collateral shall be governed by the then-existing Approved Budget (x) at all times prior to

the earlier of (i) the Administrative Agent's approval of the Proposed Budget in accordance with this paragraph and (ii) the Approval Deadline; and (y) during the pendency of any unresolved objection by the Administrative Agent to the Proposed Budget. The Debtors shall provide a copy of any Approved Budget subsequent to the initial Approved Budget to any future claimants' representative appointed in these chapter 11 cases (any such representative, the "**FCR**") reasonably contemporaneously with the approval of such Approved Budget.

(f)     *Miscellaneous*.  For the avoidance of doubt, except as otherwise set forth in the Approved Budget, Cash Collateral may not be used (i) by any non-Debtor entity, or (ii) to pay any expense of any non-Debtor entity, in each case, except as necessary to satisfy trade claims against non-Debtor entities in the ordinary course of the Debtors' and non-Debtors' business and consistent with the historical practices of such entities and the Approved Budget.

4.     ***Adequate Protection for the Prepetition First Lien Secured Parties.***

(a)     Subject only to the Carve Out and the terms of this Final Order, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition First Lien Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount to the Diminution in Value resulting from the Debtors'[6] sale, lease or use of the Prepetition Collateral (including Cash Collateral), the grant of a lien under section 364, and/or the imposition of the automatic stay, each of the Administrative Agent, for the benefit of itself and

---

[6]     For purposes of paragraphs 4 and 5 of this Final Order, the term "Debtors" includes (a) with respect to adequate protection provided to the Prepetition First Lien Loan Secured Parties, only the Prepetition Loan Parties; and (b) with respect to the adequate protection provided to the Prepetition First Lien Notes Secured Parties and Prepetition Second Lien Notes Secured Parties, only the Prepetition First Lien Notes Parties and Prepetition Second Lien Notes Parties, as applicable.

RLF1 24341646v.2

the other Prepetition First Lien Loan Secured Parties, and the First Lien Notes Agents, for their

benefit and the other Prepetition First Lien Notes Secured Parties, is hereby granted the following:

        (b)    *First Lien Adequate Protection Liens*.  Pursuant to Bankruptcy Code

sections 361(2) and 363(c)(2), solely to the extent of any Diminution in Value of the Prepetition

First Lien Secured Parties' interests in the Prepetition Collateral and subject in all cases to the

Carve Out (as defined below), effective as of the Petition Date and in each case perfected without

the necessity of the execution by the Debtors (or recordation or other filing) of security agreements,

control agreements, pledge agreements, financing statements, mortgages or other similar

documents, or by possession or control, the Debtors are authorized to grant, and hereby deemed to

have granted, to the Administrative Agent, for the benefit of itself and the other Prepetition First

Lien Loan Secured Parties, and to the First Lien Notes Agents, for the benefit of itself and the

other Prepetition First Lien Notes Secured Parties, valid, binding, continuing, enforceable, fully-

perfected, nonavoidable, first-priority senior (except as otherwise provided in this paragraph 4(b)

below with respect to the Permitted Prior Liens), additional and replacement security interests in

and liens on (all such liens and security interests, the "**First Lien Adequate Protection Liens**")

(i) the Prepetition Collateral and (ii) all of the Debtors' other now-owned and hereafter-acquired

real and personal property, assets and rights of any kind or nature, wherever located, whether

encumbered or unencumbered, including, without limitation, all prepetition property and

postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof,

whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without

limitation, all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and

other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or

after the Petition Date), insurance, equity interests, intercompany claims, accounts receivable,

other rights to payment, all general intangibles, contracts, securities, chattel paper, all interest rate

hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights,

trademarks, trade names, rights under license agreements and other intellectual property, claims

and causes of action, and any and all proceeds, products, rents, and profits of the foregoing (all

property identified in this paragraph 4(b) being collectively referred to as the "**Collateral**"),

subject only to the Permitted Prior Liens, in which case the First Lien Adequate Protection Liens

shall be immediately junior in priority to such Permitted Prior Liens and to the Carve Out;

*provided,* that notwithstanding the foregoing, the Collateral shall exclude:  (i) in all cases, all

claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code other

than section 549 of the Bankruptcy Code (the "**Avoidance Actions**"), but shall include proceeds

of and other property that is recovered or becomes unencumbered as a result of (whether by

judgment, settlement, or otherwise) (A) any Avoidance Actions (the "**Avoidance Action**

**Proceeds**") and (B) any claims or causes of action arising under section 549 of the Bankruptcy

Code (and proceeds thereof); (ii) solely with respect to the Prepetition First Lien Loan Secured

Parties, any Avoidance Action Proceeds or proceeds of an action arising under section 549 of the

Bankruptcy Code, in each case resulting from the avoidance of a transfer made, or obligation

incurred, to or for the benefit of the Prepetition First Lien Loan Secured Parties; (iii) solely with

respect to the Prepetition First Lien Notes Secured Parties, any Avoidance Action Proceeds or

proceeds of an action arising under section 549 of the Bankruptcy Code, in each case, resulting

from the avoidance of a transfer made, or obligation incurred, to or for the benefit of the Prepetition

First Lien Notes Secured Parties; and (iv) solely with respect to the Prepetition Second Lien Notes

Secured Parties, any Avoidance Action Proceeds or proceeds of an action arising under section

549 of the Bankruptcy Code, in each case, resulting from the avoidance of a transfer made, or obligation incurred, to or for the benefit of the Prepetition Second Lien Notes Secured Parties.

(c)      *First Lien Adequate Protection Superpriority Claims*.  As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtors are authorized to grant, and hereby deemed to have granted effective as of the Petition Date, to the Administrative Agent, for the benefit of itself and the other Prepetition First Lien Loan Secured Parties, and to the First Lien Notes Agents, for the benefit of itself and the other Prepetition First Lien Notes Secured Parties, allowed superpriority administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "**First Lien Adequate Protection Superpriority Claims**"), but junior to the Carve Out.  Subject to the Carve Out, the First Lien Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code; *provided*, that notwithstanding anything to the contrary herein, (x) the Prepetition First Lien Loan Secured Parties shall not be entitled to recover on their First Lien Adequate Protection Superpriority Claims from any Avoidance Action Proceeds or proceeds of an action arising under section 549 of the Bankruptcy Code, in each case, resulting from the avoidance of a transfer made, or obligation incurred, to or for the benefit of the Prepetition First Lien Loan Secured Parties; and (y) the Prepetition First Lien Notes Secured Parties shall not be entitled to recover on their First Lien Adequate Protection Superpriority Claims from any Avoidance Action

26

Proceeds or proceeds of an action arising under section 549 of the Bankruptcy Code, in each case, resulting from the avoidance of a transfer made, or obligation incurred, to or for the benefit of the Prepetition First Lien Notes Secured Parties.

(d)     *First Lien Adequate Protection Payments*.  As further adequate protection, the Debtors were authorized and directed by the Interim Order, and are authorized and directed by this Final Order, to pay to the Administrative Agent for the ratable benefit of the Prepetition First Lien Loan Secured Parties and to the First Lien Indenture Trustee for the ratable benefit of the Prepetition First Lien Notes Secured Parties, adequate protection payments in cash as follows:  (i) no later than three (3) business days after the date of the Interim Order (in the case of amounts payable to the Administrative Agent for the ratable benefit of the Prepetition First Lien Loan Secured Parties under the Credit Agreement) or October 15, 2020 (in the case of amounts payable to the First Lien Indenture Trustee for the ratable benefit of the Prepetition First Lien Notes Secured Parties), the first such adequate protection payment was paid in an amount equal to the amount comprising all accrued and unpaid interest, and fees (including, as applicable, Commitment Fees, L/C Participation Fees, Issuing Bank Fees, and Administrative Agent Fees (in each case, as defined in the Credit Agreement), but excluding, for the avoidance of doubt, any make-whole, prepayment premium, or similar amount set forth in the First Lien Indenture) due and payable under the Credit Agreement and the First Lien Indenture (as applicable) from the date of the last interest payment made by the Borrowers under the Credit Agreement through and including the date of the Interim Order, and from the date of the last interest payment made by the Issuers under the First Lien Indenture (as applicable) through and including the date of payment, with (A) interest payable to the Administrative Agent for the ratable benefit of the Prepetition First Lien Loan Secured Parties under the Credit Agreement calculated based on the Adjusted LIBO

Rate (as defined under the Credit Agreement) plus Applicable Margin (as defined under the Credit Agreement) plus, solely with respect to interest accruing during the period beginning on the Petition Date and ending on the date of payment pursuant to this clause (i), 200 basis points and (B) interest payable to the First Lien Indenture Trustee for the ratable benefit of the Prepetition First Lien Notes Secured Parties calculated based on the non-default interest rate under the First Lien Indenture; and (ii)(A) on the last business day of each calendar month thereafter (solely in the case of the amounts payable to the Administrative Agent for the ratable benefit of the Prepetition First Lien Loan Secured Parties under the Credit Agreement) and (B) on January 15, 2021 and on each three-month anniversary thereof (or, if such three-month anniversary is not on a business day, the immediately succeeding business day, and no interest shall accrue on any amount that would have been otherwise payable on such date if it were a business day for the intervening period), and on any other date (after the date of the first adequate protection payment) when due and payable under the First Lien Indenture, each such adequate protection payment shall be paid in an amount comprising all accrued and unpaid interest, quarterly amortization (which, for the avoidance of doubt, shall be payable only at the end of each fiscal quarter) and fees (including, as applicable, Commitment Fees, L/C Participation Fees, Issuing Bank Fees, and Administrative Agent Fees (in each case, as defined in the Credit Agreement), but excluding, for the avoidance of doubt, any make-whole, prepayment premium, or similar amount set forth in the First Lien Indenture), with interest payable to the Administrative Agent for the ratable benefit of the Prepetition First Lien Loan Secured Parties calculated based on the Adjusted LIBO Rate plus 200 basis points plus Applicable Margin under the Credit Agreement and interest payable to the First Lien Indenture Trustee for the ratable benefit of the Prepetition First Lien Notes Secured Parties calculated based on the non-default interest rate under the First Lien Indenture (all payments

referenced in this sentence, collectively, the "**First Lien Adequate Protection Payments**");
*provided* that, notwithstanding the foregoing, but subject in all respects to the Debtors' stipulations
contained in paragraph E hereof, the respective rights of the Debtors, the Administrative Agent,
each of the Prepetition First Lien Loan Secured Parties, the First Lien Indenture Trustee, each of
the Prepetition First Lien Notes Secured Parties, and any other parties in interest with respect to
the rate of interest, if any, required to be paid to the Administrative Agent and Prepetition First
Lien Loan Secured Parties, and the First Lien Indenture Trustee and each of the Prepetition First
Lien Notes Secured Parties, during the pendency of these Chapter 11 Cases or to the allowance of
any claims or other obligations (including, without limitation, in respect of the amount of
contractual or default interest, any make-whole, prepayment premium, or similar amount set forth
in the Credit Agreement or the First Lien Indenture, or any other amounts) under, arising or related
to the Credit Agreement or the First Lien Indenture shall be reserved and preserved in all respects.
For the avoidance of doubt, the payment of adequate protection payments pursuant to this
paragraph shall be without prejudice to (x) the rights of any of the Prepetition First Lien Secured
Parties to assert claims for payment of additional interest at any other rates in accordance with the
Credit Agreement or the First Lien Indenture, as applicable and the rights of the Debtors or any
other party in interest to object to or otherwise contest such claims, (y) the rights of any of the
Prepetition First Lien Secured Parties to assert claims for payment of make-whole, prepayment
premium, or similar amount set forth in the Credit Agreement or the First Lien Indenture, as
applicable and the rights of the Debtors or any other party in interest to object to or otherwise
contest such claims, and (z) whether any such payments should be recharacterized or reallocated
pursuant to the Bankruptcy Code as payments of principal, interest or otherwise.  All First Lien
Adequate Protection Payments made to or for the benefit of the Prepetition First Lien Secured

Parties shall be subject in all respects to the terms of the First Priority Intercreditor Agreement, including any provisions governing the sharing or allocation thereof.  For the avoidance of doubt, any calculations of interest payable pursuant to this section shall be in accordance with Section 2.13(e) of the Credit Agreement (with respect to the First Lien Loans) or computed on the basis of a 360-day year of twelve 30-day months (with respect to the First Lien Notes).  For purposes of this paragraph 4(d), the Adjusted LIBO Rate shall continue to be determined by election of the Debtors in accordance with Section 2.07 of the Credit Agreement (and if no such election is made, in accordance with the first sentence of Section 2.07(e) of the Credit Agreement).  For the avoidance of doubt, the timing or manner of payment of any Adequate Protection Payment by the Debtors pursuant to the first and the antepenultimate sentence of this paragraph 4(d) shall not limit, restrict or otherwise impair in any way the rights of the Prepetition Loan Parties or other Debtors with respect to any proposed reinstatement of any Prepetition Secured Indebtedness under section 1124 of the Bankruptcy Code.

(e)    *Right to Seek Additional Adequate Protection*.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(f)    *Other Covenants*.  The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash management motion.  The Debtors shall not use, sell or lease any material assets with an aggregate fair market value in excess of $750,000 in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the First Lien Notice Parties at least five (5) business days' prior

to the date on which the Debtors seek the authority of this Court for such use, sale or lease.  The Debtors shall comply with the covenants contained in Section 5.02 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral.

> (g)     *Fees and Expenses*.  As additional adequate protection, the Debtors were authorized and directed pursuant to the Interim Order, and are authorized and directed pursuant to this Final Order, to pay in full in cash and in immediately available funds:  (i) within ten (10) days after the Debtors' receipt of invoices therefor, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors), arising prior to the Petition Date through and including the date of entry of the Interim Order, incurred by the Administrative Agent (including the reasonable and documented fees, expenses, and disbursements incurred by the Administrative Agent Advisors), the Ad Hoc Revolving Loan Participants Group (including the reasonable and documented fees, expenses and disbursements incurred by the Ad Hoc Revolving Loan Participants Advisors, not to exceed $167,000 for the prepetition period), the Ad Hoc First Lien Term Lender Group (including the reasonable and documented fees, expenses and disbursements incurred by the Ad Hoc First Lien Term Lender Advisors), and the First Lien Notes Agents (including the reasonable and documented fees, expenses and disbursements incurred by the First Lien Notes Agents' legal counsel); and (ii) subject to paragraph 27, on a monthly basis, within ten (10) days of the Debtors' receipt of invoices therefor, the reasonable and documented fees, expenses and disbursements (including, but not limited to, the reasonable and documented fees, expenses and disbursements of the Administrative Agent Advisors, the Ad Hoc Revolving Loan Participants Advisors (not to exceed $375,000 per three-month period (the "**Revolving Loan Participant Advisor Fee Cap**"); *provided*, that (x) unused amounts in any three-month period

will be rolled forward to, and increase the Revolving Loan Participant Advisor Fee Cap, in any subsequent three-month period; and (y) any amounts in excess of the Revolving Loan Participant Advisor Fee Cap that are actually incurred by the Ad Hoc Revolving Loan Participants Advisors in any three-month period will be carried forward and treated as incurred in the subsequent three-month period), the Ad Hoc First Lien Term Lender Advisors, the First Lien Notes Agents' legal counsel, and the Ad Hoc First Lien Notes Advisors (not to exceed (I) $800,000 for the three-month period beginning on the Petition Date; and (II) $400,000 for each three-month period thereafter (the "**Ad Hoc First Lien Notes Advisor Fee Cap**"); *provided*, that (x) unused amounts in any three-month period will be rolled forward to, and increase the Ad Hoc First Lien Notes Advisor Fee Cap, in any subsequent three-month period; and (y) any amounts in excess of the Ad Hoc First Lien Notes Advisor Fee Cap that are actually incurred by the Ad Hoc First Lien Notes Advisors in any three-month period will be carried forward and treated as incurred in the subsequent three-month period) incurred by the Administrative Agent, the Ad Hoc Revolving Loan Participants Group, the Ad Hoc First Lien Term Lender Group, the First Lien Notes Agents and the Ad Hoc First Lien Notes Group (as applicable) arising subsequent to the date of entry of the Interim Order through the date on which the Debtors' authority to use Cash Collateral terminates in accordance with this Final Order.  None of the foregoing reasonable and documented fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.  Any payments made pursuant to this paragraph 4(g) shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest or otherwise.

RLF1 24341646v.2

(h)    *Reporting Requirements*.    As additional adequate protection to the Prepetition First Lien Loan Secured Parties, the Prepetition Loan Parties shall comply with the reporting requirements set forth in Section 5.04 and Section 5.05 of the Credit Agreement and shall provide, subject to any applicable limitations set forth below, the following additional reporting to (i) the Administrative Agent (it being understood that any information shared with the Administrative Agent may also be shared by the Administrative Agent with the First Lien Lenders and the First Lien Notice Parties who are bound by obligations of confidentiality pursuant to the Credit Agreement[7] or a separate confidentiality agreement entered into with the Debtors); and (ii) the First Lien Indenture Trustee (it being understood that any information shared with the First Lien Indenture Trustee may also be shared by the First Lien Indenture Trustee with the First Lien Notes Secured Parties and First Lien Notice Parties who are bound by obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtors):

(i)    at the times specified in paragraph 3(c) hereof, the Variance Report required by paragraph 3(c) hereof;

(ii)    timely delivery of each Proposed Budget as set forth in this Final Order;

(iii)    in-person or teleconference meetings between (a) the Debtors and, to the extent appropriate, their advisors, including any consultant, turnaround management, broker or financial advisory firm retained by any Debtor in any of the Cases, and (b) the First Lien Notice Parties, at such times as any of the First Lien Notice Parties may reasonably request (including via electronic mail delivered by any of the First Lien Notice

---

[7]    The Administrative Agent agrees that any non-public information delivered under this Final Order shall be made available only to "private side" First Lien Loan Secured Parties.

Parties), but in the case of any meetings involving the Debtors' management, to be (A) limited to one such in-person or teleconference meeting per month (or more frequently as the Debtors may agree in their reasonable discretion), and at places reasonably acceptable to the Debtors (to the extent such presentations are in-person) and (B) at the option of the Debtors, held jointly with any meetings between the Debtors' management and the Second Lien Notice Parties, to the extent the Second Lien Notice Parties request such meetings;

(iv)    the Debtors will grant the Administrative Agent Advisors, the Ad Hoc Revolving Loan Participants Advisors, the Ad Hoc First Lien Term Lender Advisors, the First Lien Indenture Trustee's advisors and the Ad Hoc First Lien Notes Advisors access to the data room established by the Debtors prior to the Petition Date for purposes of sharing information with such parties, and populate such data room with such information and other documents in the Debtors' possession that (A) are customarily provided to senior secured lenders in connection with chapter 11 restructurings and (B) are reasonably requested by the Administrative Agent Advisors, Ad Hoc Revolving Loan Participants Advisors, Ad Hoc First Lien Term Lender Advisors, the First Lien Indenture Trustee's advisors and/or the Ad Hoc First Lien Notes Advisors;

(v)    notice of the occurrence of the Debtors' Liquidity falling below the Minimum Liquidity Amount at the end of any week and the amount of such Liquidity as of such time; and

(vi)    with respect to each calendar month and to be delivered when the Debtors' monthly operating reports are due:  (A) a schedule of the actual professional fees for each advisor or legal counsel for the prior calendar month, and (B) intercompany

transactions between any Debtor and any non-Debtor during the prior the calendar month and a narrative explanation for such transactions; and

(vii)    as soon as reasonably practicable after written request from any of the First Lien Notice Parties, the Debtors will, to the extent appropriate and acting reasonably, provide the First Lien Notice Parties with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any Debtor in any of the Cases;

*provided* that nothing in this paragraph 4(h) shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement (except binding agreements with affiliates or that are entered into in contemplation of this paragraph 4(h)), or that would waive any attorney-client or similar privilege (it being understood and agreed that (i) the Debtors shall use commercially reasonable efforts to take any such action required under paragraph 4(h) in a way that would not conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege and (ii) if any such Debtor (or any such advisor), in reliance on this proviso, elects to withhold any information that would otherwise be required to be provided pursuant to this paragraph 4(h), the Debtors shall provide written notice to the Administrative Agent and/or the First Lien Indenture Trustee (as applicable) of such election and specify in such notice the basis for the Debtors' (or the applicable advisor's) election to withhold such information and identify in such notice the type of information it has elected to withhold).  The Debtors shall make available to counsel and advisors to each Committee any reporting, notices or other information provided to the First Lien Notice Parties pursuant to paragraph 3(c) and this paragraph 4(h) (with the sharing of any such reporting, notices or other information with the members of each such Committee

being subject to all applicable confidentiality agreements and other arrangements between the Debtors and each Committee (including, without limitation, the confidentiality provisions of any by-laws and any confidentiality agreements between the Debtors and advisors to the Committee)).

(i)      *Miscellaneous*.  Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 4, the First Lien Adequate Protection Liens and First Lien Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties pursuant to paragraph 4 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

5.      ***Adequate Protection for the Prepetition Second Lien Notes Secured Parties.***

(a)      Subject only to the Carve Out and the terms of this Final Order, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition Second Lien Notes Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount to the Diminution in Value resulting from the Debtors' sale, lease, or use of the Prepetition Collateral (including Cash Collateral), the grant of a lien under section 364, and/or the imposition of the automatic stay, the Second Lien Collateral Agent, for the benefit of itself and the other Prepetition Second Lien Notes Secured Parties, is hereby granted the following:

(b)      *Second Lien Adequate Protection Liens*.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), solely to the extent of any Diminution in Value of the Prepetition Second Lien Notes Secured Parties' interests in the Prepetition Collateral and subject in all cases to the Carve Out (as defined below), effective as of the Petition Date and in each case perfected

without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors are authorized to grant, and hereby deemed to have granted, to the Second Lien Collateral Agent, for the benefit of itself and the other Prepetition Second Lien Notes Secured Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, senior (except as otherwise provided in this paragraph 5(b)), additional and replacement security interests in and liens on (all such liens and security interests, the "**Second Lien Adequate Protection Liens**" and, together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**") (i) the Prepetition Collateral and (ii) the Collateral, which Second Lien Adequate Protection Liens shall be junior only to the Permitted Prior Liens, the Carve Out, the First Lien Adequate Protection Liens and the Prepetition First Liens, in which case the Second Lien Adequate Protection Liens shall be junior in priority, first, to the Permitted Prior Liens; second, to the Carve Out; third, to the First Lien Adequate Protection Liens; and, fourth, to the Prepetition First Liens.

(c)     *Second Lien Adequate Protection Superpriority Claims*.    As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtors are authorized to grant, and hereby deemed to have granted, effective as of the Petition Date, to the Second Lien Collateral Agent, for the benefit of itself and the other Prepetition Second Lien Notes Secured Parties, allowed superpriority administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "**Second Lien Adequate Protection Superpriority Claims**" and together with the First Lien Adequate Protection Superpriority Claims, the "**Adequate Protection Superpriority Claims**"), but junior

37

to the Carve Out and the First Lien Adequate Protection Superpriority Claims.  Subject to the

Carve Out and the First Lien Adequate Protection Superpriority Claims, the Second Lien Adequate

Protection Superpriority Claims will not be junior to any claims and shall have priority over all

administrative expense claims and other claims against each of the Debtors, now existing or

hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative

expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331,

365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code;

*provided*, that notwithstanding anything to the contrary herein, the Prepetition Second Lien Notes

Secured Parties shall not be entitled to recover on their Second Lien Adequate Protection

Superpriority Claims from any Avoidance Action Proceeds or proceeds of an action arising under

section 549 of the Bankruptcy Code, in each case, resulting from the avoidance of a transfer made,

or obligation incurred, to or for the benefit of the Prepetition Second Lien Notes Secured Parties.

The Second Lien Adequate Protection Superpriority Claims may be paid under any plan of

reorganization in any combination of cash, debt, equity or other property having a value on the

effective date of such plan equal to the allowed amount of such claims.

(d)    *Second Lien Adequate Protection Payments*.    As further adequate

protection, the Debtors were authorized and directed by the Interim Order, and are authorized and

directed by this Final Order, to pay to the Second Lien Collateral Agent for the ratable benefit of

the Prepetition Second Lien Notes Secured Parties, adequate protection payments in cash as

follows: (i) no later than October 15, 2020, the first such adequate protection payment was paid in

an amount equal to the amount comprising all accrued and unpaid interest, and fees (excluding,

for the avoidance of doubt, any make-whole, prepayment premium, or similar amount set forth in

the Second Lien Indenture) due and payable under the Second Lien Indenture from the date of the

last interest payment made by the Issuers under the Second Lien Indenture through and including the date of payment with interest payable to the Second Lien Collateral Agent for the ratable benefit of the Prepetition Second Lien Notes Secured Parties calculated based on the non-default interest rate under the Second Lien Indenture and computed on the basis of a 360-day year of twelve 30-day months; and (ii) on January 15, 2021 and on each three-month anniversary thereof (or, if such three-month anniversary is not on a business day, the immediately succeeding business day, and no interest shall accrue on any amount that would have been otherwise payable on such date if it were a business day for the intervening period), and on any date when due and payable under the terms of the Second Lien Indenture, each such adequate protection payment shall be paid in an amount comprising all accrued and unpaid interest and fees (but excluding, for the avoidance of doubt, any make-whole, prepayment premium, or similar amount set forth in the Second Lien Indenture), with interest payable to the Second Lien Collateral Agent for the ratable benefit of the Prepetition Second Lien Notes Secured Parties calculated based on the non-default interest rate under the Second Lien Indenture and computed on the basis of a 360-day year of twelve 30-day months (all payments referenced in this sentence, collectively, the "**Second Lien Adequate Protection Payments**" and, together with the First Lien Adequate Protection Payments, the "**Adequate Protection Payments**"); *provided* that, notwithstanding the foregoing, but subject in all respects to the Debtors' stipulations contained in paragraph E hereof, the respective rights of the Debtors, the Prepetition Second Lien Notes Secured Parties, and any other parties in interest with respect to the rate of interest, if any, required to be paid to the Prepetition Second Lien Notes Secured Parties during the pendency of these Chapter 11 Cases or to the allowance of any claims or other obligations (including, without limitation, in respect of the amount of contractual or default interest, any make-whole, prepayment premium, or similar amount set forth in the Second

Lien Indenture, or any other amounts) under, arising or related to the Second Lien Indenture shall be reserved and preserved in all respects. For the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to (x) the rights of any of the Prepetition Second Lien Notes Secured Parties to assert claims for payment of additional interest at any other rates in accordance with the Second Lien Indenture, as applicable, and the rights of the Debtors or any other party in interest to object to or otherwise contest such claims, (y) the rights of any of the Prepetition Second Lien Notes Secured Parties to assert claims for payment of make-whole, prepayment premium, or similar amount set forth in the Second Lien Indenture and the rights of the Debtors or any other party in interest to object to or otherwise contest such claims, and (z) whether any such payments should be recharacterized or reallocated pursuant to the Bankruptcy Code as payments of principal, interest or otherwise. For the avoidance of doubt, the timing or manner of payment of any Adequate Protection Payment by the Debtors pursuant to the first sentence of this paragraph 5(d) shall not limit, restrict or otherwise impair in any way the rights of the Prepetition Loan Parties or other Debtors with respect to any proposed reinstatement of any Prepetition Secured Indebtedness under section 1124 of the Bankruptcy Code.

(e)    *Right to Seek Additional Adequate Protection*. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Second Lien Notes Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(f)    *Other Covenants*. The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash management motion. The Debtors shall not use, sell or lease any material assets with an aggregate fair market value in excess of $750,000 in any single transaction or series of related transactions

outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Ad Hoc Second Lien Notes Group (as defined below) and the Ad Hoc Second Lien Notes Advisors (as defined below) at least five (5) business days' prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease.

(g)    *Fees and Expenses*.   As additional adequate protection, the Debtors were authorized and directed pursuant to the Interim Order, and are authorized and directed pursuant to this Final Order, to pay in full in cash and in immediately available funds, solely to the extent required by the terms of the engagement letters entered into by the Debtors and the professionals to the Prepetition Second Lien Notes Secured Parties: (i) within ten (10) days after the Debtors' receipt of invoices therefor, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) arising prior to the Petition Date through and including the date of entry of the Interim Order, incurred by (A) the ad hoc group of holders of Second Lien Notes comprised of, *inter alia*, Deerfield Partners L.P. (the "**Ad Hoc Second Lien Notes Group**") (including the reasonable and documented fees, expenses and disbursements incurred by Sullivan & Cromwell LLP, Potter Anderson & Corroon LLP and Miller Buckfire & Co., as financial advisor (collectively, the "**Ad Hoc Second Lien Notes Advisors**"), and (B) the Second Lien Indenture Trustee and the Second Lien Collateral Agent (including the reasonable and documented fees, expenses and disbursements incurred by the Second Lien Indenture Trustee's and Second Lien Collateral Agents' legal counsel, including one primary restructuring counsel and one local counsel), arising prior to the Petition Date; and (ii) subject to paragraph 27, on a monthly basis, within ten (10) days of the Debtors' receipt of invoices therefor, the reasonable and documented fees, expenses and disbursements incurred by (A) the Ad Hoc Second Lien Notes

41

Group (including, but not limited to, the reasonable and documented fees, expenses and disbursements of the Ad Hoc Second Lien Notes Advisors not to exceed (I) $800,000 for the three-month period beginning on the Petition Date; and (II) $400,000 for each three-month period thereafter (the "**Ad Hoc Second Lien Notes Advisor Fee Cap**"); *provided*, that (x) unused amounts in any three-month period will be rolled forward to, and increase the Ad Hoc Second Lien Notes Advisor Fee Cap, in any subsequent three-month period; and (y) any amounts in excess of the Ad Hoc Second Lien Notes Advisor Fee Cap that are actually incurred by the Ad Hoc Second Lien Notes Advisors in any three-month period will be carried forward and treated as incurred in the subsequent three-month period), and (B) the Second Lien Collateral Agent, arising subsequent to the date of entry of the Interim Order through the date on which the Debtors' authority to use Cash Collateral terminates in accordance with this Final Order.  None of the foregoing reasonable and documented fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.  Any payments made pursuant to this paragraph 5(g) shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest or otherwise.

(h)     *Reporting Requirements*.    As additional adequate protection to the Prepetition Second Lien Notes Secured Parties, the Prepetition Loan Parties shall provide, subject to any applicable limitations set forth below, the following additional reporting to the Second Lien Collateral Agent (it being understood that any information shared with the Second Lien Collateral Agent may also be shared by the Second Lien Collateral Agent with the Second Lien Notes

Secured Parties who are bound by obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtors):

(i)        at the times specified in paragraph 3(c) hereof, the Variance Report required by paragraph 3(c) hereof;

(ii)        timely delivery of each Proposed Budget as set forth in this Final Order;

(iii)        in-person or teleconference meetings between (a) the Debtors and, to the extent appropriate, their advisors, including any consultant, turnaround management, broker or financial advisory firm retained by any Debtor in any of the Cases, and (b) the Second Lien Notes Notice Parties, at such times as any of the Second Lien Notes Notice Parties may reasonably request (including via electronic mail delivered by any of the Second Lien Notes Notice Parties), but in the case of any meetings involving the Debtors' management, to be (A) limited to a maximum of one such in-person or teleconference meeting per month, and at places reasonably acceptable to the Debtors (to the extent such presentations are in-person), and (B) at the option of the Debtors, held jointly with any meetings between the Debtors' management and the First Lien Notice Parties, to the extent the First Lien Notice Parties request such meetings.

(iv)        the Debtors will grant the Second Lien Collateral Agent advisors and Second Lien Notes Advisors access to the data room established by the Debtors prior to the Petition Date for purposes of sharing information with such parties, and populate such data room with such information and other documents in the Debtors' possession that (A) are customarily provided to senior secured lenders in connection with chapter 11

43

restructurings and (B) are reasonably requested by the Second Lien Collateral Agent advisors or Second Lien Notes Advisors;

(v)     notice of the occurrence of the Debtors' Liquidity falling below the Minimum Liquidity Amount at the end of any week and the amount of such Liquidity as of such time; and

(vi)     with respect to each calendar month and to be delivered when the Debtors' monthly operating reports are due:  (A) a schedule of the actual professional fees for each advisor or legal counsel for the prior calendar month, and (B) intercompany transactions between any Debtor and any non-Debtor during the prior the calendar month and a narrative explanation for such transactions; and

(vii)     as soon as reasonably practicable after written request from any of the Second Lien Notes Notice Parties, the Debtors will, to the extent appropriate and acting reasonably, provide the Second Lien Notes Notice Parties with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by any Debtor in any of the Cases;

*provided* that nothing in this paragraph 5(h) shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement (except binding agreements with affiliates or that are entered into in contemplation of this paragraph 5(h)), or that would waive any attorney-client or similar privilege (it being understood and agreed that (i) the Debtors shall use commercially reasonable efforts to take any such action required under paragraph 5(h) in a way that would not conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege and (ii) if any such Debtor (or any such advisor), in reliance on this proviso, elects to

44

withhold any information that would otherwise be required to be provided pursuant to this paragraph 5(h), the Debtors shall provide written notice to the Second Lien Collateral Agent of such election and specify in such notice the basis for the Debtors' (or the applicable advisor's) election to withhold such information and identify in such notice the type of information it has elected to withhold).

(i)     *Miscellaneous*.  Except for (i) the Carve Out, (ii) the First Lien Adequate Protection Liens and the First Lien Adequate Protection Superpriority Claims, and (iii) as otherwise provided in paragraph 5, the Second Lien Adequate Protection Liens and Second Lien Adequate Protection Superpriority Claims granted to the Prepetition Second Lien Notes Secured Parties pursuant to paragraph 5 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise. The Second Lien Adequate Protection Payments and the cash payments provided for in paragraph 5(d) shall be subject to the terms of the 1L-2L Intercreditor Agreement in all respects, and the Administrative Agent's right to recovery and turnover of such amounts is reserved and not impaired or prejudiced by this Final Order.

6.     ***Carve Out.****Priority of Carve Out*.  Each of the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out (as defined below).

(b)     *Definition of Carve Out*.  As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "**U.S. Trustee**") under section 1930(a) of title 28 of the United States

Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by (A) persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committees pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**") and (B) the FCR (if any) and persons or firms retained by the FCR pursuant to an order of the Court (collectively, the "**FCR Professionals**" and, together with the Debtor Professionals and Committee Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the Administrative Agent (at the direction of the Required Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "**Pre-Carve Out Trigger Notice Cap**"); (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $20 million incurred after the first business day following delivery by the Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise; and (v) all amounts required to be paid to (I) Guggenheim Securities, LLC on account of any transaction fees earned under that certain engagement letter between Guggenheim Securities, LLC and the Debtors, dated as of September 1, 2019 (as amended by that certain amendment, dated as of September 22, 2020), (II) Moelis & Company LLC on account of any transaction fees earned under its engagement letter with the Unsecured Creditors Committee, and (III) Jefferies LLC on account of any transaction fees earned under its engagement letter with the Opioid Claimants Committee,

in each case, payable under sections 328, 330 and/or 331 of the Bankruptcy Code, to the extent not yet paid or due as of the delivery of a Carve Out Trigger Notice and allowed by order of this Court at any time (the amounts set forth in clause (iv) above and this clause (v) being the "**Post-Carve Out Trigger Notice Cap**"); *provided* that no fees or expenses of any Professional Persons may be included in the calculation of both the Post-Carve Out Trigger Notice Cap and the Pre-Carve Out Trigger Notice Cap.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Administrative Agent (as directed by Required Lenders in their sole discretion) to the Debtors, their lead restructuring counsel (Latham & Watkins LLP), the U.S. Trustee, counsel to each Committee, and the FCR (if any), which notice may be delivered following the occurrence and during the continuation of a Termination Event (as defined below) stating that the Post-Carve Out Trigger Notice Cap has been invoked.

        (c)     *Carve Out Reserve*.  Notwithstanding the occurrence of a Termination Event, on the day on which a Carve Out Trigger Notice is given by the Administrative Agent to the Debtors with copies to counsel to each Committee and the FCR (if any) (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination

Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Pre-Carve Out Trigger Notice Cap (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to the Intercreditor Agreements.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Post-Carve Out Trigger Notice Cap and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be used first to pay any Pre-Carve Out Amounts until paid in full and then paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to the Intercreditor Agreements. Notwithstanding anything to the contrary in the Credit Documents, the First Lien Notes Documents, the Second Lien Notes Documents, or this Final Order:  (i) if the Post-Carve Out Trigger Notice Reserve is not funded in full in the amount set forth in this paragraph 6, then, any excess funds in the Pre-Carve Out Trigger Notice Reserve following the payment of the Pre-Carve Out Amounts shall be used to fund the Post-Carve Out Trigger Notice Reserve, up to the applicable

amounts set forth in paragraphs 6(b)(iv) and (v), prior to making any payments to the Prepetition First Lien Loan Secured Parties; (ii) if, following delivery of a Carve Out Trigger Notice and any reallocation of amounts in the Carve Out Reserves pursuant to the immediately preceding clause (i), either of the Carve Out Reserves is funded in an amount that does not cover actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, then such Carve Out Reserves will be funded in an amount that will be equal to the value of actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, as soon as practicable but no later than two (2) business days following discovery of such shortfall by the Debtors; (iii) following delivery of a Carve Out Trigger Notice, the Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Administrative Agent for application in accordance with the Credit Documents, the First Lien Notes Documents, the Second Lien Notes Documents, and the Intercreditor Agreements; (iv)(A) disbursements by the Debtors from the Carve Out Reserves shall not increase or reduce the Prepetition First Lien Secured Loan Indebtedness, the First Lien Notes Indebtedness or the Second Lien Notes Indebtedness, (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (C) in no way shall the Approved Budget, Proposed Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors; and (v) for the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the Prepetition Secured Indebtedness,

the Adequate Protection Liens, the Adequate Protection Superiority Claims, any claims arising under section 507(b) of the Bankruptcy Code, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Indebtedness.

(d)     *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce or be deemed to reduce the Carve Out.

(e)     *No Direct Obligation To Pay Allowed Professional Fees*.  The Administrative Agent, the Prepetition First Lien Agents, the Second Lien Collateral Agent, and the other Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget and including, without limitation, any amount of fees or expenses identified in the definition of "Carve Out."   Except for funding the Carve Out Reserves as provided herein, none of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the applicable Carve Out

Reserve on a dollar-for-dollar basis.  For the avoidance of doubt, the funding or payment of the Carve Out from cash on hand or other available cash shall not reduce Prepetition Secured Indebtedness.

7.     *Access and Information*.  In addition to, and without limiting, whatever rights to access the Prepetition First Lien Loan Secured Parties have under the Prepetition Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit the Administrative Agent (acting on behalf of itself or any Prepetition First Lien Loan Secured Party), the Ad Hoc First Lien Term Lender Advisors, the Ad Hoc Revolving Loan Participants Advisors, the First Lien Indenture Trustee (acting on behalf of itself or any Prepetition First Lien Notes Secured Party), the First Lien Indenture Trustee's advisors, the Ad Hoc First Lien Notes Group, the Ad Hoc First Lien Notes Advisors, the Ad Hoc Second Lien Notes Group and the Ad Hoc Second Lien Notes Advisors (each of which is bound by obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtors) to have access to such information regarding the operations, business affairs and financial condition of the Parent, the Borrowers or any of their subsidiaries, or compliance with the terms of any Credit Document, as the Administrative Agent (acting on behalf of itself or any Prepetition First Lien Loan Secured Party), the First Lien Indenture Trustee (acting on behalf of itself or any Prepetition First Lien Notes Secured Party), the Ad Hoc First Lien Term Lender Advisors, the Ad Hoc Revolving Loan Participants Advisors, the Ad Hoc First Lien Notes Group, the Ad Hoc First Lien Notes Advisors, the Ad Hoc Second Lien Notes Group or the Ad Hoc Second Lien Notes Advisors may reasonably request, and it being understood that nothing in this paragraph 7 shall require the Debtors (or any of their advisors) to take any action that would

51

conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

8. ***Termination***.   Subject to the Remedies Notice Period (as defined herein) and paragraph 6, the Debtors' right to use the Cash Collateral pursuant to this Final Order shall automatically cease without further court proceedings on the Termination Date (as defined herein). As used herein "**Termination Events**" means any of the events set forth in clauses (a) through (p) below (each such event, a "**Termination Event**"):

(a)      [Reserved.]

(b)      The violation of any term of this Final Order by the Debtors that is not cured within five (5) business days of receipt by the Debtors of notice of such default, violation or breach (which may be provided to the Debtors by e-mail);

(c)      Entry of any order modifying, reversing, revoking, staying for a period in excess of five (5) business days, rescinding, vacating, or amending this Final Order in a manner materially adverse to the rights, interests, priorities, or entitlements of the Prepetition First Lien Loan Secured Parties or that materially modifies any of the Debtors' obligations to the Prepetition First Lien Loan Secured Parties, in each case, without the express written consent of the Required Lenders;

(d)      Any of the Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code without the express written consent of the Administrative Agent, or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any of the Cases, or any of the Debtors seeks entry of an order accomplishing any of the foregoing, except where the dismissal or conversion is for a Debtor that, at the time of such dismissal, has dormant business activities and a fair market value of less than $250,000;

RLF1 24341646v.2

(e)        An order is entered granting another claim or lien (except for the Permitted Prior Liens) *pari passu* with or senior to (i) the Prepetition First Liens, First Lien Adequate Protection Liens or First Lien Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties under this Final Order, or (ii) except as provided under this Final Order, the Second Lien Adequate Protection Liens or the Second Lien Adequate Protection Superpriority Claims granted to the Prepetition Second Lien Notes Secured Parties under this Final Order;

(f)        Any motion, pleading, or proceeding is filed or is commenced by any Debtor seeking, or otherwise consenting to, (i) the invalidation, subordination, or other challenge to the Prepetition First Lien Secured Loan Indebtedness, the Prepetition First Lien Notes Indebtedness, the Prepetition Liens, the First Lien Adequate Protection Liens, or the First Lien Adequate Protection Superpriority Claims, the Prepetition Second Lien Notes Indebtedness, the Second Lien Adequate Protection Liens, or the Second Lien Adequate Protection Superpriority Claims or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Secured Parties;

(g)        Any Debtor files a motion, pleading, or proceeding that would, if the relief sought therein were granted, result in a Termination Event (other than a Termination Event under this paragraph 8(g)), and such motion, pleading, or proceeding is not dismissed or withdrawn (as applicable) within five (5) business days after receipt by the Debtors of notice (which may be by e-mail) that the Administrative Agent has determined that such motion, pleading, or proceeding, if the relief sought therein were granted, would give rise to such a Termination Event;

(h)        The entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to any entities other than the

53

Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral (except for the Permitted Prior Liens) without the written consent of the Required Lenders (in the case of the Prepetition First Lien Loan Secured Parties), the First Lien Indenture Trustee (in the case of the Prepetition First Lien Notes Secured Parties) or the Second Lien Collateral Agent (in the case of the Prepetition Second Lien Notes Secured Parties);

(i)        The entry of a subsequent order of the Court authorizing the use of Cash Collateral by any Debtor that is not a Prepetition Loan Party in violation of this Final Order;

(j)        The failure by the Debtors to make any payment required pursuant to this Final Order when due; *provided* that such failure remains uncured for at least three (3) business days following a written notice from the Administrative Agent;

(k)        The failure by the Debtors to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Final Order within five (5) business days following a request therefor from any of the Notice Parties pursuant to the terms of this Final Order; or any such documents or other information shall contain a material misrepresentation; *provided* that, such misrepresentation remains uncured for at least five (5) business days following written notice thereof from any of the First Lien Notice Parties or the Second Lien Notice Parties; *provided, further,* that in the event any of the individuals named or described on <u>Annex A</u> to this Final Order (each, a "**Knowledge Party**"), become aware of any material misrepresentation contained in such documents or other information, the Debtors shall promptly (but in no event more than two (2) business days thereafter) inform the Notice Parties of such misrepresentation;

(l)      The Debtors' failure to comply with an Approved Budget except with respect to Permitted Variances or the Debtors' failure at the end of any week to maintain Liquidity in an amount equal to or greater than the Minimum Liquidity Amount;

(m)      The failure of the Debtors to observe or perform any of the material terms or material provisions contained herein, *provided* that such failure remains uncured for at least five (5) business days following written notice thereof from any of the First Lien Notice Parties or the Second Lien Notice Parties; *provided, further*, that in the event any Knowledge Party becomes aware of any such failure to observe the material terms or provisions contained herein, the Debtors shall promptly (but in no event more than two (2) business days thereafter) inform the Notice Parties of such failure;

(n)      The entry of an order of this Court approving the terms of any debtor in possession financing for any of the Prepetition Loan Parties;

(o)      The entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code authorizing any party to exercise remedies against any asset of the Debtors without which the Debtors' ability to operate their business in the ordinary course would be materially and adversely affected; and

(p)      The failure of the Debtors to meet any of the deadlines set forth on <u>Exhibit 2</u> (collectively, the "**Milestones**"); *provided* that any Milestones may be extended by written agreement (e-mail between counsel shall suffice) between the Debtors and the Administrative Agent (acting at the direction of the Required Lenders in their sole discretion) without further entry of an order of the Court; *provided*, *further* that the Debtors shall provide notice of any such Milestone extensions to the U.S. Trustee, counsel to each Committee, and the FCR (if any).

9.     *Remedies after the Termination Date*.

(a)     Notwithstanding anything contained herein, the Debtors' authorization to use Cash Collateral hereunder shall automatically terminate (except for purposes of funding the Carve Out, as provided in paragraph 6) on the date (such date, the "**Termination Date**") that is the earlier of (i) 5:00 p.m. on April 30, 2022, (ii) the effective date of any chapter 11 plan with respect to the Debtors confirmed by the Court, (iii) the date on which all or substantially all of the assets of the Debtors are sold in a sale under any chapter 11 plan or pursuant to section 363 of the Bankruptcy Code, (iv) the occurrence of a Termination Event under section 8(c), (d), or (i) of this Final Order, or (v) five (5) business days from the date (the "**Termination Declaration Date**") on which written notice of the occurrence of any other Termination Event is given (which notice may be given by electronic mail (or other electronic means)) by the Administrative Agent to counsel to the Debtors, counsel to each Committee, the FCR (if any), and the U.S. Trustee (the "**Termination Declaration**," and such period commencing on the Termination Declaration Date and ending five (5) business days later, the "**Remedies Notice Period**"); *provided* that, until expiration of the Remedies Notice Period, the Debtors may continue to use Cash Collateral to make payments in respect of expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget; and *provided, further,* that the Debtors may continue to use Cash Collateral during or after expiration of the Remedies Notice Period solely to the extent necessary to fund the Carve Out Reserves subject to paragraph 6 hereof.  The automatic stay in the Cases otherwise applicable to the Prepetition Secured Parties is hereby modified so that upon the occurrence of the Termination Date, the Administrative Agent, the First Lien Notes Agents, and the Second Lien Collateral Agent (as applicable) shall be entitled to exercise their rights and remedies in accordance

with the Intercreditor Agreements, the Credit Documents and this Final Order with respect to the Debtors' use of Cash Collateral.

(b)    During the Remedies Notice Period, if applicable, the Debtors, each Committee, the FCR (if any) and/or any party in interest shall be entitled to seek an emergency hearing with the Court to (i) contest the existence of a Termination Event, and/or (ii) seek non-consensual use of Cash Collateral and continue the automatic stay; *provided* that if a hearing to consider the foregoing is requested to be heard before the end of the Remedies Notice Period but is scheduled for a later date by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing, but in no event later than eight (8) business days after delivery of the Termination Declaration.  Upon expiration of the Remedies Notice Period, if applicable, the Administrative Agent (at the direction of the Required Lenders in their sole discretion) shall be permitted, subject to the Intercreditor Agreements, to exercise all remedies set forth herein, in the Intercreditor Agreements, in the Credit Documents, and as otherwise available at law or in equity without further order of or application or motion to this Court consistent with this Final Order.

(c)    Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief.  Any delay or failure of the Administrative Agent to exercise rights under the Credit Documents, the Intercreditor Agreements, or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority, or enforceability of any and all rights, remedies, benefits, and protections provided to any

of the Prepetition Secured Parties under this Final Order, which rights, remedies, benefits, and protections shall survive the Termination Date or the delivery of a Termination Declaration.

10.    ***Payments Free and Clear***.  Any and all payments or proceeds remitted to the Administrative Agent for the benefit of the First Lien Lenders, the First Lien Notes Agents for the benefit of the Prepetition First Lien Notes Secured Parties, and the Second Lien Collateral Agent for the benefit of the Prepetition Second Lien Notes Secured Parties pursuant to the provisions of this Final Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 4(d), 4(g), 5(d), 5(g) and 20 of this Final Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b).

11.    ***Limitation on Charging Expenses Against Collateral***. All rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

12.    ***Section 507(b) Reservation***.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Agents, the Second Lien Collateral Agent or the other Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) during the Cases or any successor cases, including, but not limited to, any case under chapter 7 of the Bankruptcy Code upon the

conversion of any of the Cases, or in any other proceedings superseding or related to any of the Cases.

13.     ***Reservation of Rights of the Prepetition Secured Parties***.  This Final Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of any of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard in any matter raised in the Cases, or any party in interest from contesting any of the foregoing, and (b) any and all rights, remedies, claims and causes of action which the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Indebtedness.  For all adequate protection purposes throughout the Cases, each of the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

14.     ***Modification of Automatic Stay***.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Final Order.

15.     ***Survival of Final Order***.  The provisions of this Final Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112

of the Bankruptcy Code or otherwise.  The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Final Order, shall continue notwithstanding any conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Cases.  Subject to the limitations described in paragraphs 4(d), 4(g), 5(d), 5(g) and 20 of this Final Order, the Adequate Protection Payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in any of the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

16.     ***No Third-Party Rights***.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

17.     ***Release***.  Subject to the rights and limitations set forth in paragraph 20 of this Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Prepetition Secured Parties (each in their respective roles as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and assigns, and predecessors and successors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type,

whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the First Lien Loans, the First Lien Notes, the Second Lien Notes, the Prepetition Liens, the Prepetition Secured Indebtedness, the Credit Documents, the First Lien Notes Documents, the Second Lien Notes Documents, or the Intercreditor Agreements, the Interim Order, or this Final Order, as applicable, and/or the transactions contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Prepetition Secured Parties.

18.     ***Binding Effect***.  The terms of this Final Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Final Order by this Court.

19.     ***Reversal, Stay, Modification or Vacatur***.  In the event the provisions of this Final Order are reversed, stayed, modified or vacated by court order following notice and any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Final Order.  Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Final Order arising prior to the Administrative Agent's, the First Lien Indenture Trustee's, or the Second Lien Collateral Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by

61

the original provisions of this Final Order, and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Final Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

20.     *Reservation of Certain Third-Party Rights and Bar of Challenge and Claims*.

(a)     Subject to the Challenge Period (as defined below), the stipulations, admissions, waivers, and releases contained in this Final Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors, including, without limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other estate representative, in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations, shall be binding upon all other parties in interest, including the Committees and any other person acting on behalf of the Debtors' estates, unless and solely to the extent that a party in interest files a motion seeking standing to file an adversary proceeding or contested matter under the Bankruptcy Rules (and specifying the basis for the Challenge (as defined below) asserted therein) (i) before (A) except as to the Supporting Governmental Opioid Claimants (as defined in the RSA[8]), any FCR, or the Committees, seventy-five (75) calendar days after entry of the Interim Order, (B)  in the case of each Committee and

---

[8]     "**RSA**" means that certain Restructuring Support Agreement, dated as of October 11, 2020, by and among the Debtors and the Supporting Parties (as defined therein).

any FCR, one-hundred fifty (150) calendar days after entry of the Final Order, and (C) in the case

of any Supporting Governmental Opioid Claimant, seventy-five (75) calendar days after the RSA

terminates as to the Supporting Governmental Opioid Claimants (the occurrence of such

termination of the RSA, a "**Governmental Opioid Claimant RSA Termination Event**");

*provided* that, following a Governmental Opioid Claimant RSA Termination Event, in the event a

majority of the Supporting Governmental Opioid Claimants, by number, enter into a support

agreement which, among other things, obligates such Supporting Governmental Opioid Claimants

to support a plan of reorganization for the Debtors that provides for treatments of Opioid Claims

and First Lien Credit Agreement Claims (each term as defined in the RSA) that are consistent with

the treatments of such claims set forth in the RSA or as otherwise agreed by the Governmental

Plaintiff Ad Hoc Committee (as defined in the RSA) and the Ad Hoc First Lien Term Lender

Group (a "**Subsequent Support Agreement**"), (x) the time period in this clause (C) shall

automatically be tolled with respect to any Supporting Governmental Opioid Claimant that is a

party to such Subsequent Support Agreement, without prejudice, until the termination of any such

Subsequent Support Agreement, and (y) the time period in this clause (C) shall continue and not

be tolled with respect to any Supporting Governmental Opioid Claimant that is not a party to such

Subsequent Support Agreement, in the case of each of clauses (A) through (C) above, subject to

further extension by written agreement of the Debtors and the Administrative Agent, the First Lien

Indenture Trustee and/or the Second Lien Collateral Agent (as applicable) and/or order of the

Bankruptcy Court (in each case, a "**Challenge Period**" and, the date of expiration of each

Challenge Period, a "**Challenge Period Termination Date**"); *provided*, *however*, that if, prior to

the end of the applicable Challenge Period, (x) the Cases are converted to Cases under chapter 7

of the Bankruptcy Code, or (y) a chapter 11 trustee is appointed, then, in each such case, the

Challenge Period shall be extended by the later of (I) the time remaining under the applicable Challenge Period plus ten (10) days or (II) such other time as ordered by the Court solely with respect to any such trustee appointed, (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding:  (A) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition Secured Parties; or (B) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Indebtedness (any such claim, a "**Challenge**"); and (iii) the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter, which is no longer subject to appeal.

(b)    To the extent the stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations, are (x) not subject to a Challenge timely and properly commenced prior to the expiration of the Challenge Period Termination Date or (y) subject to a Challenge timely and properly commenced prior to the expiration of the Challenge Period Termination Date, to the extent any such Challenge does not result in a final and nonappealable judgment or order of the Court that is inconsistent with the stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations, then, without further notice, motion, or application to, or order of, or hearing before, this Court and without the need or requirement to file any proof of claim:  (i) any and all such Challenges by any party (including the Committees, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any successor case) shall be deemed to be forever, waived, released, and barred; (ii) the Prepetition Secured Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination,

recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any successor cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtors' stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Final Order shall be in full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any successor cases.

(c)     If a Challenge is timely and properly filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such Challenge on behalf of the Debtors' estates.  Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules, the stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committees and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such timely and properly filed Challenge prior to the Challenge Period Termination Date and determined by final order of the Court to be disallowed.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, the Committees, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any challenges (including a Challenge) with respect to the Credit Documents, the First Lien Notes Documents, the Second Lien Notes Documents, the Prepetition Liens, and the Prepetition Secured Indebtedness, and a separate order of the Court conferring such standing on any Committee or

other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.  For the avoidance of doubt, to the extent any Challenge is timely and properly commenced, the Prepetition Secured Parties shall be entitled to reimbursement or payment of the related reasonable and documented costs and expenses, including, but not limited to, reasonable and documented attorneys' fees, incurred in defending themselves in any such proceeding in accordance with and subject to paragraphs 4(g) and 5(g) of this Final Order.

21.   ***Limitation on Use of Collateral and Cash Collateral***.  Notwithstanding anything to the contrary set forth in this Final Order, but subject to the proviso below in this paragraph 21, none of the Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds thereof may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person:   (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the Prepetition Secured Parties (in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief that would impair the rights and remedies of the Prepetition Secured Parties under the Credit Documents, the First Lien Notes Documents, or the Second Lien Notes Documents (as applicable) or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Committees in connection with the

assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the Prepetition Secured Parties to recover on the Prepetition Collateral or seeking affirmative relief against any of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Indebtedness, or the Prepetition Secured Parties' respective Prepetition Liens or security interests in the Collateral or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against any of the Prepetition Secured Parties, or the Prepetition Secured Parties' respective liens on or security interests in the Collateral or the Prepetition Collateral that would impair the ability of any of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Indebtedness, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever (including, without limitation, any Avoidance Actions) related to the Prepetition Secured Indebtedness or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness or the Prepetition Liens; *provided*, that notwithstanding the foregoing, (x) an aggregate of $425,000 of Cash Collateral may be used for the payment of

professional fees, disbursements, costs, or expenses incurred by the Committees to investigate potential Challenges, and (y) an aggregate of $50,000 of Cash Collateral may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any FCR to investigate potential Challenges (the amounts in (x) and (y), each, an "Investigation Budget Amount").  For the avoidance of doubt, nothing in this paragraph 21 shall:  (A) limit a Committee professional or an FCR Professional from incurring professional fees and expenses  and seeking allowance of such professional fees and expenses by this Court, or (B) constitute a waiver by any party of its rights under section 1129(a)(9) of the Bankruptcy Code in respect of treatment of any administrative expense claim for allowed professional fees under a plan subject, in each case, to any other party's right to object to the allowance of such professional fees and expenses or such treatment under a plan, and provided, further, that the payment of any such allowed professional fees or expenses shall not be payable from Cash Collateral in excess of the applicable Investigation Budget Amount unless otherwise ordered by the Court (including, for the avoidance of doubt, in connection with an order approving a professional's final fee application).

22.     ***Enforceability; Waiver of Any Applicable Stay***.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

23.     ***Proofs of Claim***.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section

503(b) of the Bankruptcy Code, neither the Administrative Agent, First Lien Notes Agents, the Second Lien Collateral Agent, nor any Prepetition Secured Party shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Secured Indebtedness or any claims (including, without limitation, Adequate Protection Superpriority Claims) arising under the Interim Order, this Final Order and the Debtors' Stipulations shall be deemed to constitute timely filed proofs of claim against each of the applicable Debtors in the Cases.  The Administrative Agent on behalf of the First Lien Lenders, may (but is not required) in its discretion to file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Cases or any successor cases for any claim allowed herein, and any such proof of claim may (but is not required to) be filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. The failure of the Administrative Agent, First Lien Notes Agents, the Second Lien Collateral Agent, or any Prepetition Secured Party to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Credit Documents, First Lien Notes Documents, the Second Lien Notes Documents (as defined in the 1L-2L Intercreditor Agreement), or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Administrative Agent's, First Lien Notes Agents', Second Lien Collateral Agent's, or any Prepetition Secured Party's respective rights, remedies, powers, or privileges under any of the Credit Documents, First Lien Notes Documents, the Second Lien Notes Documents, the Interim Order, this Final Order or applicable law (as applicable).  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

24.      ***Intercreditor Agreements***.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Credit Documents, any of the First Lien Notes Documents, and any of the Second Lien Notes Documents shall (a)  remain in full force and effect, (b) continue to govern the relative and respective obligations, priorities, rights and remedies of (i) the Credit Agreement Secured Parties and the Additional Secured Parties (each as defined in the First Priority Intercreditor Agreement) in the case of the First Priority Intercreditor Agreement; *provided* that nothing in this Final Order shall be deemed to grant liens or security interests to any of the Credit Agreement Secured Parties or the Additional Secured Parties on or in any assets of the Debtors except as set forth herein and (ii) the First Lien Claimholders and the Second Lien Claimholders (each as defined in the 1L-2L Intercreditor Agreement) in the case of the 1L-2L Intercreditor Agreement, and (c) not be deemed to be amended, altered or modified by the terms of this Final Order unless expressly set forth herein or therein.

25.      ***Section 552(b) of the Bankruptcy Code***.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

26.      ***No Marshaling***.  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral, as the case may be; *provided*, that prior to seeking payment of any adequate protection claims (including Adequate Protection Superpriority Claims) from the Avoidance Action Proceeds, the Prepetition Secured Parties shall use commercially reasonable

efforts to first seek to satisfy such claims from all other Collateral, and such Avoidance Action Proceeds shall be preserved during the pendency of such efforts to seek to satisfy such claims from all other Collateral; and *provided, further*, notwithstanding anything to the contrary in this paragraph, the rights and arguments of all parties in interest, including the Committees, concerning the appropriate allocation among the Debtors of any Plan distributions made to or recoveries received by the Prepetition Secured Parties are unaffected hereby and are expressly preserved.

27.    ***Expense Invoices; Disputes; Indemnification***.

(a)    Any of the Debtors' obligations to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, or any other amounts described in the Prepetition Documents of this Final Order as such amounts become due, shall not require the Prepetition Loan Parties, Prepetition First Lien Notes Parties, and Prepetition Second Lien Notes Parties' (as applicable) or any party to obtain further Court approval.  For the avoidance of doubt, such payments include, without limitation, Administrative Agent's fees and expenses, the Ad Hoc Revolving Loan Participants Advisors' fees and expenses, the Ad Hoc Term Lender Advisors' fees and expenses, the First Lien Notes Agents' fees and expenses, the Ad Hoc First Lien Notes Advisors' fees and expenses, the Second Lien Indenture Trustee's fees and expenses, the Ad Hoc Second Lien Notes Advisors' fees and expenses, and the reasonable and documented fees and disbursements of counsel and other professionals, in each case to the extent set forth in paragraphs 4 and 5 of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order, the Credit Documents, First Lien Notes Documents or the Second Lien Notes Documents.

(b)    The Prepetition Loan Parties shall be jointly and severally obligated to pay all reasonable and documented fees and expenses described above, which obligations shall

constitute Prepetition Secured Indebtedness.   The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in in paragraphs 4 and 5 of this Final Order without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date; *provided, that* copies of invoices for such professional fees, expenses and disbursements (the "**Invoiced Fees**") shall be served by email on the Debtors, the U.S. Trustee, counsel to each Committee, and counsel to the FCR (collectively, the "**Fee Notice Parties**"), who shall have ten (10) business days  (the "**Review Period**") to review and assert any objections thereto.   Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include a list of professionals providing services, with rates and hours worked, and a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information (such information, collectively, "**Confidential Information**"), and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law; *provided*, *however*, that the U.S. Trustee reserves the right to seek copies of invoices containing detailed time entries of any such professional (which detailed invoices may be redacted to the extent necessary to protect Confidential Information). The Debtors, each Committee, the FCR or the U.S. Trustee may dispute the payment of any portion

of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, a Debtor, either Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days' prior written notice to the submitting party of any hearing on such motion or other pleading). For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)     Subject to any restrictions imposed by applicable law, nothing in this Final Order shall abrogate the indemnification provisions set forth in Section 9.05(b) of the Credit Agreement.

28.     *Wholesaler Reservation of Rights*.  Notwithstanding any contrary provision of this Order, the Debtors' wholesalers retain all of (a) their rights, if any, under section 9-404 of the Uniform Commercial Code; and (b) their contractual defenses, if any, and the rights and defenses retained in each of clauses (a) and (b) are solely with respect to and in accordance with their respective agreements with the Debtors.

29.     *Texas Taxing Authorities.*  Notwithstanding any other provisions included in the Interim Order or this Final Order, or any agreements approved hereby, any statutory liens (collectively, the "**Texas Tax Liens**"), including business personal property liens, of Bexar County, Cameron County, Cypress-Fairbanks ISD, Dallas County, Galveston County, Harlingen, Harlingen CISD, Harris County, Hidalgo County, McAllen, Montgomery County, Nueces County, Plano ISD, Richardson ISD, Arlington ISD, City of Grapevine, Grapevine-Colleyville ISD, Potter County Tax Office, Wichita County Tax Office, Tyler ISD, Lubbock CAD, and Walker CAD (collectively, the "**Texas Taxing Authorities**") shall not be primed by nor made subordinate to any liens granted to any party hereby to solely to the extent such Texas Tax Liens are valid, senior,

perfected, and unavoidable, and all parties' respective rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

30.     **_Headings._**  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

31.     **_Retention of Jurisdiction._**  The Court has and will retain jurisdiction to enforce this Final Order.

32.     **_Controlling Effect of Final Order._**  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or any other order of this Court, including the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.  Except as specifically amended, supplemented, or otherwise modified by this Final Order, all provisions of the Interim Order, including, but not limited to, findings of fact, conclusions of law, and authorizations made by this Court, remain in full force and effect and are hereby ratified by this Final Order.

**Dated: November 20th, 2020**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

RLF1 24341646v.2