**Exhibit B**

**Engagement Letter**

Strictly Confidential

**Engagement Letter**

As of October 28, 2020

**To the Official Committee of Opioid-Related Claimants**
**of Mallinckrodt plc, et al.**

Re: Advisory Services

This agreement (the "Agreement") confirms that Jefferies LLC ("Jefferies") has been engaged by the Official Committee of Opioid-Related Claimants (the "Opioid Committee"), appointed in the bankruptcy cases (the "Cases") of Mallinckrodt plc and its debtor affiliates and their respective estates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for Delaware (the "Bankruptcy Court") to act as set forth herein.

1.    Services.  During the term of this engagement, and as mutually agreed upon by Jefferies and the Opioid Committee, Jefferies, acting as the exclusive investment banker to the Opioid Committee, will perform the following investment banking services, among others, in connection with the Cases:

(a)    advising the Opioid Committee on any potential and/or actual transaction or series of related transactions whereby, directly or indirectly, a significant portion of the equity securities of the Debtors or a significant portion of any of the businesses or assets of the Debtors are transferred to, disposed of, or combined with one or more persons, groups of persons, partnerships, corporations or any other entity, including, without limitation, via the acquisition of all or any portion of the assets, properties, businesses or securities of the Debtors by way of a direct or indirect acquisition, purchase, exchange, joint venture, partnership, other business combination or other means, including, without limitation, transactions under section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101– 1532 (as amended, the "Bankruptcy Code") (including, without limitation, one or more of the Debtors' creditors acquiring such businesses or assets through a credit bid) (any of the foregoing, an "M&A Transaction");

(b)    assisting and advising the Opioid Committee in examining and analyzing any potential or proposed restructuring, reorganization, rescheduling, recapitalization, reduction, repayment, cancellation, elimination, retirement, refinancing, purchase, repurchase, and/or a material modification or amendment of all or any material portion of the Debtors' debt securities and/or other on- or off-balance sheet indebtedness, obligations or liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, litigation related claims including, without limitation, contract or tort obligations, joint venture interests and/or partnership interests), preferred stock, common stock and/or hybrid securities, however such result is achieved (any of the foregoing, a "Restructuring" and, any Restructuring or M&A Transaction or combination thereof, a "Transaction");

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 2

(c)     assisting and advising the Opioid Committee in evaluating and analyzing any debtor in possession financing and/or exit financing for the Debtors as well as other potential financing alternatives;

(d)     assisting and advising the Opioid Committee in evaluating and analyzing the proposed implementation of any Transaction, including the value of the securities or debt instruments, if any, that may be issued in connection therewith;

(e)     assisting and advising the Opioid Committee in connection with negotiations with other stakeholders;

(f)     assisting and advising the Opioid Committee in evaluating and negotiating any restructuring and/or settlement proposals and/or alternatives and evaluating the impact on recoveries;

(g)     attending meetings of the Opioid Committee with respect to matters on which Jefferies has been engaged to advise the Opioid Committee hereunder;

(h)     providing testimony, as necessary and appropriate, with respect to matters on which Jefferies has been engaged to advise the Opioid Committee hereunder, in the Cases;

(i)     advising the Opioid Committee on the current state of the restructuring and capital markets; and

(j)     rendering such other investment banking services as may from time to time be agreed upon by the Opioid Committee and Jefferies, including, but not limited to, providing other investment banking and financial advisory support related to any threatened, expected, or initiated litigation.

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.    Cooperation.

(a)     The Opioid Committee shall furnish or use its best efforts to cause the Debtors to furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Debtors, which the Opioid Committee and/or the Debtors believe are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information").  In addition, the Opioid Committee shall use its best efforts to cause the Debtors to provide Jefferies full access, as requested, to the Debtors' officers, directors, employees and professional advisors.  The Opioid Committee agrees to promptly advise Jefferies of all developments known to the Opioid Committee materially affecting the

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 3

Opioid Committee, the Debtors, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Opioid Committee or the Debtors, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof.

(b)    The Opioid Committee further acknowledges that Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Debtors, the Opioid Committee or other parties to a Transaction) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Debtors or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Debtors or other party to a Transaction, as the case may be (and if such forecasts no longer reflect such estimates and judgments, then the Debtors will promptly inform, and provide updated forecasts to, Jefferies).

(c)    The Opioid Committee acknowledges that this assignment may lead to an outcome not anticipated in this Agreement. In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Opioid Committee agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.    Use of Name, Advice, etc.

(a)    No information or advice provided by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent. The Opioid Committee shall not disseminate any materials bearing the Jefferies name or logo outside of the Opioid Committee without Jefferies' knowledge and consent. In addition, the Opioid Committee and the Debtors agree that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.

(b)    Jefferies' advice is solely for the confidential use and information of the Opioid Committee (solely in the members' capacity as members of the Opioid Committee), and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 4

4.      Compensation.  The Debtors shall pay Jefferies each of the following:

(a)      A monthly fee (the "Monthly Fee") equal to $225,000 per month until the expiration or termination of this Agreement.  The first Monthly Fee shall be payable immediately upon Bankruptcy Court approval of this Agreement (with, for the avoidance of doubt, the Monthly Fees being deemed to have accrued beginning on the date of this Agreement), and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary thereafter.  Fifty percent of the Monthly Fees in excess of $2,700,000 (12 Monthly Fees) actually paid to Jefferies shall be credited once (without duplication) against the Transaction Fee (as defined below) due to Jefferies.

(b)      Upon the consummation of any chapter 11 plan or other Transaction, a fee (the "Transaction Fee") equal to $7,500,000.  For the avoidance of doubt, only one Transaction Fee may be payable to Jefferies under the terms of this Agreement.

(c)      The Opioid Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Opioid Committee further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Opioid Committee in connection with any Transaction and that the value to the Opioid Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.      Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including, without limitation, reasonable fees and expenses of its counsel, ancillary expenses, and the reasonable fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6.      Indemnification, etc.  As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.  Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 5

connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7.    <u>Termination</u>.  Jefferies' engagement hereunder will commence upon the execution of this Agreement by the Opioid Committee and Jefferies (and shall be effective as of October 28, 2020), and will continue until the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a chapter 11 plan that has been confirmed by the Bankruptcy Court and has been substantially consummated or (B) Jefferies' services hereunder are terminated by either Jefferies or the Opioid Committee on five business days' written notice to the other.  Upon any termination of this Agreement, the Debtors shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies shall be entitled to the Transaction Fee set forth in Section 4 if, on or prior to 12 months from the effective date of termination of this Agreement, the Debtors consummate or enter into an agreement which subsequently results in, a Transaction.  Any such Transaction Fee shall be payable upon the closing of any such Transaction.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-18, and <u>Schedule A</u>, which shall survive such termination.

8.    <u>Exclusivity</u>.  During the term of the Agreement, the Opioid Committee agrees that it will not engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies. The Opioid Committee will promptly inform Jefferies of any inquiry it may receive regarding a Transaction.  Notwithstanding the Debtors' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Opioid Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.    <u>Bankruptcy Court Approval</u>.  The Opioid Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the Bankruptcy Court.  Such approval shall provide for the retention of Jefferies effective as of October 28, 2020, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in <u>Schedule A</u>), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Opioid Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and <u>Schedule A</u> hereto) shall be

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 6

null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order.

10.    <u>Disclaimer</u>.

(a)    The Opioid Committee acknowledge that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities). The Opioid Committee and the Debtors also acknowledge that Jefferies Group LLC's ultimate parent, Jefferies Financial Group Inc. (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "<u>Jefferies Financial Group</u>"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Jefferies Financial Group maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies. Information that is held elsewhere within Jefferies Financial Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Opioid Committee under this Agreement. Neither Jefferies nor any other part of Jefferies Financial Group has or will have any duty to disclose to the Opioid Committee or use for the Opioid Committee's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Jefferies Financial Group may trade the securities of the members of the Opioid Committee, the Debtors and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities. Further, the Opioid Committee and the Debtors acknowledge that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Opioid Committee's and the Debtors' interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. Jefferies Financial Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b)    The Debtors and the Opioid Committee acknowledge that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Opioid

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 7

Committee is solely contractual in nature and that Jefferies does not owe the Opioid Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise.  Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Debtors or the Opioid Committee.  The Opioid Committee acknowledges that Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction.  The Opioid Committee also acknowledges that it has consulted with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and Jefferies and its affiliates shall have no responsibility or liability with respect thereto.  Each of the Debtors and the Opioid Committee agrees that it is capable of evaluating the merits and risks of the transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of the transactions and such fees.  By signing this Agreement, the Opioid Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors and the Opioid Committee will be able to implement or consummate any Transaction, or any other transaction contemplated herein, or achieve any other result.

11.     Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

12.     Exclusive Jurisdiction.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement pursuant to this Section 12 (any of the foregoing, a "Claim") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law.  The Opioid Committee and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of forum non-conveniens.  The Opioid Committee and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered to the addresses set forth or referred to in Section 16 hereof.  The Debtors shall pay all of Jefferies' costs and expenses (including, without limitation, fees and expenses of counsel) in an enforcement proceeding if the court in such proceeding determines that Jefferies is entitled to recover amounts due hereunder.  The Opioid Committee, the Debtors and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced.

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 8

13.    <u>Payments</u>.    All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Except as expressly set forth in Section 4(a), no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies.  The Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14.    <u>Services on Behalf of Opioid Committee</u>.    Neither the Opioid Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Opioid Committee ("<u>Opioid Committee Counsel</u>")) shall be liable for the fees, expenses or other amounts payable to Jefferies hereunder.  Jefferies is providing its services as the investment banker to the Opioid Committee and is not providing any services on behalf of the individual members of the Opioid Committee.  To the extent any issue arises as to the scope, nature or substance of Jefferies' engagement, Jefferies and the Opioid Committee, with the advice of Opioid Committee Counsel, shall work in good faith to mutually resolve such issue.

15.    <u>Announcements, etc</u>.    The Opioid Committee and the Debtors agree that Jefferies may, following the announcement of a Transaction, describe the Transaction (or prior to a consummation or announcement of a Transaction, Jefferies role as an advisor to the Opioid Committee) in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Debtors' name and logo in connection therewith.  The Opioid Committee agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in connection with the Transaction in form and substance satisfactory to Jefferies.

16.    <u>Notices</u>.    Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Opioid Committee, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

17.    <u>Miscellaneous</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto.  This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party.  This Agreement is binding upon and inures to the benefit of each party's permitted successors and permitted assigns.  This Agreement is solely for the benefit of the Opioid Committee, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; <u>provided</u> that Jefferies may, in the performance of its services hereunder, procure the services of other members of Jefferies Financial Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement.  If

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 9

any provision hereof shall be held by a court of competent jurisdiction to be invalid, void
or unenforceable in any respect, or against public policy, such determination shall not
affect such provision in any other respect nor any other provision hereof.  Headings used
herein are for convenience of reference only and shall not affect the interpretation or
construction of this Agreement.   All references to "$" or "dollars" herein shall be
references to U.S. dollars. "Third party" as used herein shall mean any party other than
the parties hereto.   No failure or delay by Jefferies in exercising any right, power or
remedy hereunder or pursuant hereto, or any failure to give notice of any breach of or to
require compliance with any term of this Agreement, shall operate as a waiver thereof.
This Agreement may be executed in facsimile or other electronic counterparts, each of
which will be deemed to be an original and all of which together will be deemed to be
one and the same document.   This Agreement has been reviewed by the signatories
hereto and their counsel.  There shall be no construction of any provision against Jefferies
because this Agreement was drafted by Jefferies, and the parties waive any statute or rule
of law to such effect.

18.     Patriot Act.  Jefferies hereby notifies the Debtors, the Opioid Committee, and the
Opioid Committee's members that pursuant to the requirements of the USA PATRIOT
Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot
Act"), it is required to obtain, verify and record information that identifies the Debtors,
the Opioid Committee, and the Opioid Committee's members in a manner that satisfies
the requirements of the Patriot Act.   This notice is given in accordance with the
requirements of the Patriot Act.

Official Committee of Opioid-Related Claimants
of Mallinckrodt plc, et al.
Page 10

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Opioid Committee, this Agreement shall constitute a binding agreement among Jefferies and the Opioid Committee as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By /s/ *Leon Szlezinger*
Name: Leon Szlezinger
Title: Managing Director

Accepted and Agreed:
**OFFICIAL COMMITTEE OF OPIOID-RELATED CLAIMANTS OF MALLINCKRODT PLC, *ET AL.***

By  /s/ *Kathy Strain*
Name: Kathy Strain

Co-Chairperson of the Official Committee of Opioid Related Claimants of Mallinckrodt plc., *et al.*

SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Official Committee of Opioid-Related Claimants (the "Opioid Committee"), appointed in the bankruptcy cases of Mallinckrodt plc and its debtor affiliates and their respective estates, which are now pending in the United States Bankruptcy Court for Delaware. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates and their successors and permitted assigns (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs and expenses (an "Action") (including, without limitation, full reimbursement of all fees and expenses of counsel incurred in investigating, preparing or defending against any such Action and in enforcing the terms of this Schedule A), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, or the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Excluded Losses. "Excluded Losses" shall mean Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Opioid Committee).

The Opioid Committee and the Debtors agree that no Indemnified Person shall have any liability to the Opioid Committee or the Debtors or its and their respective owners, parents, affiliates, securityholders or creditors for any Losses, except for Excluded Losses.

The Debtors agree that it will not settle, facilitate any settlement of, or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or, the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Debtors and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the termination of the Agreement, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this Schedule A, the Debtors will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Debtors set forth in this Schedule A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory

## SCHEDULE A

to Jefferies; <u>provided</u>, <u>however</u>, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this <u>Schedule A</u> has been made, the Debtors' obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.