## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | Case No. 20-12522 (JTD) |
| Debtors.[1] | **Objection Deadline: December 28, 2020 at 4:00 p.m. (ET)** |
| | **Hearing Date: January 14, 2021 at 2:00 p.m. (ET)** |

### APPLICATION OF THE OFFICIAL COMMITTEE OF OPIOID RELATED CLAIMANTS OF MALLINCKRODT PLC, *ET AL.*, TO RETAIN AND EMPLOY AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL, *NUNC PRO TUNC* TO OCTOBER 27, 2020

The Official Committee of Opioid Related Claimants (the "OCC") of Mallinckrodt plc, *et al.* (collectively, the "Debtors"), respectfully submits this application (the "Application"), pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the OCC to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as its lead counsel in connection with the Debtors' chapter 11 cases (the "Chapter 11 Cases"), effective *nunc pro tunc* to October 27, 2020.[2]  In support of this Application, the OCC submits the declaration of Arik

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.

[2] Due to certain extenuating circumstances, Akin Gump required approximately two weeks longer than the standard 30-day period following its selection as counsel to the OCC to prepare its retention materials.  In particular, the voluminous conflicts checks that needed to be performed to prepare the schedules attached to the Preis Declaration required a team of dedicated paraprofessional and support staff.  Akin Gump was in the process of running several other voluminous conflicts checks for major chapter 11 engagements simultaneously and, as a result, required additional time.  Akin Gump previewed these circumstances and expected timing with the U.S. Trustee shortly after its selection by the OCC.

Preis, a partner in the financial restructuring group of Akin Gump (the "Preis Declaration"), and

the declaration of Kathy Strain as co-chair of the OCC (the "Strain Declaration" and, together with

the Preis Declaration, the "Declarations"), attached hereto as **Exhibit B** and **Exhibit C**,

respectively.  In further support of this Application, the OCC respectfully represents as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule predicates for the relief requested herein are Bankruptcy

Code sections 328(a) and 1103, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and

2016-1.[3]

## BACKGROUND[4]

4.      On October 12, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for

relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for

the District of Delaware (the "Court").

5.      The Debtors continue to operate and manage their businesses as debtors in

possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made

for the appointment of a trustee or an examiner.

---

[3] Pursuant to Local Rule 9013(f), the OCC hereby consents to the entry of final orders or judgments by the Court on this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[4] Factual background regarding the Debtors and the events that led to these Chapter 11 Cases is set forth in the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* [ECF No. 128].

61821/0001-21849655v1

6.      On October 27, 2020 (the "Formation Date"), the United States Trustee for Region 3 (the "U.S. Trustee") appointed seven individuals or entities to serve on the OCC as fiduciaries for all holders of claims arising from the Debtors' opioid business (collectively, "Opioid Claims" and the holders of such claims, "Opioid Claimants").  *See Notice of Appointment of Opioid Related Claimants Committee* [ECF No. 308]; *see also* Bankruptcy Code section 1102(a)(1).[5]  The U.S. Trustee constituted the OCC to comprise the following individuals and entities:  (i) Garrett Hade; (ii) Lyda Haag; (iii) Kathy Strain; (iv) Brendan Berthold; (v) Life Point Health System; (vi) Blue Cross and Blue Shield Association; and (vii) Michael Masiowski, M.D.  On the Formation Date, the OCC selected, subject to Court approval, Akin Gump to serve as lead counsel to the OCC and Cole Schotz P.C. ("Cole Schotz") to serve as Delaware and efficiency counsel to the OCC.  Shortly thereafter, the OCC selected Province, Inc. ("Province") as its financial advisor and Jefferies LLC ("Jefferies") as its investment banker, each subject to Court approval.[6]  On November 9, 2020, the OCC selected Cassels Brock & Blackwell LLP ("Cassels") as its Canadian counsel, subject to Court approval.[7]  Cassels will have primary responsibility for Canadian legal services in connection with the Debtors' recognition proceedings that are pending before the Ontario Superior Court of Justice (Commercial List) under Case No. CV-20-00649441-00CL.  Akin Gump will coordinate carefully with Cassels and the OCC's other professionals to ensure that there is no unnecessary duplication of services performed or unnecessary costs charged to the Debtors' estates.

---

[5] In relevant part, Bankruptcy Code section 1102(a)(1) provides that "as soon as practicable after the order for relief under chapter 11 of [the Bankruptcy Code], the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors . . . as the United States trustee deems appropriate."

[6] The retention applications for these professionals were filed on November 30, 2020.  *See* ECF Nos. 683, 684 & 685.

[7] Cassels's retention application was filed contemporaneously with this Application.

61821/0001-21849655v1

7.      On the Formation Date, the U.S. Trustee also appointed an official committee of unsecured creditors (the "UCC").  *Notice of Appointment of Committee of Unsecured Creditors* [ECF No. 306].  As disclosed at the November 10, 2020 hearing, following discussions among Akin Gump professionals and counsel to the UCC regarding the scope of each official creditors' committee's fiduciary duties, the parties agreed that the UCC is a fiduciary for all unsecured creditors *other than* Opioid Claimants.  *See* Transcript of November 10, 2020 Hearing at 23:17-24:4.

## RELIEF REQUESTED

8.      The OCC seeks to retain and employ Akin Gump as its lead counsel pursuant to Bankruptcy Code sections 328(a) and 1103(a), Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1, effective *nunc pro tunc* to October 27, 2020.

## RETENTION OF AKIN GUMP

9.      The OCC respectfully submits that it is necessary and appropriate for it to employ and retain Akin Gump as its lead counsel to, among other things:

(a)     advise the OCC with respect to its rights, duties and powers in the Chapter 11 Cases;

(b)     assist and advise the OCC in its consultations and negotiations with the Debtors relative to the administration of the Chapter 11 Cases;

(c)     assist the OCC in analyzing the claims of the Debtors' creditors and the Debtors' capital structure and in negotiating with holders of claims and equity interests;

(d)     assist the OCC in investigating and conducting diligence with respect to the acts, conduct, assets, liabilities and financial condition of the Debtors and their insiders and the operation of the Debtors' businesses;

(e)     assist the OCC in negotiating with the Debtors and third parties concerning matters related to, among other things, asset dispositions, financing transactions and the terms of one or more plans of reorganization for the Debtors and accompanying disclosure statements and related plan documents;

(f)     assist and advise the OCC as to its communications to and with the general body

4

of Opioid Claimants and other creditor constituents regarding significant matters in the Chapter 11 Cases;

(g)     represent the OCC at all hearings and other proceedings before this Court;

(h)     review and analyze applications, orders, statements of operations and schedules filed with the Court and advise the OCC as to their propriety and, to the extent deemed appropriate by the OCC, support, join or object thereto;

(i)     advise and assist the OCC with respect to any legislative, regulatory or governmental activities;

(j)     assist the OCC in preparing pleadings and applications as may be necessary in furtherance of the OCC's interests and objectives;

(k)     assist the OCC in reviewing and analyzing all of the Debtors' various agreements;

(l)     prepare, on behalf of the OCC, any pleadings, including without limitation, motions, memoranda, complaints, adversary complaints, objections or comments in connection with any matter related to the Debtors or the Chapter 11 Cases;

(m)     investigate and analyze any claims against the Debtors' equity holders, non-debtor affiliates and other related parties; and

(n)     perform such other legal services as may be required or are otherwise deemed to be in the interests of the OCC in accordance with the OCC's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules or other applicable law.

10.     In accordance with Part F of the Revised UST Guidelines (as defined below), Akin Gump will serve as lead counsel to the OCC, and Cole Schotz will serve as Delaware and efficiency counsel to perform tasks at Cole Schotz's lower rates. Akin Gump will have primary responsibility for the services described above. Cole Schotz, however, also will be asked to provide substantive services to the OCC. In such instances, Akin Gump will coordinate carefully with Cole Schotz to ensure that there is no unnecessary duplication of services performed or unnecessary costs charged to the Debtors' estates.

11.     The OCC believes that Akin Gump possesses unique and extensive knowledge and expertise in the areas of law relevant to the Chapter 11 Cases, and that Akin Gump is well-qualified to represent the OCC. In selecting counsel, the OCC sought attorneys with considerable

experience in representing official creditors' committees in chapter 11 reorganization cases and other debt restructurings. Akin Gump has such experience, as Akin Gump is currently representing and has represented official creditors' committees in many significant chapter 11 cases, including, among others, the following: *In re BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.)*; *In re Diamond Offshore Drilling, Inc.*; *In re Southern Foods Group LLC formerly d/b/a Dean Foods*; *In re Purdue Pharma L.P.*; *In re Vanguard Natural Resources, LLC*; *In re Insys Therapeutics, Inc.*; *In re Pernix Sleep, Inc.*; *In re Sears Holdings Corp.*; *In re Nine West Holdings, Inc.*; *In re iHeartMedia, Inc.*; *In re Cumulus Media Inc.*; *In re EMAS Chiyoda Subsea, Ltd.*; *In re Metals USA, Inc.*; *In re Emerald Oil, Inc.*; *In re Goodrich Petroleum Corp.*; *In re SandRidge Energy Inc.*; *In re Quiksilver, Inc.*; *In re Chassix Inc.*; *In re BPZ Resources, Inc*; *In re Cal Dive International, Inc.*; *In re Swift Energy Co.*; *In re Excel Maritime Carriers LTD*; *In re Hawker Beechcraft, Inc.*; *In re Overseas Shipholding Group, Inc.*; *In re Edison Mission Energy, et al.*; *In re Dynegy Holdings, LLC*; *In re R.E. Loans, LLC*; *In re Delta Petroleum Corp.*; *In re Vitro America, LLC*; *In re Friendly Ice Cream Corporation*; *In re Seahawk Drilling, Inc.*; *In re Saint Vincent's Catholic Medical Centers of New York*; *In re Chemtura Corp.*; *In re TOUSA, Inc.*; *In re Delta Air Lines, Inc.*; and *In re ATA Holdings Corp.* In particular, Akin Gump's work as counsel to the official unsecured creditors' committees in *Purdue* and *Insys*—the only chapter 11 cases to date in which debtors have commenced bankruptcy proceedings as a result of mounting opioid liability—have made Akin Gump uniquely qualified to address the numerous issues that will arise for the OCC in connection with the Chapter 11 Cases.

12.    Because of the extensive legal services that may be necessary in the Chapter 11 Cases, and the fact that the full nature and extent of such services are not known at this time, the OCC believes that the employment of Akin Gump to provide the services described above and

such other services as may be necessary for the OCC to satisfy its obligations to the Debtors'

Opioid Claimants is appropriate and in the best interests of the Debtors' estates and their creditors.

13.     The OCC requests that all fees and related costs and expenses incurred by the OCC

on account of services rendered by Akin Gump in the Chapter 11 Cases be paid as administrative

expenses of the Debtors' estates pursuant to Bankruptcy Code sections 328, 330, 331, 503(b) and

507(a)(2).  Subject to this Court's approval, Akin Gump will charge for its legal services on an

hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such

services are rendered, subject to Bankruptcy Code sections 328, 330 and 331.  The 2020 and 2021

hourly rates charged by Akin Gump for professionals and paraprofessionals employed in its offices

are provided below:

| Billing Category | 2020 Range | 2021 Range |
|---|---|---|
| Partners | $995 – $1,835 | $1,035 – $1,995 |
| Senior Counsel and Counsel | $735 – $1,510 | $780 – $1,595 |
| Associates | $390 – $1,070 | $555 – $1,145 |
| Paraprofessionals | $215 – $455 | $230 – $550 |

These rates are subject to periodic adjustments (typically in January of each year) to reflect

economic and other conditions.  Akin Gump reserves the right to file an application for allowance

of an enhanced fee award at the end of the Chapter 11 Cases, subject to the discretion of the OCC.

14.     Akin Gump has advised the OCC that it is Akin Gump's policy to charge its clients

in all areas of practice for expenses incurred in connection with the client's case.  The expenses

charged to clients include, among other things, photocopying charges, travel expenses, expenses

for "working meals" and computerized research.  Akin Gump will maintain detailed records of

actual and necessary costs and expenses incurred in connection with the legal services described

above.

15.     The names, positions and current hourly rates of the Akin Gump attorneys currently

expected to have primary responsibility for providing services to the OCC are as follows:

| ATTORNEY | POSITION/DEPARTMENT | HOURLY RATE |
|---|---|---|
| Arik Preis | Partner / Financial Restructuring Department | 2020: $1,595<br>2021: $1,655 |
| Mitchell Hurley | Partner / Litigation Department | 2020: $1,595<br>2021: $1,655 |
| Sara Brauner | Partner / Financial Restructuring Department | 2020: $1,225<br>2021: $1,265 |
| Roxanne Tizravesh | Senior Counsel / Litigation Department | 2020: $1,195<br>2021: $1,240 |
| Edan Lisovicz | Counsel / Financial Restructuring Department | 2020: $975<br>2021: $1,045 |
| Caitlin Griffin | Associate / Financial Restructuring Department | 2020: $775<br>2021: $980 |
| James Salwen | Associate / Financial Restructuring Department | 2020: $775<br>2021: $895 |
| Brooks Barker | Associate / Financial Restructuring Department | 2020: $775<br>2021: $895 |
| Jess Coleman | Associate / Financial Restructuring Department | 2020: $615<br>2021: $735 |

In addition to the lawyers named above, the OCC understands that it will be necessary, during the course of these cases, for other Akin Gump professionals in other legal disciplines to provide services to the OCC.

16.     Akin Gump has advised the OCC that it will apply for compensation and reimbursement of expenses in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules and the applicable Local Rules.  Akin Gump has also advised the OCC that it also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with this Application and in the interim and final fee

applications to be filed by Akin Gump in the Chapter 11 Cases.[8]  To that end, Akin Gump has

advised the OCC that it responds to the questions set forth in Section D of the Revised UST

Guidelines as follows:

(a)    Akin Gump did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement;

(b)    No rate for any of the professionals included in this engagement varies based on the geographic location of the bankruptcy case;

(c)    Akin Gump did not represent any member of the OCC in connection with the Chapter 11 Cases prior to its retention by the OCC;

(d)    Akin Gump expects to develop a prospective budget and staffing plan to reasonably comply with the U.S. Trustee's request for information and additional disclosures, as to which Akin Gump reserves all rights; and

(e)    The OCC has approved Akin Gump's proposed hourly billing rates.  The Akin Gump attorneys staffed on the Debtors' Chapter 11 Cases, subject to modification depending upon further development, are set forth above in paragraph 15.

17.    Upon information and belief, Akin Gump does not represent and does not hold any

interest adverse to the Debtors' estates or their creditors in the matters upon which Akin Gump is

to be engaged, except to the extent set forth in the Preis Declaration.  Akin Gump is, however, a

large firm with a national and international practice and may represent or may have represented

certain of the Debtors' creditors, equity holders, related parties or other parties in interest in matters

unrelated to these cases.

### *NUNC PRO TUNC* **RELIEF**

18.    The OCC believes that the employment of Akin Gump *nunc pro tunc* to October

27, 2020 is warranted under the circumstances.  Akin Gump has provided, and will continue to

provide, valuable services to the OCC in connection with the Chapter 11 Cases.  As noted above,

---

[8] Akin Gump's intention to make reasonable efforts to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Revised UST Guidelines in connection with this Application and the interim and final fee applications to be filed by Akin Gump in the Chapter 11 Cases is based exclusively on the facts and circumstances of the Chapter 11 Case.  Akin Gump fully reserves the right to object to the requirements contained in the Revised UST Guidelines should it determine that it is appropriate to do so.

on the Formation Date, the OCC selected Akin Gump as its lead counsel and requested that Akin Gump immediately commence work on important, time-sensitive matters, which required Akin Gump to devote significant resources, promptly, to the Chapter 11 Cases prior to the submission and approval of this Application.  Since its selection as counsel to the OCC, Akin Gump, on behalf of the OCC, has worked closely with the Debtors, the OCC's other proposed advisors, and other parties in interest regarding significant and time-sensitive matters, including but not limited to the Debtors' first day motions, adversary proceeding and related motions for a preliminary injunction, motion to establish certain bar dates, motion for authorization to use cash collateral and motion to authorize the appointment of a future claimants representative.  After extensive discussions with the Debtors and other parties in interest, Akin Gump and the OCC's other proposed advisors, in consultation with the OCC, negotiated consensual resolutions with respect to the many of the foregoing matters, including, following the filing of an objection,[9] the motion for authorization to use cash collateral.  In addition, Akin Gump has had extensive discussions with the OCC and Debtors and their advisors regarding the Debtors' business operations and strategy for the Chapter 11 Cases, including organizing and participating in an initial meeting between the OCC and the Debtors and each of their respective advisors regarding the Debtors' business plan.

19.     Akin Gump has also performed other tasks necessary to ensure that the OCC is able to fulfill its fiduciary duties and maximize value for its constituents, including preparing documents related to the OCC's formation and operation (including bylaws), communicating with the OCC regarding key developments and considerations in the Chapter 11 Cases, analyzing the

---

[9] *See Objection of the Official Committee of Opioid Related Claimants to Motion of the Debtors for Interim and Final Orders Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, and Bankruptcy Rules 4002 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [ECF No. 506].

61821/0001-21849655v1

Debtors' applications to retain various professionals and strategizing with the OCC in connection with the foregoing.

**NOTICE**

20.     Notice of this Application has been provided to the following parties:  (i)  counsel to the Debtors; (ii) the U.S. Trustee; (iii) counsel to the ad hoc group of the Debtors' prepetition secured lenders; (iv) the agent under the Debtors' secured term and revolving financing facilities; (v) counsel to the ad hoc group of holders of the Debtors' unsecured notes; (vi) the indenture trustees for the Debtors' outstanding notes; (vii) counsel to the ad hoc group of governmental entities holding opioid claims; (viii) proposed counsel to the UCC; and (ix) any party that requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the Debtors' case website[10] and the OCC's case website.[11]  The OCC submits that, in light of the nature of the relief requested, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

[10] *See* http://restructuring.primeclerk.com/Mallinckrodt.

[11] *See* http://cases.primeclerk.com/MallinckrodtOpioidClaimantInfo.

61821/0001-21849655v1

## CONCLUSION

WHEREFORE, the OCC requests that the Court (a) enter an order, substantially in the form annexed hereto as **Exhibit A**, authorizing the OCC to retain and employ Akin Gump as its lead counsel in the Chapter 11 Cases *nunc pro tunc* to October 27, 2020, and (b) provide the OCC with such other and further relief as the Court may deem just, proper and equitable.

Dated:  December 11, 2020
Wilmington, Delaware

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF OPIOID
RELATED CLAIMANTS OF
MALLINCKRODT PLC, *ET AL.***


By:  /s/  Kathy Strain

*Co-Chair of the Official Committee of Opioid
Related Claimants of Mallinckrodt plc,* et al.