**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, *et al.*,[1] | Case No. 20-12522 (JTD) |
| **Debtors.** | Jointly Administered |
| | Hearing Date: Jan. 14, 2021 at 2:00 p.m. (ET)<br>Objection Deadline: Jan. 4, 2021 at 4:00 p.m. (ET) |

**APPLICATION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF MALLINCKRODT PLC, *ET AL.*,
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND
RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR
THE COMMITTEE, EFFECTIVE AS OF NOVEMBER 2, 2020, AND (II) WAIVING
CERTAIN INFORMATION REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2**

The Official Committee of Unsecured Creditors (the "Committee") appointed in these chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby files this application (this "Application") for an order, substantially in the form attached hereto as **Exhibit A**, authorizing (i) the retention and employment of Moelis & Company LLC ("Moelis") as its investment banker, effective as of November 2, 2020, pursuant to sections 328(a) and 1103(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and (ii) modifying the time-keeping requirements of Local Rule 2016-2 and the guidelines of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines") in connection with Moelis' engagement.  In

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

support of this Application, the Committee submits the declaration of William Derrough (the "Derrough Declaration"), which is annexed hereto as **Exhibit B**. In further support of this Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider and grant the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 1103(a) of the Bankruptcy Code. Relief is also proper pursuant to Bankruptcy Rule 2014 and the Local Rules. Applicant will apply for compensation in accordance with section 328(a) of the Bankruptcy Code.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Committee consents to the entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

3. On October 12, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases by the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee").

4. On October 27, 2020, the U.S. Trustee appointed the Committee, consisting of the following five members: (i) New PharmaTop LP; (ii) Acument Global Technologies, Inc.; (iii) Commodore Bowens, Jr., as Administrator for Estate of Commodore Bowens; (iv) U.S. Bank Trust National Association; and (v) AFSCME District Council 47 Health and Welfare Fund.

5. On November 2, 2020, the Committee selected Moelis as its investment banker. On the same day, Moelis began providing services to the Committee. The Committee's retention of Moelis is governed by an engagement letter, dated as of December 16, 2020 (the "Engagement Letter"), a copy of which is annexed to the Derrough Declaration as Schedule 3.

## MOELIS' QUALIFICATIONS

6. Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 900 employees with 17 geographic locations in North and South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

7. Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business

reorganization professionals have served as financial advisors and/or investment bankers in numerous chapter 11 cases in this and other districts, including: *In re Jason Industries, Inc.*, Case No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020) (Docket No. 226); *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020) (Docket No. 399); *In re The Hertz Corporation*, Case No. 20-11218 (MFW) (Bankr. D. Del. July 2, 2020) (Docket No. 658); *In re The McClatchy Company, et al.,* Case No, 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020) (D.I. 462); *In re Internap Technology Solutions Inc.*, Case No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020) (D.I. 193); *In re Whiting Petroleum Corporation*, Case No. 20-32021 (DRJ) (Bankr. S.D. Tex. May 9, 2020) (D.I. 259); *In re RentPath Holdings, Inc.*, Case No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020) (D.I. 81); *In re Sanchez Energy Corporation,* Case No. 19-34508 (MI) (Bankr. S.D.T.X. Oct. 21, 2019) (D.I. 495); *In re Aegerion Pharmaceuticals, Inc.*, Case No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019) (D.I. 186); *In re Monitronics International, Inc.,* Case No. 19-33650 (DRJ) (Bankr. S.D.T.X. Aug. 5, 2019) (D.I. 183); *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019) (D.I. 369); *In re Aegean Marine Petr. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019) (D.I. 394); *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Nov. 15, 2018); *In re Aralez Pharmaceuticals US Inc.*, Case No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018) (D.I. 239); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018) (D.I. 1165); *In re Global A&T Electronics Ltd*, Case No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018) (D.I. 102); *In re Toys "R" US, Inc.*, Case No. 17-34665 (KLP) (Bankr. ED. Va. Nov. 21, 2017) (D.I. 1054); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) (D.I. 657); *In re Basic Energy Services, Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) (D.I. 170); *In re UCI International, LLC*, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) (D.I. 289); *In*

re *AOG Entm't, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) (D.I. 128); *In re SFX Ent'mt, Inc.*, Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) (D.I. 265); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) (D.I. 450); *In re Am. Apparel, Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) (D.I. 390); *In re Quicksilver Resources Inc.*, Case No. 15-10585 (LSS) (Bankr. D. Del. May 8, 2015) (D.I. 332); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) (D.I. 201); *In re ITR Concession Co.*, Case No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014) (D.I. 180); *In re MACH Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) (D.I. 138); *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) (D.I. 131); *In re Cengage Learning, Inc.*, Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) (D.I. 478); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013) (D.I. 221); *In re Revel AC, Inc.*, Case No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013) (D.I. 178); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) (D.I. 269); *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012) (D.I. 1315); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012) (D.I. 1651).

8. The Committee has selected Moelis as its investment banker based upon, among other things: (a) the need to retain a skilled investment banking firm to provide advice to the Committee with respect to the Debtors' complex restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these; (c) Moelis' extensive knowledge of the industry; and (d) Moelis' knowledge of the capital markets and its restructuring capabilities, as described below. In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities, and experience

are crucial to the Committee's participation in the Debtors' restructuring. Moreover, an experienced investment banker such as Moelis fulfills a critical need that complements the services provided by the Committee's other restructuring professionals. For these reasons, the Committee requires the services of a capable and experienced financial advisor such as Moelis.

## SCOPE OF MOELIS' PROPOSED SERVICES

9. Moelis has been advising the Committee since the Committee selected Moelis as its investment banker on November 2, 2020. Throughout Moelis' engagement, Moelis has provided valuable services to the Committee (as summarized below) pursuant to the terms and conditions of the Moelis Engagement Letter.

10. As a result of its work with the Committee to date, Moelis has developed valuable knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information, which will assist Moelis in providing effective and efficient services to the Committee going forward in these Chapter 11 Cases. Accordingly, Moelis is well-qualified to represent the Committee in a cost-effective, efficient, and timely manner.

11. The terms and conditions of the Engagement Letter were the result of discussions and negotiations between Moelis and the Committee. As such, the Engagement Letter reflects the parties' mutual agreement as to the substantial efforts that will be required in this engagement to enable the Committee to execute their duties to unsecured creditors.

12. Subject to further order of the Court, and consistent with the Engagement Letter, the Committee proposes to retain Moelis to render investment banking services as outlined in the Engagement Letter and this Application. Moelis will provide the following services (the "Restructuring Services"), among others, to the Committee in connection with these chapter 11 cases:

  (a)  assist the Committee in reviewing and analyzing the Company's results of operations, financial condition, and business plan;

  (b)  assist the Committee in reviewing and analyzing a potential Restructuring (as defined in the Engagement Letter);

  (c)  assist the Committee in negotiating a Restructuring;

  (d)  assist the Committee in analyzing the capital structure of the Company;

  (e)  advise and assist the Committee regarding securities the Company offers in a potential Restructuring;

  (f)  assist the Committee in reviewing any alternatives to a Restructuring proposed by the Company or other creditors or parties in interest of the Company; and

  (g)  provide such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon in writing.

13. If the Committee requests that Moelis perform services not specifically contemplated by the Engagement Letter, Moelis and the Committee will agree, in writing, on the terms for such services and request the Court's approval thereof.

## **PROFESSIONAL COMPENSATION AND EXPENSE REIMBURSEMENT**

14. Moelis' decision to advise and assist the Committee in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices and the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

16. Moelis does not typically charge for its services on an hourly basis. Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Moelis Engagement Letter follows this

customary form of agreement in the financial advisory and investment banking industry, and sets forth the monthly and transaction-based fees that are to be payable to Moelis in this engagement.

15. As set forth more fully in the Engagement Letter, and subject thereto, Moelis will be compensated as follows (the "Fee Structure"):

i. **Monthly Fee**. During the term of the Engagement Letter, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors will pay the first Monthly Fee immediately upon execution of the Engagement Letter, and all subsequent Monthly Fees before each monthly anniversary of the date of the Engagement Letter. Whether or not a Restructuring occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.

ii. **Restructuring Fee**. At the closing of a Restructuring, a fee (the "Restructuring Fee") of $7,500,000.

16. If at any time before the end of the Tail Period (as defined below) the Debtors (or any entity formed or invested in to consummate a Restructuring) consummate a Restructuring or enter into an agreement for a Restructuring or a Plan (as defined in the Engagement Letter) is filed regarding a Restructuring and a Restructuring is subsequently consummated at any time, then the Debtors (or their bankruptcy estates) shall pay Moelis the appropriate fee specified above immediately upon the closing of each such transaction. The "Tail Period" shall end 24 months following the expiration or termination of the Engagement Letter.

17. In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all of its actual, reasonable, and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Engagement Letter, including the costs of Moelis' legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(c) of the Bankruptcy Code).

18. Moelis intends to apply for compensation for professional services rendered

and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving the Application and consistent with the proposed compensation set forth in the Engagement Letter.

19. Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. However, because: (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Committee respectfully requests that only Moelis' restructuring professionals be required to maintain time records (in summary format) of the services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing those services (in hour increments), and the identity of the restructuring professionals who provided those services. Moelis will present such records to the Court in its fee application(s). Moreover, the Committee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its restructuring professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Committee respectfully requests that this Court waive such

requirements.

20. The Committee believes the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. The Committee also believes that the Fee Structure reflects a balance between a fixed monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Committee and Moelis in the Engagement Letter. In analyzing the Fee Structure and the reasonableness of such compensation, the Committee compared Moelis' fee proposal to comparable precedents. After such comparison, followed by discussions and arm's-length negotiations, the Committee believes that the Fee Structure is in fact reasonable, market-based, and designed to compensate Moelis fairly for its work.

21. Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which has and will be required by the Committee during the term of Moelis' engagement, were important factors to the Committee in determining the Fee Structure. The Committee believes that the ultimate benefits of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Committee and Moelis agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of Moelis and in light of the fact that (a) such commitment could foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform the Restructuring Services may vary substantially from week to week and month to month, creating "peak load" issues for Moelis.

**INDEMNIFICATION**

22. As part of the overall consideration to Moelis under the terms of the Engagement Letter, the Committee has agreed to certain indemnification, exculpation, contribution, and reimbursement obligations (the "Indemnification Provisions"), set forth in Annex A of the Engagement Letter (the "Indemnification Agreement"). As more fully set forth therein, the Indemnification Agreement provides, among other things, that Debtors and their estates will indemnify and hold harmless Moelis, its affiliates, or any of Moelis' or its affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees, including any person controlling Moelis or any of its affiliates (each, an "Indemnified Person" and collectively, the "Indemnified Persons") from and against any losses, claims, damages, or liabilities (collectively, "Losses") incurred by an Indemnified Person (a) related to or arising out of oral or written statements or omissions made in information provided by the Committee, Debtors or their agents (including any Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the engagement), or (b) otherwise arising out of, related to, or in connection with the Engagement Letter or Moelis' performance, except that this clause (b) shall not apply to Losses that are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

23. The Engagement Letter's Indemnification Provisions were fully negotiated by the Committee and Moelis at arm's-length and in good faith. The Committee believes that the Indemnification Provisions reflected in the Moelis Engagement Letter are customary and reasonable terms of consideration for financial advisors and investment bankers such as Moelis for engagements both out-of-court and in chapter 11. The terms of the Moelis Engagement Letter,

11

including the Indemnification Agreement, were negotiated between the Committee and Moelis at arm's length.

## NO DUPLICATION OF SERVICES

24. The Committee does not believe that the services to be rendered by Moelis will be duplicative of the services performed by any other professional, and Moelis will use reasonable efforts to coordinate with the Committee and the other professionals engaged by the Committee to minimize and avoid duplication of services.

## MOELIS' DISINTERESTEDNESS

25. Moelis has reviewed the list of parties in interest provided by the Committee, as listed in Schedule 1 to the Derrough Declaration. To the best of the Committee's knowledge, information, and belief, and except to the extent disclosed herein and in the Derrough Declaration, Moelis: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or related parties in interest, except as disclosed in the Derrough Declaration.

26. Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Derrough Declaration. Moelis will make continued inquiries following the filing of the Application, on a periodic basis, and will make additional disclosures to this Court if necessary or otherwise appropriate.

27. The Committee has been informed that Moelis will not share any compensation received in connection with services rendered in accordance with this Application

with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

**BASIS FOR RELIEF REQUESTED**

A. **The Committee Should Be Permitted to Retain and Employ Moelis on the Terms in the Engagement Letter Pursuant to Sections 328 and 1103 of the Bankruptcy Code**

28. The Committee seeks approval of the retention and employment of Moelis, including the Fee Structure and Indemnification Provisions, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that a committee may "with the court's approval . . . select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to [] perform services for such committee." *Id.* § 1103(b). Section 328(a) of the Bankruptcy Code, in turn, provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

29. Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval for compensation agreed to with the trustee (or debtor or committee).

13

*Id.* at 862 (footnote omitted).

30.  The Court's approval of the Committee's retention of Moelis in accordance with the terms and conditions of the Moelis Engagement Letter is warranted.  As referenced above, Moelis has been advising the Committee since shortly after its appointment in these Chapter 11 Cases.  Moelis has extensive experience and an excellent reputation for providing high-quality investment banking and financial advisory services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  Through its work for the Committee to date, Moelis has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information, which will assist Moelis in providing services to the Committee going forward in these Chapter 11 cases.  Thus, the Committee is confident that Moelis is well-qualified to provide its services to the Committee in a cost-effective, efficient, and timely manner.

31.  In addition, the Committee believes that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects Moelis' commitment to the variable level of time and effort necessary to perform the restructuring services, Moelis' particular expertise, and the market prices for Moelis' services for engagements of this nature both out of court and in a chapter 11 context.  Indeed, the Committee believes that the Fee Structure appropriately reflects:  (a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with respect to investment banking and financial advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not generally bill their clients on an hourly basis.

32.  Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases.  Local Rule

2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. Local Rule 2016-2, however, allows a retained professional to request a waiver of these requirements for cause.

33. Approval of the Committee's retention of Moelis in accordance with the terms and conditions of the Engagement Letter is warranted. As discussed above and in the Derrough Declaration, Moelis satisfies the disinterestedness standard in section 1103(b) of the Bankruptcy Code, and Moelis does not hold or represent an interest adverse to the Debtors' estates.

34. Additionally, given the numerous issues that Moelis may be required to address in the performance of its services for the Committee, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Moelis' services for engagements of this nature, the Committee believes that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

35. The Committee understands that, notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications.

36. The Committee requests that the requirements of Local Rule 2016-2 and the

U.S. Trustee Guidelines be tailored to appropriately reflect the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed rate and transaction fee basis, which, as set forth above, is customary in the investment banking industry.  It is not the general practice of an investment banking firm to keep detailed time records similar to those customarily kept by attorneys.  Moelis' restructuring personnel will, however, when formally retained in chapter 11 cases, and when required by local rules, do, and in the Chapter 11 Cases will, keep summary time records in hour increments describing their daily activities and the identity of persons who performed such tasks. Apart from the time recording practices described above, Moelis' restructuring personnel do not maintain their time records on a "project category basis."  As such, the Committee requests modification of the requirements under Local Rule 2016-2 and the U.S. Trustee Guidelines pursuant to Local Rule 2016-2(h).  Notwithstanding the foregoing, the U.S. Trustee shall retain all rights to object to Moelis' fee application pursuant to section 330 of the Bankruptcy Code.

37. Courts in other large chapter 11 cases in this District have excused professionals from time-keeping requirements. Courts in this jurisdiction have approved relief similar to the relief requested in this Application.  *See e.g.*, *In re ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Dec. 17, 2018) (authorizing retention of Moelis as investment banker and financial advisor to the debtors); *In re Basic Energy Services, Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015) (same); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (same).

B.  **The Indemnification, Exculpation, Contribution, and Reimbursement Terms of the Engagement Letter Are Appropriate**

38. The indemnification, exculpation, contribution, and reimbursement

provisions in the Engagement Letter were fully negotiated between the Committee and Moelis. The Committee and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out-of-court and in chapter 11 cases.

39. Accordingly, the Committee respectfully submits that the terms of the indemnification, exculpation, reimbursement, and contribution provisions are reasonable and customary and should be approved in the chapter 11 cases.

C. **Retention Effective as of November 2, 2020 Is Appropriate**

40. The Committee required the immediate assistance of Moelis commencing on November 2, 2020 (the date on which the Committee selected Moelis as its investment banker) and, therefore, requests that the Committee's retention of Moelis be effective as of November 2, 2020. *See In re Arkansas Co.,* 798 F.2d 645, 648 (3d Cir. 1986) ("bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power").

41. Courts routinely grant nunc pro tunc relief in this and other jurisdictions. See, e.g., In re Pier 1 Imports, Inc. et al., Case No. 20-30805 (KRH) (Bankr. ED. Va. Apr. 8, 2020); In re Gymboree Group, Inc. et al., Case No. 19-30258 (KLP) (Bankr. ED. Va. March 8, 2019); In re Hexion Holdings LLC, Case No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); In re Toys "R" US, Inc., Case No. 17-34665 (KLP) (Bankr. ED. Va. Nov. 21, 2017); In re The Gymboree Corp., Case No. 17-32986 (KLP) (Bankr. E.D. Va. July, 11, 2017); In re Penn Va. Corp., Case No. 16-32395 (KLP) (Bankr. E.D. Va. July 6, 2016); In re Alpha Natural Res., Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); In re Patriot Coal Corp., No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); In re Allied Nev. Gold Corp., Ch. 11 Case No. 15-10503 (Bankr. D. Del. Apr. 15, 2015); In re James River Coal Co., Case No. 14-31848 (KRH) (Bankr. E.D. Va. June 27, 2014); In re GSE Envtl., Inc., Ch. 11 Case No. 14-11126 (Bankr. D. Del. May 30, 2014); In re

MACH Gen, LLC, Ch. 11 Case No. 14-10461 (Bankr. D. Del. Apr. 11, 2014); In re Sorenson Commc'ns, Inc., Ch. 11 Case No. 14-10454 (Bankr. D. Del. Mar. 25, 2014); In re AMF Bowling Worldwide, Inc., No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); In re Vertis Holdings, Inc., Ch. 11 Case No. 12-12821 (Bankr. D. Del. Nov. 20, 2012); In re WP Steel Venture LLC, Ch. 11 Case No. 12-11661 (Bankr. D. Del. Sept. 18, 2012); In re Ritz Camera & Image, LLC, Ch. 11 Case No. 12-11868 (Bankr. D. Del. July 27, 2012); In re Movie Gallery, Inc., No. 10-30696 (DOT) (Bankr. E.D. Va. Apr. 9, 2010).

**D.  The Retention of Moelis Is Critical to the Committee's Discharge of Its Duties**

42.  The Committee submits that retaining Moelis will assist the Committee in discharging its duties in the chapter 11 cases and is therefore in the best interests of all parties in interest.  Moelis is a preeminent investment banking firm that is experienced in advising stakeholders in complex restructurings.  Denial of the relief requested herein would deprive the Committee of the assistance of uniquely qualified investment bankers.  Furthermore, since Moelis has provided approximately one month of services to the Committee thus far, denial of Moelis' employment would result in a significant disadvantage to the Committee and all parties in interest because of Moelis' thorough understanding of the Debtors' operations.  If the Committee were forced to engage a new investment banker, such change would necessitate the commitment of significant and costly resources to educate such replacement.

43.  In light of the foregoing, the Committee submits that the retention of Moelis is in the best interest of the estates, their creditors, and parties in interest in these chapter 11 cases. Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Committee therefore submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules

to support entry of an order authorizing the Committee to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## NOTICE AND PRIOR APPLICATION

44. Notice of this Application is being given to (a) the United States Trustee for the District of Delaware; (b) counsel for the Debtors, (c) counsel to the ad hoc group of the Debtors' prepetition secured lenders; (d) the agent under the Debtors' secured term and revolving financing facilities; (e) counsel to the ad hoc group of holders of the Debtors' unsecured notes; (f) the indenture trustees for the Debtors' outstanding notes; (g) counsel to the ad hoc group of private opioid plaintiffs; (h) counsel to the ad hoc group of governmental entities holding opioid claims; (i) counsel to the Opioids Claimants Committee; (j) the United States Attorney's Office for the District of Delaware; (k) the attorneys general for all 50 states and the District of Columbia; (l) the United States Department of Justice; (m) the Internal Revenue Service; (n) the Securities and Exchange Commission; (o) the United States Drug Enforcement Agency; (p) the United States Food and Drug Administration; (q) the Debtors' non-U.S. customers, suppliers, and other stakeholders; (r) the Non-Debtor Global Affiliates' non-U.S. customers, suppliers, and other stakeholders; and (s) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Committee respectfully submits that, in light of the nature of the relief requested, no further notice is necessary or required. No prior application for the relief requested herein has been presented to this Court or any other court.

45. A copy of this Application is available on (a) the Court's website, www.deb.uscourts.gov, and (b) the website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, at http://restructuring.primeclerk.com/Mallinckrodt.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, in the form attached hereto as **Exhibit A**, authorizing the Committee to retain Moelis, effective as of November 2, 2020, and granting such further relief as is deemed just and proper.

Dated: December 21, 2020

Respectfully submitted,

Solely in her capacity as Co-Chair of the Official Committee of Unsecured Creditors of Mallinckrodt plc, *et al*.

**Acument Global Technologies, Inc.**
Committee Co-Chair

By: */s/ Shelley Wagner*
    Shelley Wagner