# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-12522 (JTD) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) **Obj. Deadline: January 7, 2021 at 4:00 p.m. (ET)** |
|  | **Hearing Date: January 14, 2021 at 2:00 p.m. (ET)** |

## MOTION OF DEBTORS
## FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO
## ENTER INTO A NEW COLLECTIVE BARGAINING AGREEMENT WITH
## TEAMSTERS, AUTOMOTIVE, PETROLEUM AND ALLIED TRADES, LOCAL NO. 50

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

### RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***"), authorizing but not directing the Debtors to enter into a new collective bargaining agreement with Teamsters, Automotive, Petroleum and Allied Trades, Local No. 50, affiliated with the International Brotherhood of Teamsters (the "***Teamsters Union***"), a copy of which is attached hereto as **Exhibit B**.

### JURISDICTION

2. The United States Bankruptcy Court for the District of Delaware (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and, under Rule

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicate for the relief requested herein is section 363(b) of the Bankruptcy Code.

## BACKGROUND

3. On October 12, 2020 (the "*Petition Date*"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "*Bankruptcy Code*"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

4. On October 27, 2020, the Office of U.S. Trustee appointed an official committee of unsecured creditors (the "*UCC*") [Docket No. 306] and an official committee of opioid claimants (the "*OCC*," and, together with the UCC, the "*Committees*" and each a "*Committee*") [Docket No. 308].

5. The Debtors, together with their non-debtor affiliates ("*Non-Debtor Affiliates*," and together with the Debtors, "*Mallinckrodt*"), comprise a global specialty pharmaceutical company that develops, manufactures, sells, and distributes specialty pharmaceutical products and therapies. Mallinckrodt's business is generally split into two segments, the "*Specialty Generics*" business and the "*Specialty Brands*" business (each such term as defined in the First Day Declaration, as defined below). The Debtors employ approximately 3,000 employees in the United States and abroad who, together with approximately 300 individuals employed by Non-Debtor Affiliates, manage, support, and execute on Mallinckrodt's core corporate objectives.

6. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support*

*of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [Docket No. 128]. Further support for the relief requested by this Motion is set forth in the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of the Motion of Debtors for Entry of an Order Authorizing Debtors to Enter into a New Collective Bargaining Agreement with Teamsters, Automotive, Petroleum and Allied Trades, Local No. 50* (the "**Welch Declaration**"), attached hereto as **Exhibit C**, which is fully incorporated herein by reference.

### THE DEBTORS' UNIONIZED WORKFORCE

7.  As of the date hereof, the Debtors are parties to five collective bargaining agreements, which cover approximately 300 employees represented by local branches of certain unions located in the United States and represent approximately 10% of the Debtors' total workforce. Approximately 50 of these employees are represented by the Teamsters Union (the "***Represented Employees***"). The Represented Employees are employed by Debtor Mallinckrodt Enterprises LLC ("***Enterprises***") at the Debtors' plant located in Greenville, Illinois and provide certain manufacturing and production-related services for the Debtors' Specialty Generics business.

### THE AGREEMENT

8.  Enterprises and the Teamsters Union were parties to a certain collective bargaining agreement dated October 1, 2017, which expired on September 30, 2020. Before and following the Petition Date, Enterprises and the Teamsters Union, consistent with their obligations under the National Labor Relations Act and related applicable non-bankruptcy laws, actively engaged in negotiations regarding extension of the collective bargaining agreement beyond its September 30, 2020 expiration date and the terms of a new collective bargaining agreement (the "***New Union CBA***") to replace the now-expired collective bargaining agreement.

9.  Over the course of their discussions, the parties have negotiated four (4) separate one-month extensions, ultimately agreeing to extend the September 30, 2020 expiration January

3

31, 2021. These negotiations culminated in Enterprises' and the Teamsters Union's entry into the New Union CBA, the key terms of which are summarized below.[2]

| New Union CBA Terms | |
|---|---|
| **Term** | October 1, 2020 through September 30, 2023. |
| **Hourly Wages** | Hourly wages to increase by approximately 2% each year of the agreement. |
| **Night Shift Premium** | Night shift premium is $0.40 per hour for second shift assignments and $0.50 per hour for third shift assignments, an increase by $0.10 per hour for each shift assignment as compared to the terms of the expired collective bargaining agreement. |
| **Medical Costs** | Employee contributions cap to increase by 5% each year of the agreement. |
| **Signing Bonus** | Represented Employees to receive a one-time lump sum signing bonus of $500.00 per Represented Employee, less applicable taxes and deductions, as soon as feasible after ratification of the New Union CBA.[3] |

10. The terms of the New Union CBA were a result of extensive discussions between Enterprises and the Union. Furthermore, the Debtors have previewed the relief requested in the Motion with the Committees and the RSA parties, and no issues were raised regarding the proposed relief at the time of the filing of this Motion.

11. The New Union CBA, if approved, will maximize value for the Debtors' stakeholders. More specifically, the New Union CBA will continue the Debtors' established relationship with the Teamsters Union and retain Represented Employees who provide integral support to the Debtors' Specialty Generics business. Further, by reaching an agreed deal with the Teamsters Union, the Debtors do not need to seek section 1113 relief. The Debtors' success in reaching a resolution thus protects their business from the risk of a disruption in work performed due to a potential gap in workforce services or threat of a strike.

12. The Debtors also secured important concessions in the New Union CBA, which include gaining flexibility in scheduling overtime, limiting wage increases, and obtaining an increased cap on participating employee medical contributions. Moreover, the New Union CBA

---

[2] To the extent there are any inconsistencies between this summary and the New Union CBA, the terms of the New Union CBA will govern.

[3] For the avoidance of doubt, no signing bonuses will be paid pursuant to the terms of the New Union CBA until the Bankruptcy Court approves the Motion.

preserves the flexibility of the Debtors' management to operate the business. While the New Union CBA provides significant benefits to the Debtors, this agreement is not without costs, including the requirement that Enterprises increase hourly wages for Represented Employees on an annual basis. That said, the New Union CBA is favorable to the Debtors and their stakeholders, and the Debtors, accordingly, respectfully request that the Court grant the requested relief to the extent applicable.

## BASIS FOR RELIEF

13. To the extent the approval of the requested relief is required under section 363(b) of the Bankruptcy Code, the Debtors respectfully submit that the Court should grant the requested relief.[4] Under section 363(b)(1) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Generally, the debtor is only required to "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code). This standard prohibits other parties from second-guessing the debtor's business judgment if the debtor has shown that the proposed use will

---

[4] The Debtors believe that entering into the New Union CBA is an ordinary course transaction that does not require Court approval pursuant to section 363(c) of the Bankruptcy Code. *See In re Anything Elec. Contractors Co., Inc.*, No. 96-10751, 2005 WL 6796808, at *5 (Bankr. N.D.N.Y. Jan. 18, 2005) ("It would not be unusual for electrical contractors to employ union electricians to provide labor and to enter into collective bargaining agreements in order to secure the benefits of a unionized work force."); *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994) ("[A]s a general rule, a debtor whose employees are covered by a collective bargaining agreement is permitted to enter into a new collective bargaining agreement or a modification to an existing agreement post-petition without notice and a hearing."); *In re DeLuca Distrib. Co.*, 38 B.R. 588, 594 (Bankr. N.D. Ohio 1984) (new collective bargaining agreement was ordinary course transaction because debtor's employees were continually covered by collective bargaining agreement). In one case, the Third Circuit Court of Appeals determined that a post-petition extension of a collective bargaining agreement was not in the ordinary course due to the "nature of the particular agreement," which was so "fundamentally different from the previous collective bargaining agreements entered into between [the Debtor] and the [Union] as to be " extraordinary." *In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992) (noting that "several courts have ruled that post-petition collective bargaining agreements were in the ordinary course of business."). The New Union CBA, however, is readily distinguishable from *In re Roth American, Inc.*, as the New Union CBA is the type of routine transaction that the Debtors enter into for purposes of securing the continued benefits of a unionized workforce. Nonetheless, out of an abundance of caution, the Debtors seek Court authorization to enter into the New Union CBA under section 363(b)(1) of the Bankruptcy Code.

US-DOCS\118477474.10

benefit the debtor's estate. *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

14. The Debtors have determined, in the exercise of their sound business judgment, that the New Union CBA is in the best interests of all stakeholders. Specifically, entry into the New Union CBA will help assure continuity of operations at the Debtors' Greenville Plant, which is critical to the Debtors' ability to maintain their daily production and manufacturing processes at this location. Furthermore, the New Union CBA will allow the Debtors to retain and motivate the Represented Employees at a time when it may be difficult for the Debtors to identify and engage replacement employees due to the pendency of these chapter 11 cases. Finally, the Debtors' entry into the New Union CBA will allow the Debtors to foster and retain the goodwill of the Represented Employees during the chapter 11 process.

15. For these reasons, the Debtors believe that their entry into the New Union CBA reflects a sound exercise of business judgment and is in the best interests of the Debtors' stakeholders.

## **RESERVATION OF RIGHTS**

16. Nothing in this Motion shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the

Bankruptcy Code or any other applicable law.  If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**NOTICE**

17. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the official committee of unsecured creditors; (c) counsel to the official committee of opioid claimants; (d) counsel to the ad hoc group of the Debtors' prepetition secured lenders; (e) the agent under the Debtors' secured term and revolving financing facilities; (f) counsel to the ad hoc group of holders of the Debtors' unsecured notes; (g) the indenture trustees for the Debtors' outstanding notes; (h) counsel to the ad hoc committee of governmental entities holding opioid claims; (i) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (j) the United States Attorney's Office for the District of Delaware; (k) the attorneys general for all 50 states and the District of Columbia; (l) the United States Department of Justice; (m) the Internal Revenue Service; (n) the Securities and Exchange Commission; (o) the United States Drug Enforcement Agency; (p) the United States Food and Drug Administration; and (q) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

18. A copy of this Motion is available from (a) the Court's website, www.deb.uscourts.gov, and (b) the website maintained by the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.

**NO PRIOR MOTION**

19. The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully requests that the Court enter the Proposed Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: December 23, 2020
      Wilmington, Delaware

*/s/ Brendan J. Schlauch*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  collins@rlf.com
    merchant@rlf.com
    steele@rlf.com
    schlauch@rlf.com

- and -

George A. Davis (admitted *pro hac vice*)
George Klidonas (admitted *pro hac vice*)
Andrew Sorkin (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  george.davis@lw.com
    george.klidonas@lw.com
    andrew.sorkin@lw.com
    anu.yerramalli@lw.com

- and -

Jeffrey E. Bjork (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com

- and -

Jason B. Gott (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  jason.gott@lw.com

*Counsel for Debtors and
Debtors in Possession*