**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-12522 (JTD) |
| Debtors.¹ | ) (Jointly Administered) |
| | ) Obj. Deadline: Jan. 7, 2021 at 4:00 p.m. (ET) |
| | ) Hearing Date: Jan. 14, 2021 at 2:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO (A) REJECT THE BEDMINSTER LEASE AS OF JANUARY 31,
2021, (B) ASSUME THE HAMPTON LEASE, AND (C) GRANTING RELATED RELIEF**

**THIS MOTION SEEKS TO, AMONG OTHER THINGS, REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY. PARTIES RECEIVING THIS MOTION SHOULD REVIEW THE MOTION TO SEE IF THEIR NAME(S) OR LEASE(S) ARE SET FORTH IN THE MOTION OR THE EXHIBITS ATTACHED HERETO TO DETERMINE WHETHER THE MOTION AFFECTS THEIR LEASE(S).**

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***") authorizing the Debtors to (a) reject the Bedminster Lease (as defined herein), as identified on **Schedule 1** to the Proposed Order, effective as of January 31, 2021, and (b) enter into the Hampton Lease (as defined herein), as identified on **Schedule 2** to the Proposed Order.

---

¹ A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Mallinckrodt. The debtors' mailing address is 675 McDonnell Blvd., St. Louis, Missouri 63042.

## JURISDICTION

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 105(a), and 365(a) of the Bankruptcy Code (as defined below) and Bankruptcy Rule 6006.

## BACKGROUND

3. On October 12, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

4. On October 27, 2020, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed, pursuant to section 1102 of the Bankruptcy Code: (a) an official committee of unsecured creditors [Docket No. 306] (the "**Unsecured Creditors Committee**") and (b) an official committee of opioid-related claimants [Docket No. 308] (the "**Opioid Claimants Committee**" and, together with the Unsecured Creditors Committee, the "**Committees**" and each a "**Committee**").

5. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* (the "**Welch Declaration**") filed on the Petition Date, which is fully incorporated herein by reference.

## THE LEASES

**A.     Overview**

6. As part of their restructuring efforts, the Debtors, together with their advisors, have been engaged in a comprehensive review of the terms of all of the Debtors' lease agreements. In connection with this review, the Debtors have identified the Bedminster Lease and the Hampton Lease and have determined that it is in the best interest of the Debtors and their estates to relocate the headquarters of their Specialty Brands[2] business from its current office space in Bedminster Township, New Jersey to office space in Hampton, New Jersey. To effectuate this move, the Debtors are seeking court authority to reject and terminate the Bedminster Lease and assume the Hampton Lease. By simultaneously rejecting and terminating the Bedminster Lease and assuming the Hampton Lease, as of February 1, 2021, the Debtors will attain significant cost-savings of approximately $403,012.43 per month in administrative expenses.

**B.     The Bedminster Lease**

7. On July 22, 2016, Debtor Mallinckrodt Enterprises LLC and RREF II Somerset, LLC (the "**Bedminster Landlord Counterparty**") entered into that certain Lease (the "**Original Bedminster Lease**" as amended by the First Amendment to Lease dated December 17, 2017, the "**Bedminster Lease Amendment**" and together with that certain Guaranty of Lease dated July 22,

---

[2] The "***Specialty Brands***" business is the Debtors' business segment that manufactures and markets the Debtors' branded products.

3

20216, executed by Mallinckrodt International Finance SA (the "*Guaranty*") and the Original Bedminster Lease, the "*Bedminster Lease*"). The Bedminster Lease runs through January 31, 2030, and, starting February 1, 2021, the Debtors' monthly payment obligation under the Bedminster Lease would be approximately $403,012.43 (the "*Bedminster Rent Obligations*").[3]

8. On December 7, 2020, the Debtors provided notice to the Bedminster Landlord Counterparty that the Debtors intended to reject and terminate the Bedminster Lease as of January 31, 2021. As per the notice, the Debtors will unequivocally surrender possession of the leased Premises (as defined in the Bedminster Lease) (the "*Bedminster Premises*") as of January 31, 2021.

9. By rejecting the Bedminster Lease, the Debtors will avoid the accrual of unnecessary administrative expenses of the Bedminster Rent Obligations. In addition, given the ongoing COVID-19 pandemic, the Bedminster Premises have remained largely vacant and unused, and the Debtors predict that capacity and in-person use of the Bedminster Premises will continue to be depressed into the near future. As such, the Debtors have obtained limited benefits for their estate by maintaining the Bedminster Lease and Bedminster Premises, and the Debtors do not see significant benefits to doing so going forward.

**C.  The Hampton Lease**

10. On July 9, 2008, Debtor Mallinckrodt Hospital Products Inc. (as successor-in-interest to INO Therapeutics LLC and Ikaria, Inc., the predecessor tenants) and Perryville SPE, LLC (as successor-in-interest to Crown Perryville, the predecessor landlord) (the "*Hampton Landlord Counterparty*") entered into that certain Lease (the "*Original Hampton Lease*" as

---

[3] Beginning February 1, 2021, the monthly Bedminster Rent Obligations under the Bedminster Lease are to be comprised of: (a) approximately $310,375.00 in Fixed and Additional Rent (as defined in the Bedminster Lease), (b) approximately $57,150.01 in property insurance payments, and (c) approximately $35,487.42 in Impositions (as defined in the Bedminster Lease).

amended by the Amendment to Lease Agreement dated October 24, 2010 the "***First Hampton Lease Amendment***", and the Second Amendment to Lease dated December 2, 2020 the "***Second Hampton Lease Amendment***, and together with the Original Hampton Lease and the First Hampton Lease Amendment, the "***Hampton Lease***").

11. The Hampton Lease runs through June 30, 2026, and the Debtors' monthly payment obligation under the Hampton Lease is approximately $150,343.98 (the "***Hampton Rent Obligations***").[4] Notably, the Hampton Lease also contains a termination option (the "***Termination Option***") under which Mallinckrodt Hospital Products Inc. may terminate the Hampton Lease upon 180 days written notice to the Hampton Landlord Counterparty at any time and for any reason after December 31, 2021.

12. As noted above, due in part to the COVID-19 pandemic, the Debtors, in consultation with their advisors, have determined that it is in the best interest of their estates to relocate the principal U.S. offices for their Specialty Brands business to the Premises (as defined in the Hampton Lease) (the "***Hampton Premises***"). By relocating to the Hampton Premises, the Debtors and their employees will work out of more appropriately-sized office facilities that reflect the Debtors' current employee usage and projected employee attendance. In addition, by assuming the Hampton Lease and rejecting the Bedminster Lease, the Debtors will obtain monthly savings of approximately $403,012.43 and will achieve even greater monthly savings after the Hampton Lease Obligations decrease starting July 1, 2021. Moreover, the Termination Option provides the Debtors with much needed flexibility during these uncertain market conditions. As such, the Debtors have determine that assumption of the Hampton Lease is in the best interest of their

---

[4] At present, the monthly Hampton Rent Obligations under the Hampton Lease are comprised of: (a) approximately $127,051.25 in Monthly Base Rent (as defined in the Hampton Lease), and (b) approximately $23,292.73 in Electrical Inclusion Amounts (as defined in the Hampton Lease). Beginning July 1, 2021, the Monthly Base Rent under the Hampton Lease will decrease to approximately $114,346.13 for the duration of the Hampton Lease term.

estates.

## BASIS FOR RELIEF

**D.  Rejection of the Bedminster Lease s is an Appropriate Exercise of the Debtors' Business Judgment**

13.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

14.     One purpose behind section 365(a) is to allow the debtor to "to renounce title to and abandon burdensome property." *In re Exide Techs.,* 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization."); *N.L.R.B. v. Bildisco and Bildisco* (*In re Bildisco*)*,* 465 U.S. 513, 528 (1984) ("[t]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

15.     The standard applied by courts to determine whether rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. *See Grp. Of Institutional Inv'rs v. Chi., Milwaukee St. Paul & Pac. R.R.,* 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected…is one of business judgment"); *In re Bildisco,* 682 F.2d 72, 79 (3d Cir. 1982), *aff'd,* 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *accord In re HQ Glob. Holdings, Inc.,* 290 B.R. 507, 511 (Bankr. D. Del. 2003).

16.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib.*

6

*Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim, or caprice.").

17. The Debtors' decision to reject the Bedminster Lease is well within their business judgment and will serve to maximize the value of their estate. Given current market realities, the Debtors have limited use for the Bedminster Premises and seek authority to reject the Bedminster Lease to avoid the incurrence of the Bedminster Rent Obligations on a monthly basis. The Debtors have also concluded that the Hampton Premises sufficiently meet the Debtors' operational needs and there is little to no benefit to be realized by maintaining possession of the Bedminster Premises.

E. **Assumption of the Hampton Lease is an Appropriate Exercise of the Debtors' Business Judgment**

18. As with rejection of a unexpired lease or executory contract under section 365 of the Bankruptcy Code, a debtor's decision to assume an unexpired lease or executory contract is also reviewed under a business judgment standard. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) ("The resolution of this issue of assumption or rejection will be a matter of business judgment by the bankruptcy court [. . .] depending upon factors such as the terms of the lease, the conditions of any financing available, and the viability of the business.") (citing *Group of Inst. Investors v. Chi., Milw., St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943)).

19. Courts will generally approve the assumption of an executory contract or unexpired lease, unless evidence is presented that the debtor's decision to assume was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim or caprice." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal*

7

*Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986). Furthermore, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

20. The Debtors' decision to assume the Hampton Lease is well within their business judgment and doing so will serve to maximize the value of their estates. As stated herein, the Debtors have concluded that the relocation to the Hampton Premises sufficiently meets the Debtors' needs to effectively operate their Specialty Brands business while allowing the Debtors to realize significant cost savings. Furthermore, the Termination Option in the Hampton Lease provides the Debtors with future flexibility to terminate the Hampton Lease should future market conditions require the Debtors to do so. Thus, the Debtors have determined in their business judgment that assumption of the Hampton Lease is in the best interests of their estates.

**F.    Section 105 of the Bankruptcy Code and the Doctrine of Necessity Supports the Relief Requested**

21. Section 105(a) of the Bankruptcy Code gives this Court broad authority under its equitable powers to fashion any order or decree that would preserve or protect the value of the Debtors' assets. *See In re VII Holdings Co.,* 362 B.R. 663, 668-69 (Bankr. D. Del. 2007) (Shannon, J.) ("Section 105(a) has been construed to give a bankruptcy court broad authority to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings.")(citing *In re Combustion Engineering, Inc.*, 391 F.3d 90 (3d Cir. 2004)).

22. As described in more detail above, rejection of the Bedminster Lease and assumption of the Hampton Lease is necessary to obtain substantial savings in rental costs, and, in turn, preserve and enhance the value of the Debtors' estate. The Debtors have carefully reviewed

8

their lease agreements and have undertaken a process to identify ways in which the Debtors can obtain rental cost-savings without sacrificing their ability to successfully operate their businesses. Without the relief requested herein, the Debtors would incur unnecessary rental expenses to the detriment of their estate.  The Debtors, therefore, submit that the relief requested herein is necessary to protect and maximize the value of their estates.

**G.      Waiver of Bankruptcy Rule 6004(h)**

23.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  For the reasons set forth herein, the Debtors submit that they have established cause to, and hereby request that the Court, waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h), to the extent such stay is applicable.

## CONSENT TO JURISDICTION

24.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

## RESERVATION OF RIGHTS

25.     Nothing in this Motion shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) an admission as to the validity, priority, enforceability, or perfection of any  lien on, security interest in, or other

9

encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

### NOTICE

26. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Unsecured Notes Ad Hoc Group; (c) the agent under the Debtors' secured term and revolving financing facilities; (d) counsel to the ad hoc group of holders of the Debtors' unsecured notes; (e) the indenture trustees for the Debtors' outstanding notes; (f) counsel to the Governmental Plaintiff Ad Hoc Committee; (g) counsel to the official committee of unsecured creditors; (h) counsel to the official committee of opioid claimants; (i) the United States Attorney's Office for the District of Delaware; (j) the attorneys general for all 50 states and the District of Columbia; (k) the United States Department of Justice; (l) the Internal Revenue Service; (m) the Securities and Exchange Commission; (n) the United States Drug Enforcement Agency; (o) the United States Food and Drug Administration; (p) the Bedminster Landlord Counterparty; (q) the Hampton Landlord Counterparty; and (r) all parties entitled to notice pursuant to Bankruptcy Rule 2002  The Debtors submit that, under the circumstances, no other or further notice is required.

27. A copy of this Motion is available on (a) the Court's website: www.deb.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Prime Clerk LLC, at https://restructuring.primeclerk.com/Mallinckrodt.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: December 23, 2020

*/s/ Amanda R. Steele*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
           merchant@rlf.com
           steele@rlf.com
           schlauch@rlf.com

- and -

George A. Davis (*pro hac vice*)
George Klidonas (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone:   (212) 906-1200
Facsimile:   (212) 751-4864
Email:   george.davis@lw.com
           george.klidonas@lw.com
           andrew.sorkin@lw.com
           anu.yerramalli@lw.com

- and -

Jeffrey E. Bjork (*pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:   (213) 485-1234
Facsimile:   (213) 891-8763
Email:   jeff.bjork@lw.com

- and -

Jason B. Gott (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:   (312) 876-7700
Facsimile:   (312) 993-9767
Email:   jason.gott@lw.com

*Counsel for Debtors and Debtors in Possession*