# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br>No. 20-12522 (JTD)<br>(Jointly Administered)<br>Re: Dkt. Nos. [2074, 2075, 2076, 2200]<br>Hearing Date: May 26, 2021 at 1:00 p.m. (ET) |

### OBJECTION OF COLUMBUS HILL CAPITAL MANAGEMENT, L.P. TO DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION OF MALLINCKRODT PLC AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Columbus Hill Capital Management, L.P. ("Columbus Hill"), for its Objection to Debtors' motion for approval of the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Dkt. No. 2075] filed by the above captioned debtors and debtors in possession (the "Debtors"), respectfully represents as follows:

### INTRODUCTION

1.  The Disclosure Statement should not and cannot properly be approved because the Plan[2] is patently unconfirmable as to its treatment of the First Lien Notes Claims. The Plan purports to reinstate the First Lien Notes without including the full amount of the principal due under the First Lien Notes. Under the terms of the First Lien Notes Indenture, however, the Applicable Premium is part of the outstanding principal balance of the First Lien Notes.[3] The

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] *Joint Plan of Reorganization of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket No. 2074]. Capitalized terms used but not defined herein have the meanings given to them in the Plan.

[3] The Plan refers to Applicable Premium as the "First Lien Notes Makewhole Claim."

Applicable Premium is valid and enforceable against the Debtors, was negotiated in good faith and at arm's length, and nothing in the Bankruptcy Code disallows this portion of the First Lien Notes Claims. As a consequence, for the First Lien Notes to be reinstated, the reinstated principal amount must include the Applicable Premium. Absent such inclusion, the First Lien Notes Claims cannot be reinstated as proposed in the Plan. As a result, the Disclosure Statement cannot be approved because the Plan is patently unconfirmable as to the First Lien Notes Claims.

2. The Disclosure Statement also fails to provide adequate information regarding the Debtors' proposed "back-up" or "toggle" treatment for the First Lien Notes Claims. Implicitly, recognizing that their Plan is unconfirmable if the Applicable Premium is not included in the principal balance of the First Lien Notes, the Debtors incorporate "back-up" or "toggle" treatment in the Plan that would purport to satisfy the First Lien Notes Claims under section 1129(b) of the Bankruptcy Code through the issuance of Cram-Down First Lien Notes. The principal of these cram-down notes would include the Applicable Premium. If Cram-Down First Lien Notes are issued, the First Lien Notes Claims would be impaired under section 1124 of the Bankruptcy Code thereby entitling the holders to vote on the Plan. The Debtors, however, have failed to disclose the proposed maturity date or interest rate that would be payable on the Cram-Down First Lien Notes, as well as other material information regarding the terms of such notes.

3. Notwithstanding that a hypothetical investor would require such information to make an informed judgment about the Plan, the Debtors state that they will provide such terms in the Plan Supplement to be filed *after* dissemination of the Disclosure Statement and the beginning of the solicitation of votes to accept or reject the Plan. While the Debtors say they will disclose the terms of the Cram-Down First Lien notes in the Plan Supplement one week before the voting deadline, this is hardly sufficient time for Columbus Hill and the other holders of the First Lien

Notes Claims to make an informed decision on whether to vote for the Plan. Further, it does not allow the Debtors to meet their burden to show that the Disclosure Statement contains adequate information as required by the Bankruptcy Code. The Court should, therefore, require that the Disclosure Statement specify all material terms of the Cram-Down First Lien Notes.

## BACKGROUND

I.   **The First Lien Notes and the April 2020 Exchange**

4. The First Lien Notes (like the First Lien Revolving Credit Facility, the First Lien Term Loans, and substantially all of the other funded indebtedness of Mallinckrodt) were issued by Mallinckrodt International Finance S.A. and Mallinckrodt CB LLC (collectively, the "Issuers") pursuant to that certain Indenture, dated April 7, 2020 (as modified, amended, or supplemented from time to time, the "Indenture").[4] The First Lien Notes were unconditionally guaranteed by substantially all of the Debtors and certain non-Debtor guarantors (collectively, the "Guarantors") and are secured by first-priority liens on substantially all assets of the Issuers and Guarantors.[5] The First Lien Notes and guarantees thereof are secured by liens on the same assets of the Issuers and Guarantors that are subject to liens securing the (x) First Lien Revolving Credit Facility and the First Lien Term Loans and (y) subject to the intercreditor agreement among the holders of the First Lien Notes and the holders of the Second Lien Notes, the Second Lien Notes.[6]

---

[4]   Also referred to as the "First Lien Notes Indenture."

[5]   The Issuers and Guarantors include each of the Debtors (other than Mallinckrodt Group S.à r.l. and Mallinckrodt Canada ULC) and certain non-Debtor entities. *See* Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions ("Welch Decl.") ¶¶ 58-59, Dkt. No. 128.

[6]   The First Lien Notes were issued on April 7, 2020 to satisfy the maturity of a portion of the Debtors' then outstanding unsecured notes due April 2020 (the "Maturing 2020 Notes"). Disclosure Statement at 30. Under the terms of the exchange agreement between the Debtors and the exchanging noteholders (the "April 2020 Exchange"), the Maturing 2020 Notes held by those noteholders were satisfied through the issuance of the First Lien Notes. Holders of the remaining $120 million in Maturing 2020 Notes that did not participate in the April 2020 Exchange were repaid in full in cash on April 15, 2020 when their notes came due. Welch Decl. ¶ 22.

**II.     The Applicable Premium**

5.      When the Indenture was negotiated, the Debtors had publicly announced the Opioid Settlement (as defined in the Disclosure Statement), which contemplated chapter 11 filings of certain, but not all of the Debtors, solely for the purpose of implementing a settlement with the opioid claimants.[7]  The Indenture contains a liquidated damages clause that was specifically negotiated, at arm's-length and in good faith, to compensate the holders of First Lien Notes in the unexpected event that the Debtors' non-opioid entities sought relief under the Bankruptcy Code. Upon the occurrence of certain types of Events of Default, including the filing of a bankruptcy petition by the Parent or any Significant Subsidiary, "an amount equal to the Applicable Premium . . . will become and be immediately due and payable," and such amount "shall be deemed to be principal of the Notes and interest shall accrue on the full principal amount of the Notes (including the Applicable Premium . . .) from and after the applicable triggering event."[8]

6.      On October 12, 2020 (the "Petition Date"), the Parent and all Significant Subsidiaries commenced cases under the Bankruptcy Code in this Court triggering an Event of Default under section 6.01(f) of the Indenture.  As a result of that Event of Default, the First Lien Notes were accelerated and an amount equal to the Applicable Premium became immediately due and owing and part of the principal amount of the First Lien Notes.  As of the Petition Date, the First Lien Notes were due and payable in the principal amount of approximately $589 million, which includes the Applicable Premium, plus all accrued and unpaid interest and fees provided for under the terms of the First Lien Notes and the Indenture.

---

[7]     Welch Decl. ¶ 94.

[8]     Indenture §§ 6.01(f) & 6.02.

**III.    Plan Treatment of the First Lien Notes**

7.    Under the Plan, the First Lien Notes Claims are classified in Class 3. The Plan provides for two potential treatments of Class 3 Claims. The first proposed treatment is to reinstate the First Lien Notes without the Applicable Premium. If, however, the Applicable Premium is "Allowed," the Plan would provide for the First Lien Notes to receive "Cram-Down First Lien Notes" with a face value equal to the face value of the First Lien Notes, inclusive of the Applicable Premium.[9] Under the "back-up" or "toggle" treatment, the maturity date, interest rate, and other key terms for these cram-down notes are not disclosed in the Plan or the Disclosure Statement and are not proposed to be disclosed until after solicitation of votes to accept or reject the Plan. It cannot seriously be suggested that a disclosure statement which fails to set forth any material economic and other terms of securities that would be issued to impaired creditors, such as the holders of the First Lien Notes Claims, can be approved under Section 1125(a).

## ARGUMENT

8.    The Disclosure Statement should not and cannot be approved because the Plan is patently unconfirmable to the extent it purports to reinstate the First Lien Notes for less that the full amount of the claims. The Disclosure Statement also cannot be approved with respect to the Cram-Down First Lien Notes because it fails to provide adequate information as to the terms of the Cram-Down First Lien Notes (in fact, it provides no material information as to the terms of the Cram-Down First Lien Notes).

---

[9]    Plan Art. III.B.3; Disclosure Statement at 7.

I. **The Disclosure Statement Cannot be Approved Because the Plan is Patently Unconfirmable if the First Lien Notes are Reinstated without the Applicable Premium**

9. A court may deny approval of a disclosure statement where the plan on its face is patently unconfirmable.[10] "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing."[11] Here, the Plan is patently unconfirmable because the proposed reinstatement of the First Lien Notes Claims without including the Applicable Premium violates the Bankruptcy Code. For the First Lien Notes Claims to be considered unimpaired under section 1124(2) of the Bankruptcy Code, the Applicable Premium must be included in the principal of those claims.

A. <u>The Applicable Premium Is Part of the First Lien Notes Claims</u>

10. As set forth above, the filing of theses chapter 11 cases was an Event of Default under section 6.01(f) of the Indenture. That Event of Default triggered an acceleration of the First Lien Notes, which in turn made the Applicable Premium due and owing as part of the principal of the First Lien Notes. Section 1124(2) of the Bankruptcy Code provides that a contractual provision that entitles a creditor to receive accelerated payment of its claim after the occurrence of a default is not enforceable under certain specified circumstances. Section 1124(2) is not applicable here because the holders of First Lien Notes Claims are neither demanding nor requiring accelerated payment of their claims. Rather, they are requiring that the full principal owed to them, which

---

[10] *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("[A] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable.").

[11] *Id.* (internal quotations omitted).

includes the Applicable Premium, be accounted for if the First Lien Notes are reinstated (or paid in accordance with the Bankruptcy Code if not reinstated.

11.     Section 1124(2) does not govern or address the amount of an unimpaired claim. Rather, section 1124(2) "merely defines the standards for unimpaired status."[12] The amount of a claim is instead governed by applicable non-bankruptcy law.[13] Thus, the amount of the First Lien Notes Claims shall be determined by the terms of the Indenture and the First Lien Notes. And, under the terms of the Indenture and the First Lien Notes, the Applicable Premium is part of the First Lien Notes Claims.

B.     Nothing in the Bankruptcy Code Disallows the Applicable Premium

12.     The Debtors do not, and cannot, contest that the Applicable Premium is due and owing under the terms of the Indenture and the First Lien Notes. Rather, the Debtors appear to be contending that the Bankruptcy Code would disallow the portion of the First Lien Notes Claims attributable to the Applicable Premium. No factual or legal basis for such contention exists.

13.     Section 502(b) of the Bankruptcy Code provides that a claim shall be allowed unless, among other things, the claim is unenforceable against the debtor or it is for unmatured interest.[14] Neither of these grounds apply to the Applicable Premium.

14.     First, the Applicable Premium is enforceable against the Debtors. New York law, which governs the Indenture, recognizes "applicable premium" and similar provisions as liquidated damages.[15] Like other liquidated damages provisions, the reasonableness of the

---

[12] *In re Moody Nat. SHS Houston H, LLC*, 426 B.R. 667, 670 (Bankr. S.D. Tex. 2010)

[13] *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) (noting that "state law governs the substance of claims").

[14] 11 U.S.C. § 502(b)(1) & (2).

[15] *See, e.g.*, *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y. 3d 373, 379-81 (N.Y. 2005); Indenture § 6.02 ("Any premium payable pursuant to the first sentence of this paragraph shall be presumed to be liquidated damages

Applicable Premium is evaluated as of the date of execution of the underlying contract.[16] Whether damages are difficult to calculate is to be evaluated as of the time the liquidated damages provision was negotiated, not when the actual damages were suffered.[17] In complex loan transactions, actual damages that may result upon a future breach of the loan agreement are often difficult to determine as of the date the loan is made even where, for example, foregone interest payments may be calculated based on a set formula.[18]

15.     These difficulties described above existed when the Indenture was executed. As a result, any arguments regarding the actual damages suffered are irrelevant. In the first instance, damages are not solely a monetary matter. Moreover, under New York law the reasonableness of liquidated damages provisions are determined based on the circumstances that existed *at the time of the contract* rather than by reference to actual damages.[19] Thus, the Applicable Premium is enforceable against the Debtors as liquidated damages.

16.     Second, the Applicable Premium is not unmatured interest. Consistent with New York law's characterization of applicable premium payments as liquidated damages, the substantial majority of bankruptcy courts that have considered the issue have concluded that amounts similar to the Applicable Premium are in the nature of liquidated damages rather than

---

sustained by each holder as the result of the acceleration of the Notes and the Issuers agree that it is reasonable under the circumstances currently existing.").

[16] *Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp.*, 459 F. 2d 896, 898-99 (2d Cir. 1972).

[17] *United Merchants and Mfr., Inc. v. Equitable Life Assurance Soc'y of the United States (In re United Merchants and Mfr., Inc.)*, 374 F. 2d 134, 142 (2d Cir. 1982) (holding that actual damages suffered have little relevance to the validity of a liquidated damages clause) (citing *Heller*, 549 F. 2d at 898-99).

[18] *JMD Holding*, 4 N.Y. 3d at 382-83; *S. Side House*, 451 B.R. at 270.

[19] *See Heller*, 549 F. 2d at 898-99 ("[T]he actual damages suffered by the party for whose benefit the clause is inserted in the contract have little relevance to the validity of a liquidated damages clause. The soundness of such a clause is tested in light of the circumstances existing as of the time that the agreement is entered into rather than at the time that the damages are incurred or become payable.")

unmatured interest.[20] Interest is "consideration for the use or forbearance of another's money accruing over time."[21] Unmatured interest is simply interest that has not yet accrued or been earned.[22] Here, the Applicable Premium is not consideration for the use of the First Lien Noteholders' money. Rather, it is a liquidation of the difficult to calculate damages that arose as a result of the commencement of these chapter 11 cases.[23] Thus, the Applicable Premium is not unmatured interest and is not disallowed by section 502(b)(2) of the Bankruptcy Code.

17.     Accordingly, the Applicable Premium must be included in the principal balance of the First Lien Notes if the First Lien Notes are to be reinstated.

## II.     The Disclosure Statement Cannot Be Approved Because It Does Not Contain Adequate Information

18.     A disclosure statement must also contain adequate information to be approved by the court.[24] What constitutes "adequate information" is a flexible standard based on the facts and circumstances of the case.[25] This includes information that "a hypothetical investor of the relevant class to make an informed judgment about the plan."[26] Among several factors courts consider to

---

[20] *See, e.g.*, *In re Ultra Petroleum Corp.*, 624 B.R. 178, 188 (Bankr. S.D. Tex. 2020) (holding that a make-whole amount was not unmatured interest); *In re Trico Marine Servs., Inc.*, 450 B.R. 474, 480-81 (Bankr. D. Del 2011) (noting that courts holding make-whole amounts to be unmatured interest are "distinctly in the minority") (c*iting Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*, 245 B.R. 326, 330 (Bankr. W.D. Wisc. 2000) ("This court is in agreement with a majority of courts that view a prepayment charge as liquidated damages, not as unmatured interest."); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) ("Prepayment amounts, although often computed as being interest that would have been received through the life of a loan, do not constitute unmatured interest because they fully mature pursuant to the provisions of the contract."); *In re Skyler Ridge*, 80 B.R. 500, 508 (Bankr. C.D. Cal. 1987) ("Liquidated damages, including prepayment premiums, fully mature at the time of breach, and do not represent unmatured interest.")).

[21] *Ultra Petroleum Corp.*, 624 B.R at 187.

[22] *Id.*

[23] Indenture § 6.02.

[24] 11 U.S.C. § 1125(b).

[25] *Id.* § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records.").

[26] *Id.*

9

determine if a disclosure statement contains adequate information is the "financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan."[27]

19. The Plan provides that, if the Applicable Premium is allowed, holders of First Lien Notes Claims will receive Cram-Down First Lien Notes in a face amount equal to the allowed amount of the First Lien Notes Claims.[28] If this treatment option is provided, the First Lien Notes Claims will be impaired under the Plan and the holders will be entitled to vote on the Plan.[29] The Disclosure Statement and the Plan, however, fail to specify the maturity date, interest rate, and all other key terms for the Cram-Down First Lien Notes. These are critical pieces of information for the holders of the First Lien Note Claims. Without these pieces of information, the holders of the First Lien Notes Claims do not have adequate information to make an informed judgment about the Plan.[30]

20. While the Debtors have represented that they will disclose the terms of the Cram-Down First Lien Notes in the Plan Supplement, the Plan Supplement will be filed only a week before the proposed deadline to vote on, or object to confirmation of, the Plan. This is hardly a sufficient amount of time for holders of the First Lien Notes Claims to evaluate the proposed treatment and make an informed judgment on the Plan. For the First Lien Notes Claims, the Debtors have essentially set the time to object to the Plan at one week, contrary to Bankruptcy Rule 2002, which require 28 days' notice of the deadline to object to confirmation of the Plan

---

[27] *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)

[28] Disclosure Statement at 7; Plan Art. III.B.3.

[29] Disclosure Statement at 13; Plan Art. III.B.3.

[30] *See, e.g.*, *In re Del-A-Rae, Inc.*, 448 B.R. 303, 306 (Bankr. S.D. Ga. 2011) (holding that insufficient information regarding post-confirmation interest was grounds to deny approval of disclosure statement).

absent order of the Court, and the Debtors have not shown good cause for shortening that time.[31] Regardless, the Debtors' assertions that that they will provide this material information at some point in the further does not meet their burden to show that the Disclosure Statement provides adequate information.[32]

21. Further, for the Plan to be confirmable with respect to the Cram-Down First Lien Notes, it must be fair and equitable to the holders of the First Lien Notes Claims. Section 1129(b) requires that for a plan to be fair and equitable with respect to a secured creditor, the plan has to provide for deferred payments with value equal to the allowed amount of the claim.[33] This means, "the deferred payments, discounted to present value by applying an appropriate interest rate (the 'cramdown rate'), must equal the allowed amount of the secured creditor's claim."[34] As stated above, however, the Disclosure Statement and the Plan fail to specify the maturity date, interest rate, and all other key terms for the Cram-Down First Lien Notes. Without these pieces of information, there is no way to determine whether the deferred payments have a value equal to the allowed amount of the claim.

22. If the Debtors propose to issue the Cram-Down First Lien Notes with deferred payments that have a value less than the allowed amount of the claim, the Plan will not be confirmable if the class of the First Lien Notes Claims votes to reject the Plan because it will not be fair and equitable with respect to that class. Thus, to meet the requirements of the Bankruptcy Code, i.e., to have adequate information, the Disclosure Statement must set forth the proposed interest rate for the Cram-Down First Lien Notes and all other material terms of the Cram-Down

---

[31] Fed. R. Bankr. P. 2002(b).

[32] 11 U.S.C. § 1125(b).

[33] 11 U.S.C. § 1129(b)(2)(A)(i)(II).

[34] *In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 330 (5th Cir. 2013)

First Lien Notes and such terms must provide for deferred payments with value equal to the allowed amount of the claim and otherwise be fair and equitable to the holders of the First Lien Notes Claims.

### III. Additional Amounts Are Due on the First Lien Notes as Adequate Protection Under the Cash Collateral Order

23. Under the terms of the Cash Collateral Order, the Debtors were required to make adequate protection payments on the First Lien Notes consisting of, among other things, the semi-annual interest due under the Indenture.[35] These interest payments, however, were calculated based on the principal of the First Lien Notes without the inclusion of the Applicable Premium.[36] The Cash Collateral Order further reserved all parties' rights with respect to the rate of interest to be paid as adequate protection as well the allowance of any claims under the Indenture.

24. As set forth above, the Applicable Premium is part of the allowed First Lien Notes Claims and was added to the outstanding principal amount on the Petition Date. This means that there is a shortfall in the adequate protection payments made by the Debtors during this case equal to the difference between the interest payments calculated without the Applicable Premium and calculated with the Applicable Premium. In addition to being entitled to such amount under the Cash Collateral Order, the First Lien Notes are oversecured. Therefore, under Section 506(b), holders of First Lien Notes are entitled to postpetition interest on the full amount of their allowed claim, which includes the Applicable Premium. The Plan must provide for the payment of this amount in cash on the Effective Date.

---

[35] Cash Collateral Order ¶ 4(d).

[36] *Id.*

**RESERVATION OF RIGHTS**

25.     Columbus Hill reserves its right to supplement this objection, including based on any amended or supplemental plan documents filed by the Debtors.  Columbus Hill further reserves all rights with respect to the Plan and any arguments relating to the confirmation thereof.

**CONCLUSION**

26.     The Court can and should decline to approve the Disclosure Statement because the Plan is patently unconfirmable to the extent it purports to reinstate the First Lien Notes without the Applicable Premium and interest thereon.  The Applicable Premium is an enforceable liquidated damages clause that is not disallowed by any provision of the Bankruptcy Code.  Approval of the Disclosure Statement must likewise be denied because the Disclosure Statement fails to provide adequate information regarding the proposed Cram-Down First Lien Notes.  Absent even the most basic information a hypothetical investor would want to know, such as the interest rate and maturity of the notes, it is impossible for the holders of the First Lien Notes Claims to make an informed judgment about the Plan.  As a result, the court should deny approval of the Disclosure Statement and grant such other an further relief as may be just and proper.

| | |
|---|---|
| Dated: May 17, 2021<br>New York, New York | Respectfully submitted,<br><br>**HUNTON ANDREWS KURTH LLP**<br><br>/s/ *Jason W. Harbour*<br>Jason W. Harbour (DE Bar No. 4176)<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, Virginia 23219<br>Telephone: (804) 788-8200<br>E-mail: jharbour@huntonak.com<br><br>Paul N. Silverstein (*pro hac vice* forthcoming)<br>Brian M. Clarke (*pro hac vice* forthcoming)<br>Philip M. Guffy (*pro hac vice* forthcoming)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 309-1000<br>Email: paulsilverstein@huntonak.com<br>          brianclarke@huntonak.com<br>          pguffy@huntonak.com<br><br>*Counsel to Columbus Hill Capital Management, L.P.* |