## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | Case No. 20-12522 (JTD) |
| Debtors.[1] | Jointly Administered |
| | **Ref. Docket Nos. 3282, 4508 and 4718** |

## RESPONSE OF THE FUTURE CLAIMANTS' REPRESENTATIVE TO OBJECTION TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF MALLINCKRODT PLC AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Roger Frankel, as the legal representative for Future Opioid PI Claimants (the "**FCR**"), hereby files this response ("**Response**") to the U.S. Trustee's objection to confirmation of the *First Amended Joint Plan of Reorganization of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4508] (the "**Plan**") filed by Mallinckrodt plc and its debtor affiliates (collectively, the "**Debtors**"). Specifically, the FCR responds to the objection (the "**Objection**") [D.I. 4718] of the United States Trustee (the "**U.S. Trustee**") as it relates to the proposed Trust Distribution Procedures ("**TDP**") for the Mallinckrodt Opioid Personal Injury Trust ("**PI Trust**") to process and resolve NAS PI Claims and Non-NAS PI Claims.[2]

When the Court appointed the FCR to protect the rights of Future Opioid PI Claimants, the Court conferred the FCR with standing as a party-in-interest under 11 U.S.C. §1109(b) to be heard on all matters relating to the Debtors' chapter 11 case, as well as the powers and duties of a

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] The form of Trust Distribution Procedures for the NAS PI Claims and the Non-NAS PI Claims were filed as Exhibits C-1 and C-2, respectively, to the *Notice of Filing of Trust Distribution Procedures*, on July 20, 2021 [D.I. 3282]. Because the relevant provisions at issue for NAS PI Claims and Non-NAS PI Claims are substantively nearly identical, we will use "**TDP**" to collectively refer to both.

committee under 11 U.S.C. §1103 as such are appropriate for an FCR. *See* D.I. 2813. The FCR

actively participated in negotiating the TDP, and the FCR's support of the Plan is based, in large

part, on his determination that the TDP provide reasonable assurance that the Plan will provide

fair and equitable treatment to all claimants, including the Future Claimants (as defined in the

Plan).

Accordingly, the FCR respectfully states as follows:

I.     **The Confidentiality Provisions of the TDP**
       **are Necessary, Reasonable and Appropriate**

The U.S. Trustee objects to the confidentiality provisions in section 6.1 of the TDP. *See*

Objection at 40–41. While the U.S. Trustee concedes "there is clear legitimate privacy interest in

protecting medical information and certain personally identifiable information," it goes on to

ignore or misconstrue the TDP confidentiality provisions, and fails to identify how any

information contained in the PI Trust claims materials would not be protected under legitimate

privacy interests. *See* Objection at 40.

A.     **The PI Trust Claims Materials Will Contain Non-Public,**
       **Sensitive Information That is Subject to Privacy Protections**

The primary purpose of TDP section 6.1 is to protect the privacy interests of opioid

personal injury claimants. The information the PI Trust will receive—information that identifies

claimants and medical conditions that give rise to opioid personal injury claims—is clearly

protected under the Bankruptcy Code and privacy laws.[3] Indeed, the U.S. Court of Appeals for

the Third Circuit and the U.S. District Court for the District of Delaware have confirmed the

need to protect such sensitive information and restricted disclosure only to situations involving a

legitimate need for access and appropriate safeguards against the risk of identity theft and other

harm.[4]

---

[3] *See, e.g.,* 11 U.S.C. § 107(c) ("The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property: (A) Any means of identification (as defined in section 1028(d) of title 1856) contained in a paper filed, or to be filed, in a case under this title [and] (B) Other information contained in a paper described in subparagraph (A)."); 6 Del. C. § 12B-102 (requiring entities to notify Delaware residents if a computer breach leads to the unauthorized access of personal information, including medical information); 16 Del. C. § 1210–1213 (restricting disclosure of protected health information collected for public health purposes).

[4] *See In re AC&S Inc.*, 775 Fed. Appx. 78, 79 (3d Cir. 2019) (affirming *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018) and upholding bankruptcy court order that denied two "[m]ajor asbestos defendants" from having unconditional access to Rule 2019 exhibits because it "would pose an undue risk of identity theft and exposure to private medical information"; access was permitted for a limited period of three months and "subject to certain conditions consistent with those imposed in similar cases"); *Everett v. Nort*, 547 F. App'x 117, 122 n.9 (3d Cir. 2013) ("We have recognized the important privacy interest in one's medical records. The right to privacy is a consideration in the balancing process that courts conduct in deciding whether to file a document under seal." (internal citation omitted)); *In re Bestwall LLC*, 2021 WL 2209884, at *3 (D. Del. June 1, 2021) (noting that claimants' "submissions to [nine asbestos] Trusts disclose medical records, sensitive personal health information, information about claimants' personal finances, and information regarding claimants' family members—all of which was disclosed with the expectation that such information will be kept confidential" and granting trusts' motion to quash subpoenas due to lack of adequate protections and safeguards); *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 752 (D. Del. 2018) ("Where materials contain personal identifiers, paired with confidential medical information, the potential risk to privacy interests in disclosure is self-evident. As the Third Circuit has held, '[t]here can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is matter which the individual is ordinarily entitled to retain with the private enclave where he may lead a private life.'" (alteration in original) (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980))).

The U.S. Trustee's objection complains that the TDP prohibit the disclosure of "whether any particular individual has filed a claim, the factual allegations on which the claim was based, and whether the claimant was paid." Disclosing any of this information would inherently reveal protected identifying and medical information. While such disclosures may serve the purposes of other defendants in the tort system, they would harm the beneficiaries of the PI Trust. The PI Trust is not intended to be a warehouse of data about opioid personal injury claimants.[5]

### B.   Confidentiality is Imperative for Opioid Personal Injury Claims Information

While the Third Circuit and the Delaware District Court have affirmed the confidential treatment of claimant information submitted to asbestos personal injury settlement trusts, the need for confidentiality is even greater here. Disclosing the fact that an individual has submitted a claim to the PI Trust will necessarily reveal that individual's use of an opioid product. Publishing that an individual has an opioid-related claim poses severe risk of harm, such as that

---

[5] *See Bestwall*, 2021 WL 2209884, at *3 ("[T]he confidentiality provisions of the Trusts' TDPs . . . make clear that the Trusts are not to serve as information clearinghouses or 'public libraries' for entities that wish to obtain confidential claimant information for their own commercial purposes. Rather, each Trust should take reasonable and necessary steps to protect the confidentiality of the information submitted to it by the Trust Claimants when that information is sought by third parties for purposes other than determining whether the claims submitted to the Trust in question are valid and payable.").

person being publicly saddled with the label of drug addict and subjected to discrimination, or

other prejudice.[6]

### C.    The Confidentiality Provisions Are Reasonable and Consistent With Those Approved in Numerous Mass-Tort Cases

Contrary to the U.S. Trustee' allegations, the confidentiality provisions are neither "far-

reaching" nor intended to permit the concealment of claims from other defendants. *See* Objection

at 40–41. The form of the confidentiality provisions of the TDP is standard, having been litigated

and approved on appeal in numerous mass-tort cases.[7] In fact, the confidentiality provisions have

---

[6] *See, e.g.,* 42 U.S.C. § 12114(b) and 29 C.F.R. § 1630.3(b) (protecting, under the Americans with Disabilities Act, employees and applicants with a history of drug use or who are erroneously identified as being engaged in illegal drug use); *Doe v. Main Line Hosps., Inc.*, 2020 WL 5210994, at *3 (E.D. Pa. Sept. 1, 2020) (denying request of nurse to proceed anonymously in wrongful discrimination and termination action, because multi-factor analysis indicated she had revealed her recovered-opioid-addict status to co-workers and others; expressing sympathy for Doe's concerns about reputational harm and backlash from family, friends, and employers, "which are certainly reasonable in a society that stigmatizes drug addiction" and finding such concerns weighed in favor of anonymity); *Golden v. Smolko*, 2010 WL 4357213, at *89–90 (Pa. C.P., Lackawanna Cty. June 4, 2010) (granting new trial in medical malpractice action after plaintiff's counsel violated *in limine* ruling by probing doctor's addiction to OxyContin and stating that "[o]nce a witness, or person, is given this label [of addict] the stigma can overshadow all other aspects of their testimony. The visceral effect the word has on a jury makes it impossible for them to reach a verdict based on the evidence and not on a personal bias or prejudice. '[O]nce the skunk is in the box, the odor is ineradicable.'" (quoting Commonwealth v. Padilla, 823 A.2d 1189, 1196 (Pa. Super. Ct. 2007)); Yngvild Olsen and Joshua M. Sharfstein, *The Opioid Epidemic: What Everyone Needs to Know*, Oxford University Press (2019), at 14–15 ("Many people consider those with addiction to be moral failures, lacking sufficient will power, and consciously choosing to destroy their lives with alcohol or other drugs. These attitudes reflect a deep stigma that goes back more than 100 years in the United States. . . . Stigma has led to ongoing bias toward, and discrimination against, people who have an addiction.").

[7] *See In re Federal-Mogul Glob., Inc.*, 684 F.3d 355 (3d Cir. 2012); *Mt. McKinley Co. v. Pittsburgh Corning Corp.*, 518 B.R. 307, 323 (W.D. Pa. 2014); *In re W.R. Grace & Co.,* 475 B.R. 34 (D. Del. 2012); *see also In re Bestwall LLC*, 2021 WL 2209884, at *2 (D. Del. June 1, 2021) (noting that for nine asbestos trusts, "[e]ach TDP expressly provides that submissions to the Trust by the holders of the channeled asbestos claims . . . (i) are intended to be confidential, (ii) will be treated as made in the course of settlement discussions between the claimant and the Trust, and (iii) are to be protected by all applicable privileges, including those applicable to settlement discussions").

been soundly affirmed over similar objections raised by the U.S. Trustee in four recent mass-tort

cases: *Duro Dyne*, *Maremont*, *Sepco* and *Fairbanks*.[8]

The U.S. Trustee first objected to the form of confidentiality provisions in *Duro Dyne*,

raising the same criticisms it raises here: while noting there are legitimate privacy interests to

protect medical information and personally identifiable information, the U.S. Trustee argued that

the confidentiality provisions shielded claims information from disclosure without "any

legitimate basis for such far-reaching confidentiality protections," that the claims should be a

matter of public record just as claims filed in the tort system or on a chapter 11 claims register

are, and that "the only possible purpose of such far-reaching secrecy provisions would appear to

be to allow litigants to conceal the existence of claims against other defendants."[9] The U.S.

Trustee also argued the confidentiality provisions required changes to prevent fraud and support

meaningful audits, and criticized the confidentiality provisions for inhibiting discovery of trust

---

[8] In all four of these cases, as in Mallinckrodt, there was no bar date by which proofs of claim had to be filed by persons whose claims would be channeled to the post-bankruptcy settlement trust (other than the claims filing deadlines set forth in the respective trust distribution procedures). *See In re Duro Dyne Nat'l Corp.*, No. 18-27963 (Bankr. D.N.J. Dec. 12, 2018), *Order Exempting Asbestos Claims and Demands from the January 8, 2019 Claims Bar Date* [D.I. 331]; *In re The Fairbanks Co.*, No. 18-41768-PWB (Bankr. N.D. Ga. Sept. 12, 2018), *Order (I) Establishing Bar Dates for Submitting Non-Asbestos Proofs of Claim, (II) Approving Procedures for Submitting Non-Asbestos Proofs of Claim; and (III) Approving Notice Thereof* [D.I. 76]; *In re Sepco Corp.*, No. 16-50058 (Bankr. N.D. Ohio July 29, 2018), *Order Pursuant to Section 501 of the Bankruptcy Code, Bankruptcy Rules 2002(a), 3002, and 3003(c)(3) Establishing Bar Date For Filing Proofs of Claim Other Than With Respect to Asbestos Personal Injury Claims and Approving Form and Manner of Notice Thereof* [D.I. 416]. *Maremont* involved a prepackaged plan of reorganization and did not include a bar date for the filing of proofs of claims for asbestos claims.

[9] *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. Oct. 4, 2018), *Objection of the United States Trustee to the Disclosure Statement for the Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al.*, at 8–9 [D.I. 140].

claims because the provisions require the trust to treat claims materials as subject to a settlement privilege and to resist certain discovery requests for such materials. [10]

The New Jersey Bankruptcy Court heard testimony from the future claimants' representative as to the necessity and reasonableness of the confidentiality provisions, as well as argument from counsel for both the plan proponents and the U.S. Trustee.[11] The court required the plan proponents to amend the confidentiality provisions to permit persons seeking claims materials to seek relief from the bankruptcy court, but went on to confirm the plan with materially the same confidentiality provision proposed for the Mallinckrodt PI Trust.[12]

In *Maremont*, the U.S. Trustee again raised similar criticisms of the confidentiality provisions, as part of objecting to appointment of the proposed future claimants' representative

---

[10] *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. Feb. 8, 2019), *Objection of the Acting United States Trustee to Second Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., Et Al., Under Chapter 11 of the Bankruptcy Code*, at 15–19 [D.I. 447].

[11] *See In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. May 22, 2019), *Transcript of Motions and Confirmation Hearing*, at 31–34 [D.I. 704].

[12] *See In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. March 6–7, 2019), *Transcript of Confirmation Hearing* (requiring amendments to TDP) [D.I. 559–60]; *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. Oct. 16, 2020), *Transmittal to the District Court Amended Proposed Findings of Fact and Conclusions of Law for Confirmation* [D.I. 1304]; *In re Duro Dyne Nat'l Corp.,* 2020 WL 6270691 (D.N.J. Oct. 23, 2020), *Order (I) Approving and Adopting the Bankruptcy Court's Amended Report and Recommendation, and (II) Confirming the Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code, As Modified*. Section 6.5 of the trust distribution procedures used by the Duro Dyne Asbestos Personal Injury Trust is publicly available on the trust's website, http://www.durodyneasbestostrust.com/Resources.html.

and in its objection to confirmation of the plan.[13] The *Maremont* Court heard testimony about the

confidentiality provisions from the candidate ultimately appointed as the future claimants'

representative, as well as the U.S. Trustee's nominee for that role, and also heard testimony and

argument regarding the provisions as part of the confirmation hearing.[14] While the court raised

concerns about the scope of information to be collected by the proposed asbestos settlement

trust, it was not troubled by the requirement for confidential treatment.[15] The court went on to

over-rule the U.S. Trustee's objections to "the confidentiality of claim submissions set forth in

---

[13] *In re Maremont Corp.,* No. 19-10118 (KJC) (Bankr. D. Del. Mar. 4, 2019), *United States Trustee's Objection to Debtors' Motion for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants,* Nunc Pro Tunc *to the Petition Date,* at 11–12 and n. 7 [D.I. 63]; *In re Maremont Corp.,* No. 19-10118 (KJC) (Bankr. D. Del. Mar. 4, 2019), *Objection of the Acting United States Trustee to the Disclosure Statement and Joint Prepackaged Plan of Reorganization of Maremont Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 10, 11),* at 8–9, 12–15 [D.I. 112].

[14] *In re Maremont Corp.,* No. 19-10118 (KJC) (Bankr. D. Del. Mar. 8, 2019), *Transcript of Hearing*; *In re Maremont Corp.,* No. 19-10118 (KJC) (Bankr. D. Del. Mar. 18, 2019), *Transcript of Omnibus Hearing* [D.I. 166].

[15] *In re Maremont Corp.,* No. 19-10118 (KJC) (Bankr. D. Del. Mar. 18, 2019), *Transcript of Omnibus Hearing,* at 37 [D.I. 166] ("[U.S. Trustee counsel:] With respect to the Section 6.5 of the Trust Distribution Procedures, it basically makes that all submissions to the trust, by the claimant, are going to be treated as confidential as part of settlement discussions, subject to all applicable privileges, and that the trust is going to protect those submissions. THE COURT: I don't have a problem with that part. . . . And yes, they make it hard to get at the information. I agree."); *id.* at 42–43 ("[U.S. Trustee counsel:] I know there's been, at least, argument or, at least, allusions that have been to the point that we don't want these persons, these claimant's information out there. Their personal information, yes. When they file a tort claim, that complaint is filed and all that information is public. There may be some personal information and there's safeguards that can be enacted to protect all that. THE COURT: So, there's no misunderstanding. I'm not suggesting the information that I think should be collected be publicly available.").

Section 6.5 of the TDP and the related discovery procedures," and confirm the plan with a TDP confidentiality provision substantially similar to that proposed for the PI Trust here.[16]

The U.S. Trustee for Region 9 raised similar objections to the confidentiality provisions in *Sepco*.[17] Ultimately, the objections were consensually resolved and the Ohio Bankruptcy Court confirmed the plan with trust distribution procedures that include nearly identical confidentiality provisions as those proposed here.[18]

Additionally, the U.S. Trustee for Region 21 challenged similar confidentiality provisions in the context of the appointment process for the future claimants' representative in *Fairbanks*.[19] However, the U.S. Trustee later expressed approval of the confidentiality provisions, noting that the proposed procedures included safeguards that "alleviate many of the United States Trustee's

---

[16] *In re Maremont Corp.*, No. 19-10118 (KJC) (Bankr. D. Del. May 17, 2019), *Findings of Fact, Conclusions of Law and Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Prepetition Solicitation Procedures, and (III) Confirming the Modified Joint Prepackaged Plan of Reorganization of Maremont Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, at 7–8 [D.I. 241]. Section 6.5 of the trust distribution procedures used by the Maremont Asbestos Personal Injury Trust is publicly available on the trust's website, http://maremontasbestostrust.com/Resources.html.

[17] *In re Sepco Corp.*, No. 16-50058 (AMK) (Bankr. N.D. Ohio Aug. 7, 2019), *Objection of United States Trustee to Motion of Debtor for an Order Approving (I) the Disclosure Statement; (II) the Solicitation and Voting Procedures; (III) Forms of Ballots; (IV) Deadlines and Procedures to File Objections to the Disclosure Statement and the Plan; (V) a Hearing Date to Consider Confirmation of the Plan; and (VI) the Form, Scope, and Manner of Notice of the plan and Confirmation Hearing*, at 5–7 [D.I. 620].

[18] *See In re Sepco Corp.*, No. 16-50058 (AMK) (Bankr. N.D. Ohio Mar. 24, 2020), *Order Confirming the Second Amended Plan of Reorganization, As Modified, for Sepco Corporation Under Chapter 11 of the Bankruptcy Code, and Report and Recommendation to the District Court* [D.I. 732]. Section 6.5 of the trust distribution procedures used by the Sepco Asbestos Personal Injury Trust is publicly available on the trust's website, http://sepco.mfrclaims.com/Resources.html.

[19] *See In re Fairbanks Corp.*, No. 18-41768 (PWB) (Bankr. N.D. Ga. Dec. 14, 2018), *Amended Objection of the United States Trustee to Debtor's Motion for an Order Appointing James L. Patton, Jr., as Legal Representative for Future Asbestos Claimants*, at 10–11 and n. 4 [D.I. 134] (criticizing the similar confidentiality provisions of six asbestos trusts).

Case 20-12522-JTD    Doc 4986    Filed 10/26/21    Page 10 of 12

concerns about fraud and abuse," including "[c]larification that nothing in the Plan or the TDPs limits or impairs the obligation of claimants to respond fully to lawful discovery in any underlying civil action regarding his or her submission of factual information to the asbestos trust".[20]

Here, while the U.S. Trustee argues (as it did in the foregoing four cases) that filing a tort claim in court or a claim in a chapter 11 case are matters of public record, it cites to no statute or case law requiring that claims filed with a post-bankruptcy settlement trust be considered publicly filed. Moreover, settlements in the tort system are not public, and the confidentiality provisions of the TDP simply afford the PI Trust the same rights to confidentiality in settlement discussions that are enjoyed by defendants in the tort system.[21] To require a settlement trust to replicate the tort system would eliminate the efficiency and savings contemplated as part of the trust's establishment.

D.     **The Confidentiality Provisions Reasonably Restrict
       Access to Confidential Claims Information**

Contrary to the U.S. Trustee's allegation, there is no concealment of claims under the TDP. Persons with a legitimate interest in obtaining claims information submitted to the PI Trust will be able to do so through lawful discovery channels, which are unaffected by the TDP. In fact, TDP section 6.1 specifically obligates the PI Trust to respond to properly issued subpoenas, and merely requires the PI Trust to appropriately seek to preserve confidentiality and claimants' rights when so responding. If a tort defendant disagrees with any discovery objection by the PI

---

[20] *In re Fairbanks Corp.*, No. 18-41768 (PWB) (Bankr. N.D. Ga. April 11, 2021), *Statement and Limited Objection of the United Sates Trustee Regarding Disclosure Statement,* at 2 [D.I. 708].

[21] *See In re Pittsburgh Corning Corp.*, No. BR 00-22876 (JKF), 2013 WL 2299620, at *36 (Bankr. W.D. Pa. May 24, 2013) (finding that TDP confidentiality language provided similar treatment to what defendants experience in the tort system and expressly required trust to respond to properly issued subpoenas).

10

Trust, that defendant could of course seek adjudication of the objection in court. Moreover,

section 6.1 expressly states that nothing in the TDP, the Plan or the Trust Agreement affects the

claimant's obligation to respond to lawful discovery. This same objection was raised and over-

ruled in *Duro Dyne*, *Maremont*, *Sepco*, and *Fairbanks*, and likewise should be over-ruled here

based on the plain language of section 6.1 and precedent from the Third Circuit and Delaware

courts.

 Moreover, the confidentiality provisions do not impede the PI Trust's ability to conduct

meaningful audits.[22] Section 5.3 of the NAS PI TDP [section 5.7 of the Non-NAS PI TDP]

requires the Trustee, with consent of the FCR, to develop a claims audit program, which may

involve the retention of an independent third party. As part of implementing the audit program,

section 5.3(a) of the NAS PI TDP [section 5.7(a) of the Non-NAS PI TDP] authorizes the PI

Trust or its retained auditor, if the Trust believes it is relevant, to review or "tak[e] into

consideration other claims filed in state or federal court complaints or against other trusts."

Further, that provision requires claimants subject to audit to "cooperate and, if requested, provide

the PI Trust or the entity overseeing the claims audit program with a HIPAA Release that

authorizes the PI to obtain medical and other records to verify the claim." *See* §5.3(b) of NAS PI

TDP; §5.7(b) of Non-NAS PI TDP. Additionally, while the PI Trust must take into account the

costs of investigating claims nothing in the TDP "shall prevent the Trustee, in appropriate

circumstances, from contesting the validity of any claim against the PI Trust whatever the costs,

or declining to accept medical evidence from sources that the Trustee has determined to be

---

[22] The TDP provisions regarding the claims audit program are substantially similar to that approved in *Duro Dyne*, *Maremont*, *Sepco*, and *Fairbanks*.

unreliable pursuant to the claims audit program described herein or otherwise." NAS PI TDP

§5.4; Non-NAS PI TDP §5.8.

## II.    CONCLUSION

For the foregoing reasons, the FCR hereby respectfully requests the Court overrule the

objections to the TDP and confirm the Plan.

Dated: October 26, 2021        YOUNG CONAWAY STARGATT & TAYLOR, LLP
        Wilmington, Delaware

*/s/ Jaime Luton Chapman*
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Jaime Luton Chapman (No. 4936)
Sara Beth A.R. Kohut (No. 4137)
Travis G. Buchanan (No. 5595)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
       rbrady@ycst.com
       eharron@ycst.com
       jchapman@ycst.com
       skohut@ycst.com
       tbuchanan@ycst.com

-and-

FRANKEL WYRON LLP
Richard H. Wyron (admitted *pro hac vice*)
2101 L Street, NW, Suite 800
Washington, DC 20037
Telephone: (202) 367-9127
Email: rwyron@frankelwyron.com

*Counsel to the Future Claimants' Representative*