IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| MALLINCKRODT PLC, *et al.*,[1] | ) Case No. 20-12522 (JTD) |
| Debtors. | ) (Jointly Administered) |

**DECLARATION OF PUNIT MEHTA IN
SUPPORT OF CONFIRMATION OF THE FIRST AMENDED
JOINT PLAN OF REORGANIZATION OF MALLINCKRODT PLC AND
ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Punit Mehta, declare under penalty of perjury:

1. I am a Senior Managing Director at Guggenheim Securities, LLC ("Guggenheim Securities"), an investment banking firm with principal offices located at 330 Madison Avenue, New York, New York 10017. The above-captioned debtors and debtors in possession (collectively, the "Debtors") have retained Guggenheim Securities as their investment banker in these chapter 11 cases.[2]

2. I submit this declaration (this "Declaration") in support of confirmation of the *First Amended Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter*

---

[1] A complete list of the Debtors in these Bankruptcy Cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] On January 12, 2021, the Court entered an order approving the retention of Guggenheim Securities as the Debtors' investment banker in these chapter 11 cases [Docket No. 1142].

*11 of the Bankruptcy Code* dated September 29, 2021 [Docket No. 4508] (the "Plan"), as modified, amended, or supplemented from time to time.[3]

3. Although Guggenheim Securities is being compensated for its work as the investment banker retained by the Debtors, I am not being compensated separately for this testimony. Except as otherwise indicated herein, all of the statements set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by Guggenheim Securities professionals involved in advising the Debtors in these chapter 11 cases, or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and authorized to submit this Declaration.

**Qualifications**

4. I have been employed at Guggenheim Securities since October 2018. Prior to joining Guggenheim Securities, I was the Global Co-Head of Healthcare Investment Banking at Credit Suisse Group AG. Prior to joining Credit Suisse Group AG in 2016, I was Global Head of Life Sciences Investment Banking at Barclays Investment Bank. Prior to joining Barclays Investment Bank, I worked at Lehman Brothers Holdings Inc. I graduated with PGDBM/MBA from the Indian Institution of Management Ahmedabad and my B.S. from the University of Mumbai. I also received an ACA from the Institute of Chartered Accountants of India.

5. I personally have over 21 years of experience advising healthcare and pharmaceutical companies, including with respect to restructuring transactions and mergers and

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan, the Valuation Analysis (as defined below) or the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2917] (the "Disclosure Statement"), as applicable.

acquisitions. I have spent the majority of my career focused on clients within the biopharma sector, including large-cap pharmaceutical companies, innovation-driven biotech companies, and specialty and generics pharmaceuticals companies. Among other clients, I have advised Jazz Pharmaceutical in its $7.2 billion acquisition of GW Pharmaceuticals, MyoKardia in its $13.1 billion sale to Bristol Myers Squibb, Pfizer in its $11.8 billion acquisition of Array BioPharma, Albany Molecular in its $1.3 billion take-private sale to Carlyle and GTCR, Teva Pharmaceutical in its $40.5 billion acquisition of Actavis's generics business (and related acquisition financing), Endo in its $8.05 billion acquisition of Par (and related acquisition financing), and Mallinckrodt in its $1.3 billion acquisition of Therakos (and related acquisition financing) and its $5.6 billion acquisition of Questcor (and related acquisition financing).

6. Guggenheim Securities has been engaged as investment banker to the Debtors, and I, along with my colleagues, have been working closely with the Debtors, since September 2019. Since being engaged by the Debtors, Guggenheim Securities has rendered investment banking advisory services to the Debtors in connection with, among other things, the Debtors' evaluation of their strategic alternatives and certain financing considerations. Additionally, Guggenheim Securities has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these strategic alternatives and has become acquainted with the Debtors' capital structure and businesses.

## Valuation Analysis

7. At the Debtors' request, and solely for purposes of the Plan and the Disclosure Statement and as more fully set forth in the valuation analysis attached as Exhibit F to the Disclosure Statement [Docket No. 2285-3], Guggenheim Securities performed various indicative financial analyses to estimate the total enterprise value (the "Total Enterprise Value") of the Reorganized Debtors on a consolidated going-concern basis and *pro forma* for the transactions

contemplated by the Plan (the "Valuation Analysis").  I directed employees of Guggenheim Securities in connection with such indicative financial analyses and this Declaration contains my views, based upon the results of such indicative financial analyses, as to the range of the Reorganized Debtors' estimated Total Enterprise Value.

8. As set forth in the Valuation Analysis, based on the indicative financial analyses performed by Guggenheim Securities, Guggenheim Securities estimated the Total Enterprise Value of the Reorganized Debtors to be approximately $5.2 to $5.7 billion, with a midpoint of $5.45 billion.  As more fully set forth in the Valuation Analysis, the foregoing indicative financial analyses (conducted as of April 16, 2021) are based, among other things, on the financial projections prepared by the Debtors, which are attached as Exhibit D to the Disclosure Statement (the "Financial Projections"), on an assumed September 24, 2021 Effective Date (at which time the Debtors would emerge from these chapter 11 proceedings) and on market data as of April 16, 2021; reflect information made available to Guggenheim Securities as of or prior to such date; and are based on economic, capital markets and other conditions as of such date.  Guggenheim Securities is not making any assessment regarding the impact or the economic effects of the COVID-19 pandemic, including with respect to the potential impact or effects on the future financial performance of the Reorganized Debtors.  Although the Valuation Analysis may be affected by subsequent developments, including, without limitation, developments relating to the COVID-19 pandemic, Guggenheim Securities assumes no responsibility for updating or revising the estimated Total Enterprise Value or the implied estimated Equity Value (as defined in the Valuation Analysis) of the Reorganized Debtors for any reason, whether due to facts, circumstances or events occurring after such date or otherwise.

9. The Valuation Analysis provides a full description of the indicative financial analyses performed by Guggenheim Securities, as well as certain caveats and considerations related to the analyses described therein.

10. On September 8, 2021, I received a summary refresh of the Debtors' strategic plan, which updated the Reorganized Debtors' forecast through 2025 based on changes in certain high-level sales and cost assumptions prepared by Debtors' management (the "Refresh"). When comparing the Refresh with the Debtors' strategic plan underpinning Guggenheim Securities' Valuation Analysis, I believe that the net effect of utilizing the Refresh and including illustrative value for the StrataGraft Priority Review Voucher (holding all other factors constant) would lead to a decrease in estimated midpoint Total Enterprise Value of approximately 7%.

11. In preparing the Valuation Analysis, Guggenheim Securities relied on, among other things, the Financial Projections provided by the Debtors' senior management, which we understand assume, among other things, that the Plan will be consummated in a timely manner in accordance with its terms and the terms of the Restructuring Support Agreement, and that definitive agreements memorializing the understandings set forth in the Federal/State Acthar Settlement and Opioid Settlement Term Sheet (each as defined in the Plan) (collectively, the "Settlements") will be entered into.

12. Additionally, I have been advised by Debtors' counsel that, in the absence of the Settlements, the Debtors (i) would face a protracted and lengthy bankruptcy litigating thousands of lawsuits, (ii) would be unable to obtain the court-provided important legal protections, such as the channeling injunction, that are available as a result of the Settlements, and (iii) would remain subject to the risk of potential future opioid-related liabilities.

13. Accordingly, based on my experience as an investment banker, including in connection with numerous M&A processes, I believe that the most likely value-maximizing strategy the Debtors would pursue, absent the Settlements, in consultation with their advisors, would be to seek to sell their Specialty Brands and Specialty Generics businesses in one or more section 363 sale processes, with some of the businesses likely being sold as going concerns and others likely being sold in piecemeal liquidations. I understand that AlixPartners LLP has conducted an analysis of certain such scenarios, which is laid out in the *Expert Report of Randall S. Eisenberg*, dated August 13, 2021.

14. Finally, given the current state of some of the Debtors' key franchises, including Acthar® Gel and INOmax®, which have not yet achieved the stability that the management projections reflect over time, I believe that successfully consummating any such sale or series of sales in the near term would be difficult and challenging. Thus, in such a scenario, I believe that any sale or series of sales of the Debtors as a going concern would likely be at a meaningful discount to the estimated Total Enterprise Value of the Reorganized Debtors set forth in the Valuation Analysis.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: October 26, 2021  
       New York, New York

*/s/ Punit Mehta*  
Punit Mehta  
Senior Managing Director  
Guggenheim Securities, LLC