# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 20-12522 (JTD)<br><br>(Jointly Administered)<br><br>Re: D.I. Nos: 4508, 4992 |

**BOKF, N.A.'S (1) STATEMENT IN SUPPORT OF CONFIRMATION
OF DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION;
(2) JOINDER TO STATEMENT OF DEERFIELD PRIVATE DESIGN FUND IV, L.P.,
DEERFIELD SPECIAL SITUATIONS FUND, L.P., AND DEERFIELD PARTNERS L.P.
IN SUPPORT OF CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT
PLAN OF REORGANIZATION; AND (3) RESERVATION OF RIGHTS**

BOKF, N.A. ("BOKF" or the "Second Lien Notes Trustee"), solely in its capacity as successor trustee with respect to that certain Indenture by and among Mallinckrodt International Finance S.A., (the "Lux Issuer"), Mallinckrodt CB LLC, (the "Co-Issuer" and, together with the Lux Issuer, the "Issuer Debtors"), and Wilmington Savings Fund Society, FSB, as trustee, dated as of December 6, 2019 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified as of the date hereof, the "Second Lien Indenture"), pursuant to which the Issuer Debtors issued the Second Lien Notes for the benefit of the Holders (as defined in the Second Lien Indenture),[2] submits this (1) Statement in Support of Debtors' *First Amended Joint*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] The Issuer Debtors' obligations under the Second Lien Indenture and Second Lien Notes are secured by collateral identified in that certain Second Lien U.S. Collateral Agreement dated as of December 6, 2019 by the Issuer Debtors in favor of Wilmington Savings Fund Society, FSB as Second Lien Trustee and Second Lien Collateral Agent (the "Second Lien Collateral Agreement"). BOKF succeeded Wilmington Savings Fund Society, FSB ("WSFS") as Second Lien Trustee under the Second Lien Indenture. WSFS remains Second Lien Collateral Agent, as well as First Lien Collateral Agent and Indenture Trustee.

1

*Plan of Reorganization of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4508] (with the Plan Supplement and all other exhibits and schedules thereto and as it may be amended, modified or supplemented from time to time, the "Plan")[3]; (2) Joinder to *Statement of Deerfield Private Design Fund IV, L.P., Deerfield Special Situations Fund, L.P., and Deerfield Partners L.P. in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4992]; and (3) Reservation of Rights (this "Statement in Support of Plan").[4]

## PRELIMINARY STATEMENT

1. The Debtors are on the verge of confirming a plan of reorganization constructed from an intricate web of interlocking settlements with diverse creditor groups, including the Debtors' secured and unsecured lenders, various noteholders across the capital structure, tort claimants, and other unsecured creditors, designed to among other things, allow the Debtors to emerge with a restructured balance sheet. The Second Lien Notes Trustee supports confirmation of the Plan.

2. Notwithstanding this broad-based support, the First Lien Secured Parties continue to press their grievances. The 1L Objections,[5] filed by the Ad Hoc First Lien Notes Group and Columbus Hill Capital Management, L.P. (together, the "First Lien Secured Parties"), concern – at their core – the First Lien Secured Parties' dissatisfaction with their treatment under the Plan.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to the them in the Plan.

[4] Nothing in this Statement in Support of Plan should be construed as or deemed a violation of the terms and provisions of the Second Lien Intercreditor Agreement. To the extent there is any statement or argument contained in this pleading inconsistent with the Second Lien Intercreditor Agreement, the terms and provisions of the Second Lien Intercreditor Agreement control.

[5] The Objection and Response of the Ad Hoc First Lien Notes Group to (A) First Amended Joint Plan of Reorganization of Mallinckrodt PLC and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code and (B) Debtors' Objection to Funded Debt Claim [D.I. 4725] (the "1L Ad Hoc Group Objection"), and Columbus Hill Capital Management, L.P.'s (A) Objection to Confirmation of Debtors' Joint Plan of Reorganization and (B) to Response to Objection to Funded Debt Claims [D.I. 4729] (the "Columbus Hill Objection"), are referenced herein collectively as the "1L Objections".

As a fallback measure, however, the First Lien Secured Parties also attack the Debtors' global settlement with the Second Lien Secured Parties set forth in the Settlement Second Lien Notes Summary Terms and implemented in the Plan (together, the "2L Settlement"). In essence, the First Lien Secured Parties seek to excise certain portions of the 2L Settlement to extract leverage over the Debtors at the expense of other parties.

3. Neither the 2L Settlement nor the treatment of the First Lien Secured Parties under the Plan implicates the obligations of the Second Lien Secured Parties under the Second Lien Intercreditor Agreement, because the Second Lien Secured Parties have not received and will not receive payments or distributions from the Debtors constituting proceeds of shared collateral. The First Lien Secured Parties' arguments are contrary to the plain language of the Second Lien Intercreditor Agreement and, in fact, the terms of the Plan are consistent with the Second Lien Intercreditor Agreement.

4. The Second Lien Intercreditor Agreement is a lien priority agreement—not a payment priority agreement—a distinction that is critical yet glossed over in the 1L Objections. The Second Lien Intercreditor Agreement only requires the Second Lien Secured Parties to turn over distributions constituting proceeds of shared collateral or certain adequate protection payments under certain circumstances (but only to the extent they are truly adequate protection payments)—neither of which is applicable here. The 2L Settlement provides that the Debtors will issue New Second Lien Notes in an amount equal to the outstanding principal owed on the existing Second Lien Notes. The New Second Lien Notes are not the proceeds of shared collateral, nor were any of the payments made to the Second Lien Secured Parties during the case. Further, because the Second Lien Secured Parties were and continue to be oversecured during these cases by more than $1 billion, any payments made pursuant to the Cash Collateral Order would be

properly allocated as postpetition interest and fees under the Plan rather than as adequate protection.[6]

5. The First Lien Secured Parties quibble with the Plan's provisions confirming that the payments received, or to be received, by the Second Lien Secured Parties are not subject to turnover or disgorgement. These necessary provisions do not modify the First Lien Secured Parties' rights or the Second Lien Intercreditor Agreement—they are consistent with them. The Plan's express protection of payments to the Second Lien Secured Parties was designed to enable immediate distributions to Holders of Second Lien Notes Claims and to provide critical finality and closure to the parties, including the Debtors, who would otherwise have ongoing indemnification obligations to the Second Lien Notes Trustee absent the 2L Settlement. The First Lien Secured Parties' specious turnover arguments in the face of treatment that clearly does not invoke the Second Lien Intercreditor Agreement are precisely why the protective language in the Plan is a critical, necessary, and appropriate component of the 2L Settlement.

6. In the absence of such protections, the 2L Settlement will be jeopardized and confirmation of the extensively negotiated Plan potentially derailed. There is no basis for forcing such an inequitable result on the estates' extensive and diverse constituencies simply to allow the First Lien Secured Parties to pursue meritless intercreditor claims against the Second Lien Secured Parties. The Court therefore should overrule the First Lien Secured Parties' intercreditor-based objections and confirm the Plan.

## STATEMENT IN SUPPORT OF PLAN

### A. The 2L Settlement Is Integral to the Plan and Must Be Enforced in its Entirety.

7. The 2L Settlement is the product of extensive negotiations between the Debtors and

---

[6] The payment of interest and fees would also be mandated by Section 506(b) of the Bankruptcy Code.

Second Lien Secured Parties to resolve objections and litigation over the extent of the Second Lien Secured Parties' claims and the Debtors' continuing post-confirmation obligations. The 2L Settlement resolves the Second Lien Secured Parties' objections to the Plan and, together with other settlements negotiated by the Debtors, achieves fairness, finality, and closure for creditors, the Debtors, and the estates. The First Lien Secured Parties seek to unravel this negotiated peace and disrupt confirmation in service of their primary (and unrelated) objections to the Plan.

8. However, the Plan's current treatment of the First Lien Secured Parties has no bearing on whether the 2L Settlement is a permissible exercise of the Debtors' business judgement and can be approved under the Plan. Contrary to the position set forth in the 1L Objections, the Second Lien Intercreditor Agreement does not effectuate the subordination of claims as between the First Lien Secured Parties and Second Lien Secured Parties. Rather, the Second Lien Intercreditor Agreement governs lien priority—not claim priority. It applies only to the flow of proceeds from shared collateral, setting forth certain specific circumstances in which the Second Lien Secured Parties may be required to turn over such proceeds. As discussed below, however, the Plan does not provide for any payment to the Second Lien Secured Parties constituting proceeds of shared collateral.

9. The 2L Settlement and Plan do not modify the rights and obligations of the First Lien Secured Parties under the Second Lien Intercreditor Agreement. Instead, they recognize that the Second Lien Intercreditor Agreement has not been triggered and protect the Second Lien Secured Parties and Debtors from the expense of meritless intercreditor litigation that the First Lien Secured Parties nonetheless seemed determined to pursue. The Debtors are parties to and obligors under the Indenture and Intercreditor Agreement, both of which require the Debtors to indemnify the Second Lien Notes Trustee for, *inter alia*, its reasonable attorneys, costs, and other liabilities incurred in defending any turnover litigation instituted by the First Lien Secured Parties.

10. In the event the Court finds that Restructuring Expenses or other amounts paid through the Plan are subject to turnover to the First Lien Secured Parties, the Second Lien Secured Parties would assert their rights and seek recovery from the Debtors pursuant to the terms of the Indenture and Intercreditor Agreement and under the Bankruptcy Code, all putting confirmation and emergence at risk. The Second Lien Secured Parties bargained for finality and closure—not litigation costs or diluted or delayed distributions.

**B.  The First Lien Secured Parties Have No Turnover Claim Under the Second Lien Intercreditor Agreement.**

11. The First Lien Secured Parties contend that because they are not being paid in full in cash on the Effective Date, the adequate protection payments made during the case and the issuance of the New Second Lien Notes are subject to turnover under the Second Lien Intercreditor Agreement. These contentions are without merit.

12. It is undisputed that the Second Lien Secured Parties are oversecured by more than $1 billion in collateral.[7] If the Second Lien Secured Parties are so oversecured, they would not be entitled to adequate protection under the terms of the Cash Collateral Order. The payments made to the Second Lien Secured Parties were comprised of nothing more than interest and fees to which the Second Lien Secured Parties were already entitled under Section 506(b) of the Bankruptcy Code and the Plan. The Cash Collateral Order provides that in such circumstances, where the Second Lien Secured Parties were ultimately not in need of adequate protection against diminution in collateral, the payments may be re-allocated as payments of interest or otherwise.

13. Whether the payments made pursuant to the Cash Collateral Order are formally or

---

[7] *Compare Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Mallinckrodt PLC and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 2917] ("<u>Disclosure Statement</u>"), Exh. E (Liquidation Analysis), p. 11 (total secured debt of $3.6 billion), *with Disclosure Statement*, Exh. F (Valuation Analysis), p. 2 (estimated total enterprise value between $5.2 billion and $5.7 billion).

informally reallocated as Plan payments and/or payments required by Section 506(b), they are simply not adequate protection payments within the meaning of the Second Lien Intercreditor Agreement and Cash Collateral Order. Because the payments are not properly characterized as adequate protection, and are not the proceeds of shared collateral, they are not subject to turnover under the Second Lien Intercreditor Agreement.[8]

14. Likewise, the New Second Lien Notes are not proceeds of shared collateral. The First Lien Secured Parties argue that the issuance of the notes will be "on account of collateral" because they are part of the treatment of a secured claim. Not so. Where, as here, treatment under a plan does not disturb or diminish the shared liens of a senior lender, the distribution does not constitute proceeds of the shared collateral. *In re Energy Futures Holdings Corp.*, 566 B.R. 669, 675 (Bankr. D. Del. 2017), *aff'd*, 585 B.R. 341 (D. Del. 2018), *aff'd*, 773 Fed. App'x 89 (3d Cir. 2019); *In re Momentive*, 518 B.R. 740, 755 (Bankr. S.D.N.Y. 2014), *aff'd*, 516 B.R. 416 (S.D.N.Y. 2019).

15. Tellingly, the First Lien Secured Parties ignore applicable precedent in *In re Energy Futures Holdings Corp.*, and instead rely on *In re La Paloma Generating Co. LLC*, 609 B.R. 80, 100 (D. Del. 2019), for the proposition that "[u]ntil the First Lien Notes are discharged through payment in full in cash the Second Lien Noteholders must turn over any such distribution of property." 1L Ad Hoc Group Objection, ¶ 88. *See* Columbus Hill Objection, ¶ 20 & Note 32 (relying on *In re La Poloma*). Their reliance on *In re La Poloma* is misplaced, however, as that case involved (a) distributions of proceeds from the sale of shared collateral; and (b) an

---

[8] Further, as the First Lien Secured Parties are aware, the Court set record dates for payments made pursuant to the Cash Collateral Order and such payments were distributed to Holders of the Second Lien Notes through DTC. *See Order Modifying Cash Collateral Order* [D.I. 1263]. As such, the First Lien Secured Parties' turnover arguments with respect to such payments are – at least with respect to the Second Lien Notes Trustee, Second Lien Collateral Agent, and DTC – moot. *See In re Onco Inv. Co.*, 222 Fed. Appx. 100 (2007).

"Intercreditor Agreement [that] stated that the First-Lien Obligations shall be satisfied in full prior to the payment of the Second-Lien Obligations." The existence of sale proceeds and an agreement providing for both lien *and* payment priority made it crystal clear that plan distributions were required to be turned over.

16. In contrast, here, the First Lien Secured Parties do not – and cannot – identify any proceeds of shared collateral received by the Second Lien Secured Parties as part of their treatment under the Plan. That is because the Plan does not provide for it. Further, the Second Lien Intercreditor Agreement does not provide for payment priority—only lien priority. As a result, there is no basis to require the Second Lien Secured Parties to turn over any payments made pursuant to the Plan or otherwise during the case. The First Lien Secured Parties' insistence to the contrary is precisely why the anti-disgorgement and other provisions are necessary: to protect the other parties to the Second Lien Intercreditor Agreement from the cost of a meritless and wasteful litigation crusade and avoid diluted and delayed distributions.

## JOINDER

17. The Second Lien Notes Trustee joins in the *Statement of Deerfield Private Design Fund IV, L.P., Deerfield Special Situations Fund, L.P., and Deerfield Partners L.P. in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4992].

## RESERVATION OF RIGHTS

18. The Second Lien Notes Trustee expressly reserves all rights, claims, arguments, defenses, and remedies with respect to the 1L Objections, the Plan or any other issue in these Chapter 11 Cases, and to supplement, modify, and amend this Statement in Support of Plan, and to raise additional arguments in writing or orally at the hearing on the Plan.

**CONCLUSION**

19.     The Second Lien Notes Trustee respectfully requests that the Court enter an Order confirming the Plan.

Dated:   October 26, 2021

By:   *Margaret M. DiBianca*
Margaret M. DiBianca, Esq. (#4539)
CLARK HILL PLC
824 N. Market Street, Suite 710
Wilmington, DE 19801
Telephone: (302) 250-4748
Facsimile: (302) 421-9439
Email: mdibianca@clarkhill.com

Andrew I. Silfen, Esq.
Beth M. Brownstein, Esq.
ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@arentfox.com
          beth.brownstein@arentfox.com

-and-

Jackson D. Toof, Esq.
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: jackson.toof@arentfox.com

*Counsel to BOKF, N.A., solely in its capacity as Successor Trustee*