## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
In re:                                    :    Chapter 11
                                          :
MALLINCKRODT PLC., et al.,                :    Case No. 20-12522 (JTD)
                                          :    (Jointly Administered)
         Debtors.¹                        :
                                          :    Re: Docket No. 4508, 4718
-----------------------------------------------------------x
```

### THE AD HOC GROUP OF PERSONAL INJURY VICTIMS' LIMITED REPLY IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF MALLINCKRODT PLC AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND JOINDER IN THE RESPONSES OF THE FUTURE CLAIMANTS REPRESENTATIVE AND THE OFFICIAL COMMITTEE OF OPIOID-RELATED CLAIMANTS

The Ad Hoc Group of Personal Injury Victims (the "**Ad Hoc Group**") in the above-captioned cases (the **"Chapter 11 Cases"**) filed by Mallinckrodt plc and its debtor affiliates (collectively, the "**Debtors**" or "**Mallinckrodt**"), by and through its undersigned counsel, submits this limited reply in response to the objection to the *First Amended Joint Plan of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4508] (as amended, the "**Plan**")[2] filed by the United States Trustee (the "**UST Objection**")[3] and joins in the responses to the UST Objection filed by the Future Claimants Representative (the **"FCR")** [D.I. 4989] and the Official Committee of Opioid-Related Claimants (the **"OCC"**). In support of this limited reply and joinder, the Ad Hoc Group respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3] *The United States Trustee's Objection to Confirmation of the First Amended Joint Plan of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4718].

## PRELIMINARY STATEMENT

1.      The Ad Hoc Group was formed shortly after the commencement of the Chapter 11 Cases with the purpose of advocating *solely* for personal injury victims - individuals who have lost family members to addiction, are currently suffering from addiction, or are in recovery. Many of these individuals are incarcerated, living in poverty, or otherwise suffering under dire financial circumstances. No other formal group existed solely to look out for the interests of these individuals.[4]

2.      The Ad Hoc Group solidified its leading role in the Chapter 11 Cases when it was named a mediation party in the Court-ordered mediation between and among the non-federal governmental opioid claimants, the federal healthcare agency opioid claimants, and the private opioid claimants as to the allocation of the opioid trust's assets. In the mediation, the Ad Hoc Group fought hard for a resolution that allocated as much value as possible, as quickly as possible, to the personal injury victims, rather than addressing the needs of entities whose prepetition claims are derivative of the harms suffered by the personal injury victims.

3.      The mediation resulted in a global resolution of the above disputes that provides the personal injury victims with 9.3% of the distributable value of the opioid trust (at least $160 million) and more than one billion dollars for abatement of the opioid crisis. Thereafter, the mediation settlements were incorporated into the Plan. As a result, the Ad Hoc Group believes the Plan represents the best path forward in the Chapter 11 Cases. Indeed, if the Court were to sustain any of the objections to the Plan and, thereby, deny confirmation, all the individuals who were injured or lost family members due to Mallinckrodt's part in the opioid crisis will continue to suffer, as will all the individuals who could benefit from the funds allocated for abatement.

---

[4] Although the OCC had been formed by the United States Trustee, the OCC includes members from various opioid creditor constituencies and its fiduciary duty extends beyond just the personal injury victims.

4.      The global settlement embodied in the Plan, which includes the fee agreements addressed in the UST Objection, is the result of intense negotiations involving many parties, and each part of the deal is integral to the whole.

## ARGUMENT

**I.      The United States Trustee's Objection to the Payment of Non-Estate Professionals' Fees and Expenses Other Than Pursuant to Section 503(b)(3)(D) of the Code Should Be Overruled.**

5.      The United States Trustee objects to Article IV.X.8 of the Plan, which provides for the payment of professional fees and expenses of certain non-estate professionals, on the basis that such fees and expenses can only be paid if the procedural requirements of section 503(b) of the Bankruptcy Code have been met. UST Objection at ¶¶ 80-89.  The United States Trustee's objection is misplaced due to the nature of these cases and the mechanics of this Plan.

6.      *First*, none of the payments described in Article IV.X.8 will constitute an allowed claim against the Debtors' Estates.  Rather, Article IV.X.8 was included to resolve a "free rider" problem within specific creditor constituencies whereby a subgroup of like creditors would bear all of the costs incurred in securing a recovery for the entire group. The Plan proposes to rectify this inequity by providing that some portion of the funds allocated to creditor recovery pools will be set aside to defray the costs of the creditor representatives responsible for securing those funds. Because Article IV.X.8 does not involve the allowance of administrative expense claims against the Debtors' Estates, section 503(b) is inapplicable.

7.      Although the United States Trustee contends that section 503 is the "sole source" of authority to pay post-petition professional fees, courts both within and outside this district routinely approve the payment of creditor fees and expenses without requiring a showing of substantial contribution under section 503(b). *See, e.g., In re Smurfit-Stone Container Corp.*, No. 09-10235 (BLS), 2010 Bankr. LEXIS 5407, at *69-70 (Bankr. D. Del. June 21, 2010) (confirming

plan and approving, pursuant to Bankruptcy Rule 9019 and section 1129(a)(4), payment of professional fees and expenses of certain ad hoc groups without requiring that such professionals file applications for court approval); *In re Aleris Int'l, Inc.,* Case No. 09-10478 (BLS), 2010 LEXIS 2997, at *38, 104, 106 (Bankr. D. Del. May 3, 2010) (confirming plan and approving Bankruptcy Rule 9019 settlement that allowed debtors, as part of settlement, to reimburse fees and expenses of counsel to certain lenders who were party to settlement); *In re Stearns Holdings, LLC*, 607 B.R. 781, 792-93 (Bankr. S.D.N.Y. 2019) (rejecting United States Trustee's objection to payment of professional fees of certain supporting creditors and equity holders other than pursuant to section 503(b) and relying on section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9019 to authorize the payment of such fees); *In re AMR Corp.*, 497 B.R. 690, 695-96 (Bankr. S.D.N.Y. 2013) (disagreeing with United States Trustee's argument that section 503(b) provides exclusive vehicle for creditors to receive fees and relying on sections 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code to permit payment of fees and expenses of official committee members' counsel without a showing of substantial contribution under section 503(b)); *In re Adelphia Commc'ns Corp.*, 441 B.R. 6, 19 (Bankr. S.D.N.Y. 2010) (relying on section 1123(b)(6) to permit payment of fees and expenses of unsecured creditors' and ad hoc groups' counsel without compliance with sections 503(b)(3) or (4) of the Bankruptcy Code); *In re Garrett Motion Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Apr. 26, 2021) [D.I. 1161] (confirmed chapter 11 plan providing for payment of professionals retained by parties to plan support agreement and maintenance by debtors of segregated account for payment of such fees); *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Aug. 21, 2018) [D.I. 685] (confirming chapter 11 plan providing for payment by debtors of certain transaction expenses and stipulated administrative expense settlement claims pursuant to section 1129(a)(4)); *In re DACCO Transmission Parts (NY),*

*Inc.*, No. 16-13245 (MKV) (Bankr. S.D.N.Y. Mar. 21, 2017) [D.I. 415] (confirmed chapter 11 plan providing for payment of transaction expenses incurred pursuant to restructuring support agreement to consenting first lien lenders); *In re Legend Parent, Inc.*, No. 14-10701 (RG) (Bankr. S.D.N.Y. July 21, 2014) [D.I. 390] (confirming plan providing for payment of fees and expenses of parties to plan support agreement "without the need of such parties to file fee applications with the Bankruptcy Court or motions seeking payment of such fees as administrative claims pursuant to section 503(b)").

8.    Moreover, the United States Trustee relies solely on a case from outside this district, *Davis v. Elliot Mgmt. Corp. (In re Lehman Brothers Holdings, Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014), as support for its contention that the professional fees and expenses of non-estate professionals cannot be paid unless those professionals meet the procedural requirements of section 503(b) of the Bankruptcy Code. However, not only is the *Lehman* decision not binding on this Court, but it is irrelevant for two other reasons. First, it concerned a plan provision providing for the allowance as administrative expense claims of professional fees incurred by individual members of a creditors' committee. *Id.* at 291. Congress had amended section 503(b)(4) in 2005 and purposely removed the professional fees of individual committee members from that provision. Because the plan in *Lehman* called for the payment of an administrative expense that was intentionally removed from section 503(b), the court found that it was inconsistent with section 1123(b)(6). *Id.* at 292. Second, as described above, the Plan here does not purport to allow the professional fees and expenses subject to Article IV.X.8 as administrative expense claims.

9.    If the Court is to look outside of this district at all on this issue, it should look to the Purdue bankruptcy cases as the Purdue plan contains provisions regarding the payment of

professional fees that are nearly identical to those at issue here.[5] In Purdue, Judge Drain considered and rejected the very same objection raised by the United States Trustee to confirmation of Purdue's plan. Judge Drain held that with respect to the portion of the fees requested that were incurred during the bankruptcy cases, such fees were not "being sought as an administrative expense payable on the plan's effective date (as would be required under section 1129(a)(9)(A) of the Bankruptcy Code if they were being sought as administrative expenses) but rather as part of a heavily negotiated compromise of those fees and the clients' obligation to pay them reached during the mediation in this case." *In re Purdue Pharma L.P.*, 2021 Bankr. LEXIS 2555, at *24 (Bankr. S.D.N.Y. Sept. 17, 2021)

10.      Accordingly, Judge Drain overruled the United States Trustee's objection and approved the fee agreements of the Purdue plan pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 1129(a)(4), subject to certain amendments described below. The United States Trustee in Purdue has not appealed the ruling on the fee agreements.

11.      ***Second***, no individual personal injury victim has objected to Article IV.X.8 of the Plan, and by voting to accept the Plan, the personal injury victims impacted by Article IV.X.8 have agreed to cede a portion of their recoveries to those who secured that recovery for the benefit of all personal injury victims.[6]  The Ad Hoc Group played a critical role in the Chapter 11 Cases and it is only fair that the costs of its efforts be evenly distributed among the entirety of the personal injury victim constituency. Without the Ad Hoc Group's participation, the personal injury victims would not have the benefit of, among other things: (i) 9.3% of the distributable value of the opioid

---

[5] The OCC has attached a chart to its response comparing the relevant provisions of the Plan and the Purdue Plan.
[6] Indeed, out of 16,230 Holders of PI Opioid Claims who voted on the Plan, 15,837 (or 97.58%) voted to accept the Plan, and only 393 (or 2.42%) voted to reject the Plan.  *See Preliminary Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 4955, Ex. A2].

trust (at least $160 million) secured for the personal injury victims in the mediation; (ii) a TDP

that will get cash out to personal injury victims as quickly as possible; and (iii) a plan that furthers

the interests of the personal injury victims, both in financial recovery and abatement. The Ad Hoc

Group secured all of these benefits at its own expense. Since the benefits extend to the entire pool

of personal injury victims, Article IV.X.8 allocates the costs of those efforts across the entirety of

the personal injury victim constituency.

## II.    The Fee Agreements Included in Article IV.X.8 of the Plan Satisfy Bankruptcy Code Section 1129(a)(4), If Applicable

12.     The United States Trustee also objects to Article IV.X.8 of the Plan on the basis

that the Court is required to review the fees covered by such provisions for reasonableness pursuant

to section 1129(a)(4) of the Bankruptcy Code. UST Objection at ¶ 88.  However, again, the United

States Trustee misconstrues the mechanics of the Plan and this objection should be overruled.

13.     Section 1129(a)(4) of the Bankruptcy Code provides:

> "any payment made or to be made *by the proponent, by the debtor*, or by a person
> issuing securities or acquiring property under the plan, for services or for costs and
> expenses in or in connection with the case…has been approved by, or is subject to
> the approval of, the court as reasonable."

11 U.S.C. § 1129(a)(4) (emphasis added).

14.      Courts have held that held that provisions of a chapter 11 plan that provide for the

payment of professional fees that will be paid out of creditors' distributions, and not the debtors'

estates, are not subject to review under Bankruptcy Code section 1129(a)(4). *See, e.g., Matter of

Johns-Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986) (expressly rejecting 1129(a)(4)

objection to plan provision that provided for payment of fees for asbestos claimants from plan

distributions to such claimants); *In re Vail Plaza Dev.,* No. 08-26920 (HRT), 2010 WL 749801 at

*1 (Bankr. D. Colo. Jan. 4, 2010) (citing *Johns-Manville* and holding that plan providing for

payment of certain attorneys' fees out of a creditor's distribution on its claims did not violate

section 1129(a)(4) of the Bankruptcy Code); *compare, In re WorldCom, Inc.*, Case No. 02-13533, 2003 Bankr. LEXIS 1401, at \*159 (Bankr. S.D.N.Y. Oct. 31, 2003) (holding that Bankruptcy Code section 1129(a)(4) requires "all payments of professional fees that are made from ***estate assets*** be subject to review and approval as to their reasonableness by the Court.") (emphasis added) (citing *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992).

15.    Because here the fee agreements contemplate payment of the fees from creditor distributions under the Plan, as opposed to directly from the Debtors' Estates, section 1129(a)(4) of the Bankruptcy Code does not apply. Instead, because the fee agreements are the result of extensive negotiations among the various parties in the mediation, are an essential component of the opioid settlements, and contemplate payment from creditor distributions without impacting the Debtors' estates, such fees should be approved as part of the Plan settlement under Bankruptcy Rule 9019. *See Mediator's Report* at ¶¶ 12-18 [D.I. 4946].

16.    However, if the Court determines that the Ad Hoc Group's fees are required to be reviewed under Bankruptcy Code section 1129(a)(4), as Judge Drain did in Purdue, the payments contemplated thereunder are reasonable and should be approved. The payments are the product of extensive negotiations among the various claimants and are essential to the Plan.  Notably, no personal injury victim has objected to the payments, and the Plan is overwhelmingly supported by the PI Opioid Claimant class. Further, as described above, without the substantial efforts of the Ad Hoc Group in the Chapter 11 Cases over the past year, the personal injury victims would not have the benefit of, among other things: (i) 9.3% of the distributable value of the opioid trust (at least $160 million) secured for the personal injury victims in the mediation; (ii) a TDP that will get cash out to personal injury victims as quickly as possible; and (iii) a plan that furthers the interests of

the personal injury victims, both in financial recovery and abatement. Clearly, the fees incurred by the Ad Hoc Group's professionals in negotiating and documenting these results are reasonable.

17.    To the extent this Court determines that further support for the Ad Hoc Group's fees is required, the Ad Hoc Group submits that language similar to the Purdue confirmation order[7] language could be inserted into the Confirmation Order to require the submission and review of fee applications.[8] The language in the Purdue Confirmation Order is as follows:

> Professionals that are required to seek payment or reimbursement under Section 5.8(g) . . . of the Plan of their compensation, costs and/or fees shall file with the Bankruptcy Court an application for approval of such compensation, costs and/or fees as "reasonable" under section 1129(a)(4) of the Bankruptcy Code (A) *first*, not later than thirty (30) days following the Confirmation Date, with respect to compensation, costs and/or fees incurred during the period prior to August 12, 2021 (the first day of the Confirmation Hearing), and (B) *second*, not later than thirty (30) days following the Effective Date, with respect to compensation, costs and/or fees incurred during the period of August 12, 2021 through and including the Effective Date.  Such applications shall not be deemed an application for reasonable compensation for actual, necessary services by such professionals or reimbursement for actual, necessary expenses to be paid from the Estates, and neither section 330 of the Bankruptcy Code nor any of the Bankruptcy Rules, guidelines from the office of the U.S. Trustee, or other rules or guidelines applicable to fee applications shall apply.  Each such application shall set forth the amount of compensation, costs and/or fees sought, provide a narrative basis for such compensation, costs and/or fees, and attach, as applicable, supporting documentation.

Purdue Confirmation Order ¶ 6(b).[9]

18.    The Purdue Confirmation Order further provides that such applications are "without prejudice to any applications by the Ad Hoc Group of Individual Victims . . . or

---

[7] *In re Purdue Pharma L.P.* (Bankr. S.D.N.Y. Sept. 17, 2021), Case No. 19-23649, *Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [D.I. 3787] (the **"Purdue Confirmation Order"**).

[8] The Ad Hoc Group is engaged in discussions with the United State Trustee regarding a potential consensual resolution of the UST Objection consistent with the outcome in the Purdue bankruptcy case. These discussions remain ongoing.

[9] Subsequent to the entry of the Purdue Confirmation Order, the Ad Hoc Group of Individual Victims requested an extension of time to file their fee applications and the Court granted such request. Such applications are now due in December.

professionals that represented or advised [it] for allowance and payment of compensation, costs or fees under section 503(b) of the Bankruptcy Code." *Id.*

**JOINDER**

19.    The Ad Hoc Group joins in the arguments raised in the responses to the UST Objection filed by the FCR and the OCC and adopts and incorporates such arguments as if fully set forth herein.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Ad Hoc Group respectfully requests that the Court overrule the UST Objection and grant such other and further relief as is just and proper.

Dated:  October 26, 2021

A.M. SACCULLO LEGAL, LLC
*/s/ Mary E. Augustine*
Anthony M. Saccullo (No. 4141)
Mary E. Augustine (No. 4477)
27 Crimson King Drive
Bear, Delaware 19701
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
Email: ams@saccullolegal.com
          meg@saccullolegal.com

-and-

ASK LLP
Edward E. Neiger
Jennifer A. Christian
Marianna Udem
60 East 42nd Street, 46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email: eneiger@askllp.com
          jchristian@askllp.com
          mudem@askllp.com

*Counsel for Ad Hoc Group of
Personal Injury Victims*