# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-12522 (JTD)<br><br>(Jointly Administered)<br><br>**Re: 4508, 4718** |

### GUARANTEED UNSECURED NOTES TRUSTEE'S MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION AND IN RESPONSE TO CONFIRMATION OBJECTIONS BASED ON 11 U.S.C. §§ 503(b)(3)(D), (4) or (5)

Deutsche Bank Trust Company Americas, indenture trustee ("Trustee") for the Guaranteed Unsecured Notes[2] (the "Notes"), submits this Memorandum in support of the *First Amended Joint Plan of Mallinckrodt Plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 4718] (the "Plan") and in response to the Objections filed by the United States Trustee for the District of Delaware (the "UST") and others based on erroneous interpretations of Bankruptcy Code Sections 503(b)(3)(D), (b)(4) and (b)(5) (hereinafter, "Sections 503(b)(3)(D), (4) and (5)").

### PRELIMINARY STATEMENT

1. The Plan enjoys nearly universal support and acceptance from the holders ("Noteholders") of the $1,512,184,000 of Notes, classified as Class 5. The Plan embodies the carefully crafted and complex settlement (the "Global Settlement") negotiated over several years among the Debtors and various parties-in-interest in these cases. Those negotiations first produced

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., St. Louis, Missouri 63042.

[2] Capitalized terms not defined in this Memorandum shall have the same meaning ascribed to them in the Plan.

the Restructuring Support Agreement, which (as amended) forms the backbone of the Plan. The Plan provides for assumption of that Restructuring Support Agreement (Plan, Art. V.A), as modified by the terms of Global Settlement in the Plan.

2. The Trustee has actively represented the interests of Noteholders throughout the cases and supports confirmation of the Plan. It appears to the Trustee that absent confirmation of the Plan, these cases will likely degenerate into protracted litigation that would significantly erode the potential recoveries of Noteholders and other creditor constituencies, while delaying the deployment of funds necessary to assist with mitigating the opioid epidemic.

3. The UST has objected to confirmation of the Plan on six grounds. This Memorandum addresses only one of those grounds, point 4 of its objection,[3] in which it asserts that the Bankruptcy Code prohibits the Plan provisions for payment of the fees and expenses (including legal fees) of the several indenture trustees involved in these cases unless those fees and expenses have been allowed as administrative expenses under Sections 503(b)(3)(D), (4) or (5). As set out below, that objection is without merit and should be overruled.

4. The Plan provides, *inter alia,* for property to be distributed to the various indenture trustees for public note issuances for onward distribution to the noteholders in satisfaction of their notes. In the case of the Notes in Class 5, the Noteholders are to receive new debt securities and all of the equity securities (subject to dilution[4]) to be issued in the reorganized Debtors, *net of any fees and expenses due to the Trustee*. Under the indentures governing the Notes, the pre-and post-petition fees and expenses of the Trustee, including any right to indemnity and the fees and

---

[3] To the extent other parties raise similar issues, this reply responds to such arguments. Further, the Trustee joins in the responses to Plan objections filed by the Debtors and other parties in support of confirmation.

[4] Under the Plan, the distribution of the equity in the reorganized Debtors to Class 5 is subject to dilution by the New Opioid Warrants and the Management Incentive Plan. (Plan, Article I.A.217 and 248.)

expenses of its counsel, (the "Trustee Fees") are claims against the Debtors but are also liens against any recovery of the Noteholders to the extent not paid by the Debtors.[5] Because of the Trustee's charging lien on the Noteholders' distribution, the Trustee has the right to withhold and liquidate an amount of the Class 5 Plan distribution sufficient to satisfy its charging lien. In order to avoid that, the settlement reached among the Debtors, the Noteholders and the Trustee limited the Trustee's indemnification rights and provided that the Debtors will pay the fees of the Trustee. This will enable the Trustee, in its capacity as disbursing agent, to distribute the new Plan securities to the Noteholders while obviating the need to withhold and sell some portion of those securities.

5. This settlement was embodied in the Restructuring Support Agreement and is also incorporated in the Plan, which requires assumption of the Restructuring Support Agreement, and provides for payment of the Trustee Fees before the Trustee must make any distribution of Plan securities to Noteholders. (Plan, Art. IV.S., VI.D.4)

6. The UST does not question and acknowledges the Trustee's right to the payment of its fees and expenses from the Noteholder distribution without the need for Court approval.[6] But the UST asserts, in essence, that Sections 503(b)(3)(D), (4) and (5) prohibit the identical result from being achieved by having the Debtors pay the Trustee Fees as part of the treatment of Class 5 under the Global Settlement, so that the Plan securities may be distributed net of such Trustee Fees. According to the objection, the Bankruptcy Code prohibits direct payment by a debtor of an

---

[5] *See* Section 7.07 of each of the Guaranteed Unsecured Notes Indentures. A copy of the 2014 Notes Indenture, pursuant to which the 5.75% Senior Notes due 2022 were issued, is attached as Exhibit A. The indentures relating to the other Guaranteed Unsecured Notes contain identical language. Due to their volume, they are not attached to this Memorandum but are available upon request.

[6] The UST's objection expressly recognizes that the Indenture Trustee may be reimbursed its fees and expenses by asserting its charging lien under the application against Plan distribution to noteholders. Objection, ¶ 83 fn. 20 ("[T]he U.S. Trustee has no objection where a particular creditor's plan distribution, subject to a proper and valid charging lien, is surcharged in accordance with such indenture as may be applicable.").

indenture trustee's fees and expenses in any circumstances unless the indenture trustee makes and prevails on a motion for allowance of an administration expense under Sections 503(b)(3)(D), (4) and (5) establishing, *inter alia*, a substantial contribution to the estate. This is simply incorrect.

7. The UST's objection ignores:

   a. That the Trustee is not seeking non-consensual allowance of an administration expense priority and the Debtors do not object to payment of the Trustee Fees;

   b. The numerous long-standing precedents allowing creditors, including indenture trustees, to be paid their pre-petition claim for fees and expenses under the terms of a plan of reorganization pursuant to one or more of Bankruptcy Code sections 363, 365 and 1123 and Bankruptcy Rule 9019;

   c. The decisions both in and outside this District that have expressly <u>rejected</u> the UST's argument on this issue;

   d. This Court's own prior ruling in this case which held that Bankruptcy Code Sections 503(b)(3)(D) and (4) did not bar pre-confirmation payments to be made to counsel for creditors under Bankruptcy Code Sections 363(b) and 365[7];

   e. That the payment in the present case is part of the agreed distribution to Class 5 pursuant to both the assumption of the Restructuring Support Agreement (which was entered into pre-petition and amended post-petition) and a Global Settlement embodied in the Plan; and

   f. That the Trustee is providing direct and important consideration for the payment, including the Trustee's (i) waiver of its general right to indemnity from the Debtors after the effective date; (ii) limitation of its fees and expenses to those incurred prior to the effective date (other than those incurred in serving as a Distribution Agent); (iii) agreement to serve as the Distribution Agent for the Plan distributions to the Noteholders; and (iv) its agreement not to assert to the fullest extent its charging lien over the Plan distributions of securities to Noteholders.

---

[7] Although that ruling is on appeal, it is still law of this case. *In re Klaas*, 548 B.R. 414, 421n. 32 (Bankr. W.D. Pa. 2016) (noting that "unless and until the Third Circuit reverses the District Court's ruling (and, by implication, this Court's holding), the doctrine of law of the case continues to apply.") *See also In re La Paloma Generating Co., LLC*, 2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020) ("An appeal of a Court's prior ruling does not render the law of the case doctrine inapplicable.").

8. The UST's argument gives no consideration to the fact that payment of the Trustee Fees is an integral component of the Global Settlement of these cases and constitutes an exercise of the Debtors' business judgment in negotiating the Plan. It also ignores the fact that the Global Settlement is the product of protracted and delicate negotiations among numerous parties-in-interest, which would be upset if Class 5 were deprived of the Plan treatment for which Noteholders negotiated and which they approved and expected when they voted to accept the Plan. The objection fails to consider the risk it threatens, for no good reason,[8] of plunging these cases into chaos and forcing the estates to incur even more administration expenses to pursue, if possible, a new compromise, settlement and plan. Finally, it fails to consider that because Class 5 is to receive 100% of the new equity, the payment of the Trustee Fees is being funded by Class 5.

## ARGUMENT

9. The UST is wrong in arguing that a debtor cannot voluntarily pay the fees and expenses incurred by an indenture trustee in its representation of a class of noteholders under an applicable section of the Bankruptcy Code,[9] unless the indenture trustee moves for allowance of those fees and expenses as administration expenses and shows a substantial contribution to the case. The relevant case law is clear that nothing in the Bankruptcy Code makes satisfaction of the "substantial contribution" requirement of Sections 503(b)(3)(D), (4) and (5) for an allowed administrative expense the sole mechanism for the payment of such fees under a plan. Section 503(b)(3)(D), (4) and (5) provides an avenue for an indenture trustee to seek Court allowance of its fees and expenses as an administration expense either (i) when it seeks to compel their payment

---

[8] Implicit in the UST objection is the admission that there would be no need for compliance with Sections 503(b)(3)(D), (4) or (5) if the Plan provided for Class 5 to receive cash in an amount equal to the Indenture Fees plus the new Plan notes and equity, and the Trustee applied its lien to the cash. That, however, is exactly the effect of the Plan.

[9] The case law identifies Bankruptcy Code sections 363, 365 and 1123(b)(6) as such sections.

without the consent of the plan proponent or (ii) when no other ground for payment exists, such as the right to payment as part of the cure amount in the assumption of a pre-petition agreement or as a component of the plan proponent's voluntary agreement to payment as part of a plan settlement or as part of the treatment of a class under a plan. In these cases, payment of the Trustee Fees are authorized on all three grounds: assumption of an agreement requiring their payment, as a plan settlement and as a component of the treatment of Class 5 under the Plan. Sections 503(b)(3)(D), (4) and (5) are not the mandatory and exclusive means for payment when payment is otherwise permissible under other sections of the Bankruptcy Code without the need to allow those fees as administrative expenses. *See In re Adelphia Communications Corp., et al.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010).

10. In *Adelphia*, the plan, which embodied a global settlement among the debtor and its creditor constituencies, provided for various creditors to be paid their professional fees without compliance with Bankruptcy Code sections 503(b)(3) or (4). The United States Trustee in that case had objected to such payment on the same basis it does here. In overruling its objection, permitting such payment as part of a global settlement under Bankruptcy Code section 1123(b)(6) and confirming the plan, the Court focused on the fact that the purpose of these provisions was to compel payment even when the plan proponent did not consent to payment. It found that:

> [These] provisions are nonconsensual in nature. By their terms, they do not require the assent or agreement of the debtor, chapter 11 trustee, or any other party in the case to qualify for payment; the applicant need only satisfy § 503(b) requirements. There are no other provisions of the Code that authorize payment of fees of this character as expressly. But importantly, § 503(b) does not provide, in words or substance, that it is the only way by which fees of this character may be absorbed by an estate. Thus the Court is free to look to other provisions of the Code that might also authorize a payment.

*Id*. at 12-13.

11. The *Adelphia* case has been followed by Courts in this District. *See Confirmation Hr'g Tr.* 84:16-25, *In re Extraction Oil & Gas, Inc., et al.*, Case No. 20-11548 (CSS) (Bankr. D. Del. December 23, 2020) [Dkt. No. 1534] ("So I don't think necessarily that 503 is exclusive on these issues, and I certainly have a world of respect for former Judge Gerber and what he did in *Aldephia*.").

12. The case law consistently recognizes that fees of an indenture trustee (or other creditors) may be paid in many circumstances without the need to obtain an order of allowance under, or to satisfy the substantial contribution requirement of, Sections 503(b)(3)(D), (4) or (5): as adequate protection of a secured debt; under Bankruptcy Code Section 363 where the debtor's business judgment has determined reasonably that payment is in the best interests of the estate; in connection with the reinstatement of indenture debt; to satisfy the requirements for assumption of the note indenture or other controlling agreement; to satisfy the claim of noteholders when the indenture debt is completely "in the money"; or as part of the distribution to noteholders under a plan that otherwise satisfies all the applicable requirements of Bankruptcy Code section 1129. If any of these are applicable, there is no need for the additional step of obtaining allowance of an administrative expense under Sections 503(b)(3)(D), (4) or (5).

13. Numerous courts in this District (and around the country) have routinely interpreted Bankruptcy Code Sections 363, 365, 1123(b)(3) and (b)(6) and Bankruptcy Rule 9019 (or a combination of them) to authorize payment of the fees and expenses of creditors and indenture trustees, including their legal fees, under a plan of reorganization or otherwise, whether or not they would qualify as administration expenses under Sections 503(b)(3)(D), (4) or (5). *In re Extraction Oil & Gas, Inc., et al.*, Case No. 20-11548 (CSS) (Bankr. D. Del. December 23, 2020) [Dkt. No. 1534] (confirming plan that provided for payment of indenture trustee fees and expenses through

Bankruptcy Code sections 363(b) and 1123(b)(6) and overruling objection that payment of such fees had to be through Sections 503(b)(3)(D), (4) and (5));[10] *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. May 14, 2018) [Dkt. No. 492] (confirming plan that paid the indenture trustee fees and expenses where the debtor sought approval of a global settlement contained in the plan under Bankruptcy Code sections 1123(b)(3) and (b)(6) and Bankruptcy Rule 9019 and finding that "[w]ith respect to the payment of expenses, § 503(b)(3)(D) is not the only way where such expenses can be approved and paid in a case.");[11] *see also In re Anna Holdings, Inc.*, Case No. 19-12551 (CSS) (Bankr. D. Del. Dec. 16, 2019) [Dkt. No. 151] (confirming chapter 11 plan providing for payment of indenture trustee fees and expenses); *In re EV Energy Partners, L.P.*, Case No. 18-10814 (CSS) (Bankr. D. Del. May 17, 2018) [Dkt. No. 238] (same); *In re Terra Via Holdings, Inc.*, Case No. 17-11655 (CSS) (Bankr. D. Del. January 8, 2018) [Dkt. No. 480] (same); *In re Keystone Tube Co.*, Case No. 17-11330 (LSS) (Bankr. D. Del. Aug. 2, 2017) [Dkt. No. 244] (same); *In re Nuverra Envtl. Sols, Inc.*, Case No. 17-10949 (KJC) (Bankr. D. Del. July 25, 2017) [Dkt. No. 366] (same); *In re Paragon Offshore PLC*, Case No. 16-10386 (CSS) (Bankr. D. Del. June 7, 2017) [Dkt. No. 1614] (same); *In re RCS Capital Corp.*, Case No. 16-10223 (MFW) (Bankr. D. Del. May 19, 2016) [Dkt. No. 769] (same); *In re Colt Holding Co.*, Case No. 15-11296 (LSS) (Bankr. D. Del. Dec. 16, 2015) [Dkt. No. 807] (same); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (Bankr. D. Del. June 24, 2014) [Dkt. No. 580] (same); *In re Altegrity,Inc.*, Case No. 15-10226 (LSS) (Bankr. D. Del. Mar. 16, 2015) [Dkt. No. 208] (approving as part of the assumption of a restructuring support agreement payment of creditor fees and expenses pursuant to sections 363(b) and 365(a) of the Bankruptcy Code without

---

[10] A copy of the confirmation hearing transcript from the *Extraction* case is attached hereto as Exhibit B.

[11] A copy of the confirmation hearing transcript from the *Southeastern Grocers* case is attached hereto as Exhibit C.

requiring a showing of substantial contribution); *In re Dendreon Corp.*, Case No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014)[Dkt. No. 215] (same); *In re USEC Inc.*, Case No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) [Dkt. No. 190] (same); *In re Briggs & Stratton Corp.*, Case No. 20-43567 (BSS) (Bankr. S.E. Mo. Dec. 18, 2020) [Dkt. 1485] (confirming chapter 11 plan providing for payment of the fees and expenses of the indenture); *In re Weatherford International Plc*, Case No. 19-33694 (DRJ) (Bankr. S.D. Tex. September 11, 2019) [Dkt. No. 343] (same); *In re Arch Coal, Inc.*, Case No. 16-40120 (Bankr. E.D. Mo. Sept. 15, 2016) [Dkt. No. 1334] (same).

14. In several of the above cases, the UST had made the argument it makes in this case, virtually verbatim, without success. In *In re Extraction Oil & Gas, Inc., et al.* Case No. 20-11548 (CSS) (Bankr. D. Del.), Judge Sontchi overruled the objection and approved the payments of fees and expenses to certain creditors, including those of the indenture trustee, pursuant to sections 363 and 1123 of the Bankruptcy Code. *Confirmation Hr'g Tr.* 84:6-25, *In re Extraction Oil & Gas, Inc., et al.* (CSS) (Bankr. D. Del. December 23, 2020) [Dkt. No. 1534]. Judge Sontchi rejected the UST's argument as simply wrong. *Id*. at 84:6 ("I actually think the [the UST] is wrong").

15. Prior to that, the UST had made this same objection in the *Southeastern Grocers* case in this District. *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. May 3, 2018) [Dkt. No. 433, ¶¶ 24 and 32]. There, Judge Walrath, also, was not persuaded and confirmed a plan providing for the payment of creditors' fees, including those of the indenture trustee, pursuant to Bankruptcy Code section 1126(b)(6). *Confirmation Hr'g Tr.* 37:23-25 and 38:1-9, *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. May 14, 2018) [Dkt. No. 492]. In doing so, Judge Walrath stated: "With respect to the payment of expenses, 503(b)(3)(D) is not the only way where such expenses can be approved and paid in a case. And I think it is perfectly appropriate to agree pre-bankruptcy to the payment of those

expenses without the necessity of a court having to approve them after the fact in order to get the parties to come to the table and negotiate what ultimately in this case is a very successful reorganization of this entity." *Id*. at 37:23-25 and 38:1-5.

16. Delaware is not the only District to reject the UST's argument. *See In re Briggs & Stratton Corp.*, Case No. 20-43597 (BSS) (Bankr. E.D. Mo. Dec. 18, 2020) [Confirmation Order, Dkt. No. 1485; UST Objection to Confirmation, Dkt. No. 1405, ¶ 32]] *In re Arch Coal, Inc.*, Case No. 16-40120 (CER) (Bankr. E.D. Mo. Sept. 15, 2016) [Confirmation Order, Dkt. No. 1334; UST Objection to Confirmation, Dkt. No. 1290, ¶¶ 17-18].

17. Further, *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014) does not support the UST's assertion that Sections 503(b)(3)(D), (4) and (5) are the sole source of authority to pay the fees and expenses of an indenture trustee. UST Objection, ¶¶ 86-87 (citing the *Lehman* decision). In each of the *Extraction, Southeastern Grocers, Briggs & Stratton* and *Arch Coal* cases, the courts rejected the UST's interpretation of the *Lehman* decision. That decision involved a different issue and different facts. The District Court there reversed the ruling of the Bankruptcy Court which had allowed as administrative expenses the claims for legal fees of committee members absent a showing of substantial contribution where none of the creditors had a pre-petition claim for those fees and the debtor had agreed to pay them only as administrative expenses. *In re Lehman Bros. Holdings Inc.*, 508 B.R. at 290-92. In that case, a plan provision permitted the legal fees incurred by members of the creditors' committee to be paid as administrative expenses. *Id*. at 291. But they were not shown to be such and there was no other basis under the Bankruptcy Code for payment of the legal fees. The fees were not allowable as pre-petition claims or payable as a cure expense on assumption of a contract, and they

were not part of the agreed upon plan treatment of a pre-petition claim. Absent proof of their allowability as administrative expenses, the District Court found no basis for payment. *Id*. at 296.

18.   In contrast, here, the Trustee is not seeking allowance of its fees as administrative expenses. They are not described as such in the Plan or Disclosure Statement, and allowance as administrative expenses is not required for their payment. Rather, payment of the Trustee Fees under the Plan is based upon, among other things, recognition of the Debtors' pre-petition liability for such fees under the applicable indentures, resolution of the filed proofs of claim for such amounts,[12] assumption of the Restructuring Support Agreement which requires their payment (Restructuring Support Agreement, Exhibit A (Term Sheet), pg. 8) and the fact that payment is an essential negotiated component of the Global Settlement including the treatment of Class 5. The Plan separately classifies the debt owed on account of the Notes, provides for its satisfaction by the receipt of the equity in the reorganized Debtors and new notes, and, in connection therewith, provides for the payment of the Trustee Fees as part of that Global Settlement to avoid the need for the Trustee to liquidate any of the Plan securities to be distributed to the Noteholders. Payment by the estate of the Trustee Fees is simply part of the recovery under the Plan on the pre-petition claims for the Noteholders pursuant to the Global Settlement.

19.   It is beyond question that payment of the Trustee Fees is a sound exercise of the Debtors' business judgment for the benefit of the estate. In return for payment of the Trustee Fees, and other Plan Fees, the Debtors received the benefit of the ability to negotiate the Global Settlement and necessary agreements and acceptances to make possible the confirmation of the Plan. The Trustee, in particular, provided the estate significant value, including the Trustee's (i)

---

[12] The proofs of claim assigned claim numbers 3397, 3671 and 3700 and filed by the Indenture Trustee assert, *inter alia*, all amounts owed under the applicable indentures on account of the Trustee's fees and expenses, including those of its counsel.

11

waiver of its general right to indemnity from the Debtors after the effective date (Plan, Article I.A.160. (definition of "Indenture Trustee Fees"); (ii) limitation of its fees and expenses to those incurred prior to the effective date (other than for serving as a Distribution Agent) (*Id*.); (iii) agreement to serve as the Distribution Agent for the Plan distributions to the Noteholders (Plan, Article VI.D.4.); and (iv) its agreement not to assert to the fullest extent its charging lien over the Plan distributions of securities to the holders of Notes. *Compare* Plan, Article IV.F., *with* Plan, Article VI.D.4.  These are precisely the types of benefit to the estate that have repeatedly been held by the Courts to justify payment of the fees and expenses of an indenture trustee or other creditor, without the need for a motion under Section 503(b)(3)(D), (4) or (5). *See Adelphia,* 441 B.R. 6 and case cited in ¶13, *supra*.

20. In sum, payment of the Trustee Fees is authorized under Bankruptcy Code Sections 365 and 1123(b)(2) as a cure expense mandated by the Plan's requirement of assumption of the Restructuring Support Agreement, which expressly requires payment of the Trustee Fees.  It is authorized under Bankruptcy Code Section 1123(b)(6) and Bankruptcy Rule 9019 because the Plan provision providing for such payment is part of a Global Settlement and is not inconsistent with the other provisions of the Code.  It is authorized by Bankruptcy Code section 363(b) because it is an exercise of the Debtors' business judgement as to the use of estate property to obtain the benefits of the foregoing.  Finally, nothing in the Plan relies on, and nothing in the Code requires, the allowance of the Trustee Fees as administrative expenses under Sections 503(b)(3)(D), (4) or (5).

21. There is simply no support as a matter of fact or law for the UST's objection.

## **CONCLUSION**

22. For the reasons set forth herein, the objection of the UST to the Plan provision providing for payment of the Trustee Fees should be overruled, and the Trustee respectfully requests that the Court confirm the Plan because it is in the best interests of all of the accepting classes and otherwise confirmable under Bankruptcy Code section 1129.

Dated: October 26, 2021

Respectfully submitted,

*/s/ Erin R. Fay*
Evan T. Miller (No. 5364)
Erin R. Fay (No. 5268)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655–5000
Facsimile: (302) 658–6395
E-mail: emiller@bayardlaw.com
efay@bayardlaw.com

- and -

MOSES & SINGER LLP
Alan Kolod, Esq.
Alan E. Gamza, Esq.
Kent C. Kolbig, Esq.
405 Lexington Avenue. 12th Floor
New York, NY 10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
Email: akolod@mosessinger.com
agamza@mosessinger.com
kkolbig@mosessinger.com

*Counsel to Deutsche Bank Trust Company Americas as Indenture Trustee for the 2014 Indenture, 2015 Indenture, and the 5.625% Senior Notes Indenture*