# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | ) Case No. 20-12522 (JTD) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) Re: Docket No. 4508 |

## THE UNSECURED NOTES AD HOC GROUP'S
## (A) STATEMENT IN SUPPORT OF THE PLAN AND (B) RESERVATION OF RIGHTS

The *ad hoc* group of certain unaffiliated holders of the Debtors' guaranteed unsecured senior notes (the "Unsecured Notes Ad Hoc Group"),[2] by and through its undersigned counsel, hereby submits this (a) statement in support of the *First Amended Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 4508] (the "Plan") and (b) reservation of rights.[3] The Unsecured Notes Ad Hoc Group respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] The Unsecured Notes Ad Hoc Group comprises certain unaffiliated holders (each, a "Member") of the Debtors' (i) 5.75% senior notes due 2022 (the "5.75% Senior Notes") issued under that certain Indenture, dated as of August 13, 2014 (as amended, restated or otherwise supplemented to date) by and among Mallinckrodt International Finance, S.A. and Mallinckrodt CB LLC, as issuers (the "Issuers"), the guarantors party thereto from time to time and Deutsche Bank Trust Company Americas, as trustee (the "Trustee"), (ii) 5.500% senior notes due 2025 (the "5.500% Senior Notes") issued under that certain Indenture, dated as of April 15, 2015 (as amended, restated or otherwise supplemented to date) by and among the Issuers, the guarantors party thereto from time to time and the Trustee and (iii) 5.625% senior notes due 2023 (the "5.625% Senior Notes"; the holders of the 5.625% Senior Notes, the 5.75% Senior Notes and the 5.500% Senior Notes, collectively, the "Guaranteed Unsecured Noteholders") issued under that certain Indenture, dated as of September 24, 2015 (as amended, restated or otherwise supplemented to date) by and among the Issuers, the guarantors party thereto and the Trustee. *See Second Amended Verified Statement of Paul, Weiss, Rifkind, Wharton & Garrison LLP and Landis Rath & Cobb LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 3211]. Each Member of the Unsecured Notes Ad Hoc Group files this statement in support of the Plan and reservation of rights exclusively on its own behalf and does not assume any fiduciary or other duties to any other Member or to any other entity or individual.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

## STATEMENT IN SUPPORT OF THE PLAN AND RESERVATION OF RIGHTS

1.  The Plan is an unprecedented achievement for bankruptcy cases involving trillions of dollars of alleged opioid claims. Although practically unheard of, the Debtors filed these mass tort Chapter 11 Cases with a restructuring support agreement. The Restructuring Support Agreement was negotiated at a time when the Debtors faced over 3,000 opioid-related litigation cases and a levered balance sheet, which included over $1.5 billion in guaranteed unsecured note liabilities. The Restructuring Support Agreement allowed the Debtors to smoothly transition into chapter 11 with a positive, confidence-inspiring message for their vendors, employees, customers and other key operational stakeholders.

2.  Now, a year later and on the eve of confirmation, the Plan enjoys the support not only of the Restructuring Support Agreement parties, but also two sets of statutory fiduciaries who have independently determined that the Plan is in the best interests of their respective constituents and should be confirmed. Likewise, holders of an overwhelming amount of the Debtors' approximately $3.7 billion in secured funded debt now too support the Plan. Viewed holistically, the Debtors' restructuring efforts thus far have been successful.

3.  As the Court is aware, the Unsecured Notes Ad Hoc Group supports the Plan as the value-maximizing outcome for all stakeholders. Its support, however, while steadfast during the last year of the Debtors' cases, is not unconditional. The Unsecured Notes Ad Hoc Group therefore reserves all of its rights to terminate the Restructuring Support Agreement (which it has the right to do at any time) and withdraw its support for the Debtors' restructuring if the Plan currently before the Court is not confirmed or any rulings are issued that further diminish the Guaranteed Unsecured Noteholders' recoveries. This includes if the Court does not confirm the Plan and its settlements in its entirety (as opposed to finding that some but not all of the Plan settlements are reasonable), issues a ruling finding that the Acthar claimants have allowed administrative claims

in any material amount (which would render the Plan unfeasible) or otherwise issues a ruling to similar effect.

4. As part of a value-maximizing global settlement, the Unsecured Notes Ad Hoc Group is giving up a substantial portion of the recovery to which it is legally entitled under the Plan. The Guaranteed Unsecured Noteholders are entitled to receive more value than other unsecured creditors because of the undisputed fact that the Guaranteed Unsecured Noteholders are the only unsecured creditors with liquidated, allowed claims at nearly every Debtor, including the Debtors that own the company's most valuable assets. The other unsecured creditors have no such claims and, to the extent those creditors' claims are allowed at all, they are only against a limited number of entities that do not have significant distributable value available for unsecured creditors.

5. The Unsecured Notes Ad Hoc Group agreed to the Restructuring Support Agreement because at the time it was executed, the Debtors faced an untenable volume of litigation which threatened to destroy the company. In this context, the Unsecured Notes Ad Hoc Group believed that a comprehensive restructuring of the Debtors on the Restructuring Support Agreement's terms would be more value-accretive for all stakeholders than indefinite litigation, even if it meant giving up value to which the Unsecured Notes Ad Hoc Group was legally entitled. In exchange, the Debtors agreed to reinstate their secured debt and issue new secured second lien notes and equity interests in Reorganized Mallinckrodt to the Guaranteed Unsecured Noteholders.

6. Post-petition, the Unsecured Notes Ad Hoc Group continued to support the Debtors' restructuring to preserve a value-maximizing reorganization of the Debtors as a going concern. It did so by consenting to settlement agreements in principle with the Official Committee of Unsecured Creditors, the Official Committee of Opioid-Related Claimants and the Ad Hoc

Second Lien Notes Group, all of which were publicly disclosed on September 3, 2021.[4] Although these additional settlements would have given it the right to terminate the Restructuring Support Agreement, the Unsecured Notes Ad Hoc Group refrained from doing so, agreeing instead to provide substantial additional value from its own recoveries to the settling parties in furtherance of the Debtors' restructuring efforts.

7.  To be clear, however, the Unsecured Notes Ad Hoc Group disputes the junior constituencies' entitlement to the recoveries the Plan provides them with in the absence of the global settlement that the Plan embodies. For example, the Unsecured Notes Ad Hoc Group does not believe that the Opioid Claimants are entitled to $1.725 billion in structured payments (plus the New Opioid Warrants) on a standalone basis, and no agreement on the quantum of opioid claims exists. If this Plan is not confirmed, the Unsecured Notes Ad Hoc Group will dispute the merits of the unliquidated and contingent claims that the various stakeholders assert (none of which have been reduced to judgment), and the notion that any Debtors with meaningful assets are liable even if such claims could ultimately be proved. The Plan settlements do not reflect or affix a particular value to the underlying claims asserted by the various constituents and the Unsecured Notes Ad Hoc Group's support for the Plan is not an endorsement of any of those settlements on a standalone basis.

8.  Importantly, at the end of this process, there must be meaningful value remaining to distribute in order for the Unsecured Notes Ad Hoc Group to receive the benefit of the bargain agreed to at the outset of these cases. That bargain provided the Guaranteed Unsecured Noteholders with lower recoveries than that which they were entitled to but, in return, promised

---

[4] *See Notice of Filing of Settlement Term Sheets in Connection with the Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 4121].

the Unsecured Notes Ad Hoc Group a speedy chapter 11 process, minimal administrative expenses and a certain level of business performance. As it turns out, much of that bargain has been lost: delays ensued, professional fees and administrative costs ballooned and the Debtors are underperforming under their business plan. Thus, while other unsecured creditor recoveries have increased over the course of the Chapter 11 Cases, the Guaranteed Unsecured Noteholders' recovery has diminished every step of the way. If the reorganization value of the Debtors further declines and negatively impacts the Guaranteed Unsecured Noteholders' recoveries, it will not make sense for the Unsecured Notes Ad Hoc Group to consensually part with value to which they are legally entitled. At that point, the Plan's settlement framework falls apart. In fact, the Unsecured Notes Ad Hoc Group has already seen most of the benefit of its bargain evaporate.

9. The Unsecured Notes Ad Hoc Group accordingly reserves all rights, claims, arguments, defenses and remedies with respect to the Plan or any other issue in the Chapter 11 Cases – including its right to terminate the Restructuring Support Agreement or object to the reasonableness of any of the Plan settlements.

[*Remainder of page intentionally left blank.*]

**CONCLUSION**

For the reasons set forth herein, the Unsecured Notes Ad Hoc Group (a) respectfully requests that the Court confirm the Plan in its entirety and (b) reserves all of its rights as set forth herein.

Dated: October 26, 2021
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Richard S. Cobb*
Richard S. Cobb (No. 3157)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  cobb@lrclaw.com
           pierce@lrclaw.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew N. Rosenberg (admitted *pro hac vice*)
Alice Belisle Eaton (admitted *pro hac vice*)
Claudia R. Tobler (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: arosenberg@paulweiss.com
           aeaton@paulweiss.com
           ctobler@paulweiss.com

*Counsel to the Unsecured Notes Ad Hoc Group*