## Exhibit A

### Updated Draft of Opioid Personal Injury Trust Agreement

**PLEASE TAKE NOTICE** that certain documents, or portions thereof, contained in this Exhibit A and the Twelfth Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto.  The Debtors and such applicable interested parties reserve all of their respective rights, subject to the terms and conditions set forth in the Plan and the Restructuring Support Agreement (as amended), with respect to the final form of such documents and to amend, revise, or supplement the Twelfth Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

---

The latest copy of the Opioid Personal Injury Trust Agreement was filed on the Court's Docket titled "*Notice Of Filing Of Exhibit D (Opioid MDT II Documents And Opioid Creditor Trust Documents) Of Plan Supplement For The Joint Plan Of Reorganization Of Mallinckrodt Plc And Its Debtor Affiliates Under Chapter 11 Of The Bankruptcy Code*" [Docket No. 3610, Ex. D].

The attached is a further revised Opioid Personal Injury Trust Agreement with a redline against the version docketed at Docket No. 3610, Ex. D.

# MALLINCKRODT OPIOID

## PERSONAL INJURY TRUST AGREEMENT

This Mallinckrodt Opioid Personal Injury Trust Agreement (this "**Trust Agreement**"), dated as of [DATE] and effective as of the Effective Date,[1] is entered into, pursuant to the *Fourth Amended Joint Plan Of Reorganization (With Technical Modifications) Of Mallinckrodt Plc And Its Debtor Affiliates Under Chapter 11 Of The Bankruptcy Code*, dated as of February 18, 2022 and confirmed by the Bankruptcy Court on March 2, 2022 [Docket No. 6660] (as such may be amended, modified, or supplemented, the **"Plan"**), by Mallinckrodt and its Debtor affiliates (collectively referred to as the **"Debtors"** or **"Settlors"**); the Future Claimants' Representative (the **"FCR"**); [name] (the **"Delaware Trustee"**); the Personal Injury Trustee identified on the signature pages hereof (the **"Trustee"**); the members of the Trust Advisory Personal Injury Committee identified on the signature pages hereof (the **"PI Committee"**); and the NAS Representative (defined below); and with the consent of the Ad Hoc Group of Personal Injury Victims and the Ad Hoc Committee of NAS Children (the "**Ad Hoc Committees**");

**WHEREAS,** the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in the case filed in the United States Bankruptcy Court for the District of Delaware, administered and known as *In re Mallinckrodt PLC, et al.,* No. 20-12522 (JTD); and

**WHEREAS,** the Bankruptcy Court has entered the Confirmation Order confirming the Plan; and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

**WHEREAS,** the Plan provides, *inter alia,* for the creation of a PI Trust, as provided herein to be called the Mallinckrodt Opioid Personal Injury Trust (the "**PI Trust**"); and

**WHEREAS**, pursuant to the Plan, the PI Trust shall be established to (i) assume all liability for the PI/NAS Claims that are channeled to the PI Trust,[2] (ii) collect distributions made on account of the PI Claims Share and the NAS PI Claims Share in accordance with the PI Trust Documents, (iii) administer the PI/NAS Claims, (iv) make distributions to Holders of Allowed PI/NAS Claims in accordance with the PI Trust Documents, and (v) carry out such other matters as are set forth in the PI Trust Documents; and

**WHEREAS,** the Plan provides that, as of the Effective Date, all PI/NAS Claims, and all of Mallinckrodt's liabilities for the PI/NAS Claims, shall automatically, and without further act, deed or court order, be channeled to and assumed by the PI Trust, which shall resolve the PI/NAS Claims under the PI Trust Documents; and

**WHEREAS,** pursuant to the Plan, the Trust is to use its assets and income to resolve and satisfy, if qualified, all PI/NAS Claims that are channeled to the Trust ("**PI/NAS Claims**," which include (a) the PI Opioid Claims and the Future PI Opioid Claims (collectively, the "**PI Claims,**"), and (b) the NAS PI Opioid Claims and the Future NAS PI Opioid Claims (collectively, the "**NAS PI Claims**"); and shall (i) hold, manage, and invest all funds and other assets received by the PI Trust from the MDT Opioid II for the benefit of the beneficiaries of the PI Trust; and (iii) administer, process, resolve, and liquidate all PI/NAS Claims that are Allowed by the Trustee in accordance with (A) the Mallinckrodt Opioid PI Trust Distribution Procedure for Non-NAS PI Claims (the "**Non-NAS PI TDP**"), and (B) the Mallinckrodt Opioid PI Trust Distribution

---

[2] In this Trust Agreement, whenever the terms "PI Claim," "NAS PI Claim," and "PI/NAS Claim", are used, those terms refer only to PI Claims, NAS PI Claims, and PI/NAS Claims, respectively, that are channeled to the PI Trust pursuant to the Plan.

Procedure for NAS PI Claims (the "**NAS PI TDP**," and together with the Non-NAS PI TDP, the "**PI TDPs**");

**WHEREAS,** it is the intent of the Debtors, the Trustee, the PI Committee, the NAS Representative, and the FCR that the Trust will value the PI/NAS Claims, and be in a financial position to pay Holders of Allowed PI Claims and Allowed NAS PI Claims, in accordance with the terms of this Trust Agreement and the respective PI TDPs;

**WHEREAS,** all rights of the Holders of Non-NAS PI Claims ("**Non-NAS PI Claimants**") and all rights of the Holders of NAS PI Claims ("**NAS PI Claimants**", collectively with the Non-NAS PI Claimants, the "**PI Claimants**")) arising under this Trust Agreement and the PI TDPs shall vest upon the Effective Date; and

**WHEREAS,** pursuant to the Plan, the PI Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"), and to be treated consistently for state and local tax purposes to the extent applicable; and

**WHEREAS**, the Bankruptcy Court has determined that the PI Trust and the Plan satisfy all the prerequisites for issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code with respect to any and all Non-NAS PI Claims and NAS PI Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1     **Creation and Name.**  The Debtors as Settlors hereby create a trust known as the "Mallinckrodt Opioid Personal Injury Trust," which is the PI Trust provided for and referred to in the Plan.  The Trustee of the PI Trust may transact the business and affairs of the PI Trust in the

name of the PI Trust, and references herein to the PI Trust shall include the Trustee acting on behalf of the PI Trust. It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**DST Act**") and that this document constitutes the governing instrument of the PI Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State.

1.2    **Purpose.** The purpose of the PI Trust is to assume all liabilities and responsibility for all PI/NAS Claims, to resolve and make distributions in respect of Allowed Non-NAS PI Claims and Allowed NAS PI Claims in accordance with the Non-NAS PI TDP and NAS PI TDP, respectively, use the PI Trust Assets and income to meet its obligations, as well as to, among other things:

(a)    collect the Opioid MDT II Initial Distribution and any Opioid MDT II Supplemental Distributions on account of the PI Claims Share and the NAS PI Claims Share in accordance with the Plan and the PI Trust Documents;

(b)    direct the administration, processing, liquidation and payment of all Non-NAS PI Claims and NAS PI Claims in accordance with the Plan, the PI TDPs, and the Confirmation Order;

(c)    preserve, hold, and manage the assets of the PI Trust for use in paying and satisfying Allowed Non-NAS PI Claims and Allowed NAS PI Claims;

(d)    qualify at all times as a qualified settlement fund;

(e)    establish a fund to make distributions on account of Allowed Non-NAS PI/NAS Claims (the "**PI Trust Non-NAS Fund**") and a fund to make distributions on account of

28322086.11

-4-

Allowed NAS PI/NAS Claims (the "**PI Trust NAS Fund**"), and make such distributions in accordance with the Plan, the PI TDPs, and the Confirmation Order;

(f)      to pay present and future Allowed NAS PI Claims in substantially the same manner, and to pay present and future Allowed Non-NAS PI Claims in substantially the same manner;

(g)      pay assessments to the extent required by Article IV.X.8 of the Plan to fund the Common Benefit Escrow and then, upon its establishment, the Common Benefit Fund in accordance with the Plan.

(h)      pay Holders of Allowed PI/NAS Claims in accordance with this Trust Agreement, the PI TDPs, and any LRP (defined below) the Trustee may establish, such that Holders of Allowed PI/NAS Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Allowed PI/NAS Claims;

(i)      fund the PI Trust NAS Fund and the PI Trust Non-NAS Fund and make distributions therefrom to Holders of Allowed NAS PI Claims and Allowed Non-NAS PI Claims, respectively, in accordance with the Plan, the PI TDPs, the LRP, and the Confirmation Order;

(j)      use the PI Trust's assets and income to pay any and all fees, costs, expenses, taxes, disbursements, debts, or obligations of the PI Trust incurred from the operation and administration of the PI Trust (including in connection with the PI TDPs and the LRP) and management of the PI Trust Assets (together, the "**Trust Operating Expenses**") in accordance with the PI Trust Documents; and

(k)      make distributions on Allowed PI/NAS Claims (together with the Trust Operating Expenses, the "**Trust Expenses**").

1.3    **Transfer of Assets.**  Pursuant to and in accordance with the Plan, the Trust has received, on the Effective Date or as soon as reasonably practicable thereafter, the Opioid MDT II Initial Distribution and the right to receive any Opioid MDT II Subsequent Distributions (together, the "**PI Trust Assets**") to fund the PI Trust and settle or discharge all PI/NAS Claims. In all events, the PI Trust Assets or any other assets to be transferred to the PI Trust under the Plan will be transferred to the PI Trust free and clear of all Claims, interests, Liens and other encumbrances and liabilities of any kind by the Debtors, the Reorganized Debtors, the other Protected Parties, any creditor, or other entity except as otherwise provided in the PI Trust Documents.

1.4    **Allocation of Funds.**

(a)    Under the Plan, the PI Trust will receive the PI Opioid Claims Share and the NAS PI Opioid Claims Share. The PI Trust shall establish the following: (i) the PI Trust NAS Fund; and (ii) the PI Trust Non-NAS Fund.

(b)    The Trust Operating Expenses shall be paid pro rata from both the PI Trust NAS Fund and the PI Trust Non-NAS Fund until the PI Trust NAS Fund is exhausted and dissolved, after which time Trust Operating Expenses shall be paid solely from the PI Trust Non-NAS Fund; provided, however, that fees of professionals retained by the PI Committee and reimbursement of expenses relating to the PI Committee and its professionals shall be paid from the PI Trust Non-NAS Fund, and fees of professionals retained by the NAS Representative and reimbursement of expenses relating to the NAS Representative and its professionals shall be paid from the PI Trust NAS Fund.

1.5    **Acceptance of Assets and Assumption of Liabilities**.

(a)    In furtherance of the purposes of the PI Trust, the PI Trust hereby expressly accepts the transfer to the PI Trust of the PI Trust Assets and any other transfers contemplated by the Plan and the PI Trust Documents in the time and manner as, and subject to the terms, contemplated in the Plan and the PI Trust Documents.

(b)    In furtherance of the purposes of the PI Trust, the PI Trust expressly assumes all liabilities and responsibility for all PI/NAS Claims, and neither the Reorganized Debtors nor any of the Protected Parties specified in the Plan shall have any further financial or other responsibility or liability therefor.  Except as otherwise provided in this Trust Agreement and the PI TDPs, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or would have had under applicable law; provided, however, that such claims, defenses or rights may not be asserted against any Protected Party.

(c)    Notwithstanding anything to the contrary herein, no provision herein or in the PI TDPs shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations.

(d)    Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Opioid Permanent Channeling Injunction, or (ii) subject to the provisions of Section 1.5(b) above, the Trust's assumption of all liability for PI/NAS Claims.

(e)    To the extent required by the DST Act, the beneficial owners (within the meaning of the DST Act) of the PI Trust (the **"Beneficial Owners"**) shall be deemed to be the

Holders of PI/NAS Claims; provided that (i) the Holders of PI/NAS Claims, as such Beneficial Owners, shall have only such rights with respect to the PI Trust and its assets as are set forth in the PI TDPs, and (ii) no greater or other rights, including upon dissolution, liquidation or winding up of the PI Trust, shall be deemed to apply to the Holders of PI/NAS Claims in their capacity as Beneficial Owners.

**ARTICLE II**

**POWERS AND TRUST ADMINISTRATION**

**2.1** **Powers**.

(a)     The Trustee is and shall act as the fiduciary to the PI Trust in accordance with the provisions of this Trust Agreement and the Plan.  The Trustee shall, at all times, administer the PI Trust and the PI Trust Assets in accordance with the purposes set forth in section 1.2 above. Subject to the limitations set forth in this Trust Agreement, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the PI Trust, including, without limitation, each power expressly granted in this section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or otherwise specified herein, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustee shall have the power to:

(i)     receive and hold the PI Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the PI Trust Assets;

28322086.11

(ii)    invest the monies held from time to time by the PI Trust, in consultation with the PI Committee, the FCR, and the financial advisor for the PI Trust (the "**Financial Advisor**");

(iii)    sell, transfer, or exchange, in the ordinary course of business, any or all of the PI Trust Assets at such prices and upon such terms as the Trustee may consider proper, consistent with the other terms of this Trust Agreement;

(iv)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the PI Trust to operate;

(v)    pay liabilities and expenses of the PI Trust;

(vi)    establish the PI Trust NAS Fund, the PI Trust Non-NAS Fund, and such other funds, reserves, and accounts within the PI Trust estate, as deemed by the Trustee to be useful in carrying out the purposes of the PI Trust;

(vii)    subject to the terms of the Plan, sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(viii)    initiate, prosecute, defend, and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary by the Trustee to fulfill the purposes of the PI Trust;

(ix)    establish, supervise, and administer the PI Trust in accordance with this Trust Agreement and the PI TDPs;

(x)    establish a lien resolution program ("**LRP**") and appoint and oversee the actions of a lien resolution agent to carry out the LRP;

(xi)    in any court, defend, and assert counterclaims against, PI/NAS Claims brought against the PI Trust by PI Claimants who have "opted out" of the applicable PI

TDP, bring one or more consolidated actions against PI Claimants who elect to liquidate their PI/NAS Claims by commencing separate lawsuits in the tort system, seek to consolidate multiple lawsuits commenced by such PI Claimants, and seek to consolidate discovery propounded by such PI Claimants or by the PI Trust in multiple lawsuits commenced by such PI Claimants;

(xii)    appoint, hire, or engage such officers, employees, advisors, counsel, consultants, independent contractors, representatives and agents to provide such legal, financial, accounting, investment, auditing, forecasting, claims administration, lien resolution, and other services ("**Professionals**") as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust and the PI TDPs;

(xiii)    select, engage, and pay reasonable compensation to one or more Appeals Masters pursuant to section 4.12 below;

(xiv)    pay reasonable compensation to Professionals engaged by the PI Trust;

(xv)    as provided below, (a) compensate the Trustee, the Delaware Trustee, the FCR, the PI Committee members, and the NAS Representative, as well as their respective Professionals, and (b) reimburse the Trustee, the Delaware Trustee, the PI Committee members, the NAS Representative, and the FCR, as well as their respective Professionals, for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xvi)    pay reimbursement to the Ad Hoc Committees, in an aggregate amount not to exceed $2 million, for (i) reasonable costs advanced prior to the Effective Date to

the proposed Trustee and his proposed Financial Advisor for work done in connection with the design and implementation of the PI Trust and PI TDPs, in an amount that is subject to review and approval of the PI Committee, the NAS Representative, and the FCR, and (ii) amounts ordered by the Bankruptcy Court consistent with Section IV.X.8.F of the Plan;

(xvii)   execute and deliver such instruments as the Trustee considers proper in administering the Trust;

(xviii)  enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xix)   in accordance with section 4.6 below, defend, indemnify, and hold harmless (and, if practicable and reasonable, purchase insurance indemnifying) (A) the Trustee, the Delaware Trustee, the members of the PI Committee, the NAS Representative, the Ad Hoc Group of Personal Injury Victims and the Ad Hoc Committee of NAS Children (collectively herein, the "**Ad Hoc Committees**", which shall have no role after the effective date for the Trust), and the FCR,  (B) the Appeals Master(s), and Professionals of the PI Trust (including the Claims Administrator and its staff and agents), the PI Committee, the NAS Representative, or the FCR (the "**Additional Indemnitees**"), and (C) the Professionals of the Ad Hoc Committees, to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, and Professionals. Notwithstanding anything to the contrary herein, no party shall be indemnified in any way for any liability, expense, claim, damage or loss for which he or she is liable under under section 4.4 below;

(xx)    [RESERVED]

28322086.11

(xxi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the PI Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in section 4.4 below;

(xxii)    consult with the PI Committee, the NAS Representative, and the FCR at such times and with respect to such issues relating to the conduct of the PI Trust as the Trustee considers desirable in addition to such matters as are prescribed in this Trust Agreement or in the PI TDPs;

(xxiii)    make, pursue (by litigation or otherwise), collect, compromise, settle, or otherwise resolve in the name of the PI Trust, any claim, right, action, or cause of action included in the PI Trust Assets, including, but not limited to, insurance recoveries, before any court of competent jurisdiction; and

(xxiv)    contract for the establishment and continuing maintenance of a website (the "**Trust Website**") to publish the claims materials and the Annual Report, and aid in communicating information to the Beneficiaries and their counsel or other authorized persons.

(d)    The Trustee shall not have the power to guarantee any debt of other persons.

(e)    The Trustee agrees to take the actions of the PI Trust required hereunder.

(f)    The Trustee shall give the PI Committee and the FCR reasonably prompt notice of any material act performed or taken pursuant to sections 2.1(c)(i) above, and any act proposed to be performed or taken pursuant to section 2.2(g) below. The Trustee shall also provide reasonably prompt notice to the NAS Representative of material actions performed or taken under

section 2.1(c)(i) or 2.2(g) that affect the PI Trust NAS Fund, the implementation of the NAS PI TDP, or the NAS PI Claims.

**2.2** **General Administration.**

(a)     The Trustee shall act in accordance with this Trust Agreement, the Plan, the Confirmation Order, and the PI TDPs.  In the event of a conflict between the terms or provisions of the Plan and this Trust Agreement or the PI TDPs, the terms of the Plan shall control.  For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)     The Trustee shall (i) timely file such income tax and other returns and statements required to be filed, and shall timely pay all taxes required to be paid by the PI Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the PI Trust as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the PI Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

(c)     The Trustee may withhold, and shall pay to the appropriate tax authority all amounts required by law to be withheld pursuant to the Internal Revenue Code or any provision of any applicable foreign, state, or local tax law with respect to any payment or distribution to the Holders of Allowed PI/NAS Claims.  All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Holders of Allowed PI/NAS Claims for all purposes of this Trust Agreement.  The Trustee shall be authorized to collect tax information, which may include applicable IRS Form W-8 or IRS Form W-9, from the Holders of Allowed PI/NAS Claims (including tax identification numbers) as reasonably

requested by the Trustee, readily available to the Holders of the Allowed PI/NAS Claims and necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement.  The Trustee may refuse to make some or all of a distribution to a Holder of an Allowed PI/NAS Claim that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Holder's Allowed PI/NAS Claim, as disputed; provided, however, that, upon the delivery of such information by a Holder of an Allowed PI/NAS Claim, the Trustee shall make such distribution to which such Holder is entitled, without additional interest occasioned by such Holder's delay in providing tax information.  Notwithstanding the foregoing, if a Holder of an Allowed PI/NAS Claim fails to furnish any tax information reasonably requested by the Trustee before the date that is six months after the request is made (subject to extension in the discretion of the Trustee if such Holder demonstrates to the reasonable satisfaction of the Trustee that such Holder's failure to provide such tax information is due to one or more taxing authorities' failure to furnish information necessary to respond to the Trustee's reasonable request to such Holder despite such Holder's request for such information), the amount of such distribution shall irrevocably revert to the PI Trust, and any Allowed PI/NAS Claim with respect to such distribution shall be discharged and forever barred from assertion against the PI Trust or its property.

(d)     The Trustee shall be responsible for all of the PI Trust's tax matters, including without limitation, tax audits, claims, defenses and proceedings. The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the PI Trust for all taxable periods through the dissolution of the PI Trust. The Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating

28322086.11

to the PI Trust that is required by any governmental unit and be responsible for payment, out of the PI Trust Assets, of any taxes imposed on the PI Trust or its assets.

(e)     The Trustee shall provide the following reports:

(i)     The Trust shall cause to be prepared and provide to the PI Committee, the NAS Representative, and the FCR quarterly reports on the financial condition of the PI Trust, including a report on the investments and accounts of the PI Trust, and the Trust Operating Expenses ("**Quarterly Reports**"). The Quarterly Reports shall include quarterly statements on all items required to be included in the Annual Report (defined below).

(ii)     The Trust shall cause to be prepared and provide to the PI Committee, the NAS Representative (as applicable to the NAS PI TDP), and the FCR monthly reports on the status of claims submitted to and processed, paid or resolved by the PI Trust.

(iii)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each calendar year, an annual report (the "**Annual Report**"). The Annual Report shall contain financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims.

(iv)     The Annual Report shall also include an aggregate summary regarding the number and type of claims disposed of during the period covered by the financial statements.

(v)     The Trustee shall provide a copy of such Annual Report to the PI Committee, the NAS Representative, the FCR, and the Office of the United States Trustee for the District of Delaware when such reports are filed with the Bankruptcy Court. The Annual Report filed with the Bankruptcy Court shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court. The PI Trust shall also publish the Annual Report on the Trust Website.

(f)     In consultation with the PI Committee, the NAS Representative, and the FCR, the Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years.  The budget and cash flow projections shall include a description of the amounts the PI Trust anticipates spending on Trust Operating Expenses and payments to Holders of Allowed PI/NAS Claims.  The Trustee shall provide a copy of the budget and cash flow projections to the PI Committee, the NAS Representative, and the FCR.

(g)     The Trustee shall consult with the PI Committee, the NAS Representative, and the FCR (i) on the general implementation and administration of the PI Trust; (ii) on the general implementation and administration of the PI TDPs; and (iii) on such other matters as may be required under this Trust Agreement and the PI TDPs.

(h)     The Trustee shall be required to obtain the consent of the PI Committee (as applicable), the NAS Representative (as required by or as applicable to the administration of the NAS PI TDP), and the FCR pursuant to the Consent Process set forth in sections 5.7(b), 6.7(b), and 7.5(b) below, in addition to any other instances elsewhere enumerated, in order:

(i)     clarify the criteria for determining, to the extent such clarification is necessary, (A) an Award (as defined in the NAS PI TDP) as set forth in the NAS PI TDP and (B) the Base Payment and Level Awards (each as defined in the Non-NAS PI TDP) as set forth in the Non-NAS PI TDP;

(ii)     clarify the initial qualification requirements, to the extent such clarification is necessary, described in (A) the NAS PI TDP and (B) the Non-NAS PI TDP;

(iii)     to determine, establish, or change the Payment Amount, Point Value and Recovery Percentage described in the respective PI TDPs;

(iv)     to change, subject to court approval, the evidentiary criteria set forth in the respective PI TDPs;

(v)     determine, establish, or change the types of evidence required for (A) competent evidence as defined and described in the NAS PI TDP and (B) a Qualifying Opioid described in the Non-NAS PI TDP;

(vi)     to establish and/or to change the claims materials to be provided to Holders of PI/NAS Claims under the respective PI TDPs;

(vii)     to change the form of release to be provided to PI Claimants pursuant to the PI TDPs;

(viii)     to terminate the PI Trust pursuant to section 8.4 below;

(ix)     to exhaust any remaining funds in the PI Trust NAS Fund and to dissolve the PI Trust NAS Fund, with consent of the NAS Representative and the FCR;

(x)     to exercise any consent or consultation right (to the extent the PI Trustee has any such right) (a) with respect to a proposed settlement of the liability of any insurer under any insurance policy or legal action related thereto or (b) pursuant to the terms of the trust agreement or trust distribution procedures of Opioid MDT II;

(xi)     to change the compensation of the Trustee, the Delaware Trustee, the FCR, the PI Committee members, the Claims Administrator, or the PI LRP Administrator, other than to reflect cost-of-living increases or to reflect changes approved by the Bankruptcy Court as otherwise provided herein;

(xii)   to take actions out of the ordinary course to minimize any tax on the PI Trust Assets, provided that no such action prevents the PI Trust from qualifying as a qualified settlement fund within the meaning of the QSF Regulations or requires an election for the PI Trust to be treated as a grantor trust for tax purposes;

(xiii)   to sell or exchange PI Trust Assets outside the ordinary course of Trust business;

(xiv)   to amend any provision of this Trust Agreement or the respective PI TDPs in accordance with the terms thereof;

(xv)   to contract with a claims resolution organization or other entity that is not specifically created or authorized by this Trust Agreement or the PI TDPs; or

(xvi)   if and to the extent required by the PI TDPs or the LRP, disclose any information, documents, or other materials to preserve, litigate, resolve or settle coverage, or comply with an applicable obligation under an insurance policy or settlement agreement pursuant to the PI TDPs or the LRP.

(i)   The Trustee shall meet with the PI Committee, the NAS Representative, and the FCR no less often than quarterly.  The Trustee shall meet in the interim with the PI Committee, the NAS Representative, and the FCR when so requested by any of them.  Meetings may be held in person, by telephone or video conference call, or by a combination of the two.

(j)   The Trustee, upon notice from either the PI Committee, the NAS Representative, or the FCR, if practicable in view of pending business, shall at his or her next meeting with the PI Committee, the NAS Representative, and the FCR consider issues submitted by the PI Committee, the NAS Representative, or the FCR.  The Trustee shall keep the PI

Committee, the NAS Representative, and the FCR reasonably informed regarding all aspects of the administration of the PI Trust.

2.3    **Claims Administration**.  The Trustee shall promptly proceed to implement the PI TDPs.

2.4    **Assets Available for Payments to Holders of Allowed PI/NAS Claims**.  The amount of the PI Trust Assets available to make settlement payments to Holders of Allowed PI/NAS Claims shall be subject to deductions for the Trust Operating Expenses and the Common Benefit Escrow/Common Benefit Fund assessments described in Section 2.5 hereof.

2.5    **Common Benefit Escrow/Common Benefit Fund Assessments**.  Upon the establishment of a Common Benefit Escrow on the Effective Date, the PI Trust shall fund the Common Benefit Escrow by assessments of five percent (5%) of each distribution made by the PI Trust in accordance with this Trust Agreement and the PI TDPs.  Upon the establishment of the Common Benefit Fund by order entered by the MDL Court (the "**MDL Order**"), (i) the amounts held by the Common Benefit Escrow and all subsequent assessments of five percent (5%) of each distribution made by the PI Trust shall be transferred to and distributed in accordance with the MDL Order and (ii) the PI Trust shall fund the Common Benefit Fund by assessments equal to five percent (5%) of each distribution made by the PI Trust in accordance with this Trust Agreement and the PI TDPs (the "**Common Benefit Assessments**").  Such payments shall be made on a reasonable periodic basis to be agreed by the Governmental Plaintiff Ad Hoc Committee, the MSGE Group, and the Trustee.  Nothing in Article IV.X.8 of the Plan or this Trust Agreement shall impair or otherwise affect any fee contract that is not a contingency fee contract between the Ad Hoc Group of Individual Victims and its professionals, or between the NAS Committee and its professionals.  Except as expressly set forth in Article IV.X.8 of the Plan,

nothing in the Plan shall impair or otherwise affect any contingency fee contract between any Holder of a PI Claim (or any ad hoc group of Holders of PI Claims) and such Holder's (or ad hoc group's) counsel. To the extent a Holder of an NAS PI Claim, a Non-NAS PI Claim, or any ad hoc group of holders thereof has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from distributions under the Plan shall be reduced by the full amount payable under Article IV.X.8. of the Plan. However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding forty percent (40%) of the amount payable under Article IV.X.8. of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel.

      **2.6**    **Lien Resolution Program**. The Trustee may implement an LRP and may retain a third-party lien-resolution administrator (the "**PI LRP Administrator**") under the LRP. If retained, the PI LRP Administrator is authorized to (i) identify and coordinate with potential lien holders the PI Claimants, (ii) determine each final lien amounts and holdbacks necessary on account of such lien amounts, and (iii) perform such other duties as provided in the LRP.

## ARTICLE III

## ACCOUNTS, FINANCIAL ADVISOR, INVESTMENTS, AND PAYMENTS

      **3.1**    **Accounts.**

      (a)    The Trustee may, from time to time, create such accounts and reserves within the PI Trust estate as he or she may deem necessary, prudent, or useful in order to provide for the payment of Trust Expenses and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(b)     The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the Quarterly Reports and the Annual Report.

3.2     **Financial Advisor.**

(a)     The Trust shall engage a Financial Advisor, with the consent of the PI Committee, the NAS Representative, and the FCR. The Financial Advisor shall be paid reasonable compensation in accordance with the PI Trust's annual budget.

(b)     The Financial Advisor shall be responsible for determining the available assets of the PI Trust and, under the direction of the Trustee, for (i) overseeing the investment of all funds paid to and held by the PI Trust, (ii) monitoring the assets and liabilities of the PI Trust, (iii) providing investment guidance to the PI Trust, (iv) overseeing the preparation of financial statements, and (v) preparing accounting statements and responding to audits.

(c)     At the direction of the Trustee, the Financial Advisor shall prepare projections of the Point Value (as defined in the Non-NAS PI TDP) and the amount of the Award (as defined in the NAS PI TDP).  The Financial Advisor shall have reasonable access to all data and reports necessary to perform the tasks of the Financial Advisor.

(d)     The Trustee, in consultation with the Claims Administrator, the PI Committee and the FCR, shall provide direction to the Financial Advisor regarding liquidity needs of and tax planning for the PI Trust. The Trustee shall supervise the Financial Advisor to ensure that the investment management and other tasks assigned to the Financial Advisor are performed in accordance with this Trust Agreement.

3.3     **Investments**.    The Trustee, in consultation with the PI Committee, the NAS Representative, the FCR, and the Financial Advisor shall develop the investment strategy for the

PI Trust Assets. In determining investments to be held by the PI Trust, due regard shall be given to safety of principal and to production of reasonable amounts of current income.

**3.4**     **Source of Payments.**

(a)     All Trust Expenses shall be payable solely by the Trustee out of the PI Trust Assets.  None of the Trustee; the Delaware Trustee; the PI Committee; the NAS Representative; the FCR; any Professionals of the foregoing; the Debtors; the Reorganized Debtors; or any other Protected Party shall be liable for the payment of any Trust Expense or any other liability of the PI Trust, except to the extent provided in the Plan or the PI Trust Documents.

(b)     The Trustee shall include a reasonably detailed description of any payments made in accordance with this section 3.4 in the Quarterly Reports and the Annual Report.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

**4.1**     **Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be one (1) Trustee. The initial Trustee shall be Edgar C. Gentle, III.

**4.2**     **Term of Service.**

(a)     The initial Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to section 4.2(c) below, or (vi) the termination of the Trust pursuant to section 8.4 below.

(b)     The Trustee may resign at any time by written notice to the PI Committee, the NAS Representative, and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

28322086.11

(c)      The Trustee may be removed at the recommendation of the PI Committee, the NAS Committee, and the FCR with the approval of the Bankruptcy Court, in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**4.3**      **Appointment of Successor Trustee.**

(a)      In the event of a vacancy in the Trustee position, whether by term expiration, death, retirement, resignation, or removal, the vacancy shall be filled by the PI Committee and FCR, in consultation with the NAS Representative if the PI Trust NAS Fund has not yet dissolved.  In the event that the PI Committee and the FCR cannot agree on the successor Trustee, the Bankruptcy Court shall make the appointment.

(b)      Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to section 4.2(b) above, (iii) his or her removal pursuant to section 4.2(c) above, or (iv) the termination of the Trust pursuant to section 8.4 below.

28322086.11

-23-

4.4     **Liability of Trustee, the PI Committee, the NAS Representative and the FCR.**

The Trustee, the Members of the PI Committee, the NAS Representative, and the FCR shall not be liable to the PI Trust, to any individual holding a PI/NAS Claim, or to any other person, except for any act or omission by such party that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).

4.5     **Compensation and Expenses of Trustee and Delaware Trustee.**

(a)     [The Trustee shall receive a retainer from the Trust for his or her service as a Trustee in the amount of [$XX,000] per annum, paid annually. Hourly time, as described below, shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on projects necessary to carry out the Trust, the Trustee shall receive compensation at the rate of [$400] per hour. For all non-working travel time in connection with Trust business, the Trustee shall receive compensation at the rate of [$200] per hour. All time shall be computed on a decimal hour basis. The Trustee shall record all hourly time to be charged to the Trust on a daily basis. The PI Committee, the NAS Representative, and the FCR shall have the right to review the Trustee's monthly invoices. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI Committee, the NAS Representative, and the FCR, appropriately adjusted by the Trustee for changes in the cost of living.]

(b)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(c)     The Trust will promptly reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustee or the Delaware Trustee in connection with the performance of their duties hereunder.

(d)     The Trust shall include a description of the amounts paid under this section 4.5 in the Quarterly Reports and the Annual Report.

**4.6     <u>Indemnification.</u>**

(a)     The Trust shall indemnify and defend the Trustee, the Delaware Trustee, the members of the PI Committee, the NAS Representative, and the FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware as permitted by 12 Del. C. § 3817 (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the PI Trust. The Trust shall also indemnify the Additional Indemnitees in the performance of their duties hereunder, to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons, against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the PI Trust. The Trust shall also indemnify and defend the Ad Hoc Committees and their Professionals in the performance of their fiduciary duties, if any, in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the PI Trust, to the fullest extent that a statutory trust

organized under the laws of the State of Delaware (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their fiduciary duties, if any, in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the PI Trust.  Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under section 4.4 above.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trustee, the Delaware Trustee, a member of the PI Committee, the NAS Representative, the Ad Hoc Committees (or their Professionals), the FCR, or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust pursuant to section 4.6(a) above, shall be paid by the PI Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee, the Delaware Trustee, the member of the PI Committee, the NAS Representative, the Ad Hoc Committees (or their Professionals), the FCR, or the Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that the Trustee, the Delaware Trustee, the member of the PI Committee, the NAS Representative, the Ad Hoc Committees (or their Professionals), the FCR or the Additional Indemnitee is not entitled to be indemnified by the PI Trust.

(c)    The Trustee must, if practicable and reasonable,  purchase and maintain reasonable amounts and types of insurance on behalf of an individual or group who is or was a Trustee, a member of the PI Committee, the NAS  Representative, the Ad Hoc Committees for purposes of 4.6(a) and (b) above, the FCR or an Additional Indemnitee, including against liability

asserted against or incurred by such individual in that capacity or arising from his or her status as

a Trustee, PI Committee member, the NAS Representative, the Ad Hoc Committees (or their

Professionals) for purposes of 4.6(a) and (b) above, the FCR, or as a Professional of the Trust, the

PI Committee, the NAS Representative, the Ad Hoc Committees for purposes of 4.6(a) and (b)

above, or the FCR.

4.7     **Lien**.  The Trustee, members of the PI Committee, the NAS Representative, the

FCR, and the Additional Indemnitees shall have a first priority lien upon the PI Trust Assets to

secure the payment of any amounts payable to them pursuant to section 4.6 above.

4.8     **Trustee's Independence**.  The Trustee shall not, during the term of his or her

service, hold a financial interest in, act as attorney or agent for, or serve as any other professional

for the Reorganized Debtors.  The Trustee shall not act as an attorney for any person who holds an

Opioid personal injury claim.  For the avoidance of doubt, this section shall not be applicable to

the Delaware Trustee.

4.9     **Bond**.  The Trustee and the Delaware Trustee shall not be required to post any bond

or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.10     **Trustee's Employment of Professionals; Delaware Trustee's Employment of**

**Counsel**.

(a)     The Trustee may, but shall not be required to, retain and/or consult with

Professionals deemed by the Trustee to be qualified as experts on the matters submitted to them

(the **"Trust Professionals"**), and in the absence of a bad faith violation of the implied contractual

covenant of good faith and fair dealing, the written opinion of or information provided by any such

party deemed by the Trustee to be an expert on the particular matter submitted to such party shall

be full and complete authorization and protection in respect of any action taken or not taken by the

Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)    The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

**4.11    Trustee's Retention of Claims Administrator.**

(a)    The Trustee may retain a claims administrator (the "**Claims Administrator**") to assist the Trustee in his duties as set forth in the Plan and the PI TDPs. With the consent of the PI Committee, the NAS Representative, and the FCR, the Claims Administrator may be the same individual as the Trustee.

(b)    The PI Committee, the NAS Representative, and the FCR have agreed that Edgar C. Gentle, III, of Gentle, Turner, Sexton & Harbison, LLC, shall be the initial Trustee and Claims Administrator. With the consent of the PI Committee, the NAS Representative, and the FCR, and subject to the Trustee's duties and obligations set forth in this Trust Agreement and the terms of this section with respect to the Claims Administrator's duties and compensation, the initial Trustee and Claims Administrator may retain his law firm, Gentle, Turner, Sexton & Harbison, LLC, to assist in carrying out the duties of the Trustee and Claims Administrator under this Trust Agreement and the PI TDPs.

(c)    Under the direction of the Trustee, the Claims Administrator shall be responsible for (i) supervising and overseeing the processing of and resolution of PI/NAS Claims and all aspects of the claims office (the "**Claims Office**"), which shall process PI/NAS Claims that are payable from the PI Trust in accordance with the PI TDPs, (ii) preparing and distributing

monthly and quarterly reports to the PI Committee, the NAS Representative, and the FCR documenting the activities of the Claims Office, including reports on the submission of PI/NAS Claims and their resolution, and (iii) performing periodic analyses and estimates regarding the costs and projected costs of processing and resolving PI/NAS Claims and any matter or contingency that could affect the efficient use of funds for the payment of Allowed PI/NAS Claims. The Trustee shall monitor the long-term goals and day-to-day activities of the Claims Office and consult with the Claims Administrator, the PI Committee and the FCR to carry them out.

(d)    The Claims Administrator, under the direction of the Trustee, shall determine, in accordance with the applicable PI TDP, the Allowance or Disallowance of, and the awards payable on, (i) all NAS PI Claims liquidated under the NAS PI TDP and (ii) all Non-NAS PI Claims liquidated under the Non-NAS PI TDP, regardless of the type of Award (as defined in the Non-NAS PI TDP) sought pursuant to the requirements set forth in the Non-NAS PI TDP.

(e)    As set forth in the NAS PI TDP, distributions under the NAS PI TDP, which shall be made solely from the PI Trust NAS Fund, only pursuant to the terms of the NAS PI TDP, and not in satisfaction of any NAS PI Claim against a non-Protected Party; any distribution to an NAS PI Claimant on account of his or her NAS PI Claim shall be deemed to be a distribution in satisfaction of all NAS PI Claims held by such NAS PI Claimant against any of the Protected Parties with respect to the same injuries that are the subject of his or her NAS PI Claim.

(f)    As set forth in the Non-NAS PI TDP, distributions under the Non-NAS PI TDP, which shall be made solely from the PI Trust Non-NAS Fund, are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Claim against a non-Protected Party; any distribution to a Non-NAS PI Claimant on account of his or her Non-NAS PI Claim shall be deemed to be a distribution in satisfaction of all

Non-NAS PI Claims held by such Non-NAS PI Claimant against any of the Protected Parties with respect to the same injuries that are the subject of his or her Non-NAS PI Claim.

(g)    The Trustee shall exercise reasonable measures to oversee the Claims Administrator and the Claims Office, and shall employ reasonable administrative, technical and physical controls to protect the confidentiality of data concerning individual PI Claimants from unauthorized access, acquisition, disclosure, use, loss, or theft.

(h)    In carrying out the Trustee's duties under this Trust Agreement, the Trustee (or the Trust Professionals under the direction of the Trustee) may investigate any PI Claims and request information from any PI Claimant to ensure compliance with NAS PI TDP or the Non-NAS PI TDP, as applicable. For PI Claimants who are requested to execute the HIPAA release forms attached to the applicable PI TDP, the Trustee (or the Trust Professionals under the direction of the Trustee) also has the power to directly obtain such PI Claimant's medical records.

(i)    The Claims Office shall process PI/NAS Claims payable from the PI Trust in accordance with the PI TDPs and the LRP.  NAS PI Claims that satisfy the eligibility criteria specified in the NAS PI TDP and Non-NAS PI Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP shall be paid as specified in the respective PI TDPs.  Only those NAS PI Claims that satisfy the eligibility criteria specified in the NAS PI TDP and those Non-NAS PI Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP are eligible to receive payment. The PI TDPs establish specific guidelines for submitting and processing PI Claims.

(j)    The Trustee shall have discretion to implement such additional procedures and routines as necessary to implement the PI TDPs, in collaboration with the Claims Administrator, the PI Committee, the NAS Representative, and the FCR, and consistent with the terms of this Trust Agreement.

28322086.11

(k)     Under the direction of the Trustee, the Claims Administrator shall institute procedures, claims processing protocols, and staff training, and shall develop claims-tracking, analysis, and payment systems as necessary to process the PI/NAS Claims in accordance with the PI TDPs and the LRP, including reasonable measures to detect and prevent claims fraud.

(l)     The Trustee shall maintain (subject to the confidentiality provisions of this Trust Agreement) records of all individual payments, settlements, and resolutions concerning the PI/NAS Claims. The records shall include the documents and information relative to the valuation of the PI Claims.

(m)     The Claims Administrator shall serve for the duration of the PI Trust, subject to death, resignation, or removal.  The Trustee may remove the Claims Administrator with the consent of the PI Committee, the NAS Representative and the FCR.  In the event that the Claims Administrator resigns, is removed from office, or otherwise is unable to perform the functions of the Claims Administrator, the Trustee shall propose a successor Claims Administrator, subject to consent by the PI Committee, the NAS Representative, and the FCR.  However, in the event that, pursuant to section 4.11(a), the Trustee also serves as the Claims Administrator, if the Trustee is removed, absent a court order to the contrary the Claims Administrator shall also be removed from office, and the successor Trustee shall fill the vacancy by proposing a Claims Administrator subject to consent of the PI Committee, the NAS Representative, and the FCR.

(n)     The Claims Administrator (or successor Claims Administrator) shall be (i) an entity or an individual over the age of 35 whose experience and background are appropriate for the responsibilities set forth herein and (ii) at the time of appointment and at all times during the term of service, independent.  For purposes of this section, a person is independent if such person:

(i)      is not or was not at any time a Holder or a representative of a Holder of a PI/NAS Claim;

(ii)      has not had and does not have a relationship with an individual Holder of a PI/NAS Claim, such that the person's impartiality in serving as a Claims Administrator could reasonably be questioned;

(iii)      is not a Holder of any interest (other than interests held indirectly through publicly traded mutual funds) in a Debtor or any related person with respect to a Debtor;

(iv)      is not and was not at any time an officer, director, employee, or agent of a Debtor or any related person with respect to a Debtor or related to any of the foregoing, or otherwise is or was an "insider," as defined in the Bankruptcy Code, with respect to a Debtor or any related person with respect to a Debtor; or

(v)      is not an investment banker, financial advisor, accountant, or attorney, and is not related to any of the foregoing, for any Debtor or any related person with respect to a Debtor, or an officer, director, employee, or agent of any person or entity that provides investment banking, financial advice, accounting, or legal services to a Debtor or any related person with respect to a Debtor or related to any of the foregoing, with the exception of any person employed in the Claims Administrator's law firm who helps provide services in connection with the Chapter 11 Cases.

(o)      Subject to approval by the Trustee, the Claims Administrator shall have the power to hire, and shall hire and appoint, such staff and other appropriate agents, including persons or entities performing PI/NAS Claim audit functions, as necessary to carry out the functions of the Claims Administrator under this Trust Agreement, and such staff and agents shall be considered Additional Indemnitees as provided in section 2.1(c)(xviii).  Salaries, fees,

28322086.11

budgets, and payment terms for any staff, contractors, or auditors shall be determined by the Claims Administrator, with the Trustee's approval, subject to consultation with the PI Committee, the NAS Representative, and the FCR. The Claims Administrator shall not have authority to subcontract claims processing functions without the consent of the Trustee, PI Committee, the NAS Representative, and the FCR. Subject to the direction of the Trustee, in consultation with the PI Committee, the NAS Representative, and the FCR, the Claims Administrator shall have the authority to enter into such contracts or agreements as may be necessary to operate the Claims Office, hire staff and contractors, or obtain services and equipment, and shall have the authority to serve all functions of an employer.

(p)     The compensation of the Claims Administrator and his or her staff, including periodic increases, shall be governed by the budget developed by the Claims Administrator in consultation with the Financial Advisor and approved by the Trustee, with the consent of the PI Committee, the NAS Representative, and the FCR.

**4.12    Appeals Master.**   The Trustee shall select one or more Appeals Masters in consultation with the PI Committee and the FCR.

**4.13    Delaware Trustee.**

(a)     There shall at all times be a Delaware Trustee. The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this section 4.13, it shall resign immediately in the manner and with the effect hereinafter specified in section 4.13(c) below. For the avoidance of doubt, the

28322086.11

Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein. The Delaware Trustee shall be one of the trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the DST Act and for taking such actions as are required to be taken by a Delaware Trustee under the DST Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the DST Act (acting solely at the written direction of the Trustee) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto or any beneficiary of the Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee or any other Person.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of section 4.13(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware

Trustee shall have been appointed by the Trustee in accordance with section 4.13(d) below. If the Trustee does not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

## ARTICLE V

## TRUST ADVISORY PERSONAL INJURY COMMITTEE

5.1     **Members.**  The PI Committee shall consist of three (3) members who shall initially be the persons named on the signature page hereof.

5.2     **Duties.**  The members of the PI Committee shall serve in a fiduciary capacity representing all Holders of present PI Claims. The PI Committee shall have no fiduciary obligations or duties to any party other than the Holders of present PI Claims. The Trustee must consult with the PI Committee on matters identified in section 2.2(g) above and in other provisions herein, and must obtain the consent of the PI Committee on matters identified in section 2.2(h) above. Where provided in the Non-NAS PI TDP, certain other actions by the Trustee are also

subject to the consent of the PI Committee. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the Non-NAS PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the PI Committee.  To the extent that, at law or in equity, the PI Committee has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the PI Committee expressly set forth in this Trust Agreement and the documents referenced herein (including the Non-NAS PI TDP).

  **5.3**  **<u>Term of Office</u>.**

   (a)  Each member of the PI Committee shall serve until the earlier of (i) his or her resignation pursuant to Section 5.3(b) below, (ii) his or her removal pursuant to Section 5.3(c) below, or (iii) the termination of the PI Trust pursuant to Section 8.4 below.

   (b)  A member of the PI Committee may resign at any time by written notice to the other members of the PI Committee, the Trustee and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall be not less than ninety (90) days after the date such notice is given, where practicable.

   (c)  A member of the PI Committee may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal shall be made at the recommendation of the remaining members of the PI Committee with the approval of the Bankruptcy Court.

**5.4**    **Appointment of Successor**.

(a)    If, prior to the termination of service of a member of the PI Committee other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the PI Committee, such individual shall be his or her successor.  If such member of the PI Committee did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If (i) a member of the PI Committee did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the PI Committee or, if such members cannot agree on a successor, the Bankruptcy Court.

(b)    Each successor PI Committee member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 5.3(b) above, (iii) his or her removal pursuant to section 5.3(c) above, or (iv) termination of the PI Trust pursuant to section 8.4 below.

(c)    No successor PI Committee member shall be liable personally for any act or omission of his or her predecessor PI Committee member.  No successor PI Committee member shall have any duty to investigate the acts or omissions of his or her predecessor PI Committee member.  No PI Committee member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**5.5**    **PI Committee's Employment of Professionals**.

(a)    The PI Committee may but is not required to retain and/or consult Professionals deemed by the PI Committee to be qualified as experts on matters submitted to the PI Committee (the **"PI Committee Professionals"**).  The PI Committee and the PI Committee

Professionals shall at all times have complete access to the PI Trust's Professionals, and shall also have complete access to all information generated by them or otherwise available to the PI Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing, reliance on the written opinion of or information provided by any PI Committee Professional or Trust Professional deemed by the PI Committee to be qualified as an expert on the particular matter submitted to the PI Committee shall be full and complete authorization and protection in support of any action taken or not taken by the PI Committee in good faith and in accordance with the written opinion of or information provided by the PI Committee Professional or Trust Professional.

(b)    The PI Trust shall promptly reimburse, or pay directly if so instructed, the PI Committee for all reasonable fees and costs associated with the PI Committee's employment of PI Committee Professionals pursuant to this provision in connection with the PI Committee's performance of its duties hereunder.

(c)    In the event that the PI Committee retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the PI Committee and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the PI Committee and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the PI Committee and regardless of whether the PI Trust pays such counsel's fees and related expenses.

5.6     **Compensation and Expenses of the PI Committee.**  The members of the PI Committee shall receive reasonable compensation from the PI Trust for their services as PI Committee members.  The members of the PI Committee also shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder.  Such reimbursement shall be deemed a Trust Operating Expense.  The PI Trust shall include a description of the amounts paid under this section in the Quarterly Reports and the Annual Report.

5.7     **Procedures for Consultation With and Obtaining the Consent of the PI Committee.**

(a)     Consultation Process.

(i)     In the event the Trustee is required to consult with the PI Committee pursuant to section 2.2(g) above or on other matters as provided herein, the Trustee shall provide the PI Committee with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the PI Committee and the PI Committee Professionals with such reasonable access to the Trust Professionals and other experts retained by the PI Trust and its staff (if any) as the PI Committee may reasonably request during the time that the Trustee is considering such matter, and shall also provide the PI Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii)     In determining when to take definitive action on any matter subject to the consultation procedures set forth in this section 5.7(a), the Trustee shall take into consideration the time required for the PI Committee, if its members so wish, to engage and consult with its own independent financial or investment advisors and other PI Committee Professionals

as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the PI Committee with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the PI Committee.

        (b)    <u>Consent Process</u>.

        (i)    In the event the Trustee is required to obtain the consent of the PI Committee pursuant to section 2.2(h) above, the Trustee shall provide the PI Committee with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the PI Committee as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the PI Committee and the PI Committee Professionals with such reasonable access to the Trust Professionals as the PI Committee may reasonably request during the time that the Trustee is considering such action, and shall also provide the PI Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

        (ii)    The PI Committee must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and the PI Committee may agree.  An action of the PI Committee shall require approval by at least a majority of the PI Committee. The PI Committee may not withhold its consent unreasonably.  If the PI Committee decides to withhold its consent, it must explain in detail its objections to the

proposed action.  If the PI Committee does not advise the Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request (or the additional time period agreed to by the Trustee and the PI Committee), the PI Committee's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this section 5.7(b), a majority of the PI Committee continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the PI Committee shall resolve their dispute pursuant to section 8.15.   However, the burden of proof with respect to the reasonableness of the PI Committee's objection and withholding of its consent shall be on the PI Committee.

## ARTICLE VI

## THE NAS REPRESENTATIVE

**6.1**    **Duties.** The "**NAS Representative**" shall be the person identified as such on the signature page of this Trust Agreement. The NAS Representative shall serve in a fiduciary capacity as a representative of the interests of the present NAS PI Claimants. The NAS Representative shall have no fiduciary obligations or duties to any party other than the Holders of present NAS PI Claims. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the NAS PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the NAS Representative.  To the extent that, at law or in equity, the NAS Representative has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the NAS Representative expressly set forth in this Trust Agreement and the documents referenced herein (including the NAS PI TDP).

6.2     **Consultation and Consent.** The Trustee must consult with the NAS Representative on matters identified in section 2.2(g) above and in other provisions herein, and must obtain the consent of the NAS Representative on matters identified in section 2.2(g) above. Where provided in the NAS PI TDP, certain other actions by the Trustee are also subject to the consent of the NAS Representative.  Notwithstanding anything else in this Trust Agreement, the Trustee shall be required to obtain the consent of the NAS Representative to (i) amend the NAS PI TDP or any exhibits thereto in any way or (ii) modify this Trust Agreement in a way that impacts NAS PI Claimants in a way that does not impact Non-NAS PI Claimants.

6.3     **Term of Office.**

(a)     The NAS Representative shall serve until the earlier of (i) the dissolution of the PI Trust NAS Fund pursuant to Section 6.3(b), (ii) his or her resignation pursuant to Section 6.3(c) below, (iii) his or her removal pursuant to Section 6.3(d) below.

(b)     Pursuant to Section 6.3(a)(i), the NAS Representative shall serve in such capacity until the PI Trust NAS Fund is exhausted and dissolved, at which time the NAS Representative shall have no further duties under this Trust Agreement or the NAS PI TDP, and the Trustee shall have no further obligation to consult with or seek the consent of the NAS Representative.

(c)     The NAS Representative may resign at any time by written notice to the Trustee, the PI Committee, and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall be not less than ninety (90) days after the date such notice is given, where practicable.

(d)     The NAS Representative may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration,

mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal shall be made at the recommendation of the Trustee, with the consent of the PI Committee and the FCR, with the approval of the Bankruptcy Court.

**6.4**     **Appointment of Successor.**

(a)     In the event that the individual serving as NAS Representative resigns, dies, is removed or otherwise becomes unavailable to serve as the NAS Representative and the PI Trust NAS Fund has not been dissolved, Scott R. Bickford, in his capacity as counsel to one or more NAS PI Claimants, may select the new NAS Representative and shall give notice of the same to the Trustee.

(b)     No successor NAS Representative shall be liable personally for any act or omission of a successor NAS Representative.  No successor NAS Representative shall have any duty to investigate the acts or omissions of his or her predecessor NAS Representative.  No NAS Representative shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**6.5**     **NAS Representative's Employment of Professionals.**

(a)     For purposes of carrying out its duties under this Trust Agreement and the NAS PI TDP, the NAS Representative may but is not required to retain and/or consult Professionals deemed by the NAS Representative to be qualified as experts on matters submitted to the NAS Representative (the **"NAS Representative Professionals"**).  The NAS Representative and the NAS Representative Professionals shall at all times have complete access to the Trust Professionals, and shall also have complete access to all information generated by them or

otherwise available to the Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing, reliance on the written opinion of or information provided by any NAS Representative Professional or Trust Professional deemed by the NAS Representative to be qualified as an expert on the particular matter submitted to the NAS Representative shall be full and complete authorization and protection in support of any action taken or not taken by the NAS Representative in good faith and in accordance with the written opinion of or information provided by the NAS Representative Professional or Trust Professional.

(b)    The PI Trust shall promptly reimburse, or pay directly if so instructed, the NAS Representative for all reasonable fees and costs associated with the NAS Representative's employment of NAS Representative Professionals pursuant to this provision in connection with the NAS Representative's performance of its duties under this Trust Agreement and the NAS PI TDP.

(c)    In the event that the NAS Representative retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the NAS Representative and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the NAS Representative and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the NAS Representative and regardless of whether the PI Trust pays such counsel's fees and related expenses.

6.6 **Compensation and Expenses of the NAS Representative.** The NAS Representative shall not receive compensation from the PI Trust for their services as NAS Representative. However, the NAS Representative shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties under this Trust Agreement and the NAS PI TDP. Such reimbursement shall be deemed a Trust Operating Expense. The PI Trust shall include a description of the amounts paid under this section 6.6 in the Quarterly Reports and the Annual Report.

6.7 **Procedures for Consultation With and Obtaining the Consent of the NAS Representative.**

(a) Consultation Process.

(i) In the event the Trustee is required to consult with the NAS Representative pursuant to section 2.2(g) above or on other matters as provided herein, the Trustee shall provide the NAS Representative with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the NAS Representative and the NAS Representative Professionals with such reasonable access to the Trust Professionals as the NAS Representative may reasonably request during the time that the Trustee is considering such matter, and shall also provide the NAS Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii) In determining when to take definitive action on any matter subject to the consultation procedures set forth in this section 6.7(a), the Trustee shall take into consideration the time required for the NAS Representative, if he or she so wishes, to engage and consult with its own independent financial or investment advisors and other NAS Representative

Professionals as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the NAS Representative with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the NAS Representative.

        (b)   <u>Consent Process</u>.

        (i)   In the event the Trustee is required to obtain the consent of the NAS Representative pursuant to section 2.2(h) above, the Trustee shall provide the NAS Representative with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the NAS Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the NAS Representative and the NAS Representative Professionals with such reasonable access to the Trust Professionals as the NAS Representative may reasonably request during the time that the Trustee is considering such action, and shall also provide the NAS Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

        (ii)   The NAS Representative must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and the NAS Representative may agree. The NAS Representative may not withhold its consent unreasonably.  If the NAS Representative decides to withhold its consent, it must explain in detail

its objections to the proposed action.  If the NAS Representative does not advise the Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request (or the additional time period agreed to by the Trustee and the NAS Representative), the NAS Representative's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this section 6.7(b), the NAS Representative continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the NAS Representative shall resolve their dispute pursuant to section 8.15.   However, the burden of proof with respect to the reasonableness of the NAS Representative's objection and withholding of its consent shall be on the NAS Representative.

## ARTICLE VII

## THE FCR

7.1    **Duties.**  The initial FCR shall be the individual identified on the signature pages hereto.  He or she shall serve in a fiduciary capacity, representing the interests of the Holders of future PI/NAS Claims for the purpose of protecting the rights of such persons.  The FCR shall have no fiduciary obligations or duties to any party other than Holders of future PI/NAS Claims. The Trustee must consult with the FCR on matters identified in section 2.2(g) above and on certain other matters provided herein, and must obtain the consent of the FCR on matters identified in section 2.2(h) above.  Where provided in the applicable PI TDP, certain other actions by the Trustee are also subject to the consent of the FCR.  Except for the duties and obligations expressed in this PI Trust Agreement and the documents referenced herein (including the applicable PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the FCR.  To the extent that, at law or in equity, the FCR has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any

beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the FCR expressly set forth in this Trust Agreement and the documents referenced herein (including the PI TDPs).

      **7.2**    **Term of Office**.

      (a)    The FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 7.2(b) below, (iii) his or her removal pursuant to section 7.2(c) below, or (iv) termination of the PI Trust pursuant to section 8.4 below.

      (b)    The FCR may resign at any time by written notice to the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

      (c)    The FCR may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal may be made upon a vote of the Trustee and the PI Committee, and then by order of the Bankruptcy Court on the motion of the Trust or the PI Committee.

      (d)    No successor FCR shall be liable personally for any act or omission of his or her predecessor.  No successor FCR shall have any duty to investigate the acts or omissions of his or her predecessor.  No FCR shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

      (e)    **Appointment of Successor**.  A vacancy caused by resignation or death shall be filled with an individual nominated prior to the effective date of the resignation or the death by the resigning or deceased FCR. A vacancy caused by removal of the FCR based on

inability of the FCR to discharge his or duties due to accident, physical deterioration, or mental incompetence shall be filled with an individual nominated by the FCR prior to the inability. A vacancy caused by removal of the FCR for other reasons shall be filled by a successor selected by the Trustee in consultation with the PI Committee.

**7.3**    **FCR's Employment of Professionals.**

(a)    The FCR may, but is not required to, retain and/or consult Professionals deemed by the FCR to be qualified as experts on matters submitted to the FCR (the "**FCR Professionals**").  The FCR and the FCR Professionals shall at all times have complete access to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the PI Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of gross negligence, reliance on the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the FCR to be qualified as an expert on the particular matter submitted to the FCR shall be full and complete authorization and protection in support of any action taken, or not taken, by the FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.

(b)    The PI Trust shall promptly reimburse, or pay directly if so instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of FCR Professionals pursuant to this provision in connection with the FCR's performance of his or her duties hereunder.

(c)    In the event that the FCR retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the FCR and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the FCR and such counsel shall be deemed to be within the attorney-

28322086.11

client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the FCR and regardless of whether the PI Trust pays such counsel's fees and related expenses.

      **7.4**    **Compensation and Expenses of the FCR.** The FCR shall receive compensation from the PI Trust in the form of payment at the FCR's normal hourly rate for services performed. The PI Trust will promptly reimburse the FCR for all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder. Such reimbursement or direct payment shall be deemed a Trust Operating Expense. The PI Trust shall include a description of the amounts paid under this section 7.4 in the Quarterly Reports and the Annual Report.

      **7.5**    **Procedures for Consultation with and Obtaining the Consent of the FCR.**

         (a)    <u>Consultation Process</u>.

            (i)    In the event the Trustee is required to consult with the FCR pursuant to section 2.2(g) above or on any other matters specified herein, the Trustee shall provide the FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR and the FCR Professionals with such reasonable access to the Trust Professionals as the FCR may reasonably request during the time that the Trustee is considering such matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

            (ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this section 7.5(a), the Trustee shall take into consideration

the time required for the FCR, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors and other FCR Professionals as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the FCR with the initial written notice that such matter is under consideration by the Trustee, unless such period is waived by the FCR.

       (b)     <u>Consent Process</u>.

       (i)     In the event the Trustee is required to obtain the consent of the FCR pursuant to section 2.2(h) above, the Trustee shall provide the FCR with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the FCR and the FCR Professionals with such reasonable access to the Trust Professionals as the FCR may reasonably request during the time that the Trustee is considering such action, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

       (ii)     The FCR must consider in good faith and in a timely fashion any request for his or her consent by the Trustee, and must in any event advise the Trustee in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and FCR may agree.  The FCR may not withhold his or her consent unreasonably.  If the FCR decides to withhold consent, he or she must explain in detail his or her objections to the proposed action.  If the FCR does not advise the Trustee in writing of his or her consent or objections to the proposed

action within thirty (30) days of receiving the notice from the Trustee regarding such consent (or the additional time period agreed to by the Trustee and the FCR), the FCR's consent shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 6.6(b), the FCR continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the FCR shall resolve their dispute pursuant to section 8.15.  However, the burden of proof with respect to the validity of the FCR's objection and withholding of his or her consent shall be on the FCR.

## ARTICLE VIII

## GENERAL PROVISIONS

**8.1**    **Confidentiality.**

(a)    The Trustee, each PI Committee member, the NAS Representative, the FCR, and each successor of the foregoing (each a "**Recipient**") shall, during the period that they serve in such capacity under this Trust Agreement and following either the termination of this Trust Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential any material, non-public information of or pertaining to any Person ("**Relevant Person**") of which the Recipient has become aware in its herein indicated capacity under this Trust Agreement (the "**Confidential Information**"), except to the extent disclosure is (i) in connection with matters contemplated by the Plan, such as the allowance, disallowance or payment of Claims, (ii) authorized by the applicable Relevant Person, in such Relevant Person's discretion, (iii) authorized by the terms of the Plan or the terms of this Trust Agreement (disclosure in accordance with clauses (i)-(iii) of this Section, each a "**Permitted Purpose**"), or (iv) required by, or would facilitate any investigation or prosecution under, applicable law, order, regulation or legal process. In the event that any Recipient is requested or required (by oral

questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Confidential Information, other than for a Permitted Purpose, such Recipient shall furnish only that portion of the Confidential Information so requested or required, and shall exercise good faith efforts, at no material cost to it, to obtain assurance that confidential treatment will be accorded to the Confidential Information so disclosed.

(b)      Notwithstanding the foregoing, in addition to the disclosure of Confidential Information for Permitted Purposes, Recipients may share or disclose Confidential Information with each of the Recipient's Professionals for the purpose of rendering advice and guidance to such Recipient, provided that the Person or entity receiving such disclosure is informed by such Recipient of the confidential nature of such Confidential and agrees to be bound by the provisions of this Section.

(c)      The Trustee shall exercise commercially reasonable efforts, such as anonymization, pseudonymization, and encryption, to protect Confidential Information such that disclosures to the Recipients and any Professionals do not include information that identifies individual persons, unless there is a reasonable purpose that makes disclosure of such identifying information necessary, in which case the Trustee shall implement any additional controls the Trustee in its sole discretion determines is necessary to safeguard the identifying information from unauthorized disclosure, access, or use.

**8.2**      **Common Interest Privilege.** The Trustee, the PI Committee, the NAS Representative, and the FCR, have a "common legal interest" relating to the PI/NAS Claims, the PI Trust, the Plan, the Confirmation Order, this Trust Agreement and the PI TDPs, including without limitation, (i) the formation of the PI Trust, (ii) the retention and direction of Professionals,

(iii) the administration of the PI Trust, (iv) making distributions in accordance with this Trust Agreement and the PI TDPs, and (v) disputing and/or resolving any PI/NAS Claims in accordance with this Trust Agreement and the PI TDPs, (the "**Common Legal Interest Matters**"). Any discussion, evaluation, or other communications and exchanges of information relating to the Common Legal Interest Matters shall at all times remain subject to all applicable privileges, immunities and protections from disclosure, including without limitation, the attorney-client privilege, work-product doctrine and common legal interest privilege. It is the express intent of the Trustee, the PI Committee, the NAS Representative, and the FCR to preserve intact to the fullest extent applicable, and not to waive, by virtue of this Agreement or otherwise, in whole or in part, any and all privileges, protections and immunities.

8.3    **Irrevocability.**    To the fullest extent permitted by applicable law, the Trust is irrevocable.

8.4    **Term; Termination.**

(a)    With the consent of the FCR and the PI Committee, notice to the Reorganized Debtors, and approval by the Bankruptcy Court, the Trustee may select a date to dissolve the Trust (the "**Dissolution Date**") after the occurrence of the following events: (i) all assets available to the PI Trust from the MDT Opioid II have been collected and liquidated; (ii) all PI/NAS Claims duly filed with the Trust have been liquidated and paid to the extent provided in this Trust Agreement and the PI TDPs, or have been disallowed, (iii) the PI Trust NAS Fund has been dissolved and the NAS Representative relieved of his or her duties pursuant to section 6.3(b) herein; (iv) twelve (12) consecutive months have elapsed during which no new PI Claim has been filed with the PI Trust and the Trustee deems it unlikely that new PI Claims will be filed against the PI Trust, and (v) at least five (5) years have elapsed since the Effective Date. The Trustee, with

the consent of the FCR and the PI Committee, may seek approval from the Bankruptcy Court to dissolve the Trust earlier for any other reason.

(b)      By the date that is one year earlier than such date that the Trustee, with the consent of the FCR and the PI Committee, selects or the Bankruptcy Court approves as the Dissolution Date, the Trustee, in consultation with the PI Committee and the FCR, shall develop wind-down procedures, including a program for providing notice to all Holders of PI/NAS Claims of the decision to dissolve the PI Trust and the reservation of funding for the wind-down.

(c)      On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the wind-up of the PI Trust's affairs by the Trustee and payment of all the PI Trust's liabilities have been provided for as required by applicable law including Section 3808 of the DST Act, all monies remaining in the PI Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustee using his or her reasonable discretion; *provided, however,* that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the cure of, or other relief for individuals suffering from opioid use disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 8.4(c) cannot be modified or amended.

(d)      Following the dissolution and distribution of the assets of the PI Trust, the PI Trust shall terminate and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the PI Trust to be filed in accordance with the Act.  Notwithstanding anything to the

contrary contained in this Trust Agreement, the existence of the PI Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

  **8.5** **Amendments.** The Trustee, after consultation with the PI Committee, the NAS Representative, and the FCR, and subject to the consent of the PI Committee and the FCR, may modify or amend this Trust Agreement.  The Trustee, after consultation with the PI Committee and the FCR, and subject to the consent of the PI Committee, NAS Representative and the FCR, may modify or amend the respective PI TDPs; *provided, however,* that no amendment to the PI TDPs shall be inconsistent with the provisions limiting amendments to that document provided therein and provided further that no modification or amendment of the PI TDPs shall (i) have a material and adverse effect on PI Claimants' entitlements to distributions or (ii) be inconsistent with any of the provisions herein.  Any modification or amendment made pursuant to this Section must be done in writing.  Notwithstanding anything contained in this Trust Agreement or the PI TDPs to the contrary, neither this Trust Agreement, the PI TDPs, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the efficacy or enforceability of the Opioid Permanent Channeling Injunction or any other injunction or release issued or granted in connection with the Plan, (ii) the PI Trust's qualified settlement fund status under the QSF Regulations, or (iii) without the written consent of Reorganized Mallinckrodt, any rights, benefits, or protections provided to the Reorganized Debtors under the Plan, and (b) the scope and terms of the release provided to the Reorganized Debtors and the Protected Parties in the Release, or the obligation of the PI Trust to obtain a properly executed Release as a pre-condition to a PI Claimant receiving a distribution from the PI Trust.  Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

8.6 **Meetings**. The Delaware Trustee shall not be required nor permitted to attend meetings relating to the PI Trust.

8.7 **Severability**. Should any provision in this Trust Agreement or in the PI TDPs be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement or the respective PI TDPs.

8.8 **Notices**. Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the PI Trust with respect to his or her PI/NAS Claim.

(a) Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the PI Trust through the Trustee:

Mallinckrodt Opioid Personal Injury Trust:

Edgar C. Gentle, III, Esq.
Gentle, Turner, Sexton & Harbison, LLC
501 Riverchase Parkway East, Suite 100
Hoover, AL 35244
E-mail: egentle@gtandslaw.com

With a copy to:

[_____]

28322086.11

-57-

To the Delaware Trustee:

[_____]

To the PI Committee:

Sean Higgins, Esq.
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Email: shiggins@andrewsthornton.com

Troy Tatting, Esq.
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Email: ttatting@askllp.com

Rochelle Guiton, Esq.
D. Miller & Associates, PLLC
2610 West Sam Houston Pkwy Suite 200
Houston, TX 77042
Email: rochelle@dmillerlaw.com

28322086.11

To the NAS Representative:

Celeste Brustowicz, Esq.
Cooper Law Firm L.L.C.
1525 Religious Street
New Orleans, LA 70130
E-mail: cbrustowicz@clfnola.com

With a copy to:

Scott R. Bickford, Esq.
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Email: srb@mbfirm.com

To the FCR:

Roger Frankel, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rfrankel@frankelwyron.com

With a copy to:

Richard H. Wyron, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rwyron@frankelwyron.com

And a copy to:

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Email: jpatton@ycst.com

To the Reorganized Debtors:

[_____]

With a copy to:

[＿＿＿＿＿]

(b)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**8.9     Successors and Assigns.**  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the PI Trust, the Trustee, and the Reorganized Debtors, and their respective successors and assigns, except that neither the Debtors, the PI Trust, the Trustee, nor the Reorganized Debtors may assign or otherwise transfer any of its, or their, rights or obligations, if any, under this Trust Agreement except, in the case of the PI Trust and the Trustee, as contemplated by Section 2.1 above.

**8.10     Limitation on Claim Interests for Securities Laws Purposes.**  PI/NAS Claims, and any interests therein, [other than encumbrances on proceeds of PI Claims], (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 8.10 shall not apply to the Holder of a claim that is subrogated to a PI/NAS Claim as a result of its satisfaction of such PI/NAS Claim.

**8.11     Entire Agreement; No Waiver.**  The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power

28322086.11

or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**8.12**    **Headings.**  The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**8.13**    **Governing Law.**  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the parties hereto intend that the provisions hereof shall control and there shall not be applicable to the PI Trust, the Trustee, the Delaware Trustee, the PI Committee, the NAS Representative, the FCR, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (d) fees or other sums payable to trustees, officers, agents or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other

28322086.11

manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, the PI Committee, or the FCR set forth or referenced in this Trust Agreement.  Section 3540 of the DST Act shall not apply to the Trust.

Administration of the PI TDPs shall be governed by, and construed in accordance with, the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

**8.14** **Settlors' Representative and Cooperation.**  The Debtors are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors by the Trustee in connection with the Trust Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Trust Agreement.

**8.15** **Dispute Resolution.**  Any disputes that arise under this Trust Agreement or under the PI TDPs among the parties hereto shall be resolved by submission of the matter to binding arbitration; provided, however, that if one party objects to binding arbitration, the matter shall be submitted to the Bankruptcy Court for a judicial determination; further provided, however, that any dispute involving adjustment of the point value shall be resolved in the first instance by the ADR process. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.  In any case, if the

dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the PI Committee), Section 6.7(b) (in the case of the NAS Representative), or Section 7.5(b) (in the case of the FCR), the burden of proof shall be on the party or parties who withheld consent to show that such party's objection and withholding of consent was reasonable.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. If the Trustee determines that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustee shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court.

8.16    **Enforcement and Administration.**  The provisions of this Trust Agreement and the PI TDPs shall be enforced by the Bankruptcy Court pursuant to the Plan.  The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes hereunder not resolved by alternative dispute resolution in accordance with Section 8.15 above. The Bankruptcy Court and the courts of the State of Delaware shall have the exclusive jurisdiction with respect to any action relating to or arising from the Trust.

8.17    **Effectiveness.**  This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

8.18    **Rules of Interpretation.**  For purposes of this Trust Agreement, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular section, subsection or clause contained in this Trust

Agreement; (c) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (d) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import. In this Trust Agreement and the PI TDPs the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

      **8.19**   **Counterpart Signatures.**  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by facsimile or portable document format (pdf)), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date set forth above.

**SETTLORS:**

**MALLINCKRODT CORPORATION**

By:_____

Title:

**TRUSTEE**

By:_____
Name:

**DELAWARE TRUSTEE**
**[_____]**

By:_____
 Name:
Title:

**PI COMMITTEE**

**NAS REPRESENTATIVE**

_____

_____

Name:  Sean Higgins, Esq.

Name:  Celeste Brustowicz, Esq.

_____

**FUTURE CLAIMANTS'**
**REPRESENTATIVE**

Name: Troy Tatting, Esq.

_____

_____

Name:  Rochelle Guiton, Esq.

Name:  Roger Frankel, Esq.

**Consented to by:**
**AD HOC GROUP OF PERSONAL**
**INJURY VICTIMS**

**Consented to by:**
**AD HOC COMMITTEE OF NAS**
**CHILDREN**

_____

_____

Name:

Name:

28322086.11

**MALLINCKRODT OPIOID**

**PERSONAL INJURY TRUST AGREEMENT**

This Mallinckrodt Opioid Personal Injury Trust Agreement (this "**Trust Agreement**"), dated as of [DATE] and effective as of the Effective Date,[1] is entered into, pursuant to the *Fourth Amended Joint Plan ~~of~~Of Reorganization ~~of~~(With Technical Modifications) Of Mallinckrodt ~~PLC and its~~Plc And Its Debtor Affiliates Under Chapter 11 ~~of the~~Of The Bankruptcy Code*, dated as of [~~date~~February 18, 2022 and confirmed by the Bankruptcy Court on March 2, 2022 [Docket No. 6660] (as such may be amended, modified, or supplemented, the "**Plan**"),[2] by Mallinckrodt and its Debtor affiliates (collectively referred to as the "**Debtors**" or "**Settlors**"); the Future Claimants' Representative (the "**FCR**"); [name] (the "**Delaware Trustee**"); the Personal Injury Trustee identified on the signature pages hereof (the "**Trustee**"); the members of the Trust Advisory Personal Injury Committee identified on the signature pages hereof (the "**PI Committee**"); and the NAS Representative (defined below); and with the consent of the Ad Hoc Group of Personal Injury Victims and the Ad Hoc Committee of NAS Children (the "**Ad Hoc Committees**");

**WHEREAS**, the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code in the case filed in the United States Bankruptcy Court for the District of Delaware, administered and known as *In re Mallinckrodt PLC, et al.,* No. 20-12522 (JTD); and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

[2] [**NTD: conform terms to defined terms in plan**]



WHEREAS, the Bankruptcy Court has entered the Confirmation Order confirming the Plan; and

WHEREAS, the Plan provides, *inter alia,* for the creation of a PI Trust, as provided herein to be called the Mallinckrodt Opioid Personal Injury Trust (the "**PI Trust**"); and

WHEREAS, pursuant to the Plan, the PI Trust shall be established to (i) assume all liability for the PI/NAS Claims that are channeled to the PI Trust,[32] (ii) collect distributions made on account of the PI Claims Share and the NAS PI Claims Share in accordance with the PI Trust Documents, (iii) administer the PI/NAS Claims, (iv) make distributions to Holders of Allowed PI/NAS Claims in accordance with the PI Trust Documents, and (v) carry out such other matters as are set forth in the PI Trust Documents; and

WHEREAS, the Plan provides that, as of the Effective Date, all PI/NAS Claims, and all of Mallinckrodt's liabilities for the PI/NAS Claims, shall automatically, and without further act, deed or court order, be channeled to and assumed by the PI Trust, which shall resolve the PI/NAS Claims under the PI Trust Documents; and

WHEREAS, pursuant to the Plan, the Trust is to use its assets and income to resolve and satisfy, if qualified, all PI/NAS Claims that are channeled to the Trust ("**PI/NAS Claims**," which include (a) the PI Opioid Claims and the Future PI Opioid Claims (collectively, the "**PI Claims**,**"**), and (b) the NAS PI Opioid Claims and the Future NAS PI Opioid Claims (collectively, the "**NAS PI Claims**"); and shall (i) hold, manage, and invest all funds and other assets received by the PI Trust from the MDT Opioid II for the benefit of the beneficiaries of the PI Trust; and (iii) administer, process, resolve, and liquidate all PI/NAS Claims that are Allowed

---

[32] In this Trust Agreement, whenever the terms "PI Claim," "NAS PI Claim," and "PI/NAS Claim", are used, those terms refer only to PI Claims, NAS PI Claims, and PI/NAS Claims, respectively, that are channeled to the PI Trust pursuant to the Plan.



by the Trustee in accordance with (A) the Mallinckrodt Opioid PI Trust Distribution Procedure for Non-NAS PI Claims (the "**Non-NAS PI TDP**"), and (B) the Mallinckrodt Opioid PI Trust Distribution Procedure for NAS PI Claims (the "**NAS PI TDP**," and together with the Non-NAS PI TDP, the "**PI TDPs**");

**WHEREAS,** it is the intent of the Debtors, the Trustee, the PI Committee, the NAS Representative, and the FCR that the Trust will value the PI/NAS Claims, and be in a financial position to pay Holders of Allowed PI Claims and Allowed NAS PI Claims, in accordance with the terms of this Trust Agreement and the respective PI TDPs;

**WHEREAS,** all rights of the Holders of Non-NAS PI Claims ("**Non-NAS PI Claimants**") and all rights of the Holders of NAS PI Claims ("**NAS PI Claimants**", collectively with the Non-NAS PI Claimants, the "**PI Claimants**")) arising under this Trust Agreement and the PI TDPs shall vest upon the Effective Date; and

**WHEREAS,** pursuant to the Plan, the PI Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-~~1~~-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"), and to be treated consistently for state and local tax purposes to the extent applicable; and

**WHEREAS**, the Bankruptcy Court has determined that the PI Trust and the Plan satisfy all the prerequisites for issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code with respect to any and all Non-NAS PI Claims and NAS PI Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE,** it is hereby agreed as follows:



# ARTICLE I

# AGREEMENT OF TRUST

**1.1** **Creation and Name.** The Debtors as Settlors hereby create a trust known as the "Mallinckrodt Opioid Personal Injury Trust," which is the PI Trust provided for and referred to in the Plan. The Trustee of the PI Trust may transact the business and affairs of the PI Trust in the name of the PI Trust, and references herein to the PI Trust shall include the Trustee acting on behalf of the PI Trust. It is the intention of the parties hereto that the trust created hereby constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the **"DST Act"**) and that this document constitutes the governing instrument of the PI Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State.

**1.2** **Purpose.** The purpose of the PI Trust is to assume all liabilities and responsibility for all PI/NAS Claims, to resolve and make distributions in respect of Allowed Non-NAS PI Claims and Allowed NAS PI Claims in accordance with the Non-NAS PI TDP and NAS PI TDP, respectively, use the PI Trust Assets and income to meet its obligations, as well as to, among other things:

(a) collect the Opioid MDT II Initial Distribution and any Opioid MDT II Supplemental Distributions on account of the PI Claims Share and the NAS PI Claims Share in accordance with the Plan and the PI Trust Documents;

(b) direct the administration, processing, liquidation and payment of all Non-NAS PI Claims and NAS PI Claims in accordance with the Plan, the PI TDPs, and the Confirmation Order;



(c)      preserve, hold, and manage the assets of the PI Trust for use in paying and satisfying Allowed Non-NAS PI Claims and Allowed NAS PI Claims;

(d)      qualify at all times as a qualified settlement fund;

(e)      establish a fund to make distributions on account of Allowed Non-NAS PI/NAS Claims (the "**PI Trust Non-NAS Fund**") and a fund to make distributions on account of Allowed NAS PI/NAS Claims (the "**PI Trust NAS Fund**"), and make such distributions in accordance with the Plan, the PI TDPs, and the Confirmation Order;

(f)      to pay present and future Allowed NAS PI Claims in substantially the same manner, and to pay present and future Allowed Non-NAS PI Claims in substantially the same manner;

(g)      pay assessments to the extent required by Article IV.X.8 of the Plan to fund the Common Benefit Escrow and then, upon its establishment, the Common Benefit Fund in accordance with the Plan.

(h)      pay Holders of Allowed PI/NAS Claims in accordance with this Trust Agreement, the PI TDPs, and any LRP (defined below) the Trustee may establish, such that Holders of Allowed PI/NAS Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Allowed PI/NAS Claims;

(i)      fund the PI Trust NAS Fund and the PI Trust Non-NAS Fund and make distributions therefrom to Holders of Allowed NAS PI Claims and Allowed Non-NAS PI Claims, respectively, in accordance with the Plan, the PI TDPs, the LRP, and the Confirmation Order;

(j)       use the PI Trust's assets and income to pay any and all fees, costs, expenses, taxes, disbursements, debts, or obligations of the PI Trust incurred from the operation



and administration of the PI Trust (including in connection with the PI TDPs and the LRP) and

management of the PI Trust Assets (together, the "**Trust Operating Expenses**") in accordance

with the PI Trust Documents; and

(k)     make distributions on Allowed PI/NAS Claims (together with the Trust

Operating Expenses, the "**Trust Expenses**").

1.3     **Transfer of Assets.**  Pursuant to and in accordance with the Plan, the Trust has

received, on the Effective Date or as soon as reasonably practicable thereafter, the Opioid MDT

II Initial Distribution and the right to receive any Opioid MDT II Subsequent Distributions

(together, the "**PI Trust Assets**") to fund the PI Trust and settle or discharge all PI/NAS Claims.

In all events, the PI Trust Assets or any other assets to be transferred to the PI Trust under the

Plan will be transferred to the PI Trust free and clear of all Claims, interests, Liens and other

encumbrances and liabilities of any kind by the Debtors, the Reorganized Debtors, the other

Protected Parties, any creditor, or other entity except as otherwise provided in the PI Trust

Documents.

1.4     **Allocation of Funds.**

(a)     Under the Plan, the PI Trust will receive the PI Opioid Claims Share and

the NAS PI Opioid Claims Share. The PI Trust shall establish the following: (i) the PI Trust

NAS Fund; and (ii) the PI Trust Non-NAS Fund.

(b)     The Trust Operating Expenses shall be paid pro rata from both the PI

Trust NAS Fund and the PI Trust Non-NAS Fund until the PI Trust NAS Fund is exhausted and

dissolved, after which time Trust Operating Expenses shall be paid solely from the PI Trust

Non-NAS Fund; provided, however, that fees of professionals retained by the PI Committee and

reimbursement of expenses relating to the PI Committee and its professionals shall be paid from


28322086.8
28322086.11

the PI Trust Non-NAS Fund, and fees of professionals retained by the NAS Representative and reimbursement of expenses relating to the NAS Representative and its professionals shall be paid from the PI Trust NAS Fund.

      **1.5**    <u>**Acceptance of Assets and Assumption of Liabilities.**</u>

      (a)    In furtherance of the purposes of the PI Trust, the PI Trust hereby expressly accepts the transfer to the PI Trust of the PI Trust Assets and any other transfers contemplated by the Plan and the PI Trust Documents in the time and manner as, and subject to the terms, contemplated in the Plan and the PI Trust Documents.

      (b)    In furtherance of the purposes of the PI Trust, the PI Trust expressly assumes all liabilities and responsibility for all PI/NAS Claims, and neither the Reorganized Debtors nor any of the Protected Parties specified in the Plan shall have any further financial or other responsibility or liability therefor.  Except as otherwise provided in this Trust Agreement and the PI TDPs, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or would have had under applicable law; <u>provided</u>, <u>however</u>, that such claims, defenses or rights may not be asserted against any Protected Party.

      (c)    Notwithstanding anything to the contrary herein, no provision herein or in the PI TDPs shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations.

      (d)    Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Opioid Permanent Channeling Injunction, or



(ii) subject to the provisions of Section 1.5(b) above, the Trust's assumption of all liability for PI/NAS Claims.

(e)     To the extent required by the DST Act, the beneficial owners (within the meaning of the DST Act) of the PI Trust (the **"Beneficial Owners"**) shall be deemed to be the Holders of PI/NAS Claims; provided that (i) the Holders of PI/NAS Claims, as such Beneficial Owners, shall have only such rights with respect to the PI Trust and its assets as are set forth in the PI TDPs, and (ii) no greater or other rights, including upon dissolution, liquidation or winding up of the PI Trust, shall be deemed to apply to the Holders of PI/NAS Claims in their capacity as Beneficial Owners.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

### 2.1    Powers.

(a)     The Trustee is and shall act as the fiduciary to the PI Trust in accordance with the provisions of this Trust Agreement and the Plan.  The Trustee shall, at all times, administer the PI Trust and the PI Trust Assets in accordance with the purposes set forth in section 1.2 above.  Subject to the limitations set forth in this Trust Agreement, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the PI Trust, including, without limitation, each power expressly granted in this section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.



(b)      Except as required by applicable law or otherwise specified herein, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)      Without limiting the generality of Section 2.1(a) above, and except as limited below, the Trustee shall have the power to:

(i)      receive and hold the PI Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the PI Trust Assets;

(ii)      invest the monies held from time to time by the PI Trust, in consultation with the PI Committee, the FCR, and the financial advisor for the PI Trust (the "**Financial Advisor**");

(iii)      sell, transfer, or exchange, in the ordinary course of business, any or all of the PI Trust Assets at such prices and upon such terms as the Trustee may consider proper, consistent with the other terms of this Trust Agreement;

(iv)      enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the PI Trust to operate;

(v)      pay liabilities and expenses of the PI Trust;

(vi)      establish the PI Trust NAS Fund, the PI Trust Non-NAS Fund, and such other funds, reserves, and accounts within the PI Trust estate, as deemed by the Trustee to be useful in carrying out the purposes of the PI Trust;

(vii)      subject to the terms of the Plan, sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;



(viii)    initiate, prosecute, defend, and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary by the Trustee to fulfill the purposes of the PI Trust;

(ix)    establish, supervise, and administer the PI Trust in accordance with this Trust Agreement and the PI TDPs;

(x)    establish a lien resolution program ("**LRP**") and appoint and oversee the actions of a lien resolution agent to carry out the LRP;

(xi)    in any court, defend, and assert counterclaims against, PI/NAS Claims brought against the PI Trust by PI Claimants who have "opted out" of the applicable PI TDP, bring one or more consolidated actions against PI Claimants who elect to liquidate their PI/NAS Claims by commencing separate lawsuits in the tort system, seek to consolidate multiple lawsuits commenced by such PI Claimants, and seek to consolidate discovery propounded by such PI Claimants or by the PI Trust in multiple lawsuits commenced by such PI Claimants;

(xii)    appoint, hire, or engage such officers, employees, advisors, counsel, consultants, independent contractors, representatives and agents to provide such legal, financial, accounting, investment, auditing, forecasting, claims administration, lien resolution, and other services ("**Professionals**") as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust and the PI TDPs;

(xiii)    select, engage, and pay reasonable compensation to one or more Appeals Masters pursuant to section 4.12 below;


28322086.8
28322086.11

(xiv)   pay reasonable compensation to Professionals engaged by the PI Trust;

(xv)   as provided below, (a) compensate the Trustee, the Delaware Trustee, the FCR, the PI Committee members, and the NAS Representative, as well as their respective Professionals, and (b) reimburse the Trustee, the Delaware Trustee, the PI Committee members, the NAS Representative, and the FCR, as well as their respective Professionals, for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xvi)   [pay reimbursement to the Ad Hoc Committees, in an aggregate amount not to exceed $— **2 million**, for (i) reasonable costs advanced prior to the Effective Date to the proposed Trustee and his proposed Financial Advisor for work done in connection with the design and implementation of the PI Trust and PI TDPs, in an amount that is subject to review and approval of the PI Committee, the NAS Representative, and the FCR, and (ii) amounts ordered by the Bankruptcy Court consistent with Section IV.X.8.F of the Plan;]

(xvii)   execute and deliver such instruments as the Trustee considers proper in administering the Trust;

(xviii)   enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xix)   in accordance with section 4.6 below, defend, indemnify, and hold harmless (and**, if practicable and reasonable,** purchase insurance indemnifying) (A) the Trustee, the Delaware Trustee, the members of the PI Committee, the NAS Representative, ~~and the~~**the Ad Hoc Group of Personal Injury Victims and the Ad Hoc Committee of NAS**



**Children (collectively herein, the "Ad Hoc Committees", which shall have no role after the effective date for the Trust), and the** FCR, ~~and~~ (B) the Appeals Master(s), and Professionals of the PI Trust (including the Claims Administrator and its staff and agents), the PI Committee, the NAS Representative, or the FCR (the "**Additional Indemnitees**"), **and (C) the Professionals of the Ad Hoc Committees,** to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, and Professionals. Notwithstanding anything to the contrary herein, no party shall be indemnified in any way for any liability, expense, claim, damage or loss for which he or she is liable under **under** section 4.4 below;

(xx)    [~~in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the PI Trust, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud under section 4.4 herein, indemnify the Ad Hoc Committees up to an amount not to exceed $____ for the Ad Hoc Group of Personal Injury Victims and $____ for the Ad Hoc Committee of NAS Children, which amounts shall be held in reserve from the respective PI Trust NAS Fund and the PI Trust Non-NAS Fund until the Dissolution Date (as defined below) of the PI Trust, at which time the indemnity obligation will terminate;~~**RESERVED]**

(xxi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the PI Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in section 4.4 below;

(xxii)   consult with the PI Committee, the NAS Representative, and the FCR at such times and with respect to such issues relating to the conduct of the PI Trust as the Trustee considers desirable in addition to such matters as are prescribed in this Trust Agreement or in the PI TDPs;

(xxiii)   make, pursue (by litigation or otherwise), collect, compromise, settle, or otherwise resolve in the name of the PI Trust, any claim, right, action, or cause of action included in the PI Trust Assets, including, but not limited to, insurance recoveries, before any court of competent jurisdiction; and

(xxiv)   contract for the establishment and continuing maintenance of a website (the "**Trust Website**") to publish the claims materials and the Annual Report, and aid in communicating information to the Beneficiaries and their counsel or other authorized persons.

(d)   The Trustee shall not have the power to guarantee any debt of other persons.

(e)   The Trustee agrees to take the actions of the PI Trust required hereunder.

(f)   The Trustee shall give the PI Committee and the FCR reasonably prompt notice of any material act performed or taken pursuant to sections 2.1(c)(i) above, and any act proposed to be performed or taken pursuant to section 2.2(g) below. The Trustee shall also provide reasonably prompt notice to the NAS Representative of material actions performed or taken under section 2.1(c)(i) or 2.2(g) that affect the PI Trust NAS Fund, the implementation of the NAS PI TDP, or the NAS PI Claims.

**2.2** <u>**General Administration**</u>.

(a)   The Trustee shall act in accordance with this Trust Agreement, the Plan, the Confirmation Order, and the PI TDPs.  In the event of a conflict between the terms or



provisions of the Plan and this Trust Agreement or the PI TDPs, the terms of the Plan shall control.  For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)     The Trustee shall (i) timely file such income tax and other returns and statements required to be filed, and shall timely pay all taxes required to be paid by the PI Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the PI Trust as a qualified settlement fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the PI Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

(c)     The Trustee may withhold, and shall pay to the appropriate tax authority all amounts required by law to be withheld pursuant to the Internal Revenue Code or any provision of any applicable foreign, state, or local tax law with respect to any payment or distribution to the Holders of Allowed PI/NAS Claims.  All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Holders of Allowed PI/NAS Claims for all purposes of this Trust Agreement.  The Trustee shall be authorized to collect tax information, which may include applicable IRS Form W-8 or IRS Form W-9, from the Holders of Allowed PI/NAS Claims (including tax identification numbers) as reasonably requested by the Trustee, readily available to the Holders of the Allowed PI/NAS Claims and necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement.  The Trustee may refuse to make some or all of a distribution to a Holder of an Allowed PI/NAS Claim that fails to furnish such information in a timely fashion, and until such information is delivered may


28322086.8
28322086.11

treat such Holder's Allowed PI/NAS Claim, as disputed; provided, however, that, upon the delivery of such information by a Holder of an Allowed PI/NAS Claim, the Trustee shall make such distribution to which such Holder is entitled, without additional interest occasioned by such Holder's delay in providing tax information.  Notwithstanding the foregoing, if a Holder of an Allowed PI/NAS Claim fails to furnish any tax information reasonably requested by the Trustee before the date that is six months after the request is made (subject to extension in the discretion of the Trustee if such Holder demonstrates to the reasonable satisfaction of the Trustee that such Holder's failure to provide such tax information is due to one or more taxing authorities' failure to furnish information necessary to respond to the Trustee's reasonable request to such Holder despite such Holder's request for such information), the amount of such distribution shall irrevocably revert to the PI Trust, and any Allowed PI/NAS Claim with respect to such distribution shall be discharged and forever barred from assertion against the PI Trust or its property.

(d)     The Trustee shall be responsible for all of the PI Trust's tax matters, including without limitation, tax audits, claims, defenses and proceedings. The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the PI Trust for all taxable periods through the dissolution of the PI Trust. The Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the PI Trust that is required by any governmental unit and be responsible for payment, out of the PI Trust Assets, of any taxes imposed on the PI Trust or its assets.

(e)     The Trustee shall provide the following reports:

(i)     The Trust shall cause to be prepared and provide to the PI Committee, the NAS Representative, and the FCR quarterly reports on the financial condition of


28322086.8
28322086.11

the PI Trust, including a report on the investments and accounts of the PI Trust, and the Trust Operating Expenses ("**Quarterly Reports**"). The Quarterly Reports shall include quarterly statements on all items required to be included in the Annual Report (defined below).

(ii)     The Trust shall cause to be prepared and provide to the PI Committee, the NAS Representative (as applicable to the NAS PI TDP), and the FCR monthly reports on the status of claims submitted to and processed, paid or resolved by the PI Trust.

(iii)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each calendar year, an annual report (the "**Annual Report**"). The Annual Report shall contain financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims.

(iv)     The Annual Report shall also include an aggregate summary regarding the number and type of claims disposed of during the period covered by the financial statements.

(v)     The Trustee shall provide a copy of such Annual Report to the PI Committee, the NAS Representative, the FCR, and the Office of the United States Trustee for the District of Delaware when such reports are filed with the Bankruptcy Court. The Annual Report filed with the Bankruptcy Court shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court. The PI Trust shall also publish the Annual Report on the Trust Website.



(f)     In consultation with the PI Committee, the NAS Representative, and the FCR, the Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year and the succeeding four fiscal years.  The budget and cash flow projections shall include a description of the amounts the PI Trust anticipates spending on Trust Operating Expenses and payments to Holders of Allowed PI/NAS Claims.  The Trustee shall provide a copy of the budget and cash flow projections to the PI Committee, the NAS Representative, and the FCR.

(g)     The Trustee shall consult with the PI Committee, the NAS Representative, and the FCR (i) on the general implementation and administration of the PI Trust; (ii) on the general implementation and administration of the PI TDPs; and (iii) on such other matters as may be required under this Trust Agreement and the PI TDPs.

(h)     The Trustee shall be required to obtain the consent of the PI Committee (as applicable), the NAS Representative (as required by or as applicable to the administration of the NAS PI TDP), and the FCR pursuant to the Consent Process set forth in sections 5.7(b), 6.7(b), and 7.5(b) below, in addition to any other instances elsewhere enumerated, in order:

(i)     clarify the criteria for determining, to the extent such clarification is necessary, (A) an Award (as defined in the NAS PI TDP) as set forth in the NAS PI TDP and (B) the Base Payment and Level Awards (each as defined in the Non-NAS PI TDP) as set forth in the Non-NAS PI TDP;

(ii)     clarify the initial qualification requirements, to the extent such clarification is necessary, described in (A) the NAS PI TDP and (B) the Non-NAS PI TDP;

(iii)     to determine, establish, or change the Payment Amount, Point Value and Recovery Percentage described in the respective PI TDPs;


28322086.8
28322086.11

(iv)     to change, subject to court approval, the evidentiary criteria set forth in the respective PI TDPs;

(v)     determine, establish, or change the types of evidence required for (A) competent evidence as defined and described in the NAS PI TDP and (B) a Qualifying Opioid described in the Non-NAS PI TDP;

(vi)     to establish and/or to change the claims materials to be provided to Holders of PI/NAS Claims under the respective PI TDPs;

(vii)     to change the form of release to be provided to PI Claimants pursuant to the PI TDPs;

(viii)     to terminate the PI Trust pursuant to section 8.4 below;

(ix)     to exhaust any remaining funds in the PI Trust NAS Fund and to dissolve the PI Trust NAS Fund, with consent of the NAS Representative and the FCR;

(x)     to exercise any consent or consultation right (to the extent the PI Trustee has any such right) (a) with respect to a proposed settlement of the liability of any insurer under any insurance policy or legal action related thereto or (b) pursuant to the terms of the trust agreement or trust distribution procedures of Opioid MDT II;

(xi)     to change the compensation of the Trustee, the Delaware Trustee, the FCR, the PI Committee members, the Claims Administrator, or the PI LRP Administrator, other than to reflect cost-of-living increases or to reflect changes approved by the Bankruptcy Court as otherwise provided herein;

(xii)     to take actions out of the ordinary course to minimize any tax on the PI Trust Assets, provided that no such action prevents the PI Trust from qualifying as a



qualified settlement fund within the meaning of the QSF Regulations or requires an election for

the PI Trust to be treated as a grantor trust for tax purposes;

(xiii)   to sell or exchange PI Trust Assets outside the ordinary course of

Trust business;

(xiv)   to amend any provision of this Trust Agreement or the respective

PI TDPs in accordance with the terms thereof;

(xv)   to contract with a claims resolution organization or other entity that

is not specifically created or authorized by this Trust Agreement or the PI TDPs; or

(xvi)   if and to the extent required by the PI TDPs or the LRP, disclose

any information, documents, or other materials to preserve, litigate, resolve or settle coverage, or

comply with an applicable obligation under an insurance policy or settlement agreement pursuant

to the PI TDPs or the LRP.

(i)   The Trustee shall meet with the PI Committee, the NAS Representative,

and the FCR no less often than quarterly.  The Trustee shall meet in the interim with the PI

Committee, the NAS Representative, and the FCR when so requested by any of them.  Meetings

may be held in person, by telephone or video conference call, or by a combination of the two.

(j)   The Trustee, upon notice from either the PI Committee, the NAS

Representative, or the FCR, if practicable in view of pending business, shall at his or her next

meeting with the PI Committee, the NAS Representative, and the FCR consider issues submitted

by the PI Committee, the NAS Representative, or the FCR.  The Trustee shall keep the PI

Committee, the NAS Representative, and the FCR reasonably informed regarding all aspects of

the administration of the PI Trust.



2.3 **Claims Administration.** The Trustee shall promptly proceed to implement the PI TDPs.

2.4 **Assets Available for Payments to Holders of Allowed PI/NAS Claims**. The amount of the PI Trust Assets available to make settlement payments to Holders of Allowed PI/NAS Claims shall be subject to deductions for the Trust Operating Expenses and the Common Benefit Escrow/Common Benefit Fund assessments described in Section 2.5 hereof.

2.5 **Common Benefit Escrow/Common Benefit Fund Assessments**. Upon the establishment of a Common Benefit Escrow on the Effective Date, the PI Trust shall fund the Common Benefit Escrow by assessments of five percent (5%) of each distribution made by the PI Trust in accordance with this Trust Agreement and the PI TDPs. Upon the establishment of the Common Benefit Fund by order entered by the MDL Court (the "**MDL Order**"), (i) the amounts held by the Common Benefit Escrow and all subsequent assessments of five percent (5%) of each distribution made by the PI Trust shall be transferred to and distributed in accordance with the MDL Order and (ii) the PI Trust shall fund the Common Benefit Fund by assessments equal to five percent (5%) of each distribution made by the PI Trust in accordance with this Trust Agreement and the PI TDPs (the "**Common Benefit Assessments**"). Such payments shall be made on a reasonable periodic basis to be agreed by the Governmental Plaintiff Ad Hoc Committee, the MSGE Group, and the Trustee. Nothing in Article IV.X.8 of the Plan or this Trust Agreement shall impair or otherwise affect any fee contract that is not a contingency fee contract between the Ad Hoc Group of Individual Victims and its professionals, or between the NAS Committee and its professionals. Except as expressly set forth in Article IV.X.8 of the Plan, nothing in the Plan shall impair or otherwise affect any contingency fee contract between any Holder of a PI Claim (or any ad hoc group of Holders of PI Claims) and



such Holder's (or ad hoc group's) counsel.  To the extent a Holder of an NAS PI Claim, a Non-NAS PI Claim, or any ad hoc group of holders thereof has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from distributions under the Plan shall be reduced by the full amount payable under Article IV.X.8. of the Plan.  However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding forty percent (40%) of the amount payable under Article IV.X.8. of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel.

2.6    **Lien Resolution Program**.  The Trustee may implement an LRP and may retain a third-party lien-resolution administrator (the **"PI LRP Administrator"**) under the LRP.  If retained, the PI LRP Administrator is authorized to (i) identify and coordinate with potential lien holders the PI Claimants, (ii) determine each final lien amounts and holdbacks necessary on account of such lien amounts, and (iii) perform such other duties as provided in the LRP.

## ARTICLE III

## ACCOUNTS,  FINANCIAL ADVISOR, INVESTMENTS, AND PAYMENTS

3.1    **Accounts.**

(a)    The Trustee may, from time to time, create such accounts and reserves within the PI Trust estate as he or she may deem necessary, prudent, or useful in order to provide for the payment of Trust Expenses and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(b)    The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such


28322086.8
28322086.11

account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account and the payments from each such account in the Quarterly Reports and the Annual Report.

      **3.2**    **Financial Advisor.**

      (a)    The Trust shall engage a Financial Advisor, with the consent of the PI Committee, the NAS Representative, and the FCR. The Financial Advisor shall be paid reasonable compensation in accordance with the PI Trust's annual budget.

      (b)    The Financial Advisor shall be responsible for determining the available assets of the PI Trust and, under the direction of the Trustee, for (i) overseeing the investment of all funds paid to and held by the PI Trust, (ii) monitoring the assets and liabilities of the PI Trust, (iii) providing investment guidance to the PI Trust, (iv) overseeing the preparation of financial statements, and (v) preparing accounting statements and responding to audits.

      (c)    At the direction of the Trustee, the Financial Advisor shall prepare projections of the Point Value (as defined in the Non-NAS PI TDP) and the amount of the Award (as defined in the NAS PI TDP). The Financial Advisor shall have reasonable access to all data and reports necessary to perform the tasks of the Financial Advisor.

      (d)    The Trustee, in consultation with the Claims Administrator, the PI Committee and the FCR, shall provide direction to the Financial Advisor regarding liquidity needs of and tax planning for the PI Trust. The Trustee shall supervise the Financial Advisor to ensure that the investment management and other tasks assigned to the Financial Advisor are performed in accordance with this Trust Agreement.

      **3.3**    **Investments.**  The Trustee, in consultation with the PI Committee, the NAS Representative, the FCR, and the Financial Advisor shall develop the investment strategy for the


28322086.8
28322086.11

PI Trust Assets. In determining investments to be held by the PI Trust, due regard shall be given to safety of principal and to production of reasonable amounts of current income.

3.4     **Source of Payments.**

(a)     All Trust Expenses shall be payable solely by the Trustee out of the PI Trust Assets.  None of the Trustee; the Delaware Trustee; the PI Committee; the NAS Representative; the FCR; any Professionals of the foregoing; the Debtors; the Reorganized Debtors; or any other Protected Party shall be liable for the payment of any Trust Expense or any other liability of the PI Trust, except to the extent provided in the Plan or the PI Trust Documents.

(b)     The Trustee shall include a reasonably detailed description of any payments made in accordance with this section 3.4 in the Quarterly Reports and the Annual Report.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

4.1     **Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be one (1) Trustee. The initial Trustee shall be [Edgar C. Gentle, III.]

4.2     **Term of Service.**

(a)     The initial Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to section 4.2(c) below, or (vi) the termination of the Trust pursuant to section 8.4 below.

(b)     The Trustee may resign at any time by written notice to the PI Committee, the NAS Representative, and the FCR.  Such notice shall specify a date when such resignation



shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Trustee may be removed at the recommendation of the PI Committee, the NAS Committee, and the FCR with the approval of the Bankruptcy Court, in the event that he or she becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder, or repeated ~~non-attendance~~<u>non-attendance</u> at scheduled meetings. Such removal shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

**4.3    <u>Appointment of Successor Trustee.</u>**

(a)    In the event of a vacancy in the Trustee position, whether by term expiration, death, retirement, resignation, or removal, the vacancy shall be filled by the PI Committee and FCR, in consultation with the NAS Representative if the PI Trust NAS Fund has not yet dissolved.  In the event that the PI Committee and the FCR cannot agree on the successor Trustee, the Bankruptcy Court shall make the appointment.

(b)    Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.



(c)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to section 4.2(b) above, (iii) his or her removal pursuant to section 4.2(c) above, or (iv) the termination of the Trust pursuant to section 8.4 below.

**4.4     Liability of Trustee, the PI Committee, the NAS Representative and the FCR.**  The Trustee, the Members of the PI Committee, the NAS Representative, and the FCR shall not be liable to the PI Trust, to any individual holding a PI/NAS Claim, or to any other person, except for any act or omission by such party that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).

**4.5     Compensation and Expenses of Trustee and Delaware Trustee.**

(a)     [The Trustee shall receive a retainer from the Trust for his or her service as a Trustee in the amount of [$XX,000] per annum, paid annually.  Hourly time, as described below, shall first be billed and applied to the annual retainer.  Hourly time in excess of the annual retainer shall be paid by the Trust.  For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on projects necessary to carry out the Trust, the Trustee shall receive compensation at the rate of [$400] per hour.   For all ~~non-working~~**non-working** travel time in connection with Trust business, the Trustee shall receive compensation at the rate of [$200] per hour.  All time shall be computed on a decimal hour basis.  The Trustee shall record all hourly time to be charged to the Trust on a daily basis. The PI Committee, the NAS Representative, and the FCR shall have the right to review the Trustee's monthly invoices. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI

28322086.8
28322086.11

Committee, the NAS Representative, and the FCR, appropriately adjusted by the Trustee for changes in the cost of living.]

(b)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(c)     The Trust will promptly reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustee or the Delaware Trustee in connection with the performance of their duties hereunder.

(d)     The Trust shall include a description of the amounts paid under this section 4.5 in the Quarterly Reports and the Annual Report.

**4.6     <u>Indemnification.</u>**

(a)     The Trust shall indemnify and defend the Trustee, the Delaware Trustee, the members of the PI Committee, the NAS Representative, and the FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware as permitted by 12 Del. C. § 3817 (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the PI Trust. The Trust shall also indemnify the Additional Indemnitees in the performance of their duties hereunder, to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons, against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior



to the Effective Date in connection with the formation, establishment or funding of the PI Trust. **The Trust shall also indemnify and defend the Ad Hoc Committees and their Professionals in the performance of their fiduciary duties, if any, in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the PI Trust, to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of section 8.13) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their fiduciary duties, if any, in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the PI Trust.** Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under section 4.4 above.

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trustee, the Delaware Trustee, a member of the PI Committee, the NAS Representative, the **Ad Hoc Committees (or their Professionals), the** FCR, or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust pursuant to section 4.6(a) above, shall be paid by the PI Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee, the Delaware Trustee, the member of the PI Committee, the NAS Representative, the **Ad Hoc Committees (or their Professionals), the** FCR, or the Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by final order that the Trustee, the Delaware Trustee, the member of the PI


28322086.8
28322086.11

Committee, the NAS Representative, the **Ad Hoc Committees (or their Professionals), the** FCR or the Additional Indemnitee is not entitled to be indemnified by the PI Trust.

(c)     The Trustee must**, if practicable and reasonable,** purchase and maintain reasonable amounts and types of insurance on behalf of an individual **or group** who is or was a Trustee, a member of the PI Committee, the NAS  Representative, the **Ad Hoc Committees for purposes of 4.6(a) and (b) above, the** FCR or an Additional Indemnitee, including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, PI Committee member, the NAS Representative, the **Ad Hoc Committees (or their Professionals) for purposes of 4.6(a) and (b) above, the** FCR, or as a Professional of the Trust, the PI Committee, the NAS Representative, **the Ad Hoc Committees for purposes of 4.6(a) and (b) above,** or the FCR.

**4.7** __Lien.__  The Trustee, members of the PI Committee, the NAS Representative, the FCR, and the Additional Indemnitees shall have a first priority lien upon the PI Trust Assets to secure the payment of any amounts payable to them pursuant to section 4.6 above.

**4.8** __Trustee's Independence.__  The Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for the Reorganized Debtors.  The Trustee shall not act as an attorney for any person who holds an Opioid personal injury claim.  For the avoidance of doubt, this section shall not be applicable to the Delaware Trustee.

**4.9** __Bond.__  The Trustee and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.



**4.10**    **Trustee's Employment of Professionals; Delaware Trustee's Employment of Counsel.**

(a)    The Trustee may, but shall not be required to, retain and/or consult with Professionals deemed by the Trustee to be qualified as experts on the matters submitted to them (the **"Trust Professionals"**), and in the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing, the written opinion of or information provided by any such party deemed by the Trustee to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)    The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

**4.11**    **Trustee's Retention of Claims Administrator.**

(a)    The Trustee may retain a claims administrator (the "**Claims Administrator**") to assist the Trustee in his duties as set forth in the Plan and the PI TDPs.  With the consent of the PI Committee, the NAS Representative, and the FCR, the Claims Administrator may be the same individual as the Trustee.

(b)    [The PI Committee, the NAS Representative, and the FCR have agreed that Edgar C. Gentle, III, of Gentle, Turner, Sexton & Harbison, LLC, shall be the initial Trustee and Claims Administrator.  With the consent of the PI Committee, the NAS Representative, and the FCR, and subject to the Trustee's duties and obligations set forth in this Trust Agreement and



the terms of this section with respect to the Claims Administrator's duties and compensation, the initial Trustee and Claims Administrator may retain his law firm, Gentle, Turner, Sexton & Harbison, LLC, to assist in carrying out the duties of the Trustee and Claims Administrator under this Trust Agreement and the PI TDPs.]

(c)     Under the direction of the Trustee, the Claims Administrator shall be responsible for (i) supervising and overseeing the processing of and resolution of PI/NAS Claims and all aspects of the claims office (the "**Claims Office**"), which shall process PI/NAS Claims that are payable from the PI Trust in accordance with the PI TDPs, (ii) preparing and distributing monthly and quarterly reports to the PI Committee, the NAS Representative, and the FCR documenting the activities of the Claims Office, including reports on the submission of PI/NAS Claims and their resolution, and (iii) performing periodic analyses and estimates regarding the costs and projected costs of processing and resolving PI/NAS Claims and any matter or contingency that could affect the efficient use of funds for the payment of Allowed PI/NAS Claims.  The Trustee shall monitor the long-term goals and day-to-day activities of the Claims Office and consult with the Claims Administrator, the PI Committee and the FCR to carry them out.

(d)     The Claims Administrator, under the direction of the Trustee, shall determine, in accordance with the applicable PI TDP, the Allowance or Disallowance of, and the awards payable on, (i) all NAS PI Claims liquidated under the NAS PI TDP and (ii) all Non-NAS PI Claims liquidated under the Non-NAS PI TDP, regardless of the type of Award (as defined in the Non-NAS PI TDP) sought pursuant to the requirements set forth in the Non-NAS PI TDP.



(e)     As set forth in the NAS PI TDP, distributions under the NAS PI TDP, which shall be made solely from the PI Trust NAS Fund, only pursuant to the terms of the NAS PI TDP, and not in satisfaction of any NAS PI Claim against a non-Protected Party; any distribution to an NAS PI Claimant on account of his or her NAS PI Claim shall be deemed to be a distribution in satisfaction of all NAS PI Claims held by such NAS PI Claimant against any of the Protected Parties with respect to the same injuries that are the subject of his or her NAS PI Claim.

(f)     As set forth in the Non-NAS PI TDP, distributions under the Non-NAS PI TDP, which shall be made solely from the PI Trust Non-NAS Fund, are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Claim against a non-Protected Party; any distribution to a Non-NAS PI Claimant on account of his or her Non-NAS PI Claim shall be deemed to be a distribution in satisfaction of all Non-NAS PI Claims held by such Non-NAS PI Claimant against any of the Protected Parties with respect to the same injuries that are the subject of his or her Non-NAS PI Claim.

(g)     The Trustee shall exercise reasonable measures to oversee the Claims Administrator and the Claims Office, and shall employ reasonable administrative, technical and physical controls to protect the confidentiality of data concerning individual PI Claimants from unauthorized access, acquisition, disclosure, use, loss, or theft.

(h)     In carrying out the Trustee's duties under this Trust Agreement, the Trustee (or the Trust Professionals under the direction of the Trustee) may investigate any PI Claims and request information from any PI Claimant to ensure compliance with NAS PI TDP or the Non-NAS PI TDP, as applicable. For PI Claimants who are requested to execute the HIPAA release forms attached to the applicable PI TDP, the Trustee (or the Trust Professionals under the


28322086.8
28322086.11

direction of the Trustee) also has the power to directly obtain such PI Claimant's medical records.

(i)     The Claims Office shall process PI/NAS Claims payable from the PI Trust in accordance with the PI TDPs and the LRP.  NAS PI Claims that satisfy the eligibility criteria specified in the NAS PI TDP and Non-NAS PI Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP shall be paid as specified in the respective PI TDPs.  Only those NAS PI Claims that satisfy the eligibility criteria specified in the NAS PI TDP and those Non-NAS PI Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP are eligible to receive payment. The PI TDPs establish specific guidelines for submitting and processing PI Claims.

(j)     The Trustee shall have discretion to implement such additional procedures and routines as necessary to implement the PI TDPs, in collaboration with the Claims Administrator, the PI Committee, the NAS Representative, and the FCR, and consistent with the terms of this Trust Agreement.

(k)     Under the direction of the Trustee, the Claims Administrator shall institute procedures, claims processing protocols, and staff training, and shall develop claims-tracking, analysis, and payment systems as necessary to process the PI/NAS Claims in accordance with the PI TDPs and the LRP, including reasonable measures to detect and prevent claims fraud.

(l)     The Trustee shall maintain (subject to the confidentiality provisions of this Trust Agreement) records of all individual payments, settlements, and resolutions concerning the PI/NAS Claims. The records shall include the documents and information relative to the valuation of the PI Claims.

(m)     The Claims Administrator shall serve for the duration of the PI Trust, subject to death, resignation, or removal.  The Trustee may remove the Claims Administrator


28322086.8
28322086.11

with the consent of the PI Committee, the NAS Representative and the FCR.  In the event that the Claims Administrator resigns, is removed from office, or otherwise is unable to perform the functions of the Claims Administrator, the Trustee shall propose a successor Claims Administrator, subject to consent by the PI Committee, the NAS Representative, and the FCR. However, in the event that, pursuant to section 4.11(a), the Trustee also serves as the Claims Administrator, if the Trustee is removed, absent a court order to the contrary the Claims Administrator shall also be removed from office, and the successor Trustee shall fill the vacancy by proposing a Claims Administrator subject to consent of the PI Committee, the NAS Representative, and the FCR.

(n)     The Claims Administrator (or successor Claims Administrator) shall be (i) an entity or an individual over the age of 35 whose experience and background are appropriate for the responsibilities set forth herein and (ii) at the time of appointment and at all times during the term of service, independent.  For purposes of this section, a person is independent if such person:

(i)     is not or was not at any time a Holder or a representative of a Holder of a PI/NAS Claim;

(ii)     has not had and does not have a relationship with an individual Holder of a PI/NAS Claim, such that the person's impartiality in serving as a Claims Administrator could reasonably be questioned;

(iii)     is not a Holder of any interest (other than interests held indirectly through publicly traded mutual funds) in a Debtor or any related person with respect to a Debtor;

(iv)     is not and was not at any time an officer, director, employee, or agent of a Debtor or any related person with respect to a Debtor or related to any of the



-33-

foregoing, or otherwise is or was an "insider," as defined in the Bankruptcy Code, with respect to a Debtor or any related person with respect to a Debtor; or

(v)     is not an investment banker, financial advisor, accountant, or attorney, and is not related to any of the foregoing, for any Debtor or any related person with respect to a Debtor, or an officer, director, employee, or agent of any person or entity that provides investment banking, financial advice, accounting, or legal services to a Debtor or any related person with respect to a Debtor or related to any of the foregoing, with the exception of any person employed in the Claims Administrator's law firm who helps provide services in connection with the Chapter 11 Cases.

(o)     Subject to approval by the Trustee, the Claims Administrator shall have the power to hire, and shall hire and appoint, such staff and other appropriate agents, including persons or entities performing PI/NAS Claim audit functions, as necessary to carry out the functions of the Claims Administrator under this Trust Agreement, and such staff and agents shall be considered Additional Indemnitees as provided in section 2.1(c)(xviii).  Salaries, fees, budgets, and payment terms for any staff, contractors, or auditors shall be determined by the Claims Administrator, with the Trustee's approval, subject to consultation with the PI Committee, the NAS Representative, and the FCR.  The Claims Administrator shall not have authority to subcontract claims processing functions without the consent of the Trustee, PI Committee, the NAS Representative, and the FCR.  Subject to the direction of the Trustee, in consultation with the PI Committee, the NAS Representative, and the FCR, the Claims Administrator shall have the authority to enter into such contracts or agreements as may be necessary to operate the Claims Office, hire staff and contractors, or obtain services and equipment, and shall have the authority to serve all functions of an employer.



(p)      The compensation of the Claims Administrator and his or her staff, including periodic increases, shall be governed by the budget developed by the Claims Administrator in consultation with the Financial Advisor and approved by the Trustee, with the consent of the PI Committee, the NAS Representative, and the FCR.

**4.12    Appeals Master.**   The Trustee shall select one or more Appeals Masters in consultation with the PI Committee and the FCR.

**4.13    Delaware Trustee.**

(a)      There shall at all times be a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this section 4.13, it shall resign immediately in the manner and with the effect hereinafter specified in section 4.13(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b)      The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the DST Act and for taking such actions as are required to be taken by a Delaware Trustee under the DST Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of

28322086.8
28322086.11

any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the DST Act (acting solely at the written direction of the Trustee) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto or any beneficiary of the Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee or any other Person.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of section 4.13(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with section 4.13(d) below.  If the Trustee does not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a


28322086.8
28322086.11

successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any fees and expenses due to the outgoing Delaware Trustee are paid.    Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

**4.14 [Medicare Reporting Obligations – to be determined prior to confirmation]**

## ARTICLE V

## TRUST ADVISORY PERSONAL INJURY COMMITTEE

**5.1    Members.**    The PI Committee shall consist of three (3) members who shall initially be the persons named on the signature page hereof.

**5.2    Duties.**    The members of the PI Committee shall serve in a fiduciary capacity representing all Holders of present PI Claims.    The PI Committee shall have no fiduciary obligations or duties to any party other than the Holders of present PI Claims.    The Trustee must consult with the PI Committee on matters identified in section 2.2(g) above and in other provisions herein, and must obtain the consent of the PI Committee on matters identified in section 2.2(h) above.    Where provided in the Non-NAS PI TDP, certain other actions by the Trustee are also subject to the consent of the PI Committee. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the Non-NAS PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the PI Committee.    To the extent that, at law or in equity, the PI


28322086.8
28322086.11

Committee has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the PI Committee expressly set forth in this Trust Agreement and the documents referenced herein (including the Non-NAS PI TDP).

      5.3    **Term of Office.**

      (a)    Each member of the PI Committee shall serve until the earlier of (i) his or her resignation pursuant to Section 5.3(b) below, (ii) his or her removal pursuant to Section 5.3(c) below, or (iii) the termination of the PI Trust pursuant to Section 8.4 below.

      (b)    A member of the PI Committee may resign at any time by written notice to the other members of the PI Committee, the Trustee and the FCR. Such notice shall specify a date when such resignation shall take effect, which shall be not less than ninety (90) days after the date such notice is given, where practicable.

      (c)    A member of the PI Committee may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated ~~non-attendance~~<u>non-attendance</u> at scheduled meetings, or for other good cause. Such removal shall be made at the recommendation of the remaining members of the PI Committee with the approval of the Bankruptcy Court.

      5.4    **Appointment of Successor.**

      (a)    If, prior to the termination of service of a member of the PI Committee other than as a result of removal, he or she has designated in writing an individual to succeed



him or her as a member of the PI Committee, such individual shall be his or her successor.  If such member of the PI Committee did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If (i) a member of the PI Committee did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the PI Committee or, if such members cannot agree on a successor, the Bankruptcy Court.

(b)    Each successor PI Committee member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 5.3(b) above, (iii) his or her removal pursuant to section 5.3(c) above, or (iv) termination of the PI Trust pursuant to section 8.4 below.

(c)    No successor PI Committee member shall be liable personally for any act or omission of his or her predecessor PI Committee member.  No successor PI Committee member shall have any duty to investigate the acts or omissions of his or her predecessor PI Committee member.  No PI Committee member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.5    **PI Committee's Employment of Professionals.**

(a)    The PI Committee may but is not required to retain and/or consult Professionals deemed by the PI Committee to be qualified as experts on matters submitted to the PI Committee (the **"PI Committee Professionals"**).  The PI Committee and the PI Committee Professionals shall at all times have complete access to the PI Trust's Professionals, and shall



also have complete access to all information generated by them or otherwise available to the PI Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing, reliance on the written opinion of or information provided by any PI Committee Professional or Trust Professional deemed by the PI Committee to be qualified as an expert on the particular matter submitted to the PI Committee shall be full and complete authorization and protection in support of any action taken or not taken by the PI Committee in good faith and in accordance with the written opinion of or information provided by the PI Committee Professional or Trust Professional.

(b)    The PI Trust shall promptly reimburse, or pay directly if so instructed, the PI Committee for all reasonable fees and costs associated with the PI Committee's employment of PI Committee Professionals pursuant to this provision in connection with the PI Committee's performance of its duties hereunder.

(c)    In the event that the PI Committee retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the PI Committee and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the PI Committee and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the PI Committee and regardless of whether the PI Trust pays such counsel's fees and related expenses.

5.6    **Compensation and Expenses of the PI Committee.**  The members of the PI Committee shall receive reasonable compensation from the PI Trust for their services as PI



Committee members.  The members of the PI Committee also shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder.  Such reimbursement shall be deemed a Trust Operating Expense.  The PI Trust shall include a description of the amounts paid under this section in the Quarterly Reports and the Annual Report.

**5.7** **Procedures for Consultation With and Obtaining the Consent of the PI Committee.**

(a) Consultation Process.

(i) In the event the Trustee is required to consult with the PI Committee pursuant to section 2.2(g) above or on other matters as provided herein, the Trustee shall provide the PI Committee with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the PI Committee and the PI Committee Professionals with such reasonable access to the Trust Professionals and other experts retained by the PI Trust and its staff (if any) as the PI Committee may reasonably request during the time that the Trustee is considering such matter, and shall also provide the PI Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii) In determining when to take definitive action on any matter subject to the consultation procedures set forth in this section 5.7(a), the Trustee shall take into consideration the time required for the PI Committee, if its members so wish, to engage and consult with its own independent financial or investment advisors and other PI Committee Professionals as to such matter.  In any event, the Trustee shall not take definitive action on any


28322086.8
28322086.11

such matter until at least thirty (30) days after providing the PI Committee with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the PI Committee.

   (b) <u>Consent Process</u>.

    (i) In the event the Trustee is required to obtain the consent of the PI Committee pursuant to section 2.2(h) above, the Trustee shall provide the PI Committee with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the PI Committee as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the PI Committee and the PI Committee Professionals with such reasonable access to the Trust Professionals as the PI Committee may reasonably request during the time that the Trustee is considering such action, and shall also provide the PI Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

    (ii) The PI Committee must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and the PI Committee may agree. An action of the PI Committee shall require approval by at least a majority of the PI Committee. The PI Committee may not withhold its consent unreasonably. If the PI Committee decides to withhold its consent, it must explain in detail its objections to the proposed action. If the PI Committee does not advise the Trustee in writing of



its consent or its objections to the action within thirty (30) days of receiving notice regarding such request (or the additional time period agreed to by the Trustee and the PI Committee), the PI Committee's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this section 5.7(b), a majority of the PI Committee continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the PI Committee shall resolve their dispute pursuant to section 8.15.  However, the burden of proof with respect to the reasonableness of the PI Committee's objection and withholding of its consent shall be on the PI Committee.

## ARTICLE VI

## THE NAS REPRESENTATIVE

**6.1    Duties.** The "**NAS Representative**" shall be the person identified as such on the signature page of this Trust Agreement. The NAS Representative shall serve in a fiduciary capacity as a representative of the interests of the present NAS PI Claimants. The NAS Representative shall have no fiduciary obligations or duties to any party other than the Holders of present NAS PI Claims. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the NAS PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the NAS Representative.  To the extent that, at law or in equity, the NAS Representative has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the NAS

28322086.8
28322086.11

Representative expressly set forth in this Trust Agreement and the documents referenced herein (including the NAS PI TDP).

      **6.2**    **Consultation and Consent.** The Trustee must consult with the NAS Representative on matters identified in section 2.2(g) above and in other provisions herein, and must obtain the consent of the NAS Representative on matters identified in section 2.2(g) above. Where provided in the NAS PI TDP, certain other actions by the Trustee are also subject to the consent of the NAS Representative.  Notwithstanding anything else in this Trust Agreement, the Trustee shall be required to obtain the consent of the NAS Representative to (i) amend the NAS PI TDP or any exhibits thereto in any way or (ii) modify this Trust Agreement in a way that impacts NAS PI Claimants in a way that does not impact Non-NAS PI Claimants.

      **6.3**    **Term of Office.**

      (a)    The NAS Representative shall serve until the earlier of (i) the dissolution of the PI Trust NAS Fund pursuant to Section 6.3(b), (ii) his or her resignation pursuant to Section 6.3(c) below, (iii) his or her removal pursuant to Section 6.3(d) below.

      (b)    Pursuant to Section 6.3(a)(i), the NAS Representative shall serve in such capacity until the PI Trust NAS Fund is exhausted and dissolved, at which time the NAS Representative shall have no further duties under this Trust Agreement or the NAS PI TDP, and the Trustee shall have no further obligation to consult with or seek the consent of the NAS Representative.

      (c)    The NAS Representative may resign at any time by written notice to the Trustee, the PI Committee, and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall be not less than ninety (90) days after the date such notice is given, where practicable.


28322086.8
28322086.11

(d)     The NAS Representative may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal shall be made at the recommendation of the Trustee, with the consent of the PI Committee and the FCR, with the approval of the Bankruptcy Court.

### 6.4     Appointment of Successor.

(a)     In the event that the individual serving as NAS Representative resigns, dies, is removed or otherwise becomes unavailable to serve as the NAS Representative and the PI Trust NAS Fund has not been dissolved, Scott R. Bickford, in his capacity as counsel to one or more NAS PI Claimants, may select the new NAS Representative and shall give notice of the same to the Trustee.

(b)     No successor NAS Representative shall be liable personally for any act or omission of a successor NAS Representative.  No successor NAS Representative shall have any duty to investigate the acts or omissions of his or her predecessor NAS Representative.  No NAS Representative shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### 6.5     NAS Representative's Employment of Professionals.

(a)     For purposes of carrying out its duties under this Trust Agreement and the NAS PI TDP, the NAS Representative may but is not required to retain and/or consult Professionals deemed by the NAS Representative to be qualified as experts on matters submitted to the NAS Representative (the **"NAS Representative Professionals"**).     The NAS


28322086.8
28322086.11

Representative and the NAS Representative Professionals shall at all times have complete access to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing, reliance on the written opinion of or information provided by any NAS Representative Professional or Trust Professional deemed by the NAS Representative to be qualified as an expert on the particular matter submitted to the NAS Representative shall be full and complete authorization and protection in support of any action taken or not taken by the NAS Representative in good faith and in accordance with the written opinion of or information provided by the NAS Representative Professional or Trust Professional.

(b)     The PI Trust shall promptly reimburse, or pay directly if so instructed, the NAS Representative for all reasonable fees and costs associated with the NAS Representative's employment of NAS Representative Professionals pursuant to this provision in connection with the NAS Representative's performance of its duties under this Trust Agreement and the NAS PI TDP.

(c)     In the event that the NAS Representative retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the NAS Representative and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the NAS Representative and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has



been or might be asserted by or against the NAS Representative and regardless of whether the PI Trust pays such counsel's fees and related expenses.

6.6    **Compensation and Expenses of the NAS Representative.**    The NAS Representative shall not receive compensation from the PI Trust for their services as NAS Representative.    However, the NAS Representative shall be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties under this Trust Agreement and the NAS PI TDP.    Such reimbursement shall be deemed a Trust Operating Expense.    The PI Trust shall include a description of the amounts paid under this section 6.6 in the Quarterly Reports and the Annual Report.

6.7    **Procedures for Consultation With and Obtaining the Consent of the NAS Representative.**

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the NAS Representative pursuant to section 2.2(g) above or on other matters as provided herein, the Trustee shall provide the NAS Representative with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances.    The Trustee shall also provide the NAS Representative and the NAS Representative Professionals with such reasonable access to the Trust Professionals as the NAS Representative may reasonably request during the time that the Trustee is considering such matter, and shall also provide the NAS Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this section 6.7(a), the Trustee shall take into



consideration the time required for the NAS Representative, if he or she so wishes, to engage and consult with its own independent financial or investment advisors and other NAS Representative Professionals as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the NAS Representative with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the NAS Representative.

    (b)  <u>Consent Process</u>.

      (i)  In the event the Trustee is required to obtain the consent of the NAS Representative pursuant to section 2.2(h) above, the Trustee shall provide the NAS Representative with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the NAS Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the NAS Representative and the NAS Representative Professionals with such reasonable access to the Trust Professionals as the NAS Representative may reasonably request during the time that the Trustee is considering such action, and shall also provide the NAS Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

      (ii)  The NAS Representative must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the



Trustee and the NAS Representative may agree.  The NAS Representative may not withhold its consent unreasonably.  If the NAS Representative decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the NAS Representative does not advise the Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request (or the additional time period agreed to by the Trustee and the NAS Representative), the NAS Representative's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this section 6.7(b), the NAS Representative continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the NAS Representative shall resolve their dispute pursuant to section 8.15.  However, the burden of proof with respect to the reasonableness of the NAS Representative's objection and withholding of its consent shall be on the NAS Representative.

## ARTICLE VII

## THE FCR

**7.1**    **Duties.**  The initial FCR shall be the individual identified on the signature pages hereto.  He or she shall serve in a fiduciary capacity, representing the interests of the Holders of future PI/NAS Claims for the purpose of protecting the rights of such persons.  The FCR shall have no fiduciary obligations or duties to any party other than Holders of future PI/NAS Claims.  The Trustee must consult with the FCR on matters identified in section 2.2(g) above and on certain other matters provided herein, and must obtain the consent of the FCR on matters identified in section 2.2(h) above.  Where provided in the applicable PI TDP, certain other actions by the Trustee are also subject to the consent of the FCR.  Except for the duties and


28322086.8
28322086.11

obligations expressed in this PI Trust Agreement and the documents referenced herein (including the applicable PI TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the FCR.  To the extent that, at law or in equity, the FCR has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other parties hereto or any beneficiary of the PI Trust, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the FCR expressly set forth in this Trust Agreement and the documents referenced herein (including the PI TDPs).

      **7.2**    <u>**Term of Office.**</u>

(a)    The FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to section 7.2(b) below, (iii) his or her removal pursuant to section 7.2(c) below, or (iv) termination of the PI Trust pursuant to section 8.4 below.

(b)    The FCR may resign at any time by written notice to the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The FCR may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated ~~non-attendance~~<u>non-attendance</u> at scheduled meetings, or for other good cause.  Such removal may be made upon a vote of the Trustee and the PI Committee, and then by order of the Bankruptcy Court on the motion of the Trust or the PI Committee.



(d)     No successor FCR shall be liable personally for any act or omission of his or her predecessor.  No successor FCR shall have any duty to investigate the acts or omissions of his or her predecessor.  No FCR shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

(e)     **Appointment of Successor.**  A vacancy caused by resignation or death shall be filled with an individual nominated prior to the effective date of the resignation or the death by the resigning or deceased FCR. A vacancy caused by removal of the FCR based on inability of the FCR to discharge his or duties due to accident, physical deterioration, or mental incompetence shall be filled with an individual nominated by the FCR prior to the inability. A vacancy caused by removal of the FCR for other reasons shall be filled by a successor selected by the Trustee in consultation with the PI Committee.

**7.3     FCR's Employment of Professionals.**

(a)     The FCR may, but is not required to, retain and/or consult Professionals deemed by the FCR to be qualified as experts on matters submitted to the FCR (the **"FCR Professionals"**).  The FCR and the FCR Professionals shall at all times have complete access to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the PI Trust or the Trustee provided that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of gross negligence, reliance on the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the FCR to be qualified as an expert on the particular matter submitted to the FCR shall be full and complete authorization and protection in support of any action taken, or not taken, by the FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.



(b)    The PI Trust shall promptly reimburse, or pay directly if so instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of FCR Professionals pursuant to this provision in connection with the FCR's performance of his or her duties hereunder.

(c)    In the event that the FCR retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the FCR and irrespective of whether the PI Trust pays such counsel's fees and related expenses, any communications between the FCR and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the FCR and regardless of whether the PI Trust pays such counsel's fees and related expenses.

**7.4    Compensation and Expenses of the FCR.**    The FCR shall receive compensation from the PI Trust in the form of payment at the FCR's normal hourly rate for services performed. The PI Trust will promptly reimburse the FCR for all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder. Such reimbursement or direct payment shall be deemed a Trust Operating Expense. The PI Trust shall include a description of the amounts paid under this section 7.4 in the Quarterly Reports and the Annual Report.

**7.5    Procedures for Consultation with and Obtaining the Consent of the FCR.**

(a)    <u>Consultation Process</u>.

(i)    In the event the Trustee is required to consult with the FCR pursuant to section 2.2(g) above or on any other matters specified herein, the Trustee shall



provide the FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the FCR and the FCR Professionals with such reasonable access to the Trust Professionals as the FCR may reasonably request during the time that the Trustee is considering such matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this section 7.5(a), the Trustee shall take into consideration the time required for the FCR, if he or she so wishes, to engage and consult with his or her own independent financial or investment advisors and other FCR Professionals as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the FCR with the initial written notice that such matter is under consideration by the Trustee, unless such period is waived by the FCR.

(b)     <u>Consent Process</u>.

(i)     In the event the Trustee is required to obtain the consent of the FCR pursuant to section 2.2(h) above, the Trustee shall provide the FCR with a written notice stating that his or her consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustee shall also provide the FCR and the FCR Professionals with such reasonable access to the Trust Professionals as the FCR may reasonably request during the time that the Trustee is considering such action, and shall also provide the FCR the opportunity, at


28322086.8
28322086.11

reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)    The FCR must consider in good faith and in a timely fashion any request for his or her consent by the Trustee, and must in any event advise the Trustee in writing of his or her consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and FCR may agree.  The FCR may not withhold his or her consent unreasonably.  If the FCR decides to withhold consent, he or she must explain in detail his or her objections to the proposed action.  If the FCR does not advise the Trustee in writing of his or her consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustee regarding such consent (or the additional time period agreed to by the Trustee and the FCR), the FCR's consent shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 6.6(b), the FCR continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and/or the FCR shall resolve their dispute pursuant to section 8.15.  However, the burden of proof with respect to the validity of the FCR's objection and withholding of his or her consent shall be on the FCR.

## ARTICLE VIII

## GENERAL PROVISIONS

### 8.1    Confidentiality.

(a)    The Trustee, each PI Committee member, the NAS Representative, the FCR, and each successor of the foregoing (each a "**Recipient**") shall, during the period that they serve in such capacity under this Trust Agreement and following either the termination of this



Trust Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential any material, non-public information of or pertaining to any Person ("**Relevant Person**") of which the Recipient has become aware in its herein indicated capacity under this Trust Agreement (the "**Confidential Information**"), except to the extent disclosure is (i) in connection with matters contemplated by the Plan, such as the allowance, disallowance or payment of Claims, (ii) authorized by the applicable Relevant Person, in such Relevant Person's discretion, (iii) authorized by the terms of the Plan or the terms of this Trust Agreement (disclosure in accordance with clauses (i)-(iii) of this Section, each a "**Permitted Purpose**"), or (iv) required by, or would facilitate any investigation or prosecution under, applicable law, order, regulation or legal process. In the event that any Recipient is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Confidential Information, other than for a Permitted Purpose, such Recipient shall furnish only that portion of the Confidential Information so requested or required, and shall exercise good faith efforts, at no material cost to it, to obtain assurance that confidential treatment will be accorded to the Confidential Information so disclosed.

(b)    Notwithstanding the foregoing, in addition to the disclosure of Confidential Information for Permitted Purposes, Recipients may share or disclose Confidential Information with each of the Recipient's Professionals for the purpose of rendering advice and guidance to such Recipient, provided that the Person or entity receiving such disclosure is informed by such Recipient of the confidential nature of such Confidential and agrees to be bound by the provisions of this Section.



(c)     The Trustee shall exercise commercially reasonable efforts, such as anonymization, pseudonymization, and encryption, to protect Confidential Information such that disclosures to the Recipients and any Professionals do not include information that identifies individual persons, unless there is a reasonable purpose that makes disclosure of such identifying information necessary, in which case the Trustee shall implement any additional controls the Trustee in its sole discretion determines is necessary to safeguard the identifying information from unauthorized disclosure, access, or use.

**8.2     Common Interest Privilege.** The Trustee, the PI Committee, the NAS Representative, and the FCR, have a "common legal interest" relating to the PI/NAS Claims, the PI Trust, the Plan, the Confirmation Order, this Trust Agreement and the PI TDPs, including without limitation, (i) the formation of the PI Trust, (ii) the retention and direction of Professionals, (iii) the administration of the PI Trust, (iv) making distributions in accordance with this Trust Agreement and the PI TDPs, and (v) disputing and/or resolving any PI/NAS Claims in accordance with this Trust Agreement and the PI TDPs, (the "**Common Legal Interest Matters**"). Any discussion, evaluation, or other communications and exchanges of information relating to the Common Legal Interest Matters shall at all times remain subject to all applicable privileges, immunities and protections from disclosure, including without limitation, the attorney-client privilege, work-product doctrine and common legal interest privilege. It is the express intent of the Trustee, the PI Committee, the NAS Representative, and the FCR to preserve intact to the fullest extent applicable, and not to waive, by virtue of this Agreement or otherwise, in whole or in part, any and all privileges, protections and immunities.

**8.3     Irrevocability.** To the fullest extent permitted by applicable law, the Trust is irrevocable.



**8.4**     **Term; Termination.**

    (a)    With the consent of the FCR and the PI Committee, notice to the Reorganized Debtors, and approval by the Bankruptcy Court, the Trustee may select a date to dissolve the Trust (the "**Dissolution Date**") after the occurrence of the following events: (i) all assets available to the PI Trust from the MDT Opioid II have been collected and liquidated; (ii) all PI/NAS Claims duly filed with the Trust have been liquidated and paid to the extent provided in this Trust Agreement and the PI TDPs, or have been disallowed, (iii) the PI Trust NAS Fund has been dissolved and the NAS Representative relieved of his or her duties pursuant to section 6.3(b) herein; (iv) twelve (12) consecutive months have elapsed during which no new PI Claim has been filed with the PI Trust and the Trustee deems it unlikely that new PI Claims will be filed against the PI Trust, and (v) at least five (5) years have elapsed since the Effective Date. The Trustee, with the consent of the FCR and the PI Committee, may seek approval from the Bankruptcy Court to dissolve the Trust earlier for any other reason.

    (b)    By the date that is one year earlier than such date that the Trustee, with the consent of the FCR and the PI Committee, selects or the Bankruptcy Court approves as the Dissolution Date, the Trustee, in consultation with the PI Committee and the FCR, shall develop wind-down procedures, including a program for providing notice to all Holders of PI/NAS Claims of the decision to dissolve the PI Trust and the reservation of funding for the wind-down.

    (c)    On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the ~~wind-up~~wind-up of the PI Trust's affairs by the Trustee and payment of all the PI Trust's liabilities have been provided for as required by applicable law including Section 3808 of the DST Act, all monies remaining in the PI Trust estate shall be given to such organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue



Code, which ~~tax-exempt~~**tax-exempt** organization(s) shall be selected by the Trustee using his or her reasonable discretion; *provided, however,* that (i) if practicable, the activities of the selected ~~tax-exempt~~**tax-exempt** organization(s) shall be related to the treatment of, research on, or the cure of, or other relief for individuals suffering from opioid use disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 8.4(c) cannot be modified or amended.

(d) Following the dissolution and distribution of the assets of the PI Trust, the PI Trust shall terminate and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the PI Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the PI Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**8.5** **Amendments.** The Trustee, after consultation with the PI Committee, the NAS Representative, and the FCR, and subject to the consent of the PI Committee and the FCR, may modify or amend this Trust Agreement. The Trustee, after consultation with the PI Committee and the FCR, and subject to the consent of the PI Committee, NAS Representative and the FCR, may modify or amend the respective PI TDPs; *provided, however,* that no amendment to the PI TDPs shall be inconsistent with the provisions limiting amendments to that document provided therein and provided further that no modification or amendment of the PI TDPs shall (i) have a material and adverse effect on PI Claimants' entitlements to distributions or (ii) be inconsistent with any of the provisions herein. Any modification or amendment made pursuant to this Section must be done in writing. Notwithstanding anything contained in this Trust Agreement or



the PI TDPs to the contrary, neither this Trust Agreement, the PI TDPs, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the efficacy or enforceability of the Opioid Permanent Channeling Injunction or any other injunction or release issued or granted in connection with the Plan, (ii) the PI Trust's qualified settlement fund status under the QSF Regulations, or (iii) without the written consent of Reorganized Mallinckrodt, any rights, benefits, or protections provided to the Reorganized Debtors under the Plan, and (b) the scope and terms of the release provided to the Reorganized Debtors and the Protected Parties in the Release, or the obligation of the PI Trust to obtain a properly executed Release as a pre-condition to a PI Claimant receiving a distribution from the PI Trust. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

**8.6** **Meetings.** The Delaware Trustee shall not be required nor permitted to attend meetings relating to the PI Trust.

**8.7** **Severability.** Should any provision in this Trust Agreement or in the PI TDPs be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement or the respective PI TDPs.

**8.8** **Notices.** Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the PI Trust with respect to his or her PI/NAS Claim.

(a) Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent



by ~~e-mail~~e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

      To the PI Trust through the Trustee:

<u>Mallinckrodt Opioid Personal Injury Trust:</u>

[Edgar C. Gentle, III, Esq.
Gentle, Turner, Sexton & Harbison, LLC
501 Riverchase Parkway East, Suite 100
Hoover, AL 35244
E-mail: egentle@gtandslaw.com]

<u>With a copy to</u>:

      [_____]

<u>To the Delaware Trustee</u>:

      [_____]

<u>To the PI Committee</u>:

Sean Higgins, Esq.
Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Email: shiggins@andrewsthornton.com

Troy Tatting, Esq.
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Email: ttatting@askllp.com

Rochelle Guiton, Esq.
D. Miller & Associates, PLLC
2610 West Sam Houston Pkwy Suite 200
Houston, TX 77042
Email: rochelle@dmillerlaw.com


~~28322086.8~~
28322086.11

To the NAS Representative:

Celeste Brustowicz, Esq.
Cooper Law Firm L.L.C.
1525 Religious Street
New Orleans, LA 70130
E-mail: cbrustowicz@clfnola.com

With a copy to:

Scott R. Bickford, Esq.
Martzell, Bickford & Centola
338 Lafayette Street
New Orleans, LA 70130
Email: srb@mbfirm.com

To the FCR:

Roger Frankel, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rfrankel@frankelwyron.com

With a copy to:

Richard H. Wyron, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rwyron@frankelwyron.com

And a copy to:

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Email: jpatton@ycst.com

To the Reorganized Debtors:

 [_____]

 28322086.8
28322086.11

With a copy to:

[_____]

(b)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

8.9     **Successors and Assigns**.    The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the PI Trust, the Trustee, and the Reorganized Debtors, and their respective successors and assigns, except that neither the Debtors, the PI Trust, the Trustee, nor the Reorganized Debtors may assign or otherwise transfer any of its, or their, rights or obligations, if any, under this Trust Agreement except, in the case of the PI Trust and the Trustee, as contemplated by Section 2.1 above.

8.10     **Limitation on Claim Interests for Securities Laws Purposes.**    PI/NAS Claims, and any interests therein, [other than encumbrances on proceeds of PI Claims], (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 8.10 shall not apply to the Holder of a claim that is subrogated to a PI/NAS Claim as a result of its satisfaction of such PI/NAS Claim.

8.11     **Entire Agreement; No Waiver.**    The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written

28322086.8
28322086.11

agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

      **8.12**  __Headings__**.**  The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

      **8.13**  __Governing Law__**.**  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the parties hereto intend that the provisions hereof shall control and there shall not be applicable to the PI Trust, the Trustee, the Delaware Trustee, the PI Committee, the NAS Representative, the FCR, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (d) fees or other sums payable to trustees, officers, agents or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or

28322086.8
28322086.11

limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, the PI Committee, or the FCR set forth or referenced in this Trust Agreement. Section 3540 of the DST Act shall not apply to the Trust.

Administration of the PI TDPs shall be governed by, and construed in accordance with, the laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any other jurisdiction.

**8.14    Settlors' Representative and Cooperation.**  The Debtors are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors by the Trustee in connection with the Trust Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Trust Agreement.

**8.15    Dispute Resolution.**  Any disputes that arise under this Trust Agreement or under the PI TDPs among the parties hereto shall be resolved by submission of the matter to binding arbitration; provided, however, that if one party objects to binding arbitration, the matter shall be submitted to the Bankruptcy Court for a judicial determination; further provided, however, that any dispute involving adjustment of the point value shall be resolved in the first instance by the ADR process. Should any party to the ADR process be dissatisfied with the decision of the arbitrator(s), that party may apply to the Bankruptcy Court for a judicial determination of the


28322086.8
28322086.11

matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.  In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the PI Committee), Section 6.7(b) (in the case of the NAS Representative), or Section 7.5(b) (in the case of the FCR), the burden of proof shall be on the party or parties who withheld consent to show that such party's objection and withholding of consent was reasonable.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. If the Trustee determines that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustee shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court.

8.16    **Enforcement and Administration.**  The provisions of this Trust Agreement and the PI TDPs shall be enforced by the Bankruptcy Court pursuant to the Plan.  The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes hereunder not resolved by alternative dispute resolution in accordance with Section 8.15 above. The Bankruptcy Court and the courts of the State of Delaware shall have the exclusive jurisdiction with respect to any action relating to or arising from the Trust.

8.17    **Effectiveness.**  This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

8.18    **Rules of Interpretation.**  For purposes of this Trust Agreement, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Trust Agreement

28322086.8
28322086.11

as a whole and not to any particular section, subsection or clause contained in this Trust Agreement; (c) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (d) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import. In this Trust Agreement and the PI TDPs the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

**8.19**   **Counterpart Signatures.**  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by facsimile or portable document format (pdf)), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.



IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date set forth above.

**SETTLORS:**

**MALLINCKRODT CORPORATION**

By:_____

Title:

**TRUSTEE**                                    **DELAWARE TRUSTEE**
                                               **[_____]**

By:_____    By:_____
Name:                                         Name:
                                               Title:

**PI COMMITTEE**                              **NAS REPRESENTATIVE**

_____       _____
Name:  Sean Higgins, Esq.                Name:  Celeste Brustowicz, Esq.

_____       **FUTURE CLAIMANTS'**
Name: Troy Tatting, Esq.                 **REPRESENTATIVE**

_____       _____
Name:  Rochelle Guiton, Esq.             Name:  Roger Frankel, Esq.

**Consented to by:**                          **Consented to by:**
**AD HOC GROUP OF PERSONAL**                  **AD HOC COMMITTEE OF NAS**
**INJURY VICTIMS**                            **CHILDREN**

_____       _____
Name:                                         Name:

