## Exhibit A

## Updated Draft of Opioid MDT II Trust Agreement

**PLEASE TAKE NOTICE** that certain documents, or portions thereof, contained in this Exhibit A and the Nineteenth Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto. The Debtors and such applicable interested parties reserve all of their respective rights, subject to the terms and conditions set forth in the Plan and the Restructuring Support Agreement (as amended), with respect to the final form of such documents and to amend, revise, or supplement the Nineteenth Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

---

The latest copy of the Opioid MDT II Trust Agreement was filed on the Court's Docket titled "*Notice of Filing of Exhibit A (Updated Opioid MDT II Trust Agreement), Exhibit B (Opioid MDT II Trust Distribution Procedures), Exhibit C (Updated NOAT II Trust Distribution Procedures), Exhibit D (Allocation Schedule for TAFT II Trust Distribution Procedures), Exhibit E (Schedule of Opioid Insurance Policies), and Exhibit F (Identity of Opioid MDT II Trustees)*" [Docket No. 4639, Ex. A].

The attached is a further revised Opioid MDT II Trust Agreement with a redline against the version docketed at Docket No. 4639, Ex. A.

**TRUST AGREEMENT OF**

**OPIOID MASTER DISBURSEMENT TRUST II**

**DATED AS OF [●], 2022**

**BY AND AMONG**

**MICHAEL ATKINSON, ANNE FERAZZI, AND JENNIFER E. PEACOCK AS TRUSTEES**

**WILMINGTON TRUST, N.A. AS RESIDENT TRUSTEE**

**and**

**THE DEBTOR PARTIES HERETO**

# TABLE OF CONTENTS

**Article I Declaration of Trust** ................................................................................................**4**

Section 1.01.    Creation of Trust. ..................................................................................4
Section 1.02.    Purpose of Trust. ...................................................................................4
Section 1.03.    Vesting of the Trust Assets and Funding of the Trust. ..........................4
Section 1.04.    Assumption of Certain Opioid Claims and the .....................................6
Section 1.05.    Appointment and Acceptance of Initial Trustees....................................6
Section 1.06.    No Reversion to Debtors. .......................................................................7
Section 1.07.    Relationship to Plan. .............................................................................7
Section 1.08.    Incidents of Ownership. ........................................................................7

**Article II Trust Beneficiaries** ..................................................................................................**7**

Section 2.01.    Trust Claims and Interests......................................................................7
Section 2.02.    Disputed or Conflicting Claims or Demands. ........................................7
Section 2.03.    Rights of Trust Beneficiaries. ................................................................8
Section 2.04.    Nontransferability of Trust Claims and Trust Interests...........................8
Section 2.05.    Limited Liability. ..................................................................................8

**Article III Powers and Trust Administration** ........................................................................**8**

Section 3.01.    Powers of the Trustees. .........................................................................8
Section 3.02.    Reporting.............................................................................................11
Section 3.03.    Master II TDP. ....................................................................................11

**Article IV Duration and Termination of the TRUST**............................................................**12**

Section 4.01.    Duration. .............................................................................................12
Section 4.02.    Dissolution. .........................................................................................12
Section 4.03.    Continuance of Trust for Winding Up. .................................................12

**Article V Accounts, Investments and Payments** ...................................................................**12**

Section 5.01.    Accounts...............................................................................................12
Section 5.02.    Trust Operating Reserve. .....................................................................13
Section 5.03.    Third-Party Payor Reserve....................................................................13
Section 5.04.    Ratepayer Account. ..............................................................................13
Section 5.05.    Opioid Attorneys' Fee Fund. ...............................................................13
Section 5.06.    Investments.. ........................................................................................14
Section 5.07.    Source of Payments..............................................................................14

**Article VI Tax Matters** ...........................................................................................................**14**

Section 6.01.    U.S. Federal Income Tax Treatment. ....................................................14

Section 6.02.    Tax Withholdings...................................................................................15
Section 6.03.    6050X Reporting....................................................................................15

**Article VII Distributions** .......................................................................................**16**

Section 7.01.    Distributions..........................................................................................16
Section 7.02.    Distribution Dates. ...............................................................................17

**Article VIII Trustees, MDT Executive Director and Resident Trustee**..................**17**

Section 8.01.    The Trustees; Managing Trustee...........................................................17
Section 8.02.    Term of Service of the Trustees. ..........................................................17
Section 8.03.    Appointment of Successor Trustees. ....................................................19
Section 8.04.    [Reserved.] ............................................................................................19
Section 8.05.    Independence of the Trustees................................................................19
Section 8.06.    Obligations of the Trustees. .................................................................19
Section 8.07.    Compensation and Expenses of the Trustees and Trust Professionals. ...........19
Section 8.08.    Trustee Meetings...................................................................................20
Section 8.09.    Resident Trustee....................................................................................21

**Article IX Reliance, Liability and Indemnification** ................................................**24**

Section 9.01.    Reliance by the Trustees. .....................................................................24
Section 9.02.    Nonliability of Trustees and Trust Professionals..................................24
Section 9.03.    Exculpation............................................................................................25
Section 9.04.    Limitation of Liability...........................................................................25
Section 9.05.    Indemnity. .............................................................................................25

**Article X Miscellaneous Provisions** ........................................................................**25**

Section 10.01.    Actions Taken on Other Than a Business Day. .................................25
Section 10.02.    Governing Law...................................................................................26
Section 10.03.    Jurisdiction. ........................................................................................26
Section 10.04.    Severability. ........................................................................................26
Section 10.05.    Notices. ...............................................................................................26
Section 10.06.    Headings..............................................................................................34
Section 10.07.    Entire Trust Agreement.......................................................................34
Section 10.08.    Amendment and Waiver. ....................................................................34
Section 10.09.    Confidentiality. ...................................................................................34
Section 10.10.    Meanings of Other Terms. .................................................................35
Section 10.11.    Counterparts........................................................................................35

## OPIOID MASTER DISBURSEMENT TRUST AGREEMENT

THIS OPIOID MASTER DISBURSEMENT TRUST II AGREEMENT (this "Trust Agreement"), dated as of [●], 2022 (the "Effective Date"), is entered into by and among each of (i) Mallinckrodt plc and its affiliated debtors and debtors-in-possession (each, a "Debtor" and, collectively, the "Debtors"),[1] as debtors and debtors-in-possession, (ii) the undersigned Trustees (together with any successor or additional trustee appointed under the terms of this Trust Agreement, the "Trustees"), and (iii) Wilmington Trust, N.A., as the Delaware resident trustee (together with any successor Delaware resident trustee appointed under the terms of this Trust Agreement, the "Resident Trustee"), for the purpose of forming a statutory trust under and pursuant to the provisions of the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, *et seq.* (as the same may from time to time be amended, or any successor statute, the "Trust Act").

## RECITALS

WHEREAS, on October 12, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the jointly administered chapter 11 cases jointly administered by the Bankruptcy Court under the caption *In re Mallinckrodt Plc, et al.*, Lead Case No. 20-12522 (JTD) (the "Chapter 11 Cases");

WHEREAS, on February 18, 2022, the Debtors filed the *Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 6510] (including all appendices, exhibits, schedules and supplements thereto, as the same may be altered, amended or modified from time to time in

---

[1] The Debtors include: Mallinckrodt plc, Acthar IP Unlimited Company, IMC Exploration Company, Infacare Pharmaceutical Corporation, INO Therapeutics LLC, Ludlow LLC, MAK LLC, Mallinckrodt APAP LLC, Mallinckrodt ARD Finance LLC, Mallinckrodt ARD Holdings Inc., Mallinckrodt ARD Holdings Limited, Mallinckrodt ARD IP Unlimited Company, Mallinckrodt ARD LLC, Mallinckrodt Brand Pharmaceuticals LLC, Mallinckrodt Buckingham Unlimited Company, Mallinckrodt Canada ULC, Mallinckrodt  CB LLC, Mallinckrodt Critical Care Finance LLC, Mallinckrodt Enterprises Holdings, Inc., Mallinckrodt Enterprises LLC, Mallinckrodt Enterprises UK Limited, Mallinckrodt Group S.a.r.l, Mallinckrodt Holdings GmbH, Mallinckrodt Hospital Products Inc., Mallinckrodt  Hospital Products IP Unlimited Company, Mallinckrodt International Finance SA, Mallinckrodt International Holdings S.a.r.l., Mallinckrodt IP Unlimited Company, Mallinckrodt  LLC, Mallinckrodt Lux IP S.a.r.l., Mallinckrodt Manufacturing LLC, Mallinckrodt Pharma IP Trading Unlimited Company, Mallinckrodt Pharmaceuticals Ireland Limited, Mallinckrodt Pharmaceuticals Limited, Mallinckrodt Quincy S.a.r.l., Mallinckrodt UK Finance LLP, Mallinckrodt UK Ltd, Mallinckrodt US Holdings LLC, Mallinckrodt US Pool LLC, Mallinckrodt Veterinary, Inc., Mallinckrodt Windsor Ireland Finance Unlimited Company, Mallinckrodt Windsor S.a.r.l., MCCH LLC, MEH, Inc., MHP Finance LLC, MKG Medical UK Ltd, MNK 2011 LLC, MUSHI UK Holdings Limited, Ocera Therapeutics, Inc., Petten Holdings Inc., SpecGx Holdings LLC, SpecGx LLC, ST Operations LLC, ST Shared Services LLC, ST US Holdings LLC, ST US Pool LLC, Stratatech Corporation, Sucampo Holdings Inc., Sucampo Pharma Americas LLC, Sucampo Pharmaceuticals, Inc., Therakos, Inc., Vtesse LLC, WebsterGx Holdco LLC, Mallinckrodt Equinox Finance LLC. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.

accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms thereof, the "Plan")[2] with the Bankruptcy Court;

WHEREAS, on March 2, 2022, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 6660] confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for, among other things, the creation of a master disbursement trust (as defined in the Plan, the "Opioid MDT II;" herein, the "Trust") on the Effective Date;

WHEREAS, in accordance with the Plan and the Confirmation Order, the Trust shall, among other things, (i) receive the Opioid MDT II Consideration and (ii) make distributions of Opioid MDT II Distributable Value to the holders of certain beneficial interests in the Trust;

WHEREAS, in accordance with the Plan, the Confirmation Order and the documents governing the Trust (as defined in the Plan, the "Opioid MDT II Documents;" herein, the "Trust Documents"), beneficial interests in the Trust shall be granted to:

(i)     the United States (such interest, the "Opioid MDT II Federal Government Claim"), which Opioid MDT II Federal Government Claim shall entitle the United States to treatment pursuant to Article III.B.8(d) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(ii)    Holders of Ratepayer Opioid Claims (such interest, the "Ratepayer Claims"), which Ratepayer Claims shall entitle the holders thereof to treatment pursuant to Article III.B.9(e) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(iii)   Holders of Other Opioid Claims (such interest, the "Other Claims;" together with the Opioid MDT II Federal Government Claim and Ratepayer Claims, the "Trust Claims"), which Other Claims shall entitle the holders thereof to treatment pursuant to Article III.B.9(h) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(iv)    (a) the NOAT II (such interest, the "MDT NOAT II Interest") and (b) the TAFT II (such interest, the "MDT TAFT II Interest") (collectively, the "Opioid MDT II Public Interests"), which Opioid MDT II Public Interests shall entitle the NOAT II and TAFT II (together as defined in the Plan, the "Public Creditor Trusts") to their respective shares of Opioid MDT II Distributable Value as set forth in Article IV.X.7 of the Plan in accordance with the terms of the Plan and this Trust Agreement;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, including by reference and incorporation the Plan Supplement and Exhibits to the foregoing.

(v)     (a) the Third-Party Payor Trust (such interest, the "Opioid MDT II TPP Interest"), (b) the PI Trust (such interest, the "Opioid MDT II PI Interest"), (c) the Hospital Trust (such interest, the "MDT Hospital Interest"), (d) the NAS Monitoring Trust (such interest, the "Opioid MDT II NAS Monitoring Interest"), and (e) the Emergency Room Physicians Trust (such interest, the "Opioid MDT II ERP Interest") (collectively, the "Opioid MDT II Private Interests;" together with the Opioid MDT II Public Interests, the "Trust Interests") which Opioid MDT II Private Interests shall entitle the Third-Party Payor Trust, PI Trust, Hospital Trust, NAS Monitoring Trust, and Emergency Room Physicians Trust (together and as defined in the Plan, the "Private Creditor Trusts;" and with the Public Creditor Trusts and holders of Trust Claims, the "Trust Beneficiaries") to their respective shares of Opioid MDT II Distributable Value as set forth in Article IV.X.7 of the Plan in accordance with the terms of the Plan and this Trust Agreement;

WHEREAS, the purposes of the Trust are, among other things, to: (i) resolve all asserted Opioid Claims channeled to the Trust in accordance with the Plan, Trust Documents, and the Confirmation Order (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims); (ii) preserve, hold, collect, manage, maximize, and liquidate the assets of the Trust for use in (x) resolving Opioid Claims channeled to the Trust (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims) and (y) funding the Opioid Creditor Trusts; (iii) enforce, pursue, prosecute, compromise, and/or settle the Assigned Third-Party Claims and Assigned Insurance Rights; (iv) initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Share Repurchase Claim; (v) pay all Opioid MDT II Operating Expenses as provided, and defined, in the Plan ("Trust Expenses") and Trust Documents (for which the Reorganized Debtors and the Released Parties shall have no responsibility or liability); (vi) pay any and all administration and operating expenses of the Trust, including the fees and expenses of any professionals retained by the Trust; (vii) establish and fund the Opioid Attorneys' Fee Fund; (viii) qualify at all times as a qualified settlement fund; and (ix) form a wholly-owned subsidiary, MNK Opioid Abatement Fund, LLC ("MOAF"), designate that such subsidiary be issued the New Opioid Warrants (on behalf of the Trust) and, after receipt of the New Opioid Warrants, distribute ownership interests in such subsidiary to the Opioid Creditor Trusts in accordance with the Master II TDP ; and

WHEREAS the Trust was established and is effective for the benefit of the Trust Beneficiaries.

## AGREEMENT

NOW, THEREFORE, pursuant to the Confirmation Order, and in consideration of the foregoing and upon the terms and subject to the mutual covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.01.  <u>Creation of Trust</u>. The Debtors and the Trustees, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Trust, which shall bear the name "Opioid Master Disbursement Trust II" or "Opioid MDT II." In connection with the exercise of the Trustees' powers hereunder, the Trustees may use this name or such variation thereof as the Trustees reasonably see fit. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under the Trust Act and that the Confirmation Order, the Plan and this Trust Agreement constitute the governing instruments of the Trust.

Section 1.02.  <u>Purpose of Trust</u>. The purpose of the Trust is to carry out the duties of the Trust as set forth in the Plan on behalf, and for the benefit, of the Trust Beneficiaries, including to effectuate the Master Trust Distributions Procedures attached as <u>Exhibit A</u> to this Trust Agreement (the "<u>Master II TDP</u>") and to liquidate, convert to Cash and distribute the Opioid MDT II Consideration and proceeds thereof and any assets thereafter acquired by the Trust (collectively, the "<u>Trust Assets</u>") in accordance with the terms of the Plan and this Trust Agreement. The Trust shall, in each case in accordance with the Plan and this Trust Agreement: (a) hold, manage, sell, invest and distribute the Trust Assets for the benefit of the Trust Beneficiaries in accordance with the Plan, Confirmation Order, and Trust Documents; (b) resolve all asserted Opioid Claims channeled to the Trust in accordance with the Plan, Trust Documents, and the Confirmation Order (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims); (c) enforce, pursue, prosecute, compromise and/or settle the Assigned Third-Party Claims and Assigned Insurance Rights; (d) initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Share Repurchase Claim; (e) make payments in satisfaction of the Trust Claims; (f) make distributions to the Public Creditor Trusts and Private Creditor Trusts, and holders of Other Opioid Claims; (g) fund the Opioid MDT II Operating Reserve (the "<u>Trust Operating Reserve</u>"), the Opioid MDT II Third-Party Payor Reserve (the "<u>Third-Party Payor Reserve</u>"), and the Ratepayer Account in accordance with the Plan, Confirmation Order, and Trust Documents; (h) pay all Trust Expenses as provided, and defined, in the Trust Documents, including but not limited to the fees and expenses of any professionals retained by the Trust; (i) establish, and fund the Opioid Attorneys' Fee Fund from which payments will be made pursuant to <u>Section 5.05</u> hereof; (j) qualify at all times as a qualified settlement fund pursuant to Section 468B of the IRC; and (k) form MOAF, designate that MOAF be issued the New Opioid Warrants and, after receipt of the New Opioid Warrants, distribute ownership interests in MOAF to the Opioid Creditor Trusts in accordance with the Master II TDP. The Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan, this Trust Agreement, or any other agreement entered into between the Trustees and any of the Debtors.

Section 1.03.  <u>Vesting of the Trust Assets and Funding of the Trust.</u>

(a)    On and after the Effective Date as specified pursuant to Section IV.W of the Plan and in accordance with the Confirmation Order and this Trust Agreement, the Opioid MDT II Consideration shall be irrevocably transferred to and vest in the Trust free and clear of all Claims,

Interests, Liens, other encumbrances and liabilities of any kind; *provided* that, to the extent certain Assets comprising the Opioid MDT II Consideration are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Trust upon the discovery or identification thereof. The Trust shall have no liability for any prepetition or postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except as expressly set forth in the Plan and Trust Documents.

(b)      In accordance with the Plan, the Opioid MDT II Consideration shall consist of:

(i)      the Initial Opioid MDT II Payment;

(ii)      the New Opioid Warrants, which the Debtors will issue directly to MOAF;

(iii)      the Opioid Deferred Cash Payments;

(iv)      the Assigned Third-Party Claims;

(v)      the Assigned Insurance Rights; and

(vi)      the Opioid MDT II Share Repurchase Proceeds.

(c)      Pursuant to Article IV.W.1 of the Plan, the transfer to the Trust of information and copies of documents, including books and records, in accordance with Article IV.W.1 of the Plan shall not result in the destruction or waiver of any applicable privileges. Further, the transfer and/or vesting of any privileges shall occur solely in accordance with, and be subject in all respects to, Article IV.W.1 of the Plan, which is incorporated herein by reference.

(d)      The Debtors shall execute any documents or other instruments and shall take all other steps as the Trustees reasonably request to reflect the transfer and assignment of the Opioid MDT II Consideration to the Trust. Upon the transfer of the Opioid MDT II Consideration to the Trust, neither the Debtors nor any other Person (other than the Trust Beneficiaries) shall have any interest in or with respect to the Opioid MDT II Consideration or the Trust other than as expressly provided for under this Trust Agreement and the Plan. Upon delivery of the Opioid MDT II Consideration to the Trust, the Debtors and their predecessors, successors and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Opioid MDT II Consideration or the Trust.

(e)      The transfer of the Opioid MDT II Consideration shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(f)      The Trust (and MOAF) shall be funded with the Opioid MDT II Consideration.

(g)      The Opioid MDT II Consideration and all other Assets held from time to time by the Trust under this Trust Agreement and any earnings, including interest, on any of the foregoing

shall be held and be applied by the Trustees solely in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

Section 1.04.   Assumption of Certain Opioid Claims and the Trust Documents.

(a)      As of the Effective Date, any and all liability of the Debtors and the other Protected Parties for all Opioid Claims not otherwise channeled to an Opioid Creditor Trust or the Ratepayer Account, including U.S. Government Opioid Claims, and Other Opioid Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Trust, and the Debtors, the Reorganized Debtors, and the Protected Parties shall have no liability or responsibility, financial or otherwise, therefor. The Trust's liability for such assumed Opioid Claims shall be limited to the FHCA Opioid Claims Share, and the Other Opioid Claimant Pro Rata Share.

(b)      The sole recourse of any Opioid Claimant on account of its Opioid Claims based upon or arising from the Debtors' pre-Effective Date conduct or activities shall be to the Trust or the Opioid Creditor Trusts, as applicable, pursuant to the Plan and Trust Documents, including the Master II TDP, and such Opioid Claimant shall have no right whatsoever at any time to assert its Opioid Claims against any Protected Party or any property or interest in property of any Protected Party.

(c)      In furtherance of the foregoing, except as otherwise provided in the Plan and the Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such Opioid Claims that the Debtors or the Reorganized Debtors have or would have had under applicable law.

(d)      For the avoidance of doubt, nothing in this Section 1.04 shall limit or affect the transfer of the Assigned Insurance Rights to the Trust.

(e)      Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Opioid Permanent Channeling Injunction or the releases granted pursuant to the Plan at Article IX thereof.

Section 1.05.   Appointment and Acceptance of Initial Trustees. Upon the occurrence of the Effective Date, each of the initial Trustees identified in Section 8.01(a) hereof shall be appointed to serve as the trustees of the Trust pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, subject to the terms of the Plan, the Confirmation Order and this Trust Agreement. The Trustees accept the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Trust Beneficiaries, by the Debtors of all of the Opioid MDT II Consideration, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order. The Trustees shall have and perform all of the duties, responsibilities, rights and obligations of the Trust set forth in the Plan and this Trust Agreement, as applicable. The Trustees, subject to the terms and conditions of the Plan, the Confirmation Order and this Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan, any agreement entered into in connection with the Plan, including but not limited to the New Opioid Warrant Agreement, Registration Rights Agreement, any Trust Documents or Opioid Creditor

6

Trust Documents, the Cooperation Agreement or any part of the Plan Supplement. The Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise. The Trustees shall have the authority to bind the Trust within the limitations set forth in this Trust Agreement, but shall for all purposes hereunder be acting in their respective capacities as Trustees, and not individually.

Section 1.06.    No Reversion to Debtors. In no event shall any part of the Opioid MDT II Consideration revert to or be distributed to any Debtor.

Section 1.07.    Relationship to Plan. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan) and Master II TDP (which may supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; (3) the Master II TDP; and (4) this Trust Agreement.

Section 1.08.    Incidents of Ownership. Except as otherwise provided in this Trust Agreement, the Trust Beneficiaries shall be the sole beneficiaries of the Trust, and the Trustees shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in this Trust Agreement.

ARTICLE II
TRUST BENEFICIARIES

Section 2.01.    Trust Claims and Interests.

(a)    On the Effective Date, (i) the Opioid MDT II Federal Government Claim shall be issued to the United States, (ii) the Ratepayer Claims shall be issued to the holders of Ratepayer Opioid Claims, and (iii) the Other Claims shall be issued to the holders of Other Opioid Claims.

(b)    On the Effective Date, (i) the MDT NOAT II Interest shall be issued to NOAT II, (ii) the MDT TAFT II Interest shall be issued to TAFT II, (iii) the Opioid MDT II TPP Interest shall be issued to the Third Party Payor Trust, (iv) the Opioid MDT II PI Interest shall be issued to the PI Trust, (v) the MDT Hospital Interest shall be issued to the Hospital Trust, (vi) the Opioid MDT II NAS Monitoring Interest shall be issued to the NAS Monitoring Trust, and (vii) the Opioid MDT II ERP Interest shall be issued to the Emergency Room Physicians Trust.

(c)    No party shall have any beneficial interest in the Trust except as set forth in the foregoing paragraphs (a) and (b).

Section 2.02.    Disputed or Conflicting Claims or Demands. If any dispute arises with respect to a payment or distribution on account of a Trust Interest, or a Trust Claim other than with respect to an Other Claim, the Trustees shall be entitled to elect to make no payment or distribution with respect to such Trust Claim or Interest subject to the dispute and the Trustees shall promptly refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution

7

of such disputes; *provided* that any undisputed portion of such payment or distribution shall not be deferred pending such resolution. In so doing, the Trustees shall not be or become liable to any party for its refusal to make such payment or distribution. The Trustees shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or such other court of proper jurisdiction or (b) all disputes have been resolved by a written agreement among all such parties and the Trustees, which agreement shall include a complete release of the Trust, the Trustees and the any relevant representatives thereof (the occurrence of either (a) or (b) in this Section 2.02 of this Trust Agreement being referred to as a "Dispute Resolution"). Promptly after a Dispute Resolution is reached, the Trustees shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution. For the avoidance of doubt, the foregoing paragraph shall not apply with respect to Other Claims and the holders of Other Claims.

Section 2.03.   Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder according to the terms of its Trust Claim or Interest, as applicable. Other than as expressly set forth in the Plan, Confirmation Order or this Trust Agreement, the Trust Claims and Interests shall not have consent or voting rights or otherwise confer on the Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Trustees in connection with the Trust. The Trust Claim or Interest, as applicable, of a Trust Beneficiary is hereby declared, and shall be in all respects, personal property. Except as expressly provided hereunder, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Trust or the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting. The whole title to the Trust Assets shall be vested in the Trust, and the sole interest of each Trust Beneficiary shall be the rights and benefits given to such Trust Beneficiary under this Trust Agreement, the Confirmation Order and the Plan. For the avoidance of doubt, upon the payment in full in Cash of any Trust Claim, the holder of such Trust Claim shall immediately cease to be a Trust Beneficiary for all purposes under this Trust Agreement, and the Trustees shall have no further fiduciary duties with respect to such holder.

Section 2.04.   Nontransferability of Trust Claims and Trust Interests. Except as may be expressly set forth in the Plan, the Trust Claims and Trust Interests shall be nontransferable and nonassignable.

Section 2.05.   Limited Liability. No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Trust Beneficiary, shall give rise to any liability of such Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditor, successor, representative, employee or equity interest holder of any Debtor, or by any other Person. Trust Beneficiaries shall be deemed to receive the Trust Claims and Trust Interests, as applicable, in the Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

ARTICLE III
POWERS AND TRUST ADMINISTRATION

Section 3.01.   Powers of the Trustees.

8

(a)     Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the Trustees shall have all powers necessary to accomplish the purposes of the Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order. The Trustees shall (i) have the power and authority to perform all functions on behalf of the Trust, (ii) be responsible for all decisions and duties with respect to the Trust and the Trust Assets, and (iii) in all circumstances, and at all times, act in a fiduciary capacity for the benefit of and in the best interests of the Trust Beneficiaries, in furtherance of the purposes of the Trust, and in accordance with the Plan and this Trust Agreement.

(b)     Without limiting, but subject to, the foregoing paragraph (a), and except as limited in the Plan, this Trust Agreement and by applicable law, the Trustees shall be expressly authorized to:

(i)     hold and maintain the Trust Operating Reserve and periodically, until the dissolution of the Trust, replenish the Trust Operating Reserve from Cash held or received by the Trust to the extent deemed necessary by the Trustees to satisfy and pay estimated future Trust Expenses, and release funds from the Trust Operating Reserve;

(ii)     establish and fund the Third-Party Payor Reserve for the payment of the Opioid MDT II TPP Interest;

(iii)     establish and fund the Opioid Attorneys' Fee Fund for reimbursement of State Opioid Claimant, Municipal Opioid Claimant, and Tribe Opioid Claimant costs and expenses (including attorneys' fees) pursuant to the Plan;

(iv)     make distributions to Trust Beneficiaries in accordance with the Plan and this Trust Agreement, subject to such deductions as required by the Plan;

(v)     determine the Opioid MDT II Initial Distribution Date and Opioid MDT II Subsequent Distribution Dates, to the extent permitted by the Plan and this Trust Agreement;

(vi)     appoint an executive director or other Trust staff to the extent determined advisable by the Trustees;

(vii)     retain professionals to assist in performing their duties under the Plan and hereunder;

(viii)     maintain the books, records and accounts of the Trust;

(ix)     invest Cash of the Trust only to the extent permitted hereunder;

(x)     incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of the professionals;

(xi)     loan funds to MOAF for MOAF to pay its taxes and operating expenses;

9

(xii)     administer the Trust's tax obligations, including, but not limited to, representing the interest and account of the Trust before any taxing authority in all matters including any claim, defense, action, suit, proceeding or audit;

(xiii)    in the case of the Trustee who is the "administrator" within the meaning of Treasury Regulations section 1.468B-2(k)(3), perform the duties and functions contemplated in <u>Section 6.01(b)</u> of this Trust Agreement;

(xiv)    maintain appropriate liability insurance for any Indemnified Parties;

(xv)     pay statutory fees;

(xvi)    institute procedures, terms and conditions for any actions brought against any Opioid Insurer consistent with <u>Section 3.01(e)</u> herein;

(xvii)   retain and compensate the Opioid MDT II Administrator for the liquidation and administration of the Other Opioid Claims; and

(xviii)  perform such other duties and functions that are consistent with the implementation of the Plan and this Trust Agreement.

(c)     The Trustees shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Trust, including in respect of any Causes of Action and Assigned Insurance Rights. Such legal actions and other proceedings shall be limited solely to those required for the purposes of satisfying the responsibilities of the Trust, including in respect of any Causes of Action held thereby and the Assigned Insurance Rights. The Trustees shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the Trustees. The Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which the Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

(d)     Except as otherwise provided in this Trust Agreement, the Trustees shall not be required to obtain any order or approval of the Bankruptcy Court or any other court of competent jurisdiction, or account to the Bankruptcy Court or any other court of competent jurisdiction, for the exercise of any right, power or privilege conferred hereunder.

(e)     To the extent the Trustees make a good faith determination that some or all of the proceeds under the Opioid Insurance Policies are substantially unrecoverable by the Trust, the Trustees shall have the sole and exclusive authority at any time, upon written notice to any affected Opioid Insurer and the Trust Beneficiaries, to terminate, reduce or limit the scope of the Opioid Insurer Injunction with respect to any Opioid Insurer; provided that:

(i)      any termination, reduction, or limitation of the Opioid Insurer Injunction shall apply in the same manner to all Classes of Opioid Claims;

10

(ii)    any actions asserted against the Opioid Insurers as a result of the termination or limitation of the Opioid Insurer Injunction shall comply with all procedures, terms and conditions implemented by the Trustees with respect to such actions;

(iii)    all proceeds recovered in any manner, directly or indirectly, from any Opioid Insurers (including, without limitation, as a result of actions asserted against, or settlements with, such Opioid Insurers) shall be paid directly to the Trust by the Opioid Insurer (or, if such direct payment is not possible, immediately transferred (and in no event later than one (1) business day upon receipt) to the Trust) for distribution in accordance with the Plan; and

(iv)    the Opioid Creditor Trustee(s) for each Opioid Creditor Trust that is a Trust Beneficiary may determine, subject to and in accordance with the applicable Opioid Creditor Trust Documents, to compensate the persons who have brought claims against Opioid Insurers as a result of the termination, reduction or limitation in scope of the Opioid Insurance Injunction; provided that, for the avoidance of doubt, such compensation shall not be additive to the amount that such Trust Beneficiary would otherwise receive pursuant to the Plan.

Section 3.02.  Reporting.

(a)    The Trustees shall provide reasonable reporting to each of the Opioid Creditor Trusts and the Future Claimants' Representative regarding the Trustees' activities at least every four (4) months (both cumulatively and in the period just ended), any insurance proceedings, assets (including the value thereof), expenditures, distributions and forward-looking projections.

(b)    The Trustees shall file each report pursuant to the preceding paragraph on the Bankruptcy Court docket and in connection with the filing of each report, host a call for the Opioid Creditor Trustees and the Future Claimants' Representative to answer questions relating thereto, and shall otherwise make themselves reasonably available to answer questions of the Trust Beneficiaries relating to the Trust's activities.

(c)    The Trustees shall establish a publicly available website (the "MDT II Website") as soon as reasonably practicable after the Effective Date to aid in communicating information to the Trust Beneficiaries and Holders of Opioid Claims and in making the activities of the Trust as transparent as possible. The Trustees shall publish on the MDT II Website (i) all reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with the Authorized Abatement Purposes, (ii) each report prepared and filed with the Bankruptcy Court in accordance with Section 3.02(b) hereof and (iii) such other information as the Trustees deem prudent.

Section 3.03.  Master II TDP. The Master II TDP shall become effective and be automatically implemented according to its terms and the terms of the Plan upon the Effective Date, without any further order of the Bankruptcy Court or action by the Trustees or any other Person.

11

ARTICLE IV
DURATION AND TERMINATION OF THE TRUST

Section 4.01.  <u>Duration</u>. The Trust was formed as of the execution and filing of a Certificate of Trust with the Delaware Secretary of State on May 4, 2022 and its existence is intended to continue until such time as its Certificate of Trust has been cancelled by the filing of a certificate of cancellation in accordance with <u>Section 4.03</u> of this Trust Agreement. The execution and filing of the Trust's Certificate of Trust with the Delaware Secretary of State by the Trustees and the Resident Trustee are hereby ratified.

Section 4.02.  <u>Dissolution</u>. The Trust shall be dissolved and the Trustees and any officers and employees and professionals thereof shall be discharged from their respective duties with respect to the Trust upon completion of their duties as set forth in the Plan and this Trust Agreement, which, for the avoidance of doubt, shall be no earlier than the date on which (a) all Trust Assets have been liquidated and (b) all payments and other distributions required to be made from the Trust under the Plan and this Trust Agreement have been made unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Subject to the foregoing sentences, the Trust shall be dissolved at such time as the Trustees determine that the administration of any remaining assets of the Trust is not likely to yield sufficient additional proceeds to justify further pursuit.

Section 4.03.  <u>Continuance of Trust for Winding Up</u>. After the dissolution of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustees shall continue to act as such until their duties have been fully performed. As soon as practicable after the Trustees exhaust substantially all of the assets of the Trust, the Trustees shall, at the expense of the Trust, (a) provide for the retention and storage of the Trust's books and records until such time as all such books and records are no longer required to be retained under applicable law, (b) file a certificate with the Bankruptcy Court informing the Bankruptcy Court of the location at which such books and records are being stored and stating that the assets of the Trust have been exhausted and that final distributions of Cash have been made pursuant to the Plan and this Trust Agreement, (c) notify the Trust Beneficiaries that the Trustees have exhausted substantially all of the assets of the Trust, and (d) file a certificate of cancellation with the Secretary of State of the State of Delaware to terminate the Trust (the "<u>Certificate of Cancellation</u>"). Upon the taking of such actions in the preceding sentence, the Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Trust or payments to be made in connection therewith. Notice of dissolution of the Trust and the filing of the Certificate of Cancellation shall be given to the Resident Trustee promptly following such filing.

ARTICLE V
ACCOUNTS, INVESTMENTS AND PAYMENTS

Section 5.01.  <u>Accounts</u>. The Trustees may, from time to time, create such accounts and reserves within or in the name of the Trust as they may deem necessary, prudent or useful in order to discharge their duties hereunder and may, with respect to any such accounts or reserves, restrict the use of monies therein, and the earnings or accretions thereto (the "<u>Trust Subaccounts</u>"). All

12

Trust Subaccounts established by the Trustees shall be held as Trust Assets and, except as otherwise provided in <u>Section 6.01(d)</u> of this Trust Agreement, are not intended to be subject to separate entity tax treatment as "disputed claims reserves" within the meaning of the IRC or Treasury Regulations, "disputed ownership funds" within the meaning of the IRC or Treasury Regulations, or otherwise.

Section 5.02.   <u>Trust Operating Reserve</u>. The Trust Operating Reserve shall be (i) initially funded on the Effective Date with a portion of the Opioid MDT II Initial Distributable Value in an amount determined by the Governmental Plaintiff Ad Hoc Committee, the MSGE Group, the Official Committee of Opioid-Related Claimants, and the Future Claimants' Representative with the consent (not to be unreasonably withheld, delayed or conditioned) of the Debtors, and (ii) funded thereafter from time to time with Cash held or received by the Trust in accordance with this Trust Agreement and the Master II TDP, and as determined by the Trustees.  The Trustees may periodically release funds from the Trust Operating Reserve, and any released funds will be applied as set forth in the Master II TDP. The Trust Operating Reserve shall be held by the Trust in a segregated account and administered by the Trustees on and after the Effective Date.  All Trust Expenses shall be satisfied and paid from the Trust Operating Reserve.

Section 5.03.   <u>Third-Party Payor Reserve</u>. The Third-Party Payor Reserve shall be funded on the Effective Date with amounts sufficient to make the first payment due 180 days after the Effective Date, as set forth in Article III.B.9(a) of the Plan, and thereafter with amounts sufficient to make the payments due on the first and second anniversaries of the first payment made 180 days after the Effective Date, as set forth in Article III.B.9(a) of the Plan, on account of the Opioid MDT II TPP Interest.

Section 5.04.   <u>Ratepayer Account</u>. The Trustees shall establish the Ratepayer Account in a single segregated account administered by the Ratepayer Mediation Participants for Approved Uses, which shall include distributions to the Truth Initiative Foundation, in accordance with the Plan and this Trust Agreement. Upon the establishment and funding of the Ratepayer Account, the Ratepayer Claims shall be satisfied in full and extinguished, the holders thereof shall have no further rights under this Trust Agreement, and the Trustees shall have no further fiduciary duties in respect of such Ratepayer Claims.

Section 5.05.   <u>Opioid Attorneys' Fee Fund</u>.  The Trustees shall make payments out of the Public Opioid Creditor Share to the Opioid Attorneys' Fee Fund as set forth in the Master II TDP. The Opioid Attorneys' Fee Fund consists of the State Opioid Attorneys' Fee Fund and the Municipal and Tribe Opioid Attorneys' Fee Fund.  The State Opioid Attorneys' Fee Fund shall be established by the National Opioid Abatement Trust II, and administered in accordance with the provisions attached as Exhibit 5 of the National Opioid Abatement Trust II Trust Agreement.  The Trustees shall establish the Municipal and Tribe Opioid Attorneys' Fee Fund in a single segregated account prior to making distributions of Public Opioid Creditor Share Distributable Value as set forth in Article IV.X.9 of the Plan.  Administration and investment of the Municipal and Tribe Opioid Attorneys' Fee Fund will be in accordance with Exhibit 7 of the Plan; provided, however, that it is acknowledged that the Trust holds such funds for administrative convenience and the Trustees have no responsibility to invest such funds or discretion to vary from the processes and determinations set forth in Exhibit 7 of the Plan; provided further that the signatories to Exhibit 7

13

of the Plan may direct the Trustees in writing to invest such funds in one or more specified interest bearing accounts, and the Trustees shall invest the funds accordingly. To the extent the Trustees do not receive any such written direction, the Trustees shall invest the funds in the designated default account at BlackRock Fed Fund (CUSIP 09248U700). The Trustees shall use reasonable best efforts to provide to the Reorganized Debtors, no later than fifteen (15) days following the end of each calendar quarter, an estimate of the aggregate payments made to the State Opioid Attorneys' Fee Fund and the Municipal and Tribe Opioid Attorneys' Fee Fund to the extent set forth in Section IV.W.2.b of the Plan.

Section 5.06.  Investments. Investment of monies held in the Trust shall comply with the guidelines set forth in Exhibit B to this Trust Agreement.

Section 5.07.  Source of Payments. All Trust Expenses and payments shall be payable solely out of the assets of the Trust. None of the Trustees, any Trust representative, officer, employee, or professional or any Protected Party shall be liable for the payment of any Trust expense or payment or any other liability of the Trust, except to the extent provided in the Plan, any agreement entered into in connection with the Plan, including but not limited to the New Opioid Warrant Agreement, Registration Rights Agreement, any Trust Documents or Opioid Creditor Trust Documents, the Cooperation Agreement or any part of the Plan Supplement.

ARTICLE VI
TAX MATTERS

Section 6.01.  U.S. Federal Income Tax Treatment.

(a)     The Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC (the "QSF Regulations") and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties (including the Debtors, the Trust, the Trustees and the Public Creditor Trusts and Private Creditor Trusts) shall report consistently with the foregoing.

(b)     A Trustee, as determined by a majority vote of the Trustees, shall be the "administrator," within the meaning of Treasury Regulations section 1.468B-2(k)(3), of the Trust. The administrator of the Trust shall be responsible for (i) preparing and filing, or causing to be prepared and filed, all tax returns of the Trust and the payment, out of the Assets of the Trust, of any taxes due by or imposed on the Trust and (ii) complying with all applicable tax reporting and withholding obligations consistent, to the extent applicable, with the provisions of Section IV.W.2.b of the Plan.  The Trustees shall be responsible for causing the Trust to satisfy all requirements necessary to qualify and maintain qualification of the Trust as a qualified settlement fund within the meaning of the QSF Regulations, and shall take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations. The Trustees may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the dissolution of the Trust.

(c)     Subject to <u>Section 6.01(b)</u> of this Trust Agreement, following the Effective Date, the Trustees shall be responsible for all of the Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings. The Trustees shall also file (or cause to be filed) any other statement, return or disclosure relating to the Trust that is required by any governmental unit and be responsible for payment, out of the Trust Operating Reserve, of any taxes imposed on the Trust or its assets.

(d)     The Trustees may elect to establish a reserve for Other Opioid Claims, which reserve would be treated as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations, and to the extent permitted by applicable law, report consistently for state and local income tax purposes. The Trustees will cause such reserve to timely file all required tax returns and timely pay all taxes, if any, imposed thereon.

Section 6.02.    <u>Tax Withholdings</u>. The administrator of the Trust shall withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Trust Beneficiaries for all purposes of this Trust Agreement. The Trustees shall be authorized to collect such tax information from the Trust Beneficiaries (including tax identification numbers) as in their sole discretion the Trustees deem necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement. In order to receive distributions, all Trust Beneficiaries shall be required to provide tax information to the Trustees to the extent the Trustees deem appropriate in the manner and in accordance with the procedures from time to time established by the Trustees for these purposes. The Trustees may refuse to make a payment or distribution to a Trust Beneficiary that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Trust Beneficiary's Trust Claim or Trust Interest, as applicable, as disputed; *provided*, *however*, that, upon the delivery of such information by a Trust Beneficiary, the Trustees shall make such payment or distribution to which such Trust Beneficiary is entitled, without additional interest occasioned by such Trust Beneficiary's delay in providing tax information. Notwithstanding the foregoing, if a Trust Beneficiary fails to furnish any tax information reasonably requested by the Trustees before the date that is three hundred sixty-five (365) calendar days after the request is made or, if earlier, the date on which the Trust is terminated in accordance with Article IV of this Trust Agreement, the amount of such payment or distribution shall irrevocably revert to the Trust, and any Opioid Claim with respect to such distribution shall be discharged and forever barred from assertion against the Trust Beneficiary or its property.

Section 6.03.    <u>6050X Reporting</u>. The Trust and the Reorganized Debtors shall reasonably cooperate in good faith with each other, NOAT II, the Public Schools' Special Education Initiative, and each of their respective representatives with respect to the reporting required pursuant to Section 6050X of the IRC regarding the payments or transfers of property required under the Plan. If permitted under applicable law, the Trust, NOAT II and the Public Schools' Special Education Initiative may appoint a single appropriate official to file a single information return in accordance with Treasury Regulation Sections 1.6050X-1(b)(3) and 1.6050X-1(f)(1)(ii)(B).  The Trust shall provide to the Reorganized Debtors a draft of any information return it has determined that it (or the single appropriate official referenced in the prior sentence) is required to file with the IRS with

respect to payments or transfer of property to it under the Plan, no later than thirty (30) days prior to the deadline for filing such information return.  The Trust shall consider in good faith any and all comments timely received from the Reorganized Debtors with respect thereto.  If, after consultation with its tax advisors, the Trustees (or analogous authorized persons, in the case of the single appropriate official) reasonably determine in good faith that any such comments should not be reflected in such filing, the Trust and the Reorganized Debtors shall use reasonable best efforts to negotiate in good faith so as to reach a mutually agreeable resolution, and cooperate with, as applicable, NOAT II and the Public Schools' Special Education Initiative to do so.  If the parties are unable to reach a mutually agreeable resolution, the matter shall be resolved as directed by the Bankruptcy Court.

ARTICLE VII
DISTRIBUTIONS

Section 7.01.    <u>Distributions</u>.

(a)    The Trustees shall distribute all Trust Assets on behalf of the Trust in accordance with the Plan and this Trust Agreement.

(b)    In accordance with the Plan and Master II TDP, the Trust shall make the (i) Opioid MDT II Initial Distribution, and (ii) distribution of the equity in MOAF to NOAT II, TAFT II, PI Trust and Hospital Trust, in each case, on the Opioid MDT II Initial Distribution Date.

(c)    In accordance with the Plan and Master II TDP, the Trust shall make the Opioid MDT II Subsequent Distributions on the Opioid MDT II Subsequent Distribution Dates; provided that the Trust shall reduce, in accordance with and subject to the conditions of Section 10.3 of the MOAF LLC Agreement and without duplication, distributions to be made to any Trust Beneficiary holding equity in MOAF in an amount equal to the excess of the Interest Holder Taxes (as defined below) with respect to such Trust Beneficiary over the amount that was recouped by MOAF through a reduction of distributions to the applicable member or otherwise repaid to the Trust by MOAF with respect to such Interest Holder Taxes (i) to the extent the Trust loaned funds to MOAF pursuant to Section 3.01(b)(xi) hereof to pay taxes that such applicable Trust Beneficiary (in its capacity as a member of MOAF) would have been responsible for, if a "push-out" election under Section 6226 of the Code were made (the "<u>Interest Holder Taxes</u>"), and (ii) MOAF subsequently informs the Trust that it was unable to fully recoup such Interest Holder Taxes through a reduction of subsequent distributions to the applicable member.

(d)    In accordance with the Master II TDP, the Trust shall distribute the NOAT II MOAF Interest, the TAFT II MOAF Interest, the PI Trust MOAF Interest, the NAS PI Trust MOAF Interest, and the Hospital Trust MOAF Interest.

(e)    The Trustees shall not make any distributions to Trust Beneficiaries other than as provided in the foregoing paragraphs (b), (c), and (d).

(f)    All distributions made by the Trustees to any Trust Beneficiary shall become the property of such Trust Beneficiary, free and clear of all Claims, Liens or other recourse or encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person.

16

(g)     Notwithstanding any other provision of this Trust Agreement, the foregoing paragraphs of this Section 7.01 shall not apply with respect to the Opioid MDT II Administrator or any distributions from the Ratepayer Account.

Section 7.02.   Distribution Dates.

(a)     The Opioid MDT II Initial Distribution Date shall be the Effective Date or as soon as reasonably practicable thereafter.

(b)     Each Opioid MDT II Subsequent Distribution Date shall be a date that is five (5) Business Days after each Opioid Deferred Cash Payment is made to the Trust, or such other date as the Trustees determine in their reasonable discretion in accordance with the Trust Documents.

ARTICLE VIII
TRUSTEES, MDT EXECUTIVE DIRECTOR AND RESIDENT TRUSTEE

Section 8.01.   The Trustees; Managing Trustee.

(a)     There shall be three (3) Trustees. The initial Trustees shall be Michael Atkinson, Anne Ferazzi and Jennifer E. Peacock. References herein to the Trustees shall refer to the individuals serving as the Trustees solely in their respective capacities as trustees hereunder.

(b)     Unless otherwise provided herein, any act of the Trust shall require the approval of and shall be approved by the affirmative vote of a majority of the Trustees.

(c)     The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

(d)     At their first meeting, the initial Trustees shall designate one of their number to serve as the Managing Trustee of the Trust, with such administrative duties as the Trustees may determine.  The Trustees may change the designation of the individual to serve as the Managing Trustee from time to time as circumstances warrant.  The Managing Trustee, or in the Managing Trustee's absence, another Trustee selected by the Trustees shall preside at meetings of the Trustees.  The Managing Trustee, or the Trustee presiding over such meeting, shall be responsible for taking meeting minutes at each meeting of the Trustees and for performing such other administrative duties and services as shall be assigned to or required of the Managing Trustee by the Trustees.  The Managing Trustee shall maintain a list of current Trustees, including their addresses and contact information.

Section 8.02.   Term of Service of the Trustees.

(a)     Each Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 8.02(b) hereof, (iii) his or her removal pursuant to Section 8.02(c) hereof and (iv) such Trustee complying with his or her obligations pursuant to Section 4.03 following the dissolution of the Trust pursuant to Section 4.02 hereof.

(b)     A Trustee may resign from the Trust by giving not less than sixty (60) days' prior written notice thereof to each of the other Trustees. Such resignation shall become effective on the

17

later to occur of (i) the date specified in such written notice, (ii) the effective date of the appointment of a successor Trustee in accordance with <u>Section 8.03(a)</u> of this Trust Agreement and such successor's acceptance of such appointment in accordance with <u>Section 8.03(b)</u> of this Trust Agreement and (iii) if such Trustee is the last Trustee then in office, the appointment of a successor by the Bankruptcy Court and the acceptance by such successor of such appointment. If a successor Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation of the last Trustee in office, then such Trustee may petition the Bankruptcy Court for the appointment of a successor Trustee. With respect to any other Trustee's resignation, such resignation shall be effective whether or not a successor has been appointed by the effective date of the resigning Trustee's resignation.

(c)    Any Trustee may be removed either (i) at the unanimous recommendation of the other two (2) Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause or (ii) in connection with any dispute raised by any Trust Beneficiary in accordance with <u>Section 8.02(d)</u> below. Any removal of any Trustee shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)    To the extent there are any disputes raised by any Trust Beneficiary, other than the holder of an Other Claim, regarding the operation of the Trust or the actions of the Trustees, (i) any Trust Beneficiary shall have the right to seek resolution by the Bankruptcy Court of such a dispute, including seeking to enjoin any disputed action by the Trust, and all Trustees and Trust Beneficiaries shall have the right to be heard with regard to any such dispute, including by filing objections, declarations, statements in support or other pleadings (including with supporting evidence) or providing witness testimony at any hearing and (ii) the Bankruptcy Court shall have exclusive jurisdiction to hear and resolve any such disputes, and shall be authorized to order appropriate relief subject to the provisions of Article IV.U.2 of the Plan and this Trust Agreement. For the avoidance of doubt, the foregoing paragraph shall not apply with respect to holders of Other Claims.[3]

(e)    The death, resignation or removal of a Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by such Trustee. All fees and expenses properly incurred by a Trustee prior to the death, resignation or removal of such Trustee shall be paid from the Trust Operating Reserve, unless such fees and expenses are disputed, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Trust Operating Reserve. In the event of the resignation or removal of a Trustee, such Trustee shall (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the remaining Trustees or the successor Trustee or directed by the Bankruptcy Court to effect the termination of such Trustee's capacity under this Trust Agreement, (ii) promptly deliver to the remaining Trustees and the successor Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of such

---

[3] For the avoidance of doubt holders of Other Opioid Claims shall have all of the rights afforded to them under the Bankruptcy Code as holders of Disputed Claims.

Trustee, and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

Section 8.03.    Appointment of Successor Trustees.

(a)    In the event of the death, resignation or removal of a Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by the other two (2) Trustees, subject to the approval of the Bankruptcy Court. Such appointment shall specify the date on which such appointment shall be effective.

(b)    Any successor Trustee appointed in accordance with this Trust Agreement shall execute an instrument accepting its appointment and shall deliver a counterpart thereof to the Bankruptcy Court for filing and, in case of a Trustee's resignation, to the resigning Trustee. Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Trust with like effect as if originally named an initial Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The resigning or removed Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such resigning or removed Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Trustee.

Section 8.04.    [Reserved.]

Section 8.05.    Independence of the Trustees.

(a)    From and after the Effective Date, the Trustees shall be disinterested and independent.

(b)    From and after the Effective Date, none of the Trustees shall hold a financial interest in, act as a representative, attorney, consultant or agent for or serve as any other professional for the Debtors, their affiliated persons, any Public Creditor Trust or Private Creditor Trust (other than the Trust).  No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Cases.  For the avoidance of doubt, this provision shall not apply to the Resident Trustee.

Section 8.06.    Obligations of the Trustees. The Trustees shall take into account the interests of, and owe fiduciary duties to, each of the Trust Beneficiaries in making all decisions on behalf of the Trust in accordance with Article IV.U.2 of the Plan.

Section 8.07.    Compensation and Expenses of the Trustees and Trust Professionals. The Trustees shall be entitled to reasonable compensation, reimbursement of reasonable out-of-pocket expenses, and to retain and reasonably compensate counsel, an executive director, agents, advisors, consultants and other professionals (the "Trust Professionals") to assist in the duties of the Trust on such terms as the Trustees deem appropriate, without Bankruptcy Court approval. The initial compensation of the Trustees shall be $250,000 per annum per Trustee; provided that the

Managing Trustee shall receive an additional $25,000 per annum. The annual compensation of the Trustees may be increased each year after the first anniversary of the Effective Date, provided however that such annual increase shall not exceed the greater of 3% or the percentage equal to the most recently announced Social Security Administration cost-of-living adjustment. The payment of the fees and expenses of the Trustees and Trust Professionals shall be made from the Trust Operating Reserve in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided* that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

Section 8.08.   Trustee Meetings.

(a)   Regular Meetings**.** The Trustees shall hold regular meetings not less than quarterly, which may be held without notice at such times and at such places as may be determined from time to time by the Trustees.

(b)   Special Meetings**.** Special meetings of the Trustees may be called by any Trustee by giving written notice to each other Trustee not less than one (1) business day prior to the date of the meeting. Any such notice shall include the time, place and purpose of the meeting, given to each Trustee by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication. Notice shall be addressed or delivered to each Trustee at the Trustee's address as shown upon the records of the Trust or as may have been given to Trustees by the Trustee for purposes of notice. If a Trustee's address is not shown on such records or is not readily ascertainable, notice to the Trustee may be given care of the principal office of the Trust. Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier. Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)   Action and Quorum**.** In all matters pertaining to the affairs of the Trust, the Trustees shall act by a vote of a majority of the number of Trustees then in office, which such majority shall constitute a quorum of the Trustees for the transaction of business, except to adjourn as provided in Section 8.08(f).

(d)   Participation in Meetings by Telephone Conference**.** Trustees may participate in a meeting of the Trustees by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all Trustees participating in such meeting can hear one another. Participation by a Trustee in a meeting pursuant to this Section 8.08(d) shall constitute presence in person at such meeting.

(e)   Waiver of Notice**.** Notice of a meeting need not be given to any Trustee who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust's records or made a part of the minutes of the meeting. Attendance at a meeting by a Trustee shall constitute a waiver of notice of such meeting except when the Trustee attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business on the ground that the meeting was not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any Trustee meeting need be specified in any waiver of notice.

20

(f)     Adjournment. A majority of the Trustees present, whether or not a quorum exists, may adjourn any Trustees' meeting to another time and place.

(g)     Action by Unanimous Written Consent. Any action required or permitted to be taken at any meeting of the Trustees may be taken without a meeting, if all of the Trustees then in office consent thereto in writing or by Electronic Transmission, which writing may be executed in one or more counterparts, and the writing or Electronic Transmission are filed with the meeting minutes of the Trustees. As used herein, "Electronic Transmission" means any form of communication not directly involving the physical transmission of paper that creates a record that may be retained, retrieved and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

Section 8.09.   Resident Trustee.

(a)     The Resident Trustee has been appointed and hereby agrees to serve as a trustee of the Trust solely for the purpose of complying with the requirement of Section 3807(a) of the Trust Act that the Trust have one trustee, which, in the case of a natural person, is a resident of the State of Delaware, or which in all other cases, has its principal place of business in the State of Delaware. The duties and responsibilities of the Resident Trustee shall be limited solely to (i) accepting legal process served on the Trust in the State of Delaware, and (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Resident Trustee is required to execute under Section 3811 of the Trust Act. Except as provided in the foregoing sentence, the Resident Trustee shall have no management responsibilities or owe any fiduciary duties to the Trust, the Trustees, or the Trust Beneficiaries.  To the extent that, at law or in equity, the Resident Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Trust Beneficiaries, such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Trust Act, and are replaced entirely by the duties and liabilities of the Resident Trustee as expressly set forth in this Section 8.09.

(b)     By execution of this Trust Agreement, the Resident Trustee accepts the Trust created herein. Except as otherwise expressly required by Section 8.09(a) of this Trust Agreement, the Resident Trustee shall not have any duty or liability with respect to the administration of the Trust, the investment of the assets of the Trust or the distribution of the Trust Assets to the Trust Beneficiaries, and no such duties shall be implied. The Resident Trustee shall not be liable for the acts or omissions of the Trustees, nor shall the Resident Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Trustees or Trust Professionals under this Trust Agreement, except as expressly required by Section 8.09(a) of this Trust Agreement. The Resident Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Resident Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, bad faith or gross negligence. Without limiting the foregoing:

(i)     the Resident Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

21

(ii)    no provision of this Trust Agreement shall require the Resident Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Resident Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)   the Resident Trustee shall not be personally liable for the validity or sufficiency of this Trust Agreement or for the due execution of this Trust Agreement by the other parties to this Trust Agreement;

(iv)    the Resident Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(v)     the Resident Trustee may request the Trustees to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, or to provide written instructions, and such certificate or instructions shall constitute full protection to the Resident Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)    in the exercise or administration of the Trust hereunder, the Resident Trustee (A) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and (B) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel;

(vii)   the Resident Trustee acts solely as Resident Trustee hereunder and not in its individual capacity, and all persons having any claim against the Resident Trustee by reason of the transactions contemplated by this Trust Agreement shall look only to the assets of the Trust for payment or satisfaction thereof;

(viii)  the Resident Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Resident Trustee; and

(ix)    the Resident Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes;

fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(c)     The Resident Trustee shall be entitled to receive compensation out of the assets of the Trust Operating Reserve for the services that the Resident Trustee performs in accordance with this Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Resident Trustee and the Trustees. The Resident Trustee may also consult with counsel (who may be counsel for the Trust or for the Resident Trustee) with respect to those matters that relate to the Resident Trustee's role as the Delaware resident trustee of the Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of the Trust Operating Reserve to the Resident Trustee pursuant to this Section 8.09(c) on terms acceptable to the Trustees; *provided* that no such fees shall be reimbursed to the extent that they are incurred as a result of the Resident Trustee's gross negligence, bad faith or willful misconduct.

(d)     The Resident Trustee shall serve for the duration of the Trust or until the earlier of (i) the effective date of the Resident Trustee's resignation, or (ii) the effective date of the removal of the Resident Trustee. The Resident Trustee may resign at any time by giving thirty (30) days' written notice to the Trustees; *provided*, *however*, that such resignation shall not be effective until such time as a successor Resident Trustee has accepted appointment. The Resident Trustee may be removed at any time by the Trustees by providing thirty (30) days' written notice to the Resident Trustee; *provided*, *however*, such removal shall not be effective until such time as a successor Resident Trustee has accepted appointment. Upon the resignation or removal of the Resident Trustee, the Trustees shall appoint a successor Resident Trustee. If no successor Resident Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Resident Trustee at the expense of the Trust may petition the Bankruptcy Court or any other court of competent jurisdiction for the appointment of a successor Resident Trustee. Any successor Resident Trustee appointed pursuant to this Section 8.09(d) of this Trust Agreement shall be eligible to act in such capacity in accordance with this Trust Agreement and, following compliance with this Section 8.09(d) of this Trust Agreement, shall become fully vested with the rights, powers, duties, and obligations of its predecessor under this Trust Agreement, with like effect as if originally named as Resident Trustee. Any such successor Resident Trustee shall notify the Resident Trustee of its appointment by providing written notice to the Resident Trustee, and upon receipt of such notice, the Resident Trustee shall be discharged of its duties herein.  The successor Resident Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with Section 3810 of the Act.

(e)     Notwithstanding anything herein to the contrary, any business entity into which the Resident Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Resident Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the

Resident Trustee, shall be the successor of the Resident Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

ARTICLE IX
RELIANCE, LIABILITY AND INDEMNIFICATION

Section 9.01.  <u>Reliance by the Trustees</u>. Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, each Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by such Trustee to be genuine and to have been signed or presented by the proper party or parties having relevant authority or expertise.

Section 9.02.  <u>Nonliability of Trustees and Trust Professionals</u>. Except as provided herein, nothing contained in this Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by any Trustee or Indemnified Trust Professional of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any Trustee or Indemnified Trust Professional to assume or accept any such liability, obligation or duty. Any successor Trustee or newly retained Indemnified Trust Professional may accept and rely upon any accounting made by or on behalf of any predecessor Trustee or Indemnified Trust Professional hereunder, and any statement or representation made as to the assets comprising the Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. The Trustees and Indemnified Trust Professionals shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. Any successor Trustee or newly retained Indemnified Trust Professional shall not be liable for any act or omission of any predecessor Trustee or Indemnified Trust Professional, nor have a duty to enforce any claims against any predecessor Trustee or Indemnified Trust Professional on account of any such act or omission. No provision of this Trust Agreement shall require the Trustees or Indemnified Trust Professionals to expend or risk their personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder if the Trustee or Indemnified Trust Professional has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him or her. For the purposes of Article IX, "<u>Indemnified Trust Professional</u>" shall mean (i) any executive director, agent, advisor, consultant and other professional of the Trust, the Trustees and the Resident Trustee (in each case exclusive of counsel) or (ii) a Designated Indemnitee.  For the avoidance of doubt, "Indemnified Trust Professional" shall not include any outside counsel to any Trustee, the Resident Trustee or the Trust unless such outside counsel is a "Designated Indemnitee." As used herein, the term "<u>Designated Indemnitee</u>" shall mean any counsel (including any outside counsel) designated by action of the Trustees as a Designated Indemnitee. The Trustees may delegate to any Trustee its authority to designate individuals as Designated Indemnitees subject to any such limitations as the Trustees may specify in such delegation; provided, however, that no Person shall be a "Designated Indemnitee" with respect to such Person's service in any role prior to the Effective Date, including as an employee, agent or representative of any Debtor or any subsidiary of any Debtor.

24

Section 9.03.  <u>Exculpation</u>. To the maximum extent permitted by applicable law, each of the Trustees, Indemnified Trust Professionals and the Resident Trustee shall not have or incur any liability for actions taken or omitted in his or her capacity as a Trustee, Indemnified Trust Professional or the Resident Trustee, or on behalf of the Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as a Trustee, Indemnified Trust Professional or the Resident Trustee, or on behalf of the Trust, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Trustees, Indemnified Trust Professionals or the Resident Trustee shall be satisfied from the Trust Operating Reserve.

Section 9.04.  <u>Limitation of Liability</u>. The Trustees, the Resident Trustee, and Indemnified Trust Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances.

Section 9.05.  <u>Indemnity</u>. The Trust shall indemnify and hold harmless each of the Trustees, Indemnified Trust Professionals and Resident Trustee, in each case solely in such Person's capacity as such (each, an "<u>Indemnified Party</u>"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (other than taxes in the nature of income taxes imposed on compensation paid to the Indemnified Parties), including, but not limited to, attorneys' fees, arising out of or due to the implementation or administration of the Plan or this Trust Agreement, other than such Indemnified Party's willful misconduct, bad faith, gross negligence or fraud, with respect to the implementation or administration of the Plan or this Trust Agreement. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (a) any payment on account of such claim shall be paid solely from the Trust Operating Reserve and (b) the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (provided that such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Trust Operating Reserve or any insurance purchased using the Trust Operating Reserve. This indemnification provision shall remain available to, and the repayment obligation be binding upon, any former Trustee, Indemnified Trust Professional or Resident Trustee or the estate of any deceased Trustee, Indemnified Trust Professional or Resident Trustee, as the case may be, and shall survive the termination of the Trust.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

Section 10.01. <u>Actions Taken on Other Than a Business Day</u>. In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 10.02. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

Section 10.03. <u>Jurisdiction</u>. Subject to the proviso below, the Bankruptcy Court shall have exclusive jurisdiction over the Trust, the Trustees and the Trust Professionals, including the administration and activities of the Trust, the Trustees and the Trust Professionals, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; *provided*, *however*, that, notwithstanding the foregoing, the Trustees shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Causes of Action held by the Trust.

Section 10.04. <u>Severability</u>. In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

Section 10.05. <u>Notices</u>. Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email, sent by nationally recognized overnight delivery service or mailed by first-class mail:

(a)     if to the Trust, to:

> Opioid Master Disbursement Trust II
> 36 S. Charles Street, Suite 2310
> Baltimore, MD 21201
> Attn: Michael Atkinson
> Email: JPeacock@MDTAdmin.com; MAtkinson@MDTAdmin.com; and
> AFerazzi@MDTAdmin.com

with a copy (which shall not constitute notice) to:

> Brown Rudnick LLP
> 7 Times Square
> New York, NY 11036
> Attn: David J. Molton, Esq., Steven D. Pohl, Esq. and Gerard Cicero, Esq.
> Email: dmolton@brownrudnick.com, spohl@brownrudnick.com and
> gcicero@brownrudnick.com

(b)     if to the Resident Trustee

26

Wilmington Trust, N.A.
1100 North Market Street
Wilmington, DE 19890
Attn: Michael Bochanski, Jr.
Email: mbochanski@wilmingtontrust.com

with a copy (which shall not constitute notice) to:

Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Attn: Ross Antonacci, Esq.
Email : RAntonacci@morrisjames.com

(c)     if to the Trustees, to:

Jennifer E. Peacock
Email: JPeacock@MDTAdmin.com

Michael Atkinson
Email: MAtkinson@MDTAdmin.com

Anne Ferazzi
Email: AFerazzi@MDTAdmin.com

with a copy (which shall not constitute notice) to:

c/o Brown Rudnick LLP
7 Times Square
New York, NY 11036
Attn: David J. Molton, Esq., Steven D. Pohl, Esq., and Gerard Cicero, Esq.
Email: dmolton@brownrudnick.com, spohl@brownrudnick.com and gcicero@brownrudnick.com

(d)     if to the Trust Beneficiaries, then to each of or as applicable:

(i)     with respect to the Private Creditor Trusts:

Third-Party Payor Trust

To the TPP Trustee or TPP Trust:

TPP Trust
Alan D. Halperin, as TPP Trustee
c/o Halperin Battaglia Benzija, LLP

27

40 Wall Street, 37th floor
New York, NY 10005
Email: ahalperin@halperinlaw.net

With a copy to:

Halperin Battaglia Benzija, LLP
40 Wall Street, 37th floor
New York, NY 10005
Attn: Donna H. Lieberman, Esq.
Email: dlieberman@halperinlaw.net

To the Delaware Trustee:

Wilmington Trust, National Association
1100 N. Market Street
Wilmington, DE 19890
Attn: David Young
Email: DYoung@wilmingtontrust.com

To the TPP Trust Advisory Committee and its members:

Independent Health
Attn: Laurie Boreanaz Carra, Esq.
Senior Deputy Counsel
511 Farber Lakes Drive
Buffalo, NY 14221
E-mail: Laurie.Carra@independenthealth.com

and

Lowey Dannenberg, P.C.
Gerald Lawrence, Esq.
Noelle Ruggiero, Esq.
One Tower Bridge
100 Front St., Suite 520
West Conshohocken, PA 19428
E-mail: glawrence@lowey.com; nruggiero@lowey.com

Blue Cross and Blue Shield Association
Brendan Stuhan, Esq. Assistant General Counsel, Litigation
1310 G Street N.W. – 10th floor
Washington, D.C. 20005
E-mail: Brendan.Stuhan@bcbsa.com

and

28

Hagens Berman Sobol Shapiro LLP
Thomas Sobol, Esq.
Lauren Barnes, Esq.
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
E-mail: tom@hbsslaw.com; lauren@hbsslaw.com

Emblem Health
Carlos G. Manalansan, Assistant General Counsel
55 Water Street, 13th Fl. (Rm. 13F15)
New York, NY 10041
E-mail: cmanalansan@emblemhealth.com

and

Rawlings & Associates
Mark Fischer, Esq.
1 Eden Parkway La Grange, KY 40031
E-mail: mdf@rawlingsandassociates.com

PI Trust

Edgar C. Gentle, III, Esq.
Gentle, Turner, Sexton & Harbison, LLC
501 Riverchase Parkway East, Suite 100
Hoover, AL 35244
E-mail: egentle@gtandslaw.com

and

Future Claimants' Representative

Roger Frankel, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rfrankel@frankelwyron.com

with a copy (which shall not constitute notice) to:

Richard H. Wyron, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rwyron@frankelwyron.com

and

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Email: jpatton@ycst.com

NAS Monitoring Trust

To the NAS Monitoring Trust through the Trustee:

Donald R. Cravins, Jr., Esq.
c/o National Urban League
80 Pine Street
9th Floor
New York, NY 10005

With a copy to:

Harold D. Israel
Levenfeld Pearlstein, LLC
2 North LaSalle Street
Suite 1300
Chicago, IL 60602

Delaware Trustee:

Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE  19890
Attn:  David Young
Email:  DYoung@wilmingtontrust.com

NAS Monitoring Trust Advisory Committee:

Stanford University School of Medicine
770 Welch Road

Suite 435
Stanford, CA  94304
Attn:  Dr. Kanwaljeet ("Sunny") Anan
Email:  anandsunny108@gmail.com

Pennsylvania State University
270 Moore Building
University Park, PA  16802
Attn: Koraly Perez-Edgar
Email:  kxp24@psu.edu

Tuckson Health Connections, LLC
27 Sandy Springs Place
Suite D-346
Sandy Springs, GA  30328
Attn:  Dr. Reed Tuckson
Email:  drreed@tucksonhealthconnections.com

Independent Emergency Room Physicians Trust

To the IERP Trust through the IER Physician Trustee:

Mallinckrodt IERP Trust
1121 Park West Blvd., Suite B #186
Mt. Pleasant, S.C. 29466-7122
Email: trustee@ierptrust.com
Telephone: 843-439-4657

With a copy to:

Paul Rothstein
Law Offices of Paul S. Rothstein, P.A
626 N.E. 1st Street,
Gainesville, FL 32601
Email: psr@ierptrust.com

To the IER Physician Committee:

Michele Puiggari, Esq.
3801 Milwaukee Ct.
Missoula, MT 59808
Email: michele@ierptrust.com

Suzanne Colvin, Ph.D.
2716 NW 22nd Drive
Gainesville, FL  32605

Email:  suzy@ierptrust.com
Hospital Trust

To the Hospital Trust through the Trustee:

c/o Thomas L. Hogan
TLH Consulting
321 N. Clark Street
Chicago, IL 60654

With a copy to:

Don Barrett
Barrett Law Group
404 Court Square
P.O. Box 927
Lexington, MS  39095-0927

and

Michael P. O'Neil
Taft Stettinius & Hollister LLP
211 N. Pennsylvania Street
Suite 3500
Indianapolis, IN 46204

To the Delaware Trustee:

Wilmington Trust, N.A.
Rodney Square North
1100 N. Market Street
Wilmington, DE  19890
Attn:  David Young
Email:  DYoung@wilmingtontrust.com

To the Hospital Trust Advisory Committee and its sole member:

Jeffrey James
c/o Wilmington Health
3147 S 17th Street
Wilmington, NC  28412

(ii)    with respect to the Public Creditor Trusts:

National Opioid Abatement Trust II
c/o Campbell & Levine, LLC
310 Grant Street, Suite 1700

Pittsburgh, PA 15219
Attn: Douglas A. Campbell, Esq.
Email: Trustees@NationalOpioidAbatementTrust.com

Tribal Abatement Fund Trust II
P.O. Box 65097
Washington, DC 20035
Email: Directors@tribalopioidsettlements.com

with respect to the United States:

U.S. Department of Justice
1100 L Street, NW
Room 7220
Washington, DC 20005
Attn: Mary A. Schmergel, Esq.
Email: Mary.Schmergel@usdoj.gov

(iii)    with respect to the Ratepayer Account:

Stevens & Lee
485 Madison Avenue, 20th Floor
New York, NY 10022
Attn: Nicholas F. Kajon, Esq.
Email: nicholas.kajon@stevenslee.com

Keller Postman LLC
150 North Riverside Plaza
Suite 4100
Chicago, IL 60606
Attn: Seth Meyer, Esq.
Email: sam@kellerpostman.com

(e)    if to the Debtors, to:

Mallinckrodt Pharmaceuticals
5300 Frontage Road, Suite 300
Hampton, NJ 08827
Attn: General Counsel

with a copy to

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Jason Gott

33

E-mail: jason.gott@lw.com

and

1271 Avenue of the Americas
New York, NY 10020
Attn: Anu Yerramalli
Email: Anu.Yerramalli@lw.com

Section 10.06. <u>Headings</u>. The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision of this Trust Agreement.

Section 10.07. <u>Entire Trust Agreement</u>. This Trust Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Trust Agreement.

Section 10.08. <u>Amendment and Waiver</u>. Any provision of this Trust Agreement may be amended or waived only with the consent of (x) a majority of the Trustees and (y) NOAT II; provided, however, that the Trustees may amend this Trust Agreement by unanimous consent of the Trustees from time to time, without the consent, approval or other authorization of any other Person, to make minor modifications or clarifying amendments as necessary to enable the Trustees to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, no amendment or waiver of any provision of this Trust Agreement shall modify this Trust Agreement in a manner that (a) is inconsistent with the Plan or the Confirmation Order without an order of the Bankruptcy Court (after notice and a hearing) approving such modification, other than to make minor modifications or clarifying amendments by unanimous consent of the Trustees as necessary to enable the Trustees to effectuate the provisions of this Trust Agreement, (b) would adversely impact the distributions to, or confer additional obligations or liabilities upon, any Trust Beneficiary without the consent of such Trust Beneficiary, and, solely with respect to the PI Trust, the Future Claimants' Representative; (c) would alter the duties or liabilities of the Resident Trustee without the consent of the Resident Trustee or (d) would amend or waive this Section 10.08. The Trustees shall provide notice to the Trust Beneficiaries of any proposed amendment or wavier of any provision of this Trust Agreement including, for the avoidance of doubt, any proposed amendment or waiver that does not require the consent of the Trust Beneficiaries hereunder, not less than ten (10) Business Days before such amendment or waiver becomes effective.

Section 10.09. <u>Confidentiality</u>. The Trustees, the Resident Trustee, and the Trust Professionals (each, a "<u>Confidential Party</u>" and, collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Debtor; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties or (b) such disclosure is required of the Confidential Parties pursuant to legal process including subpoena or other court order or other applicable laws or regulations. For the avoidance of doubt

34

and notwithstanding anything to the contrary herein, each Confidential Party shall comply with Article IV.W.1 of the Plan.

Section 10.10. <u>Meanings of Other Terms</u>. Except where the context otherwise requires, (a) words importing the masculine, feminine or neuter gender include the masculine, feminine and neuter gender, (b) words importing the singular or plural number shall include the singular and plural number, (c) the words "herein," "hereof," or "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement and (d) the words "includes" and "including" are not limiting.

Section 10.11. <u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the Effective Date.

**[DEBTORS]**

By: _____

Name:

Title:

**[TRUSTEE]**, as Trustee

By: _____

Name:

**[TRUSTEE]**, as Trustee

By: _____

Name:

**[TRUSTEE]**, as Trustee

By: _____

Name:

**Wilmington Trust, N.A.**, as Resident Trustee

By: _____

Name:

Title:

**Exhibit A**

**Master II TDP**

[Filed Separately]

## Exhibit B

### Investment Guidelines

**In General**. Only the following investments will be permitted:

(i)　　Demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured;

(ii)　　U.S. Treasury bills, bonds, and notes, including, but not limited to, long-term U.S. Treasury bills, bonds, notes, and other Government Securities as defined under Section 2(a)(16) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(16), including, but not limited to, Fannie Mae, Freddie Mac, Federal Home Loan Bank, and Federal Farm Credit;

(iii)　　Repurchase agreements for U.S. Treasury bills, bonds, and notes;

(iv)　　Commercial Paper (rated A1/P-1 by Standard & Poor's and Moody's);

(v)　　AA or AAA corporate bonds (with the rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's, or Fitch)); or

(vi)　　Open-ended mutual funds owning only assets described in subparts (i) through (v) of this subsection.

The value of bonds of any single company and its affiliates owned by the Trust directly rather than through a mutual fund shall not exceed 10% of the investment portfolio at time of purchase; this restriction does not apply to any of the following: Repurchase Agreements; Money Market Funds; U.S. Treasuries; and U.S. Government Agencies.

Any such investments shall be made consistently with the Uniform Prudent Investor Act. The determination of the rating of any investments shall be made by the Trust's financial advisor on the date of acquisition of any such investment or on the date of re-investment. The Trust's financial advisor shall reconfirm that all investments of Trust Assets still meet the original rating requirement on a quarterly basis. If the Trust's financial advisors determine that any particular investment no longer meets the rating requirement, there shall be a substitution of that investment with an investment that meets the ratings requirement as promptly as practicable, but in no event later than the next reporting period. Previously purchased securities downgraded below AA may be held for a reasonable and prudent period of time if the Trust's financial advisor believes it is in the interest of the Trust to do so.

The borrowing of funds or securities for the purpose of leveraging, shorting, or other investments is prohibited. Investment in non-U.S. dollar denominated bonds is prohibited. The standing default investment instruction for all cash in any account or subaccount that holds any Trust Assets in cash shall be invested in the BlackRock Fed Fund (CUSIP 09248U700).

See example fund-level requirements table on following page.

## **Fund Level Requirements**

1. OTC Derivatives Counterparty Exposure – Not allowed
2. Non-U.S. dollar denominated bonds – Not allowed

| TYPE OF INVESTMENT | ELIGIBLE | PROHIBITED | COMMENTS |
|---|:---:|:---:|---|
|  |  |  |  |
| U.S. Treasury Securities | X |  |  |
| U.S. Agency Securities | X |  |  |
| Mortgage-Related Securities |  | x |  |
| Asset-Backed Securities |  | x |  |
| Corporate Securities (public) | X |  |  |
| Municipal bonds | x |  |  |
|  |  |  |  |
| **DERIVATIVES:** |  | No investment, including futures, options and other derivatives, may be purchased if its return is directly or indirectly determined by an investment prohibited elsewhere in these guidelines. |  |
| Futures |  | x |  |
| Options |  | x |  |
| Currency Forwards |  | x |  |
| Currency Futures |  | x |  |
| Currency Options |  | x |  |
| Currency Swaps |  | x |  |
| Interest Rate Swaps |  | x |  |
| Total Return Swaps |  | x |  |
| Structured Notes |  | X |  |
| Collateralized Debt Obligations |  | x |  |
| Credit Default Swaps |  | X |  |
| Mortgage-Related Derivatives |  | X |  |
|  |  |  |  |
| **FOREIGN / NON-U.S. DOLLAR:** |  |  |  |
| Foreign CDs |  | X |  |
| Foreign U.S. Dollar Denominated Securities |  | X |  |
| Non-U.S. Dollar Denominated Bonds |  | X |  |
| Supranational U.S. Dollar Denominated Securities |  | X |  |
|  |  |  |  |
| **COMMINGLED VEHICLES (except STIF):** |  |  |  |
| Collective Funds |  | X |  |
| Commingled Trust Funds (open ended mutual funds only) |  | X |  |
| Common Trust Funds |  | X |  |
| Registered Investment Companies |  | X |  |
|  |  |  |  |
| **MONEY MARKET SECURITIES:** |  |  |  |
| Qualified STIF |  | x |  |
| Interest Bearing Bank Obligations Insured by a  Federal or State Agency | X |  |  |
| Commercial Paper |  | x |  |
| Master Note Agreements and Demand Notes |  | x |  |
| Repurchase Agreements |  | x |  |
|  |  |  |  |
| **OTHER:** |  |  |  |
| Bank Loans |  | x |  |
| Convertibles (e.g., Lyons) |  | x |  |
| Municipal Bonds | X |  |  |
| Preferred Stock |  | x |  |
| Private Placements (excluding 144A) | X |  |  |
| Rule 144A Issues | X |  |  |
| Zero Coupon Bonds | X |  |  |
| Commodities |  | X |  |

| Catastrophe Bonds | | X | |
| --- | --- | --- | --- |

AHC Draft 10/7/21
Subject to Review and Revision

**TRUST AGREEMENT OF**

**OPIOID MASTER DISBURSEMENT TRUST II**

**DATED AS OF [  ], 20212022**

**BY AND AMONG**

**[ ]MICHAEL ATKINSON, ANNE FERAZZI, AND JENNIFER E. PEACOCK AS
TRUSTEES**

**[ ]WILMINGTON TRUST, N.A. AS RESIDENT TRUSTEE**

**and**

**THE DEBTOR PARTIES HERETO**

## TABLE OF CONTENTS

**Article I Declaration of Trust** ............................................................. ~~3~~4

Section 1.01.    Creation of Trust. ................................................. ~~3~~4
Section 1.02.    Purpose of Trust. ................................................. 4
Section 1.03.    Vesting of the Trust Assets and Funding of the Trust. ........ 4
Section 1.04.    Assumption of Certain Opioid Claims and the ................. 6
Section 1.05.    Appointment and Acceptance of Initial Trustees. ............. 6
Section 1.06.    No Reversion to Debtors. ....................................... 7
Section 1.07.    Relationship to Plan. ............................................ 7
Section 1.08.    Incidents of Ownership. ......................................... 7

**Article II Trust Beneficiaries** .............................................................. 7

Section 2.01.    Trust Claims and Interests. ..................................... 7
Section 2.02.    Disputed or Conflicting Claims or Demands. ................. 7
Section 2.03.    Rights of Trust Beneficiaries. ................................. 8
Section 2.04.    Nontransferability of Trust Claims and Trust Interests. ..... 8
Section 2.05.    Limited Liability. ................................................ 8

**Article III Powers and Trust Administration** ........................................ 8

Section 3.01.    Powers of the Trustees. ......................................... 8
Section 3.02.    Reporting. ........................................................ 11
Section 3.03.    Master II TDP. ................................................... 11

**Article IV Duration and Termination of the TRUST** ............................ ~~11~~12

Section 4.01.    Duration. ......................................................... ~~11~~12
Section 4.02.    Dissolution. ..................................................... ~~11~~12
Section 4.03.    Continuance of Trust for Winding Up. ........................ 12

**Article V Accounts, Investments and Payments** .................................... 12

Section 5.01.    Accounts. ......................................................... 12
Section 5.02.    Trust Operating Reserve. ....................................... ~~12~~13
Section 5.03.    Third-Party Payor Reserve. .................................... ~~12~~13
Section 5.04.    Ratepayer Account. ............................................. 13
Section 5.05.    Opioid Attorneys' Fee Fund. .................................. 13
Section 5.06.    Investments.. .................................................... ~~13~~14
Section 5.07.    Source of Payments. ............................................ ~~13~~14

**Article VI Tax Matters** .................................................................... ~~13~~14

Section 6.01.    U.S. Federal Income Tax Treatment. ...................................... 1314
Section 6.02.    Tax Withholdings. ...................................................... 1415
**Section 6.03.    6050X Reporting.. ..................................................... 15**

**Article VII Distributions** ....................................................... 1416

Section 7.01.    Distributions. ........................................................ 1416
Section 7.02.    Distribution Dates. ................................................... 1517

**Article VIII Trustees, MDT Executive Director and Resident Trustee** .............. 1517

Section 8.01.    The Trustees**; Managing Trustee**. ................................... 1517
Section 8.02.    Term of Service of the Trustees. ...................................... 1517
Section 8.03.    Appointment of Successor Trustees. .................................... 1719
Section 8.04.    [Reserved.] ........................................................... 1719
Section 8.05.    Independence of the Trustees. ......................................... 1719
Section 8.06.    Obligations of the Trustees. .......................................... 1719
Section 8.07.    Compensation and Expenses of the Trustees and Trust Professionals. ..... 1719
Section 8.08.    Trustee Meetings. ..................................................... 1820
Section 8.09.    Resident Trustee. ..................................................... 1921

**Article IX Reliance, Liability and Indemnification** ............................... 2124

Section 9.01.    Reliance by the Trustees. ............................................. 2124
Section 9.02.    Nonliability of Trustees and Trust Professionals. ..................... 2124
Section 9.03.    Exculpation. .......................................................... 2125
Section 9.04.    Limitation of Liability. .............................................. 2225
Section 9.05.    Indemnity. ............................................................ 2225

**Article X Miscellaneous Provisions** ............................................. 2225

Section 10.01.    Actions Taken on Other Than a Business Day. .......................... 2225
Section 10.02.    Governing Law. ....................................................... 2226
Section 10.03.    Jurisdiction. ........................................................ 2326
Section 10.04.    Severability. ........................................................ 2326
Section 10.05.    Notices. ............................................................. 2326
Section 10.06.    Headings. ............................................................ 2534
Section 10.07.    Entire Trust Agreement. .............................................. 2534
Section 10.08.    Amendment and Waiver. ................................................ 2534
Section 10.09.    Confidentiality. ..................................................... 2634
Section 10.10.    Meanings of Other Terms. ............................................. 2635
Section 10.11.    Counterparts. ........................................................ 2635

**OPIOID MASTER DISBURSEMENT TRUST AGREEMENT**

THIS OPIOID MASTER DISBURSEMENT TRUST II AGREEMENT (this "Trust Agreement"), dated as of [ ], ~~2021~~2022 (the "Effective Date"), is entered into by and among each of (i) Mallinckrodt plc and its affiliated debtors and debtors-in-possession (each, a "Debtor" and, collectively, the "Debtors"),[1] as debtors and debtors-in-possession, (ii) the undersigned Trustees (together with any successor or additional trustee appointed under the terms of this Trust Agreement, the "Trustees"), and (iii) [ ]**Wilmington Trust, N.A.,** as the Delaware resident trustee (together with any successor Delaware resident trustee appointed under the terms of this Trust Agreement, the "Resident Trustee"), for the purpose of forming a statutory trust under and pursuant to the provisions of the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, *et seq*. (as the same may from time to time be amended, or any successor statute, the "Trust Act").

**RECITALS**

WHEREAS, on October 12, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the jointly administered chapter 11 cases jointly administered by the Bankruptcy Court under the caption *In re Mallinckrodt Plc, et al.*, Lead Case No. 20-12522 (JTD) (the "Chapter 11 Cases");

WHEREAS, on [ ]**February 18,** ~~2021~~**2022**, the Debtors filed the [*Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* **[D.I. 6510]**] (including all appendices, exhibits, schedules and supplements thereto, as the same may be altered, amended or modified

---

[1] The Debtors include: Mallinckrodt plc, Acthar IP Unlimited Company, IMC Exploration Company, Infacare Pharmaceutical Corporation, INO Therapeutics LLC, Ludlow LLC, MAK LLC, Mallinckrodt APAP LLC, Mallinckrodt ARD Finance LLC, Mallinckrodt ARD Holdings Inc., Mallinckrodt ARD Holdings Limited, Mallinckrodt ARD IP Unlimited Company, Mallinckrodt ARD LLC, Mallinckrodt Brand Pharmaceuticals LLC, Mallinckrodt Buckingham Unlimited Company, Mallinckrodt Canada ULC, Mallinckrodt CB LLC, Mallinckrodt Critical Care Finance LLC, Mallinckrodt Enterprises Holdings, Inc., Mallinckrodt Enterprises LLC, Mallinckrodt Enterprises UK Limited, Mallinckrodt Group S.a.r.l, Mallinckrodt Holdings GmbH, Mallinckrodt Hospital Products Inc., Mallinckrodt Hospital Products IP Unlimited Company, Mallinckrodt International Finance SA, Mallinckrodt International Holdings S.a.r.l., Mallinckrodt IP Unlimited Company, Mallinckrodt LLC, Mallinckrodt Lux IP S.a.r.l., Mallinckrodt Manufacturing LLC, Mallinckrodt Pharma IP Trading Unlimited Company, Mallinckrodt Pharmaceuticals Ireland Limited, Mallinckrodt Pharmaceuticals Limited, Mallinckrodt Quincy S.a.r.l., Mallinckrodt UK Finance LLP, Mallinckrodt UK Ltd, Mallinckrodt US Holdings LLC, Mallinckrodt US Pool LLC, Mallinckrodt Veterinary, Inc., Mallinckrodt Windsor Ireland Finance Unlimited Company, Mallinckrodt Windsor S.a.r.l., MCCH LLC, MEH, Inc., MHP Finance LLC, MKG Medical UK Ltd, MNK 2011 LLC, MUSHI UK Holdings Limited, Ocera Therapeutics, Inc., Petten Holdings Inc., SpecGx Holdings LLC, SpecGx LLC, ST Operations LLC, ST Shared Services LLC, ST US Holdings LLC, ST US Pool LLC, Stratatech Corporation, Sucampo Holdings Inc., Sucampo Pharma Americas LLC, Sucampo Pharmaceuticals, Inc., Therakos, Inc., Vtesse LLC, WebsterGx Holdco LLC, Mallinckrodt Equinox Finance LLC. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.

from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms thereof, the "Plan")[2] with the Bankruptcy Court;

WHEREAS, on [—]March 2, 20212022, the Bankruptcy Court entered the [*Findings of Fact, Conclusions of Law, and* Order Confirming the*Fourth Amended* Joint Plan of Reorganization *(with Technical Modifications)* of Mallinckrodt Plcplc and its Debtor Affiliates underUnder Chapter 11 of the Bankruptcy Code]— [D.I. [—]6660] confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for, among other things, the creation of a master disbursement trust (as defined in the Plan, the "Opioid MDT II;" herein, the "Trust") on the Effective Date;

WHEREAS, in accordance with the Plan and the Confirmation Order, the Trust shall, among other things, (i) receive the Opioid MDT II Consideration and (ii) make distributions of Opioid MDT II Distributable Value to the holders of certain beneficial interests in the Trust;

WHEREAS, in accordance with the Plan, the Confirmation Order and the documents governing the Trust (as defined in the Plan, the "Opioid MDT II Documents;" herein, the "Trust Documents"), beneficial interests in the Trust shall be granted to:

(i) the United States (such interest, the "Opioid MDT II Federal Government Claim"), which Opioid MDT II Federal Government Claim shall entitle the United States to treatment pursuant to Article III.B.8(d) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(ii) Holders of Ratepayer Opioid Claims (such interest, the "Ratepayer Claims"), which Ratepayer Claims shall entitle the holders thereof to treatment pursuant to Article III.B.9(e) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(iii) Holders of Other Opioid Claims (such interest, the "Other Claims;" together with the Opioid MDT II Federal Government Claim and Ratepayer Claims, the "Trust Claims"), which Other Claims shall entitle the holders thereof to treatment pursuant to Article III.B.9(h) of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(iv) (a) the NOAT II (such interest, the "MDT NOAT II Interest") and (b) the TAFT II (such interest, the "MDT TAFT II Interest") (collectively, the "Opioid MDT II Public Interests"), which Opioid MDT II Public Interests shall entitle the NOAT II and TAFT II (together as defined in the Plan, the "Public Creditor Trusts") to their respective shares of Opioid MDT II Distributable Value as set forth in Article

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, including by reference and incorporation the Plan Supplement and Exhibits to the foregoing.

IV.X.7 of the Plan in accordance with the terms of the Plan and this Trust Agreement;

(v)    (a) the Third-Party Payor Trust (such interest, the "Opioid MDT II TPP Interest"), (b) the PI Trust (such interest, the "Opioid MDT II PI Interest"), (c) the Hospital Trust (such interest, the "MDT Hospital Interest"), (d) the NAS Monitoring Trust (such interest, the "Opioid MDT II NAS Monitoring Interest"), and (e) the Emergency Room Physicians Trust (such interest, the "Opioid MDT II ERP Interest") (collectively, the "Opioid MDT II Private Interests;" together with the Opioid MDT II Public Interests, the "Trust Interests") which Opioid MDT II Private Interests shall entitle the Third-Party Payor Trust, PI Trust, Hospital Trust, NAS Monitoring Trust, and Emergency Room Physicians Trust (together and as defined in the Plan, the "Private Creditor Trusts;" and with **the Public Creditor Trusts and** holders of Trust Claims, the "Trust Beneficiaries") to their respective shares of Opioid MDT II Distributable Value as set forth in Article IV.X.7 of the Plan in accordance with the terms of the Plan and this Trust Agreement;

WHEREAS, the purposes of the Trust are, among other things, to: (i) resolve all asserted Opioid Claims channeled to the Trust in accordance with the Plan, Trust Documents, and the Confirmation Order (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims); (ii) preserve, hold, collect, manage, maximize, and liquidate the assets of the Trust for use in (x) resolving Opioid Claims channeled to the Trust (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims) and (y) funding the Opioid Creditor Trusts; (iii) enforce, pursue, prosecute, compromise, and/or settle the Assigned Third-Party Claims and Assigned Insurance Rights; (iv) initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Share Repurchase Claim; (v) pay all Opioid MDT II Operating Expenses as provided, and defined, in the Plan ("Trust Expenses") and Trust Documents (for which the Reorganized Debtors and the Released Parties shall have no responsibility or liability); (vi) pay any and all administration and operating expenses of the Trust, including the fees and expenses of any professionals retained by the Trust; (vii) establish and fund the Opioid Attorneys' Fee Fund; (viii) qualify at all times as a qualified settlement fund; and (ix) form a wholly-owned subsidiary, **MNK Opioid Abatement Fund, LLC ("MOAF"),** designate that such subsidiary be issued the New Opioid Warrants ~~and transfer~~**(on behalf of the Trust) and, after receipt of the New Opioid Warrants, distribute** ownership interests in such subsidiary to the Opioid Creditor Trusts in accordance with the Master II TDP ; and

WHEREAS the Trust was established and is effective for the benefit of the Trust Beneficiaries.

## AGREEMENT

NOW, THEREFORE, pursuant to the Confirmation Order, and in consideration of the foregoing and upon the terms and subject to the mutual covenants and conditions set forth

3

herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I
DECLARATION OF TRUST

Section 1.01.   Creation of Trust. The Debtors and the Trustees, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Trust, which shall bear the name "Opioid Master Disbursement Trust II" or "Opioid MDT II." In connection with the exercise of the Trustees' powers hereunder, the Trustees may use this name or such variation thereof as the Trustees reasonably see fit. It is the intention of the parties hereto that the Trust created hereby constitutes a statutory trust under the Trust Act and that the Confirmation Order, the Plan and this Trust Agreement constitute the governing instruments of the Trust.

Section 1.02.   Purpose of Trust. The purpose of the Trust is to carry out the duties of the Trust as set forth in the Plan on behalf, and for the benefit, of the Trust Beneficiaries, including to effectuate the Master Trust Distributions Procedures attached as Exhibit A to this Trust Agreement (the "Master II TDP") and to liquidate, convert to Cash and distribute the Opioid MDT II Consideration and proceeds thereof and any assets thereafter acquired by the Trust (collectively, the "Trust Assets") in accordance with the terms of the Plan and this Trust Agreement. The Trust shall, in each case in accordance with the Plan and this Trust Agreement: (a) hold, manage, sell, invest and distribute the Trust Assets for the benefit of the Trust Beneficiaries in accordance with the Plan, Confirmation Order, and Trust Documents; (b) resolve all asserted Opioid Claims channeled to the Trust in accordance with the Plan, Trust Documents, and the Confirmation Order (which, for the avoidance of doubt, are the Other Opioid Claims, the U.S. Government Opioid Claims (including the FHCA Opioid Claims), and the Ratepayer Opioid Claims); (c) enforce, pursue, prosecute, compromise and/or settle the Assigned Third-Party Claims and Assigned Insurance Rights; (d) initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Share Repurchase Claim; (e) make payments in satisfaction of the Trust Claims; (f) make distributions to the Public Creditor Trusts and Private Creditor Trusts, and holders of Other Opioid Claims; (g) fund the Opioid MDT II Operating Reserve **(the "Trust Operating Reserve")**, the **Opioid MDT II** Third-Party Payor Reserve **(the "Third-Party Payor Reserve")**, and the Ratepayer Account in accordance with the Plan, Confirmation Order, and Trust Documents; (h) pay all Trust Expenses as provided, and defined, in the Trust Documents, including but not limited to the fees and expenses of any professionals retained by the Trust; (i) establish**,** and fund the Opioid Attorneys' Fee Fund **from which payments will be made pursuant to Section 5.05 hereof**; (~~i~~**j**) qualify at all times as a qualified settlement fund **pursuant to Section 468B of the IRC**; and (~~j~~**k**) form ~~a wholly-owned subsidiary~~**MOAF**, designate that ~~such subsidiary~~**MOAF** be issued the New Opioid Warrants and ~~transfer~~**, after receipt of the New Opioid Warrants, distribute** ownership interests in ~~such subsidiary~~**MOAF** to the Opioid Creditor Trusts in accordance with the Master II TDP. The Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan, this Trust Agreement, or any other agreement entered into between the Trustees and any of the Debtors.

Section 1.03.    Vesting of the Trust Assets and Funding of the Trust.

(a)    On and after the Effective Date as specified pursuant to Section IV.W of the Plan and in accordance with the Confirmation Order and this Trust Agreement, the Opioid MDT II Consideration shall be irrevocably transferred to and vest in the Trust free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind; *provided* that, to the extent certain Assets comprising the Opioid MDT II Consideration are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Trust upon the discovery or identification thereof. The Trust shall have no liability for any prepetition or postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except as expressly set forth in the Plan and Trust Documents.

(b)    In accordance with the Plan, the Opioid MDT II Consideration shall consist of:

(i)    the Initial Opioid MDT II Payment;

(ii)    the New Opioid Warrants;**[3], which the Debtors will issue directly to MOAF;**

(iii)    the Opioid Deferred Cash Payments;

(iv)    the Assigned Third-Party Claims;

(v)    the Assigned Insurance Rights; and

(vi)    the Opioid MDT II Share Repurchase Proceeds.

(c)    Pursuant to Article IV.W.1 of the Plan, the transfer to the Trust of information and copies of documents, including books and records, in accordance with Article IV.W.1 of the Plan shall not result in the destruction or waiver of any applicable **Privileges**privileges. Further, the transfer and/or vesting of any privileges shall occur solely in accordance with, and be subject in all respects to, Article IV.W.1 of the Plan, which is incorporated herein by reference.

(d)    The Debtors shall execute any documents or other instruments and shall take all other steps as the Trustees reasonably request to reflect the transfer and assignment of the Opioid MDT II Consideration to the Trust. Upon the transfer of the Opioid MDT II Consideration to the Trust, neither the Debtors nor any other Person (other than the Trust Beneficiaries) shall have any interest in or with respect to the Opioid MDT II Consideration or the Trust other than as expressly provided for under this Trust Agreement and the Plan. Upon delivery of the Opioid

---

[3] The Trust shall form a wholly-owned subsidiary, designate that such subsidiary be issued the New Opioid Warrants and transfer ownership interests in such subsidiary to the Opioid Creditor Trusts in accordance with the terms of the Master II TPD and subject to the provisions of the [MNK Opioid Abatement Fund LLC Agreement.]

MDT II Consideration to the Trust, the Debtors and their predecessors, successors and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Opioid MDT II Consideration or the Trust.

(e)     The transfer of the Opioid MDT II Consideration shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(f)     The Trust **(and MOAF)** shall be funded with the Opioid MDT II Consideration.

(g)     The Opioid MDT II Consideration and all other Assets held from time to time by the Trust under this Trust Agreement and any earnings, including interest, on any of the foregoing shall be held and be applied by the Trustees solely in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

Section 1.04.    Assumption of Certain Opioid Claims and the Trust Documents.

(a)     As of the Effective Date, any and all liability of the Debtors and the other Protected Parties for all Opioid Claims not otherwise channeled to an Opioid Creditor Trust or the Ratepayer Account, including U.S. Government Opioid Claims, and Other Opioid Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Trust, and the Debtors, the Reorganized Debtors, and the Protected Parties shall have no liability or responsibility, financial or otherwise, therefor. The Trust's liability for such assumed Opioid Claims shall be limited to the FHCA Opioid Claims Share, and the Other Opioid Claimant Pro Rata Share.

(b)     The sole recourse of any Opioid Claimant on account of its Opioid Claims based upon or arising from the Debtors' pre-Effective Date conduct or activities shall be to the Trust or the Opioid Creditor Trusts, as applicable, pursuant to the Plan and Trust Documents, including the Master II TDP, and such Opioid Claimant shall have no right whatsoever at any time to assert its Opioid Claims against any Protected Party or any property or interest in property of any Protected Party.

(c)     In furtherance of the foregoing, except as otherwise provided in the Plan and the Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such Opioid Claims that the Debtors or the Reorganized Debtors have or would have had under applicable law.

(d)     For the avoidance of doubt, nothing in this Section 1.04 shall limit or affect the transfer of the Assigned Insurance Rights to the Trust.

(e)     Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Opioid Permanent Channeling Injunction or the ~~Releases~~releases granted pursuant to the Plan at Article IX thereof.

Section 1.05.   Appointment and Acceptance of Initial Trustees. Upon the occurrence of the Effective Date, each of the initial Trustees identified in Section 8.01(a) hereof shall be appointed to serve as the trustees of the Trust pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, subject to the terms of the Plan, the Confirmation Order and this Trust Agreement. The Trustees accept the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Trust Beneficiaries, by the Debtors of all of the Opioid MDT II Consideration, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order. The Trustees shall have and perform all of the duties, responsibilities, rights and obligations of the Trust set forth in the Plan and this Trust Agreement, as applicable. The Trustees, subject to the terms and conditions of the Plan, the Confirmation Order and this Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan, any agreement entered into in connection with the Plan, including but not limited to the New Opioid Warrant Agreement, Registration Rights Agreement, any Trust Documents or Opioid Creditor Trust Documents, the Cooperation Agreement or any part of the Plan Supplement. The Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise. The Trustees shall have the authority to bind the Trust within the limitations set forth in this Trust Agreement, but shall for all purposes hereunder be acting in their respective capacities as Trustees, and not individually.

Section 1.06.   No Reversion to Debtors. In no event shall any part of the Opioid MDT II Consideration revert to or be distributed to any Debtor.

Section 1.07.   Relationship to Plan. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or **supplement the Plan) and Master II TDP (which may** supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; ~~and~~ (3) **the Master II TDP; and (4)** this Trust Agreement.

Section 1.08.   Incidents of Ownership. Except as otherwise provided in this Trust Agreement, the Trust Beneficiaries shall be the sole beneficiaries of the Trust, and the Trustees shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in this Trust Agreement.

ARTICLE II
TRUST BENEFICIARIES

Section 2.01.   Trust Claims and Interests.

7

(a)        On the Effective Date, (i) the Opioid MDT II Federal Government Claim shall be issued to the United States, (ii) the Ratepayer Claims shall be issued to the holders of Ratepayer Opioid Claims, and (iii) the Other Claims shall be issued to the holders of Other Opioid Claims.

(b)        On the Effective Date, (i) the MDT NOAT II Interest shall be issued to NOAT II, (ii) the MDT TAFT II Interest shall be issued to TAFT II, (iii) the Opioid MDT II TPP Interest shall be issued to the Third Party Payor Trust, (iv) the Opioid MDT II PI Interest shall be issued to the PI Trust, (v) the MDT Hospital Interest shall be issued to the Hospital Trust, (vi) the Opioid MDT II NAS Monitoring Interest shall be issued to the NAS Monitoring Trust, and (vii) the Opioid MDT II ERP Interest shall be issued to the Emergency Room Physicians Trust.

(c)        No party shall have any beneficial interest in the Trust except as set forth in the foregoing paragraphs (a) and (b).

Section 2.02.    Disputed or Conflicting Claims or Demands. If any dispute arises with respect to a payment or distribution on account of a Trust Interest, or a Trust Claim other than with respect to an Other Claim, the Trustees shall be entitled to elect to make no payment or distribution with respect to such Trust Claim or Interest subject to the dispute and the Trustees shall promptly refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such disputes; *provided* that any undisputed portion of such payment or distribution shall not be deferred pending such resolution. In so doing, the Trustees shall not be or become liable to any party for its refusal to make such payment or distribution. The Trustees shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or such other court of proper jurisdiction or (b) all disputes have been resolved by a written agreement among all such parties and the Trustees, which agreement shall include a complete release of the Trust, the Trustees and the any relevant representatives thereof (the occurrence of either (a) or (b) in this Section 2.02 of this Trust Agreement being referred to as a "Dispute Resolution"). Promptly after a Dispute Resolution is reached, the Trustees shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution. For the avoidance of doubt, the foregoing paragraph shall not apply with respect to Other Claims and the holders of Other Claims.

Section 2.03.    Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder according to the terms of its Trust Claim or Interest, as applicable. Other than as expressly set forth in the Plan, Confirmation Order or this Trust Agreement, the Trust Claims and Interests shall not have consent or voting rights or otherwise confer on the Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the Trustees in connection with the Trust. The Trust Claim or Interest, as applicable, of a Trust Beneficiary is hereby declared, and shall be in all respects, personal property. Except as expressly provided hereunder, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Trust or the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting. The whole title to the Trust Assets shall be vested in the Trust, and the sole interest of each Trust Beneficiary shall be the rights and benefits given to such Trust Beneficiary under this Trust Agreement, the Confirmation Order and the Plan. For the avoidance of doubt, upon the payment in full in Cash of any Trust Claim, the holder

8

of such Trust Claim shall immediately cease to be a Trust Beneficiary for all purposes under this Trust Agreement, and the Trustees shall have no further fiduciary duties with respect to such holder.

Section 2.04.    Nontransferability of Trust Claims and Trust Interests. Except as may be expressly set forth in the Plan, the Trust Claims and Trust Interests shall be nontransferable and nonassignable.

Section 2.05.    Limited Liability. No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Trust Beneficiary, shall give rise to any liability of such Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditor, successor, representative, employee or equity interest holder of any Debtor, or by any other Person. Trust Beneficiaries shall be deemed to receive the Trust Claims and Trust Interests, as applicable, in the Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

ARTICLE III
POWERS AND TRUST ADMINISTRATION

Section 3.01.    Powers of the Trustees.

(a)    Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the Trustees shall have all powers necessary to accomplish the purposes of the Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order. The Trustees shall (i) have the power and authority to perform all functions on behalf of the Trust, (ii) be responsible for all decisions and duties with respect to the Trust and the Trust Assets, and (iii) in all circumstances, and at all times, act in a fiduciary capacity for the benefit of and in the best interests of the Trust Beneficiaries, in furtherance of the purposes of the Trust, and in accordance with the Plan and this Trust Agreement.

(b)    Without limiting, but subject to, the foregoing paragraph (a), and except as limited in the Plan, this Trust Agreement and by applicable law, the Trustees shall be expressly authorized to:

(i)    hold and maintain the Trust Operating Reserve and periodically, until the dissolution of the Trust, replenish the Trust Operating Reserve from Cash held or received by the Trust to the extent deemed necessary by the Trustees to satisfy and pay estimated future Trust Expenses**, and release funds from the Trust Operating Reserve**;

(ii)    establish and fund the Third-Party Payor ~~Opioid Claims~~ Reserve for the payment of the Opioid MDT II TPP Interest;

(iii)    establish and fund the Opioid Attorneys' Fee Fund for reimbursement of State Opioid Claimant, Municipal Opioid Claimant, and Tribe Opioid

Claimant costs and expenses (including attorneys' fees) pursuant to the Plan;

(iv)    make distributions to Trust Beneficiaries in accordance with the Plan and this Trust Agreement, subject to such ~~Deductions~~deductions as required by the Plan;

(v)    determine the Opioid MDT II Initial Distribution Date and Opioid MDT II Subsequent Distribution Dates, to the extent permitted by the Plan and this Trust Agreement;

(vi)    appoint an executive director or other Trust staff to the extent determined advisable by the Trustees;

(vii)    retain professionals to assist in performing their duties under the Plan and hereunder;

(viii)    maintain the books, records and accounts of the Trust;

(ix)    invest Cash of the Trust only to the extent permitted hereunder;

(x)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of the professionals;

**(xi)**    **loan funds to MOAF for MOAF to pay its taxes and operating expenses;**

**(xii)**    ~~(xi)~~ administer the Trust's tax obligations, including, but not limited to, representing the interest and account of the Trust before any taxing authority in all matters including any claim, defense, action, suit, proceeding or audit;

**(xiii)**    ~~(xii)~~ in the case of the Trustee who is the "administrator" within the meaning of Treasury Regulations section 1.468B-2(k)(3), perform the duties and functions contemplated in Section 6.01(b) of this Trust Agreement;

**(xiv)**    ~~(xiii)~~ maintain appropriate liability insurance for any Indemnified Parties;

**(xv)**    ~~(xiv)~~ pay statutory fees;

**(xvi)**    ~~(xv)~~ institute procedures, terms and conditions for any actions brought against any Opioid Insurer consistent with Section 3.01(e) herein;

**(xvii)**    ~~(xvi)~~ retain and compensate the Opioid MDT II Administrator for the liquidation and administration of the Other Opioid Claims; and

(xviii)    (xvii) perform such other duties and functions that are consistent with the implementation of the Plan and this Trust Agreement.

(c)    The Trustees shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Trust, including in respect of any Causes of Action and Assigned Insurance Rights. Such legal actions and other proceedings shall be limited solely to those required for the purposes of satisfying the responsibilities of the Trust, including in respect of any Causes of Action held thereby and the Assigned Insurance Rights. The Trustees shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the Trustees. The Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which the Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

(d)    Except as otherwise provided in this Trust Agreement, the Trustees shall not be required to obtain any order or approval of the Bankruptcy Court or any other court of competent jurisdiction, or account to the Bankruptcy Court or any other court of competent jurisdiction, for the exercise of any right, power or privilege conferred hereunder.

(e)    To the extent the Trustees make a good faith determination that some or all of the proceeds under the Opioid Insurance Policies are substantially unrecoverable by the Trust, the Trustees shall have the sole and exclusive authority at any time, upon written notice to any affected Opioid Insurer and the Trust Beneficiaries, to terminate, reduce or limit the scope of the Opioid Insurer Injunction with respect to any Opioid Insurer; provided that:

(i)    any termination, reduction, or limitation of the Opioid Insurer Injunction shall apply in the same manner to all Classes of Opioid Claims;

(ii)    any actions asserted against the Opioid Insurers as a result of the termination or limitation of the Opioid Insurer Injunction shall comply with all procedures, terms and conditions implemented by the Trustees with respect to such actions;

(iii)    all proceeds recovered in any manner, directly or indirectly, from any Opioid Insurers (including, without limitation, as a result of actions asserted against, or settlements with, such Opioid Insurers) shall be paid directly to the Trust by the Opioid Insurer (or, if such direct payment is not possible, immediately transferred (and in no event later than one (1) business day upon receipt) to the Trust) for distribution in accordance with the Plan; and

(iv)    the Opioid Creditor Trustee(s) for each Opioid Creditor Trust that is a Trust Beneficiary may determine, subject to and in accordance with the applicable **Opioid** Creditor Trust Documents, to compensate the persons who have brought claims against Opioid Insurers as a result of the termination, reduction or limitation in scope of the Opioid Insurance

11

Injunction; provided that, for the avoidance of doubt, such compensation shall not be additive to the amount that such Trust Beneficiary would otherwise receive pursuant to the Plan.

Section 3.02.  Reporting.

(a)  The Trustees shall provide reasonable reporting to each of the Opioid Creditor Trusts and the Future Claimants' Representative regarding the Trustees' activities at least every four (4) months (both cumulatively and in the period just ended), any insurance proceedings, assets (including the value thereof), expenditures, distributions and forward-looking projections.

(b)  The Trustees shall**, file each report pursuant to the preceding paragraph on the Bankruptcy Court docket and** in connection with the filing of each report ~~pursuant to the preceding paragraph~~, host a call for the Opioid Creditor Trustees and the Future Claimants' Representative to answer questions relating thereto, and shall otherwise make themselves reasonably available to answer questions of the Trust Beneficiaries relating to the Trust's activities.

**(c)  The Trustees shall establish a publicly available website (the "MDT II Website") as soon as reasonably practicable after the Effective Date to aid in communicating information to the Trust Beneficiaries and Holders of Opioid Claims and in making the activities of the Trust as transparent as possible. The Trustees shall publish on the MDT II Website (i) all reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with the Authorized Abatement Purposes, (ii) each report prepared and filed with the Bankruptcy Court in accordance with Section 3.02(b) hereof and (iii) such other information as the Trustees deem prudent.**

Section 3.03.  Master II TDP. The Master II TDP shall become effective and be automatically implemented according to its terms and the terms of the Plan upon the Effective Date, without any further order of the Bankruptcy Court or action by the Trustees or any other Person.

ARTICLE IV
DURATION AND TERMINATION OF THE TRUST

Section 4.01.  Duration. The Trust was formed as of the execution and filing of a Certificate of Trust with the Delaware Secretary of State on ~~[     ]~~**May 4**, ~~2021~~**2022** and its existence is intended to continue until such time as its Certificate of Trust has been cancelled by the filing of a certificate of cancellation in accordance with Section 4.03 of this Trust Agreement. **The execution and filing of the Trust's Certificate of Trust with the Delaware Secretary of State by the Trustees and the Resident Trustee are hereby ratified.**

Section 4.02.  Dissolution. The Trust shall be dissolved and the Trustees and any officers and employees and professionals thereof shall be discharged from their respective duties with

12

respect to the Trust upon completion of their duties as set forth in the Plan and this Trust Agreement, which, for the avoidance of doubt, shall be no earlier than the date on which (a) all Trust Assets have been liquidated and (b) all payments and other distributions required to be made from the Trust under the Plan and this Trust Agreement have been made unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Subject to the foregoing sentences, the Trust shall be dissolved at such time as the Trustees determine that the administration of any remaining assets of the Trust is not likely to yield sufficient additional proceeds to justify further pursuit.

Section 4.03.  Continuance of Trust for Winding Up. After the dissolution of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustees shall continue to act as such until their duties have been fully performed. As soon as practicable after the Trustees exhaust substantially all of the assets of the Trust, the Trustees shall, at the expense of the Trust, (a) provide for the retention and storage of the Trust's books and records until such time as all such books and records are no longer required to be retained under applicable law, (b) file a certificate with the Bankruptcy Court informing the Bankruptcy Court of the location at which such books and records are being stored and stating that the assets of the Trust have been exhausted and that final distributions of Cash have been made pursuant to the Plan and this Trust Agreement, (c) notify the Trust Beneficiaries that the Trustees have exhausted substantially all of the assets of the Trust, and (d) file a certificate of cancellation with the Secretary of State of the State of Delaware to terminate the Trust **(the "Certificate of Cancellation")**. Upon the taking of such actions in the preceding sentence, the Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Trust or payments to be made in connection therewith. **Notice of dissolution of the Trust and the filing of the Certificate of Cancellation shall be given to the Resident Trustee promptly following such filing.**

ARTICLE V
ACCOUNTS, INVESTMENTS AND PAYMENTS

Section 5.01.  Accounts. The Trustees may, from time to time, create such accounts and reserves within or in the name of the Trust as they may deem necessary, prudent or useful in order to discharge their duties hereunder and may, with respect to any such accounts or reserves, restrict the use of monies therein, and the earnings or accretions thereto (the "Trust Subaccounts"). All Trust Subaccounts established by the Trustees shall be held as Trust Assets and, except as otherwise provided in Section 6.01(d) of this Trust Agreement, are not intended to be subject to separate entity tax treatment as "disputed claims reserves" within the meaning of the IRC or Treasury Regulations, "disputed ownership funds" within the meaning of the IRC or Treasury Regulations, or otherwise.

Section 5.02.  Trust Operating Reserve. The Trust Operating Reserve shall be (i) **initially** funded on the Effective Date with ~~(a)~~ a portion of the Opioid MDT II Initial Distributable Value in an amount determined by the Governmental Plaintiff Ad Hoc Committee ~~and,~~ the MSGE Group**, the Official Committee of Opioid-Related Claimants, and the Future Claimants' Representative** with the consent (not to be unreasonably withheld, delayed or conditioned) of the Debtors, and (~~b) amounts sufficient to satisfy and pay estimated future~~

13

**Trust Expenses, and (ii)**ii) **funded thereafter from time to time with Cash held or received by the Trust in accordance with this Trust Agreement and the Master II TDP, as determined by the Trustees. The Trustees may periodically release funds from the Trust Operating Reserve, and any released funds will be applied as set forth in the Master II TDP. The Trust Operating Reserve shall be** held by the Trust in a segregated account and administered by the Trustees on and after the Effective Date **for all purposes consistent with the Plan, including but not limited to payment of any and all Trust Expenses**. All Trust Expenses shall be satisfied and paid from the Trust Operating Reserve.

Section 5.03. <u>Third-Party Payor Reserve</u>. The Third-Party Payor **Opioid** Reserve shall be funded on the Effective Date with amounts sufficient to make the first payment due 180 days after the Effective Date, as set forth in Article III.**B.**9(a) of the Plan, and thereafter with amounts sufficient to make the payments due on the first and second anniversaries of the first payment made 180 days after the Effective Date, as set forth in Article III.**B.**9(a) of the Plan, on account of the Opioid MDT II TPP Interest.

Section 5.04. <u>Ratepayer Account</u>. The Trustees shall establish the Ratepayer Account in a single segregated account administered by the Ratepayer Mediation Participants for Approved Uses, which shall include distributions to the Truth Initiative Foundation, in accordance with the Plan and this Trust Agreement. Upon the establishment and funding of the Ratepayer Account, the Ratepayer Claims shall be satisfied in full and extinguished, the holders thereof shall have no further rights under this Trust Agreement, and the Trustees shall have no further fiduciary duties in respect of such Ratepayer Claims.

Section 5.05. <u>Opioid Attorneys' Fee Fund</u>. **[ The Trustees shall make payments out of the Public Opioid Creditor Share to the Opioid Attorneys' Fee Fund as set forth in the Master II TDP. The Opioid Attorneys' Fee Fund consists of the State Opioid Attorneys' Fee Fund and the Municipal and Tribe Opioid Attorneys' Fee Fund. The State Opioid Attorneys' Fee Fund shall be established by the National Opioid Abatement Trust II, and administered in accordance with the provisions attached as Exhibit 5 of the National Opioid Abatement Trust II Trust Agreement.** The Trustees shall establish the **Municipal and Tribe** Opioid Attorneys' Fee Fund in a single segregated account prior to making distributions of Public Opioid Creditor Share Distributable Value as set forth in Article IV.X.9 of the Plan.**]**[4] **Administration and investment of the Municipal and Tribe Opioid Attorneys' Fee Fund will be in accordance with Exhibit 7 of the Plan; provided, however, that it is acknowledged that the Trust holds such funds for administrative convenience and the Trustees have no responsibility to invest such funds or discretion to vary from the processes and determinations set forth in Exhibit 7 of the Plan; provided further that the signatories to Exhibit 7 of the Plan may direct the Trustees in writing to invest such funds in one or more specified interest bearing accounts, and the Trustees shall invest the funds accordingly. To the extent the Trustees do not receive any such written direction, the Trustees shall invest the funds in the designated default account at BlackRock Fed Fund (CUSIP 09248U700).** The Trustees shall use reasonable best efforts to provide to the

---

[4] **NTD: to be clarified regarding administration of fund**

Reorganized Debtors, no later than fifteen (15) days following the end of each calendar quarter, an estimate of the aggregate payments made to the **State Opioid Attorneys' Fee Fund and the Municipal and Tribe** Opioid Attorneys' Fee Fund to the extent set forth in Section IV.W.2.b of the Plan.

Section 5.06.    Investments. Investment of monies held in the Trust shall comply with the guidelines set forth in Exhibit B to this Trust Agreement.

Section 5.07.    Source of Payments. All Trust Expenses and payments shall be payable solely out of the assets of the Trust. None of the Trustees, any Trust representative, officer, employee, or professional or any Protected Party shall be liable for the payment of any Trust expense or payment or any other liability of the Trust, except to the extent provided in the Plan ~~or Plan Documents.~~**, any agreement entered into in connection with the Plan, including but not limited to the New Opioid Warrant Agreement, Registration Rights Agreement, any Trust Documents or Opioid Creditor Trust Documents, the Cooperation Agreement or any part of the Plan Supplement.**

ARTICLE VI
TAX MATTERS

Section 6.01.    U.S. Federal Income Tax Treatment.

(a)    The Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC (the "QSF Regulations") and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties (including the Debtors, the Trust, the Trustees and the Public Creditor Trusts and Private Creditor Trusts) shall report consistently with the foregoing.

(b)    A Trustee, as determined by a majority vote of the Trustees, shall be the "administrator," within the meaning of Treasury Regulations section 1.468B-2(k)(3), of the Trust. The administrator of the Trust shall be responsible for (i) preparing and filing, or causing to be prepared and filed, all tax returns of the Trust and the payment, out of the Assets of the Trust, of any taxes due by or imposed on the Trust and (ii) complying with all applicable tax reporting and withholding obligations consistent, to the extent applicable, with the provisions of Section IV.W.2.b of the Plan.  The Trustees shall be responsible for causing the Trust to satisfy all requirements necessary to qualify and maintain qualification of the Trust as a qualified settlement fund within the meaning of the QSF Regulations, and shall take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations. The Trustees may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the dissolution of the Trust.

(c)    Subject to Section 6.01(b) of this Trust Agreement, following the Effective Date, the Trustees shall be responsible for all of the Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings. The Trustees shall also file (or cause to be filed) any other statement, return or disclosure relating to the Trust that is required by any

15

governmental unit and be responsible for payment, out of the Trust Operating Reserve, of any taxes imposed on the Trust or its assets.

(d)        The Trustees may elect to establish a reserve for Other Opioid Claims, which reserve would be treated as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations, and to the extent permitted by applicable law, report consistently for state and local income tax purposes. The Trustees will cause such reserve to timely file all required tax returns and timely pay all taxes, if any, imposed thereon.

Section 6.02.    Tax Withholdings. The administrator of the Trust shall withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Trust Beneficiaries for all purposes of this Trust Agreement. The Trustees shall be authorized to collect such tax information from the Trust Beneficiaries (including tax identification numbers) as in their sole discretion the Trustees deem necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement. In order to receive distributions, all Trust Beneficiaries shall be required to provide tax information to the Trustees to the extent the Trustees deem appropriate in the manner and in accordance with the procedures from time to time established by the Trustees for these purposes. The Trustees may refuse to make a payment or distribution to a Trust Beneficiary that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Trust Beneficiary's Trust Claim or Trust Interest, as applicable, as disputed; *provided*, *however*, that, upon the delivery of such information by a Trust Beneficiary, the Trustees shall make such payment or distribution to which such Trust Beneficiary is entitled, without additional interest occasioned by such Trust Beneficiary's delay in providing tax information. Notwithstanding the foregoing, if a Trust Beneficiary fails to furnish any tax information reasonably requested by the Trustees before the date that is three hundred sixty-five (365) calendar days after the request is made or, if earlier, the date on which the Trust is terminated in accordance with Article IV of this Trust Agreement, the amount of such payment or distribution shall irrevocably revert to the Trust, and any Opioid Claim with respect to such distribution shall be discharged and forever barred from assertion against the Trust Beneficiary or its property.

**Section 6.03. 6050X Reporting. The Trust and the Reorganized Debtors shall reasonably cooperate in good faith with each other, NOAT II, the Public Schools' Special Education Initiative, and each of their respective representatives with respect to the reporting required pursuant to Section 6050X of the IRC regarding the payments or transfers of property required under the Plan. If permitted under applicable law, the Trust, NOAT II and the Public Schools' Special Education Initiative may appoint a single appropriate official to file a single information return in accordance with Treasury Regulation Sections 1.6050X-1(b)(3) and 1.6050X-1(f)(1)(ii)(B). The Trust shall provide to the Reorganized Debtors a draft of any information return it has determined that it (or the single appropriate official referenced in the prior sentence) is required to file with the IRS with respect to payments or transfer of property to it under the Plan, no later than thirty (30) days prior to the deadline for filing such information return. The Trust shall consider in good faith any and all comments timely received from the Reorganized Debtors with**

16

**respect thereto. If, after consultation with its tax advisors, the Trustees (or analogous authorized persons, in the case of the single appropriate official) reasonably determine in good faith that any such comments should not be reflected in such filing, the Trust and the Reorganized Debtors shall use reasonable best efforts to negotiate in good faith so as to reach a mutually agreeable resolution, and cooperate with, as applicable, NOAT II and the Public Schools' Special Education Initiative to do so. If the parties are unable to reach a mutually agreeable resolution, the matter shall be resolved as directed by the Bankruptcy Court.**

ARTICLE VII
DISTRIBUTIONS

Section 7.01.  <u>Distributions</u>.

(a)  The Trustees shall distribute all Trust Assets on behalf of the Trust in accordance with the Plan and this Trust Agreement.

(b)  In accordance with the Plan and Master II TDP, the Trust shall make the **(i)** Opioid MDT II Initial Distribution**, and (ii) distribution of the equity in MOAF to NOAT II, TAFT II, PI Trust and Hospital Trust, in each case,** on the Opioid MDT II Initial Distribution Date.

(c)  In accordance with the Plan and Master II TDP, the Trust shall make the Opioid MDT II Subsequent Distributions on the Opioid MDT II Subsequent Distribution Dates**.; provided that the Trust shall reduce, in accordance with and subject to the conditions of Section 10.3 of the MOAF LLC Agreement and without duplication, distributions to be made to any Trust Beneficiary holding equity in MOAF in an amount equal to the excess of the Interest Holder Taxes (as defined below) with respect to such Trust Beneficiary over the amount that was recouped by MOAF through a reduction of distributions to the applicable member or otherwise repaid to the Trust by MOAF with respect to such Interest Holder Taxes (i) to the extent the Trust loaned funds to MOAF pursuant to Section 3.01(b)(xi) hereof to pay taxes that such applicable Trust Beneficiary (in its capacity as a member of MOAF) would have been responsible for, if a "push-out" election under Section 6226 of the Code were made (the "Interest Holder Taxes"), and (ii) MOAF subsequently informs the Trust that it was unable to fully recoup such Interest Holder Taxes through a reduction of subsequent distributions to the applicable member.**

(d)  In accordance with the Master II TDP, the Trust shall distribute the NOAT II MOAF Interest, the TAFT II MOAF Interest, the PI Trust MOAF Interest, the NAS PI Trust MOAF Interest, and the Hospital Trust MOAF Interest.

(e)  **[**The Trustees shall not make any distributions to Trust Beneficiaries other than as provided in the foregoing paragraphs (b), (c), and (d).**]**

(f)  All distributions made by the Trustees to any Trust Beneficiary shall become the property of such Trust Beneficiary, free and clear of all Claims, Liens or other recourse or

17

encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person.

(g)    Notwithstanding any other provision of this Trust Agreement, the foregoing paragraphs of this Section 7.01 shall not apply with respect to the **Opioid MDT II** Administrator or any distributions from the Ratepayer Account.

Section 7.02.    Distribution Dates.

(a)    The Opioid MDT II Initial Distribution Date shall be the Effective Date or as soon as reasonably practicable thereafter.[5]

(b)    [Each Opioid MDT II Subsequent Distribution Date shall be a date that is five (5) Business Days after each Opioid Deferred Cash Payment is made to the Trust, [or] such other date as the Trustees determine in their reasonable discretion in accordance with the Trust Documents.][6]

ARTICLE VIII
TRUSTEES, MDT EXECUTIVE DIRECTOR AND RESIDENT TRUSTEE

Section 8.01.    The Trustees**; Managing Trustee**.

(a)    There shall be three (3) Trustees. The initial Trustees shall be [ ], [ ] and [ ]**Michael Atkinson, Anne Ferazzi and Jennifer E. Peacock**. References herein to the Trustees shall refer to the individuals serving as the Trustees solely in their respective capacities as trustees hereunder.

(b)    Unless otherwise provided herein, any act of the Trust shall require the approval of and shall be approved by the affirmative vote of a majority of the Trustees.

(c)    The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**(d)    At their first meeting, the initial Trustees shall designate one of their number to serve as the Managing Trustee of the Trust, with such administrative duties as the Trustees may determine.  The Trustees may change the designation of the individual to serve as the Managing Trustee from time to time as circumstances warrant.  The Managing Trustee, or in the Managing Trustee's absence, another Trustee selected by the Trustees shall preside at meetings of the Trustees. The Managing Trustee, or the Trustee presiding over such meeting, shall be responsible for taking meeting minutes at each meeting of the Trustees and for performing such other administrative duties and services**

---

[5] Expected to be [ ].

[6] NTD: to discuss Plan/Confirmation Order changes re subsequent distribution dates, whether mandatory, and restrictions on reservation for Other Opioid Claims.

**as shall be assigned to or required of the Managing Trustee by the Trustees. The Managing Trustee shall maintain a list of current Trustees, including their addresses and contact information.**

Section 8.02.   Term of Service of the Trustees.

(a)   Each Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 8.02(b) hereof, (iii) his or her removal pursuant to Section 8.02(c) hereof and (iv) such Trustee complying with his or her obligations pursuant to Section 4.03 following the dissolution of the Trust pursuant to Section 4.02 hereof.

(b)   A Trustee may resign from the Trust by giving not less than sixty (60) days' prior written notice thereof to each of the other Trustees. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice, (ii) the effective date of the appointment of a successor Trustee in accordance with Section 8.03(a) of this Trust Agreement and such successor's acceptance of such appointment in accordance with Section 8.03(b) of this Trust Agreement and (iii) if such Trustee is the last Trustee then in office, the appointment of a successor by the Bankruptcy Court and the acceptance by such successor of such appointment. If a successor Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation of the last Trustee in office, then such Trustee may petition the Bankruptcy Court for the appointment of a successor Trustee. With respect to any other Trustee's resignation, such resignation shall be effective whether or not a successor has been appointed by the effective date of the resigning Trustee's resignation.

(c)   Any Trustee may be removed either (i) at the unanimous recommendation of the other two (2) Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause or (ii) in connection with any dispute raised by any Trust Beneficiary in accordance with Section 8.02(d) below. Any removal of any Trustee shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)   To the extent there are any disputes raised by any Trust Beneficiary, other than the holder of an Other Claim, regarding the operation of the Trust or the actions of the Trustees, (i) any Trust Beneficiary shall have the right to seek resolution by the Bankruptcy Court of such a dispute, including seeking to enjoin any disputed action by the Trust, and all Trustees and Trust Beneficiaries shall have the right to be heard with regard to any such dispute, including by filing objections, declarations, statements in support or other pleadings (including with supporting evidence) or providing witness testimony at any hearing and (ii) the Bankruptcy Court shall have exclusive jurisdiction to hear and resolve any such disputes, and shall be authorized to order appropriate relief subject to the provisions of Article IV.U.2 of the Plan and this Trust Agreement. For the avoidance of doubt, the foregoing paragraph shall not apply with respect to holders of Other Claims.[73]

---

[73] For the avoidance of doubt holders of Other Opioid Claims shall have all of the rights afforded to them under the Bankruptcy Code as holders of Disputed Claims.

19

(e)     The death, resignation or removal of a Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by such Trustee. All fees and expenses properly incurred by a Trustee prior to the death, resignation or removal of such Trustee shall be paid from the Trust Operating Reserve, unless such fees and expenses are disputed, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Trust Operating Reserve. In the event of the resignation or removal of a Trustee, such Trustee shall (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the remaining Trustees or the successor Trustee or directed by the Bankruptcy Court to effect the termination of such Trustee's capacity under this Trust Agreement, (ii) promptly deliver to the remaining Trustees and the successor Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of such Trustee, and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

Section 8.03.   <u>Appointment of Successor Trustees.</u>

(a)     In the event of the death, resignation or removal of a Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by the other two (2) Trustees, subject to the approval of the Bankruptcy Court. Such appointment shall specify the date on which such appointment shall be effective.

(b)     Any successor Trustee appointed in accordance with this Trust Agreement shall execute an instrument accepting its appointment and shall deliver a counterpart thereof to the Bankruptcy Court for filing and, in case of a Trustee's resignation, to the resigning Trustee. Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Trust with like effect as if originally named an initial Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The resigning or removed Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such resigning or removed Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Trustee.

Section 8.04.   [Reserved.]

Section 8.05.   <u>Independence of the Trustees.</u>

(a)     From and after the Effective Date, the Trustees shall be disinterested and independent.

(b)     From and after the Effective Date, none of the Trustees shall hold a financial interest in, act as a representative, attorney, consultant or agent for or serve as any other professional for the Debtors, their affiliated persons, any Public Creditor Trust or Private

20

Creditor Trust (other than the Trust).  No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Cases.  For the avoidance of doubt, this provision shall not apply to the Resident Trustee.

Section 8.06.  <u>Obligations of the Trustees</u>. The Trustees shall take into account the interests of, and owe fiduciary duties to, each of the Trust Beneficiaries in making all decisions on behalf of the Trust in accordance with Article IV.U.2 of the Plan.

Section 8.07.  <u>Compensation and Expenses of the Trustees and Trust Professionals</u>. The Trustees shall be entitled to reasonable compensation**, reimbursement of reasonable out-of-pocket expenses,** and to retain and reasonably compensate counsel, an executive director, agents, advisors, consultants and other professionals (the "<u>Trust Professionals</u>") to assist in the duties of the Trust on such terms as the Trustees deem appropriate, without Bankruptcy Court approval.  The initial compensation of the Trustees shall be $[~~    ~~]**250,000 per annum per Trustee; provided that the Managing Trustee shall receive an additional $25,000** per annum.  The annual compensation of the Trustees may be increased each year after the [first] anniversary of the Effective Date, provided however that such annual increase shall not exceed the greater of [~~    ~~]**3**% or the percentage equal to the most recently announced Social Security Administration cost-of-living adjustment.  The payment of the fees and expenses of the Trustees and Trust Professionals shall be made from the Trust Operating Reserve in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided* that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

Section 8.08.  <u>Trustee Meetings</u>.

(a)  <u>Regular Meetings</u>.  The Trustees shall hold regular meetings not less than quarterly, which may be held without notice at such times and at such places as may be determined from time to time by the Trustees.

(b)  <u>Special Meetings</u>. Special meetings of the Trustees may be called by any Trustee by giving written notice to each other Trustee not less than one (1) business day prior to the date of the meeting. Any such notice shall include the time, place and purpose of the meeting, given to each Trustee by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication. Notice shall be addressed or delivered to each Trustee at the Trustee's address as shown upon the records of the Trust or as may have been given to Trustees by the Trustee for purposes of notice. If a Trustee's address is not shown on such records or is not readily ascertainable, notice to the Trustee may be given care of the principal office of the Trust. Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier. Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)  <u>Action and Quorum</u>. In all matters pertaining to the affairs of the Trust, the Trustees shall act by a vote of a majority of the number of Trustees then in office, which such majority shall constitute a quorum of the Trustees for the transaction of business, except to adjourn as provided in ~~Section 8.08(c)~~**Section 8.08(f)**.

21

(d)      Participation in Meetings by Telephone Conference**.** Trustees may participate in a meeting of the Trustees by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all Trustees participating in such meeting can hear one another. Participation by a Trustee in a meeting pursuant to this ~~Section 8.08(d)~~**Section 8.08(d)** shall constitute presence in person at such meeting.

(e)      Waiver of Notice**.** Notice of a meeting need not be given to any Trustee who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust's records or made a part of the minutes of the meeting. Attendance at a meeting by a Trustee shall constitute a waiver of notice of such meeting except when the Trustee attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business on the ground that the meeting was not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any Trustee meeting need be specified in any waiver of notice.

(f)      Adjournment. A majority of the Trustees present, whether or not a quorum exists, may adjourn any Trustees' meeting to another time and place.

(g)      Action by Unanimous Written Consent**.** Any action required or permitted to be taken at any meeting of the Trustees may be taken without a meeting, if all of the Trustees then in office consent thereto in writing or by Electronic Transmission, which writing may be executed in one or more counterparts, and the writing or Electronic Transmission are filed with the meeting minutes of the Trustees. As used herein, "Electronic Transmission" means any form of communication not directly involving the physical transmission of paper that creates a record that may be retained, retrieved and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

Section 8.09.    Resident Trustee.

(a)      The Resident Trustee has been appointed and hereby agrees to serve as a trustee of the Trust solely for the purpose of complying with the requirement of Section 3807(a) of the Trust Act that the Trust have one trustee, which, in the case of a natural person, is a resident of the State of Delaware, or which in all other cases, has its principal place of business in the State of Delaware. The duties and responsibilities of the Resident Trustee shall be limited solely to (i) accepting legal process served on the Trust in the State of Delaware, **and** (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Resident Trustee is required to execute under Section 3811 of the Trust Act~~, and (iii) any other duties specifically allocated to the Resident Trustee in this Trust Agreement~~. Except as provided in the foregoing sentence, the Resident Trustee shall have no management responsibilities or owe any fiduciary duties to the Trust, the Trustees, or the Trust Beneficiaries. **To the extent that, at law or in equity, the Resident Trustee has duties (including fiduciary duties) and liabilities relating to the Trust or the Trust Beneficiaries, such duties and liabilities are eliminated to the fullest extent permitted by applicable law, including Section 3806 of the Trust Act, and are replaced entirely by the duties and liabilities of the Resident Trustee as expressly set forth in this Section 8.09.**

(b)    By execution of this Trust Agreement, the Resident Trustee accepts the Trust created herein. Except as otherwise expressly required by Section 8.088.09(a) of this Trust Agreement, the Resident Trustee shall not have any duty or liability with respect to the administration of the Trust, the investment of the assets of the Trust or the distribution of the Trust Assets to the Trust Beneficiaries, and no such duties shall be implied. The Resident Trustee shall not be liable for the acts or omissions of the Trustees, nor shall the Resident Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Trustees or Trust Professionals under this Trust Agreement, except as expressly required by Section 8.088.09(a) of this Trust Agreement. The Resident Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Resident Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, bad faith, or gross negligence. Without limiting the foregoing:

(i)    the Resident Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    no provision of this Trust Agreement shall require the Resident Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Resident Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)    the Resident Trustee shall not be personally liable for the validity or sufficiency of this Trust Agreement or for the due execution of this Trust Agreement by the other parties to this Trust Agreement;

(iv)    the Resident Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(v)    the Resident Trustee may request the Trustees to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, **or to provide written instructions,** and such certificate **or instructions** shall constitute full protection to the Resident Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)    in the exercise or administration of the Trust hereunder, the Resident Trustee (A) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and (B) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done,

23

suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; ~~and~~

(vii)    the Resident Trustee acts solely as Resident Trustee hereunder and not in its individual capacity, and all persons having any claim against the Resident Trustee by reason of the transactions contemplated by this Trust Agreement shall look only to the assets of the Trust for payment or satisfaction thereof~~.~~**;**

**(viii)**    **the Resident Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Resident Trustee; and**

**(ix)**    **the Resident Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.**

(c)    The Resident Trustee shall be entitled to receive compensation out of the assets of the Trust Operating Reserve for the services that the Resident Trustee performs in accordance with this Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Resident Trustee and the Trustees. The Resident Trustee may also consult with counsel (who may be counsel for the Trust or for the Resident Trustee) with respect to those matters that relate to the Resident Trustee's role as the Delaware resident trustee of the Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of the Trust Operating Reserve to the Resident Trustee pursuant to this <u>Section ~~8.08~~**8.09**</u>(c) on terms acceptable to the Trustees; *provided* that no such fees shall be reimbursed to the extent that they are incurred as a result of the Resident Trustee's gross negligence, bad faith or willful misconduct.

(d)    The Resident Trustee shall serve for the duration of the Trust or until the earlier of (i) the effective date of the Resident Trustee's resignation, or (ii) the effective date of the removal of the Resident Trustee. The Resident Trustee may resign at any time by giving thirty (30) days' written notice to the Trustees; *provided*, *however*, that such resignation shall not be effective until such time as a successor Resident Trustee has accepted appointment. The Resident Trustee may be removed at any time by the Trustees by providing thirty (30) days' written notice to the Resident Trustee; *provided*, *however*, such removal shall not be effective

until such time as a successor Resident Trustee has accepted appointment. Upon the resignation or removal of the Resident Trustee, the Trustees shall appoint a successor Resident Trustee. If no successor Resident Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Resident Trustee **at the expense of the Trust** may petition the Bankruptcy Court **or any other court of competent jurisdiction** for the appointment of a successor Resident Trustee. Any successor Resident Trustee appointed pursuant to this Section ~~8.08~~**8.09**(d) of this Trust Agreement shall be eligible to act in such capacity in accordance with this Trust Agreement and, following compliance with this Section ~~8.08~~**8.09**(d) of this Trust Agreement, shall become fully vested with the rights, powers, duties, and obligations of its predecessor under this Trust Agreement, with like effect as if originally named as Resident Trustee. Any such successor Resident Trustee shall notify the Resident Trustee of its appointment by providing written notice to the Resident Trustee, and upon receipt of such notice, the Resident Trustee shall be discharged of its duties herein. **The successor Resident Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with Section 3810 of the Act.**

**(e)     Notwithstanding anything herein to the contrary, any business entity into which the Resident Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Resident Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Resident Trustee, shall be the successor of the Resident Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.**

ARTICLE IX
RELIANCE, LIABILITY AND INDEMNIFICATION

Section 9.01.    <u>Reliance by the Trustees</u>. Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, each Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by such Trustee to be genuine and to have been signed or presented by the proper party or parties having relevant authority or expertise.

Section 9.02.    <u>Nonliability of Trustees and Trust Professionals</u>. Except as provided herein, nothing contained in this Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by any Trustee or **Indemnified** Trust Professional of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any Trustee or **Indemnified** Trust Professional to assume or accept any such liability, obligation or duty. Any successor Trustee or newly retained **Indemnified** Trust Professional may accept and rely upon any accounting made by or on behalf of any predecessor Trustee or **Indemnified** Trust Professional hereunder, and any statement or representation made as to the assets comprising the Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. The Trustees and **Indemnified** Trust Professionals shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete,

25

inaccurate or untrue. Any successor Trustee or newly retained **Indemnified** Trust Professional shall not be liable for any act or omission of any predecessor Trustee or **Indemnified** Trust Professional, nor have a duty to enforce any claims against any predecessor Trustee or **Indemnified** Trust Professional on account of any such act or omission. No provision of this Trust Agreement shall require the Trustees or **Indemnified** Trust Professionals to expend or risk their personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder if the Trustee or **Indemnified** Trust Professional has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him or her. **For the purposes of Article IX, "Indemnified Trust Professional" shall mean (i) any executive director, agent, advisor, consultant and other professional of the Trust, the Trustees and the Resident Trustee (in each case exclusive of counsel) or (ii) a Designated Indemnitee. For the avoidance of doubt, "Indemnified Trust Professional" shall not include any outside counsel to any Trustee, the Resident Trustee or the Trust unless such outside counsel is a "Designated Indemnitee." As used herein, the term "Designated Indemnitee" shall mean any counsel (including any outside counsel) designated by action of the Trustees as a Designated Indemnitee. The Trustees may delegate to any Trustee its authority to designate individuals as Designated Indemnitees subject to any such limitations as the Trustees may specify in such delegation; provided, however, that no Person shall be a "Designated Indemnitee" with respect to such Person's service in any role prior to the Effective Date, including as an employee, agent or representative of any Debtor or any subsidiary of any Debtor.**

Section 9.03.   Exculpation. To the maximum extent permitted by applicable law, each of the Trustees, **Indemnified** Trust Professionals and the Resident Trustee shall not have or incur any liability for actions taken or omitted in his or her capacity as a Trustee, **Indemnified** Trust Professional or the Resident Trustee, or on behalf of the Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as a Trustee, **Indemnified** Trust Professional or the Resident Trustee, or on behalf of the Trust, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Trustees, **Indemnified** Trust Professionals or the Resident Trustee shall be satisfied from the Trust Operating Reserve.

Section 9.04.   Limitation of Liability. The Trustees, the Resident Trustee, and **Indemnified** Trust Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances.

Section 9.05.   Indemnity. The Trust shall indemnify and hold harmless each of the Trustees, **Indemnified** Trust Professionals and Resident Trustee, in each case solely in such Person's capacity as such (each, an "Indemnified Party"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (other than taxes in the nature of income taxes imposed on compensation paid to the Indemnified Parties), including, but not limited to, attorneys' fees, arising out of or due to the implementation or administration of the Plan or this Trust Agreement, other than such Indemnified Party's willful misconduct, bad faith, gross negligence or fraud, with respect to the implementation or administration of the Plan or

26

this Trust Agreement. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (a) any payment on account of such claim shall be paid solely from the Trust Operating Reserve and (b) the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (provided that such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Trust Operating Reserve or any insurance purchased using the Trust Operating Reserve. This indemnification provision shall remain available to, and the repayment obligation **and** be binding upon, any former Trustee, **Indemnified** Trust Professional or Resident Trustee or the estate of any deceased Trustee, **Indemnified** Trust Professional or Resident Trustee, as the case may be, and shall survive the termination of the Trust.

ARTICLE X
MISCELLANEOUS PROVISIONS

Section 10.01. <u>Actions Taken on Other Than a Business Day</u>. In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 10.02. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

Section 10.03. <u>Jurisdiction</u>. Subject to the proviso below, the Bankruptcy Court shall have exclusive jurisdiction over the Trust, the Trustees and the Trust Professionals, including the administration and activities of the Trust, the Trustees and the Trust Professionals, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; *provided*, *however*, that, notwithstanding the foregoing, the Trustees shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Causes of Action held by the Trust.

Section 10.04. <u>Severability</u>. In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

Section 10.05. <u>Notices</u>. Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been

sufficiently given, for all purposes, if delivered personally, by email, sent by nationally recognized overnight delivery service or mailed by first-class mail:

(a)    if to the Trust, to:

[    ]

Email: [    ]

> **Opioid Master Disbursement Trust II**
> **36 S. Charles Street, Suite 2310**
> **Baltimore, MD 21201**
> **Attn: Michael Atkinson**
> **Email: JPeacock@MDTAdmin.com; MAtkinson@MDTAdmin.com; and AFerazzi@MDTAdmin.com**

with a copy **(which shall not constitute notice)** to:

[    ]

Email: [    ]

> **Brown Rudnick LLP**
> **7 Times Square**
> **New York, NY 11036**
> **Attn: David J. Molton, Esq., Steven D. Pohl, Esq. and Gerard Cicero, Esq.**
> **Email: dmolton@brownrudnick.com, spohl@brownrudnick.com and gcicero@brownrudnick.com**

(b)    if to the Resident Trustee

[    ]

Email: [    ]

> **Wilmington Trust, N.A.**
> **1100 North Market Street**
> **Wilmington, DE 19890**
> **Attn: Michael Bochanski, Jr.**
> **Email: mbochanski@wilmingtontrust.com**

with a copy **(which shall not constitute notice)** to:

> **Morris James, LLP**
> **500 Delaware Avenue, Suite 1500**
> **Wilmington, DE 19801**
> **Attn: Ross Antonacci, Esq.**

[    ]

Email : [    ]**RAntonacci@morrisjames.com**

(c)    if to the Trustees, to:

> **Jennifer E. Peacock**

[    ]
Email: [    ]JPeacock@MDTAdmin.com

Michael Atkinson
Email: MAtkinson@MDTAdmin.com

Anne Ferazzi
Email: AFerazzi@MDTAdmin.com

with a copy (which shall not constitute notice) to:

c/o Brown Rudnick LLP
7 Times Square
New York, NY 11036
Attn: David J. Molton, Esq., Steven D. Pohl, Esq., and Gerard Cicero, Esq.
Email: dmolton@brownrudnick.com, spohl@brownrudnick.com and gcicero@brownrudnick.com

(d)     if to the Trust Beneficiaries, then to each of or as applicable:

(i)     with respect to the Private Creditor Trusts:

Third-Party Payor Trust
[    ]
Email: [    ]
To the TPP Trustee or TPP Trust:

TPP Trust
Alan D. Halperin, as TPP Trustee
c/o Halperin Battaglia Benzija, LLP
40 Wall Street, 37th floor
New York, NY 10005
Email: ahalperin@halperinlaw.net

With a copy to:

Halperin Battaglia Benzija, LLP
40 Wall Street, 37th floor
New York, NY 10005
Attn: Donna H. Lieberman, Esq.
Email: dlieberman@halperinlaw.net

To the Delaware Trustee:

**Wilmington Trust, National Association**
**1100 N. Market Street**
**Wilmington, DE 19890**
**Attn: David Young**
**Email: DYoung@wilmingtontrust.com**


**To the TPP Trust Advisory Committee and its members:**


**Independent Health**
**Attn: Laurie Boreanaz Carra, Esq.**
**Senior Deputy Counsel**
**511 Farber Lakes Drive**
**Buffalo, NY 14221**
**E-mail: Laurie.Carra@independenthealth.com**


**and**


**Lowey Dannenberg, P.C.**
**Gerald Lawrence, Esq.**
**Noelle Ruggiero, Esq.**
**One Tower Bridge**
**100 Front St., Suite 520**
**West Conshohocken, PA 19428**
**E-mail: glawrence@lowey.com; nruggiero@lowey.com**


**Blue Cross and Blue Shield Association**
**Brendan Stuhan, Esq. Assistant General Counsel, Litigation**
**1310 G Street N.W. – 10th floor**
**Washington, D.C. 20005**
**E-mail: Brendan.Stuhan@bcbsa.com**


**and**


**Hagens Berman Sobol Shapiro LLP**
**Thomas Sobol, Esq.**
**Lauren Barnes, Esq.**
**55 Cambridge Parkway, Suite 301**
**Cambridge, MA 02142**
**E-mail: tom@hbsslaw.com; lauren@hbsslaw.com**


**Emblem Health**
**Carlos G. Manalansan, Assistant General Counsel**
**55 Water Street, 13th Fl. (Rm. 13F15)**
**New York, NY 10041**
**E-mail: cmanalansan@emblemhealth.com**

**and**

**Rawlings & Associates**
**Mark Fischer, Esq.**
**1 Eden Parkway La Grange, KY 40031**
**E-mail: mdf@rawlingsandassociates.com**

PI Trust
[    ]
Email: [    ]

**Edgar C. Gentle, III, Esq.**
**Gentle, Turner, Sexton & Harbison, LLC**
**501 Riverchase Parkway East, Suite 100**
**Hoover, AL 35244**
**E-mail: egentle@gtandslaw.com**

and

Future Claimants' Representative

Roger Frankel, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rfrankel@frankelwyron.com

31

~~With~~with a copy **(which shall not constitute notice)** to:

Richard H. Wyron, Esq.
Frankel Wyron LLP
2101 L St., NW,
Suite 800
Washington, DC 20037
Email: rwyron@frankelwyron.com

~~And a copy to:~~
**and**

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Email: jpatton@ycst.com

NAS Monitoring Trust
~~[   ]~~
~~Email: [   ]~~

**To the NAS Monitoring Trust through the Trustee:**

**Donald R. Cravins, Jr., Esq.**
**c/o National Urban League**
**80 Pine Street**
**9th Floor**
**New York, NY 10005**

**With a copy to:**

**Harold D. Israel**
**Levenfeld Pearlstein, LLC**
**2 North LaSalle Street**
**Suite 1300**
**Chicago, IL 60602**

**Delaware Trustee:**

**Wilmington Trust, National Association**
**1100 North Market Street**
**Wilmington, DE  19890**
**Attn:  David Young**
**Email:  DYoung@wilmingtontrust.com**

32

**NAS Monitoring Trust Advisory Committee:**

**Stanford University School of Medicine**
**770 Welch Road**
**Suite 435**
**Stanford, CA  94304**
**Attn:  Dr. Kanwaljeet ("Sunny") Anan**
**Email:  anandsunny108@gmail.com**

**Pennsylvania State University**
**270 Moore Building**
**University Park, PA  16802**
**Attn: Koraly Perez-Edgar**
**Email:  kxp24@psu.edu**

**Tuckson Health Connections, LLC**
**27 Sandy Springs Place**
**Suite D-346**
**Sandy Springs, GA  30328**
**Attn:  Dr. Reed Tuckson**
**Email:  drreed@tucksonhealthconnections.com**

**Independent** Emergency Room Physicians Trust
~~[    ]~~
~~Email: [    ]~~

**To the IERP Trust through the IER Physician Trustee:**

**Mallinckrodt IERP Trust**
**1121 Park West Blvd., Suite B #186**
**Mt. Pleasant, S.C. 29466-7122**
**Email: trustee@ierptrust.com**
**Telephone: 843-439-4657**

**With a copy to:**

**Paul Rothstein**
**Law Offices of Paul S. Rothstein, P.A**
**626 N.E. 1ˢᵗ Street,**
**Gainesville, FL 32601**
~~**Hospital Trust**~~
~~[    ]~~
Email: ~~[    ]~~**psr@ierptrust.com**

**To the IER Physician Committee:**

**Michele Puiggari, Esq.**
**3801 Milwaukee Ct.**
**Missoula, MT 59808**
**Email: michele@ierptrust.com**

**Suzanne Colvin, Ph.D.**
**2716 NW 22nd Drive**
**Gainesville, FL 32605**
**Email: suzy@ierptrust.com**
**Hospital Trust**

**To the Hospital Trust through the Trustee:**

**c/o Thomas L. Hogan**
**TLH Consulting**
**321 N. Clark Street**
**Chicago, IL 60654**

**With a copy to:**

**Don Barrett**
**Barrett Law Group**
**404 Court Square**
**P.O. Box 927**
**Lexington, MS 39095-0927**

**and**

**Michael P. O'Neil**
**Taft Stettinius & Hollister LLP**
**211 N. Pennsylvania Street**
**Suite 3500**
**Indianapolis, IN 46204**

**To the Delaware Trustee:**

**Wilmington Trust, N.A.**
**Rodney Square North**
**1100 N. Market Street**
**Wilmington, DE 19890**
**Attn: David Young**
**Email: DYoung@wilmingtontrust.com**

**To the Hospital Trust Advisory Committee and its sole member:**

**Jeffrey James**
**c/o Wilmington Health**

34

**3147 S 17th Street**
**Wilmington, NC  28412**

(ii)    with respect to the Public Creditor Trusts:

**National Opioid Abatement Trust II**
**c/o Campbell & Levine, LLC**
**310 Grant Street, Suite 1700**
**Pittsburgh, PA 15219**
**Attn: Douglas A. Campbell, Esq.**
**Email: Trustees@NationalOpioidAbatementTrust.com**

**Tribal Abatement Fund Trust II**
**P.O. Box 65097**
**Washington, DC 20035**
~~NOAT II~~
~~[    ]~~
Email: ~~[    ]~~**Directors@tribalopioidsettlements.com**
~~TAFT II~~
~~[    ]~~
~~Email: [    ]~~

~~(iii)~~ with respect to the United States:

~~[    ]~~
~~Email: [    ]~~

**U.S. Department of Justice**
**1100 L Street, NW**
**Room 7220**
**Washington, DC 20005**
**Attn: Mary A. Schmergel, Esq.**
**Email: Mary.Schmergel@usdoj.gov**

**(iii)**    ~~(iv)~~ with respect to the Ratepayer Account:

**Stevens & Lee**
**485 Madison Avenue, 20th Floor**
**New York, NY 10022**
~~[    ]~~**Attn: Nicholas F. Kajon, Esq.**
Email: ~~[    ]~~**nicholas.kajon@stevenslee.com**

**Keller Postman LLC**
**150 North Riverside Plaza**
**Suite 4100**
**Chicago, IL 60606**
**Attn: Seth Meyer, Esq.**
**Email: sam@kellerpostman.com**

**(e)**      **if to the Debtors, to:**

    **Mallinckrodt Pharmaceuticals**
    **5300 Frontage Road, Suite 300**
    **Hampton, NJ 08827**
    **Attn: General Counsel**

    **with a copy to**

    **Latham & Watkins LLP**
    **330 North Wabash Avenue, Suite 2800**
    **Chicago, IL 60611**
    **Attn: Jason Gott**
    **E-mail: jason.gott@lw.com**

    **and**

    **1271 Avenue of the Americas**
    **New York, NY 10020**
    **Attn: Anu Yerramalli**
    **Email: Anu.Yerramalli@lw.com**

Section 10.06. <u>Headings</u>. The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision of this Trust Agreement.

Section 10.07. <u>Entire Trust Agreement</u>. This Trust Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Trust Agreement.

Section 10.08. <u>Amendment and Waiver</u>. Any provision of this Trust Agreement may be amended or waived only with the consent of (x) a majority of the Trustees and (y) NOAT II; provided, however, that the Trustees may amend this Trust Agreement by unanimous consent of the Trustees from time to time, without the consent, approval or other authorization of any other Person, to make minor modifications or clarifying amendments as necessary to enable the Trustees to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, no amendment or waiver of any provision of this Trust Agreement shall modify this Trust Agreement in a manner that (a) is inconsistent with the Plan or the Confirmation Order without an order of the Bankruptcy Court (after notice and a hearing) approving such modification, other than to make minor modifications or clarifying amendments by unanimous consent of the Trustees as necessary to enable the Trustees to effectuate the provisions of this Trust Agreement, (b) would adversely impact the distributions to, or confer additional obligations or liabilities upon, any Trust Beneficiary without the consent of such Trust Beneficiary, and, solely with respect to the PI Trust, the Future Claimants' Representative; (c) would alter the duties or liabilities of the Resident Trustee without the consent of the Resident Trustee or (d) would

amend or waive this Section 10.08. The Trustees shall provide notice to the Trust Beneficiaries of any proposed amendment or wavier of any provision of this Trust Agreement including, for the avoidance of doubt, any proposed amendment or waiver that does not require the consent of the Trust Beneficiaries hereunder, not less than ten (10) Business Days before such amendment or waiver becomes effective.

Section 10.09. <u>Confidentiality</u>. The Trustees, the Resident Trustee, and the Trust Professionals (each, a "<u>Confidential Party</u>" and, collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Debtor; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties or (b) such disclosure is required of the Confidential Parties pursuant to legal process including subpoena or other court order or other applicable laws or regulations. For the avoidance of doubt and notwithstanding anything to the contrary herein, each Confidential Party shall comply with Article IV.W.1 of the Plan.

Section 10.10. <u>Meanings of Other Terms</u>. Except where the context otherwise requires, (a) words importing the masculine, feminine or neuter gender include the masculine, feminine and neuter gender, (b) words importing the singular or plural number shall include the singular and plural number, (c) the words "herein," "hereof," or "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement and (d) the words "includes" and "including" are not limiting.

Section 10.11. <u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

*[Signature Pages Follow]*

37

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the Effective Date.

**[DEBTORS]**

By: _____

Name: _____

Title: _____

**[TRUSTEE]**, as Trustee

By: _____

Name: _____

**[TRUSTEE]**, as Trustee

By: _____

Name: _____

**[TRUSTEE]**, as Trustee

By: _____

Name: _____

**[RESIDENT TRUSTEE]Wilmington Trust, N.A.**, as Resident Trustee

By: _____

Name: _____

Title: _____

**Schedule 1**

**[Assigned Insurance Rights]**[1]

---

[1] NTD: TBD whether insurance assets to be scheduled and referenced.

**Exhibit A**

**Master II TDP**

[Filed Separately]

¹ NTD: TBD whether insurance assets to be scheduled and referenced.

[Signature Page to Opioid MDT II Agreement]

## Exhibit B

### Investment Guidelines

**In General.** Only the following investments will be permitted, ~~provided that maturities on the following securities do not exceed twelve (12) months, all investments are U.S. dollar denominated and all requirements are satisfied at the time of purchase~~:

~~1. marketable securities issued by the U.S. Government and supported by the full faith and credit of the U.S. Treasury; and~~

~~2. a U.S. government money market fund required to invest exclusively in cash and U.S. government securities that are supported by the full faith and credit of the U.S. Treasury.~~

~~The borrowing of funds or securities for the purpose of purchasing and the lending of any investments is prohibited.~~

~~Notwithstanding the foregoing, it is acknowledged and agreed that the Trustees may liquidate investments and deposit and maintain funds in or with banks, trust companies, savings and loan associations, money market organizations and other depositories or issuers of depository-type accounts at such times as the Trustees determine to be necessary or appropriate to have cash available to satisfy distribution and other cash requirements of the Trust.~~

~~64118587 v8-WorkSiteUS-036517/0012~~
~~64153339 v1-WorkSiteUS-036517/0012~~

**(i)      Demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured;**

**(ii)      U.S. Treasury bills, bonds, and notes, including, but not limited to, long-term U.S. Treasury bills, bonds, notes, and other Government Securities as defined under Section 2(a)(16) of the Investment Company Act of 1940, 15 U.S.C. § 80a-2(a)(16), including, but not limited to, Fannie Mae, Freddie Mac, Federal Home Loan Bank, and Federal Farm Credit;**

**(iii)      Repurchase agreements for U.S. Treasury bills, bonds, and notes;**

**(iv)      Commercial Paper (rated A1/P-1 by Standard & Poor's and Moody's);**

**(v)      AA or AAA corporate bonds (with the rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's, or Fitch)); or**

**(vi)      Open-ended mutual funds owning only assets described in subparts (i) through (v) of this subsection.**

**The value of bonds of any single company and its affiliates owned by the Trust directly rather than through a mutual fund shall not exceed 10% of the investment**

~~[Signature Page to Opioid MDT II Agreement]~~

portfolio at time of purchase; this restriction does not apply to any of the following: Repurchase Agreements; Money Market Funds; U.S. Treasuries; and U.S. Government Agencies.

Any such investments shall be made consistently with the Uniform Prudent Investor Act. The determination of the rating of any investments shall be made by the Trust's financial advisor on the date of acquisition of any such investment or on the date of re-investment. The Trust's financial advisor shall reconfirm that all investments of Trust Assets still meet the original rating requirement on a quarterly basis. If the Trust's financial advisors determine that any particular investment no longer meets the rating requirement, there shall be a substitution of that investment with an investment that meets the ratings requirement as promptly as practicable, but in no event later than the next reporting period. Previously purchased securities downgraded below AA may be held for a reasonable and prudent period of time if the Trust's financial advisor believes it is in the interest of the Trust to do so.

The borrowing of funds or securities for the purpose of leveraging, shorting, or other investments is prohibited. Investment in non-U.S. dollar denominated bonds is prohibited. The standing default investment instruction for all cash in any account or subaccount that holds any Trust Assets in cash shall be invested in the BlackRock Fed Fund (CUSIP 09248U700).

See example fund-level requirements table on following page.

**Fund Level Requirements**

**1. OTC Derivatives Counterparty Exposure – Not allowed**
**2. Non-U.S. dollar denominated bonds – Not allowed**

| TYPE OF INVESTMENT | ELIGIBLE | PROHIBITED | COMMENTS |
|---|---|---|---|
| U.S. Treasury Securities | X | | |
| U.S. Agency Securities | X | | |
| Mortgage-Related Securities | | x | |
| Asset-Backed Securities | | x | |
| Corporate Securities (public) | X | | |
| Municipal bonds | | x | |
| | | | |
| DERIVATIVES: | No investment, including futures, options and other derivatives, may be purchased if its return is directly or indirectly determined by an investment prohibited elsewhere in these guidelines. | | |
| Futures | | x | |
| Options | | x | |
| Currency Forwards | | x | |
| Currency Futures | | x | |
| Currency Options | | x | |
| Currency Swaps | | x | |
| Interest Rate Swaps | | x | |

| | | | |
|---|---|---|---|
| **Total Return Swaps** | | x | |
| **Structured Notes** | | X | |
| **Collateralized Debt Obligations** | | x | |
| **Credit Default Swaps** | | X | |
| **Mortgage-Related Derivatives** | | X | |
| | | | |
| **FOREIGN / NON-U.S. DOLLAR:** | | | |
| **Foreign CDs** | | X | |
| **Foreign U.S. Dollar Denominated Securities** | | X | |
| **Non-U.S. Dollar Denominated Bonds** | | X | |
| **Supranational U.S. Dollar Denominated Securities** | | X | |
| | | | |
| **COMMINGLED VEHICLES (except STIF):** | | | |
| **Collective Funds** | | X | |
| **Commingled Trust Funds (open ended mutual funds only)** | | X | |
| **Common Trust Funds** | | X | |
| **Registered Investment Companies** | | X | |
| | | | |
| **MONEY MARKET SECURITIES:** | | | |
| **Qualified STIF** | | x | |
| **Interest Bearing Bank Obligations Insured by a Federal or State Agency** | X | | |
| **Commercial Paper** | | x | |
| **Master Note Agreements and Demand Notes** | | x | |
| **Repurchase Agreements** | | x | |
| | | | |
| **OTHER:** | | | |
| **Bank Loans** | | x | |
| **Convertibles (e.g., Lyons)** | | x | |
| **Municipal Bonds** | X | | |
| **Preferred Stock** | | x | |
| **Private Placements (excluding 144A)** | X | | |
| **Rule 144A Issues** | X | | |
| **Zero Coupon Bonds** | X | | |
| **Commodities** | | X | |
| **Catastrophe Bonds** | | X | |