**Exhibit C**

**Asbestos Personal Injury Trust Agreement**

**PLEASE TAKE NOTICE** that certain documents, or portions thereof, contained in this Exhibit C and the Nineteenth Plan Supplement remain subject to continuing negotiations among the Debtors and interested parties with respect thereto.  The Debtors and such applicable interested parties reserve all of their respective rights, subject to the terms and conditions set forth in the Plan and the Restructuring Support Agreement (as amended), with respect to the final form of such documents and to amend, revise, or supplement the Nineteenth Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.

**MALLINCKRODT**

**ASBESTOS PERSONAL INJURY TRUST AGREEMENT**

## TABLE OF CONTENTS

**Page**

**ARTICLE I      AGREEMENT OF TRUST** ........................................................ **3**

    1.1    Creation and Name ........................................................ 3

    1.2    Purpose ........................................................ 3

    1.3    Transfer of Asbestos Trust Assets ........................................................ 4

    1.4    Acceptance of Assets and Assumption of Liabilities. ........................................................ 4

**ARTICLE II      POWERS AND ASBESTOS TRUST ADMINISTRATION** ..................... **6**

    2.1    Powers. ........................................................ 6

    2.2    General Administration. ........................................................ 10

    2.3    Claims Administration ........................................................ 14

    2.4    Medicare Reporting Obligations. ........................................................ 14

**ARTICLE III      ACCOUNTS, INVESTMENTS, AND PAYMENTS** .............................. **15**

    3.1    Accounts. ........................................................ 15

    3.2    Investments ........................................................ 16

    3.3    Source of Payments. ........................................................ 18

**ARTICLE IV      ASBESTOS TRUSTEE; DELAWARE TRUSTEE** .............................. **18**

    4.1    Number ........................................................ 18

    4.2    Term of Service. ........................................................ 18

    4.3    Appointment of Successor Asbestos Trustee ........................................................ 19

    4.4    Liability of Asbestos Trustee and Others ........................................................ 20

    4.5    Compensation and Expenses of the Asbestos Trustee. ........................................................ 20

    4.6    Indemnification of Asbestos Trustee and Others. ........................................................ 21

    4.7    Lien ........................................................ 23

    4.8    Asbestos Trustee's Employment of Experts ........................................................ 23

    4.9    Asbestos Trustee Independence ........................................................ 24

    4.10    No Bond ........................................................ 24

    4.11    Delaware Trustee. ........................................................ 24

**ARTICLE V      TRUST ADVISORY COMMITTEE** ........................................................ **29**

    5.1    Initial Members of the TAC. ........................................................ 29

    5.2    Duties ........................................................ 30

    5.3    Term of Office. ........................................................ 30

**TABLE OF CONTENTS**
(continued)

**Page**

5.4     Successor Members of the TAC. ........................................................... 30

5.5     TAC's Employment of Professionals. .................................................. 31

5.6     Compensation and Expenses of the TAC ............................................ 33

5.7     Procedures for Consultation with and Obtaining the Consent of the TAC.......... 33

**ARTICLE VI**     **GENERAL PROVISIONS** ...................................................... **35**

6.1     Irrevocability .................................................................................... 35

6.2     Term; Termination. ........................................................................... 36

6.3     Amendments ..................................................................................... 37

6.4     Severability ...................................................................................... 38

6.5     Notices. ............................................................................................ 38

6.6     Successors and Assigns ..................................................................... 41

6.7     Limitation on Claim Interests for Securities Laws Purposes ................ 41

6.8     Entire Agreement; No Waiver ........................................................... 41

6.9     Headings .......................................................................................... 42

6.10    Governing Law ................................................................................. 42

6.11    Settlor's Representative and Cooperation ........................................... 43

6.12    Dispute Resolution ........................................................................... 43

6.13    Enforcement and Administration ....................................................... 43

6.14    Effectiveness .................................................................................... 44

6.15    Counterpart Signatures ..................................................................... 44

## MALLINCKRODT

## ASBESTOS PERSONAL INJURY TRUST AGREEMENT

This Mallinckrodt Asbestos Personal Injury Trust Agreement (this **"Asbestos Trust Agreement"**), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the *Fourth Amended Joint Plan of Reorganization of Mallinckrodt plc and Its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [Docket No. 6066] (as may be further amended or modified, the **"Plan"**),[1] by and among Mallinckrodt US Holdings LLC (**"MUSH LLC"**), Alan B. Rich as trustee (**"Asbestos Trustee"**), solely in his capacity as trustee of this Asbestos Trust Agreement for the purpose of forming an asbestos Trust (**"Asbestos Trust"**), Wilmington Trust, National Association as the Delaware Trustee (**"Delaware Trustee"** together with the Asbestos Trustee, the **"Trustees"**) and members of the Trust Advisory Committee (**"TAC"** together with MUSH LLC and the Trustees, the **"Parties"**);

**WHEREAS,** the Debtors[2] have reorganized under the provisions of Chapter 11 of the

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan and the TDP, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

[2] "**Debtors**" means Mallinckrodt plc, Acthar IP Unlimited Company, IMC Exploration Company, INO Therapeutics LLC, Infacare Pharmaceutical Corporation, Ludlow LLC, MAK LLC, MCCH LLC, MEH, Inc., MHP Finance LLC, MKG Medical UK Ltd, MNK 2011 LLC, MUSHI UK Holdings Limited, Mallinckrodt APAP LLC, Mallinckrodt ARD Finance LLC, Mallinckrodt ARD Holdings Inc., Mallinckrodt ARD Holdings Limited, Mallinckrodt ARD IP Unlimited Company, Mallinckrodt ARD LLC, Mallinckrodt Brand Pharmaceuticals LLC, Mallinckrodt Buckingham Unlimited Company, Mallinckrodt CB LLC, Mallinckrodt Canada ULC, Mallinckrodt Critical Care Finance LLC, Mallinckrodt Enterprises Holdings, Inc., Mallinckrodt Enterprises LLC, Mallinckrodt Enterprises UK Limited, Mallinckrodt Equinox Finance LLC, Mallinckrodt Group S.à.r.l., Mallinckrodt Holdings GmbH, Mallinckrodt Hospital Products IP Unlimited Company, Mallinckrodt Hospital Products Inc., Mallinckrodt IP Unlimited Company, Mallinckrodt International Finance SA, Mallinckrodt International Holdings S.à.r.l., Mallinckrodt LLC, Mallinckrodt Lux IP S.à.r.l., Mallinckrodt Manufacturing LLC, Mallinckrodt Pharma IP Trading Unlimited Company, Mallinckrodt Pharmaceuticals Ireland Limited, Mallinckrodt Pharmaceuticals Limited, Mallinckrodt Quincy S.à.r.l., Mallinckrodt UK Finance LLP, Mallinckrodt UK Ltd, Mallinckrodt US Holdings LLC, Mallinckrodt US Pool LLC, Mallinckrodt Veterinary, Inc., Mallinckrodt Windsor S.à.r.l., Mallinckrodt Windsor Ireland Finance Unlimited Company, Ocera Therapeutics, Inc., Petten Holdings Inc., SpecGx Holdings LLC, SpecGx LLC, ST Operations LLC, ST Shared Services LLC, ST US Holdings LLC, ST US Pool LLC, Stratatech

Bankruptcy Code in the cases filed in the U.S. Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") and administered under the caption *In re Mallinckrodt plc, et al.,* Case No. 20-12522 (JTD) (Jointly Administered); and

WHEREAS, the Bankruptcy Court confirmed the Plan by order dated March 2, 2022 [Docket No. 6660] (the "**Confirmation Order**"); and

WHEREAS, the Plan provides, *inter alia,* for the creation of an Asbestos Trust to which, on the Effective Date, Asbestos Claims[3] for which a Proof of Claim was timely Filed by the Claims Bar Date as provided in the Claims Bar Date Order, shall be channeled;

WHEREAS, the Asbestos Trust shall be administered for the benefit of the Holders of Allowed Asbestos Claims (each an "**Asbestos Trust Beneficiary**"); and

WHEREAS, the Asbestos Trust shall consist of $18 million to be transferred from the Debtors to the Asbestos Trust (together with any income or earnings realized or received in respect thereof ("**Asbestos Trust Assets**")),[4] to be used exclusively for payment of Holders of Allowed Asbestos Claims and to pay administrative expenses as provided in the Asbestos Trust Agreement, which administrative expenses shall not exceed $2,000,000 plus any income, interest, dividends or the like earned on the Asbestos Trust Assets, subject to those certain carve outs set forth in Article 1.5 herein; and

---

Corporation, Sucampo Holdings Inc., Sucampo Pharma Americas LLC, Sucampo Pharmaceuticals, Inc., Therakos, Inc., Vtesse LLC, and WebsterGx Holdco LLC.

[3] Article III(B)(6)(c) of the Plan provides as follows: "Except to the extent that a Holder of an Allowed Asbestos Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Asbestos Claim, each Holder of an Allowed Asbestos Claim shall receive its Pro Rata Share of the Asbestos Claims Recovery." An "Allowed" Asbestos Claim is a Claim "for which a Proof of Claim has been timely Filed by the applicable Claims Bar Date . . .." *See* Article I(A)(40).

[4] The Asbestos Trust Assets shall be the Asbestos Trust Consideration defined in the Plan. *See* Article I(A)(50).

**WHEREAS,** it is the intent of the Parties to value and pay Allowed Asbestos Claims in accordance with the terms of this Asbestos Trust Agreement and the distribution procedures related to the Asbestos Trust (the "**TDP**"); and

**WHEREAS,** all rights of the holders of Allowed Asbestos Claims arising under this Asbestos Trust Agreement and TDP shall vest upon the Effective Date; and

**WHEREAS,** pursuant to the Plan, the Asbestos Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**");

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

**1.1    Creation and Name.**  MUSH LLC, as settlor ("**Settlor**"), hereby creates a trust known as the "Mallinckrodt Asbestos Personal Injury Trust," which is the Asbestos Trust provided for and referred to in the Plan.  The Asbestos Trustee of the Asbestos Trust may transact the business and affairs of the Asbestos Trust in the name of the Asbestos Trust, and references herein to the Asbestos Trust shall include the Asbestos Trustee acting on behalf of the Asbestos Trust.  It is the intention of the Parties that the Asbestos Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801 *et seq.* (the "**Act**") and that this document constitute the governing instrument of the Asbestos Trust.  The Trustees are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 1.

**1.2    Purpose.**  The purpose of the Asbestos Trust is to assume all liabilities and responsibility for all Allowed Asbestos Claims and, among other things, to: (a) direct the

processing, liquidation, and payment of all Allowed Asbestos Claims in accordance with the Plan, the TDP, and the Confirmation Order; (b) preserve, hold, manage, and maximize the Asbestos Trust Assets for use in paying and resolving Allowed Asbestos Claims; and (c) qualify at all times as a Qualified Settlement Fund.  The Asbestos Trust is to use the Asbestos Trust Assets and income to resolve the claims of Allowed Asbestos Claims in accordance with this Asbestos Trust Agreement and the TDP.

      **1.3**     **Transfer of Asbestos Trust Assets.**  Pursuant to, and in accordance with the Plan, the Asbestos Trust has received or will receive the Asbestos Trust Assets to fund the Asbestos Trust and settle or discharge all Allowed Asbestos Claims.  In all events, the Asbestos Trust Assets or any other assets to be transferred to the Asbestos Trust under the Plan will be transferred to the Asbestos Trust free and clear of any liens or other claims by the Debtors, the Reorganized Debtors, any creditor, or other entity except as otherwise provided in the Plan.  The Plan provides for the Debtors and the Reorganized Debtors, among others and as applicable, to execute and deliver such documents to the Asbestos Trust as the Asbestos Trustee may request to effectuate the transfer and assignment of any Asbestos Trust Assets to the Asbestos Trust.

      **1.4**     **Acceptance of Assets and Assumption of Liabilities.**

      (a)     In furtherance of the purposes of the Asbestos Trust, the Asbestos Trust hereby expressly accepts the transfer to the Asbestos Trust of the Asbestos Trust Assets and any other transfers contemplated by the Plan in the time and manner as, and subject to the terms, contemplated in the Plan.

      (b)     Provided the Reorganized Debtors have complied with Section 1.3 above, in furtherance of the purposes of the Asbestos Trust, the Asbestos Trust expressly assumes all liabilities and responsibility for all Allowed Asbestos Claims in substitution for the financial or

other responsibility or liability of the Reorganized Debtors therefor and none of the Reorganized

Debtors shall have any further financial or other responsibility or liability therefor.  For the

avoidance of doubt, only those Asbestos Claims for which a Proof of Claim was timely Filed by

the Claims Bar Date as provided in the Claims Bar Date Order are eligible to assert a Claim

against the Asbestos Trust.  Further, for the avoidance of doubt and as provided in the Plan,

Allowed Asbestos Claims do not include Asbestos Late Claims. Except as otherwise provided in

this Asbestos Trust Agreement and the TDP, the Asbestos Trust shall have all defenses, cross-

claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation,

and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or

would have had under applicable law.  Notwithstanding anything to the contrary herein, the

Asbestos Trust shall not be entitled to any insurance, cost sharing, or other third-party

indemnification rights of the Debtors or the Reorganized Debtors, including without limitation

under the Asbestos Cost Sharing Agreement (as defined in the Plan).

      (c)     Notwithstanding anything to the contrary herein, no provision herein or in

the TDP shall be construed or implemented in a manner that would cause the Asbestos Trust to

fail to qualify as a Qualified Settlement Fund under the QSF Regulations.

      (d)     Nothing in this Asbestos Trust Agreement shall be construed in any way

to limit (i) the scope, enforceability, or effectiveness of the Releases and Injunctions of

Article IX of the Plan or (ii) the Asbestos Trust's assumption of liability for all Allowed

Asbestos Claims subject to the provisions of Section 1.4(b) above and the Plan.

      (e)     In this Asbestos Trust Agreement and the TDP, the words "must," "will,"

and "shall" are intended to have the same mandatory force and effect, while the word "may" is

intended to be permissive rather than mandatory.

(f)     To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Asbestos Trust (i.e., the **"Beneficial Owners"**) shall be deemed to be the holders of Allowed Asbestos Claims; provided that (i) the holders of Allowed Asbestos Claims as such Beneficial Owners shall have only such rights with respect to the Asbestos Trust and its assets as are set forth in the TDP and (ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the Asbestos Trust, shall be deemed to apply to the holders of Allowed Asbestos Claims in their capacity as Beneficial Owners.

1.5.     **Carve Out of Administrative Expenses.**  The following expenses shall not count towards the administrative expenses cap of $2,000,000 plus any income, interest, dividends or the like earned on the Asbestos Trust Assets:  (a) all fees and costs incurred by the proposed Asbestos Trustee and his professionals prior to and including the Effective Date; (b) TAC expenses, (c) the Asbestos Trust's fees and expenses incurred for matters brought in the tort system or alternative dispute resolution proceedings, (d) taxes, (e) fees and expenses incurred in any litigation, including subpoenas, (f) Medicare litigation (but not reporting) costs, (g) any fees and expenses relating to indemnification obligations of the Asbestos Trust, (h) insurance premiums, and (i) any fees and expenses of the Asbestos Trust relating to filings in the Bankruptcy Court, or any appeals from orders issued by the Bankruptcy Court.

## ARTICLE II

## POWERS AND ASBESTOS TRUST ADMINISTRATION

2.1     **Powers.**

(a)     The Asbestos Trustee is and shall act as a fiduciary to the Asbestos Trust in accordance with the provisions of this Asbestos Trust Agreement, the Plan and the Confirmation Order.  The Asbestos Trustee shall, at all times, administer the Asbestos Trust and

the Asbestos Trust Assets in accordance with the purposes set forth in Section 1.2 above.

Subject to the limitations set forth in this Asbestos Trust Agreement, the Asbestos Trustee shall

have the power to take any and all actions that, in the judgment of the Asbestos Trustee, are

necessary or proper to fulfill the purposes of the Asbestos Trust, including, without limitation,

each power expressly granted in this Section 2.1, any power reasonably incidental thereto and

not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter

permitted under the laws of the State of Delaware.

(b)      Except as required by applicable law or otherwise specified herein, the

Asbestos Trustee need not obtain the order or approval of any court in the exercise of any power

or discretion conferred hereunder.

(c)      Without limiting the generality of Section 2.1(a) above, and except as

limited below or by the Plan, the Asbestos Trustee shall have the power to:

(i)      invest the monies held from time to time by the Asbestos Trust

in accordance with the terms of this Asbestos Trust Agreement;

(ii)      pay liabilities and expenses of the Asbestos Trust including the

obligations set forth in section IV.II of the Plan;

(iii)      establish such funds, reserves, and accounts within the Asbestos

Trust estate, as the Asbestos Trustee deems useful in carrying out the purposes of the

Asbestos Trust;

(iv)      sue and be sued and participate, as a party or otherwise, in any

judicial, administrative, arbitrative, or other proceeding;

(v)      evaluate and either accept or reject claims submitted to the

Asbestos Trust as contemplated by and in accordance with the TDP;

-7-

(vi)    establish, supervise, and administer the Asbestos Trust in accordance with this Asbestos Trust Agreement and the TDP and the terms thereof;

(vii)    appoint such officers, hire such employees, engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the Asbestos Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Asbestos Trustee permit and as the Asbestos Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the Asbestos Trust;

(viii)    pay reasonable compensation to employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents of the Trustees and TAC (including those engaged by the Asbestos Trust and TAC in connection with its alternative dispute resolution activities, if applicable);

(ix)    as provided below, (a) compensate the Asbestos Trustee and the TAC members and the employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents of each of them, and (b) reimburse the Trustees and TAC members and the employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents of each of them for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(x)    execute and deliver such instruments as the Asbestos Trustee deems proper in administering the Asbestos Trust;

(xi)    enter into such other arrangements with third parties as the Asbestos Trustee deems useful in carrying out the purposes of the Asbestos Trust, provided such arrangements do not conflict with any other provision of this Asbestos Trust Agreement;

(xii)    in accordance with Sections 4.4 and 4.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Asbestos Trustee, (B) the Delaware Trustee, (C) the TAC members; and (D) the officers, employees, consultants, advisors, and agents of each of the Asbestos Trust and TAC (each of those in (D) herein, the **"Additional Indemnitees"**), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, Asbestos Trustee, officers, employees, consultants, advisors, agents, and representatives.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below. For the avoidance of doubt, only those Asbestos Claims for which a Proof of Claim was timely Filed by the Claims Bar Date as provided in the Claims Bar Date Order are eligible to assert a Claim against the Asbestos Trust;

(xiii)    make, pursue (by litigation or otherwise), collect, compromise, or settle, in the name of the Asbestos Trust, any claim, right, action, or cause of action included in the Asbestos Trust Assets or which may otherwise hereafter accrue in favor of the Asbestos Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction, if applicable; and

(xiv)    exercise any and all other rights, and take any and all other actions as are permitted, of the Asbestos Trustee in accordance with the terms of this Asbestos Trust Agreement.

(d)      The Asbestos Trustee shall not have the power to guarantee any debt of other persons.

(e)      The Asbestos Trustee shall give the TAC prompt notice of any act performed or taken pursuant to Section 2.1(c)(iv) and (xii) above and any act proposed to be performed or taken of the type described in Section 2.2(e) below.

    2.2    **General Administration.**

(a)      The Asbestos Trustee shall act in accordance with this Asbestos Trust Agreement, the Plan, the Confirmation Order and the TDP.  In the event of a conflict between the terms or provisions of (i) this Asbestos Trust Agreement and (ii) the TDP, the terms of this Asbestos Trust Agreement shall control.  In the event of a conflict between the terms or provisions of (i) the Plan and (ii) this Asbestos Trust Agreement or the TDP, the terms of the Plan shall control.

(b)      The Asbestos Trustee shall (i) timely file such income tax and other returns and statements required to be filed and shall timely pay all taxes required to be paid by the Asbestos Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Asbestos Trust as a Qualified Settlement Fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Asbestos Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations.

(c)      The Asbestos Trustee shall timely account to the Bankruptcy Court as follows:

(i)      The Asbestos Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty

(120) days following the end of each fiscal year, an annual report (the **"Annual Report"**) containing financial statements of the Asbestos Trust (including, without limitation, a balance sheet of the Asbestos Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Asbestos Trustee and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims.

(ii)    Simultaneously with the filing of the Annual Report, the Asbestos Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims resolved during the period covered by the financial statements.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be sent to the Office of the United States Trustee for Region Three (the **"UST"**).

(d)    The Asbestos Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year.

(e)    The Asbestos Trustee shall consult with TAC (i) on the general implementation and administration of the Asbestos Trust, (ii) on the general implementation and administration of the TDP, and (iii) on such other matters as may be required under this Asbestos Trust Agreement or the TDP.

-11-

(f)      Without limiting any rights of the Settlor, the Debtors, or the Reorganized

Debtors under the Plan, this Asbestos Trust Agreement, or the TDP, the Asbestos Trustee shall

be required to obtain the consent of the TAC pursuant to the consent processes set forth in

Section 5.7(b) below, as the case may be, in addition to any other instances elsewhere

enumerated herein, in order:

(i)      to establish and/or to change the Claims Procedures (as defined in

the TDP) under Section 2.2 of the TDP and Claim Form (as defined in the TDP) to be provided

to holders of Asbestos Claims under Section 4.1 of the TDP;

(ii)      to require that claimants provide additional kinds of medical and/or

exposure evidence pursuant to Section 2.2 of the TDP;

(iii)      to change the forms of the Release[5] to be provided pursuant to

Section 3.4 of the TDP;

(iv)      to terminate the Asbestos Trust pursuant to Section 8.2(b)(i) or (ii)

below;

(v)      to change the compensation of the Asbestos Trustee, the Delaware

Trustee, or the members of the TAC, other than to reflect reasonable cost-of-living increases or

changes approved by the Bankruptcy Court as otherwise provided herein; provided that a change

in the compensation of the Delaware Trustee shall also require the written consent of the

Delaware Trustee;

(vi)      to amend any provision of this Asbestos Trust Agreement in

accordance with the terms hereof (and the written consent of the Delaware Trustee solely to the

---

[5] For the avoidance of doubt, the ability to modify the Release relates solely to the defined term and related form described in the TDP and does not provide the Asbestos Trustee the ability to change the form of the releases and injunctions in the Plan.

extent any such amendment affects the rights, duties and obligations of the Delaware Trustee hereunder);

(vii)    to determine the calculations of any *pro rata* distributions to Holders of Allowed Asbestos Claims as set forth in the TDP;

(viii)    to amend any provision of the TDP in accordance with the terms thereof; provided that no such amendment shall be in contravention of the Plan; and

(ix)    to merge any asbestos claims resolution organization formed by the Asbestos Trust with another asbestos claims resolution organization that is not specifically created by this Asbestos Trust Agreement or the TDP, acquire an interest in any asbestos claims resolution organization that is not specifically created by this Asbestos Trust Agreement or the TDP, contract with another asbestos claims resolution organization or any other entity that is not specifically created by this Asbestos Trust Agreement or the TDP or permit any other party to join in any asbestos claims resolution organization that is formed by the Asbestos Trust pursuant to this Asbestos Trust Agreement or the Distribution Procedure.

(g)    For all purposes of this Asbestos Trust Agreement and the Act, the consent of the TAC shall be deemed the consent of the Beneficial Owners.

(h)    The Asbestos Trustee shall meet with the TAC no less often than quarterly. The Asbestos Trustee shall meet with the TAC between such quarterly meetings at mutually convenient times and locations when so requested by the TAC. The Delaware Trustee shall not be required or permitted to attend meetings.

(i)    The Asbestos Trustee, upon notice from the TAC, if practicable in view of pending business, shall, at their next meeting with the TAC, as the case may be, consider issues submitted by either of them.

-13-

(j)      The Asbestos Trustee shall reasonably promptly deliver to the Reorganized Debtors, upon reasonable request, copies of any release forms executed and delivered to the Asbestos Trust by any claimant.

**2.3      Claims Administration.**  The Asbestos Trustee shall promptly proceed to implement the TDP, subject to the rights of the Settlor or any Debtor or Reorganized Debtor as set forth therein.

**2.4      Medicare Reporting Obligations.**

(a)      For purposes of administrative convenience only, the Asbestos Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") in order to fulfill the reporting requirements applicable to the funders of the Asbestos Trust.

(b)      The Asbestos Trust, acting as the RRE and reporting agent for its funders, shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Asbestos Trust or with respect to contributions to the Asbestos Trust. The Asbestos Trust, in its role as RRE and reporting agent, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.  Notwithstanding anything to the contrary herein, the Asbestos Trust, as a Qualified Settlement Fund, is not an RRE.

(c)     The Asbestos Trust shall, on a quarterly basis, send written notice to the Settlor on behalf of all Reorganized Debtors, at the address provided in Section 6.5(b) below, advising whether the Asbestos Trust has timely satisfied all of the reporting requirements under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Asbestos Trust during the previous quarterly period.

(d)     The Trustee shall obtain prior to remittance of funds to claimants' counsel or to the claimant, if *pro se*, in respect of any Allowed Asbestos Claim a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Allowed Asbestos Claim.  This certification may be contained in the Asbestos Trust's release.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1    Accounts.**

(a)     The Asbestos Trustee may, from time to time, create such accounts and reserves within the Asbestos Trust estate as he deems necessary, prudent, or useful in order to provide for the payment of expenses and payment of Asbestos Claims and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(b)     The Asbestos Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments from each such account in the reports to be filed with the Bankruptcy Court.

3.2    **Investments**.    Investment of monies held in the Asbestos Trust shall be administered in a manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions;

(a)    With respect to equity investments, the Asbestos Trust may invest only in diversified equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the S&P 500 Index, Russell 1000 Index, S&P ADR Index, or MSCI EAFE Index. The Asbestos Trust shall not acquire, directly or indirectly, equity in any entity or business enterprise if, immediately following such acquisition, the Asbestos Trust would hold more than 5% of the equity in such entity or business enterprise.  The Asbestos Trust shall not hold, directly or indirectly, more than 5% of the equity in any entity or business enterprise.

(b)    The Asbestos Trust shall not acquire or hold any long-term debt securities unless (i) such securities are Asbestos Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("**S&P**"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.  This restriction does not apply to any pooled investment vehicles where pooled assets receive an investment grade rating (*i.e.*, "BBB" rating or above) by a nationally recognized rating agency.

(c)    The Asbestos Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-l" or higher by Moody's or "A-l" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

-16-

(d)    The Asbestos Trust shall not acquire any debt securities or other debt instruments issued by any entity if, following such acquisition, the aggregate market value of all such debt securities and/or other debt instruments issued by such entity held by the Asbestos Trust would exceed 5% of the then current aggregate value of the Asbestos Trust's assets.  There is no limitation on holding debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(e)    The Asbestos Trust shall not acquire or hold any certificates of deposit in an amount exceeding any federal insurance on such certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(f)    The Asbestos Trust may acquire and hold any securities or instruments issued by the Reorganized Debtors or any successor to the Reorganized Debtors or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(e) above.

(g)    The Asbestos Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Asbestos Trustee, such obligations are adequately collateralized.

(h)    Notwithstanding (a) above, the Asbestos Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Asbestos Trust complies with the provisions of Section 2.2(f)(ix) hereof with respect to the acquisition.

-17-

**3.3**    **Source of Payments.**

(a)    All Asbestos Trust expenses and payments and all liabilities with respect to Asbestos Claims shall be payable solely by the Asbestos Trust out of the Asbestos Trust Assets.  In no event, shall the Settlor, the Debtors, the Reorganized Debtors, the Asbestos Trustee, the Delaware Trustee, or the TAC members, or any of their officers, directors, managers, employees, consultants, advisors, or agents, be liable for the payment of any Asbestos Trust expense or any other liability of the Asbestos Trust, except to the extent explicitly provided for in the Plan or the Plan Documents.

(b)    The Asbestos Trustee shall establish and implement billing guidelines applicable to the Asbestos Trustee and his counsel who seek compensation from the Asbestos Trust Assets.

**ARTICLE IV**

**ASBESTOS TRUSTEE; DELAWARE TRUSTEE**

**4.1**    **Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be one (1) Asbestos Trustee who shall be that person named on the signature pages hereof.

**4.2**    **Term of Service.**

(a)    The initial Asbestos Trustee named pursuant to Section 4.1 above shall serve an initial term of service of five (5) years from the date on the signature pages hereof. Thereafter, each term of service shall be for an additional two (2) years as needed to administer the Asbestos Trust.  The initial Asbestos Trustee shall serve from the Effective Date until the earliest of (i) the end of his term, (ii) his death, (iii) his resignation pursuant to Section 4.2(b) below, (iv) his removal pursuant to Section 4.2(c) below, or (v) the termination of the Asbestos Trust pursuant to Section 6.2 below.

-18-

(b)    An Asbestos Trustee may resign at any time by written notice to the Settlor and the TAC.   Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    An Asbestos Trustee may be removed by the Bankruptcy Court in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of an Asbestos Trustee hereunder.  Such removal shall take effect at such time as the Bankruptcy Court shall determine.

**4.3    <u>Appointment of Successor Asbestos Trustee.</u>**

(a)    In the event of a vacancy in the Asbestos Trustee position, whether by term expiration, death, resignation, or removal, the TAC shall select a replacement trustee. In the event that the TAC does not fill such position within sixty (60) days, any holder of an unresolved Asbestos Claim may file a motion seeking for the Bankruptcy Court to select the successor Asbestos Trustee.

(b)    Immediately upon the appointment of any successor Asbestos Trustee, all rights, titles, duties, powers, and authority of the predecessor Asbestos Trustee hereunder shall be vested in, and undertaken by, the successor Asbestos Trustee without any further act.  No successor Asbestos Trustee shall be liable personally for any act or omission of his or her predecessor Asbestos Trustee.  No successor Asbestos Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Asbestos Trustee.

-19-

(c)    Each successor Asbestos Trustee shall serve until the earliest of (i) the end of the term of three (3) years for which he or she was appointed if his or her immediate predecessor Asbestos Trustee completed his or her term pursuant to Section 4.2(a) above, (ii) the end of the term of the Asbestos Trustee whom he or she replaced if his or her predecessor Asbestos Trustee did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 4.2(b) above, (v) his or her removal pursuant to Section 4.2(c) above, or (vi) the termination of the Asbestos Trust pursuant to Section 5.3 below.

(d)    Nothing in this Asbestos Trust Agreement shall prevent the reappointment of an individual or entity serving as an Asbestos Trustee for one or more additional terms.

**4.4    Liability of Asbestos Trustee and Others.**  The Asbestos Trustee and his or her officers, employees, consultants, advisors, and agents shall not be liable to the Asbestos Trust, to any individual holding an Asbestos Claim, or to any other person, except for their own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).

**4.5    Compensation and Expenses of the Asbestos Trustee.**

(a)    The Asbestos Trustee shall receive a retainer from the Asbestos Trust for his or her service as an Asbestos Trustee in the amount of $50,000 per annum, paid annually. Hourly time, as described below, shall first be billed and applied to the annual retainer.  Hourly time in excess of the annual retainer shall be paid by the Asbestos Trust.  For all time expended as Asbestos Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Asbestos Trustee shall receive the sum of $500.00 per hour.  For all non-working travel time in connection with Asbestos Trust business, the Asbestos Trustee shall receive the sum of $250.00 per hour.  All time shall be computed on a decimal (1/10th) hour

basis.  The Asbestos Trustee shall record all hourly time to be charged to the Asbestos Trust on a

daily basis.  The hourly compensation payable to the Asbestos Trustee hereunder shall be

reviewed every year by the Asbestos Trustee and TAC and appropriately adjusted for changes in

the cost of living.

(b)     The Asbestos Trust will promptly reimburse the Asbestos Trustee for all

reasonable and documented out-of-pocket costs and expenses incurred by the Asbestos Trustee

in connection with the performance of their duties hereunder.

(c)     The Asbestos Trust shall include in the Annual Report a description of the

amounts paid under this Section 4.5.

**4.6     <u>Indemnification of Asbestos Trustee and Others</u>.**

(a)     The Asbestos Trust shall indemnify and defend the Asbestos Trustee, the

Delaware Trustee, and the TAC members in the performance of their duties hereunder to the

fullest extent that a statutory trust organized under the laws of the State of Delaware (after the

application of Section 6.10) is from time to time entitled to indemnify and defend such persons

against any and all liabilities, expenses, claims, damages, or losses incurred by them in the

performance of their duties hereunder or in connection with activities undertaken by them prior

to the Effective Date in connection with the formation, establishment, or funding of the Asbestos

Trust.  The Asbestos Trust shall indemnify to the fullest extent permitted by applicable law any

of the Additional Indemnitees in the performance of their duties hereunder against any and all

liabilities, expenses, claims, damages, or losses incurred by them in the performance of their

duties hereunder or in connection with activities undertaken by them prior to the Effective Date

in connection with the formation, establishment, or funding of the Asbestos Trust, except for

their own acts or omissions that constitute a bad faith violation of the implied contractual

covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).
Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for
any liability, expense, claim, damage, or loss for which he or she is ultimately liable under
Section 4.4 above.

        (b)      Reasonable expenses, costs and fees (including attorneys' fees and costs)
incurred by or on behalf of the Asbestos Trustee, the Delaware Trustee, the TAC, and any
Additional Indemnitee in connection with any action, suit, or proceeding, whether civil,
administrative, or arbitrative, from which they are indemnified by the Asbestos Trust pursuant to
Section 4.6(a) above, shall be paid by the Asbestos Trust in advance of the final disposition
thereof upon receipt of an undertaking, by or on behalf of the Asbestos Trustee, the Delaware
Trustee, the TAC, or the Additional Indemnitee (as applicable), to repay such amount in the
event that it shall be determined ultimately by final order that the Asbestos Trustee, the Delaware
Trustee, the TAC, or the Additional Indemnitee (as applicable) is not entitled to be indemnified
by the Asbestos Trust.

        (c)      The Asbestos Trust shall purchase and maintain reasonable amounts and
types of insurance on behalf of each individual who is or was an Asbestos Trustee, the Delaware
Trustee, TAC members, or an Additional Indemnitee, including against liability asserted against
or incurred by such individual in that capacity or arising from his or her status as an Asbestos
Trustee, Delaware Trustee, TAC member, or Additional Indemnitee.

        (d)      From and after the Effective Date, should a Holder of an Asbestos Claim
for which a Proof of Claim was timely Filed by the Claims Bar Date as provided in the Claims
Bar Date Order commence suit in the tort system, including to liquidate such Asbestos Claim as
set forth in the TDP, the Debtors and the Reorganized Debtors shall forward such complaint to

the Asbestos Trustee who shall assume the defense and resolution therefor at the Asbestos

Trust's sole expense.  Except as provided in the foregoing sentence, the Asbestos Trust shall not

be obligated to defend or pay for the defense or resolution of any asbestos-related litigation

commenced (i) on or prior to the Petition Date against the Reorganized Debtors, and (ii) from

and after the Effective Date against the Reorganized Debtors.

      **4.7**    <u>**Lien**</u>.  The Trustees and the Additional Indemnitees shall have a first priority lien

upon the Asbestos Trust Assets to secure the payment of any amounts payable to them pursuant

to Section 4.6 above or any undisputed compensation.

      **4.8**    <u>**Asbestos Trustee's Employment of Experts; Delaware Trustee's**</u>

<u>**Employment of Counsel**</u>.

      (a)    The Asbestos Trustee may, but is not required to, retain and/or consult counsel,

accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and

such other parties deemed by the Asbestos Trustee to be qualified as experts on the matters

submitted to them (the **"<u>Trust Professionals</u>"**) regardless of whether any such party is affiliated

with the Asbestos Trustee in any manner (except as otherwise expressly provided in this

Asbestos Trust Agreement).  In the absence of a bad faith violation of the implied contractual

covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written

opinion of or information provided by any such party deemed by the Asbestos Trustee to be an

expert on the particular matter submitted to such party shall be full and complete authorization

and protection in respect of any action taken or not taken by the Asbestos Trustee hereunder in

good faith and in accordance with the written opinion of or information provided by any such

party.

(b)　　The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

4.9　　**Asbestos Trustee Independence.**　The Asbestos Trustee shall not, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Reorganized Debtors.　The Asbestos Trustee shall not act as an attorney, agent, or other professional for any person who holds an Allowed Asbestos Claim.　For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

4.10　　**No Bond.**　Neither the Asbestos Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.11　　**Delaware Trustee.**

(a)　　There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.　The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware in accordance with section 3807 of the Act, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity.　If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) below.　For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.　The Delaware Trustee shall have no liability for

-24-

the acts or omissions of any other Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Asbestos Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct, or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Asbestos Trust Agreement at the request or direction of the Asbestos Trustee or any other person pursuant to the provisions of this Asbestos Trust Agreement unless the Delaware Trustee is provided with security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. In the event that this Asbestos Trust Agreement is silent or is incomplete as to the course of action that the Delaware Trustee is required to take with respect to a particular set of facts, the Delaware Trustee shall be entitled to request and receive written instructions from the Asbestos Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Asbestos Trustee. The Delaware Trustee may, at the expense of the Asbestos Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Asbestos Trustee set forth herein.  The Delaware Trustee shall be a trustee of the Asbestos Trust for the sole and limited purpose of fulfilling the requirements of section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including

-25-

fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Asbestos Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under section 3811 of the Act (acting solely at the written direction of the Asbestos Trustee) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Asbestos Trust, the other Parties hereto or any Asbestos Trust Beneficiary, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Asbestos Trust Agreement.

(c)      The Delaware Trustee shall serve until such time as the Asbestos Trustee removes the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Asbestos Trustee in accordance with the terms of Section 4.11(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Asbestos Trustee; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Asbestos Trustee in accordance with Section 4.11(d) below, provided further, that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Asbestos Trustee.  If the Asbestos Trustee does not act within such 60-day period, the Delaware Trustee, at the expense of the Asbestos Trust, may apply to the Court of Chancery of the State of

Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Asbestos Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Asbestos Trustee and any undisputed fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Asbestos Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Asbestos Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Asbestos Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Asbestos Trust in accordance with section 3810 of the Act.

(e)    The Delaware Trustee shall neither be required nor permitted to attend meetings relating to the Asbestos Trust.

(f)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(g)     The Asbestos Trust will promptly reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Delaware Trustee in connection with the performance of their duties hereunder.

(h)     The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

(i)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(j)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument or document, other than this Asbestos Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument or document, other than this Asbestos Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Asbestos Trust, the Asbestos Trustee or any other person, or any of their directors, members, officers,

-28-

agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust asset, written instructions, or any other documents in connection therewith, and will not, be regarded as making nor be required to make, any representations thereto.

(k)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Asbestos Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

## ARTICLE V
## TRUST ADVISORY COMMITTEE

### 5.1     Initial Members of the TAC.

(a)     The TAC shall consist of three (3) members, who shall initially be the persons named on the signature pages hereof.

(b)     Each initial member of the TAC shall serve until the earliest of (i) the end of his or her term pursuant to Section 5.3(a) below, (ii) his or her death, (iii) his or her

-29-

resignation pursuant to Section 5.3(b) below, (iv) his or her removal pursuant to Section 5.3(c) below, or (v) the termination of the Asbestos Trust pursuant to Section 6.2 below.

5.2    **Duties.** The members of the TAC shall serve in a fiduciary capacity, representing all of the holders of Allowed Asbestos Claims for the purpose of protecting the rights of such persons. The Asbestos Trustee must consult with the TAC on matters identified in Section 2.2(e) above and in other provisions herein and must obtain the consent of the TAC on matters identified in Section 2.2(f) above. Where provided in the Trust TDP, certain other actions of the Asbestos Trustee are also subject to the consent of the TAC.

5.3    **Term of Office.**

(a)    The initial members of the TAC appointed in accordance with Section 5.1(a) above shall serve the staggered three-, four-, or five-year terms shown on the signatures pages hereof. Thereafter, each term of service shall be five (5) years.

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC and the Asbestos Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member (such as repeated nonattendance of scheduled meetings), or for other good cause. Such removal shall be made at the recommendation of the other members of the TAC with the approval of the Bankruptcy Court.

5.4    **Successor Members of the TAC.**

-30-

(a)       If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor. If such member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. If (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by the remaining members of the TAC or, if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Asbestos Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms, including by such member's own designation of himself or herself as his or her successor, and there shall be no limit on the number of terms that a TAC member may serve.

(b)       Each successor member of the TAC shall serve until the earliest of (i) the end of a full term of five (5) years for which he or she was appointed if his or her immediate predecessor member of the TAC completed his or her term pursuant to Section 5.3(a) above, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Asbestos Trust pursuant to Section 6.2 below.

**5.5       TAC's Employment of Professionals.**

-31-

(a)     The TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and such other parties deemed by the TAC to be qualified as experts on any matter submitted to the TAC (the **"TAC Professionals"**). The TAC and the TAC Professionals shall at all times have complete access to the Asbestos Trust's officers, employees and agents, as well as to any Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos Trust or the Asbestos Trustee; provided that in no event shall the TAC, its members or the TAC Professionals have any right to consult with counsel to the Asbestos Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos Trust. In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by such TAC Professional or Trust Professional.

The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the TAC for any reasonable fees and expenses associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder. The Asbestos Trust shall also promptly reimburse, or pay directly if so instructed, the TAC  for any reasonable fees and expenses associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; provided, however, that (i) the TAC has first submitted to the Asbestos Trust a written request for such reimbursement setting forth the reasons (A) why the TAC desires to employ such TAC Professional and (B) why the TAC cannot rely on Trust Professionals to meet the needs of the TAC for such expertise or advice and (ii) the Asbestos Trust has approved the

TAC's request for reimbursement in writing. If the Asbestos Trust agrees to pay for the TAC's Professional, such reimbursement shall be treated as an Asbestos Trust Expense. If the Asbestos Trust declines to pay for the TAC's Professional, it must set forth its reasons in writing. If the TAC still desires to employ such TAC Professional at the expense of the Asbestos Trust, the TAC and/or the Asbestos Trustee shall resolve their dispute in accordance with Section 6.12 below.

       **5.6**    **Compensation and Expenses of the TAC.**  The Asbestos Trust shall promptly reimburse each member of the TAC for any reasonable out-of-pocket fees and expenses incurred by him or her in connection with the performance of his or her duties as a member of the TAC. Such compensation or reimbursement shall be deemed an Asbestos Trust Expense. The Asbestos Trust shall include a reasonably detailed description of the amounts paid under this Section 5.6 in the Annual Report.

       **5.7**    **Procedures for Consultation with and Obtaining the Consent of the TAC.**

         (a)    **Consultation Process.**

            (i)    In the event the Asbestos Trustee is required to consult with the TAC pursuant to Section 2.2(e) above or on other matters as provided herein, the Asbestos Trustee shall provide the TAC with written advance notice of the matter under consideration and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Asbestos Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Asbestos Trust and its staff (if any) as the TAC may reasonably request during the time that the Asbestos Trustee is considering such matter and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Asbestos Trustee; provided that in no

event shall the TAC or its members have any right to consult with counsel to the Asbestos Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos Trust.

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 5.7(a), the Asbestos Trustee shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Asbestos Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC with the initial written notice that such matter is under consideration by the Asbestos Trustee, unless such time period is waived by the TAC.

(b)     **Consent Process.**

(i)     In the event the Asbestos Trustee is required to obtain the consent of the TAC pursuant to Section 2.2(f) above, the Asbestos Trustee shall provide the TAC with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Asbestos Trustee proposes to take and explaining in detail the reasons why the Asbestos Trustee desires to take such action. The Asbestos Trustee shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Asbestos Trustee shall also provide the TAC with such reasonable access to any counsel, accountants, appraisers, auditors, forecasters, experts or financial or investment advisors retained by the Asbestos Trust and its staff (if any) as the TAC may reasonably request during the time that the Asbestos Trustee is considering such action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment

on such action with the Asbestos Trustee; provided that in no event shall the TAC or its members have any right to consult with counsel to the Asbestos Trust or obtain any information in such a manner as would result in the waiver of attorney-client or other applicable privilege belonging to the Asbestos Trust.

(ii)     The TAC must consider in good faith and in a timely fashion any request for its consent by the Asbestos Trustee and must in any event advise the Asbestos Trustee in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Asbestos Trustee. The TAC may not withhold its consent unreasonably. If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action. If the TAC does not advise the Asbestos Trustee in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding such request, or such longer time as mutually agreed to by the TAC and the Asbestos Trustee, the TAC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)     If, after following the procedures specified in this Section 5.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Asbestos Trustee and/or the TAC shall resolve their dispute in accordance with Section 6.12 below. However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

## ARTICLE VI

### **GENERAL PROVISIONS**

**6.1**     **Irrevocability.**  To the fullest extent permitted by applicable law, the Asbestos Trust is irrevocable.

6.2    **Term; Termination.**

(a)    The term for which the Asbestos Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 6.2(b) - (d) below.

(b)    The Asbestos Trust shall automatically dissolve on the date (the **"Dissolution Date"**) ninety (90) days after the first occurrence of any of the following events:

(i)    the date on which the Asbestos Trustee decides to dissolve the Asbestos Trust because all Asbestos Claims duly filed with the Asbestos Trust have been liquidated and paid or otherwise resolved, and, if the Asbestos Trustee so desires, an order of the Bankruptcy Court approving such dissolution and such order becomes a Final Order; or

(ii)    if the Asbestos Trustee has procured and has in place irrevocable insurance policies, annuities or other commercially reasonable instruments, and have established claims handling agreements and other necessary arrangements with suitable third parties, adequate to discharge all expected remaining obligations and expenses of the Asbestos Trust in a manner consistent with this Asbestos Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii)    the Asbestos Trust shall terminate as of January 1, 2055.

(c)    On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the wind-up of the Asbestos Trust's affairs by the Asbestos Trustee and payment of all the Asbestos Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, any monies remaining in the Asbestos Trust shall be distributed pro rata to claimants whose claims were paid, provided that the smallest distribution

-36-

to be made based on this calculation would be $50, *provided* that no such distribution shall result in any Holder of an Allowed Asbestos Claim being paid more than the Scheduled Value of its Asbestos Claim.  If the remaining monies in the Asbestos Trust are too small in amount to permit a distribution in accordance with the foregoing sentence, the remaining monies shall be given to the American Cancer Society; *provided, however,* that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on the cure of, or other relief for individuals suffering from asbestos-related disease or diseases, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plan and related documents, this Section 6.2(c) cannot be modified or amended.

(d)      Following the dissolution and distribution of the assets of the Asbestos Trust, the Asbestos Trust shall terminate and the Asbestos Trustee and the Delaware Asbestos Trustee (acting solely at the written direction of the Asbestos Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Asbestos Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Asbestos Trust Agreement, the existence of the Asbestos Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.  The Asbestos Trust is not required to notify any Beneficial Owner of its intent to terminate the Asbestos Trust.

**6.3**      **Amendments.**  The Asbestos Trustee may modify or amend this Asbestos Trust Agreement with the consent of the TAC (except with respect to Section 6.2(c), which by its own terms is expressly not subject to modification or amendment).  The Asbestos Trustee may modify or amend the TDP to clarify, simplify or effectuate the goal and/or intention of such TDP; provided, however, that no amendment to the TDP shall be inconsistent with the provisions

limiting amendments to that document provided therein.  Any modification or amendment made

pursuant to this Section must be done in writing.  Notwithstanding anything contained in this

Asbestos Trust Agreement or the TDP to the contrary, neither this Asbestos Trust Agreement,

the TDP, nor any document annexed to the foregoing shall be modified or amended in any way

that could jeopardize, impair, or modify (i) the efficacy or enforceability of the Releases and

Injunctions of Article IX of the Plan or any other injunction or release issued or granted in

connection with the Plan or (ii) the Asbestos Trust's Qualified Settlement Fund status under the

QSF Regulations.  Any modification or amendment made pursuant to this Section must be in

writing and duly executed by the TAC or the TAC Professionals.   Any amendment affecting the

rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware

Trustee's written consent.

Notwithstanding anything in the foregoing paragraph, Sections 1.3, 1.4, 2.1, 2.4, and 6.3

of this Asbestos Trust Agreement may not be amended or modified without the written consent

of the Settlor.  Any validly-executed amendment to this Asbestos Trust Agreement that directly

affect the Reorganized Debtors shall not bind the Reorganized Debtors unless such amendment

is executed in writing by the Reorganized Debtors.

**6.4**    **Severability.**  Should any provision in this Asbestos Trust Agreement be

determined to be unenforceable, such determination shall in no way limit or affect the

enforceability and operative effect of any and all other provisions of this Asbestos Trust

Agreement.

**6.5**    **Notices.**

(a)    Notices to persons asserting claims shall be given by first class mail,

postage prepaid, at the address of such person, or, to such person's representative, in each case as

provided on such person's claim form submitted to the Asbestos Trust in accordance with the TDP with respect to his or her Allowed Asbestos Claim.  Such notices to a person's representative may be provided by electronic notice.

        (b)      Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Asbestos Trust through the Asbestos Trustee:

> Mallinckrodt Asbestos Personal Injury Trust
> c/o Law Offices of Alan B. Rich
> Attn: Alan B. Rich, Esquire
> 7324 Gaston Avenue
> Suite 124, LB430
> Dallas, TX 75214
> Phone:  (214) 744-5100
> Email:  mkrt@alanrichlaw.com

With a copy to:

> Sander Esserman, Esquire
> Andrea L. Ducayet, Esquire
> Stutzman, Bromberg, Esserman & Plifka, P.C.
> 2323 Bryan Street, Suite 2200
> Dallas, TX 75201-2689
> Telephone: (214) 969-4910
> Email: esserman@sbep-law.com
>         ducayet@sbep-law.com

To the Delaware Trustee:

> Wilmington Trust, National Association
> Rodney Square North
> 1100 North Market Street
> Wilmington, DE 19890
> Attn: Corporate Trust Administration/David Young
> Phone:  (302) 636-5216
> Fax:  (302) 636-4149
> Email:  dyoung@wilmingtontrust.com

To the Settlor, the Debtors or Reorganized Debtors:

        Mallinckrodt Pharmaceuticals
        5300 Frontage Road, Suite 300
        Hampton, NJ 08827
        Attn:  General Counsel

With a copy to:

        Latham & Watkins LLP
        330 North Wabash Avenue, Suite 2800
        Chicago, IL 60611
        Attn:   Jason Gott
        Email: jason.gott@lw.com

To the TAC:

        Thomas W. Bevan, Esq.
        Bevan & Associates, LPA
        6555 Dean Memorial Parkway
        Boston Heights, Ohio 44236
        330-650-0088
        tbevan@bevanlaw.com

        Bruce E. Mattock, Esq.
        Goldberg Persky & White PC
        11 Stanwix Street, Suite 1800
        Pittsburgh, PA 15222
        412-471-3980
        bmattock@gpwlaw.com

        Armand J. Volta, Jr., Esq.
        Peter Angelos Law
        100 North Charles Street
        22nd Floor
        Baltimore, Maryland  21201
        410-649-2092
        avolta@lawpga.com

      (c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**6.6** **<u>Successors and Assigns</u>.**  The provisions of this Asbestos Trust Agreement shall be binding upon and inure to the benefit of the Settlor, the Debtors, the Asbestos Trust, and the Reorganized Debtors, and their respective successors and assigns, except that the Asbestos Trust and the Asbestos Trustee shall not assign or otherwise transfer any of their rights or obligations, if any, under this Asbestos Trust Agreement except in the case of the Asbestos Trustee in accordance with Section 4.3 above.

**6.7** **<u>Limitation on Claim Interests for Securities Laws Purposes</u>.**  Asbestos Claims, and any interests therein, (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; *provided*, *however*, that clause (a) of this Section 6.7 shall not apply to the holder of a claim that is subrogated to an Allowed Asbestos Claim as a result of its resolution of such Asbestos Claim.

**6.8** **<u>Entire Agreement; No Waiver</u>.**  The entire agreement of the Parties relating to the subject matter of this Asbestos Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Asbestos Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**6.9** **Headings.** The headings used in this Asbestos Trust Agreement are inserted for convenience only and do not constitute a portion of this Asbestos Trust Agreement, nor in any manner affect the construction of the provisions of this Asbestos Trust Agreement.

**6.10** **Governing Law.** The validity and construction of this Asbestos Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; *provided*, *however*, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Asbestos Trust, the Trustees, or this Asbestos Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (b) affirmative requirements to post bonds for the trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the trustees, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the trustees or beneficial owners that are inconsistent with

-42-

the limitations on liability or authorities and powers of the Asbestos Trustee, the Delaware

Trustee, or the TAC set forth or referenced in this Asbestos Trust Agreement. Section 3540 of

the Act shall not apply to the Asbestos Trust.

      **6.11**   **Settlor's Representative and Cooperation.** MUSH LLC is hereby irrevocably

designated as the Settlor and shall take any action required of the Settlor by the Asbestos Trustee

in connection with the Asbestos Trust Agreement. MUSH LLC agrees to cooperate in

implementing the goals and objectives of this Asbestos Trust Agreement at the sole expense of

the Asbestos Trust, to the extent such cooperation is reasonable and requested on reasonable

terms by the Asbestos Trustee in writing.

      **6.12**   **Dispute Resolution.** Any disputes that arise under this Asbestos Trust

Agreement or under the TDP among the Parties hereto shall be resolved by submission of the

matter to an alternative dispute resolution **("ADR")** process mutually agreeable to the Parties

involved. Should any Party to the ADR process be dissatisfied with the decision of the

arbitrator(s), that Party may apply to the Bankruptcy Court for a judicial determination of the

matter. Any review conducted by the Bankruptcy Court shall be *de novo*. In any case, if the

dispute arose pursuant to the consent provision set forth in Section 5.7(b), the Party or Parties

who withheld consent shall bear the burden of proving that its withholding of consent was in

good faith. If the objecting Party meets that burden, the Party shall be deemed to have prevailed

and its consent shall not be deemed to have been given.

      **6.13**   **Enforcement and Administration.** The provisions of this Asbestos Trust

Agreement and the TDP shall be enforced by the Bankruptcy Court pursuant to the Plan and the

Confirmation Order. The Parties hereby acknowledge and agree that the Bankruptcy Court shall

have continuing exclusive jurisdiction over the settlement of the accounts of the Asbestos

Trustee and over any disputes that arise under this Asbestos Trust Agreement or the TDP and are not resolved by alternative dispute resolution in accordance with Section 6.12 above.

      **6.14**   **Effectiveness.**  This Asbestos Trust Agreement shall not become effective until it has been executed and delivered by all the Parties hereto and the Effective Date of the Plan occurs.

      **6.15**   **Counterpart Signatures.**  This Asbestos Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Asbestos Trust Agreement

this_____ day of _____, 2022.

**SETTLOR:**                              **Mallinckrodt US Holdings LLC**

                                          **By:** _____

                                          **Name:** _____
                                          **Title:** _____



**ASBESTOS TRUSTEE:**                     **By:** _____
                                          Alan B. Rich, not in his individual
                                          capacity but solely as Asbestos Trustee



**DELAWARE TRUSTEE:**                     **By:** _____

                                          **Name:** _____
                                          **Title:** _____



**TAC MEMBERS:**                          **By:** _____
                                          Thomas W. Bevan, Esq. (3-year term)

                                          **By:** _____
                                          Bruce E. Mattock, Esq. (4-year term)

                                          **By:** _____
                                          Armand J. Volta, Jr., Esq. (5-year term)

-45-

**Exhibit 1**

Certificate of Trust

# CERTIFICATE OF TRUST

## OF

## MALLINCKRODT ASBESTOS PERSONAL INJURY TRUST

This Certificate of Trust of the Mallinckrodt Asbestos Personal Injury Trust (the *"Trust"*) is being duly executed and filed by the undersigned, as trustees of the Trust, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.)* (the *"Act"*).

    1.    <u>Name.</u>  The name of the statutory trust formed hereby is:

**Mallinckrodt Asbestos Personal Injury Trust**

    2.    <u>Delaware Trustee.</u>  The name and business address of the Delaware Trustee of the Trust in the State of Delaware is:

Wilmington Trust, National Association
Rodney Square North
1100 North Market Street
Wilmington, DE 19890
Attn: Corporate Trust Administration

    3.    <u>Effective Date.</u>  This Certificate of Trust shall be effective upon filing.

**IN WITNESS WHEREOF,** the undersigned has duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

**TRUSTEE:**

_____
**Alan B. Rich,** not in his individual capacity but solely as Trustee

**WILMINGTON TRUST, NATIONAL ASSOCIATION,** not in its individual capacity but solely as Delaware Trustee

**By:** _____

**Name:** _____

**Title:** _____