# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*<br><br>In re:<br>MALLINCKRODT PLC, *et al.*,<br><br>Debtors.[1] | : : : : : : : : : : : : | Chapter 11<br><br>Case No. 20-12522 (JTD)<br>(Jointly Administered)<br><br>**Obj. Deadline: May 4, 2023 at 4:00 p.m. (ET)**<br><br>**Hearing Date: May 24, 2023 at 1:00 p.m. (ET)**<br><br>**Re: D. I. 8671** |

**RESPONSE OF HAVILAND HUGHES TO
GENERAL UNSECURED CLAIMS TRUSTEE'S THIRD OMNIBUS OBJECTION
TO CERTAIN NO LIABILITY/NO SUPPORTING DOCUMENTATION CLAIMS
(NON-SUBSTANTIVE)**

---

[1] A "complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt."

i

# INTRODUCTION

Unsecured creditor, Haviland Hughes, hereby responds to "Third Omnibus Objection" of the General Unsecured Claims (GUC) Trustee, Heather Barlow (the **"GUC Trustee"**). D.I. 8671.

Haviland Hughes responds to the GUC Trustee's objection to Haviland Hughes' timely-filed proofs of claim (the **"HH Claims"**) after almost a year since last appearing in this case. *See* Exhibit 1 to the Proposed Order (D.I. 8671-1) (listing POC Nos. 5265 and 6204 as timely filed February 16, 2021 against Debtors Mallinckrodt plc and Mallinckrodt ARD LLC, respectively). Despite the Trustee's stated desire to "streamline" the process of reviewing the "56,000 proofs of claim [] filed against the Debtors' estates [that] were assumed by the General Unsecured Claims Trust", the GUC Trustee made no effort to reach out to Haviland Hughes before filing its objection to the HH Claims. D.I. 7791 at 3.[2] Rather than try to "avoid the potential extreme burden that resolving these claims could place upon the Court", *id.*, the GUC Trustee has interposed a boilerplate objection that, according to the GUC Trustee, will "result in a significant investment of the time and limited resources of the [GUC] Trust, the Court, and all other parties" if not timely resolved. *Id*.

This Court is familiar with the unsecured claimant due to its direct role throughout the bankruptcy proceedings on behalf of its clients, the Acthar Plaintiffs.[3] So too is the counsel

---

[2] Shortly after her appointment as GUC Trustee, Ms. Barlow filed a Motion for an Order approving certain alternative dispute resolution (ADR) procedures specifically for the unsecured claims in Plan Classes 6(A), 6(B), 6(F), and Class 7 Trade claims assumed by the GUC Trust. Haviland Hughes' claims were presumably among the approximate 3,500 claims in those classes. *Id*. at 3 ("The approximately 3,500 claims … that remain outstanding as of the Effective Date were assumed by the [GUC] Trust.")

[3] The "Acthar Plaintiffs" consist of the following: the City of Rockford ("Rockford), Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of Operating Engineers Local 542 ("IUOE Local 542"), United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322") and Acument Global Technologies ("Acument"), individually and on behalf of the

1

representing the GUC Trustee who file the instant objection. Such counsel previously served as counsel for the Unsecured Creditors Committee (UCC),[4] on which committee two of the clients of Haviland Hughes served as members. One client, Acument, served as Chair of the UCC.

The decision to object to the HH Claims appears motivated by something other than "the best interests of all parties", especially the GUC Trust.[5] D.I. 7791 at 4. Resolving the objection will likely require re-opening the pandora's box the Acthar Plaintiffs and the Debtors worked so hard to close, allowing the Plan to be approved and funded by the substantial revenues generated by Acthar paid for by the Acthar Plaintiffs, and thousands of other TPPs in the putative classes they represent outside bankruptcy. Such a course is ill-advised, and it is both fair and appropriate for this Court to inquire of counsel for the GUC Trustee, and the Trustee herself, how and why they determined it was worthwhile to pick this unnecessary fight.

## CONCISE STATEMENT SETTING FORTH THE REASONS WHY HAVILAND HUGHES' CLAIMS SHOULD NOT BE DISALLOWED

### The GUC Trustee Objection

1. In the Objection, the GUC Trustee states that she "has determined, based on her review" of the HH Claims, that the claims "should be disallowed and expunged." D.I. 8671 at 6.

---

classes of third party payors ("TPPs") in their respective cases currently pending in federal district courts in the Northern District of Illinois (**the Rockford Action**) and the Eastern District of Pennsylvania (**the Steamfitters Local 420 Action**), and the District of Delaware (**the IUOE Local 542**), respectively.

[4] Given the previous role served by counsel for the GUC Trustee, Haviland Hughes reserves all rights as to counsel's potential conflict of interest in their present role, especially in advancing an objection that directly implicates the work done on behalf of the Acthar Plaintiffs to seek relief agasint the debtors respecting Acthar.

[5] In seeking this Court's approval of an ADR procedure, Ms. Barlow argued the GUC Trust "likely would face significant challenges over a substantial period of time liquidating the large number of the Disputed General Unsecured Claims filed through traditional litigation procedures and, absent the ADR Procedures, would be forced to expend substantial time and resources resolving such claims to the detriment of all parties in interest." D.I. 7791 at 10.

2

The GUC Trustee offers little more. The GUC Trustee also offers no detail as to the process she undertook to "review" the HH Claims, and "determine" they should be disallowed.

2. The GUC Trustee claims Haviland Hughes "fails to provide any documentary support" to enable her "to determine whether such Claims should be Allowed Class 6 Claims." D.I. 8671 at 6. The GUC Trustee further claims that the "Claims do not meet the standard for establishing *prima facie* validity." *Id*. at 7. Finally, the GUC Trustee claims "[f]ailure to disallow" the Haviland Hughes' claims "will result in the applicable Claimant receiving an unwarranted recovery to the detriment of the Reorganized Debtors' other stakeholders." *Id*.

### **Haviland Hughes' Concise Response**

3. The integral role Haviland Hughes played in the advancement of the rights of the Acthar Plaintiffs, on behalf of all similarly situated Acthar purchasers, both within and outside bankruptcy should not be overlooked.

4. Haviland Hughes succeeded in achieving several litigation milestones on behalf of its clients. These include the following successes.

5. <u>First</u>, the firm turned the Debtors away from seeking a sweeping release of the Express Scripts Entities under the Plan. By the direct efforts of Haviland Hughes – codified in multiple emails exchanged with Debtors' counsel – the Debtors agreed to modify the Plan to remove the Express Scripts Entities from the Release and allow Acthar purchasers to advance their rights against Express Scripts outside of this Court.

6. Haviland Hughes' clients then agreed to withdraw their meritorious objections to the Plan, clearing the way for this Court to approve the Plan and allow it to go Effective in June 2022 for the benefit of the Debtors and all interested parties.

7.      Second, the firm turned the Debtors away from seeking findings of this Court that their exclusive distribution agreement with Express Scripts' Curascript did not violate the antitrust laws and other laws. To the contrary, the Debtors ultimately agreed to abandon the Curascript agreement and contracted with a different distributor, FFF Enterprises, over Express Scripts' objections. *E.g.*, D.I. 4711 (Express Scripts' Reservation of Rights) at 2 (arguing that the "uncertainty" caused by the Acthar Plaintiff's claims "directly affects the feasibility of the Debtors' Plan, which relies on the ability to continue selling and distributing Acthar under the current distribution model."). Compare D.I. 4508 (Amended Plan) at 121, par. 20 (requiring findings as a condition precedent to the Plan Effective Date), with D.I. 5637 at 132 at par. 20 (redline changes, deleting proposed findings); see D.I. 4711 (Express Scripts' Reservations of Rights) at 2 (arguing that the "uncertainty" caused by the Acthar Plaintiff's claims "directly affects the feasibility of the Debtors' Plan, which relies on the ability to continue selling and distributing Acthar under the current distribution model."); D.I. 6512-2 at 181, par. 286 (Confirmation Order adding language proposed by Express Scripts that it could object to the Debtors' assumption of the exclusive distribution agreement)

8.      After first seeking an advisory opinion as to a proposed amended Exclusive Wholesale Product Purchase Agreement with Curascript in September 2021 via a Motion to Assume (D.I. 4487), in which Motion Express Scripts joined and argued vehemently in favor of, Debtors agreed to withdraw such Motion in the face of Haviland Hughes vigorous opposition.

9.      The Court ultimately approved the assumption of the new distribution contract with FFF, opening the door to broader distribution of Acthar, unencumbered by Express Scripts

4

antitrust grip, competition from ANI Pharmaceuticals, and massive decreases in the price of Acthar for the substantial benefit of the Acthar Plaintiffs and all purchasers of Acthar.[6]

10. <u>Third</u>, the Haviland Hughes successfully defeated the Debtors' Amended Adversary Complaint for Declaratory Relief and Objection to Certain Prepetition Claims, Case No. 21-51182-JTD, D.I. 3. The parties reached agreement on the dismissal of the adversary in exchange for the Acthar Plaintiffs' agreement to withdraw their claims and objections to the Plan. This was part of a global resolution of all issues, including prohibiting the release of Express Scripts under the Plan and removing proposed findings as to the legality of the exclusive distribution of Acthar through Curascript. The Debtors dropped Curascript as its exclusive distributor, which is a material part of the declaratory and injunctive relief sought by the Acthar Plaintiffs.

11. Having prevailed in all these respects, Haviland Hughes' claims for attorneys' fees against Mallinckrodt plc and Mallinckrodt ARD are well-supported in the factual record of the proceedings in this case. At this juncture, the claimant should not be required to regurgitate such record, which was developed in this Court, simply to inform the GUC Trustee about proceedings her lawyers observed while being paid to serve as counsel for the UCC.

12. The statutes pursuant to which Haviland Hughes advance the claims of its clients all provide for an award of statutory fees for the firm's successes as described herein.[7]

---

[6] The evidence of such changes in distribution, competition, and price decreases has been produced outside the Bankruptcy Court and has been designated as highly confidential by both Mallinckrodt and Express Scripts subject to the terms of Confidentiality Orders entered by the Courts in the Class Action Cases. While the GUC Trustee asks for "all documentation or other evidence of the Claim in question", D.I. 8671 at 9, respectfully, she is not permitted to receive such evidence at this time until the issue of the claims of confidentiality is addressed. Haviland Hughes welcomes the public disclosure of such evidence, including the documents and deposition testimony which amply support its factual assertions contained herein.

[7] *See, inter alia, e.g.,* Sherman Act (15 U.S.C. §1, *et seq.* and 15 U.S.C. §2 et seq.*)*, RICO (18 U.S.C. §1962, *et seq.*), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann §§201, *et seq.*), and the Tennessee Trade Practices Act (§47-25-101 *et seq.*) (E.g., *Illinois v. Sangamo Constr. Co.,* 657 F.2d 855058 (7th Cir.

13. The fees and costs incurred by Haviland Hughes in achieving the litigation successes described herein were reasonable.

14. The GUC Trustee has not challenged Haviland Hughes' lodestar at this juncture, either the hours expended or the rates charged. Haviland Hughes would welcome a discussion at the appropriate time, as the rates charged by the firm are far less than those charged by the GUC Trustee counsel to the Debtors' estates and now the GUC Trust. As for the hours expended, Haviland Hughes' time spent is reasonable and efficient, and the firm has not yet included any hours expended during the bankruptcy, which lodestar exceeds $4 million. Such additional lodestar report, and the backup thereto, will be produced as needed at the appropriate time, in an appropriate from and with appropriate protections for client confidentiality and privileges.

15. The Court will recall that, in seeking a preliminary injunction, the Debtors' evidence revealed that, "Mr. Eisenberg [] testified that if the cases aren't stayed, he expects the cost to be approximately $18 million defending against the actions…. And that's just in this 270-day period." Nov. 18, 2020 Hrg. Tr. at 18:8-12. In response, the Court had the following colloquy:

> THE COURT: Mr. Harris, that $18 million dollars, you know, at some point, these claims have to be liquidated. And that expense is going to occur, right?
>
> MR. HARRIS: That expense will certainly occur, sir, but not necessarily in those courts with uncoordinated discovery. There may be a way to make it do more efficiently or as in (sic) often happens in bankruptcy, there may always be a resolution.

---

1981) ("Section 4 of the Clayton Act, 15 U.S.C. §15, entitles a successful private litigant to 'recover threefold the damages by him sustained, and the costs of suit, including a reasonably attorney's fee'. Courts uniformly have held that the award of attorneys' fees and costs to the successful plaintiff under Section 4 is mandatory.") (citations omitted); *Krishman v. Cutler Grp., Inc.*, 2017 PA Super 312, 171 A.3d 856, 871 ("The UTPCPL, by virtue of [73 Pa. Stat. Ann. §201-9.2(a)] authorizes a trial judge to grant a successful litigant an award for additional damages, reasonable attorney fees, and costs." (quoting 73 P.S. §201-9.2(a) and citing *Neal v. Bavarian Motors, Inc.*, 2005 PA Super 305, 882 A.2d 1022, 1029-30 (Pa. Super. 2005)).

> The point is there is no benefit to consume that money now before it has to be consumed before we see how this restructuring goes. But, certainly, at some point, these claims have to be addressed.

Nov. 18, 2020 Hrg. Tr. at 18:13-24.

16. The Debtors and counsel for the other involved parties in the bankruptcy expended tens of millions of dollars monthly in fighting Haviland Hughes and the Acthar Plaintiffs. In the end, the total legal bill was in the hundreds of millions, as opposed to the $18 million Mr. Eisenberg first estimated.

17. Having expended all those fees, at the expense of "hopelessly insolvent" Debtors and to the detriment of the unsecured creditors in this case, the GUC Trustee now seeks to re-litigate many of the settled issues, simply to challenge the *bona fides* of the Haviland Hughes fee claims. At some point, the Court will have to say, enough is enough. The attorneys for the GUC Trustee should not be permitted to bill more fees, on top of the substantial fees they already earned, fighting the fee claim of attorneys for same clients they were charged with represented in their capacity as members of the UCC.

**The Acthar Plaintiff's Cases Against Mallinckrodt Seeking Declaratory and Injunctive Relief as to the Exclusive Wholesale Distribution of Acthar.**

18. Haviland Hughes filed multiple lawsuits in various courts around the country against Mallinckrodt seeking declaratory and injunctive relief as to Mallinckrodt's role in the antitrust conspiracy to raise and fix the prices of Acthar through an arrangement giving Express Scripts the exclusive right to distribute Acthar.

19. These cases consist of the following:

   a. *City of Rockford v. Mallinckrodt ARD, LLC, et. al.*, 3:17-cv-50107 (N.D. Ill) ("the *Rockford* Action");

7

b. *Steamfitters Local 420 v. Mallinckrodt ARD, LLC,* 2:19-cv-03047-BMS (E.D. Pa) ("the *Steamfitters Local 420* Action");

c. *United Ass'n of Plumbers and Pipefitter Local 322 of Southern New Jersey v. Mallinckrodt ARD, LLC, et. al.*, 1:20-cv-00188-RBK-KMW (D.N.J.) ("the *Plumbers Local 322* Action");

d. *International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, et. al.*, Civil Action No. 2:21-cv-00114-BMS (E.D.Pa.) ("the *IOUE Local 542* Action");[8] and

e. *Acument Global Technologies v. Mallinckrodt ARD et. al.*, Case no. 2:21-cv-02024 (W.D. Tenn.) ("the *Acument* Action").[9]

The Rockford, Steamfitters and Local 542 Actions are collectively referred to as the **"Class Action Cases."**

20. The three Federal District Courts in the Class Action Cases all denied Debtors' Motions to Dismiss premised in part on the Acthar Plaintiffs' class action allegations. *See e.g.*, D.I. 410 at ¶ 23.[10]

---

[8] Mallinckrodt and Express Scripts removed the *IUOE Local 542* Action to federal Court on January 19, 2021. IUOE Local 542 filed a Motion for Remand on January 27, 2021. Mallinckrodt opposed the remand on February 11, 2021. On March 10, 2021, the Court ruled that the case should be transferred to this Court for decision on the remand motion. E.D.Pa. Dkt. No. 17 at 3 ("this case is transferred to the District of Delaware with the expectation [that] it will be transferred to the Bankruptcy Court for the District of Delaware to decide the remand issue"). While the Bankruptcy Court agreed to withdraw the reference, the case remains pending in the District of Delaware awaiting an Order of the Court on the parties' stipulated request to return the case to Philadelphia.

[9] Mallinckrodt and Express Scripts removed the *Acument* Action to federal Court on January 8, 2021. Acument filed a Motion for Remand, which Mallinckrodt opposed. The Tennessee Federal Court has remanded the case back to state court.

[10] *See City of Rockford, et. al. v. Mallinckrodt ARD, Inc., et. al.*, 360 F.Supp. 3d. 730 (N.D.Illinois 2019)(denying Defendants' motions to dismiss antitrust claims); *City of Rockford, et. al. v. Mallinckrodt ARD, Inc., et. al.*, 2019 U.S.Dist. LEXIS 103885 (N.D. Ill. May 3, 2019)(denying ESI motion to reconsider denial of motion to dismiss); *United Ass'n of Plumbers & Pipefitters Local 322 of S.N.J. v.*

21. The Federal District Courts in the Class Action Cases entered Case Management Orders governing the orderly conduct of the cases.

22. After Mallinckrodt filed for bankruptcy, the Class Action Cases were stayed.

**The Debtors' Multiple Requests to Enjoin Proceedings Against Express Scripts, to Preserve and Protect Their Agreement for the Exclusive Distribution of Acthar.**

23. Unsatisfied with just staying the proceedings against it in the Class Action Cases, Mallinckrodt sought to protect its conspiracy to fix the prices of Acthar by seeking to enjoin all proceedings pending against its co-conspirator, Express Scripts, in the Class Action Cases.

24. Debtors conceded in their Amended Adversary Complaint filed in this Court that the *Rockford* Action "is furthest along and deep in discovery". Amended Adversary Complaint [Adv. Pro. D.I. 15] at 60. As a result, they needed to stop Rockford to try to hold on to their exclusive arrangement with Express Scripts.

25. Debtors succeeded. This Court enjoined all proceedings in the Class Action Cases, and extended the injunction, repeatedly, over the vigorous objections of Haviland Hughes and the Acthar Plaintiffs.

26. Despite such injunction against proceedings outside bankruptcy, Haviland Hughes pressed its clients' claims in the bankruptcy at every opportunity.

27. The firm ultimately prevailed, as described above.

28. It is clear the Debtors had no intention of changing their unlawful practices in relation to Acthar, and would not have made the changes they did without the constant pressure of Haviland Hughes and the Acthar Plaintiffs.

---

*Mallinckrodt ARD, LLC*, 2020 U.S.Dist. LEXIS 148343 (D.N.J. Aug. 18, 2020)(denying Mallinckrodt motion to dismiss New Jersey antitrust claims); *Steamfitters Union Local No. 420 v. Mallinckrodt ARD, LLC and United BioSource LLC*, Civil Action No. 19-3047 (E.D.Pa.), Dkt. No. 57 (Order denying Defendants' motions to dismiss RICO and consumer fraud claims).

29. For instance, during the hearing on the Debtors' Motion for a Preliminary Injunction, Debtors' Chief Transformation Officer, Stephen Welch, testified that he had "not heard of any corrective actions or any responses, for that matter, to the report" by Congress about Mallinckrodt's Acthar business, and that "[t]here is no parallel operating injunction with respect to the Acthar business" as with the opioids business under the RSA. Nov. 16. 2020 Hrg. Tr. at 83:15-16, 84:5-6.

30. The then-President of Mallinckrodt ARD, the Debtor which owned the Acthar business, Bryan Reasons testified as follows:

> Q: …[D]o you agree with me that none of the practices of the company, ARD, that are described in those [Acthar Plaintiffs'] lawsuits has changed as a result of the bankruptcy filing?
>
> A Yes.

Nov. 17, 2020 Hrg. Tr. at 22: 8-11.

31. Debtors were forced to file an Adversary Proceeding against the City of Rockford, including (1) a Complaint for Determination and Declaration of Dischargeability of Alleged Claims and Debts by City of Rockford (Adv. Pr. 21-50428, D.I. 1); (2) a Motion for Summary Judgment (D.I. 2, 3); (3) a Motion for Scheduling Order, seeking to expedite consideration of the summary judgment motion (D.I. 4, 5), and a supporting Declaration (D.I. 6).

32. They did this as a last resort to try to hold on to their exclusive arrangement with Express Scripts.

33. Haviland Hughes now possesses the documentary evidence of the Debtors' (through Latham & Watkins) direct negotiations with Express Scripts (through Quinn Emanuel) to amend the exclusive agreement and provide indemnity to Express Scripts with partial

reimbursement of Quinn Emanuel's attorneys' fees. Those negotiations led to the unsigned agreement put before this Court as part of the Motion to Assume.

34. Haviland Hughes also possesses the documentary evidence of Mallinckrodt's decision to change distributors, abandoning Curascript and taking away its exclusive Acthar distribution rights.

35. Haviland Hughes possesses the documentary evidence of Express Scripts exclusive distribution and pharmacy rights to Acthar's competitor, ANI Pharmaceuticals' corticotropin gel.

36. This evidence was presented to multiple witnesses from Mallinckrodt and Express Scripts. Haviland Hughes possesses this deposition testimony, bolstering its claims that change was brought about by the zealous pursuit of the Acthar Plaintiffs' rights.

37. The GUC Trustee has no such evidence, and should not have the right to access such evidence.

38. Accordingly, she has no basis for the boilerplate claims that the HH Claims are unfounded.

## REQUEST FOR RELIEF

39. By this Response to the GUC Trustees' Objection, unsecured creditor Haviland Hughes respectfully requests that the GUC Trustee's objection to its claims be overruled.

Date: May 4, 2023
      Wilmington, Delaware

                                            **CIARDI & ASTIN**

                                            */s/ Daniel K. Astin*
                                            Daniel K. Astin (No. 4068)
                                            1204 North King Street
                                            Wilmington, DE 19801
                                            Telephone: (302) 658-1100
                                            Facsimile: (302) 658-1300
                                            dastin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
(*Admitted pro hac vice*)
**CIARDI CIARDI & ASTIN**
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Donald E. Haviland, Jr., Esq.
(Admitted *pro hac vice*)
*haviland@havilandhughes.com*
William H. Platt II, Esq.
(Admitted *pro hac vice*)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Ave., Suite 110
Ambler, Pennsylvania 19002
T: 215-609-4661
F: 215-392-4400

*Counsel for the Acthar Plaintiffs*