## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALLINCKRODT PLC, *et al.,* | ) | Case No. 20-12522 (JTD) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Re: D.I. 8553** |

### MEMORANDUM OPINION AND ORDER

The Reorganized Debtors filed a motion seeking to enforce the discharge injunction contained in the Plan and Confirmation Order and to enjoin the plaintiffs in a putative class action from joining Mallinckrodt as a defendant.[1]  The Motion was briefed and on April 11, 2023, I heard oral argument.[2]  For the reasons set forth below, I find that the Reorganized Debtors have not met their burden to establish that the discharge injunction has been violated. The Motion is therefore denied.

### BACKGROUND

On February 18, 2018, a group of property owners ("**Plaintiffs**") commenced litigation in state court in Missouri against the Cotter Corporation ("**Cotter**") and others allegedly responsible for permitting radioactive material from the Manhattan Project[3] to contaminate the local environment.[4]  While Plaintiffs' initial complaint did discuss Mallinckrodt's involvement with this material, Plaintiffs did not initially assert any claims directly against Mallinckrodt.[5] Debtors assert that Plaintiffs intentionally left Mallinckrodt out of the litigation to avoid

---

[1] D.I. 8553, Reorganized Debtors' Motion for Order Enforcing the Discharge Injunction (the "**Motion**").
[2] D.I. 8588 (Response in Opposition); 8641 (Reply).
[3] The Manhattan Project was the U.S. research project designed to develop the first nuclear weapons.
[4] See generally, Second Amended Petition, D.I. 8553, Ex. B.  While initiated in state court, this action is now pending in federal court.  See *Banks et al. v. Cotter Corp. et al. v. Mallinckrodt LLC et al.*, No. 20-CV-1227 (E.D. Mo.) ("***Banks Litigation***").
[5] *See* Second Amended Petition, D.I. 8553, Ex. B.

application of the Price-Anderson Nuclear Industries Indemnity Act ("**PAA**"),[6] a federal statute enacted in 1957 to incentivize progress in atomic energy by reducing liability for entities undertaking atomic research and other related work.

While Plaintiffs were initially successful, once Cotter joined Mallinckrodt to the action by way of third-party complaint, the action was removed to federal court. Following a series of battles on the question of whether Plaintiffs' claims were subject to the PAA, including a remand to state court, another removal, and an appeal to the Eighth Circuit, the case eventually landed in the District Court for the Eastern District of Missouri. But while the appeal process was still ongoing, Debtors filed for bankruptcy.

As the parties awaited a ruling from the Eighth Circuit on the forum issue, Debtors worked their way through their bankruptcy cases and attempted to negotiate their way to a consensual confirmation. Although the Plaintiffs did not participate, Debtors negotiated with Cotter and other defendants regarding the post-confirmation treatment of claims arising out of Debtors' processing of radioactive material and the negotiating parties reached an agreement on the language to be included in the confirmation order. The applicable provision ("**Paragraph 268**") states, in pertinent part:

> Notwithstanding anything to the contrary in this Confirmation Order or in the Plan, any liabilities of Debtor Mallinckrodt LLC that have been asserted in writing before the Petition Date . . . (for purposes of this paragraph, the foregoing liabilities shall be referred to as the "**Defined Liabilities**") shall not be discharged, released, enjoined, or otherwise impaired by the Plan or this Confirmation Order. . . .[7]

The Confirmation Order was entered on March 2, 2022.

---

[6] 42 U.S.C. § 2011, *et seq*.

[7] D.I. 6660, Order Confirming Fourth Amended Joint Plan of Reorganization ("**Confirmation Order**"), ¶ 268.

In the meantime, the Eighth Circuit reversed the District Court's ruling regarding the applicability of the PAA to the Banks Litigation, holding that "[t]he PAA's jurisdictional grant provides federal question 'original jurisdiction' for 'any public liability action arising out of or resulting from a nuclear incident' to the district court located in the district where the incident occurred." *Banks v. Cotter Corp. (In re: Cotter Corp., (N.S.L.))*, 22 F.4th 788, 793 (8th Cir. 2022). Plaintiffs were then faced with deciding between making claims under the PAA or not at all.

In January of 2023, Plaintiffs moved to amend the complaint to add Mallinckrodt as a defendant and, for the first time, assert claims against it directly. Shortly thereafter, Debtors filed this Motion.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### I.    The Parties' Arguments

As the Plaintiffs' claims against Mallinckrodt arose prepetition, they are subject to discharge by Debtors' bankruptcy unless a specific exception to discharge applies. Plaintiffs assert that Paragraph 268 of the Confirmation Order is such an exception, because it carves out from discharge "any liabilities of Debtor Mallinckrodt LLC" with respect to Debtors' processing of radioactive materials that "have been asserted in writing before the Petition Date…". Plaintiffs argue that Paragraph 268 includes their claims because although they did not attempt to

3

sue Mallinckrodt directly until recently, their earlier pleadings against Cotter, as well as Cotter's

pleadings filed against Mallinckrodt, discuss Mallinckrodt's potential liability in sufficient detail

to satisfy the Paragraph 268's requirements.  Specifically, Plaintiffs cite to the following

allegations contained in their Second Amended Class Action Petition ("**Second Amended**

**Petition**"), filed pre-petition:

- Six decades ago, Mallinckrodt received in the downtown St. Louis area highly concentrated uranium with abnormal levels of radium which were extremely toxic (¶ 1)

- From 1942 to 1957, uranium ore was processed in downtown St. Louis City in association with the Manhattan Project (Amended Petition, ¶ 62); This downtown St. Louis facility was known as the St. Louis Downtown Site (the "**SLDS**") and was used to process uranium (¶ 63)

- The wastes created by processing at the SLDS are known in the scientific and regulatory communities as uranium mill tailings and were created as a result of the milling of uranium ore to produce uranium metal by Mallinckrodt (¶ 64)

- In the late 1940s, the Manhattan Project acquired a 21.7-acre tract of land near Lambert Airport to store the hazardous, toxic, carcinogenic radioactive uranium mill tailings from the uranium processing operations at the SLDS. The storage site(s) on and near the airport are now referred to as the St. Louis Airport Site or SLAPS ("**SLAPS**") (¶ 65)

- Radioactive uranium mill tailings accumulated locally at SLAPS. These hazardous, toxic, carcinogenic, radioactive waste materials included pitchblende raffinate residues, radium-bearing residues, barium sulfate cake, and Colorado raffinate residues. They were stored locally at SLAPS along with contaminated scrap. Some of these radioactive wastes were stored in bulk on the open ground in piles (Amended Petition, ¶ 66)

- From 1953, the SLAPS property was managed and operated by Mallinckrodt (¶ 77)[8]

---

[8] Second Amended Petition, D.I. 8553, Ex. B.

Plaintiffs also cite to Cotter's Third-Party Petition against Mallinckrodt, in which Cotter alleged that:

- Mallinckrodt owed [the Banks] Plaintiffs a duty as alleged in the Second Amended Class Action Petition (Third Party Petition, ¶ 70);

- Mallinckrodt failed to use reasonable care that resulted in releases from the St. Louis Downtown Site, the St. Louis Airport Site, the Latty Avenue Site, the West Lake Landfill, Mallinckrodt St. Louis Plant, and transit routes into the surrounding environment, including the alleged Class Area (Third Party Petition, ¶ 71); and

- In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Mallinckrodt, thereby barring any such recovery against Cotter (Third Party Petition, ¶ 73).[9]

As these allegations were made in writing, prepetition, Plaintiffs argue, their claims were not discharged.

Debtors respond that Paragraph 268 cannot be read so broadly as to encompass the mere suggestion by someone that Mallinckrodt should be held responsible for something, but instead should be read as requiring a writing that asserts "specific obligations owed to specific persons."[10] "Liabilities," they argue, "especially when used in the plural sense, means :'[a] financial or pecuniary obligation in a specified amount' and is synonymous with 'debt.'"[11] Debtors argue that while Cotter has asserted in writing just such a debt by filing its petition for contribution against Mallinckrodt in the amount of any damages in excess of Cotter's percentage of fault, Plaintiffs have not.

---

[9] Third-Party Petition, D.I. 8553, Ex. E.
[10] Motion, D.I. 8553 at 11.
[11] *Id. quoting* Black's Law Dictionary, 11th ed. 2019

II.    **Applicability of Paragraph 268 to Plaintiffs' Claims**

"An order confirming a plan of reorganization operates as a final judgment binding a debtor and its successors." *Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*, 590 B.R. 643, 649 (Bankr. D. Del. 2018). "For the purposes of enforcement, a [] judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply." *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994). See also *Spitfire Energy Group, LLC v. Presidio Petroleum LLC (In re TE Holdcorp, LLC)*, 2022 WL 951553, at *7 (D. Del. Mar. 30, 2022) (Confirmation order properly construed in accordance with rules of contract interpretation). Under the rules of contract interpretation, "[u]nless there is ambiguity, the terms of the Confirmation Order and the Plan are controlling, and the Court is not free to look to material beyond the provisions of the Confirmation Order and the Plan." *Kravitz*, 590 B.R. at 649.

While both parties here argue that Paragraph 268 is unambiguous, I am not persuaded. Contract interpretation principles dictate that "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). "Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* As the Delaware Supreme Court has explained:

> Ambiguity does not exist where a court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty. The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

903 A.2d 728, 739 (Del. 2006). Applying this standard here, I find it is not clear from the face of the document what the phrase "any liabilities of Debtor Mallinckrodt LLC" in Paragraph 268 is intended to encompass. Specifically, I find that the use of the word "liabilities," in paragraph 268 creates an ambiguity that cannot be resolved from the language in the document alone.

The word "liabilities" is subject to multiple interpretations and, as it is used here, lacks the precision necessary to clearly convey what is preserved. Indeed, *Black's Law Dictionary* itself cautions that liability is a word not easily defined:

> **"The term 'liability' is one of at least double signification**. In one sense it is the synonym of *duty*, the correlative of *right*; in this sense it is the opposite of *privilege* or *liberty.* If a duty rests upon a party, society is now commanding performance by him and threatening penalties. In a second sense, the term 'liability' is the correlative of *power* and the opposite of *immunity.* In this case society is not yet commanding performance, but it will so command if the possessor of the power does some operative act. If one has a power, the other has a liability. It would be wise to adopt the second sense exclusively. **Accurate legal thinking is difficult when the fundamental terms have shifting senses."** William R. Anson, *Principles of the Law of Contract* 9 (Arthur L. Corbin ed., 3d Am. ed. 1919).

*Black's Law Dictionary* (11th ed. 2019) (emphasis added).

Debtors ask me to apply the definition of "liability" found in *Black's Law Dictionary* to Paragraph 268, arguing that the word "liabilities" as it is used there can only refer to "specific obligations owed to specific parties."[12] But there are two problems with this argument. First, *Black's Law Dictionary* sets forth two definitions for the word "liability," not just one. The complete definition reads:

> **liability** *n.* (18c) **1.** The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment <liability for injuries caused by negligence>. — Also termed *legal liability*; *subjection*; *responsibility.* Cf. FAULT. **2.** (*often pl.*) A financial or pecuniary obligation in a specified amount; DEBT <tax liability> <assets and liabilities>.

---

[12] Motion, D.I. 8553 at 11.

*Black's Law Dictionary* (11th ed. 2019).  While I might be inclined to accept Debtors' argument that the use of the plural of the word in Paragraph 268 supports the conclusion that the second definition was intended to apply, there is another problem with Debtors' proposed definition. Application of the second, and narrower, definition of "liability" here would exclude Cotter's claim as well as Plaintiffs'.  Debtors' proposed definition requires that the asserted obligation be for a "specified amount."  But as Debtors concede, the claim that Cotter asserted against Mallinckrodt is for contribution in the amount of "any damages in excess of Cotter's percentage of fault."  This is hardly the "specified amount" that Debtors' definition requires.  Yet Debtors do not dispute that Cotter's claim passes through.  Given the acknowledgement that the parties intended, at the very least, that Cotter's claim would be covered by the term "liabilities," Debtors' proposed definition makes no sense.

The alternative definition of "liability" in *Black's* does embrace the notion that a liability can be something less precise.  Additionally, this more nebulous characterization aligns with the common meaning and usage of the word.  *See e.g.*, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/liability (defining "liability" as "1. The quality or state of being liable; 2. Something for which one is liable; 3. One that acts as a disadvantage"); *The Britannica Dictionary*, https://www.britannica.com/dictionary/liability (defining "liability" as "1. The state of being legally responsible for something. . . .; 2. Something (such as the payment of money) for which a person or business is legally responsible; 3. Someone or something that causes problems").  However, application of this broader definition here raises its own set of problems when Paragraph 268 is read in its entirety and within the larger context.

As Debtors point out, Paragraph 268 appears under the heading "Cotter and Bridgeton Landfill" in a section of the Confirmation Order that appears to address the disposition of claims

held only by Cotter and Bridgeton Landfill, LLC.  While these parties are not mentioned by name in the first half of the paragraph, the second half expressly provides that any claims held by Bridgeton or Cotter, other than the aforementioned "liabilities," shall be released.[13]  Debtors argue that Plaintiffs' proposed reading of the word "liabilities" to encompass their claims would cause these references solely to Cotter and Bridgeton to make no sense.  Additionally, Debtors contend, this expansive reading of "liabilities" would sweep broadly enough to permit *anyone* to assert discharged claims otherwise fitting the definition if they simply borrowed sufficiently from a previously asserted claim.  Such a reading would be contrary to both the purpose of the Plan and bankruptcy reorganization generally.  *See Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) ("A  construction  [of  statutory  exceptions  to discharge] so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed.") (quotations omitted).  I agree.  Just as with Debtors' proffered meaning, application of the plain meaning of the word "liabilities" does not make sense given the remainder of the paragraph, as well as the larger context of the Confirmation Order and the bankruptcy scheme generally.

        Because none of the commonly used definitions of the word "liability" make sense when applied to the operative phrase of Paragraph 268, I must conclude that the provision is ambiguous.  "Once the Court determines that a contract is ambiguous, the factfinder may then consider admissible extrinsic evidence to resolve the parties' intended meaning of the ambiguous terms."  *Victaulic Co. v. ASC Engineered Sols., LLC*, Civil Action No. 20-887-GBW, 2022 U.S. Dist. LEXIS 180424, at *14 (D. Del. Oct. 3, 2022).  Additionally, "Delaware contract law states that ambiguous provisions are construed against the drafter."  *In re NVF Co.*, 309 B.R. 698, 704–

---

[13]  Confirmation Order, D.I. 6660, ¶ 268.

05 (Bankr. D. Del. 2004) (further stating that "in this case where the Plan is considered an enforceable contract the interpretation of the ambiguous provisions will be construed against NVF as the Plan proponent").

Plaintiffs submitted two forms of extrinsic evidence in support of their proposed interpretation.  The first is a series of emails between counsel for Cotter and counsel for the Debtors, wherein the language of Paragraph 268 is being negotiated.  The email correspondence shows that Debtors originally proposed that the term "liabilities" be followed by the words "to [Bridgeton Landfill / Cotter], but that counsel for Cotter would not agree to that inclusion, stating in their response to Debtor:

> We do not agree to the addition of "to [Bridgeton Landfill / Cotter]" in the first sentence. For example, the Banks plaintiffs allege liability directly against MNK to plaintiffs and not to Cotter. All liabilities should pass through.[14]

Debtors' response included no reply, but simply altered the language of Paragraph 268 to remove the reference to the parties by name and add the phrase "that have been asserted in writing before the petition date" without highlight or discussion.[15]

Plaintiffs argue that this email exchange shows that Debtors understood that it was the intention of all the negotiating parties that the Plaintiffs' claims would be preserved along with Cotter's.  Debtors disagree, arguing that Cotter was mistaken in its belief that either proposal would preserve claims by the Plaintiffs directly against Mallinckrodt because from Debtors' perspective, the fact that the Plaintiffs had not filed so much as a proof of claim against Mallinckrodt meant any direct claims by them would be discharged.  But the only evidence submitted on this issue does not support Debtors' assertion.

---

[14] Reply, D.I. 8641, Exs. A and B.
[15] *Id.*

The emails demonstrate that Debtors were informed that the counterparty in the negotiations expected that the claims of both Cotter <u>and</u> the Plaintiffs would be preserved. Debtors said nothing in response to that suggestion that in any way hinted that they did not agree with this understanding.  On the contrary, they simply deleted the offending language, added an additional requirement regarding a prepetition writing, and moved on.  These actions support the conclusion that the parties intended for the phrase "any liabilities of Debtor Mallinckrodt LLC that have been asserted in writing before the Petition Date" to include any prepetition written assertion by Plaintiffs that Mallinckrodt is responsible for injuries arising out of its processing of uranium. The question then becomes, did Plaintiffs make such an assertion?

Debtors argue that they did not, focusing on Plaintiffs' reliance on Cotter's Third-Party Petition which asserts Mallinckrodt is liable solely on a theory of contribution.  Since contribution is not the theory asserted in the complaint that Plaintiffs wish to file now, Debtors argue, Plaintiffs have not satisfied Paragraph 268's requirement that the liabilities be asserted in writing prepetition.  While I agree that Plaintiffs cannot rely on the allegations made by Cotter in its Third-Party Petition, Debtors overlook the allegations made by Plaintiffs in their Second Amended Petition.  There Plaintiffs identify Mallinckrodt as one of the parties involved in the handling of uranium that resulted in harm to the surrounding environment.[16]  Though the Second Amended Petition did not include claims by Plaintiffs against Mallinckrodt directly, it would certainly be reasonable to read it as asserting Mallinckrodt's liability for the injuries described therein.  In fact, Mallinckrodt read it as doing just that, which Mallinckrodt acknowledged in the Notice of Removal it filed in the Banks Litigation where it concluded the section of its brief titled "Plaintiff's allegations as they related to Mallinckrodt" with the following footnote:

---

[16] See generally Motion, D.I. 8553, Ex. B.

> Mallinckrodt obviously disputes these allegations to the extent they suggest wrongdoing by Mallinckrodt or suggest Mallinckrodt's liability for the damages sought.[17]

Though the parties did not address this admission in their papers or at argument, I find it difficult to conceive of more straightforward evidence that the Plaintiffs' Second Amended Petition can be reasonably read as asserting that Mallinckrodt is at least partially responsible for injuries arising out of its uranium processing. As Plaintiffs filed that document prepetition, it is fairly encompassed within the phrase "any liabilities of Debtor Mallinckrodt LLC that have been asserted in writing before the Petition Date," contained in Paragraph 268.

This conclusion is further supported by the Debtors' schedules, wherein Plaintiffs are expressly listed as holders of claims against Mallinckrodt. While Debtors argue that the inclusion of the Plaintiffs and not Cotter on the schedules is clearly a scrivener's error – that the person who completed the form was merely copying the case caption and failed to understand that debtors were only involved in the litigation as third-party defendants – Debtors have submitted no evidence to support this conclusion. Accordingly, I cannot conclude that the inclusion of Plaintiffs on Debtors' schedules was a mistake. *Int'l Union of Elec. v. Murata Erie N. Am.*, 980 F.2d 889, 907 (3d Cir. 1992) ("Under the doctrine of scrivener's error, the mistake of a scrivener in drafting a document may be reformed based upon parole evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties.").

For these reasons, I find that the Debtors have not met their burden of establishing that Plaintiffs' attempt to join Mallinckrodt to the Banks Litigation violates the terms of the Plan or the Confirmation Order. However, this ruling applies only to those plaintiffs expressly named in

---

[17] Notice of Removal, D.I. 8553, Ex. C.

the Banks Litigation and does not extend to those similarly situated on whose behalf the

Plaintiffs have attempted to assert claims.  *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588,

593, 133 S. Ct. 1345, 1349 (2013) ("a plaintiff who files a proposed class action cannot legally

bind members of the proposed class before the class is certified"); *Smith* v. *Bayer Corp.*, 564

U.S. 299, 313 (2011) (" '[A] nonnamed class member is [not] a party to the class-action

litigation *before the class is certified*'") (quoting *Devlin* v. *Scardelletti*, 536 U.S. 1, 16, n. 1

(2002) (Scalia, J., dissenting) (emphasis in original).

### III.    Equitable Estoppel

Debtors also argue Plaintiffs should be precluded from asserting their claims against

Mallinckrodt under the doctrine of equitable estoppel.  "Parties claiming equitable estoppel

must establish that (1) a representation of fact was made to them, (2) upon which they had a

right to rely and did so rely, and (3) that the denial of the represented fact by the party making

the representation would result in injury to the relying party." *Wheeling-Pittsburgh Steel Corp. v.

McCune*, 836 F. 2d 153, 162-63 (3d Cir. 1987).

Debtors argue that the Plaintiffs disavowed any claims against Mallinckrodt when they

stated in both pleadings and argument in the Banks Litigation that Mallinckrodt was not the

cause of their injuries and that they were not asserting claims against Mallinckrodt.[18]  Relying on

these representations, Debtors contend, they drafted Paragraph 268 to address only the claims of

Cotter and Bridgeton.  Allowing Plaintiffs to deny this representation now and forcing

Mallinckrodt to participate in the Banks Litigation will cause Debtors to be injured.

---

[18] Motion, D.I. 8553 at 14.

While Debtors make a compelling argument on this issue, they have failed to present any evidence to support it.  I have nothing before me, other than statements of counsel, from which I could fairly conclude that the Debtors considered the statements made in the Banks Litigation at all, let alone relied on them in drafting the Confirmation Order.  In fact, as discussed above, the evidence I do have (the emails between counsel) suggests just the opposite.  Accordingly, I find that Debtors have not carried their burden in demonstrating that Plaintiffs should be estopped from asserting their claims.

For the reasons set forth above, Debtors' Motion is DENIED.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

The Motion as it applies to the named plaintiffs in the action captioned *Banks et al. v. Cotter Corp. et al.*, No. 20-CV-1227 (E.D. Mo.) (specifically Tamia Banks, Rev. Ronnie Hooks, Barbara Hooks, Joel Hogan, Kenneth Niebling, Kendall Lacy, Tanja Lacy, Willie Clay, Bobbie Jean Clay, Angela Statum, and Missouri Rentals Company, LLC), is DENIED.

Dated: May 31, 2023

_____
JOHN T. DORSEY, U.S.B.J.