**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**



**JUDGE JOHN T. DORSEY**  **824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 533-3169**

April 2, 2024

<u>Plaintiff's and Defendants' counsel via CM/ECF</u>

    Re: <u>In re Mallinckrodt plc, Case No. 20-12522 (JTD)</u>

Dear Counsel,

    This letter is my ruling on MSP Recovery Claims, Series LLC's ("**MRCS**") *Motion for Order Allowing Third-Party Payor Opioid Claims Pursuant to Plan and Third-Party Payor Trust Distribution Procedures* (the "**Motion**").[1]

    Following a protracted and contentious bankruptcy, the Mallinckrodt chapter 11 process culminated in a Plan of Reorganization (the "**Plan**"), D.I. 6066, which created several abatement trusts designed to facilitate the payment of claims to those aggrieved by the Debtors' contributions to the opioid crisis. One of these trusts, the Third-Party Payor Trust ("**TPP Trust**"), was specifically designed to facilitate the payment of Third-Party Payor Claims.

    Prior to the petition date, MRCS entered into assignment agreements with several health care providers, which purported to transfer title of Third-Party Payor Opioid Claims from the original holders to MRCS. MRCS subsequently filed proofs of claim, seeking distribution on the assigned claims. On September 8, 2023, the Trustee notified MRCS that it objected to all its proofs of claim on the grounds that the Plan did not recognize MRCS as a valid Holder of a Third-Party Payor Opioid Claim.[2] Over the objection of the Trustee, MRCS seeks to establish that it is entitled to distributions on the assigned Third-Party Payor Opioid Claims.

    The parties' dispute turns on whether the Plan allows for distributions to an entity that holds Opioid Claims as an assignee. In support of its position, MRCS points to the Plan's definition of "Holder," as well as the Plan's Rules of Interpretation, which provide:

---

[1] D.I. 8995.
[2] *Id.* at 10. *See also* D.I. 8995-6.

Re:  In re Mallinckrodt plc, Case No. 20-12522 (JTD)
Page 2

> *"Holder"* means an Entity holding a Claim or Interest, as applicable.  When referring to Holders of Guaranteed Unsecured Notes Claims, *"Holder"* shall mean the record holders of and owners of beneficial interests in any of the Guaranteed Unsecured Notes.[3]
>
> \*          \*          \*
>
> For purposes herein . . . any reference to any Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns . . . .[4]

MRCS contends that, read together, the two provisions make clear that a "Holder" includes assigns, such as itself.  In response, the Trustee points to a provision titled "Transferability of Opioid Claim Distribution Rights" found within the section of the Plan that governs the settlement of Opioid Claims.  That provision states that:

> any right of a Holder of an Opioid Claim to receive a distribution or other payment from the Debtors, Reorganized Debtors, the Opioid MDT II, or the Opioid Creditor Trusts on account of an Opioid Claim shall be nontransferable and nonassignable except by will, intestate, succession or operation of law or as otherwise provided in the Plan or any of the Opioid Creditor Trust Documents.[5]

This provision, the Trustee argues, precludes the assignment of Opioid Claim distribution rights notwithstanding the other provisions that define the term "Holder" as including successors and assigns.  I agree.

   Contract principles provide the framework for interpreting plans of reorganization.  *In re Shenango Grp., Inc.*, 501 F.3d 338, 344-45 (3d Cir. 2007).  In general, the Plan should be read to give effect to every provision. *In re Energy Future Holdings Corp.*, 548 B.R. 79, 88 (Bankr. D. Del. 2016).  "It is a 'fundamental axiom of contract interpretation that specific provisions control general provisions.'"  *In re IT Grp., Inc.*, 377 B.R. 471, 476 (Bankr. D. Del. 2007) (quoting *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002)).  Where there are apparent inconsistencies between the general and specific provisions of a contract, the "provision which deals specifically with a subject controls over a general provision in the same contract."  *In re HQ Global Holdings, Inc.*, 290 B.R. 78, 82 (Bankr. D. Del. 2003) (citations omitted); *see also Six Flags, Inc. v. PARC Mgmt., LLC (In re Premier Int'l Holdings, Inc.)*, 443 B.R. 320, 335 (Bankr. D. Del. 2010).

   Applying these principles here, the provision relied on by the Trustee must control.  MRCS relies on Art. I.B.1.d, which is a provision of general application because it specifies that "any reference to any entity as a Holder of a Claim or Interest includes that Entity's successors and assigns."  Plan at Art. I.B.1.d.[6]  In contrast, the Trustee points to Art. IV.V.2, which is far more specific in its scope; it

---

[3] Plan at Art. IV.V.2.
[4] *Id.* at Art. I.B.1.d.
[5] D.I. 9006, at 10 (quoting Plan at Art. IV.V.2).
[6] D.I. 8995, at 5.

Re:  In re Mallinckrodt plc, Case No. 20-12522 (JTD)
Page 3

specifies that "any right of a Holder of an *Opioid Claim* to receive a distribution . . . shall be nontransferable and nonassignable."  Plan at Art. IV.V.2 (emphasis added).  The Article I provision clearly applies to Claims generally, whereas the Article IV provision expressly applies to the more specific category of *Opioid Claims*.  The Article IV provision expressly prohibits the assignment of Opioid Claim distribution rights, and the general provisions of Article I are insufficient to establish MRCS' rights.  MRCS has no valid right to receive distributions for any Opioid Claims assigned to it under the Plan and the Trustee therefore acted in accordance with the Plan when he denied MRCS's request for distribution.  The Motion is therefore denied.  The parties shall submit a proposed form of order under certification of counsel.

Sincerely,

John T. Dorsey
United States Bankruptcy Judge