**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1111
_____

In re MALLINCKRODT PLC,
                                          Debtor

SANOFI-AVENTIS U.S. LLC,
                                          Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:21-cv-01636)
Circuit Judge: Honorable Thomas L. Ambro,
sitting by designation
_____

Argued: December 11, 2023

Before: BIBAS, PORTER, and FREEMAN, *Circuit Judges*

(Filed: April 25, 2024)

Stuart M. Brown
R. Craig Martin   **[ARGUED]**
DLA P<small>IPER</small>
1201 N. Market Street
Suite 2100
Wilmington, DE 19801

Ilana H. Eisenstein
DLA P<small>IPER</small>
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
   *Counsel for Appellant*

Melissa Arbus Sherry   **[ARGUED]**
L<small>ATHAM</small> & W<small>ATKINS</small>
555 11th Street NW
Suite 1000
Washington, DC 20004

Michael J. Merchant
Amanda R. Steele
R<small>ICHARDS</small>, L<small>AYTON</small> & F<small>INGER</small>
920 N. King Street
One Rodney Square
Wilmington, DE 19801
   *Counsel for Debtor-Appellee*

———————

OPINION OF THE COURT

———————

BIBAS, *Circuit Judge*.

Creditors take on risks. When a debtor goes bankrupt, those risks can become reality. Years ago, Sanofi sold its rights in a drug to Mallinckrodt in exchange for $100,000 plus a perpetual annual royalty. Though the drug was a hit, Mallinckrodt filed for bankruptcy and tried to turn Sanofi's right to royalties into an unsecured claim. That right is contingent and unliquidated. Yet under the Bankruptcy Code, it is still a claim. And because that claim arose when the parties signed the drug-rights contract, it can be discharged in bankruptcy. So we will affirm.

## I. THE AGREEMENT TO SELL ACTHAR GEL

Acthar Gel relieves chronic inflammation and treats autoimmune diseases. In 2001, Sanofi sold Mallinckrodt the rights to the drug outright. Mallinckrodt paid Sanofi $100,000 up front and promised a perpetual royalty of 1% of all net sales over $10 million per year. Sanofi took a security interest in the up-front payment but not the royalty.

For years, the annual royalty was immense. By 2019, sales hit almost one billion dollars. But then Mallinckrodt filed for bankruptcy. Now it seeks to discharge all future royalty payments and to keep selling the drug royalty-free, leaving Sanofi with only an unsecured claim.

The bankruptcy court approved Mallinckrodt's discharge. It held that because Sanofi had fully performed its side of the

3

bargain by transferring ownership outright decades earlier, the contract was not executory. It also held that Sanofi's remaining contractual right to future royalties was an unsecured, contingent claim, so Mallinckrodt could discharge it. The District Court affirmed. We review these rulings of law de novo. *In re Grossman's Inc.*, 607 F.3d 114, 119 (3d Cir. 2010) (en banc).

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b) & 1334. The District Court had jurisdiction under § 158(a)(1). And we have jurisdiction over Sanofi's appeal under §§ 158(d)(1) & 1291.

## II. THE ROYALTIES CAN BE DISCHARGED IN BANKRUPTCY

Bankruptcy settles debts, distributing a debtor's assets among competing creditors. But a creditor with a bankruptcy claim might recover only pennies on the dollar through the bankruptcy process. Yet if its entitlement survives bankruptcy, and the debtor becomes profitable again, the creditor could then collect in full.

The Bankruptcy Code defines a claim broadly as any "right to payment." 11 U.S.C. § 101(5)(A). And if a claim for money arises before the bankruptcy ends, the debtor pays only what it can in bankruptcy—nothing more. § 1141(d)(1)(A). Because Sanofi's right to payment arose before Mallinckrodt filed for bankruptcy, its royalties are dischargeable in bankruptcy.

### A. The royalties are a contingent, unliquidated contract claim

Sanofi argues that the future royalties are too indefinite to be a claim. In any year, Mallinckrodt pays royalties only if it sells more than ten million dollars' worth of Acthar Gel. So we

4

never know in advance whether there will be royalties or how much they will be. But Sanofi's argument fails because the Bankruptcy Code allows for claims that are both contingent and unliquidated. § 101(5)(A).

Sanofi has a contingent claim to future royalties. We give the term "claim" in the Bankruptcy Code "the broadest available definition." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). A contingent claim is one that "has not accrued and [that] is dependent on some future event that may never happen." *Contingent Claim*, Black's Law Dictionary (5th ed. 1979). So, to be contingent, a right to payment must not be guaranteed until something triggers it. And that trigger must be contemplated by the contract. *See Contingent* (def. 9), *Oxford English Dictionary* (2d ed. 1989) ("Dependent on a pre-contemplated probability…."); *cf. In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128–29 (2d Cir. 2000). Here, the contractual trigger is express: once Mallinckrodt sells $10 million in Acthar Gel, it must start paying Sanofi royalties. The royalties are contingent on the sales.

Sanofi's contingent claim is also unliquidated. Though Sanofi complains that the amount of royalties is unknown, that uncertainty does not place the royalties outside the broad definition of "claim." Rather, the Code explicitly covers claims that are unliquidated, meaning "[n]ot ascertained in amount; not determined." *Unliquidated*, Black's Law Dictionary (5th ed. 1979). Thus, though the royalties are contingent and unliquidated, they are a claim.

### B. Like most contract claims, this one arose with the agreement

Next, Sanofi insists that bankruptcy cannot resolve its royalties claim because it will not exist until Mallinckrodt hits the sales trigger each year. Bankruptcy cannot discharge claims that have not yet arisen. 11 U.S.C. § 1141(d)(1)(A). But a claim can *arise* before it is *triggered*. Confusing those concepts reads "contingent" out of the Code's broad definition of claims.

Sanofi tries to analogize its claim to a tort claim. In tort, a post-bankruptcy injury is a contingent claim if the claimant was exposed to the debtor's injurious product or conduct before the bankruptcy filing. *In re Grossman's*, 607 F.3d at 125. We require pre-bankruptcy exposure so that claimants could know about their claims before losing their chance to sue. *Id.* at 125–26. Applying that rule here, Sanofi says it will not be exposed to Mallinckrodt's injurious conduct until Mallinckrodt hits the sales trigger and refuses to pay.

But the tort analogy is inapt. A contract embodies the parties' consent. The contracting parties not only know of their contingent right to payment, but also negotiate for it. So rather than analogize to torts, we rely on the regular rule: most contract claims arise when the parties sign the contract. *See St. Catherine Hosp. of Ind., LLC v. Ind. Fam. & Soc. Servs. Admin.*, 800 F.3d 312, 316 (7th Cir. 2015); *In re THC Fin. Corp.*, 686 F.2d 799, 802–04 (9th Cir. 1982). That is when the parties fix their liability—even if it is still unliquidated or contingent. *See In re U.S. Pipe & Foundry Co.*, 32 F.4th 1324, 1330 (11th Cir. 2022) (Pryor, C.J.).

Case 23-01152-JTD  Doc 39  Filed 04/25/24  Page 6 of 8
Case 1:22-cv-01103  Document 103  Filed 04/25/24  Page 14 of 28

Once the parties agree to a contingent right to payment, the claim exists. And once the claim exists, bankruptcy can reach it. We have said this before in dicta in *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir. 1984). And though *In re Grossman's* overruled *Frenville*'s holding, its discussion of contract claims is correct.

A few contract claims may not fit this general rule. For instance, we might hesitate to find a pre-bankruptcy claim if a debtor's post-bankruptcy conduct is so unexpected that the contract could not give the creditor notice. *See In re Castellino Villas, A.K.F. LLC*, 836 F.3d 1028, 1035–36 (9th Cir. 2016). Or we might worry if a debtor games bankruptcy, wielding it as both a sword and a shield. *See In re Ruben*, 774 F.3d 1138, 1141 (7th Cir. 2014); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998); *In re Sure-Snap Corp.*, 983 F.2d 1015, 1018 (11th Cir. 1993). In both circumstances, fairness might compel special treatment.

But Sanofi confuses these exceptions for the rule. It argues that a claim does not exist in bankruptcy if it must be triggered by a debtor's post-bankruptcy choices, as opposed to an "extrinsic event." Yet nothing in the statutory text or Sanofi's out-of-circuit case citations supports such a broad carve-out. And because this case does not involve lack of notice or gamesmanship, the equities do not call for an exception. Sanofi knew that Mallinckrodt's royalties would be contingent on its sales. By selling the drug, Mallinckrodt is doing exactly what the contract "contemplat[es]." *Castellino Villas*, 836 F.3d at 1037. So once bankruptcy discharges Sanofi's claim, it cannot collect future royalties. *See In re Weinstein Co. Holdings*, 997 F.3d 497, 506 (3d Cir. 2021).

7

To protect itself, Sanofi could have structured the deal differently. It could have licensed the rights to the drug, kept a security interest in the intellectual property, or set up a joint venture to keep part ownership. But it chose not to do so. Instead, it sold its rights outright, leaving itself with only a contingent, unsecured claim for money. And under the Bankruptcy Code, that claim is dischargeable.

\* \* \* \* \*

Bankruptcy frees debtors from lingering claims like this one. Sanofi kept no property or security interest in Acthar Gel, but only a contractual right to a royalty. Because that contingent claim arose before Mallinckrodt went bankrupt, it is dischargeable in bankruptcy. We will thus affirm.