## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 20-12522 (JTD)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: June 20, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: July 9, 2024 at 11:00 a.m. (ET)** |

**MOTION OF THE MALLINCKRODT GENERAL UNSECURED CLAIMS TRUSTEE PURSUANT TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF AN ORDER (A) APPROVING THE ALLOCATION OF THE GENERICS PRICE FIXING CLAIMS RECOVERY AMONG SETTLING ALLOWED CLASS 6(B) GENERICS PRICE FIXING CLAIMANTS, (B) ESTABLISHING PROCEDURES FOR IMPLEMENTATION OF GPF SETTLEMENT AND DISTRIBUTIONS, AND <u>(C) APPROVING FORM AND MANNER OF NOTICE THEREOF</u>**

Heather L. Barlow, solely in her capacity as the Trustee (the "<u>GUC Trustee</u>")[2] of the Mallinckrodt General Unsecured Claims Trust (the "<u>GUC Trust</u>"), by and through her undersigned counsel, respectfully submits this motion (the "<u>Motion</u>") pursuant to section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and local rule 9019-6 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>") authorizing (i) the allocation (the "<u>Allocation</u>") of the

---

[1] A complete list of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Reorganized Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] Capitalized terms used herein without definition shall have the meanings ascribed to them in the General Unsecured Claims Trust Agreement (the "<u>Trust Agreement</u>"), dated as of June 16, 2022, between the Trustee and the Reorganized Debtors or the Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6660-1] (the "<u>Mallinckrodt 1 Plan</u>" or "<u>Mallinckrodt 1 Plan of Reorganization</u>"), as applicable.

Generics Price Fixing Claims Recovery among certain holders (each, a "GPF Claimant") of Allowed Class 6(b) Generics Price Fixing Claims (each, a "GPF Claim" and such Allocation, the "GPF Settlement"); (ii) establishing procedures for the implementation of the GPF Settlement and procedures for distribution of the GPF Settlement to the participating GPF Claimants (each, a "Settling GPF Claimant"); and (iii) approving the form and notice thereof.  In support of the Motion, the GUC Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.       Beginning on or about the Effective Date of the Mallinckrodt 1 Plan of Reorganization (as defined herein), representatives of five subgroups (as further set forth on the Allocation) comprising significantly all of the remaining GPF Claimants have been negotiating an allocation of the Generics Price Fixing Claims Recovery established by the Mallinckrodt 1 Plan (less certain amounts distributed from the Generics Price Fixing Claims Recovery, the "GPF Settlement Proceeds").  The GUC Trustee has supported an intracreditor solution agreed among these holders of Generics Price Fixing Claims (collectively, the "Settling GPF Claimants"), who have the greatest familiarity with the facts and merits underlying those claims, including certain of the Generics Price Fixing Lawsuits.[3]  The GUC Trustee has been kept informed of those negotiations by representatives of certain of the Settling GPF Claimants as they progressed.  Those negotiations have led to a consensual agreement among the Settling GPF Claimants resolving their GPF claims (such resolved claims, the "Settled GPF Claims").  The GUC Trustee has evaluated the proposal and supports the proposed GPF Settlement.  The GUC Trustee and the Settling GPF Claimants have also discussed the best mechanism for effectuating the proposed GPF Settlement

---

[3] The "Generics Price Fixing Lawsuits" are (a) *Connecticut et al., v. Sandoz, Inc. et al.,* Case No. 2:20-cv-03539 (E.D. Pa.) and (b) *In re Generics Pharmaceuticals Pricing Antitrust Litigation,* 16-MD-2724 (E.D. Pa.) (MDL 2724).

to ensure: (i) notice to all potentially affected parties, (ii) finality with respect to the contemplated distribution, and (iii) efficiency in the distribution process.  The procedures proposed herein are the result of those discussions.

2.      Because it is a nearly global settlement, the GPF Settlement greatly reduces the potential for litigation and related costs that would result from intercreditor infighting, which the GUC Trustee might otherwise incur in connection with the resolution of the Settled GPF Claims. As further set forth herein, the proposed GPF Settlement affects only the Settling GPF Claimants, and is neutral both to (i) all other known GPF Claimants, whose claims, as further set forth herein, have previously been resolved by consensual agreement or via objection and expungement, and (ii) all other General Unsecured Claims that are beneficiaries of the GUC Trust, which claimants are not entitled to payment from, and therefore have no interest in, the Generics Price Fixing Claims Recovery.

3.      By this Motion, the GUC Trustee seeks approval of the negotiated Allocation by and among the Settling GPF Claimants, together with procedures and conditions for the release of the GPF Settlement Proceeds (the "Procedures"), including without limitation (i) the distribution of a single payment to the Payee (defined below) selected to receive such payment on behalf of each Settling GPF Claimant Subgroup (defined below) and (ii) the granting of irrevocable, unconditional releases to the GUC Trust, the GUC Trustee, their respective agents and representatives, and the Reorganized Debtors (defined below), all as further described herein.

## JURISDICTION AND VENUE

4.      This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 of the Amended Standing Order of Reference from the United States District Court for

the District of Delaware dated February 29, 2012, as well as the Mallinckrodt 1 Plan.  Mallinckrodt 1 Plan, § X.I.

5.　　This is a core proceeding pursuant to 28 U.S.C. §157(b).

6.　　Venue of this proceeding is appropriate under 28 U.S.C. §§1408 and 1409.

7.　　The predicates for the relief requested by this Motion are section 105 of the Bankruptcy Code, Rules 3007, 7016 and 9019 of the Bankruptcy Rules, and Local Rule 9019-6.

8.　　Pursuant to Local Rule 9013-1(f), the GUC Trustee consents to the entry of a final order or judgment by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, lacks jurisdiction to enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

A.　　The 2020 Chapter 11 Cases.

9.　　On October 12, 2020 (the "Petition Date"), Mallinckrodt plc and its affiliated debtors (collectively, the "Mallinckrodt Entities") commenced voluntary cases ("Mallinckrodt 1" and the Mallinckrodt Entities, for purposes of Mallinckrodt 1, the "Mallinckrodt 1 Debtors") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

10.　　Following the Petition Date, the Mallinckrodt 1 Debtors operated their businesses as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

11.      On October 14, 2020, the Bankruptcy Court entered an order authorizing the joint administration of Mallinckrodt 1 for procedural purposes only pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1 [D.I. 210].

12.      On November 30, 2020, the Bankruptcy Court entered an *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [D.I. 667], setting the general bar date in Mallinckrodt 1 as February 16, 2021, and the bar date for governmental entities as April 12, 2021.

13.      On February 3, 2022, the Court confirmed the *Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [D.I. 6066] (as further modified, the "Mallinckrodt 1 Plan") [D.I. 6347, modified at 6378].   On March 2, 2022, the Court entered its *Finding of Facts, Conclusions of Law, and Order Confirming the Fourth Amended Joint Plan of Reorganization (with technical modifications) of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 6660] (the "Mallinckrodt 1 Confirmation Order") confirming the Mallinckrodt 1 Plan.

14.      On June 8, 2022, the Court entered the *Order (I) Authorizing Modification of the Debtors' Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code, (II) Determining that Further Disclosure and Resolicitation of Votes Are Not Required (III) Deeming the Amended Plan as Accepted, and (IV) Granting Such Other Relief as the Court Deems Just and Proper* [Docket No. 7602] (the "Mallinckrodt 1 Plan Modification Order") authorizing certain modifications to the Mallinckrodt 1 Plan as reflected therein. Pursuant to the Mallinckrodt 1 Plan

Modification Order, the Mallinckrodt 1 Confirmation Order was made applicable to the Mallinckrodt 1 Plan, as modified.

15.      Among other things, the Mallinckrodt 1 Plan contemplated the creation of the GUC Trust, a trust for the benefit of certain general unsecured creditors.  The Mallinckrodt 1 Plan also incorporated the UCC Settlement, which was memorialized on the docket in Mallinckrodt 1 on September 2021 at D.I. 4121, and provides for, among other things: (i) the distribution of certain cash and non-cash consideration to Class 6 creditors via the GUC Trust, a portion of which was distributed to the GUC Trust on the Effective Date of the Mallinckrodt 1 Plan (as further described in the Mallinckrodt 1 Plan, the "Initial Fixed Distribution"), and (ii) an allocation of that consideration among the Class 6 subclasses. *See* Mallinckrodt 1 Plan at § III.B.6, Exhibit 6.  The Mallinckrodt 1 Plan further provided for the assumption by the GUC Trust of certain Class 6 and Class 7 Claims, and, in connection therewith, the authority to resolve all such Claims.  *Id.* at § IV.HH.1.

16.      Pursuant to the Mallinckrodt 1 Plan and the UCC Settlement, $8 million of the Initial Fixed Distribution under the Mallinckrodt 1 Plan was earmarked for holders of Allowed Class 6(b) General Unsecured Claims (as defined in the Mallinckrodt 1 Plan, the "Generics Price Fixing Claims Recovery").  *See id.* §§ I.166, III.B.6, Exhibit 6.  The Mallinckrodt 1 Plan provides for pro rata sharing of the Generics Price Fixing Claims Recovery among holders of Allowed Class 6(b) Claims "[e]xcept to the extent that a Holder of an Allowed Generics Price Fixing Claim agrees to less favorable treatment."  *Id.*, § III.B.6.  The Mallinckrodt 1 Plan also provides that "[t]he amount of each Generics Price Fixing Claim shall be reconciled pursuant to the claims reconciliation procedures set forth in the General Unsecured Claims Trust Documents," which Documents include, without limitation, the Trust Agreement.  *Id.*, at §§ I.163, 165.

17.     The Mallinckrodt 1 Plan became effective on June 16, 2022 (the "Effective Date"). Simultaneously therewith, the GUC Trust was formed and Heather L. Barlow was appointed as the GUC Trustee.

18.     The Trust Agreement was filed on June 22, 2022, as Exhibit G to the Twentieth Plan Supplement to the Mallinckrodt 1 Plan [D.I. 7684-7]. [4]

B.     The GUC Trustee's Rights and Obligations.

19.     Pursuant to the Trust Agreement, the GUC Trustee is responsible for "administering, disputing, compromising and settling or otherwise resolving and finalizing payments or other distributions with respect to Holders of General Unsecured Claims that are General Unsecured Claims Trust Beneficiaries under the [Mallinckrodt 1] Plan."   Trust Agreement, § 4.11.1.

20.     The Trust Agreement also provides the GUC Trustee the power to "review, reconcile, allow, object to, compromise, settle and withdraw objections to General Unsecured Claims." *Id.*, § 3.1.4.

21.     The Generics Price Fixing Claims Recovery is to be administered by the GUC Trustee.   *See id.*, § 4.11.1 (granting the GUC Trustee "the responsibility and authority for administering, disputing, compromising and settling or otherwise resolving and finalizing payments or other distributions with respect to Holders of General Unsecured Claims that are

---

[4] *See* Notice of Filing of Exhibit A (Management Incentive Plan), Exhibit B (Executed Opioid MDT II Documents and Opioid Creditor Trust Documents), Exhibit C (Executed MNK Opioid Abatement Fund, LLC Limited Liability Company Operating Agreement), Exhibit D (Tribal Opioid Abatement Fund, LLC Limited Liability Company Operating Agreement), Exhibit E (Executed New Opioid Warrant Agreement), Exhibit F (Executed Opioid Registration Rights Agreement), Exhibit G (Executed General Unsecured Claims Trust Agreement), and Exhibit H (Executed Asbestos Trust Documents) of the Twentieth Plan Supplement for the Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [D.I. 7684].

General Unsecured Claims Trust Beneficiaries under the [Mallinckrodt 1] Plan"). With respect to

Generics Price Fixing Claims, the Trust Agreement further provides that:

> The powers granted to the General Unsecured Claims Trustee hereunder shall include discretion to determine an estimation of the Generics Price Fixing Claims, in consultation with the General Unsecured Claims Trust Advisory Committee, consistent with the terms of the [Mallinckrodt 1] Plan, provided, that the estimation or allowance of any individual Generics Price Fixing Claim in excess of $1,000,000 shall also require the approval of the Bankruptcy Court on notice to all parties in interest.

*Id.*, § 4.11.4.

22.     On July 8, 2022, the GUC Trustee filed the *Motion of the General Unsecured Trustee for an Order Approving the General Unsecured Claim Trustee's Procedures for Disputed General Unsecured Claims in Plan Classes 6(A), 6(B), 6(E), 6(F), and Class 7 Trade Claims Assumed by the Mallinckrodt General Unsecured Claims Trust* (the "ADR Motion") [D.I. 7791], which sought this Court's approval of the GUC Trustee's proposed alternative dispute resolution procedures.

23.     On August 1, 2022, this Court entered an order (the "ADR Order") approving the relief set forth in the ADR Motion, including the ADR Procedures attached to the ADR Motion as Exhibit A (the "ADR Procedures") [D.I. 7922].

24.     The ADR Procedures contemplate, among other things, that:

> Class 6(b) Generics Price Fixing Claims shall be estimated in accordance with the [Mallinckrodt 1] Plan and shall have no recourse to recover from the General Unsecured Claims Trust, other than $8 million to be paid to holders of Generics Price Fixing Claims on the Effective Date or as soon as practicable thereafter, pursuant to Article 6 of the General Unsecured Claims Trust Agreement and the [Mallinckrodt 1] Plan, provided, that *the General Unsecured Claims Trustee* may dispute individual Class 6(b) Generics Price Fixing Claims pursuant to these ADR Procedures, and *may, but shall not be obligated to, resolve intracreditor disputes among holders of Class 6(b) Generics Price Fixing Claims*.

ADR Procedures, at 1, n.2 (emphasis added).

25.     Since the Effective Date, the GUC Trustee and her professionals have been reviewing, comparing, and reconciling proofs of claim (including any supporting documentation) with the Mallinckrodt Entities' Schedules and their books and records.  Among other things, the GUC Trustee has filed several omnibus objections to claims, resulting in several hundred claims being expunged from the claims register, including certain late-filed Generics Price Fixing Claims.

C.      Mallinckrodt 2.

26.     On August 28, 2023, the Mallinckrodt Entities commenced chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Mallinckrodt 2").

27.     On October 10, 2023, the Bankruptcy Court entered a confirmation order in Mallinckrodt 2.  *See* Order Approving (I) the Disclosure Statement and (II) Confirming the First Amended Prepackaged Joint Plan of Reorganization of Mallinckrodt PLC and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code [Case No. 23-11258, D.I. 522] (the "Mallinckrodt 2 Confirmation Order").

28.     Pursuant to the First Amended Prepackaged Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code filed in the 2023 Cases (the "Mallinckrodt 2 Plan") [Case No. 23-11258, D.I. 452], holders of General Unsecured Claims (as defined therein) are "Unimpaired", or not "'impaired' within the meaning of sections 1123(a)(4) and 1124 of the [United States] Bankruptcy Code."  Mallinckrodt 2 Plan, §I.A.  Accordingly, the rights of the GUC Trust, the GUC Trustee, and the holders of general unsecured claims in these Cases were unaffected by Mallinckrodt 2.  *See also* Mallinckrodt 2 Confirmation Order, ¶ 57 (stating that "all of the rights, claims, and interests of the General

Unsecured Claims Trust . . . shall be unaltered and unimpaired . . . and shall remain enforceable in their entirety").

29.     The Mallinckrodt 2 Plan became effective on November 14, 2023 [Case No. 23-11258, D.I. 654].  Since the effective date of the Mallinckrodt 2 Plan, the Mallinckrodt Entities continue to do business as reorganized business entities (collectively, the "<u>Reorganized Debtors</u>").

30.     The GUC Trustee, and the beneficiaries of the GUC Trust, including holders of Allowed Generics Price Fixing Claims, continue to be governed by the Mallinckrodt 1 Confirmation Order, Mallinckrodt 1 Plan, and the General Unsecured Claims Trust Documents.

D.     <u>Administration of the Generics Price Fixing Claims and Negotiation of the GPF Settlement</u>.

31.     Prior to the Petition Date in Mallinckrodt 1, certain of the Mallinckrodt Entities were named as defendants in the Generics Price Fixing Lawsuits.  Mallinckrodt Inc. was named as a defendant in several private putative class actions filed against dozens of pharmaceutical companies, each alleging antitrust violations with respect to generic pharmaceutical pricing. Those actions have been consolidated in a multi-district litigation in the Eastern District of Pennsylvania captioned *In re Generics Pharmaceuticals Pricing Antitrust Litigation,* 16-MD- 2724 (E.D. Pa.) (MDL 2724).  In addition, Mallinckrodt Inc., Mallinckrodt LLC, and Mallinckrodt plc were named as defendants in a government lawsuit filed in the District of Connecticut by 46 states, the District of Columbia, and four United States territories, similarly alleging antitrust violations related to generic pharmaceutical pricing.  *See generally*, *Connecticut et al., v. Sandoz, Inc. et al.,* Case No. 2:20-cv-03539 (E.D. Pa.).

32.     In connection with the negotiation of the Mallinckrodt 1 Plan, representatives of the Generics Price Fixing Claimants, together with representatives of the Mallinckrodt Debtors, the Official Committee of Unsecured Creditors and other constituencies in Mallinckrodt 1,

negotiated the Generics Price Fixing Claim Recovery, an $8 million fund to be distributed to holders of Allowed Class 6(b) Claims, which agreement was incorporated into the Mallinckrodt 1 Plan. *See* Mallinckrodt 1 Plan, §§ I.166, III.B.6, Exhibit 6.

33.    On April 20, 2023, the GUC Trust filed the *General Unsecured Claims Trustee's Third Omnibus Objection to Certain No Liability/No Supporting Documentation Claims (Non-Substantive)* [D.I. 8671], seeking the expungement of over 100 claims, including approximately 60 asserted Generics Price Fixing Claims that were filed with no supporting documentation. On May 23, 2023, the Bankruptcy Court entered an *Order Sustaining General Unsecured Claims Trustee's Third Omnibus Objection to Certain No Liability/No Supporting Documentation Claims (Non-Substantive)* [D.I. 8786], as amended by order entered May 30, 2023 [D.I. 8792], resulting in those claims being expunged.

34.    In July 2023, the GUC Trust filed the *General Unsecured Claims Trustee's Fifth Omnibus Objection to Certain Claims (Late Filed Claims and Certain No Liability/No Supporting Documentation Claims)* [D.I. 8902], seeking the expungement of over 70 late-filed or unsupported claims, including approximately 10 asserted Generics Price Fixing Claims. On August 16, 2023, the Bankruptcy Court entered an *Order Sustaining General Unsecured Claims Trustee's Fifth Omnibus Objection to Certain Claims (Late Filed Claims and Certain No Liability/No Supporting Documentation Claims)* [D.I. 8927], resulting in the expungement of these Claims.

35.    Each of the Settling GPF Claimants timely filed one or more proofs of claim with respect to its Generics Price Fixing Claims. To date none of these claims have been resolved.

36.    The GUC Trustee has separately reached consensual settlements with the remaining non-Settling GPF Claimants that timely filed proofs of claim in Mallinckrodt 1, other than with the County of Suffolk, New York, which had asserted identical unliquidated Generics Price Fixing

Claims (the "Suffolk County Claims") against Mallinckrodt plc (claim number 2185) and

Mallinckrodt LLC (claim number 2337), to which the GUC Trustee previously objected (the

"Suffolk County Objection") [D.I. 9023].  Following motion practice and a hearing,[5] the Suffolk

County Objection was heard and sustained by this Court on March 27, 2024, resulting in the entry

of an order disallowing and expunging of the Suffolk County Claims [D.I. 9070].[6]

37.    Accordingly, the GUC Trustee believes that all known GPF Claims that are not

addressed by the relief sought in this motion have been addressed through settlement or objection.

Nevertheless, the GUC Trustee has sought to ensure broad notice of this motion, including the

Procedures contemplated hereby and the proposed timeline for implementing the GPF Settlement.

38.    Since the Effective Date, the Settling GPF Claimants have engaged in lengthy

negotiations in order to arrive at the proposed Allocation of the GPF Settlement Proceeds without

resorting to litigation.  The GUC Trustee has monitored the progress of these discussions, which

have resulted in a consensual agreement among the Settling GPF Claimants.  The GUC Trustee

has proposed, and representatives of the Settling GPF Claimants have agreed to, a mechanism for

effectuating the proposed GPF Settlement to ensure: (i) notice to all potentially affected parties,

(ii) finality with respect to the contemplated distribution, and (iii) efficiency in the distribution

process.

39.    The GUC Trustee believes that the litigation over resolution of the GPF Claims

likely would become protracted, requiring a significant investment of time and resources by all

parties, which in turn would tax the GUC Trust's limited resources and delay the claims

administration process.  The GUC Trustee has been advised that the proposed Allocation reflects

---

[5] Despite responding to the Suffolk County Objection [D.I. 9038], Suffolk County elected not to appear at the hearing on the Suffolk County Objection [D.I. 9065].
[6] Suffolk County elected not to appear at the hearing on the Suffolk County Claims Objection [D.I. 9065].

the agreement of all of the remaining GPF Claimants (after accounting for claims that have been resolved through objection or consensual resolution) and that the Settling GPF Claimants account for the vast majority of asserted claim value.[7]

40.    Based on the foregoing, the GUC Trustee believes that the efficiencies of the proposed Allocation and the proposed Procedures serve the interests of all General Unsecured Trust beneficiaries, and that there is significant benefit to resolving these matters on the terms provided in this Motion. The representatives of the Settling GPF Claimants have represented to the GUC Trustee that the resolution provided for by the Allocation best serves the interests of the Settling GPF Claimants.  Based on her own independent investigation, and in the sound exercise of her business judgment, the GUC Trustee believes that the proposed Allocation satisfies the obligations of the GUC Trust.  The GUC Trustee also believes that the approval of procedures consistent with those sought in this Motion will provide adequate notice to all potentially affected parties and achieve finality with respect to the contemplated distribution.  Accordingly, the GUC Trustee supports and seeks approval of the proposed GPF Settlement.

## **RELIEF REQUESTED**

41.    By this Motion, the GUC Trustee seeks entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, authorizing and approving the Allocation, together with the Procedures for the distribution of the GPF Proceeds, as follows:

a)    **Allocation.**  The Allocation of the GUC Settlement Proceeds among the subgroups of GPF Claimants as set forth on Exhibit B hereto (each, a "Settling GPF Claimant Subgroup"), subject to dilution within each Settling

---

[7] While the Generics Price Fixing Claims were assigned the aggregate value of $1.05 billion solely for purposes of determining the allocation to Class 6(b) of the General Unsecured Claims Allocation as described in the UCC Appendix, *see* Mallinckrodt 1 Plan, § I.165, the potential value of these Claims, as detailed in various appendices to the proofs of claim, could be in a range of billions of dollars.

GPF Clamant Subgroup to the extent these Procedures bring forth any additional qualifying GPF Claims, with any further allocation or distribution among the GPF Claimant members of each Settling GPF Claimant Subgroup to be agreed solely among its constituent members and their representatives, subject to the limitations set forth below.

b) **<u>Payment of GPF Proceeds</u>.**  The payment of the GPF Settlement Proceeds made pursuant to the Allocation shall be made by the GUC Trustee, in each instance, to the entity or individual assigned by each Settling GPF Claimant Subgroup (the "<u>Payee</u>") set forth on the Allocation, who shall also be named in the applicable Payment Direction (as defined in item (iv) below), subject to the conditions set forth in the following paragraph and in items (c)(ii), (iii), and (iv) below.

The GUC Trustee shall distribute the GPF Settlement Proceeds by making a single payment (each, a "<u>GPF Subgroup Payment</u>") to each Payee, and shall not suballocate or make any payment in respect of any individual Settling GPF Claimant or Settling GPF Claim.  Upon delivery of the Payment Directions and the applicable Tax Form, in each case as further set forth below, the GUC Trustee shall be duly authorized to deliver, and each Payee set forth on the Allocation shall be duly authorized to accept, the applicable GPF Subgroup Payment on behalf of each Settling GPF Claimant within such Settling GPF Subgroup, and, as further set forth herein, neither any GUC Trust Releasee nor any such Payee shall incur any liability in connection with the delivery or acceptance of such payment.

For the avoidance of doubt, any subsequent use of or distribution of any GPF Subgroup Payment, or any portion thereof shall be at the discretion of the Payee, upon such terms and conditions as the Payee and the Settling GPF Claimants within such Settling GPF Claimant Subgroup may agree, and neither the GUC Trust nor the GUC Trustee shall have any further role or discretion with respect to any GPF Subgroup Payment following delivery to the applicable Payee.  To the extent a dispute among the members of any Settling GPF Claimant Subgroup occurs with respect to the further use or distribution of the applicable GPF Subgroup Payment, any costs or expenses incurred by the GUC Trust, the GUC Trustee, or any GUC Trust Releasee shall be borne by and paid for from the proceeds of the applicable GPF Subgroup Payment.

c) **Conditions to payment to Settling GPF Claimants.**  The payment of the GPF Settlement Proceeds pursuant to the approved Allocation shall occur only upon the satisfaction of the following conditions:

(i) the entry of an order of the Bankruptcy Court approving the Allocation and Procedures substantially as provided herein, including without limitation the forms of Release and Payment Direction attached hereto, which order shall have become a final order, no longer subject to any appeal, revocation, reversal, amendment, or modification (a "Final Order");

(ii) the execution by each Settling GPF Claimant or its authorized representative (each, an "Authorized Representative"), on its own behalf

and on behalf of each of its subsidiaries and affiliates, each of its and each of their successors and assigns, and each of their respective past and present officers, directors, members, managers, partners, principals, agents, servants, employees, representatives, affiliates, attorneys, financial advisors, and other professionals, including without limitation, to the extent applicable, the Payee and the Authorized Representative, of a Release, substantially in the form attached hereto as Exhibit C (the "Release"), granted in favor of the GUC Trust, the GUC Trustee, and other parties in interest (as further set forth thereon, the "GUC Trust Releasees");

(iii) the submission to the GUC Trustee of a completed IRS Form W-8, Form W-9 or such other identifying form as may be applicable from each applicable Payee (a "Tax Form");[8] and

(iv) a direction, substantially in the form set forth as Exhibit 4 hereto, from or on behalf of each Settling GPF Claimant within each Settling GPF Claimant Subgroup, instructing the GUC Trustee to deliver such Settling GPF Claimant Subgroup's undivided portion of the applicable GPF Subgroup Payment to the applicable Payee. The GUC Trustee shall be entitled to rely on the representations and instructions set forth in the Release and the Payment Direction and neither the GUC Trust, the GUC Trustee, nor any GUC Trust Releasee shall incur any liability in connection with the GUC Trustee doing so. In addition, (i) all payments will be made in U.S. dollars, (ii) none of the GUC Trust Releasees shall be responsible

---

[8] For the avoidance of doubt, each Payee need submit only one Tax Form.

for any currency or exchange expenses, wire fees, or similar costs associated with the GPF Settlement Payment, any and all of which, absent prior arrangement with the GUC Trustee, may be deducted from the GPF Subgroup Payment made thereby; and (iii) the execution and delivery by or on behalf each Settling GPF Claimant of the Release and Payment Direction shall indicate each Settling GPF Claimant's understanding, acknowledgment and agreement that the GUC Trustee will make a single distribution with respect to each Settling GPF Claimant Subgroup to the Payee selected for the purpose of receiving the GPF Subgroup Payment.

Following the delivery of the GPF Subgroup Payment to each applicable Payee, none of the GUC Trust Releasees shall have or incur any liability in connection with any subsequent transfer of all or any portion of the GPF Settlement Proceeds, or for any dilution of any GPF Subgroup Payment made to a particular Settling GPF Claimant Subgroup as a result of the discovery of additional valid Settling GPF Claims within such Subgroup.  In addition, any subsequent use of or distribution of any GPF Subgroup Payment, or any portion thereof, shall be at the discretion of the Payee, upon such terms and conditions as the Payee and the Settling GPF Claimants within such Settling GPF Claimant Subgroup may agree, and neither the GUC Trust nor the GUC Trustee shall have any further role or discretion with respect to any GPF Subgroup Payment following delivery to the applicable Payee.

d) **Timing/Bar Date/Release.**  In connection with the GPF Settlement and the preparation of this Motion, representatives of each Settling GPF Claimant Subgroup, on their own behalf or through their Authorized Representatives, have executed the Release, which Release the GUC Trustee will hold in escrow pending the entry of the Order and the Order becoming a Final Order. As contemplated by this Motion, each Settling GPF Claimant, or its Authorized Representative, will have 60 days following the Order becoming a Final Order to also submit or cause to be submitted on its behalf: (i) if not already submitted, a Release, (ii) a Payment Direction, and (iii) the applicable Tax Form (if not previously submitted).  Each Release will become effective upon (i) entry of the Order; (ii) the Order becoming a Final Order, and (iii) delivery of each GPF Subgroup Payment by the GUC Trustee to the Payee set forth in the Settling GPF Claimant's Payment Direction (the "GPF Settlement Effective Date"), with no further action required by the GUC Trust, the GUC Trustee, the Settling GPF Claimant, or the Bankruptcy Court.

To the extent any GPF Claimant has not previously delivered an executed Release into escrow and wishes to become a Settling GPF Claimant, each such GPF Claimant shall, within sixty (60) days of the order approving this Motion becoming a Final Order, on its own behalf or by and through its Authorized Representative, execute and deliver or cause to be executed and delivered each of (i) the Release, (ii) a Payment Direction, and (iii) a completed Tax Form (if not previously submitted by the Payee).

**The failure of any GPF Claimant (or its authorized representative) to execute and deliver to the GUC Trustee each of (i) the completed Release, (ii) a completed Tax Form (unless previously submitted by the Payee), and (iii) a Payment Direction, within sixty (60) days of the order approving this Motion becoming a Final Order shall result in the GPF Claim(s) of that GPF Claimant being barred and forever discharged, regardless of the prior submission by the GPF Claimant of one or more timely-filed proofs of claim with respect to such GPF Claims.** To the extent any GPF Claimant's claims are barred pursuant to the Order:

(i)     such GPF Claimant shall be deemed to have waived any right it may have had to receive any distribution on account of any GPF Claim and shall have no right to participate in and shall forfeit any rights in the Allocation, or any portion of the GPF Settlement Proceeds (including any GPF Subgroup Payment), and any and all such applicable amounts shall be allocated among the Settling GPF Claimant(s) within the applicable Settling GPF Claimant Subgroup that have satisfied the conditions of this Order;

(ii)    the Notice and Claims Agent shall be authorized to revise the Claims Register to reflect the expungement of each such GPF Claim;

(iii)   each such GPF Claimant shall have no further rights with respect to its GPF Claims, none of the GUC Trust, the GUC Trustee, any GUC Trust Releasee, or the Payee shall have any further or be deemed to have incurred any further obligation to any such GPF Claimant, and

each such GPF Claimant, and each of its subsidiaries, affiliates, successors, assigns, and each of its and their respective past and present officers, directors, members, managers, partners, principals, agents, servants, employees, representatives, affiliates, attorneys, financial advisors, and other professionals, shall be forever barred and enjoined from asserting or taking any action with respect to any such GPF Claim, including against any of the GUC Trust Releasees.

42.     Upon the GPF Settlement Effective Date, all GPF Claims of any of the Releasing Party Entities (as defined below), whether or not set forth on the Allocation, Appendix 1 to the applicable Release, or elsewhere, shall be, and shall be deemed to be, satisfied in full, regardless of the asserted amount of any such GPF Claim and/or whether filed as a liquidated or unliquidated claim, and none of the Releasing Party Entities, nor any entity or individual holding or asserting an actual or purported interest in any such GPF Claim (whether as a direct or indirect transferee, claimant, participant, or otherwise), shall be entitled to receive, and each shall be deemed to have waived any right any of them might have to receive, other than the GPF Settlement Payment, any distribution on account of any GPF Claim.  The Notice and Claims Agent shall be authorized to revise the Claims Register to reflect the satisfaction of each Settling GPF Claim.

43.     For the avoidance of doubt, it is a condition to the distribution of any of the GPF Settlement Proceeds to any Settling GPF Claimant pursuant to the Allocation that each Settling GPF Claimant or its legally Authorized Representative execute the Release[9] and the Payment Direction.  The Release contemplates, among other things, that each Settling GPF Claimant, on its

---

[9] As set forth in the Motion, the Trustee obtained Releases from representatives of each Settling GPF Claimant Subgroup prior to the filing of the Motion. The GUC Trustee, in her discretion, may request a Release directly from any Settling GPF Claimant or such authorized representative as the GUC Trustee deems acceptable.

own behalf and on behalf of each of its subsidiaries and affiliates, each of its and each of their successors and assigns, and certain other parties (as further defined in the Release, the "Releasing Party Entities" and each, a "Releasing Party Entity"), thereby, and with no further action required by the GUC Trust, the GUC Trustee, any Releasing Party Entity, or the Bankruptcy Court, irrevocably and unconditionally, fully, finally and forever waives, releases, acquits and discharges, and is deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged, the GUC Trust, the GUC Trustee, the Reorganized Debtors, their bankruptcy estates, and certain other parties, including without limitation the GUC Trust Advisory Committee and each of its members and their representatives (as further described in the Release, the "GUC Trust Releasees"), from any and all claims, actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, attorneys' fees, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, benefits of any type, and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity (each of the foregoing, a "Cause of Action"), which any Releasing Party Entity has, had, may have, or may claim to have against any of the GUC Trust Releasees relating to the GPF Claims, including without limitation as set forth in any proof of claim filed in the Mallinckrodt 1 Bankruptcy (whether or not set forth on Appendix 1 thereto), and including all claims of each Settling GPF Claimant on whose behalf a distribution is made from the GPF Settlement Proceeds in reliance on the Payment Direction, the proper tax form, and the Release.  The Release also includes a covenant of each Releasing Party Entity (i) not to commence, file or initiate any Cause(s) of Action against any of the GUC Trust Releasees; and (ii) not to contest, object to, oppose, file any pleading in response to or otherwise appear with respect to any other settlement or action proposed by the

GUC Trustee in connection with the Mallinckrodt 1 Bankruptcy, in either event, related to the GPF Claims, and provides that, upon the effectiveness of the Release, each and every GUC Trust Releasee shall be entitled to indemnification or reimbursement for the incurrence of any fees, costs and expenses incurred in connection with the GPF Claims.

44.     With respect to each Settling GPF Claimant, the distribution of the GPF Subgroup Payment to the applicable Payee shall and shall be deemed to be a "Payment" as defined in the Release, and the Release executed and delivered by or on behalf of such Settling GPF Claimant shall become effective on the GPF Settlement Effective Date.

45.     The GUC Trustee may make available upon request Word versions of (i) the form of signature page to the Release and Appendix 1 thereto and (ii) the relevant pages of the form of Payment Direction, so that the GPF Claimant or its Authorized Representative may conform and complete the applicable portions, provided that any Word forms are being provided solely as a courtesy, and no GPF Claimant nor any party acting on its behalf may make any changes to either the operative language of the Release or the Payment Direction, and provided, further, that the GUC Trustee is authorized to reject any such proposed change and to disregard any executed Release or Payment Direction that purports to change any language thereof.

46.     Absent a Final Order of the Bankruptcy Court approving the relief set forth in this Motion, including the foregoing relief, the agreement and compromise set forth herein shall be null and void.

## **BASIS FOR RELIEF**

47.     By the instant Motion, the GUC Trustee requests the entry of an order, substantially in the form attached, pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 9019-6, approving the Allocation and procedures for distribution of the GPF Proceeds

to the GPF Claimants.  The GUC Trustee believes that approval of the Allocation resolves substantial issues facing the GUC Trust in a timely and efficient manner, without expending significant GUC Trust resources, and represents an arm's length and reasoned compromise in light of the relevant facts and circumstances of this case.  Further, the Procedures are designed to maximize notice and the opportunity for Settling GPF Claimants to participate in the GPF Settlement.

48.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

49.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a compromise to which the debtor is a party and provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

50.     Section 105(a) and Bankruptcy Rule 9019(a) work in tandem to grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

51.     The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted*); see also In re World Health Alts., Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding that settlements are "generally favored in bankruptcy"). Furthermore, the decision to accept or reject a compromise or settlement is within

the sound discretion of the Bankruptcy Court. *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515

(Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

52.     Courts are not required to be convinced that a proposed compromise is the best

possible outcome available to the parties. *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008)

(citing *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)). Rather, under Bankruptcy Rule

9019, a court "'must determine if the compromise is fair, reasonable, and in the interest of the

estate.'" *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018)

(quoting *In re Louse's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

53.     Courts typically consider four factors when evaluating a proposed settlement: "(1)

the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity

of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393. In evaluating these factors,

"the settlement need only be 'above the lowest point in the range of reasonableness.'" *TSIC*, 393

B.R. at 79 (quoting *In re Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D.

Pa. 1992)).

54.     Courts apply the same set of standards to settlements in bankruptcy cases involving

liquidating trusts. *See, e.g.*, *In re Washington Mutual, Inc.*, 848 Fed. Appx. 84 (3d Cir. March 23,

2021) ("WaMu"), *aff'g* 2020 WL 1332922, Civ. No. 19-775-RGA (D. Del. March 23, 2020); *see

also In re Health Diagnostic Labs., Inc.*, 2016 WL 6068812, Case No. 15-32919 (Bankr. E.D. Va.

Oct. 14, 2016) (using *Martin* factors to approve settlement agreement under Rule 9019 between

liquidating trust and debtor's pre-petition law firm).  In *WaMu*, the Third Circuit was asked to

review the prior approval of a settlement negotiated by the liquidating trust established by debtors'

confirmed chapter 11 plan.  There, the proposed agreement allowed a disputed $72 million claim

asserted by certain securities underwriters that made them members of the debtor's preferred equity interest class, diluting the recovery of preferred stockholders. *See WaMu*, 848 Fed. Appx. at 85. The Bankruptcy Court overruled the objection of another member of the same class and approved the settlement, and the District Court affirmed. *Id.*

55.    On appeal, the Third Circuit, applying the relevant *Martin* factors, held that the Bankruptcy Court did not abuse its discretion in approving the compromise, noting that, (i) with respect to the first factor, "[s]uccess in litigation was hardly guaranteed" (*id.* at 87); (ii) with respect to the third factor, "the litigation's complexity, cost, duration, and inconvenience . . . weighed heavily in favor of settlement," (*id.* at 88); and (iii) with respect to the fourth factor, the paramount interest of creditors, settlement was appropriate. *Id.*[10]

56.    Here, the relevant *Martin* factors similarly are satisfied. The results of the separate litigation of the individual Settling GPF Claims are at best uncertain, and, while undoubtedly costly both to the GUC Trust and the Settling GPF Claimants, might not yield a significantly different result. The Settling GPF Claimants, each of which is an active participant in the proposed GPF Settlement, have agreed among themselves that the Allocation represents a fair division of the limited GPF Settlement Proceeds and the GUC Trustee's independent analysis agrees with the proposed assessment. While the Allocation may not be precisely pro rata, "[e]quality among creditors who have lawfully bargained for different treatment is not equity but its opposite. . . ." *Chem. Bank New York Tr. Co. v. Kheel*, 369 F.2d 845, 848 (2d Cir. 1966) (J. Friendly, concurring). Thus, the GPF Settlement satisfies the fourth *Martin* factor: because all other known GPF Claims were previously resolved by consensual settlement or objection, the GPF Settlement has no negative effect on other known holders of Class 6(b) GPF Claims.

---

[10] As is the case here, the Third Circuit found that the second *Martin* factor – likelihood of difficulty in collection – was irrelevant, as the Trust "was not seeking to collect on the underwriters' claims, but to defeat them." *Id.* at 88.

Similarly, because the GPF Settlement Proceeds come exclusively from the Generics Price Fixing Claims Recovery, the Allocation and contemplated payment will in no way reduce the amount available for other holders of Allowed General Unsecured Claims in Mallinckrodt 1.

57.     The GUC Trust's primary interests with respect to the GPF Settlement Proceeds are: (a) assuring the Claims of the Settling GPF Claimants are valid and timely; (b) assuring that the proposed Allocation was negotiated at arms' length and in good faith; (c) adequate notice and an opportunity to be heard by affected or potentially affected creditors with respect to the settlement; (d) approval by this Court of the Allocation and the proposed Procedures; and (e) finality with respect to the Allocation and payment pursuant the proposed Procedures.

58.     The GUC Trustee has been advised that the Settling GPF Claimants went through extensive negotiations in order to achieve agreement on the proposed Allocation, which reflects a culmination of the efforts of those claimants to achieve a business-like resolution to the difficult issues involved in allocating the GPF Proceeds.  Absent the approved Allocation, as set forth in this Motion, the GUC Trustee may be required to engage in expensive and time-consuming claims litigation in connection with the Settling GPF Claimants, with no possibility of a net gain to the GUC Trust.  The potential negative consequences to the GUC Trust include further delay of distributions, and the incurrence and expenditure of significant professional fees, which would come from funds that could be more efficiently deployed to administer and resolve other remaining outstanding claims.  The Allocation likely exceeds any benefits that would be obtained through litigation, given the complexities, uncertainties, delays, and costs associated with such litigation.

59.     Accordingly, the GUC Trustee believes that the approval of the instant Motion is in the best interests of the Trust, the Settling GPF Claimants, the Reorganized Debtors, and their

creditors, including the beneficiaries of the GUC Trust, because, as discussed above, approval of the Allocation would (a) promote judicial economy; (b) preserve Trust assets; and (c) provide the immediate benefit of the release of all claims held by the Settling GPF Claimants.

60.     The proposed procedures set forth in the Motion are designed to be efficient and equitable and are consistent with analogous relief approved by this and other courts, both within and outside of this District, including, without limitation, (i) alternative dispute resolution procedures (s*ee*, *e.g.*, ADR Order (approving GUC Trustee's streamlined process for resolving disputed claims); Order Approving Alternative Dispute Procedures, *In re Hertz Corp.*, Case No. 20-11218 (MFW) (Bankr. D. Del. Apr. 13, 2021) [D.I. 3835]); (ii) procedures for settling de minimis claims (*see*, *e.g.*,  Order (I) Authorizing and Establishing Procedures for the Compromise and Settlement of De Minimis Claims, (II) Approving the Form and Manner of the Notice of Settlement, and (III) Granting Related Relief, *In re WeWork Inc.*, Case No. 23-19865 (JKS) (Bankr. D. N.J., Dec. 6, 2023) [D.I. 341]; Order Pursuant to §§ 363(b)and 105(a) and Fed. R. Bankr. P. 9019 Authorizing the Debtors to Establish Procedures to Settle and Compromise Certain Claims and Causes of Action, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Calif, Sept. 10, 2019) [D.I. 3855]); (iii) procedures for sales of de minimis assets (*see, e.g.*, Order (I) Authorizing and Approving Procedures for the Sale or Abandonment of De Minimis Assets, and (II) Authorizing the Debtors to Pay Commissions to Third Parties in Connection with Any De Minimis Asset Sale, *In re Pear Therapeutics, Inc*., Case No. 23-10429 (TMH) (Bankr. D. Del., May 3, 2023) [D.I. 136]; Order Pursuant to §§ 363 and 105(a) and Fed. R. Bankr. P. 2002 Establishing De Minimis Asset Sale Procedures, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Calif, Sept. 10, 2019) [D.I. 3863]); (iv) procedures for assuming or rejecting executory contracts and unexpired leases, and for the sale or unexpired leases (*see*, *e.g.*, Order (I)

Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief, *In re Rite Aid Corp.*, Case No. 23-18993 (MBK) (Bankr. D. N.J., Nov. 20, 2023) [D.I. 702]; Order (I) Establishing Procedures to Sell Certain Leases, (II) Approving the Sale of Certain Leases, and (III) Granting Related Relief, *In re Bed Bath & Beyond Inc.*, Caser No. 23-13359 (VFP) (Bankr. D. N.J., May 22, 2023) [D.I. 422]); and (v) procedures for sales of equity securities (*see*, *e.g.*, Final Order (I) Establishing Notice and Objection Procedures for Transfers of Equity Securities and Claims of Worthless Stock Deductions and (II) Granting Related Relief, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del., January 9, 2023) [D.I. 434].

61.     Based on the foregoing, the GUC Trustee contends that the resolution of the Allocation of the GPF Proceeds as set forth in the instant Motion, satisfies Bankruptcy Code section 105 and Bankruptcy Rule 9019, including the *Martin* factors, and respectfully requests that the Court enter an order approving the Allocation and the proposed Procedures substantially in the form attached hereto.

60.     Notice of this Motion will be provided to (i) the Reorganized Debtors; (ii) the Settling GPF Claimants, (iii) all other known holders of Class 6(b) General Unsecured Claims whose claims have not been previously withdrawn, satisfied, or disallowed, or deemed withdrawn, satisfied, or disallowed pursuant to a prior consensual resolution, or disallowed or expunged pursuant to an order of this Court, and (iv) the parties listed in Local Bankruptcy Rule 2002-1(b). The GUC Trustee submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

61.     No previous request for the relief sought herein has been made by the GUC Trustee to the Bankruptcy Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the GUC Trustee respectfully requests

that the Court (i) grant the relief requested in this Motion and enter the Proposed Order and (ii)

grant such other and further relief as is just and proper.

Dated: June 6, 2024
      Wilmington, Delaware

                                             **ROBINSON & COLE LLP**

                                             By: _Natalie D. Ramsey_
                                             Natalie D. Ramsey (No. 5378)
                                             1201 N. Market Street, Suite 1406
                                             Wilmington, DE 19801
                                             Telephone: (302) 295-4800
                                             Fax: (302) 351-8618
                                             Email: nramsey@rc.com

                                             Rachel Jaffe Mauceri (*pro hac vice*)
                                             1650 Market Street, Suite 3600
                                             Philadelphia, PA 19103
                                             Telephone: (267) 319-7900
                                             Email: rmauceri@rc.com

                                             *Counsel to Heather L. Barlow, solely in her*
                                             *capacity as Trustee of the Mallinckrodt*
                                             *General Unsecured Claims Trust*