# **EXHIBIT 1**

Annual Report for the Period of January 1, 2023 through December 31, 2023

# Mallinckrodt Opioid Personal Injury Trust Annual Report For the Reporting Period of January 1, 2023 through December 31, 2023

## Table of Contents

| Section | Page Number |
|---|---|
| Introduction | 2 |
| Reporting Period Activities | 2 |
| Financial Update | 4 |
| Claims Update | 5 |
| Appendices | 7 |
| Appendix 1:  Statement of Assets, Liabilities and Trust Balance | 8 |
| Appendix 2:  Schedule of Receipts Collected, Expenses Paid and Changes in Trust Balance | 9 |
| Appendix 3: Budget-to-Actual Expense Comparison for Year Zero and Year One | 11 |
| Appendix 4: Independent Auditor's Report as of December 31, 2023 (Forvis/Mazars) | 12 |

August 26, 2024

## Mallinckrodt Opioid Personal Injury Trust

### Annual Report for the Period of
### January 1, 2023 through December 31, 2023

**Introduction**

The Mallinckrodt Opioid Personal Injury Trust (the "Trust") was established pursuant to the Chapter 11 Plan confirmed in the bankruptcy cases of Mallinckrodt plc, *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.) (the "Plan").[1] The Plan was confirmed by Order dated March 2, 2022, and the Plan and the Trust both became effective June 16, 2022, although the Trust was formally established as a Qualified Settlement Fund on April 7, 2022.

The Trust's primary responsibilities are to assume all liabilities and responsibility for all of Mallinckrodt's Personal Injury/Neonatal Abstinence Syndrome ("NAS") Claims, to resolve and make distributions in respect of such Allowed Non-NAS PI Claims and Allowed NAS PI Claims, and use the Trust Assets and income to meet its obligations.

Pursuant to Section 2.2(e)(iii) of the Trust Agreement, the Trust is obligated to prepare and provide Annual Reports on the financial condition of the Trust to the PI Committee, the NAS Representative, and the Future Claimants' Representative.

**Reporting Period Activities - January 1, 2023 through December 31, 2023 (the "Period")**

For the Period, the Trust has undertaken the activities necessary to ensure efficient functioning, including, but not limited to, the following:

---

[1] Capitalized terms used but not herein defined shall have the meaning ascribed to them in the Plan.

- <u>Accounting, Financial Reporting, and Tax</u>:
  Trustee personnel maintained the Trust books and records, reconciled Trust bank accounts, handled and managed Trust disbursements (as approved by the Trust Personal Injury Committee), and other Trust financial and accounting tasks. The Trustee followed internal accounting control procedures, which were reviewed and agreed to by the Trust Financial Advisor. Trustee personnel monitored Trust expenses for Year Zero and Year One of the revised lifetime budget for the Trust (with the revised Trust Budget being developed by the Trustee, in collaboration with the PI Committee, the Future Claimants' Representative, and the NAS Representative). The 2022 Annual Report for the Trust was filed with the Court on December 28, 2023.

- <u>Audit and Tax Return Services</u>: Trustee personnel worked with Forvis, LLP, the Trust auditor, to finalize the Trust's initial audit, which covered the period of April 7, 2022 through December 31, 2022. The audit report was provided to the Constituencies at the November 15, 2023 quarterly meeting, with Forvis being invited to the February 15, 2024 quarterly meeting to present the audit report. The Trust's initial income tax returns, covering the period of April 7, 2022 through December 31, 2022, were reviewed by Forvis and timely filed on October 16, 2023.

- <u>Claims and Claimant Contacts</u>: Trustee personnel processed and scored claims, with the Trustee providing the Parties with weekly updates concerning the numbers of claims submitted and claimant contacts. The Trustee also drafted Trust claims payment protocols, which were approved by the Court.

- <u>Computer Programmer</u>: During the Period, work was conducted and completed by the Trust Computer Programmer on both the Non-NAS and NAS Award letters and Releases, as well as the NAS Sworn Statement by Proxy within the Claim Portal for Trust entry of related data and Claimant access, review, and signoff. Standard maintenance of the Portal and resolution of issues by the Computer Programmer continued during the Period.

- <u>Defendant Funding</u>: Per the Bankruptcy Plan, the Defendant was to make a second payment to the Opioid Master Disbursement Trust II, on or before the first anniversary of the Effective Date, which would have been June 16, 2023. The Defendant defaulted on this second payment, eventually agreeing to a new Restructuring Agreement, which cancelled the remaining payments in exchange for one final payment. The Trust received this one final payment on August 29, 2023, in the amount of $25,172,559.57. The Trustee was forced to examine various options in regards to paying claimants. Trustee personnel prepared a projection of Trust funds available to pay claimants, including the final payment from the Defendant and scaling back existing budgeted administrative expenses, where possible.

- <u>Econometricians</u>: The Trustee, along with assistance from the Financial Advisor, worked with the econometricians (NERA and Ankura) to project the number of eligible claims to be filed with the Trust, along with establishing estimated point and claim value of such claims, which was approved by the PI Committee, NAS Representative, and FCR.

- <u>Milestone</u>: In November 2023, the Trustee signed an "Optional Claims Payment Facilitation Agreement" with Milestone to facilitate flexible payment methods to claimants. Claimant payments began in February 2024.

- <u>Submission to the Court</u>: The Trustee, in conjunction with the Trust Professionals, prepared for submission to the Bankruptcy Court a request for approval of a Motion to shorten the Bar Date for Non-Future Non-NAS claims to June 15, 2025, with such Motion being granted on December 20, 2023.

**Financial Update**

During the Period, the Trust received $27,328,479.28 and disbursed $4,680,368.57, for a net receipt of $22,648,110.71. Also during the Period, the Trust reversed an unrealized gain on

GENTLE TURNER & BENSON, LLC

investments, in the amount of $272,842.38, resulting in a total net receipt of $22,375,268.33. At the end of the Period, the Trust balance was $53,003,122.29, on a modified cash basis.

The Trust's receipts were comprised of (i) $25,172,559.57 on account of the Final Opioid MDT II Payment from Mallinckrodt via the Opioid Master Disbursement Trust II, and (ii) $2,155,919.71 of interest income.

After the formation of the Trust, the Trust's disbursements during the Period were comprised of $4,680,368.57 on account of Trust expenses.

The Trust's ending balance for Cash and Cash Equivalents was $53,141,489.38. At that time: (i) $239,064.76 was held in a Commercial Interest-Bearing Checking Account; and (ii) $52,902,424.62 was held in the IntraFi Financial Network Deposited Account[2].

*Refer to Appendices 1, 2, and 3 for additional financial details*

**Claims Update**

Trustee personnel continued processing both NAS and Non-NAS claims during the Period, and returned deficiency information reviews with claims updated accordingly. Both processing and deficiency distribution/reviews continued during the Period.

In January 2024, Trustee personnel compiled Claimant Payment Batch 1, with Claimant Payment Batch 11 being issued in the middle of August 2024. Trustee personnel also established internal controls governing the approval and payment of claimant payments and the 5% common benefit assessment. The Trustee also worked with NAS Counsel and Counsel for the Common Benefit Fund to address the request by NAS Counsel that 40% of the common benefit assessment be used as a credit for NAS claimant expenses. Counsel for the Common Benefit Fund agreed to the Trust establishing a separate escrow account, which would hold 40% of the common benefit assessment due to be paid with each claimant payment batch, with this issue eventually being

---

[2] This account earns interest and is 100% FDIC-insured.

resolved during the Period in favor of NAS Counsel. In August 2024, NAS Counsel were issued their share of the common benefit assessment that had been set aside in the separate escrow account.

The Trust claims status summary at June 30, 2024 was as follows:

| CLAIMS RECEIVED AND PROCESSED | Non-NAS | NAS |
|---|---|---|
| Claims Submitted | 33,913 | 3,154 |
| Scored | 28,148 | 2,813 |
| Claims in Process | 1,991 | 118 |
| Submittal Incomplete or Unable to Import/Score | 3,774 | 223 |
| Reconciliation | 0 | 0 |

| CLAIMS AWARDED AND PAID | Non-NAS | NAS |
|---|---|---|
| Awards/Releases Prepared | 9,055 | 1,901 |
| Releases Completed | 2,208 | 5 |
| Award Payments Made | 4,909 | 963 |
| Reconciliation | 1,938 | 933 |

<u>Mallinckrodt Opioid Personal Injury Trust</u>

# Appendices

GENTLE TURNER & BENSON, LLC

## APPENDIX 1
## MALLINCKRODT OPIOID PERSONAL INJURY TRUST
## STATEMENT OF ASSETS, LIABILITIES AND TRUST BALANCE
### At December 31, 2023
### (On a Modified Cash Basis)

**ASSETS**

**CASH AND CASH EQUIVALENTS**

| | | |
|---|---|---|
| Cash and Cash Equivalents - Checking - Huntington Bank | $ | 239,064.76 |
| Cash and Cash Equivalents - IntraFi Network Deposits - Huntington Bank * | $ | 52,902,424.62 |
| **TOTAL CASH AND CASH EQUIVALENTS** | $ | 53,141,489.38 |
| **TOTAL ASSETS** | **$** | **53,141,489.38** |

**LIABILITIES AND TRUST BALANCE**

| | | |
|---|---|---|
| Accounts Payable ** | $ | 138,367.09 |
| Trust Balance | $ | 53,003,122.29 |
| **TOTAL LIABILITIES AND TRUST BALANCE** | **$** | **53,141,489.38** |

---

\*     This investment option ensures 100% FDIC protection.

\*\*     This amount consists of: (i) $28,005.00 to Frankel Wyron, LLP for October, November and December 2023 FCR fees; (ii) $100,000.00 for December 2023 Trust and Claims Administrator fees and expenses; (iii) $2,250.00 to FTI Consulting, Inc. for October and November 2023 Financial Advisor fees; (iv) $1,800.00 to Young, Conaway, Stargatt & Taylor, LLP for October, November and December 2023 FCR Professional fees; and (v) $6,312.09 to Cross & Simon, LLC for December 2023 Delaware Counsel fees.

**APPENDIX 2**
**MALLINCKRODT OPIOID PERSONAL INJURY TRUST**
**SCHEDULE OF RECEIPTS COLLECTED,**
**EXPENSES PAID AND CHANGES IN TRUST BALANCE**
**January 1, 2023 - December 31, 2023**
**(On a Modified Cash Basis)**

**A. RECEIPTS:**

| | | |
|---|---|---:|
| Defendant Funding | $ | 25,172,559.57 |
| Interest Income - Brokerage - Huntington Securities | $ | 822,338.13 |
| Interest Income - Checking - Huntington Bank | $ | 5,692.54 |
| Interest Income - IntraFi Network Deposits – Huntington Bank | $ | 1,327,889.04 |
| **TOTAL RECEIPTS** | $ | 27,328,479.28 |

**B. DISBURSEMENTS:**

| | | |
|---|---|---:|
| Claimant Notification | $ | 2,500.00 |
| Computer Programmer (Hagimo) | $ | 110,665.00 |
| Delaware Trustee (Wilmington Trust) | $ | 28,066.46 |
| Director & Officers Liability Insurance (AoN) | $ | 40,000.00 |
| Econometrician (NERA) | $ | 328,194.00 |
| Financial Advisor (FTI Consulting) | $ | 137,515.97 |
| Future Claimants' Representative Fees | $ | 238,248.50 |
| Lien Administrator Fees (Massive) | $ | 2,178,900.00 |
| Outside Financial Audit and Income Tax Return Review (Forvis/Mazars) | $ | 36,351.00 |
| PI Committee Fees | $ | 90,927.64 |
| Trust and Claims Administrator Fees and Expenses | $ | 1,489,000.00 |
| **TOTAL DISBURSEMENTS** | $ | 4,680,368.57 |

**C. NONCASH ITEM:**

| | | |
|---|---|---:|
| Change in Unrealized Gain on Investments [1] | $ | (272,842.38) |
| **TOTAL RECEIPTS OVER (UNDER) TOTAL DISBURSEMENTS OF THE MNK TRUST** | $ | 22,375,268.33 |

---

[1]      This amount represents the reversal of the adjustment made at December 31, 2022 to record the excess of the Fair Market Value over the original cost of the U.S. Treasury bill, with such investment having matured in 2023.

### APPENDIX 2
### MALLINCKRODT OPIOID PERSONAL INJURY TRUST
### SCHEDULE OF RECEIPTS COLLECTED,
### EXPENSES PAID AND CHANGES IN TRUST BALANCE
### January 1, 2023 - December 31, 2023
### (On a Modified Cash Basis)

**D. TRUST BALANCE:**

| | |
|---|---|
| BEGINNING OF PERIOD | $ 30,627,853.96 |
| ADD:  TOTAL RECEIPTS OVER (UNDER) TOTAL EXPENSES OF THE MNK TRUST | $ 22,375,268.33 |
| END OF PERIOD BALANCE OF THE MNK TRUST | $ 53,003,122.29 |

APPENDIX 3

Mallinckrodt Opioid Personal Injury Trust

Trust Settlement Administration Budget

Budget-to-Actual Expense Comparison for Year Zero and Year One

| | Advances Plus Year Zero Budget (April 2022 - June 2023) | Revised Year One Budget (July 2023 - June 2024) | Year Zero and Year One Actual (April 2022 - December 2023) | Year Zero and Year One Budget Remaining | Percent of Budget Remaining |
|---|---|---|---|---|---|
| Trust and Claims Administrator Fees and Expenses [1] | $ 1,961,829.85 | $ 847,720.00 | $ 2,499,793.55 | $ 309,756.30 | 11.03% |
| **Professional Fees/Costs** | | | | | |
| IT Developer (Hagino) | $ 286,200.00 | $ 120,000.00 | $ 372,055.00 | $ 34,145.00 | 8.41% |
| Econometrician (Nera) | $ 180,000.00 | $ 77,500.00 | $ 335,917.50 | $ (78,417.50) | 0.00% |
| Directors & Officers Liability Insurance | $ 40,000.00 | $ 40,000.00 | $ 80,000.00 | $ - | 0.00% |
| Financial Advisor (FTI (Guy Davis)) | $ 200,000.00 | $ 150,000.00 | $ 171,221.00 | $ 178,779.00 | 51.08% |
| Future Claimants' Representative (including FCR Counsel and Forecaster) | $ 600,000.00 | $ 300,000.00 | $ 333,925.60 | $ 566,074.40 | 62.90% |
| Lien Administrator (Massive) [1] | $ 4,365,900.00 | $ 2,178,900.00 | $ 6,478,900.00 | $ 65,900.00 | 1.01% |
| NAS Representative Expert (Dr. Hocker) | $ 15,000.00 | $ - | $ - | $ 15,000.00 | 100.00% |
| NAS Representative (including NAS Representative Counsel) | $ 45,000.00 | $ 22,500.00 | $ - | $ 67,500.00 | 100.00% |
| Nomos | $ 60,000.00 | $ 100,000.00 | $ - | $ 160,000.00 | 100.00% |
| Notice By Publication | $ 41,000.00 | $ - | $ 24,900.00 | $ 16,100.00 | 39.27% |
| Outside Financial Audit and Income Tax Return Review | $ 50,000.00 | $ 50,000.00 | $ 36,351.00 | $ 63,649.00 | 63.65% |
| Trust Advisory Pl Committee | $ 206,479.00 | $ 114,693.00 | $ 112,944.51 | $ 208,227.49 | 64.83% |
| Trustee (Delaware) Fee | $ 6,250.00 | $ 10,000.00 | $ 39,806.46 | $ (23,556.46) | 0.00% |
| **Total Professional Fees/Costs** | $ 6,095,829.00 | $ 3,163,593.00 | $ 7,986,021.07 | $ 1,273,400.93 | 13.75% |
| **Total Fees and Expenses, All Phases** | $ 8,057,658.85 | $ 4,011,313.00 | $ 10,485,814.62 | $ 1,583,157.23 | 13.12% |
| 5% Contingency Reserve for Unknown Expenses - Year One Budget | $ 381,266.69 | $ 200,566.00 | $ 2,500.00 | $ 579,332.69 | 99.57% |
| **Total Fees and Expenses, All Phases, Including Contingency Reserve** | $ 8,438,925.54 | $ 4,211,879.00 | $ 10,488,314.62 | $ 2,162,489.92 | 17.05% |
| **Expenses Outside of Trust Settlement Administration Budget** | | | | | |
| Ad Hoc Group Counsel and Professional Fees | $ - | | $ 1,129,316.36 | | |
| | | | $ 11,617,630.98 | | |

[1] The Advances Budget includes $234,000.00 for Trust and Claims Administrator Fees and Expenses and $198,325.00 for Lien Administrator Fees. The Advances Budget was received in two installments, with $216,163.00 being received on April 18, 2022 and $216,162.00 being received on May 2, 2022.

# Appendix 4

## Independent Auditor's Report as of December 31, 2023 (Forvis/Mazars)

# The Mallinckrodt Opioid Personal Injury Trust

## Independent Auditor's Report and Financial Statements - Modified Cash Basis

December 31, 2023 and 2022

**The Mallinckrodt Opioid Personal Injury Trust**
**Contents**
**December 31, 2023 and 2022**

## Contents

Independent Auditor's Report.................................................................................................... 1

**Financial Statements - Modified Cash Basis**

    Statements of Assets, Liabilities and Trust Balance - Modified Cash Basis........................................... 4

    Statements of Revenue Collected, Claims and Expenses Paid and Changes in Trust
    Balance - Modified Cash Basis ...................................................................................................... 5

    Notes to Financial Statements - Modified Cash Basis ................................................................... 6

Forvis Mazars, LLP
500 Virginia Street East, Suite 800
Charleston, WV 25301
P 304.343.0168 | F 304.343.1895
forvismazars.us

**forvis mazars**

### Independent Auditor's Report

Edgar C. Gentle, III, Esq., Trustee
Claims Administrator

Sean T. Higgins, Esq.
Andrews & Thornton, Attorneys at Law
Trust Advisory Personal Injury Committee Member

Joseph L. Steinfeld Jr., Esq.
ASK, LLP
Trust Advisory Personal Injury Committee Member

Clinton J. Casperson, Esq.
D. Miller & Associates, PLLC
Trust Advisory Personal Injury Committee Member

Roger Frankel, Esq.
Frankel Wyron, LLP
Future Claimants' Representative

Richard H. Wyron, Esq.
Frankel Wyron, LLP
Future Claimants' Representative

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
Future Claimants' Representative

Celeste Brustowicz, Esq.
Cooper Law Firm, LLC
NAS Representative

Scott R. Bickford, Esq.
Martzell, Bickford, & Centola
NAS Representative

Kevin W. Thompson, Esq.
Thompson Barney Law
NAS Representative

Stephen H. Wussow, Esq.
Thompson Barney Law
NAS Representative

The Mallinckrodt Opioid Personal Injury Trust

### Opinion

We have audited the accompanying financial statements - modified cash basis of The Mallinckrodt Opioid Personal Injury Trust (the "Trust"), which comprise the statements of assets, liabilities and trust balance - modified cash basis as of December 31, 2023 and 2022, and the related statements of revenue collected, claims and expenses paid and changes in trust balance - modified cash basis for the year ended December 31, 2023 and the period from April 7, 2022 through December 31, 2022, and the related notes to the financial statements - modified cash basis.

In our opinion, the financial statements - modified cash basis referred to above present fairly, in all material respects, the assets, liabilities, and trust balance of the Trust as of December 31, 2023 and 2022, and its revenue collected, claims and expenses paid, and changes in trust balance for the year ended December 31, 2023 and the period from April 7, 2022 through December 31, 2022 in conformity with the modified cash basis of accounting as described in Note 2.

### Basis for Opinion

We conducted our audit in accordance with auditing standards generally accepted in the United States of America ("GAAS"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements - Modified Cash Basis section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Basis of Accounting

We draw attention to Note 2 of the financial statements, which describes the basis of accounting. The financial statements are prepared on the modified cash basis of accounting, which is a basis of accounting other than accounting principles generally accepted in the United States of America. Our opinion is not modified with respect to this matter.

### Emphasis of Matter

As discussed in Note 4 to the financial statements - modified cash basis, no future cash fundings will be received from Mallinckrodt PLC, thus limiting the funding available to pay claimants and administrative expenses of the Trust. Our opinion is not modified with respect to this matter.

### Responsibilities of Management for the Financial Statements - Modified Cash Basis

Management is responsible for the preparation and fair presentation of the financial statements in accordance with the modified cash basis of accounting described in Note 2; this includes determining that the modified cash basis of accounting is an acceptable basis for the preparation of the financial statements in the circumstances. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements - modified cash basis that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements - modified cash basis, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern within one year after the date that the financial statements - modified cash basis are available to be issued.

The Mallinckrodt Opioid Personal Injury Trust

### *Auditor's Responsibilities for the Audit of the Financial Statements - Modified Cash Basis*

Our objectives are to obtain reasonable assurance about whether the financial statements - modified cash basis as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not absolute assurance, and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements - modified cash basis.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the financial statements - modified cash basis, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements - modified cash basis.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements - modified cash basis.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

### *Restriction on Use*

This report is intended solely for the information and use of the Trustee, the addressees, and the United States Bankruptcy Court for the District of Delaware and is not intended to be, and should not be, used by anyone other than these specified parties, unless designated by these parties.

*Forvis Mazars, LLP*

**Charleston, West Virginia**
**June 20, 2024**

**The Mallinckrodt Opioid Personal Injury Trust**
**Statements of Assets, Liabilities and Trust Balance – Modified Cash Basis**
**December 31, 2023 and 2022**

| | 2023 | | 2022 | |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | $ | 53,141,489 | $ | 811,784 |
| Investments, at fair value (Note 3) | | - | | 29,982,455 |
| Total assets | $ | 53,141,489 | $ | 30,794,239 |
| | | | | |
| **LIABILITIES AND TRUST BALANCE** | | | | |
| **Current Liabilities** | | | | |
| Accounts payable | $ | 138,367 | $ | 166,385 |
| Trust balance | | 53,003,122 | | 30,627,854 |
| Total liabilities and trust balance | $ | 53,141,489 | $ | 30,794,239 |

**The Mallinckrodt Opioid Personal Injury Trust**
**Statements of Revenue Collected, Claims and Expenses Paid and Changes in Trust Balance – Modified Cash Basis**
**Year Ended December 31, 2023 and the Period from April 7, 2022 through December 31, 2022**

|  | 2023 | 2022 |
|---|---|---|
| **Revenue Collected** |  |  |
| Debtors funding | $    25,172,560 | $    37,218,750 |
| Interest income | 2,155,919 | 73,524 |
| Total revenues collected | 27,328,479 | 37,292,274 |
| **Claims and Expenses Paid or Accrued** |  |  |
| General and administrative expenses | 2,596,860 | 4,682,011 |
| Professional fees | 594,509 | 1,244,457 |
| Trustee and Claims Administrator fees | 1,489,000 | 1,010,794 |
| Total claims and expenses paid or accrued | 4,680,369 | 6,937,262 |
| **Noncash Item** |  |  |
| Change in unrealized gain on investments | (272,842) | 272,842 |
| Total noncash item | (272,842) | 272,842 |
| Excess of revenue collected over claims and expenses paid or accrued and increase in trust balance | 22,375,268 | 30,627,854 |
| **Trust Balance** |  |  |
| Beginning of period | 30,627,854 | - |
| End of period | $    53,003,122 | $    30,627,854 |

**The Mallinckrodt Opioid Personal Injury Trust**
**Notes to Financial Statements - Modified Cash Basis**
**December 31, 2023 and 2022**

## Note 1.    Description of The Trust

On March 2, 2022, the United States Bankruptcy Court for the District of Delaware entered an Order Confirming the Fourth Amended Joint Plan of Reorganization of Mallinckrodt PLC And Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code1, dated as of February 18, 2022 (the "Plan"). The Mallinckrodt Opioid Personal Injury Trust (the "Trust") was formally established as a Qualified Settlement Fund on April 7, 2022. The Plan became effective as of June 16, 2022 (the "Effective Date") and allows the Trust to, upon the Effective Date of the Plan, i) assume all liability for the Personal Injury ("PI") and Neonatal Abstinence Syndrome ("NAS") PI claims against Mallinckrodt PLC and its subsidiaries that are channeled to the Trust, ii) collect Plan distributions to be made to the Trust for the Claims Share, iii) administer the PI and NAS Claims, iv) make distributions to Holders of the Claims in accordance with the PI Trust Documents, and v) carry out other matters as set forth in the PI Trust Documents.

The Plan called for the establishment of the Opioid Master Disbursement Trust II ("Opioid MDTII"), which was established as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code. Among other things, Opioid MDTII receives payments from the Debtors and makes distributions to the holders of certain beneficial interests in Opioid MDTII. The Trust has a 9.925% beneficial interest in Opioid MDTII. Under the modified cash basis of accounting, the Trust only records transactions when money is actually received from or paid to Opioid MDTII.

Under the terms of the Plan dated February 18, 2022, the Trust received approximately $432,000 in advanced funding from Mallinckrodt PLC (the "Debtors") in April and May 2022 to be used for Trust fees and expenses incurred before the Plan reached its Effective Date.

On June 17, 2022, the Trust received approximately $36,800,000 of additional funding from the Opioid Master Disbursement Trust II.

The Plan also called for Opioid MDTII to form a wholly-owned subsidiary, MNK Opioid Abatement Fund, LLC ("MOAF"), which they would designate to be issued the New Opioid Warrants on behalf of the Debtors, and they would distribute ownership interests in MOAF to the Opioid Creditor Trusts. The New Opioid Warrants were a form of consideration received by Opioid MDTII from Mallinckrodt PLC pursuant to the Plan. Upon receipt of the New Opioid Warrants, each interest holder was credited with capital contributions equal to the fair market value of the property deemed to be contributed to MOAF by the applicable interest holder. Per the MOAF Operating Agreement, MOAF was established as a partnership, with the Trust having a 9.925% ownership interest. For tax purposes, the Trust reports 9.925% of MOAF's net profits on its annual income tax return. Under the modified cash basis of accounting, the Trust only records transactions when money is actually received from MOAF or payments are made to MOAF.

In December 2022, the Opioid MDTII Trustees, acting in their capacities as Managers of MOAF, monetized the New Opioid Warrants in exchange for a $4,000,000 cash payment from Mallinckrodt PLC. After certain transaction costs and fees, plus accrued interest, the Trust's share of the cash payment was approximately $360,000. Under the modified cash basis of accounting, the Trust recorded this cash payment when it received the distribution of funds from MOAF, which was August 29, 2023.

---

1 Capitalized terms as defined in the Plan

**The Mallinckrodt Opioid Personal Injury Trust**
**Notes to Financial Statements - Modified Cash Basis**
**December 31, 2023 and 2022**

No future cash fundings will be received from Mallinckrodt PLC. Due to the Debtors' deteriorating financial situation since emerging from bankruptcy in June 2022, the seven additional payments to the Trust were cancelled, and the Debtors and the Opioid MDT II Trust agreed to a new Restructuring Agreement that changed the original funding terms and liabilities, so that the Trust would only receive one more payment from the Debtors, instead of the seven that were originally contemplated. As part of the Restructuring Agreement, the Debtors voluntarily refiled for bankruptcy on August 27, 2023. Under this new Restructuring Agreement, the Trust received one final payment of approximately $24,812,500 on August 29, 2023 to compensate approved claimants after paying administrative expenses.

## Note 2.    Significant Accounting Policies

### Basis of Presentation

The Trust's financial statements are prepared using the modified cash basis of accounting, whereby cash receipts and disbursements are recorded as cash is received or paid, except for the recognition of changes in the fair value of investments and certain accounts payable. Trust receivables, estimated claims liabilities, and claim receivables arising from claim overpayments, if any, which are material to the determination of financial position and results of operations, in conformity with accounting principles generally accepted in the United States of America, have not been estimated and are not recorded in the accounts of the Trust. Accordingly, the financial statements – modified cash basis do not and are not intended to present financial position and results of operations in conformity with accounting principles generally accepted in the United States of America. Additionally, a statement of cash flows has not been included.

### Use of Estimates

The preparation of financial statements in conformity with the basis of accounting described above requires the Trustee to make various estimates that affect the reported amounts of assets and liabilities, disclosures of contingent assets and liabilities, as well as the reported amounts of revenues collected and claims and expenses paid. Actual results could differ from those estimates.

### Cash and Cash Equivalents

Cash and cash equivalents include short-term, highly-liquid investments both readily convertible to known amounts of cash or so near maturity at acquisition (three months or less) that there is an insignificant risk of change in value because of change in interest rates. Cash equivalents are stated at cost, which approximates fair value.

### Investments

Investments are recorded at fair value as determined by quoted market prices. Changes in unrealized gains and losses, if any, are shown as noncash items in the statements of revenue collected, claims and expenses paid, and changes in trust balance - modified cash basis. Realized gains and losses are computed under the specific identification method.

### Accounts Payable

Accounts payable consist of certain Trustee and Claims Administrator fees, general and administrative expenses, and professional fees charged to the Trust during the year and paid after year-end. Accounts payable includes approximately $100,000 and $155,000 payable to the Trustee and Claims Administrator as of December 31, 2023 and 2022, respectively.

**The Mallinckrodt Opioid Personal Injury Trust**
**Notes to Financial Statements - Modified Cash Basis**
**December 31, 2023 and 2022**

*Tax Status*

The Trust maintains that, for federal income tax purposes, it is a Qualified Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), due to its having been established pursuant to a Court Order to satisfy certain legal claims, with all of its assets having been segregated from the assets of the Debtors to whom these claims relate. As provided by Treasury Regulations promulgated under Section 468B of the Code, the "modified gross income" of the Trust is subject to federal income tax up to the maximum trust rate in effect under Section 1(e) of the Code, which was 37% for the 2023 and 2022 tax years. Modified gross income is gross income computed with several modifications. Amounts transferred to the Trust by, or on behalf of, the Debtors are generally excluded from Trust income. In addition, payments of Plaintiff attorney fees or claimant claims made against the Trust and expenses incurred by, or on behalf of, specific claimants or Debtors are generally not deductible in computing modified gross income for federal income tax purposes. The Trust is required to operate on a calendar year basis and under the accrual method of accounting for federal income tax purposes. At December 31, 2023 and 2022, the Trust had a net operating loss carryforward approximating $11,900,000 and $7,900,000 for federal income tax purposes. Net operating loss carryforwards will begin to expire in 2033.

The Trust has adopted authoritative guidance on accounting for uncertainty in income taxes. The guidance clarifies the accounting for the recognition and measurement of the benefits of individual tax positions in the financial statements - modified cash basis. Tax positions must meet a recognition threshold of more likely than not in order for the benefit of those tax positions to be recognized in the Trust's financial statements - modified cash basis. The Trust has determined that it does not have any material unrecognized tax benefits or obligations as of December 31, 2023 and 2022. The Trust has identified its federal tax return and its state tax return in Alabama as major tax jurisdictions, as defined.

The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments. The income taxes associated with gains on investments will be recorded in the Trust's financial statements - modified cash basis when the net gains are realized (i.e. the securities are sold) and the income taxes payable become currently payable.

*Subsequent Events*

The Trust has evaluated the effect subsequent events would have on the financial statements - modified cash basis through June 20, 2024, which is the date the financial statements - modified cash basis were available to be issued.

The Trust began issuing claimant payments during the First Quarter of 2024, with the Trust issuing over $4,200,000 in such claimant payments through the date of this report.

## Note 3.   Fair Value Measurements

Authoritative guidance establishes a fair value hierarchy that prioritizes the inputs to valuation techniques used to measure fair value. The hierarchy gives the highest priority to unadjusted quoted prices in active markets for identical assets or liabilities (Level 1 measurements) and the lowest priority to unobservable inputs (Level 3 measurements). The three levels of fair value hierarchy under authoritative guidance are as follows:

**Level 1**   Inputs that reflect unadjusted quoted prices in active markets for identical assets or liabilities that the Trust has the ability to access at the measurement date;

**Level 2**   Inputs other than quoted prices that are observable for the asset or liability either directly or indirectly, including inputs in markets that are not considered to be active;

**The Mallinckrodt Opioid Personal Injury Trust**
**Notes to Financial Statements - Modified Cash Basis**
**December 31, 2023 and 2022**

**Level 3**    Inputs that are unobservable.

In accordance with the requirements of authoritative guidance, the Trust has categorized its financial instruments based on the priority of the inputs to the valuation technique based on the three-level hierarchy. The following table presents the financial assets carried on the statements of assets, liabilities, and trust balance - modified cash basis by level within the valuation hierarchy as of December 31, 2022:

|  | Financial Assets at Fair Value | | | |
|  | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|
| U.S. Treasury Securities | $ 29,982,455 | $           - | $           - | $ 29,982,455 |

No such financial assets were held by the Trust as of December 31, 2023.

## Note 4.    Commitments and Contingencies

### Cash Balances in Excess of FDIC Insurance

The Trust maintains cash in demand deposit accounts with federally insured banks. At times, the balances in these accounts may be in excess of the federally insured limits of $250,000 per federally insured bank.

### Funding Sufficiency

No future cash fundings will be received from Mallinckrodt PLC. Due to the Debtors' deteriorating financial situation since emerging from bankruptcy in June 2022, the seven additional payments to the Trust under the original funding terms were cancelled, and the Debtors and the Opioid MDT II Trust agreed to a new Restructuring Agreement that changed the original funding terms and liabilities, so that the Trust would only receive one more payment from the Debtors, instead of the seven that were originally contemplated. As part of the Restructuring Agreement, the Debtors voluntarily refiled for bankruptcy on August 27, 2023.

Under this new Restructuring Agreement, the Trust received one final payment of approximately $24,812,500 on August 29, 2023, to compensate approved claimants after paying administrative expenses. Therefore, the total contributions received by the Trust from the Debtors approximated $62,391,000, instead of the original $170,710,000 that was to be received under the original Restructuring Agreement. Thus, the amount of funding available to pay claimants and expenses of the Trust are limited to the aforementioned amounts received from the Debtor, plus additional amounts, if any, distributed from the Opioid MDT II Trust. In the year ended December 31, 2023, the Trust received approximately $360,000 from the Opioid MDT II Trust. Per the terms of the Trust, the Trustee has the ability to establish and change payment amounts based on the number of claimants and amount of remaining funding available.

The Trust may receive additional payments from the Opioid MDT II Trust's pursuit of other assets, like insurance, but the amount to be received, if any, is impossible to predict and is unknown.