**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALLINCKRODT PLC, *et al.*,[1] | ) | Case No. 20-12522 (JTD) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**Objection Deadline: November 12, 2024 at 4:00 p.m. (ET)**
**Hearing Date: November 19, 2024 at 1:00 p.m. (ET)**

**MOTION OF GENERAL UNSECURED CLAIMS TRUSTEE
FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING
SETTLEMENT AGREEMENTS BETWEEN (1) THE GENERAL
UNSECURED CLAIMS TRUSTEE AND THE ACTHAR
INSURANCE  CLAIMANTS AND (2) THE GENERAL UNSECURED
CLAIMS TRUSTEE AND THE EXPRESS SCRIPTS ENTITIES**

Heather L. Barlow, solely in her capacity as the Trustee (the " GUC Trustee")[2] of the

Mallinckrodt General Unsecured Claims Trust (the "GUC Trust" and, together the with the GUC

Trustee, the "Trust Parties"), by and through her undersigned counsel, respectfully submits this

motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form

attached hereto as **Exhibit A**, authorizing and approving (1) a Settlement Agreement and Mutual

Release (the "Acthar Insurance Claimants Settlement Agreement") between the GUC Trustee, on

behalf of the GUC Trust, and Attestor Limited, on behalf of itself and its affiliated entities,

including Avon Holdings I LLC ("Avon," and together with Attestor Limited and its affiliated

---

[1] A complete list of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of the Reorganized Debtors' claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt.  The Reorganized Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] Capitalized terms used herein without definition shall have the meaning ascribed to them in the *General Unsecured Claims Trust Agreement* (the "Trust Agreement"), dated as of June 16, 2022, between the GUC Trustee and the Reorganized Debtors or the *Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I.6660-1] (the "Mallinckrodt I Plan"), as applicable.

entities, "Attestor"), and Humana, Inc. ("Humana," and together with Attestor, the "Acthar Insurance Claimants"); and (2) a Settlement Agreement and Mutual Release (the "Express Scripts Settlement Agreement" and collectively with the Acthar Insurance Claimants Settlement Agreement, the "Settlement Agreements") among the GUC Trustee, on behalf of the GUC Trust, Mallinckrodt plc, on behalf of itself and each of the Reorganized Debtors (defined below) in the chapter 11 cases captioned *In re Mallinckrodt PLC, et al.*, Case No. 20-12522 (JTD), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and Evernorth Health Inc. f/k/a Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc. d/b/a/ CuraScript SP Specialty Pharmacy, Priority Healthcare Corp., Priority Healthcare Distribution, Inc. d/b/a CuraScript SD Specialty Distribution, Accredo Health Group, Inc., and United BioSource LLC (collectively, the "Express Scripts Entities").

The Trust Parties, the Reorganized Debtors, the Acthar Insurance Claimants, and the Express Scripts Entities are collectively referred to herein as the "Parties" and each individually as a "Party").  In support of this Motion, the GUC Trustee respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1.    By this Motion, the GUC Trustee seeks authority to enter into the Settlement Agreements with the Acthar Insurance Claimants and the Express Scripts Entities. These Settlement Agreements fully and finally resolve all of the General Unsecured Claims of the Acthar Insurance Claimants' and Express Scripts Entities (collectively, the "Disputed General Unsecured Claims").

2.    The Acthar Insurance Claimants filed approximately 160 general unsecured proofs of claim collectively seeking over $331,000,000,000, plus additional

---

[3] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

unliquidated amounts.  Under the proposed settlement, the Acthar Insurance Claimants will receive two Allowed General Unsecured Claims in the collective amount of $4,000,000, and their remaining general unsecured claims will be expunged and disallowed, subject to the terms of the Acthar Insurance Claimants Settlement Agreement.

3.    The Express Scripts Entities filed two general unsecured proofs of claim, each in an unliquidated amount.  Under the proposed settlement, the Express Scripts Entities will receive one general unsecured claim allowed in the amount of $2,700,000, and the remaining general unsecured claim will be expunged and disallowed, subject to the terms of the Express Scripts Entities Settlement Agreement.

4.    Because, as discussed below, the total amount of Allowed Acthar Claims will be less than $7,500,000.00, the Acthar Insurance Claimants' Pro Rata Share of the Acthar Claims recovery on account of their allowed general unsecured claims will entitle them to payment in the total amount of $4,000,000, and the Express Scripts Entities' Pro Rata Share of the Acthar Claims recovery on account of their allowed general unsecured claims will entitle them to payment in the total amount of $2,700,000.  Because these claims, together with the other Allowed Acthar Claims, total less than $7.5 million, no other holders of General Unsecured Claims will be diluted by these claims.

5.    Pursuant to the Trust Agreement, the GUC Trustee is required to seek the Bankruptcy Court's approval of settlements of general unsecured claims of any General Unsecured Claim proposed to be allowed (as defined in the Bankruptcy Code) in an amount in excess of $1,000,000.

6.    The GUC Trustee believes that the amounts asserted in the Disputed General Unsecured Claims are meritless and unlikely to be allowed and would vigorously

3

contest such claims during the claims-administration process.  At the same time, the claimants assert that the amounts asserted in the Disputed General Unsecured Claims are likely to be allowed in significantly higher amounts than are being agreed to in the Settlement Agreements, and they have indicated that if those claims were litigated rather than compromised, they would vigorously pursue the claims.   Given the history of the litigation and the technical nature of the claims presented, the litigation costs associated with the Disputed General Unsecured Claims would be substantial, and the cost of the potential litigation over the Disputed General Unsecured Claims was the primary consideration of the GUC Trustee in connection with the proposed settlements.  Absent the compromises set forth in the Settlement Agreements, the GUC Trustee would be required to engage in expensive and time-consuming litigation in connection with the Disputed General Unsecured Claims.

7.      For the reasons set forth below, the GUC Trustee submits that the settlement comports with the *Martin* factors (discussed below) and is fair, reasonable, and in the best interests of the GUC Trust and its stakeholders, as well as the Reorganized Debtors and their estates and their stakeholders.[4]  Accordingly, the GUC Trustee respectfully requests that the Motion be granted in all respects.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[4] Since her appointment, the GUC Trustee has worked cooperatively with the Reorganized Debtors to review and analyze claims and to work to resolve them where possible, in the interests of all stakeholders.

10.     Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

11.     The statutory and legal predicates for the relief requested are sections 105(a) and 502 of the Bankruptcy Code (as defined below) and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12.     Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Parties consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A.     The 2020 Chapter 11 Cases

13.     On October 12, 2020 (the "Petition Date"), Mallinckrodt plc and its affiliated debtors (collectively, the "Mallinckrodt Entities") commenced voluntary cases ("Mallinckrodt 1" and the Mallinckrodt Entities, for purposes of Mallinckrodt 1, the "Mallinckrodt 1 Debtors") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

14.     Following the Petition Date, the Mallinckrodt 1 Debtors operated their businesses as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

15.     On October 14, 2020, the Bankruptcy Court entered an order authorizing the joint administration of Mallinckrodt 1 for procedural purposes only pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1 [D.I. 210].

16.     On November 30, 2020, the Bankruptcy Court entered an *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [D.I. 667], setting the general bar date in Mallinckrodt 1 as February 16, 2021, and the bar date for governmental entities as April 12, 2021.

17.     On February 3, 2022, the Court confirmed the *Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [D.I. 6066] (as further modified, the "Mallinckrodt 1 Plan") [D.I. 6347, modified at 6378].  On March 2, 2022, the Court entered its *Finding of Facts, Conclusions of Law, and Order Confirming the Fourth Amended Joint Plan of Reorganization (with technical modifications) of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. No. 6660] (the "Mallinckrodt 1 Confirmation Order") confirming the Mallinckrodt 1 Plan.

18.     On June 8, 2022, the Court entered the *Order (I) Authorizing Modification of the Debtors' Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code, (II) Determining that Further Disclosure and Resolicitation of Votes Are Not Required (III) Deeming the Amended Plan as Accepted, and (IV) Granting Such Other Relief as the Court Deems Just and Proper* [D.I. No. 7602] (the "Mallinckrodt 1 Plan Modification Order") authorizing certain modifications to the Mallinckrodt 1 Plan as reflected therein.  Pursuant to the Mallinckrodt 1

Plan Modification Order, the Mallinckrodt 1 Confirmation Order was made applicable to the Mallinckrodt 1 Plan, as modified.

19.    Among other things, the Mallinckrodt 1 Plan contemplated the creation of the GUC Trust, a trust for the benefit of certain general unsecured creditors.  The Mallinckrodt 1 Plan also incorporated the UCC Settlement, which was memorialized on the docket in Mallinckrodt 1 on September 2021 at D.I. 4121, and provides for, among other things: (i) the distribution of certain cash and non-cash consideration to Class 6 creditors via the GUC Trust, a portion of which was distributed to the GUC Trust on the Effective Date of the Mallinckrodt 1 Plan (as further described in the Mallinckrodt 1 Plan, the "Initial Fixed Distribution"), and (ii) an allocation of that consideration among the Class 6 subclasses, including the Class 6(a) – Acthar Claims subclass.  *See* Mallinckrodt 1 Plan at § III.B.6, Exhibit 6.  The Mallinckrodt 1 Plan further provided for the assumption by the GUC Trust of certain Class 6 and Class 7 Claims, and, in connection therewith, the authority to resolve all such Claims.  *Id*. at § IV.HH.1.

20.    Pursuant to the Mallinckrodt 1 Plan and the UCC Settlement, $7.5 million of the Initial Fixed Distribution under the Mallinckrodt 1 Plan was earmarked for holders of Allowed Class 6(a) General Unsecured Claims (as defined in the Mallinckrodt 1 Plan, the "Acthar Claims Recovery").  *See id.* §§ I.29, III.B.6, Exhibit 6.  The Mallinckrodt 1 Plan provides for pro rata sharing of the Acthar Claims Recovery among holders of Allowed Class 6(a) Claims "[e]xcept to the extent that a Holder of an Allowed Acthar Claim agrees to less favorable treatment." *Id.*, § III.B.6(a).

21.    The Mallinckrodt 1 Plan became effective on June 16, 2022 (the "Effective Date").  Simultaneously therewith, the GUC Trust was formed and Heather L. Barlow was appointed as the GUC Trustee.

22.     The Trust Agreement was filed on June 22, 2022, as Exhibit G to the

Twentieth Plan Supplement to the Mallinckrodt 1 Plan [D.I. 7684-7].[5]

## B.     The GUC Trustee's Rights and Obligations

23.     Pursuant to the Trust Agreement, the GUC Trustee is responsible for

"administering, disputing, compromising and settling or otherwise resolving and finalizing

payments or other distributions with respect to Holders of General Unsecured Claims that are

General Unsecured Claims Trust Beneficiaries under the [Mallinckrodt 1] Plan."  Trust

Agreement, § 4.11.1.

24.     The Trust Agreement also provides the GUC Trustee the power to

"review, reconcile, allow, object to, compromise, settle and withdraw objections to General

Unsecured Claims."  *Id.*, § 3.1.4.

25.     The Acthar Claims Recovery is to be administered by the GUC Trustee.

*See id.*, § 4.11.1 (granting the GUC Trustee "the responsibility and authority for administering,

disputing, compromising and settling or otherwise resolving and finalizing payments or other

distributions with respect to Holders of General Unsecured Claims that are General Unsecured

Claims Trust Beneficiaries under the [Mallinckrodt 1] Plan").

26.     Since the Effective Date, the GUC Trustee and her professionals have

been reviewing, comparing, and reconciling proofs of claim (including any supporting

documentation) with the Mallinckrodt Entities' Schedules and their books and records.  Among

---

[5] *See* Notice of Filing of <u>Exhibit A</u> (Management Incentive Plan), <u>Exhibit B</u> (Executed Opioid MDT II Documents and Opioid Creditor Trust Documents), <u>Exhibit C</u> (Executed MNK Opioid Abatement Fund, LLC Limited Liability Company Operating Agreement), <u>Exhibit D</u> (Tribal Opioid Abatement Fund, LLC Limited Liability Company Operating Agreement), <u>Exhibit E</u> (Executed New Opioid Warrant Agreement), <u>Exhibit F</u> (Executed Opioid Registration Rights Agreement), <u>Exhibit G</u> (Executed General Unsecured Claims Trust Agreement), and <u>Exhibit H</u> (Executed Asbestos Trust Documents) of the Twentieth Plan Supplement for the Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [D.I. 7684].

other things, the GUC Trustee has filed several omnibus objections to claims, resulting in several hundred claims being expunged from the claims register, including, among other things, Acthar Claims.

### C.   Mallinckrodt 2

27.     On August 28, 2023, the Mallinckrodt Entities commenced chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Mallinckrodt 2").

28.     On October 10, 2023, the Bankruptcy Court entered a confirmation order in Mallinckrodt 2.  *See* Order Approving (I) the Disclosure Statement and (II) Confirming the First Amended Prepackaged Joint Plan of Reorganization of Mallinckrodt PLC and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code [Case No. 23-11258, D.I. 522] (the "Mallinckrodt 2 Confirmation Order").

29.     Pursuant to the *First Amended Prepackaged Joint Plan of Reorganization of Mallinckrodt plc and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* filed in the 2023 Cases (the "Mallinckrodt 2 Plan") [Case No. 23-11258, D.I. 452], holders of General Unsecured Claims (as defined therein) are "Unimpaired", or not "'impaired' within the meaning of sections 1123(a)(4) and 1124 of the [United States] Bankruptcy Code."  Mallinckrodt 2 Plan, §I.A.  Accordingly, the rights of the GUC Trust, the GUC Trustee, and the holders of general unsecured claims in the above-captioned cases were unaffected by Mallinckrodt 2.  *See also* Mallinckrodt 2 Confirmation Order, ¶ 57 (stating that "all of the rights, claims, and interests of the General Unsecured Claims Trust . . . shall be unaltered and unimpaired . . . and shall remain enforceable in their entirety").

4866-8090-2345.7 54469.001

30.     The Mallinckrodt 2 Plan became effective on November 14, 2023 [Case No. 23-11258, D.I. 654].  Since the effective date of the Mallinckrodt 2 Plan, the Mallinckrodt Entities continue to do business as reorganized business entities (collectively, the "Reorganized Debtors").

31.     The GUC Trustee, and the beneficiaries of the GUC Trust, including holders of Allowed Generics Price Fixing Claims, continue to be governed by the Mallinckrodt 1 Confirmation Order, the Mallinckrodt 1 Plan, and the General Unsecured Claims Trust Documents.

**D.      Administration of the Acthar Claims**

32.     On April 20, 2023, the GUC Trust filed the *General Unsecured Claims Trustee's Third Omnibus Objection to Certain No Liability/No Supporting Documentation Claims (Non-Substantive)* [D.I. 8671], seeking the expungement of over 100 claims, including certain Acthar Claims that were filed without supporting documentation.  On May 23, 2023, the Bankruptcy Court entered an *Order Sustaining General Unsecured Claims Trustee's Third Omnibus Objection to Certain No Liability/No Supporting Documentation Claims (Non-Substantive)* [D.I. 8786], as amended by order entered May 30, 2023 [D.I. 8792], resulting in those claims being expunged.

33.     On July 28, 2023, the GUC Trust filed the *General Unsecured Claims Trustee's Fifth Omnibus Objection to Certain Claims (Late Filed Claims and Certain No Liability/No Supporting Documentation Claims)* [D.I. 8902], seeking the expungement of over 70 late-filed or unsupported claims, including certain Acthar Claims.  On August 16, 2023, the Bankruptcy Court entered an *Order Sustaining General Unsecured Claims Trustee's Fifth*

*Omnibus Objection to Certain Claims (Late Filed Claims and Certain No Liability/No Supporting Documentation Claims)* [D.I. 8927], resulting in the expungement of these Claims.

34.     On February 13, 2024, the GUC Trust filed the *General Unsecured Claims Trustee's Seventh Omnibus Objection to Certain No Liability/No Supporting Documentation Claims and Certain Late Filed Claims* [D.I. 9030], seeking the expungement of over 30 late-filed or unsupported claims, including certain Acthar Claims.  On March 5, 2024, the Bankruptcy Court entered an *Order Sustaining General Unsecured Claims Trustee's Seventh Omnibus Objection to Certain No Liability/No Supporting Documentation Claims and Certain Late Filed Claims* [D.I. 9052] resulting in the expungement of these Claims.

35.     The GUC Trustee has separately reached consensual settlements with the remaining holders of Acthar Claims (other than the Acthar Insurance Claimants and the Express Scripts Entities whose Acthar Claims are the subject of this Motion) that timely filed proofs of claim in Mallinckrodt 1 of which she is aware.

36.     Accordingly, the GUC Trustee believes that all known Acthar Claims that are not addressed by the relief sought in this Motion have been addressed through settlement or objection.  Nevertheless, the GUC Trustee has sought to ensure broad notice of this Motion.

E.     **The Acthar Insurance Claimants Proofs of Claim**

37.     On or about February 12, 2021, Humana filed with the Bankruptcy Court (i) proof of claim number 3133 ("<u>Claim No. 3133</u>") against Mallinckrodt plc as a general unsecured, non-priority claim in an unliquidated amount and (ii) proof of claim number 3396 ("<u>Claim No. 3396</u>" and together with Claim No. 3133, the "<u>Humana Claims</u>") against Mallinckrodt ARD LLC ("<u>Mallinckrodt ARD</u>") as a general unsecured, non-priority claim in an unliquidated amount, which Humana Claims purport to arise out of the action captioned

4866-8090-2345.7 54469.001

*Humana, Inc. v. Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc., f/k/a Questor Pharmaceuticals, Inc.)*, Case No. 2:19-cv-06926-DSF-MRW, in the United States District Court for the Central District of California, which was later transferred to the United States District Court for the District of Delaware, in an action captioned *Humana, Inc. v. Mallinckrodt ARD LLC (f/k/a Mallinckrodt ARD Inc., f/k/a Questor Pharmaceuticals, Inc.)*, Case No. 21-924-LPS, and then subsequently referred to the Bankruptcy Court, as an adversary proceeding captioned *Humana Inc. v. Mallinckrodt ARD LLC (In re Mallinckrodt plc, et al.)*, Adv. Proc. No. 21-51008 (JTD), which adversary proceeding was ultimately closed on March 2, 2023.

38.      On or about February 15, 2021, United Healthcare Services, Inc. ("United Healthcare") filed with the Bankruptcy Court (i) proof of claim number 4169 ("Claim No. 4169") against Mallinckrodt plc as a general unsecured non-priority claim in an unliquidated amount and (ii) proof of claim number 4378 ("Claim No. 4378" and together with Claim No. 4169, the "United Healthcare Claims") against Mallinckrodt ARD as a general unsecured non-priority claim in an unliquidated amount.

39.      On or about February 16, 2021, OptumRx Group Holdings, Inc. and OptumRx Holdings, LLC (collectively, "OptumRx") filed with the Bankruptcy Court (i) proof of claim number 5012 ("Claim No. 5012") against Mallinckrodt ARD as a general unsecured non-priority claim in an unliquidated amount and (ii) proof of claim number 5685 ("Claim No. 5685" and together with Claim No. 5012, the "OptumRx Claims") against Mallinckrodt plc as a general unsecured non-priority claim in an unliquidated amount.

40.      On or about May 14, 2021, the United Healthcare Claims and the OptumRx Claims were transferred to Avon, which transfers were noticed pursuant to the

*Transfer of Claim Other Than For Security* [D.I. No. 2317] filed with the Bankruptcy Court on that date.

41.     On or about February 15, 2021, Aetna Inc. filed with the Bankruptcy Court proof of claim number 6136 against Mallinckrodt plc as a general unsecured non-priority claim in an unliquidated amount (the "Aetna Claim").

42.     On or about September 10, 2021, the Aetna Claim was transferred to Avon, which transfer was noticed pursuant to the *Partial Transfer of Claim Other Than For Security* [D.I. No. 4237] filed with the Bankruptcy Court on that date.

43.     CVS Pharmacy, Inc. filed with the Bankruptcy Court the proofs of claim identified on **Schedule 1** annexed to the Acthar Insurance Claimants Settlement Agreement (collectively the "CVS Schedule 1 Claims" and filed with the Bankruptcy Court the proofs of claim identified on **Schedule 2** annexed to the Acthar Insurance Claimants Settlement Agreement to amend the CVS Schedule 1 Claims (collectively, the "CVS Schedule 2 Claims," and together with the Humana Claims, the United Healthcare Claims, the OptumRx Claims, the Aetna Claim, and the CVS Schedule 1 Claims, the "Attestor GUC Claims").[6]

**F.      The Express Scripts Entities Proofs of Claim**

44.     On or about February 15, 2021, the Express Scripts Entities filed claim number 4197 ("Claim No. 4197") against Debtor Mallinckrodt ARD LLC ("Mallinckrodt ARD") as a general unsecured claim in an unliquidated amount, and on or about February 15, 2021, the Express Scripts Entities filed claim number 4510 ("Claim No. 4510" and collectively with Claim No. 4197, the "Express Scripts GUC Claims") against Debtor Mallinckrodt plc as a general

---

[6] On or about July 15, 2021, the CVS Schedule 2 Claims were transferred to Avon, which transfers were noticed pursuant to the *Transfer of Claim Other Than For Security* filed with the Bankruptcy Court on that date [D.I. No. 3246]

unsecured claim in an unliquidated amount.  In the Express Scripts GUC Claims, the Express

Scripts Entities seek indemnification in connection with certain litigation against, among others,

the Express Scripts Entities and certain of the Debtors in which the plaintiffs in those litigations

assert, *inter alia*, claims for RICO, violations of the Sherman Act, and conspiracy, all allegedly

arising out of the sale of Acthar.[7]

### G.    The Acthar Insurance Claimants Settlement Agreement

45.    On October 24, 2024, the Acthar Insurance Claimant Settlement Parties

executed the Settlement Agreement attached as **Exhibit 1** to the Proposed Order.

46.    In the Acthar Insurance Claimants Settlement Agreement, the parties have

agreed to resolve the Attestor GUC Claims on the following terms, among others:[8]

- **Allowance of Claim Nos 4378 and 3396**.  Upon the Effective Date, (a) Claim No. 4378 shall be allowed as a general unsecured, non-priority Class 6(a) claim against Mallinckrodt ARD in the amount of $108,969.00 and (b) Claim No. 3396 shall be allowed as a general unsecured non-priority Class 6(a) claim against Mallinckrodt ARD in the amount of $3,891,031.00 (the total amount of allowed claims set forth in Paragraph 2 of the Acthar Insurance Claimants Settlement Agreement shall be referred to as the "Acthar Insurance Claimants Allowed GUC Amount") and shall be treated as Class 6(a) — Acthar Claims such that in accordance with the terms of the Mallinckrodt 1 Plan, the Acthar Insurance Claimants shall be entitled to receive their Pro Rata Share of the Acthar Claims Recovery on account of the Acthar Insurance Claimants Allowed GUC Amount, which total Pro Rata Share shall be four million dollars ($4,000,000).

- **Disallowance of All Other Attestor GUC Claims**.  Upon the Effective Date, all of Attestor GUC Claims other than Claim Nos. 4378 and  3396 shall be deemed expunged and disallowed.  Upon the Effective Date, the Notice and Claims Agent

---

[7] In addition, on or about June 28, 2021, the Express Scripts Entities filed claim number 50995 ("Claim No. 50995") against Debtor Mallinckrodt plc as an administrative expense claim in an unliquidated amount, and on or about June 28, 2021, the Express Scripts Entities filed claim number 51056 (collectively with Claim No. 50995, the "Express Scripts Administrative Expense Claims") against Debtor Mallinckrodt ARD.  The Express Scripts Administrative Expense Claims also seek indemnification in connection with the above-referenced litigations.

[8] This summary of the Acthar Insurance Claimants Settlement Agreement is subject to the full terms of and conditions of the Acthar Insurance Claimants Settlement Agreement.  Any inconsistency between this summary and the Acthar Insurance Claimants Settlement Agreement shall be governed by and construed consistent with the Acthar Insurance Claimants Settlement Agreement.  Capitalized terms in this summary have the meaning set forth in the Acthar Insurance Claimants Settlement Agreement.

will be authorized to revise the Claims Register to reflect the terms of Paragraph 2 of the Acthar Insurance Claimants Settlement Agreement.

- **Release of the Acthar Insurance Claimants**.  Upon the Effective Date, and except for the obligations and agreements set forth in Acthar Insurance Claimants Settlement Agreement, the General Unsecured Claims Trustee, on behalf of herself and the General Unsecured Claims Trust, shall release, acquit and forever discharge each of the Acthar Insurance Claimants and each of their respective past and present parents, affiliates, subsidiaries, officers, directors, partners, principals, agents, servants, employees, representatives, affiliates, heirs, successors, and attorneys from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, or which may become known at a later date, fixed or contingent, arising out of or related to the Claims.  For the avoidance of doubt, the Trust Parties are not releasing any parties from any breach of contract claims arising from ordinary course transactions that are unrelated to the facts underlying the Attestor GUC Claims.

- **Release of GUC Trust and GUC Trustee**. Upon the Effective Date, and except for the obligations and agreements set forth in the Acthar Insurance Claimants Settlement Agreement, the Attestor Insurance Claimants shall each release, acquit and forever discharge each of the Trust Parties and each of their respective past and present parents, affiliates, subsidiaries, officers, directors, partners, principals, agents, servants, employees, representatives, affiliates, advisors, and attorneys from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, or which may become known at a later date, fixed or contingent, that arose or existed prior to the Petition Date.

47.    The Acthar Insurance Claimants Settlement Agreement provides that it will not become effective until an order entered by the Bankruptcy Court granting this Motion becomes final and non-appealable.

## H.    The Express Scripts Entities Settlement Agreement

48.    On October 29, 2024, the Express Scripts Settlement Parties executed the Express Scripts Settlement Agreement attached as **Exhibit 2** to the Proposed Order.

15

49.     In the Express Scripts Settlement Agreement, the parties have agreed to resolve the Express Scripts GUC Claims on the following terms, among others:[9]

- **Allowance of Claim No. 4510**.  Upon the Effective Date, Claim No. 4510 shall be allowed as a general unsecured, non-priority Class 6(a) claim against Mallinckrodt ARD in the amount (the "Express Scripts Entities Allowed GUC Amount") of two million seven hundred thousand dollars ($2,700,000) and shall be treated as a Class 6(a) — Acthar Claim such that in accordance with the terms of the Mallinckrodt 1 Plan, the Express Scripts Entities shall be entitled to receive their Pro Rata Share of the Acthar Claims Recovery on account of the Express Scripts Entities Allowed GUC Amount, which Pro Rata Share shall be two million seven hundred thousand dollars ($2,700,000) in cash.

- **Disallowance of Claim No. 4197**.  Upon the Effective Date, Claim No. 4197 shall be deemed expunged, and disallowed as duplicative of Claim 4510 in all respects.  Upon the Effective Date, the Notice and Claims Agent will be authorized to revise the Claims Register to reflect the terms of Express Scripts Entities Settlement Agreement. Notwithstanding the foregoing and for the avoidance of doubt, nothing in the Express Scripts Settlement Agreement is intended to allow, disallow, expunge, or otherwise affect the Express Scripts Administrative Expense Claims, and the parties to that Agreement expressly reserve and preserve all rights regarding the Express Scripts Administrative Expense Claims.

- **Release of the Express Scripts Entities**.  As of the Effective Date, and except for the obligations and agreements set forth in the Express Script Settlement  Agreement, the General Unsecured Claims Trustee, on behalf of herself and the GUC Trust, and Mallinckrodt plc on behalf of itself and each of the Reorganized Debtors and their estates (collectively, the "Mallinckrodt Parties") shall release, acquit and forever discharge the Express Scripts Entities and their past and present officers, directors, partners, principals, agents, servants, employees, representatives, affiliates, and attorneys (collectively, the "Express Scripts Releasees") from any and all claims, actions, causes of action, obligations, liabilities, judgments, suits, debts, attorneys' fees, costs, sums of money, benefits of any type, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever in law, or in equity, relating to the Express Scripts GUC Claims that arose or existed prior to the Petition Date, that any of the Mallinckrodt Parties or their respective administrators, successors, affiliates or assigns, has ever had or now has against the Express Scripts Releasees each in their capacity as such from the beginning of the world to the Effective Date.

---

[9] This summary of the Express Scripts Entities Settlement Agreement is subject to the full terms of and conditions of the Express Scripts Entities Settlement Agreement.  Any inconsistency between this summary and the Settlement Agreement shall be governed by and construed consistent with the Settlement Agreement.  Capitalized terms in this summary have the meaning set forth in the Settlement Agreement.  Defined terms in this description not otherwise defined herein shall have the meanings set forth in the Express Scripts Entities Settlement Agreement.

4866-8090-2345.7 54469.001

- **Release of the Mallinckrodt Parties**.  As of the Effective Date, and except for the obligations and agreements set forth in the Express Scripts Settlement Agreement, each Express Scripts Entity, solely on behalf of itself, shall release, acquit and forever discharge each of the Mallinckrodt Parties and each of their respective past and present officers, directors, members, managers, partners, principals, agents, servants, employees, representatives, affiliates, advisors, and attorneys (collectively, the "Mallinckrodt Releasees") from any and all claims, actions, causes of action, obligations, liabilities, judgments, suits, debts, attorneys' fees, costs, sums of money, benefits of any type, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever in law, or in equity, relating to the Express Scripts GUC Claims that arose or existed prior to Petition Date, that any of the Express Scripts Entities or any of their respective administrators, successors, affiliates or assigns, has ever had or now has against any of the Mallinckrodt Releasees each in their capacity as such from the beginning of the world to the Effective Date.

- **Release of the Trust Parties**.  In addition to the release set forth in bullet above, and except for the obligations and agreements set forth in the Express Scripts Settlement Agreement, each Express Scripts Entity, solely on behalf of itself, shall release, acquit and forever discharge the General Unsecured Claims Trustee (in her capacity as such), the GUC Trust, and the members of the General Unsecured Claims Trust Advisory Committee (in their respective capacities as such) (together, in such capacities, the "GUC Trust Releasees") from any and all claims, actions, causes of action, obligations, liabilities, judgments, suits, debts, attorneys' fees, costs, sums of money, benefits of any type, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever in law, or in equity, that it has ever had or now has against any of the GUC Trust Releasees, each in their capacity as such from the beginning of the world to the Effective Date.  The Express Scripts Entities agree that they will not serve third party discovery on the GUC Trust Releasees, each in their capacity as such, provided, however, and for the avoidance of doubt, nothing in the Express Scripts Entities Settlement Agreement shall impact (i) the rights of the Express Scripts Entities to serve third party discovery in the Acthar Lawsuits (as defined in the Mallinckrodt 1 Plan) on Acument Global Technologies, Inc. ("Acument Global") and Shelley Wagner, except in Ms. Wagner's capacity as a member of the General Unsecured Claims Trust Advisory Committee , and (ii) the rights of Acument Global and Ms. Wagner to the object to any such third-party discovery.

    50.    The Express Scripts Settlement Agreement provides that it will not become effective until an order entered by the Bankruptcy Court granting this Motion becomes final and non-appealable.

**RELIEF REQUESTED**

51.     By this Motion, the GUC Trustee requests the entry of an order, pursuant to sections 105(a) and 502 of the Bankruptcy Code and Bankruptcy Rule 9019, and substantially in the form annexed hereto as **Exhibit A**, (1) authorizing and approving the Acthar Insurance Claimants Settlement Agreement attached thereto as **Exhibit 1** and the settlements contemplated therein, and (2) authorized and approving the Express Scripts Entities Settlement Agreement attached thereto as **Exhibit 2** and the settlements contemplated therein.   The GUC Trustee has determined that the Settlement Agreements resolve the Acthar Insurance Claimants Disputed Unsecured Claims and the Express Scripts Entities Disputed Unsecured Claims in a timely and efficient manner without expending additional estate or trust resources and represent a compromise between the Parties that is fair and reasonable in light of the relevant facts and circumstances.

**BASIS FOR RELIEF REQUESTED**

52.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 502 governs the allowance of prepetition claims.  11 U.S.C. § 502.

53.     Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement to which the debtor is a party and provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the

18

debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

54.     The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted*); see also In re World Health Alts., Inc., 344 B.R. 291, 296* (Bankr. D. Del. 2006) (finding that settlements are "generally favored in bankruptcy"). Furthermore, the decision to accept or reject a compromise or settlement is within the sound discretion of the Bankruptcy Court. *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

55.     In exercising this discretion, courts are not required to be convinced that a proposed settlement is the best possible outcome. *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (citing *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)). Rather, under Bankruptcy Rule 9019, a court "must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018).

56.     Courts consider four factors when evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393. In evaluating these factors, "the settlement need only be 'above the lowest point in the range of reasonableness.'" *TSIC*, 393 B.R. at 79 (quoting *In re Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992)).

57.     The GUC Trustee believe that each of the relevant *Martin* factors set forth above weighs in favor of approving the Settlement Agreements, and that the Settlement Agreements lie well above the lowest point in the range of reasonableness.[10]

58.     ***The Probability of Success in Litigation***.  The GUC Trustee believes that the amounts asserted in the Disputed General Unsecured Claims are meritless and unlikely to be allowed and would vigorously contest such claims during the claims-administration process.  At the same time, the claimants assert that the amounts asserted in the Disputed Unsecured Claims are likely to be allowed in significantly higher amounts than are being agreed to in the Settlement Agreements, and they have indicated that if those claims were litigated rather than compromised, they would vigorously pursue the claims.

59.     The disputes that will be resolved pursuant to the Settlement Agreements carry with them inherent uncertainties and significant expense, and there is no assurance that a better result for the GUC Trust and the Reorganized Debtors and their estates would be achieved through protracted litigation.

60.     Absent the compromises set forth in the Settlement Agreements, there is a chance that the GUC Trustee would engage in expensive and time-consuming litigation in connection with the Disputed General Unsecured Claims and ultimately would not prevail with respect to some or all of them.  While the GUC Trustee does not believe that is likely, the consequences of less than complete success on litigating objections to the Disputed Unsecured Claims could have severe consequences for the GUC Trust, the Reorganized Debtors, and their

---

[10] In addition, as required by the Trust Agreement, the GUC Trustee has consulted with the General Unsecured Claims Trust Advisory Committee (as that term in is defined in the Trust Agreement) concerning the Settlement Agreements.

respective beneficiaries.  The Settlement Agreements eliminate these risks and, accordingly, satisfies this factor.

61.     ***The Complexity of the Litigation and the Attendant Expense, Inconvenience and Delay***.  Litigation pertaining to Disputed General Unsecured Claims is likely to be protracted.  Among other things, litigation relating to the Disputed General Unsecured Claims is likely to require extensive discovery and significant litigation.  Litigating the merits of the Disputed General Unsecured Claims will cause all Parties to expend significant time and resources.

62.     Without the agreement embodied in the Settlement Agreements, the GUC Trustee would be forced to expend substantial resources litigating these disputes (and could potentially delay the conclusion of the chapter 11 cases) to the detriment of creditors and other stakeholders.

63.     ***The Paramount Interests of the Creditors***.  The Settlement Agreement is in the paramount interest of the Debtors' creditors, including the beneficiaries of the GUC Trust, because, as discussed above, approval of the Settlement Agreements would (a) avoid what would certainly be costly and time-consuming litigation, (b) eliminate litigation risk, (c) provide immediate benefits to the Debtors' estates and the GUC Trust through the settlement of the Disputed Unsecured Claims, as provided for in the Settlement Agreements, and (d) enable the Trust to make distributions without having to establish reserves.

64.     In the business judgment of the GUC Trustee, in consultation with the Reorganized Debtors, the value of these benefits exceeds the net benefits that could potentially be obtained through litigation, given the complexities, uncertainties, delays, and costs associated with such litigation.

65.     Based on the foregoing, the GUC Trustee contends that the settlements of the Disputed Unsecured Claims satisfy Bankruptcy Rule 9019, as they are fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  The Settlement Agreements (a) satisfy the *Martin* factors, (b) allow the Parties to completely avoid litigation related to the Disputed Unsecured Claims and any associated costs, risks, and distractions, and (c) preserve the value of the Debtors' estates to maximize the recoveries of the beneficiaries of the General Unsecured Claims Trust and other creditors in these chapter 11 cases.  As such, the GUC Trustee respectfully requests that the Court enter an order approving the Settlement Agreements.

## NOTICE

66.     Notice of this Motion will be provided to (i) the Reorganized Debtors; (ii) counsel for the Acthar Insurance Claimants, (iii) counsel for the Express Scripts Entities, (iv) all other known holders of Class 6(a) General Unsecured Claims whose claims have not been previously withdrawn, satisfied, or disallowed, or deemed withdrawn, satisfied, or disallowed pursuant to a prior consensual resolution, or disallowed or expunged pursuant to an order of this Court, and (v) the parties listed in Local Bankruptcy Rule 2002-1(b). The GUC Trustee submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

67.     No previous request for the relief sought herein has been made by the GUC Trustee to the Bankruptcy Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the GUC Trustee respectfully requests

that the Court (i) grant the relief requested in this Motion and enter the Proposed Order and (ii)

grant such other and further relief as is just and proper.

Dated: October 29, 2024                    PACHULSKI STANG ZIEHL & JONES LLP
Wilmington, Delaware

*/s/ James E. O'Neill*
Debra Grassgreen (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
Beth E. Levine (admitted *pro hac vice*)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:          dgrassgreen@pszjlaw.com
                jmorris@pszjlaw.com
                joneill@pszjlaw.com
                blevine@pszjlaw.com

*Counsel to the GUC Trustee*

4866-8090-2345.7 54469.001