**E**XHIBIT **B**

# National Opioid Abatement Trust II

## Special-Purpose Financial Statements with Supplementary Information
Years Ended December 31, 2024 and 2023


The report accompanying these financial statements was issued by
BDO USA, P.C., a Virginia professional corporation, and the U.S. member
of BDO International Limited, a UK company limited by guarantee.



# National Opioid Abatement Trust II

Special-Purpose Financial Statements
With Supplementary Information
Years ended December 31, 2024 and 2023

# National Opioid Abatement Trust II

## Contents

Independent Auditor's Report    3-5

**Special-Purpose Financial Statements**

Special-Purpose Statements of Assets, Liabilities and Net Assets    7

Special-Purpose Statements of Changes in Net Assets    8

Special-Purpose Statements of Cash Flows    9

Notes to the Special-Purpose Financial Statements    10-13

**Supplementary Information**

Independent Auditor's Report on Supplementary Information    15

Supplementary Schedules of Operating Expenses    16



Tel:  703-770-1079
Fax: 703-893-2766
www.bdo.com

8401 Greensboro Drive, Suite 800
McLean, VA 22102

**Independent Auditor's Report**

Trustees
National Opioid Abatement Trust II
Wilmington, DE

**Opinion**

We have audited the special-purpose financial statements of National Opioid Abatement Trust II (the Trust), which comprise the statements of assets, liabilities and net assets as of December 31, 2024 and 2023, and the related special-purpose statements of changes in net assets and special-purpose statements of cash flows for the year ended December 31, 2024 and December 31, 2023, and the related notes to the special-purpose financial statements.

In our opinion, the accompanying special-purpose financial statements present fairly, in all material respects, the net assets of the Trust as of December 31, 2024 and 2023 and the changes in net assets and cash flows for the year ended December 31, 2024 and December 31, 2023, in accordance with the special-purpose basis of accounting described in Note 2 to the special-purpose financial statements.

*Basis for Opinion*

We conducted our audits in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the *Auditor's Responsibilities for the Audit of the Special-Purpose Financial Statements* section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Emphasis of Matter - Basis of Accounting*

We draw attention to Note 2 of the special-purpose basis financial statements which describes the basis of accounting. As described in Note 2, the accompanying special-purpose financial statements were prepared by the Trust on the special-purpose of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America. The special-purpose basis of accounting has been used in order to present the net assets presently available for current and future claims and operating expenses. As a result, the special-purpose financial statements may not be suitable for another purpose.  Our opinion is not modified with respect to this matter.

*Responsibilities of Management for the Special-Purpose Financial Statements*

Management is responsible for the preparation and fair presentation of the special-purpose financial statements in accordance with the special-purpose of accounting as described in Note 2 to the special-purpose financial statements. Management is also responsible for the design,

BDO USA, P.C., a Virginia professional corporation, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.



implementation, and maintenance of internal control relevant to the preparation and fair presentation of special-purpose financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the special-purpose financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust 's ability to continue as a going concern within one year after the date that the special-purpose financial statements are issued or available to be issued.

***Auditor's Responsibilities for the Audit of the Special-Purpose Financial Statements***

Our objectives are to obtain reasonable assurance about whether the special-purpose financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the special-purpose financial statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the special-purpose financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the special-purpose financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the special-purpose financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.



***Other Matter - Restriction of Use***

Our report is intended solely for the information and use of the Trust and is not intended to be and should not be used by anyone other than the specified party.

***Other Information Included in the Annual Report***

Management is responsible for the other information included in the annual report. The other information comprises the annual report and account of the Trust for the year ended December 31, 2024, but does not include the special-purpose financial statements and our auditor's report thereon. Our opinion on the special-purpose financial statements does not cover the other information, and we do not express an opinion or any form of assurance thereon.

In connection with our audit of the special-purpose financial statements, our responsibility is to read the other information and consider whether a material inconsistency exists between the other information and the special-purpose financial statements, or the other information otherwise appears to be materially misstated. If, based on the work performed, we conclude that an uncorrected material misstatement of the other information exists, we are required to describe it in our report.

*BDO USA, P.C.*

April 23, 2025

# Special-Purpose Financial Statements

# National Opioid Abatement Trust II

## Special-Purpose Statements of Assets, Liabilities and Net Assets

| December 31, | 2024 | 2023 |
|---|---:|---:|
| **Assets** | | |
| Cash and cash equivalents | $ 67,530,640 | $ 74,045,788 |
| Interest receivable | 245,356 | 328,027 |
| Funding receivable | - | - |
| Prepaid expense | 138,553 | 178,738 |
| **Total assets** | 67,914,549 | 74,552,553 |
| **Liabilities** | | |
| Accounts payable | 68,570 | 141,002 |
| **Total liabilities** | 68,570 | 141,002 |
| **Net assets** | $ 67,845,979 | $ 74,411,551 |

*See accompanying notes to the special-purpose financial statements.*

## National Opioid Abatement Trust II

### Special-Purpose Statements of Changes in Net Assets

| Year ended December 31, | | 2024 | | 2023 |
|---|---|---:|---|---:|
| **Additions** | | | | |
| Funding | $ | - | $ | 176,586,178 |
| Interest income | | 3,451,417 | | 5,548,798 |
| **Total additions** | | 3,451,417 | | 182,134,976 |
| **Deductions** | | | | |
| Operating expenses | | 1,790,451 | | 2,830,876 |
| Opioid claims | | 8,226,538 | | 278,906,196 |
| **Total deductions** | | 10,016,989 | | 281,737,072 |
| **(Decrease) increase in net assets** | | (6,565,572) | | (99,602,096) |
| **Net assets** | | | | |
| Beginning of the period | | 74,411,551 | | 174,013,647 |
| **End of the period** | $ | 67,845,979 | $ | 74,411,551 |

*See accompanying notes to the special-purpose financial statements.*

# National Opioid Abatement Trust II

## Special-Purpose Statements of Cash Flows

| Year ended December 31, | 2024 | 2023 |
|---|---|---|
| **Cash flows from operating activities:** | | |
| Decrease in net assets | $ (6,565,572) | $ (99,602,096) |
| Adjustments to decrease in net assets to net cash used in operating activities: | | |
| Interest receivable | 82,671 | 223,709 |
| Funding receivable | - | 3,020,760 |
| Prepaid expense | 40,185 | (1,667) |
| Accounts payable | (72,432) | (86,948) |
| **Net cash used in operating activities** | **(6,515,148)** | **(96,446,242)** |
| **Net decrease in cash and cash equivalents** | **(6,515,148)** | **(96,446,242)** |
| Cash and cash equivalents at the beginning of the period | 74,045,788 | 170,492,030 |
| **Cash and cash equivalents at the end of the period** | **$ 67,530,640** | **$ 74,045,788** |

*See accompanying notes to the special-purpose financial statements.*

9

# National Opioid Abatement Trust II

## Notes to the Special-Purpose Financial Statements

## 1. Description and Funding of the Trust

National Opioid Abatement Trust II (the Trust) was formed and became effective on June 16, 2022, pursuant to the Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates (Mallinckrodt) under Chapter 11 of the Bankruptcy Code, dated February 18, 2022 (the Plan). The Trust is intended to qualify as a "Qualified Settlement Fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the IRC, and to the extent permitted by law, for state and local income tax purposes.

The Plan provides, inter alia, for the establishment of an Opioid Creditor Trust, as defined, with respect to State Opioid Claims, as defined. As of the Effective Date, defined as June 16, 2022, any and all liability of the Debtors for any and all State Opioid Claims shall automatically be channeled to and assumed by the Trust.

In accordance with the National Opioid Abatement Trust II Agreement (the Trust Agreement), pursuant to the Plan and the Confirmation Order, the Trust shall (i) hold, manage and invest all funds and other Trust Assets (as defined in Section 1.3) received by the Trust from the Opioid MDT II (MDT II) for the benefit of the beneficiaries of the Trust; (ii) hold and maintain the National Opioid Abatement Trust II Operating Reserve (as defined in Section 1.2(g)(ii) below); (iii) administer, process, and resolve all State Opioid Claims and Municipal Opioid Claims in accordance with the National Opioid Abatement Trust II TDP; and (iv) pay all National Opioid Abatement Trust II Operating Expenses as defined in Section 1.2(g)(ii).

The Trust is funded with the consideration prescribed under the terms of the Plan through MDT II (also created under the Plan). Funds will be paid by Mallinckrodt to the MDT II and MDT II will make distributions to the Trust and other public and private creditor trusts. The MDT II consideration to be distributed to the Trust is comprised of initial and deferred cash payments from Mallinckrodt, certain Warrants, and certain other non-cash assets as set forth under the Plan. In general, the recoveries and the timing of proceeds to the Trust from such non-cash assets are uncertain at this time.

In general, the Trust's aggregate consideration (as defined in the Plan) will be comprised of the following:

a) 97.1% of the first $625 million received on account of the Public Opioid Creditor Share Distributable Value.

b) 97.05% of amounts received in excess of $625 million and up to and including $1.25 billion on account of the Public Opioid Creditor Share Distributable Value.

c) 97% of amounts received in excess of $1.25 billion on account of the Public Opioid Creditor Share Distributable Value.

Cash distributions from MDT II were received by the Trust on August 29, 2023 and June 17, 2022 in the amount of $176,864,437 and $178,814,391, respectively. Future cash received from MDT II will be recorded when received.

On December 8, 2022, the Warrants were monetized. On August 29, 2023, the Trust received its share of the cash proceeds in the amount of $2,742,500, net of expenses incurred, associated with

# National Opioid Abatement Trust II

## Notes to the Special-Purpose Financial Statements

the monetization of these Warrants. As of December 31, 2022, the Trust included $3,020,760 as a funding receivable in the accompanying special-purpose statement of assets, liabilities, and net assets and in the funding in the accompanying special-purpose statement of changes in net assets for the period from June 16, 2022 (inception) through December 31, 2022. The change in the estimated funding receivable in 2022 and cash received in 2023 in the amount of ($278,260) is included in funding in the accompanying special-purpose statement of changes in net assets for the year ended December 31, 2023.

The Trust will make opioid claim payments, as set forth in the National Opioid Abatement Trust II Agreement, and in accordance with the National Opioid Abatement Trust II TDP, which provides for the State Beneficiaries and State Allocation Percentages.

As of December 31, 2024, there was no funding receivable balance to the Trust. There was no additional funding provided to the Trust in 2024.

The Trust made opioid claims payments of $8,226,538 and $278,906,196 for the years ended December 31, 2024 and 2023, respectively.

## 2. Significant Accounting Policies

### *Basis of accounting*

The Trust's policy is to prepare its financial statements on a special-purpose accounting methods, which is a comprehensive basis of accounting other than accounting principles generally accepted in the United States of America (U.S. GAAP). The special-purpose accounting method includes the following:

- Assets are generally recorded when they are received by the Trust and expenses are generally recorded when the invoice is received from the vendor. The Trust records interest income when earned, and accordingly records an asset for interest receivable.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets in the same period that the invoice for such contractual obligations or agreements are received by the Trust. Under U.S. GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

- The full amounts of Opioid Claims will be recorded in the period in which the abatement distributions are paid. Under U.S. GAAP, a liability would be recorded for an estimate of the total opioid claims to be made in accordance with the Trust Agreement and the TDP.

- Income tax expense payments or refunds, when applicable, will be recorded when paid or received. Under U.S. GAAP, a provision for income taxes is recorded based upon income reported for financial statement purposes, and federal and state income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities.

### *Use of estimates*

The preparation of financial statements in conformity with the special-purpose accounting methods described above requires the Trust to make estimates and assumptions that affect the reported

# National Opioid Abatement Trust II

## Notes to the Special-Purpose Financial Statements

amounts of certain assets and liabilities and the disclosures of contingent assets and liabilities at the date of the special-purpose financial statements, as well as the reported amounts of additions and deductions to the net assets during the reporting period. Actual results could differ from those estimates.

*Cash equivalents*

The Trust considers all highly liquid instruments with original maturities of three months or less to be cash equivalents.

*Accounts Payable*

Accounts payable consist of accruals and outstanding invoices associated with managing the Trust.

*Operating expenses*

Operating expenses of the Trust are paid from the net assets when invoices are received.

*Income taxes*

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations thereunder (the Code). As a result, the Trust is subject to federal income taxes based on modified gross income, as defined by the Code. Per a Private Letter Ruling from the Internal Revenue Service (IRS), the Trust's income, including funding and investment income, is excluded from modified gross income. Accordingly, the Trust has generated no federal taxable income to date and does not anticipate ever generating federal taxable income. In the opinion of the Trustees and advisors, the Trust is also not subject to state income taxes and, therefore, the special-purpose financial statements do not include any provision or liability for state income taxes.

In accordance with authoritative guidance on accounting for uncertainty in income taxes issued by the Financial Accounting Standards Board (FASB), management has evaluated the Trust's tax positions and has concluded that the Company has taken no uncertain tax positions that require adjustment to the special-purpose financial statements to comply with the provisions of this guidance.

## 3. Risks and uncertainties

Certain of the Trust's assets are exposed to credit risk. Cash and cash equivalents are maintained at financial institutions and, at times, balances may exceed federally insured limits. The Trust has never experienced any losses related to these balances. Amounts on deposit in excess of federally insured limits at December 31, 2024, approximate $236,000.

## 4. Trustees' Fees

The Trust Agreement describes the compensation to be paid to the Trustees for their services, including out of pocket costs and expenses. For the years ended December 31, 2024 and 2023, the Trust paid a total of $700,000, respectively, in both years in Trustees fees and expenses.

## National Opioid Abatement Trust II

### Notes to the Special-Purpose Financial Statements

## 5. Contingent Liabilities

The Plan Documents (as defined in the Plan) subject the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust. The probability of such claims cannot be reasonably determined. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustees.

## 6. Subsequent Events

The Trust has evaluated its December 31, 2024 special-purpose financial statements for subsequent events through April 23, 2025, the date the special-purpose financial statements were available to be issued. The Trust is not aware of any subsequent events which would require recognition or disclosure in the special-purpose financial statements.

## Supplementary Information



Tel:  703-770-1079
Fax: 703-893-2766
www.bdo.com

8401 Greensboro Drive, Suite 800
McLean, VA 22102

## Independent Auditor's Report on Supplementary Information

Trustees
National Opioid Abatement Trust II
Wilmington, DE

Our audit of the special-purpose financial statements included in the preceding section of this report was conducted for the purpose of forming an opinion on those special-purpose statements as a whole. The supplementary information presented in the following section of this report is presented for purposes of additional analysis and is not a required part of those special-purpose financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the special-purpose financial statements. The information has been subjected to the auditing procedures applied in the audit of the special-purpose financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the special-purpose financial statements or to the special-purpose financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the special-purpose financial statements as a whole.

*BDO USA, P.C.*

April 23, 2025

BDO USA, P.C., a Virginia professional corporation, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

# National Opioid Abatement Trust II

## Supplementary Schedules of Operating Expenses

| Year ended December 31, | | 2024 | | 2023 |
|---|---|---|---|---|
| Trustee compensation | $ | 700,000 | $ | 700,000 |
| Consulting fees | | 252,679 | | 568,083 |
| Legal – general counsel | | 236,750 | | 525,459 |
| Insurance, data, and other expenses | | 218,880 | | 259,065 |
| Claims processor fees and expenses | | 137,379 | | 543,718 |
| Audit and tax fees | | 97,560 | | 69,350 |
| Accounting fees | | 92,088 | | 84,733 |
| Annual fee – Wilmington Trust Company | | 54,706 | | 32,591 |
| Bank fees | | 409 | | 413 |
| Legal – special counsel | | - | | 47,464 |
| **Total operating expenses** | $ | 1,790,451 | $ | 2,830,876 |

*See independent auditor's report on supplementary information.*