## **EXHIBIT 1**

Periodic Report Ending May 31, 2025

# Opioid Master Disbursement Trust II
# Table of Contents
# For the Reporting Period Ending May 31, 2025

| Section | Page Number |
|---|---|
| *Introduction* | *2* |
| *Reporting Period Activity* | *2* |
| *Financial Update* | *3* |
| *Legal Matters Update* | *3* |
| *Exhibit A* | *8* |
| *Appendix* | *10* |
| *Appendix 1: Trust Financial Summary* | *11* |
| *Appendix 2: Trust Budget* | *13* |

**Opioid Master Disbursement Trust II**

**Report for Period
February 1, 2025, through May 31, 2025**

*Introduction*

Pursuant to Section 3.02 of the MDT II Trust Agreement, the Opioid Master Disbursement Trust II ("MDT II" or "the Trust") is obligated to report to each of the Opioid Creditor Trusts and the Future Claimants' Representative,[1] at least every four months, on topics including the Trust's:

- Assets;
- Expenditures;
- Distributions;
- Forward-looking projections; and
- Litigation proceedings.

The following report, for the period beginning February 1, 2025, and ending May 31, 2025 (the "Period"),[2] fulfills such obligation. Further background on the Trust is provided in Exhibit A.

*Reporting Period Activity*

**Extension of the Other Opioid Claims Objection Deadline**

During the Period MDT II continued to engage with those entities having filed Other Opioid Claims to resolve these claims as efficiently as possible. On March 12, 2025, MDT II and certain distributor claimants, including affiliates of Henry Schein, AmerisourceBergen, and Cardinal Health, filed a stipulation resolving those distributors'

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Chapter 11 Plan confirmed in the bankruptcy cases of Mallinckrodt plc, *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.) (the "Plan").
[2] MDT II's prior reports are available on both the *In re Mallinckrodt* docket and the MDT II website (https://www.opioidmasterdisbursementtrust.com/Mallinckrodt/PeriodicReports).

# Opioid Master Disbursement Trust II

Other Opioid Claims. At this time, it is not anticipated that any of the remaining claims will have a material impact on the assets of the Trust. The current objection deadline for Other Opioid Claims is the later of: (a) September 12, 2025, or (b) one hundred twenty (120) days following the date that a proof of Other Opioid Claim is amended in writing by or on behalf of a holder of such Other Opioid Claim.

*Financial Update*

During the Period, the Trust began with a cash balance of $125,813,708, received $1,756,068 of interest and other income (~4.35% annualized rate on interest income) and disbursed $28,524,865, resulting in a $99,044,911 ending Trust cash balance. Of the $28,524,865 that was disbursed, $24,975,614.15 were funds that had been held in the Municipal and Tribe Opioid Attorneys' Fee Fund subaccount, pursuant to the 2022 Plan (including Exhibit 7 thereto, the "PEC/MSGE Mallinckrodt Fee Allocation Agreement"). These funds were disbursed during the Period pursuant to the Order to Establish Qualified Settlement Fund and Appoint Trust Administrator (Docket #5779), filed in MDL No. 2804 (National Prescription Opiate Litigation).

The Trust's ending cash balance was $99,044,911, comprised of the Operating Reserve ($98,975,596) and the amounts set aside (and still held) for the Municipal and Tribe Opioid Attorneys' Fee Fund ($69,315). At this time, all assets are held in short term U.S. Government obligations.

*Legal Matters Update*

Under the Plan, the Trust was assigned certain claims against third parties. The claims being pursued are described in greater detail below.

1. **Insurance Action (***Opioid Master Disbursement Trust II a/k/a Opioid MDT II v. Ace American Insurance Company, et al.***, Case No. 22SL-CC02974 (Mo. Cir. Ct.))**

On June 16, 2022, the Trust filed a lawsuit in St. Louis County, Missouri, against insurers that had issued certain policies under which rights were transferred to the Trust pursuant to the Plan, seeking insurance coverage with respect to the opioid-related

3

claims that were channeled to the Trust and Opioid Creditor Trusts under the Plan. On December 20, 2023, the Trust filed a separate but related lawsuit involving certain additional insurance policies that it had discovered through a third-party subpoena. On the Trust's motion, these two lawsuits were consolidated on January 30, 2024. By final order dated March 5, 2024, certain insurance policies were dismissed with prejudice from this lawsuit due to a forum-selection clause in or incorporated in those policies that the insurers contended mandates exclusive jurisdiction over any coverage disputes in the courts of England or Wales.

On April 16, 2024, the Trust filed a motion for partial summary judgment regarding exclusions in most of the policies in the Missouri lawsuit for bodily injury included within the so-called "products hazard". The products hazard applies only to bodily injury arising out of "your [Mallinckrodt's] products". The Trust contends that the products hazard exclusions therefore do not exclude bodily injury arising in whole or in part from opioid pharmaceuticals not manufactured or sold by Mallinckrodt, or from illicit opioid drugs, for which Mallinckrodt was alleged to be liable because of its role in causing and fueling the nationwide opioid crisis due to its widespread promotion of opioids as a class of drugs appropriate for treatment of long-term chronic pain. On July 17, 2024, the insurers filed cross motions, arguing that the exclusions eliminate coverage under these policies.

On March 10, 2025, the court entered summary judgment against the Trust and in favor of the insurers. Because the court's ruling resolved a substantial portion of the coverage in the case, the Trust moved for, and the court granted, interlocutory appeal of this decision (that is, immediate appeal without waiting for the rest of the case to be resolved). The Trust's opening brief to the Missouri Court of Appeals is due on September 8, 2025.

On June 13, 2025, at the request of the parties, the court issued a partial stay of discovery pending resolution of the appeal. Pursuant to the stay order, fact discovery will continue for at least ten months after the appeal is decided (this is true whether or not the Trust prevails on appeal, since there is significant coverage in the case that is

4

not subject to the products hazard ruling or the related appeal). While the appeal is pending, the parties will continue to address existing document discovery and may bring any discovery disputes arising out of the parties' pending discovery to the court. The parties may also propound discovery requests on third parties during the pendency of the appeal.

The next case management conference will be scheduled following a decision on the pending appeal.

2. **Covidien Spinoff Action (*Opioid Master Disbursement Trust II v. Covidien Unlimited Co., et al.*, Adv. Pro. No. 22-50433 (Bankr. D. Del.))**

On October 11, 2022, the Trust commenced an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware against Covidien Unlimited Company, Mallinckrodt's former parent, and three of its subsidiaries, hereinafter referred to, collectively, as "Covidien." On January 18, 2024, the Trust won a key opening victory, surviving Covidien's motion to dismiss. The Court allowed the majority of the Trust's claims, namely for intentional fraudulent transfer, reimbursement, indemnification, contribution, equitable subordination, and disallowance pursuant to Sections 502(d) and 502(e) of the Bankruptcy Code, to proceed. The Court dismissed the claims for constructive fraudulent transfer, breach of fiduciary duty as a promoter, and equitable disallowance. The Court also granted the motion to amend with respect to the claims that it allowed to proceed. Covidien filed its answer on March 25, 2024.

Through the surviving claims, the Trust seeks to avoid and recover (a) the value of the entire Covidien enterprise (without the Mallinckrodt business) at the time of the 2013 spinoff of Mallinckrodt from Covidien; (b) approximately $867 million in net cash transfers that Mallinckrodt paid to Covidien from 2010 through 2012; and (c) approximately $721 million in Mallinckrodt note proceeds that Covidien received before completing the spinoff. In addition, the Trust seeks to avoid (i) the putative indemnification obligations that Covidien imposed on Mallinckrodt under the spinoff agreement and (ii) certain pre-spin tax liabilities in the hundreds of millions of dollars that Covidien imposed on Mallinckrodt in connection with the spinoff, and to recover from Covidien (iii) the value of any payments

5

that Mallinckrodt made on account of those pre-spinoff tax liabilities. The Trust also has a claim for reimbursement, indemnification, and contribution for the opioid-related costs incurred by Mallinckrodt.

On February 20, 2025, the Covidien proceeding, as well as the SRP proceeding (discussed below), was reassigned from Judge John Dorsey to Judge Brendan Shannon.

The litigation is now in the discovery phase. Fact discovery is to be completed by October 30, 2025. The Court allowed Covidien to file an initial summary judgment motion limited to 11 U.S.C. § 546(e) issues. Briefing on that motion was completed on January 31, 2025, and the Court heard oral argument on May 9, 2025, and took the motion under advisement.

3. **Share Repurchase Program Action (*Opioid Master Disbursement Trust II v. Argos Capital Appreciation Master Fund LP, et al.*, Adv. Pro. No. 22-50435 (Bankr. D. Del.))**

On October 12, 2022, the Trust commenced an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware against 72 defendant participants in Mallinckrodt plc's share repurchase program (the "SRP"). On October 24, 2023, the Trust amended its complaint to add 43 additional Defendants that were identified during the Trust's investigation. To date, the Trust has also voluntarily dismissed 48 Defendants.

The Trust asserts causes of action for intentional and constructive fraudulent transfers through which it seeks to avoid and recover some of the over $1 billion in cash transfers Mallinckrodt plc paid to its equity owners through the SRP between 2015 and 2018. The Trust asserts that the shares Mallinckrodt purchased through the SRP were worthless because Mallinckrodt was deeply insolvent at the time of the repurchases due to massive liabilities incurred from the manufacture, promotion, and distribution of opioid products. The Trust asserts that the cash paid to Mallinckrodt shareholders through the SRP was wrongly diverted and should be recouped for the benefit of Mallinckrodt's creditors.

On May 15, 2023, the Court approved a protocol whereby Defendants may assert individual affirmative defenses to the claims alleged in the SRP action, including that a given Defendant is protected by the safe-harbor provisions of 11 U.S.C. § 546(e) or

received the proceeds of share repurchase transactions as a mere conduit. The Trust has been responding to Defendants who have asserted defenses under the protocol. To date, Defendants have filed seventeen motions to dismiss or for summary judgment pursuant to the protocol with the Court.

The Court heard arguments on four of the motions on May 14, 2024. On September 5, 2024, the Court granted summary judgment for defendants on the four motions on the grounds that the Trust's claims were barred by § 546(e) and that certain defendants were not transferees of the share repurchases. On September 19, 2024, the Trust filed with the District Court a notice of appeal and motion for leave to pursue an interlocutory appeal from the Bankruptcy Court's decision on the issue of whether Mallinckrodt's share repurchases could be protected from avoidance under § 546(e) when they were void ab initio under applicable nonbankruptcy law. Thereafter, the parties asked the Bankruptcy Court to issue a final judgment as to these four motions so that the Trust would have an appeal of right from the Bankruptcy Court's decision, which would render the Trust's motion for leave to pursue an interlocutory appeal moot. The Bankruptcy Court issued the final judgment on January 13, 2025. On January 23, 2025, the Trust filed an amended notice of appeal, and on January 28, 2025, the District Court denied the Trust's motion for leave to pursue an interlocutory appeal as moot. The Trust's appeal therefore remains pending. On May 19, 2025, the parties completed briefing on the merits, and are now waiting for the Court to either schedule oral argument or rule on the papers.

The parties also completed briefing on twelve additional motions to dismiss or motions for summary judgment filed under the protocol where the sole issue in dispute is the issue on appeal, ten of which the Court granted, and two of which remain pending. The Court also granted in part and denied in part a summary judgment motion by a defendant that additionally alleged the Trust did not properly name it, an issue the Trust prevailed on.

The Trust has also settled with twelve defendants for monetary consideration.

**Exhibit A**

**Opioid Master Disbursement Trust II Background**

The Opioid Master Disbursement Trust II was established pursuant to the chapter 11 Plan confirmed in the bankruptcy cases of Mallinckrodt plc, *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.), confirmed by order dated March 2, 2022, and effective as of June 16, 2022 (the "2022 Plan").

Pursuant to the 2022 Plan, MDT II was formed as a "hub" trust in a "hub & spoke" trust design, created to receive distributions (from funds paid by Mallinckrodt and any litigation recoveries) and then make distributions to the "spoke" beneficiary trusts: the Public Creditor Trusts (for the U.S. States and Territories and local governments within U.S. States and Territories, as well as the federally-recognized American Indian and Alaska Native Tribes) and the Private Creditor Trusts (for, *e.g.*, personal injury victims, persons afflicted by neonatal abstinence syndrome, hospitals).

In the spring of 2023, following the rapidly deteriorating financial condition of Mallinckrodt and an aggressive letter-writing campaign by various stakeholders of the company, the MDT II Trustees determined that it was in the best interests of MDT II's beneficiaries to engage in conversations with the company to restructure the remaining Opioid Deferred Cash Payments (which at the time totaled $1.275 billion, and included the $200 million payment that was due on June 16, 2023). Without a comprehensive deal, MDT II's status as an unsecured creditor in a free fall bankruptcy would have left the trust subordinate to approximately $3.5 billion in secured debt. Following weeks of intensive negotiations, MDT II, along with other key stakeholders, signed a restructuring support agreement (the "2023 RSA") with the company on August 23, 2023, setting forth the terms of a prepackaged financial restructuring plan.

On August 28, 2023, Mallinckrodt commenced bankruptcy proceedings (see *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.)), on October 10, 2023, its second Plan of Reorganization was confirmed, and on November 14, 2023, its second Plan of Reorganization went effective (the "2023 Plan").

Pursuant to the 2023 RSA and 2023 Plan, MDT II received a one-time payment of $250

8

million in full satisfaction of the remaining Opioid Deferred Cash Payments, and disbursed the full amount to the Public and Private Opioid Creditor Trusts, per the waterfall under the 2022 Plan, on August 29, 2023. MDT II also received enhanced cooperation under the Cooperation Agreement to facilitate the prosecution of the three MDT II third-party litigations (reducing costs for the Trust), and contingent value rights ("CVR"), essentially warrants, in the company (which will provide some value if the performance of the company dramatically improves).

The MDT II's primary responsibilities are to: (i) receive the opioid settlement funds from Mallinckrodt (an obligation amended pursuant to the 2023 RSA and 2023 Plan); (ii) investigate and pursue claims against third parties that are assigned to the MDT II; (iii) fix a bar date and administer Other Opioid Claims that were not resolved as part of the Plan (a process that is still on-going); and (iv) make distributions to the Public and Private Creditor Trusts per the allocations in the Plan. These Opioid Creditor Trusts disburse funds received from MDT II to their respective creditors to be used for approved opioid abatement strategies or, in the case of the PI Trust, to compensate individuals for damages because of opioid-related bodily injuries.

More information about the Trust, including important documents, biographies of the MDT II Trustees (Jenni Peacock, Michael Atkinson, and Anne Ferazzi), and answers to frequently asked questions, can be found on the Trust's website: https://www.opioidmasterdisbursementtrust.com/Mallinckrodt.

# *Appendix*[3]

---

[3] Note: Figures herein reflect Trust activity subsequent to the receipt and disbursement of the Initial Opioid Deferred Cash Payment where applicable. Expenses exclude fees incurred during the Period but unpaid as of May 31, 2025.

# Opioid Master Disbursement Trust II

*Appendix 1: Trust Financial Summary*

*Trust Activity Summary for Ninth Reporting Period (February 1, 2025 – May 31, 2025):*

| ($ in actuals) | Beginning Balance | MDT II Period Receipts | | | MDT II Period Disbursements | | | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| | | Opioid Deferred Cash Payments | Interest and Other Income | Total Receipts | Distributions | Expenses (Litigation & Administrative) | Total Disbursements | |
| Operating Reserve | $100,998,137 | - | $1,526,711 | **$1,526,711** | - | ($3,549,251) | **($3,549,251)** | $98,975,596 |
| Third-Party Payor Reserve | - | - | - | **-** | - | - | **-** | - |
| Municipal and Tribe Opioid Attorneys' Fee Fund | 24,815,571 | - | 229,357 | **229,357** | (24,975,614) | - | **(24,975,614)** | 69,315 |
| Ratepayer Account | - | - | - | **-** | - | - | **-** | - |
| **Opioid MDT II Total** | **$125,813,708** | **-** | **$1,756,068** | **$1,756,068** | **($24,975,614)** | **($3,549,251)** | **($28,524,865)** | **$99,044,911** |

*Trust Activity FY3 Summary (June 1, 2024 – May 31, 2025):*

| ($ in actuals) | Beginning Balance | MDT II Period Receipts | | | MDT II Period Disbursements | | | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| | | Opioid Deferred Cash Payments | Interest and Other Income | Total Receipts | Distributions | Expenses (Litigation & Administrative) | Total Disbursements | |
| Operating Reserve | $105,775,046 | - | $5,659,042 | **$5,659,042** | - | ($12,458,491) | **($12,458,491)** | $98,975,596 |
| Third-Party Payor Reserve | - | - | - | **-** | - | - | **-** | - |
| Municipal and Tribe Opioid Attorneys' Fee Fund | 24,024,001 | - | 1,020,928 | **1,020,928** | (24,975,614) | - | **(24,975,614)** | 69,315 |
| Ratepayer Account | - | - | - | **-** | - | - | **-** | - |
| **Opioid MDT II Total** | **$129,799,047** | **-** | **$6,679,969** | **$6,679,969** | **($24,975,614)** | **($12,458,491)** | **($37,434,105)** | **$99,044,911** |

*Trust Activity Cumulative Summary (June 1, 2022 – May 31, 2025):*

| ($ in actuals) | Beginning Balance | MDT II Cumulative Receipts | | | MDT II Cumulative Disbursements | | | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| | | Opioid Deferred Cash Payments | Interest and Other Income | Total Receipts | Distributions | Expenses (Litigation & Administrative) | Total Disbursements | |
| Operating Reserve | $134,953,403 | - | $19,745,849 | **$19,745,849** | - | ($55,723,655) | **($55,723,655)** | $98,975,596 |
| Third-Party Payor Reserve | 29,363,667 | - | - | **-** | (29,363,667) | - | **(29,363,667)** | - |
| Municipal and Tribe Opioid Attorneys' Fee Fund | 11,276,655 | 11,303,789 | 2,464,485 | **13,768,274** | (24,975,614) | - | **(24,975,614)** | 69,315 |
| Ratepayer Account | 3,000,000 | - | - | **-** | (3,000,000) | - | **(3,000,000)** | - |
| **Opioid MDT II Total** | **$178,593,724** | **$11,303,789** | **$22,210,334** | **$33,514,123** | **($57,339,281)** | **($55,723,655)** | **($113,062,936)** | **$99,044,911** |

**Opioid Master Disbursement Trust II**

*Trust Operating Reserve Additional Detail:*

|  | Actual | Actual | Actual | Total |
|---|---|---|---|---|
| *($ in actuals)* | Jun 24 - Sep 24 | Oct 24 - Jan 25 | Feb 25 - May 25 | Jun 24 - May 25 |
|  | *(4 months)* | *(4 months)* | *(4 months)* | *(12 months)* |
| **Beginning Cash** | $105,775,046 | $103,164,970 | $100,998,137 | $105,775,046 |
| Professional Fees - Legal & Litigation Support | ($4,099,956) | ($3,721,216) | ($3,124,332) | ($10,945,503) |
| Trustee Fees & Expenses | (258,333) | (258,333) | (260,056) | (776,722) |
| Professional Fees - Financial & Tax | (100,000) | (125,000) | (100,000) | (325,000) |
| Insurance | (182,935) | - | - | (182,935) |
| Other | (68,967) | (94,500) | (64,864) | (228,330) |
| **Total Trust Expenses** | ($4,710,191) | ($4,199,049) | ($3,549,251) | ($12,458,491) |
| Interest and Other Income | 2,100,115 | 2,032,215 | 1,526,711 | 5,659,042 |
| **Ending Cash** | $103,164,970 | $100,998,137 | $98,975,596 | $98,975,596 |

**Opioid Master Disbursement Trust II**

*Appendix 2: Trust Budget*

Pursuant to the 2022 Plan, Mallinckrodt was obligated to make 9 cash payments over 8 years on account of the Opioid Deferred Cash Payments. The scheduled payments totaled $1,725,000,000, of which ~$1,718,000,000 was to be paid to the Trust. However, given the Company's financial performance, an agreement was reached between the Company, its financial creditors and the Trust to settle all remaining Opioid Deferred Cash Payments for a final payment prior to its 2023 Chapter 11 filing. The Trust received a second and final payment of $250,000,000 on August 24, 2023 which it then distributed to the opioid creditor trusts per the 2022 Plan.[1] The Trust may receive additional amounts on account of assigned litigation claims and interest income, but none of these amounts are certain nor can they be estimated at this time.

In the fourth year of its operations, the Trust is projected to disburse $17,612,080 on account of its expenses (i.e., excluding disbursements to creditor trusts) comprised of $15,940,000 for legal and litigation support, $775,000 for trustee fees and expenses, $300,000 for financial and tax advisory services, $182,935 for insurance, and $414,145 for other expenses.

---

[1] The Trust also received enhanced cooperation under the Cooperation Agreement to facilitate the prosecution of the three MDT II third-party litigations (reducing costs for the Trust) and contingent value rights ("CVR"), essentially warrants, in the company (which will provide some value if the value of the company dramatically improves from levels at emergence).

**Opioid Master Disbursement Trust II**

*Trust Period Expense and Operating Budget:*

|  | Forecast | Forecast | Forecast | Total |
|---|---|---|---|---|
| *($ in actuals)* | **Jun 25 - Sep 25** | **Oct 25 - Jan 26** | **Feb 26 - May 26** | **Jun 25 - May 26** |
|  | *(4 months)* | *(4 months)* | *(4 months)* | *(12 months)* |
| **Beginning Cash** | **$98,975,596** | **$93,964,872** | **$89,113,839** | **$98,975,596** |
| Professional Fees - Legal & Litigation Support | ($5,643,333) | ($5,598,333) | ($4,698,333) | ($15,940,000) |
| Trustee Fees & Expenses | (258,333) | (258,333) | (258,333) | (775,000) |
| Professional Fees - Financial & Tax | (100,000) | (100,000) | (100,000) | (300,000) |
| Insurance | (182,935) | - | - | (182,935) |
| Other | (136,998) | (132,998) | (144,148) | (414,145) |
| **Total Trust Expenses** | **($6,321,600)** | **($6,089,665)** | **($5,200,815)** | **($17,612,080)** |
| Interest and Other Income | 1,310,875 | 1,238,632 | 1,183,651 | 3,733,158 |
| **Ending Cash** | **$93,964,872** | **$89,113,839** | **$85,096,674** | **$85,096,674** |