**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC,<br><br>　　　　　　Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 20-12522 (BLS)<br><br>**Objection: December 17, 2025, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: January 26, 2026 at 11:00 a.m. (ET)** |

**MOTION OF THE TRUSTEES OF THE OPIOID MASTER DISBURSEMENT TRUST II
FOR ENTRY OF AN ORDER RECLASSIFYING OTHER OPIOID CLAIM NO. 2
FILED BY IQVIA INC. AS A CLASS 9(i) NO RECOVERY OPIOID CLAIM**

**TO THE CLAIMANT WHOSE CLAIM IS SUBJECT TO THIS MOTION:**

**\* YOUR SUBSTANTIVE RIGHTS MAY BE AFFECTED BY
THIS MOTION AND ANY FURTHER MOTIONS AND/OR OBJECTIONS
THAT MAY BE FILED IN THE CHAPTER 11 CASE.**

**\*\* THE RELIEF SOUGHT IN THIS MOTION IS WITHOUT PREJUDICE
TO THE RIGHTS OF THE REORGANIZED DEBTOR AND ITS ESTATE,
THE TRUSTEES, OR OTHER PARTIES IN INTEREST TO PURSUE
FURTHER RELIEF WITH RESPECT THE CLAIM.**

---

[1] The Reorganized Debtor in this chapter 11 case is Mallinckrodt plc ("Mallinckrodt"). On May 3, 2023, the Court entered an order closing the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with Mallinckrodt, "Debtors"). A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt. The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

Jennifer E. Peacock, Michael Atkinson, and Anne Ferazzi, in their capacities as trustees (the "Trustees") of the Opioid Master Disbursement Trust II (the "Opioid MDT II") in the chapter 11 case of the above-captioned reorganized debtor (the "Debtor"), by and through their undersigned counsel, hereby move this Court (the "Motion"), pursuant to sections 105(a), 502, and 509(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), reclassifying Other Opioid Claim No. 2 (the "Claim")[2] filed by IQVIA, Inc. as a Class 9(i) No Recovery Opioid Claim under the Plan.[3]  In support of this Motion, the Trustees respectfully state as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (Sleet, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for the relief requested herein are sections 105(a), 502, and 509(c) of the Bankruptcy Code and Bankruptcy Rule 3007.

4.  Pursuant to Local Rule 9013-1(f), the Trustees consent to the entry of a final order or judgment by the Court in connection with this Motion if it is later determined that the Court,

---

[2] A copy of IQVIA's proof of claim is attached hereto as **Exhibit B**.

[3] *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt PLC and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 7670] (the "Plan").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

2

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**I.      The Chapter 11 Cases and the Opioid MDT II**

5.      On October 12, 2020 (the "Petition Date"), Mallinckrodt plc and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.      On November 30, 2020, this Court entered the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [Dkt. No. 667] (the "Claims Bar Date Order").  Pursuant to the Claims Bar Date Order, the following deadlines were established to file certain proofs of claim in the Debtors' chapter 11 cases: (i) forty-five (45) days after the Mailing Deadline for General Claims; (ii) April 12, 2021 for Governmental Units; and (iii) the later of the General Bar Date and 30 days after the effective date for claims related to rejection of an executory contract or unexpired lease. The Claims Bar Date Order did not address bar dates for any Opioid Claims or VI Opioid Claims.

7.      On March 2, 2022, the Court entered an order confirming the Plan [Dkt. No. 6660] (the "Confirmation Order").  The Plan became effective on June 16, 2022 [Dkt. No. 7652].  Under Article III.B.8-9 of the Plan, certain Opioid Claims were channelled to certain trusts, including Class 9(h) Other Opioid Claims, which were channelled to the Opioid MDT II.

8.      On June 22, 2022, the Debtors filed the executed Opioid MDT II Trust Agreement.

9.      On September 16, 2022, the Trustees served notice with the Court, establishing November 18, 2022 at 5:00 p.m. (Prevailing Eastern Time), as the deadline for filing proofs of Class (9)(h) Other Opioid Claims (the "Other Opioid Claims Bar Date") [Dkt. No. 8198].

10. Under Section 1.02 of the Opioid MDT II Trust Agreement, the purpose of the Opioid MDT II is to, among other things, "resolve all asserted Opioid Claims channeled to the Trust in accordance with the Plan, Trust Documents, and the Confirmation Order (which, for the avoidance of doubt, are the *Other Opioid Claims*, the U.S. Government Opioid Claims (including FHCA Opioid Claims), and the Ratepayer Opioid Claims)[.]" (emphasis added).

11. Pursuant to Section 3.01(a) of the Opioid MDT II Trust Agreement, the Trustees "shall have all powers necessary to accomplish the purposes of the Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order."

12. The Plan defines "Opioid Claim" as "a Claim or Cause of Action (other than Claims or Causes of Action arising from violations of the Voluntary Injunction or Opioid Operating Injunction), whether existing now or arising in the future, based in whole or in part on any conduct or circumstance occurring or existing on or before the Effective Date and arising out of, relating to, or in connection with any opioid product or substance, and any and all Opioid Demands related thereto, including, for the avoidance of doubt, claims for indemnification, contribution, or reimbursement on account of payments or losses in any way arising out of, relating to, or in connection with any such conduct or circumstances and Co-Defendant Claims. For the avoidance of doubt, Opioid Claims do not include (i) any liability solely to the extent premised on allegations regarding conduct undertaken by the Reorganized Debtors after the Effective Date, (ii) any Generics Price Fixing Claims, or (iii) any claims arising under section 502(h) of the Bankruptcy Code." Plan, Art.I.A.274.

13. The Plan defines "Other Opioid Claims" as "any Opioid Claim that is *not* a Governmental Opioid Claim, Third-Party Payor Opioid Claim, Hospital Opioid Claim, Ratepayer Opioid Claim, a NAS Monitoring Opioid Claim, an Emergency Room Physicians Opioid Claim,

a Public School Opioid Claim, or PI/NAS Opioid Claim, but including, for the avoidance of doubt, Co-Defendant Claims (other than Co-Defendant Claims held by Released Co-Defendants) and any No Recovery Opioid Claims that are Allowed after the Effective Date under section 502(j) of the Bankruptcy Code." Plan, Art.I.A.314 (emphasis added).

14. The Plan defines "No Recovery Opioid Claims" as "all Opioid Claims that are either (a) as of the relevant time, disallowed under section 502(e)(1)(B) of the Bankruptcy Code (subject, however, to section 502(j) of the Bankruptcy Code) or (b) subordinated pursuant to section 509(c) or section 510 of the Bankruptcy Code." Plan, Art.I.A.267.

15. Under the Plan, Class 9(i) No Recovery Opioid Claims "shall be discharged, cancelled, and extinguished on the Effective Date" and "[e]ach Holder of No Recovery Opioid Claims shall receive no recovery or distribution on account of such No Recovery Opioid Claims." Plan, Art.III.B.9.i.

**II.    The Claim**

16. On October 6, 2022, IQVIA Inc. filed the Claim on behalf of itself, its subsidiaries, affiliates or related companies including, but not limited to, BuzzeoPDMA LLC (collectively, "IQVIA"). The Claim is based on BuzzeoPDMA LLC's alleged contractual indemnification rights against Mallinckrodt LLC under a Customer Services Agreement (the "Agreement"), pursuant to which BuzzeoPDMA LLC agreed to provide clinical research management support services to the Debtors.

17. By the Claim, IQVIA seeks indemnification of not less $1,429,275.92 in costs and expenses incurred in responding to subpoenas and other discovery demands made in certain Opioid Lawsuits brought against the Debtors prepetition, as well as future indemnifiable losses under the

Agreement.[4] The Claim attaches no invoices or other documentary support for the $1,429,275.92 in discovery costs allegedly incurred by IQVIA.

18. Prior to filing this Motion, the Trustees, with assistance from their professionals, reviewed the Claim to determine, among other things, whether the Claim is subject to disallowance, subordination, and/or reclassification. Based on such review, the Trustees determined the Claim is subject to disallowance under section 502(e)(1)(B) and/or subordination under section 509(c) of the Bankruptcy Code and therefore should be reclassified as a Class 9(i) No Recovery Opioid Claim under the Plan.

## RELIEF REQUESTED

19. By this Motion, the Trustees seek entry of the Proposed Order reclassifying the Claim as a Class 9(i) No Recovery Opioid Claim under the Plan.

## BASIS FOR RELIEF

20. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). In turn, section 502(a) of the Bankruptcy Code provides that "[a] claim or interest . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if

---

[4] The addendum attached to IQVIA's proof of claim (the "Addendum") provides, "[a]s of the Petition Date, a significant number of counties, municipalities and other governmental entities had initiated litigation ***against the Debtors*** and other pharmaceutical manufacturers, distributors, retailers, medical providers, and physicians in various federal and state courts, relating to the distribution and sale of opioid pain medications, in addition to numerous actions initiated by various third-party payors, hospitals, hospital groups and individuals, including actions brought as putative class actions (collectively, the "Opioid Lawsuits"). Addendum, ¶ 13 (emphasis supplied). IQVIA does not identify the Opioid Lawsuits that are the subject of the Claim in the Addendum.

In addition, the Addendum provides, "[i]n connection with services provided by Claimant to the Debtors under the Buzzeo Contracts, Claimant holds opioid-related indemnification and reimbursement claims against the Debtors which constitute "Other Opioid Claims," including without limitation, indemnification claims arising from costs and expenses incurred by Claimant in responding to subpoenas and other discovery demands in served upon Claimant in the Opioid Lawsuits and Claimant believes that additional such claims may arise in the future." Addendum, ¶ 17.

true, would support a finding that the debtor is legally liable to the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Where a claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity and a party wishing to dispute the claim's validity must produce evidence sufficient to negate such *prima facie* validity. *See id.* at 173-74. Once an objecting party produces evidence sufficient to refute at least one of the allegations essential to the claim's legal sufficiency, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *See id.* at 174.

21.     Here, the Claim satisfies the elements for disallowance under section 502(e)(1)(B) and/or subordination under section 509(c) of the Bankruptcy Code on its face. Accordingly, the Claim should be reclassified as a Class 9(i) No Recovery Opioid Claim under the Plan and entitled to no recovery from the Opioid MDT II. *See* Plan Art.I.A.267 (defining "No Recovery Opioid Claims"); Plan Art.III.B.9.i (describing the treatment of No Recovery Opioid Claims).

### I. The Claim is Subject to Disallowance Under Section 502(e)(1)(B) of the Bankruptcy Code

22.     The Claim is subject to disallowance pursuant to section 502(e)(1)(B) of the Bankruptcy Code, which provides that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that—
> . . .
> (B) such claim for reimbursement or contribution is contingent as of the time of the allowance or disallowance of such claim for reimbursement or contribution. . .

11 U.S.C. § 502(e)(1)(B).

23.     A claim is subject to disallowance under section 502(e)(1)(B) if the following elements are met: (i) the claim is for reimbursement or contribution; (ii) the claimant is co-liable with the debtor on account of the claim; and (iii) the claim is contingent at the time of its allowance.

7

*See In re APCO Liquidating Trust*, 370 B.R. 625, 631 (Bankr. D. Del. 2007); *see also In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 107 (Bankr. D. Del. 2008) (citing *In re RNI Wind Down Corp.*, 369 B.R. 174, 181 (Bankr. D. Del. 2007)).  The Claim satisfies each of these three elements.

24.     *First*, the Claim expressly asserts contractual and common law rights to indemnification, reimbursement, and contribution in connection with discovery expenses and other losses arising out of the Opioid Lawsuits (including future losses).  "Courts have consistently held that 'the concept of reimbursement includes indemnity.'" *RNI Wind Down Corp.*, 369 B.R. at 181-82.  "Indemnification is the right to be reimbursed for all out of pocket expenses and losses caused by the underlying claim."  *Id.* at 185.  Accordingly, this element is satisfied.

25.     *Second*, the Claim is premised upon IQVIA's co-liability with the Debtors.  Under section 502(e)(1)(B) of the Bankruptcy Code, co-liability is a "broad concept that includes all situations where indemnitors or contributors *could be* liable with the debtor."  *In re Hercules Offshore, Inc.*, 571 B.R. 633, 639 (Bankr. D. Del. 2017) (emphasis in original).

26.     A debtor and a claimant may be found co-liable if "the cause of action in the underlying lawsuit asserts claims upon which, if proven, the debtor could be liable but for the automatic stay."  *Id.* at 640.  "It is not required that the debtor and the claimant actually 'be liable on the claim of the third party in the same action, under a common statute, or on the same legal theory.'"  *In re Caribbean Petroleum Corp.*, Case No. 10-12553 KG, 2012 WL 1899322, at *3 (Bankr. D. Del. May 24, 2012), *aff'd*, 566 F. App'x 169 (3d Cir. 2014) (citations omitted).  Rather, co-liability under section 502(e)(1)(B) "encompasses all possibilities for shared liability, whether judicially, contractually, or statutorily created."  *Id.*

27.     Here, the co-liability element of section 502(e)(1)(B) of the Bankruptcy Code is satisfied because the Claim is expressly predicated on alleged indemnifiable losses arising out of

8

Opioid Lawsuits where the Debtors are named defendants and which are based on the Debtors' manufacture and sale of opioid products. *Id.*, at *4 ("As a co-defendant, Intertek is co-liable with the Debtors for purposes of section 502(e)(1)(B). Intertek alleges that it faces potential liability in the Consolidated Actions and that the Debtors are liable to them for any liability Intertek may incur."). The Addendum attached to the Claim provides:

> To date, Claimant has incurred not less than $1,429,275.92 in costs and expenses incurred in responding to subpoenas and other discovery demands *in the Opioid Lawsuits*.
>
> In addition, to the extent that *as a result of the pre-Effective Date opioid-related conduct or omissions of the Debtors*, Claimant is named as a defendant in any of the Opioid Lawsuits or similar actions or that Claimant is a target for additional discovery demands in such litigations, Claimant is the holder of additional, *contingent* "Other Opioid Claims."

Addendum, ¶¶ 18-19 (emphasis supplied).

28. Accordingly, the Claim satisfies the "co-liability" element of section 502(e)(1)(B).

29. *Third*, the Claim is contingent. "A claim is contingent where it 'has not yet accrued and … is dependent upon some future event that may never happen.'" *RNI Wind Down Corp.*, 369 B.R. at 182; *see also Touch Am. Holdings, Inc.*, 409 B.R. at 716.

30. Courts have held that claims for reimbursement or contribution are contingent until a co-liable third-party has both incurred liability and made payments in satisfaction thereof. *See*, *e.g.*, *APCO Liquidating Trust*, 370 B.R. at 636 ("The law is clear that the contingency contemplated by [section] 502(e)(1)(B) relates to both payment *and* liability.") (emphasis in original); *see also Caribbean Petroleum Corp.*, 2012 WL 1899322, at *3. A court will make a determination as to whether a claim is contingent "at the time of allowance or disallowance of the claim, which courts have established is the date of the ruling." *APCO Liquidating Trust*, 370 B.R. at 636.

31. Here, the Claim expressly seeks indemnification for contingent claims in the event IQVIA is named a defendant in the Opioid Lawsuits or IQVIA is served with additional discovery demands. *See* Addendum, ¶¶ 18-19 discussed *supra*. Accordingly, the Claim satisfies the contingent element of section 502(e)(1)(B) on its face.

32. Moreover, though IQVIA identifies $1,429,275.92 in costs and expenses it incurred in responding to discovery demands in the Opioid Lawsuits, the Claim fails to attach any invoices, proof of payment, or other documentation establishing these amounts were actually paid. *See* Fed. R. Bankr. P. 3001(c)(1) (requiring claimant to provide documentation where the claim is based on a writing). Accordingly, IQVIA fails to meet its burden that its claim is non-contingent or otherwise *prima facie* valid.

33. Based on the foregoing, the Claim satisfies all three elements for disallowance under section 502(e)(1)(B) of the Bankruptcy Code. Accordingly, the Claim should be reclassified as a Class 9(i) No Recovery Opioid Claim under the Plan.

## II. The Claim is Subject to Subordination Under Section 509(c) of the Bankruptcy Code

34. To the extent a portion of the Claim—such as IQVIA's allegedly non-contingent claim for discovery costs—fails to meet the standard for disallowance under section 502(e)(1)(B) of the Bankruptcy Code, such portion should be subordinated under section 509(c) of the Bankruptcy Code and, as a result, reclassified as a Class 9(i) No Recovery Opioid Claim. Section 509(c) of the Bankruptcy Code provides:

> The court *shall* subordinate to the claim of a creditor and for the benefit of such creditor *an allowed claim*, by way of subrogation under this section, or *for reimbursement or contribution*, of an entity *that is liable with the debtor on*, or that has secured, *such creditor's claim*, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509(c) (emphasis added); *see also In re Tri-Union Dev. Corp.*, 314 B.R. 611, 623 (Bankr. S.D. Tex. 2004) (describing section 509(c) subordination as "mandatory").

35. Section 509(c) is closely related to section 502(e)(1)(B) in that both sections address the treatment of a codebtor's indemnification or contribution claims against the debtor. *See In re Amatex Corp.*, 110 B.R. 168, 171 (Bankr. E.D. Pa. 1990) ("The only Code sections which address the rights of indemnitors, contributors, or parties jointly liable or potentially jointly liable with debtors to file claims are § 502(e) and § 509."). Reading these provisions together, a codebtor's claim for *future* indemnification obligations (*i.e.*, the codebtor's contingent claim) is *disallowed* under section 502(e)(1)(B), while any indemnification claim for losses *actually incurred and paid* (*i.e.*, the codebtor's non-contingent claim) is *allowed* but *subordinated* under section 509(c) until the primary claims underlying the codebtor's indemnification rights—here, the Debtors' significant opioid-related liabilities—are paid in full.

36. Relevant case law supports this interpretation of the Bankruptcy Code. In discussing the interplay between sections 502(e) and 509, courts have stated:

> Claims for contribution or reimbursement asserted by codebtors are not allowed unless the codebtor has actually paid something to the primary creditor[.] Until then they are contingent. To the extent the codebtor actually pays the primary creditor, either in whole or in part, the codebtor's claim may be allowed, either by way of contribution or reimbursement, through § 502(e), or subrogation through § 509(a). *Nonetheless, any distribution on the codebtor's claim must be subordinated until the primary creditor's claim is paid in full*.

*In re White Trailer Corp.*, 266 B.R. 390, 394 (Bankr. N.D. Ind. 2000), *aff'd sub nom. Freeland v. I.R.S.*, 264 B.R. 916 (N.D. Ind. 2001) (citing 4 COLLIER ON BANKRUPTCY, ¶ 502.06[6]; ¶ 509.04 (15th Ed. Revised 2000)) (emphasis supplied); *see also In re Amatex Corp.*, 110 B.R. 168, 170 (Bankr. E.D. Pa. 1990) ("A claim for reimbursement or contribution 'is entitled to no better status

than the claim of a creditor assured by [a] surety… [and] [t]he claim of the indemnitor or contributor is … subordinated to the claim of the underlying creditor.'"); *Matter of Baldwin-United Corp.*, 55 B.R. 885, 895 (Bankr. S.D. Ohio 1985) ("The codebtor asserting a claim for contribution has no right to any distribution from the debtor's estate until the creditor's claim has been paid in full.").

37. Any non-contingent portion of the Claim is subject to subordination under section 509(c) for the same reasons the contingent portion is subject to disallowance under section 502(e)(1)(B). That is, the Claim constitutes a claim for contribution and reimbursement for which the Debtors and IQVIA are co-liable. *See* Section I, *supra*.

38. Subordination of the Claim comports with the purpose underpinning the relevant statutory scheme. At least one court has recognized that a purpose of section 509(c) subordination is to prevent a debtor's joint tortfeasor from collecting from the debtor's estate ahead of the injured party. *In re Yanks*, 49 B.R. 56, 58 (Bankr. S.D. Fla. 1985) (holding that allowing a joint tortfeasor to collect from the debtor's estate ahead of the injured party would "turn[] 11 U.S.C. § 509 on its head" and "[s]uch an unusual result seems inconsistent with a bankruptcy court's role as a 'court of equity'").

39. Applied here, failure to subordinate IQVIA's claim for discovery costs would force innocent opioid victims to fund IQVIA's costs in responding to discovery requests aimed at uncovering IQVIA's role in the opioid crisis in Opioid Lawsuits where IQVIA may ultimately be named a co-defendant with the Debtors. Such a result would be inequitable, as it would permit a potential joint tortfeasor to diminish opioid victims' recovery in contravention of the treatment afforded to codebtors' reimbursement claims under the Bankruptcy Code.

40. Moreover, though IQVIA may theoretically avoid subordination of the Claim under section 509(c) through full payment of the Debtors' opioid-related liabilities, that is simply not possible here. As the record of these cases amply demonstrates, opioid claims against the Debtors aggregate billions, if not trillions of dollars.[5] Indeed, prior to the Petition Date, the Debtors spent $30 million to settle just two of the more than 3,000 opioid-related lawsuits pending at the time.[6]

41. The Plan was proposed and confirmed with this economic reality in mind. By relegating claims subject to disallowance under section 502(e)(1)(B) and/or subordination under section 509(c) to their own class and providing such class with no recovery, the Plan ensures that the Debtors' potential joint tortfeasors and other codebtors are not permitted to dilute the recoveries of opioid victims whose claims will never be paid in full.

42. Accordingly, for the reasons set forth herein, the Claim should be reclassified as a Class 9(i) No Recovery Opioid Claim.

## RESERVATION OF RIGHTS

43. The Trustees expressly reserve the right to amend, modify, or supplement this Motion, object to the Claim on any grounds whatsoever, and to file additional motions or objections with respect to any other claims that may be asserted against the Opioid MDT II.

---

[5] *See* Confirmation Order at ¶ 90 ("As provided in the Liquidation Analysis, the Debtors face various Litigation Claims (as defined in the Liquidation Analysis) including the Opioid Claims and certain Acthar related Claims. Various litigation related creditors have asserted Claims against the Debtors in amounts totaling billions of dollars, and in some instances trillions of dollars, and such Claims are asserted against several or all of the Debtors in many instances."); *see also* Dkt. No. 6347 (Opinion confirming Plan) ("As of the Petition Date, the Debtors were named in more than 3,000 opioid related lawsuits alleging potentially trillions of dollars in damages.").

[6] *See* Dkt. No. 6347 (Opinion confirming Plan) ("In the years leading up to the commencement of these bankruptcy cases, Debtors faced an onslaught of litigation arising out of their production of certain drugs. On the one hand, certain Debtors, primarily those on the Specialty Generics side of the business, were named in over 3,000 lawsuits stemming from their production and sale of opioid medications (the "Opioid Litigation"). As of the Petition Date, Debtors had spent more than $100 million defending these suits and $30 million to settle just two of them. Litigation expenses were averaging a million dollars every week.").

44. Nothing in this Motion shall be deemed or construed: (a) as an admission as to the validity of any claim against the Opioid MDT II; (b) as a waiver of the Opioid MDT II's or the Trustees' rights to dispute or otherwise object to any claim on any grounds or basis; or (c) to waive or release any right, claim, defense, or counterclaim of the Opioid MDT II or the Trustees, or to estop the Opioid MDT II or the Trustees from asserting any right, claim, defense, or counterclaim (including setoff).

## **NOTICE**

45. Notice of this Motion will be provided to: (i) IQVIA, the holder of the Claim; (ii) the United States Trustee for the District of Delaware; (iii) the Debtors; and (iv) any party who has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

## **NO PRIOR REQUEST**

46. No prior request for the relief sought herein has been made by the Trustees to this or any other Court.

## **CONCLUSION**

For all the foregoing reasons, the undersigned counsel respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

[*Signature of counsel appears on following page*.]

| | |
|---|---|
| Dated: November 26, 2025<br>Wilmington, Delaware | **COLE SCHOTZ P.C.**<br><br>*/s/ Justin R. Alberto*<br>Justin R. Alberto (No. 5126)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 600<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117<br>jalberto@coleschotz.com<br>preilley@coleschotz.com<br><br>Anthony De Leo, Esq.<br>Julie A. Aberasturi, Esq.<br>1325 Avenue of the Americas<br>19th Floor<br>New York, NY 10019<br>Telephone: (212) 752-8000<br>Facsimile: (212) 752-8393<br>adeleo@coleschotz.com<br>jaberasturi@coleschotz.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Gerard T. Cicero, Esq.<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br>dmolton@brownrudnick.com<br>gcicero@brownrudnick.com<br><br>Jane W. Motter, Esq.<br>One Financial Center<br>Boston, MA 02110<br>Telephone: (617) 856-8200<br>Facsimile: (617) 856-8201<br>jmotter@brownrudnick.com<br><br>*Co-Counsel to the Opioid Master Disbursement Trust II* |