# EXHIBIT 1

# Tribal Abatement Fund Trust II

**Audited Financial Statements-Modified Cash Basis**
**For the year ended December 31, 2025**

# Tribal Abatement Fund Trust II

## Contents

Independent Auditor's Report 1-2

**Financial Statements – Modified Cash Basis**

Statement of Net Assets – Modified Cash Basis 3

Statement of Changes in Net Assets – Modified Cash Basis 4

Statement of Cash Flows – Modified Cash Basis 5

Notes to the Modified Cash Basis Financial Statements 6-10



**Plante & Moran, PLLC**
Suite 300
2601 Cambridge Court
Auburn Hills, MI 48326
Tel: 248.375.7100
Fax: 248.375.7101
plantemoran.com

**Independent Auditor's Report**

To the Trustees
Tribal Abatement Fund Trust II

### Opinion

We have audited the modified cash basis financial statements of Tribal Abatement Fund Trust II (the "Trust"), which comprise the statement of net assets - modified cash basis as of December 31, 2025 and the related statements of changes in net assets - modified cash basis and cash flows - modified cash basis for the year then ended, and the related notes to the modified cash basis financial statements.

In our opinion, the accompanying modified cash basis financial statements present fairly, in all material respects, the net assets of the Trust as of December 31, 2025 and the changes in its net assets and its cash flows for the year then ended in accordance with the modified cash basis of accounting described in Note 2 to the modified cash basis financial statements.

### Basis for Opinion

We conducted our audit in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the *Auditor's Responsibilities for the Audit of the Modified Cash Basis Financial Statements* section of our report. We are required to be independent of the Trust and to meet our ethical responsibilities in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Basis of Accounting

We draw attention to Note 2 to the modified cash basis financial statements, which describes the basis of accounting. As described in Note 2, the accompanying modified cash basis financial statements were prepared by Tribal Abatement Fund Trust II on the modified cash basis of accounting, which is a basis of accounting other than accounting principles generally accepted in the United States of America. As a result, the modified cash basis financial statements may not be suitable for another purpose. Our opinion is not modified with respect to this matter.

### Responsibilities of Management for the Modified Cash Basis Financial Statements

Management is responsible for the preparation and fair presentation of the modified cash basis financial statements in accordance with the modified cash basis of accounting described in Note 2 and for determining that the modified cash basis of accounting is an acceptable basis for the preparation of the financial statements in the circumstances. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the modified cash basis financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the modified cash basis financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern within one year after the date that the modified cash basis financial statements are issued or available to be issued.



To the Trustees
Tribal Abatement Fund Trust II

***Auditor's Responsibilities for the Audit of the Modified Cash Basis Financial Statements***

Our objectives are to obtain reasonable assurance about whether the modified cash basis financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and, therefore, is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the modified cash basis financial statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.

- Identify and assess the risks of material misstatement of the modified cash basis financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the modified cash basis financial statements.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.

- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the modified cash basis financial statements.

- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

*Plante & Moran, PLLC*

February 24, 2026

2

**Tribal Abatement Fund Trust II**
**Statement of Net Assets – Modified Cash Basis**
**December 31, 2025**

**Assets**

| | | |
|---|---|---|
| Cash and cash equivalents | $ | 4,649,848 |
| Prepaid expenses | | 15,531 |
| **Total assets** | | 4,665,379 |

**Liabilities**

| | | |
|---|---|---|
| Accounts payable | | 4,938 |
| **Total liabilities** | | 4,938 |
| **Net assets** | $ | **4,660,441** |

*See accompanying notes to the modified cash basis financial statements.*

3

**Tribal Abatement Fund Trust II**
**Statement of Changes in Net Assets – Modified Cash Basis**
**For the year ended December 31, 2025**

**Additions**

| | | |
|---|---|---:|
| Funding | $ | 731,064 |
| Interest income | | 148,140 |
| **Total additions** | | **879,204** |

**Deductions**

| | |
|---|---:|
| Distributions to Trust Beneficiaries | 32,940 |
| Operating expenses | 808,686 |
| **Total deductions** | **841,626** |

| | |
|---|---:|
| **Increase in net assets** | **37,578** |

**Net assets**

| | |
|---|---:|
| Beginning of the year | **4,622,863** |

| | | |
|---|---|---:|
| **End of the year** | $ | **4,660,441** |

*See accompanying notes to the modified cash basis financial statements.*

**Tribal Abatement Fund Trust II**
**Statement of Cash Flows – Modified Cash Basis**
**For the year ended December 31, 2025**

.

**Direct Method**

**Cash received from operating activities:**

| | | |
|---|---|---|
| Trust funding | $ | 731,064 |
| Investment income | | 148,140 |
| **Total cash inflows** | | **879,204** |

**Cash paid for operating activities:**

| | |
|---|---|
| Distributions to Trust Beneficiaries | (32,940) |
| Trust operating expenses | (805,882) |
| **Total cash outflows** | **(838,822)** |

| | | |
|---|---|---|
| **Net increase in cash and cash equivalents from operating activities** | | **40,382** |
| **Cash and cash equivalents at the beginning of the year** | | 4,609,466 |
| **Cash and cash equivalents at the end of the year** | $ | **4,649,848** |

*See accompanying notes to the modified cash basis financial statements.*

## Tribal Abatement Fund Trust II-Notes to the Modified Cash Basis Financial Statements

## 1. Description and Funding of the Trust

Tribal Abatement Fund Trust II ("TAFT II" or the "Trust") was formed and became effective on June 16, 2022, pursuant to the Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates (Mallinckrodt) under Chapter 11 of the Bankruptcy Code, dated February 18, 2022 (the Plan). The Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 *et seq*. of the Treasury Regulations promulgated under Section 468B of the IRC, and to the extent permitted by law, for state and local income tax purposes.

The Plan provides, inter alia, for the establishment of an Opioid Creditor Trust, as defined, with respect to Tribal Opioid Claims, as defined. As of the Effective Date, defined as June 16, 2022, any and all liability of the Debtors for any and all Tribe Opioid Claims shall automatically be channeled to and assumed by the Trust.

In accordance with the Tribal Abatement Fund Trust II Agreement (the Trust Agreement), the Trust shall (i) hold, manage and invest all funds and other Trust Assets received by the Trust from the Opioid MDT II (MDT II) for the benefit of the beneficiaries of the Trust; (ii) hold and maintain the TAFT II Operating Reserve; (iii) administer, process, and resolve all Tribe Opioid Claims in accordance with the TAFT II Trust Distribution Procedures (TDP); and (iv) pay all TAFT II Operating Expenses.

The Trust is funded with the consideration prescribed under the terms of the Plan through MDT II (also created under the Plan). Funds will be paid by Mallinckrodt to the MDT II, and MDT II will make distributions to TAFT II and other public and private Creditor Trusts. The MDT II consideration to be distributed to TAFT II is comprised of initial and deferred cash payments from Mallinckrodt, certain Warrants, and certain other non-cash assets as set forth under the Plan.

The initial cash distribution from MDT II was received by the Trust on June 17, 2022, in the amount of $5,357,220.

On December 8, 2022, the Warrants were monetized and a Trust affiliate, the Tribal Opioid Abatement Fund LLC, received the cash proceeds associated with the monetization of these Warrants in 2023. The cash proceeds of the monetization of the Warrants were $81,908 which was part of the cash distribution from MDT II to the Trust on August 29, 2023.

Due to the deteriorating financial situation of Mallinckrodt plc (the "Debtor"), on August 23, 2023, MDT II and other key stakeholders signed a restructuring support agreement (the "August 2023 RSA") with the Debtor.  Pursuant to the August 2023 RSA, MDT II agreed to

6

receive a one-time payment of $250 Million in lieu of the then-remaining Opioid Deferred Cash Payments under the earlier Plan of Reorganization.  This August 2023 agreement by MDT II meant, in effect, that the Debtor would be paying the MDT II Creditor Trusts (of which TAFT II is one), almost $1 Billion less than it had promised in 2022.  MDT II determined that due to the Debtor's significantly deteriorating financial circumstances, the RSA provided the best outcome available for its Creditor Trusts, including TAFT II.  In addition to the one-time $250 Million cash payment, the RSA also requires the Debtor to provide MDT II enhanced cooperation in connection with the third-party litigations it is pursuing on behalf of the Creditor Trusts (which should reduce costs related to those litigations), and provides warrants in Mallinckrodt plc, which could have some value if the Debtor's financial performance improves materially. Although MDT II may receive value from these warrants, any related distributions to TAFT II remain uncertain.

MDT II received the $250 Million cash payment contemplated in the August 2023 RSA on August 24, 2023, and on August 28, 2023, distributed to TAFT II its portion of that payment, $5,364,162, and on November 24, 2025, distributed to TAFT II its portion of that payment, $731,064. Although TAFT II may receive additional distributions from MDT II in the future in connection with the third-party litigations MDT II is pursuing on behalf of the Creditor Trusts, the outcome of these litigations, and any related distributions to TAFT II remain uncertain.  The third-party litigation matters in which TAFT II retains an interest that remain pending include an insurance coverage action, Opioid MDT II v. Ace America Ins. Co., et al., Case No. 22SL-CC02974 (Mo. Cir. Ct.), the Covidien spinoff action, Opioid MDT II v. Covidien Unlimited Co., et al., Adv. Pro. No. 22-50433 (Bankr. D. Del.), and the share repurchase program case, Opioid MDT II v. Argos Capital Appreciation Master Fund LP, et al., Adv. Pro. No. 22-50435 (Bankr. D. Del.).  MDT II periodically reports on these litigations pursuant to the Debtor's Plan of Reorganization.

Future cash received, if any, from the Debtor and MDT II will be recorded when received by the Trust.

The Trust will make Abatement Distributions, as set forth in the Tribal Abatement Fund Trust II Agreement, and in accordance with the TAFT II TDP, which provides for the Tribe Beneficiaries and Tribal Allocation Percentages. During the year ended December 31, 2025, the Trust made Abatement Distributions totaling $32,940. As of that date, cumulative Abatement Distributions from prior years amounted to approximately $4,050,000. In addition, the Trust has unpaid distributions to Trust Beneficiaries of approximately $3,503,000 at December 31, 2025, which will be disbursed to those Trust Beneficiaries upon approval from the Trustees and receipt from the Trust Beneficiaries of information required to complete the distribution payments.

7

## 2. Significant Accounting Policies

*Basis of accounting*

The Trust's policy is to prepare its financial statements on a modified cash basis, which is a comprehensive basis of accounting other than accounting principles generally accepted in the United States of America (U.S. GAAP). The modified cash basis methods include the following:

- Assets or additions to net assets are generally recorded when they are received by the Trust and expenses or deductions to net assets are generally recorded when the invoice is received from the vendor. The Trust records interest income when received. Under GAAP, interest income is recorded when earned.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets in the same period that the invoice for such contractual obligations or agreements are received by the Trust. Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

- The full amounts of Abatement Distributions will be recorded in the period in which the Abatement Distributions are paid. Under GAAP, a liability would be recorded for an estimate of the total Abatement Distributions to be made in accordance with the Trust Agreement and the TDP.

- Income tax expense payments or refunds, when applicable, will be recorded when paid or received. Under GAAP, a provision for income taxes is recorded based upon income reported for financial statement purposes, and federal and state income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities.

*Use of estimates*

The preparation of financial statements in conformity with the modified cash basis described above requires the Trust to make estimates and assumptions that affect the reported amounts of certain assets and liabilities and the disclosures of contingent assets and liabilities at the date of the modified cash basis financial statements, as well as the reported amounts of additions and deductions to the net assets during the reporting period. Actual results could differ from those estimates.

*Cash equivalents*

The Trust considers all highly liquid instruments with original maturities of three months or less to be cash equivalents.

8

*Prepaid expenses*

Payments for services to be received over an extended period in the future are recorded as a prepaid expense and amortized over the period in which the related benefits are received.

*Operating expenses*

Operating expenses of the Trust are recorded as reductions of net assets when invoices are received or, in the case of prepaid expenses when the benefit is received. Expenses settled by MDT II on behalf of the Trust through an expense allocation holdback are not reported by the Trust.

*Income taxes*

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations thereunder (the Code). As a result, the Trust is subject to federal income taxes based on modified gross income, as defined by the Code. In the opinion of the Trustees and the Trust's tax advisors, the Trust is not subject to state income taxes.

The Trust records income tax expense (or benefit) associated with amounts paid (or received) under current federal income taxes and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with any future benefit from the potential use of net operating loss carryforwards to reduce taxable income in future years.

The Trust paid $1,470 in income taxes during the year ended December 31, 2025. The Trust generated a net operating loss of approximately $661,000 for the year ended December 31, 2025, and it has cumulative net operating loss carryforwards of approximately $2,983,000 as of December 31, 2025. These net operating losses do not expire.

In accordance with authoritative guidance on accounting for uncertainty in income taxes issued by the Financial Accounting Standards Board, management has evaluated the Trust's tax positions and has concluded that the Trust has taken no uncertain tax positions that require disclosure.

*Risks and uncertainties*

Certain of the Trust's assets are exposed to credit risk. Cash and cash equivalents are maintained at financial institutions and, at times, balances may exceed federally insured limits. The Trust has never experienced any losses related to these balances.

9

## 3. Trustees' Fees

The Trust Agreement describes the compensation to be paid to the Trustees for their services, including out of pocket costs and expenses. During the year ended December 31, 2025, the Trust paid a total of $540,000 in Trustee fees.

## 4. Contingent Liabilities

The Trust Agreement subjects the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust. The probability of such claims cannot be reasonably determined. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustees. If a contingent liability were identified, it would be disclosed when probable and recognized in the financial statements when paid.

## 5. Subsequent Events

The Trust has evaluated its modified cash basis financial statements as of December 31, 2025, for subsequent events through February 24, 2026, the date the modified cash basis financial statements were available to be issued.