**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MALLINCKRODT PLC, *et al.*,[1] | ) | Case No. 20-12522 (BLS) |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | **Obj. Deadline: September 18, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: TBD** |

**MOTION OF GENERAL UNSECURED CLAIMS TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE GENERAL UNSECURED CLAIMS TRUSTEE AND RUSSELL SMESTAD, AS REPRESENTATIVE OF THE SECURITYHOLDERS OF STRATATECH CORPORATION**

Heather L. Barlow, solely in her capacity as the Trustee (the "GUC Trustee")[2] of the Mallinckrodt General Unsecured Claims Trust (the "GUC Trust" and, together with the GUC Trustee, the "Trust Parties"), by and through her undersigned counsel, respectfully submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, authorizing and approving a Settlement Agreement (the "Settlement Agreement") between the GUC Trustee, on behalf of the GUC Trust, and Russell Smestad, as Representative of the Securityholders of Stratatech Corporation (the "Representative," and together with the Securityholders of Stratatech Corporation, the "Securityholders"). The Trust

[1] A complete list of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of the Reorganized Debtors' claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt. The Reorganized Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] Capitalized terms used herein without definition shall have the meaning ascribed to them in the *General Unsecured Claims Trust Agreement* (the "Trust Agreement"), dated as of June 16, 2022, between the GUC Trustee and the Reorganized Debtors or the *Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt plc and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6660-1] (the "Plan"), as applicable.

Parties, the Representative, and the Securityholders are collectively referred to herein as the "Parties" and each individually as a "Party." In support of this Motion, the GUC Trustee respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. By this Motion, the GUC Trustee seeks authority to enter into a Settlement Agreement with the Representative and the Securityholders that fully and finally resolves all of the Securityholders' general unsecured claims arising from the rejection of that certain Agreement and Plan of Merger dated August 10, 2016 (the "Merger Agreement") between Mallinckrodt Hospital Products Inc. ("MHPI") and Stratatech Corporation ("Stratatech"), which was also executed by Mallinckrodt International Finance S.A. ("MIFSA"), as guarantor.

2. The Representative filed three proofs of claim on behalf of the Securityholders: Claim No. 52635 against MIFSA, Claim No. 52636 against MHPI, and Claim No. 52637 against MHPI (collectively, the "Smestad Claims"). The Smestad Claims assert rejection damages in connection with the Merger Agreement, including contingent milestone payments and royalties, and were ***each*** filed in the amount of $101,000,000. Under the proposed settlement, which is the result of a successful mediation administered by JAMS, the Smestad Claims have been resolved as follows: Claim No. 52635 shall be allowed as a general unsecured claim against MIFSA in the amount of $17,839,668.00, Claim No. 52636 shall be allowed as a general unsecured claim against MHPI in the amount of $17,839,668.00, and Claim No. 52637 shall be disallowed and expunged as duplicative of Claim No. 52636, provided that in no event shall the aggregate distributions received on account of the allowed claims exceed $17,839,668.00 in actual cash dollars.

[3] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

3. Pursuant to the Trust Agreement, the GUC Trustee is required to seek the Bankruptcy Court's approval of the Settlement Agreement. For the reasons set forth below, the GUC Trustee submits that the settlement comports with the *Martin* factors (discussed below) and is fair, reasonable, and in the best interests of the GUC Trust and its stakeholders.[4] Accordingly, the GUC Trustee respectfully requests that the Motion be granted.

## JURISDICTION

4. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Parties consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested are section 105(a) of the Bankruptcy and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A. General Background

5. On October 12, 2020 (the "Petition Date"), Mallinckrodt plc and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors") commenced their

[4]Since her appointment, the GUC Trustee has worked cooperatively with the Reorganized Debtors to review and analyze claims and to work to resolve them where possible, in the interests of all stakeholders.

chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

6. Thereafter, the Debtors continued to operate their businesses as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

7. On October 14, 2020, the Court entered an order authorizing the joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1. *See* D.I. 210.

**B. <u>The Plan and the GUC Trust</u>**

8. On February 3, 2022, the Bankruptcy Court confirmed the Plan. Among other things, the Plan provided for the creation of the GUC Trust for the benefit of General Unsecured Creditors. The Plan also incorporated the UCC Settlement which was filed on September 3, 2021 [D.I. 4121] and provides for, among other things, (i) the distribution of certain cash and non-cash consideration to Class 6 creditors via the GUC Trust, and (ii) an allocation of that consideration among the Class 6 subclasses. *See* Plan at § III.B.6, Exhibit 6. The Plan also provides for the assumption by the GUC Trust of Class 6 and certain Class 7 Claims, and, in connection therewith, the right to resolve all such Claims. *Id*. § IV.HH. 1, 7.

9. Pursuant to section 4.11.1 of the Trust Agreement, the GUC Trustee is responsible for "administering, disputing, compromising and settling or otherwise resolving and finalizing payments or other distributions with respect to Holders of General Unsecured Claims that are General Unsecured Claims Trust Beneficiaries under the Plan." Trust Agreement § 4.11.1. In addition, pursuant to section 4.11.2 of the Trust Agreement, "[t]he General Unsecured Claims Trustee, in consultation with the General Unsecured Claims Trust Advisory Committee, shall seek Bankruptcy Court approval of the resolution of any General Unsecured Claim proposed to be

allowed (as defined in the Bankruptcy Code) in an amount in excess of $1,000,000, on notice and, to the extent the Court so requires, a hearing." Trust Agreement § 4.11.2.

10. The Plan became effective on June 16, 2022 (the "Effective Date"). *See* D.I. 7652. Simultaneously therewith, the GUC Trust was formed, and the GUC Trustee was appointed.

**C. The Smestad Claims**

11. The Smestad Claims arise out of the Merger Agreement, pursuant to which MHPI acquired Stratatech on August 10, 2016. Under the Merger Agreement, MHPI agreed to make certain contingent milestone payments (the "Milestone Payments") to the Securityholders upon achievement of specified FDA regulatory events related to Stratatech's product, StrataGraft, as well as a percentage of net sales made under a Project BioShield Contract with BARDA (the "BARDA Agreement"). MIFSA guaranteed MHPI's performance under the Merger Agreement. Russell Smestad ("Smestad") was appointed as the representative for the Securityholders.

12. The Merger Agreement provided for five Milestone Payments, each payable upon the occurrence of a specified regulatory event: (i) $20 million upon FDA acceptance of a product application for StrataGraft for deep partial thickness burns (the "First Milestone Payment"); (ii) $20 million upon FDA approval of StrataGraft for deep partial thickness burns (the "Second Milestone Payment"); (iii) $20 million upon FDA acceptance of a product application for StrataGraft for full thickness burns (the "Third Milestone Payment"); (iv) $25 million upon FDA approval of StrataGraft for full thickness burns (the "Fourth Milestone Payment"); and (v) $20 million upon regulatory approval of StrataGraft for burns in a specified international jurisdiction (the "Fifth Milestone Payment," collectively with the Second, Third, and Fourth Milestone Payment, the "Contingent Milestone Payments"). The First Milestone Payment was earned and paid in August 2020, prior to the Petition Date. The Second Milestone Payment was earned in

June 2021, during the pendency of the Chapter 11 Cases, but was not paid due to the pending bankruptcy proceedings.

13. On July 15, 2022, Smestad, on behalf of the Securityholders, filed Claim No. 52635 against MIFSA and Claim No. 52636 against MHPI, each asserting rejection damages in connection with the Merger Agreement, including the Contingent Milestone Payments and royalties under the BARDA Agreement. Smestad also filed Claim No. 52637 against MHPI on the same date in the same amount.

14. On August 12, 2022, Smestad filed four administrative expense claims related to the Merger Agreement. Thereafter, the Securityholders received a payment pursuant to a settlement agreement with the Reorganized Debtors on June 11, 2024. On June 28, 2024, the Securityholders withdrew the administrative expense claims with prejudice, but reserved all rights to assert remaining rejection damages claims against the Debtors' estates.

15. On January 4, 2024, the Reorganized Debtors announced they were ceasing commercialization and clinical development and winding down production of StrataGraft due to insufficient market uptake. The cessation of the StrataGraft program eliminated the possibility that any remaining Contingent Milestone Payments (other than the Second Milestone Payment) or related BARDA net sales payments would be payable to the Securityholders. Moreover, under the Merger Agreement, any remaining Contingent Milestone Payments were set to automatically expire to the extent not triggered by August 10, 2026, the ten-year anniversary of the closing of the Merger Agreement.

**D. <u>The Mediation</u>**

16. The Settlement Agreement is the result of good faith, arm's length negotiations achieved through a mediation administered by JAMS (Reference No. 7400000336). The GUC Trustee and the Representative agreed to mediate their disputes concerning the Smestad

Claims and participated in a mediation session on August 26, 2026, after which the Parties reached agreement on the terms set forth in the Settlement Agreement.

**E. The Settlement Agreement**

17. On August 26, 2026, the Parties executed the Settlement Agreement attached as **Exhibit 1** to the Proposed Order. In the Settlement Agreement, the Parties have agreed to resolve the Smestad Claims on the following terms, among others:

- **Allowance of Claims**. Upon the Proposed Order becoming a final order no longer subject to appeal or, if appealed, no longer subject to reversal or modification, Claim No. 52635 shall be allowed as a general unsecured claim against MIFSA in the amount of $17,839,668.00 (the "Allowed MIFSA Claim"), and Claim No. 52636 shall be allowed as a general unsecured claim against MHPI in the amount of $17,839,668.00 (the "Allowed MHPI Claim," and together with the Allowed MIFSA Claim, the "Allowed Securityholder Claims"). In no event shall the aggregate distributions received by the Representative, the Securityholders, or any other person on account of the Allowed Securityholder Claims exceed $17,839,668.00 in actual cash dollars.

- **Disallowance of Duplicative Claim**. Claim No. 52637, filed against MHPI, shall be disallowed and expunged in its entirety as duplicative of Claim No. 52636. Distributions to the Securityholders shall first be made on account of the Allowed MHPI Claim, and thereafter, to the extent of any remaining balance due on the Allowed Securityholder Claims, on account of the Allowed MIFSA Claim. The GUC Trust shall remain open and active as to the administration of the MIFSA estate, and the GUC Trustee shall hold and reserve cash in an amount equal to the distribution that would have been made to the Securityholders against the full unpaid balance of the Allowed MIFSA Claim, until such time as all pro rata distributions on account of the Allowed Securityholder Claims have fully concluded.

- **Prior Payment**. The Parties acknowledge that the Securityholders have previously received a payment pursuant to a settlement agreement with the Reorganized Debtors dated June 11, 2024. Such prior payment shall not reduce or offset the amount of the Allowed Securityholder Claims set forth in the Settlement Agreement.

- **Mutual Releases**. Once the order approving the Settlement Agreement becomes a final order, the Representative and the Securityholders shall release and discharge the GUC Trustee and certain related parties from any and all claims arising out of or related to the Smestad Claims, the Merger Agreement, and the Chapter 11 Cases, other than claims related to enforcement of the Settlement Agreement and the distribution entitlements set forth therein. Similarly, the GUC Trustee shall, on behalf of the GUC Trust, release and discharge the Representative and the Securityholders and certain related parties from any and all claims arising out of or related to the Smestad Claims, the Merger Agreement, and

the Chapter 11 Cases, other than claims related to enforcement of the Settlement Agreement.

## RELIEF REQUESTED

18. By this Motion, the GUC Trustee requests the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, and substantially in the form annexed hereto as **Exhibit A**, authorizing and approving the Settlement Agreement attached thereto as **Exhibit 1** and the settlements contemplated therein, including the allowance of Claim No. 52635 and Claim No. 52636 (the Allowed Securityholder Claims) and the disallowance of Claim No. 52637. The GUC Trustee has determined that the Settlement Agreement resolves the Smestad Claims in a timely and efficient manner without expending unnecessary trust resources, and represents a compromise between the Parties that is fair and reasonable in light of the relevant facts and circumstances.

## BASIS FOR RELIEF REQUESTED

19. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

20. Bankruptcy Rule 9019 governs the procedural prerequisites for approval of a settlement to which the debtor is a party and provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

21. The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted*); see also In re World Health Alts., Inc., 344 B.R. 291, 296* (Bankr. D. Del. 2006) (finding that settlements are "generally favored in bankruptcy"). Furthermore, the decision to accept or reject a compromise or settlement is within the sound discretion of the Bankruptcy Court. *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

22. In exercising this discretion, courts are not required to be convinced that a proposed settlement is the best possible outcome. *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (citing *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)). Rather, under Bankruptcy Rule 9019, a court "must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018).

23. Courts consider four factors when evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393. In evaluating these factors, "the settlement need only be 'above the lowest point in the range of reasonableness.'" *TSIC*, 393 B.R. at 79 (quoting *In re Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992)).

24. The GUC Trustee believes that each of the relevant *Martin* factors weighs in favor of approving the Settlement Agreement, and that the Settlement Agreement lies well above the lowest point in the range of reasonableness.[5]

25. ***The Probability of Success in Litigation***. The GUC Trustee submits that there are *bona fide* disputes as to the proper sizing of the Smestad Claims. These disputes include, among other things, whether the Smestad Claims possess prima facie validity given the absence of any factual substantiation of the probability of the contingent milestone events occurring as of the Petition Date, and, assuming the claims possess *prima facie* validity, the proper valuation of the Contingent Milestone Payments as of the Petition Date, which would require, among other things, a determination as to the appropriate probability-weighted assessment and discount rate to be applied to the contingent obligations. On the other hand, the Securityholders assert that the probability of various Contingent Milestone Payments can be validated and supported. Indeed, the Second Milestone (a $20,000,000 liability) did, in fact, occur during the pendency of the chapter 11 cases, which supports allowance of a claim in excess of the compromised settlement amount.

26. The GUC Trustee believes that the Smestad Claims, to the extent they seek amounts in excess of $17,839,668.00, are unlikely to be allowed and would vigorously contest such claims during the claims-administration process. At the same time, the Securityholders assert that the amounts asserted in the Smestad Claims are likely to be allowed in significantly higher amounts than are being agreed to in the Settlement Agreement. The GUC Trustee's position is that no amounts on the Contingent Milestone Payments were earned and unpaid as of the Petition Date, and accordingly, the claim sizing should be $0.00, or alternatively, no greater than $17,839,668.00 based on the Debtors' own probability-weighted valuation (which was valued by

[5] In addition, as required by the Trust Agreement, the GUC Trustee has consulted with the General Unsecured Claims Trust Advisory Committee concerning this Settlement Agreement.

the Debtors at $19.1 million in Mallinckrodt's 2020 10-K). Notwithstanding this, the disputes that will be resolved pursuant to the Settlement Agreement carry with them inherent uncertainties and significant expense, and there is no assurance that a better result for the GUC Trust would be achieved through protracted litigation.

27. Absent the compromises set forth in the Settlement Agreement, there is a chance that the GUC Trustee would engage in expensive and time-consuming litigation in connection with the Smestad Claims and ultimately would not prevail with respect to some or all of them. While the GUC Trustee does not believe that is likely, the consequences of less than complete success on litigating objections to the Smestad Claims could have adverse consequences for the GUC Trust and its beneficiaries. The Settlement Agreement eliminates these risks and, accordingly, satisfies this factor.

28. ***The Likely Difficulties in Collection***. Distributions on account of the Allowed Securityholder Claims will be made on a *pro rata* basis from the applicable Debtor's estate. Specifically, distributions shall first be made on account of the Allowed MHPI Claim from the MHPI estate, and only thereafter, to the extent any balance remains due on the Allowed Securityholder Claims, shall distributions be made on account of the Allowed MIFSA Claim from the MIFSA estate. There is no guarantee that the Allowed Securityholder Claims will be paid in full. The actual recovery received by the Securityholders will depend on the *pro rata* distribution rates applicable to each Debtor's estate, which are subject to the overall claims pool and available assets at each entity. This sequencing and the attendant uncertainty of full recovery further support the reasonableness of the Settlement Agreement, as the Securityholders bear the risk that distributions from one or both estates may be insufficient to satisfy the full allowed amount.

29. ***The Complexity of the Litigation and the Attendant Expense, Inconvenience and Delay***. Litigation pertaining to the Smestad Claims would require both Parties to engage experts on complex factual issues related to the valuation of the Contingent Milestone Payments as of the Petition Date (which were valued by the Debtors at $19.1 million in the 2020 10-K), including the appropriate probability-weighted assessment and discount rate, causing both Parties to expend significant time and resources. Such litigation would also require extensive discovery and expert testimony regarding the Debtors' contemporaneous valuations, the regulatory prospects for StrataGraft as of the Petition Date, and the proper methodology for estimating contingent claims under section 502(c) of the Bankruptcy Code.

30. Without the agreement embodied in the Settlement Agreement, the GUC Trustee would be forced to expend substantial resources litigating these disputes to the detriment of creditors and other stakeholders of the GUC Trust.

31. ***The Paramount Interests of the Creditors***. The Settlement Agreement is in the paramount interest of the beneficiaries of the GUC Trust. Most significantly, the Smestad Claims were ***each*** asserted in the amount of $101,000,000. Through the mediation process, those claims have been resolved at a ***total*** of $17,839,668.00, as allowed against the MHPI and MIFSA estates.[6] This outcome directly preserves significant value for all other beneficiaries of the GUC Trust. In addition, as discussed above, approval of the Settlement Agreement would (a) avoid what would certainly be costly and time-consuming litigation, (b) eliminate litigation risk, (c) provide immediate benefits to the GUC Trust through the allowance or disallowance (as applicable) of the Smestad Claims, as provided for in the Settlement Agreement, and (d) enable

[6] For the avoidance of doubt, in no event shall the aggregate distributions received by the Representative, the Securityholders, or any other person on account of the Allowed Securityholder Claims exceed $17,839,668.00 in actual cash dollars.

the GUC Trust to make distributions without having to establish reserves or go through a claims estimation hearing.

32. In the business judgment of the GUC Trustee, the value of these benefits exceeds the net benefits that could potentially be obtained through litigation, given the complexities, uncertainties, delays, and costs associated with such litigation.

33. Based on the foregoing, the GUC Trustee contends that the settlement of the Smestad Claims embodied in the Settlement Agreement satisfies Bankruptcy Rule 9019, is fair, reasonable, and in the best interests of the GUC Trust and its stakeholders. The Settlement Agreement (a) satisfies the *Martin* factors, (b) allows the Parties to avoid litigation related to the Smestad Claims and any associated costs, risks, and distractions, and (c) preserves the value of the GUC Trust to maximize the recoveries of the beneficiaries of the General Unsecured Claims Trust. As such, the GUC Trustee respectfully requests that the Court enter an order approving the Settlement Agreement.

## **NOTICE**

34. Notice of this Motion will be provided to the parties listed in Local Bankruptcy Rule 2002-1(b). The GUC Trustee submits that, under the circumstances, no other or further notice is required.

## **NO PRIOR REQUEST**

35. No previous request for the relief sought herein has been made by the GUC Trustee to the Bankruptcy Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the GUC Trustee respectfully requests that the Court (i) grant the relief requested in this Motion and enter the Proposed Order and (ii) grant such other and further relief as is just and proper.

Dated: September 4, 2026
Wilmington, Delaware

**ROBINSON & COLE LLP**

*/s/ Natalie D. Ramsey*
Natalie D. Ramsey (DE Bar No. 5378)
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Tel: (302) 516-1700
Fax: (302) 516-1699
nramsey@rc.com

*-and-*

Rachel Jaffe Mauceri (admitted *pro hac vice*)
1650 Market Street, Suite 3030
Philadelphia, PA 19103
Tel: (215) 398-0556
rmauceri@rc.com

*-and-*

**GOODWIN PROCTER LLP**
James F. Lathrop (DE Bar No. 6492)
Howard Steel (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Email: jlathrop@goodwinlaw.com
hsteel@goodwinlaw.com

*Counsel to the GUC Trustee*