# **EXHIBIT 1**

Annual Report for the Period of January 1, 2025 through December 31, 2025

# Mallinckrodt Opioid Personal Injury Trust
# Annual Report
# For the Reporting Period of
# January 1, 2025 through December 31, 2025

## Table of Contents


| Section | Page Number |
|---|---|
| **Introduction** | **2** |
| **Reporting Period Activities** | **2** |
| **Financial Update** | **4** |
| **Claims Update** | **5** |
| **Appendices** | **7** |
| ***Appendix 1: Statement of Assets, Liabilities and Trust Balance*** | ***8*** |
| ***Appendix 2: Schedule of Receipts Collected, Expenses Paid and Changes in Trust Balance*** | ***9*** |
| ***Appendix 3: Budget-to-Actual Expense Comparison for Year Zero, Year One, Year Two and Year Three*** | ***11*** |
| ***Appendix 4: Independent Auditor's Report as of December 31, 2025 and 2024 (Forvis Mazars)*** | ***12*** |


September 23, 2026

# Mallinckrodt Opioid Personal Injury Trust

## Annual Report for Period
## January 1, 2025 through December 31, 2025

**Introduction**

The Mallinckrodt Opioid Personal Injury Trust (the "Trust") was established pursuant to the Chapter 11 Plan confirmed in the bankruptcy cases of Mallinckrodt plc, *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del.) (the "Plan").[1] The Plan was confirmed by Order dated March 2, 2022, and the Plan and the Trust both became effective June 16, 2022, although the Trust was formally established as a Qualified Settlement Fund on April 7, 2022.

The Trust's primary responsibilities are to assume all liabilities and responsibility for all of Mallinckrodt's Personal Injury/Neonatal Abstinence Syndrome ("NAS") Claims, to resolve and make distributions in respect of such Allowed Non-NAS PI Claims and Allowed NAS PI Claims, and use the Trust Assets and income to meet its obligations.

Pursuant to Section 2.2(e)(iii) of the Trust Agreement, the Trust is obligated to prepare and provide Annual Reports on the financial condition of the Trust to the PI Committee, the NAS Representative, and the Future Claimants' Representative.

**Reporting Period Activities - January 1, 2025 through December 31, 2025 (the "Period")**

For the Period, the Trust has undertaken the activities necessary to ensure efficient functioning, including, but not limited to, the following:

---

[1] Capitalized terms used but not herein defined shall have the meaning ascribed to them in the Plan.

- Accounting, Financial Reporting, and Tax:
  Trustee personnel maintained the Trust books and records, reconciled Trust bank accounts, handled and managed Trust disbursements (as approved by the Trust Personal Injury ("PI") Committee), and other Trust financial and accounting tasks. The Trustee utilized internal accounting control procedures, which were reviewed and approved by the Trust Financial Advisor. Trustee personnel monitored Trust expenses for Year Zero, Year One, Year Two and Year Three of the revised lifetime budget for the Trust (with the revised Trust Budget being developed by the Trustee, in collaboration with the PI Committee, the Future Claimants' Representative, and the NAS Representative). The 2024 Annual Report for the Trust was filed with the Court on October 16, 2025.

- Audit and Tax Return Services: Trustee personnel worked with Forvis Mazars, the Trust auditor, to finalize the Trust's third audit, which covered the period of January 1, 2024 through December 31, 2024. The audit report was provided to the Constituencies at the December 3, 2025 quarterly meeting, with Forvis Mazars being invited to the meeting to present the audit report. The Trust's Federal and State income tax returns for calendar year 2024 were prepared by Trust personnel and reviewed by Forvis Mazars and timely filed on July 21, 2025. Trustee personnel worked with Forvis Mazars to review and approve the 2025 Audit and Tax Return Review engagement, which was scheduled to begin in early 2026.

- Claimant Payments: Claimant payments began in February 2024 and continued during the Period, with over $8.1 Million in claimant payments being issued.

- Computer Programmer: Standard maintenance of the Portal and resolution of issues by the Computer Programmer continued during the Period.

- Federal Income Tax: During the Period, Trustee personnel computed the estimated Federal income tax that might be due for the 2025 tax year and made $36,100.00 in Federal estimated tax payments, to ensure that all of the estimated 2025 Federal

income tax was paid in through the fourth estimated tax payment date of December 15, 2025. Following year-end, Trustee personnel revisited the estimated Federal income tax calculation and were able to confirm the adequacy of the estimated Federal income tax payments made, with a projected overpayment of $495.00, which will be credited to 2026.

**Financial Update**

During the Period, the Trust received $5,032,663.99 and disbursed $9,042,084.28, for a net disbursement of $4,009,420.29. At the end of the Period, the Trust balance was $40,616,805.71, on a modified cash basis.

The Trust's receipts were comprised of $1,598,613.99 of interest income and $3,434,050.00 of debtor funding.

The Trust's disbursements during the Period were comprised of $9,042,084.28 on account of Trust expenses.

The Trust's ending balance for Cash and Cash Equivalents was $40,667,338.21. At that time: (i) $340,055.30 was held in a Commercial Interest-Bearing Checking Account; (ii) $15,926.92 was held in a Commercial Interest-Bearing Common Benefit Escrow Account[2]; and (iii) $40,311,355.99 was held in the IntraFi Financial Network Deposited Account[3].

*Refer to Appendices 1, 2, and 3 for additional financial details*

---

[2] This amount represents 40% of the common benefit assessment due on NAS claimant payments held in escrow until the NAS Counsel expense reimbursements are received and approved, with such payments beginning in September 2024.

[3] This account earns interest and is 100% FDIC-insured.

**Claims Update**

Trustee personnel continued processing both NAS and Non-NAS claims during the Period, and returned deficiency information reviews with claims updated accordingly. Both processing and deficiency distribution/reviews continued during the Period.

In January 2024, Trustee personnel compiled Claimant Payment Batch 1, with Claimant Payment Batch 82 being issued in Early September 2026. Trustee personnel also established internal controls governing the approval and payment of claimant payments and the 5% Common Benefit assessment. The Trustee also worked with NAS Counsel and Counsel for the Common Benefit Fund to address the request by NAS Counsel that 40% of the Common Benefit assessment be used as a credit for NAS claimant expenses. Counsel for the Common Benefit Fund agreed to the Trust establishing a separate escrow account, which would hold 40% of the Common Benefit assessment due to be paid with each claimant payment batch, with this issue eventually being resolved during 2024 in favor of NAS Counsel, with such payments beginning in September 2024. During the Period, Trustee personnel continued to direct 40% of the 5% Common Benefit assessment on NAS claimant payments to this separate escrow account.

The Trust claims status summary at December 31, 2025 was as follows:

| CLAIMS RECEIVED AND PROCESSED | Non-NAS | NAS |
|---|---|---|
| Claims Submitted | 38,815 | 3,355 |
| Scored | 29,931 | 2,831 |
| Claims in Process | 4,294 | 301 |
| Submittal Incomplete or Unable to Import/Score | 4,590 | 223 |
| Reconciliation | 0 | 0 |

| CLAIMS AWARDED AND PAID | Non-NAS | NAS |
|---|---|---|
| Awards/Releases Prepared | 17,374 | 2,522 |
| Releases Completed | 829 | 60 |
| Award Payments Made | 13,972 | 1,909 |
| Reconciliation (Releases Not Completed) | 2,573 | 553 |

Mallinckrodt Opioid Personal Injury Trust

# Appendices

APPENDIX I

# MALLINCKRODT OPIOID PERSONAL INJURY TRUST
## STATEMENT OF ASSETS, LIABILITIES AND TRUST BALANCE
## At December 31, 2025
## (On a Modified Cash Basis)

| | | |
|---|---|---|
| **ASSETS** | | |
| **CASH AND CASH EQUIVALENTS** | | |
| Cash and Cash Equivalents - Checking - Huntington Bank | $ | 340,055.30 |
| Cash and Cash Equivalents - Common Benefit Escrow Account - Huntington Bank * | $ | 15,926.92 |
| Cash and Cash Equivalents - IntraFi Network Deposits - Huntington Bank ** | $ | 40,311,355.99 |
| **TOTAL CASH AND CASH EQUIVALENTS** | $ | 40,667,338.21 |
| **OTHER CURRENT ASSETS** | | |
| Prepaid Federal Tax*** | $ | 495.00 |
| **TOTAL OTHER CURRENT ASSETS** | $ | 495.00 |
| **TOTAL ASSETS** | **$** | **40,667,833.21** |
| **LIABILITIES AND TRUST BALANCE** | | |
| Accounts Payable **** | $ | 51,027.50 |
| Trust Balance | $ | 40,616,805.71 |
| **TOTAL LIABILITIES AND TRUST BALANCE** | **$** | **40,667,833.21** |

---

* This interest-bearing bank account contains deposits that represent 40% of the 5% Common Benefit assessments (on NAS claimant payments) that are due with each claimant payment batch. These amounts are to be held in this escrow account until NAS Counsel expense reimbursements are received and approved, with such payments beginning in September 2024.

** This investment option ensures 100% FDIC protection.

*** This amount represents an overpayment of estimated Federal income tax for 2025, which will be credited to 2026.

**** This amount consists of: (i) $45,000.00 for December 2025 Trust and Claims Administrator fees and expenses; (ii) $525.00 for audit fees on the 2024 audit engagement; and (iii) $5,502.50 for December 2025 FCR fees.

# APPENDIX 2
# MALLINCKRODT OPIOID PERSONAL INJURY TRUST
# SCHEDULE OF RECEIPTS COLLECTED, EXPENSES PAID AND CHANGES IN TRUST BALANCE
## January 1, 2025 - December 31, 2025
## (On a Modified Cash Basis)

| | | | | |
|---|---|---|---|---|
| **A. RECEIPTS:** | | | | |
| Debtor Funding - CVR Agreement Termination [1] | | | $ | 3,434,050.00 |
| Interest Income - Checking - Huntington Bank | | | $ | 5,901.61 |
| Interest Income - IntraFi Network Deposits - Huntington Bank | | | $ | 1,592,712.38 |
| **TOTAL RECEIPTS** | | | **$** | **5,032,663.99** |
| **B. DISBURSEMENTS:** | | | | |
| Computer Programmer (Hagimo) | | | $ | 35,000.00 |
| Delaware Trustee (Wilmington Trust) | | | $ | 6,230.50 |
| Director & Officers Liability Insurance (AoN) | | | $ | 24,000.00 |
| Federal Income Tax | | | $ | 35,605.00 |
| Financial Advisor (FTI Consulting) | | | $ | 3,324.00 |
| Future Claimants' Representative Fees | | | $ | 55,623.00 |
| NAS and Non-NAS Awards | | | | |
| Claims Preparation Fee (Milestone) | $ | 228,578.80 | | |
| Common Benefit Assessment [2] | $ | 535,624.88 | | |
| Lien Payments | $ | 189,780.83 | | |
| NAS Attorney Case Expenses | $ | 88,375.00 | | |
| NAS Attorney Fees and Claimant Payments - Combined | $ | 13,541.96 | | |
| NAS Claimant Payments | $ | 238,361.84 | | |
| Non-NAS Attorney Fees | $ | 2,865,914.69 | | |
| Non-NAS Attorney Case Expenses | $ | 452,225.13 | | |
| Non-NAS Attorney Fees and Claimant Payments - Combined | $ | 1,063,344.83 | | |

---

[1] This amount represents the CVR Agreement Termination Distribution from the Opioid Master Disbursement Trust II.

[2] This amount is comprised of 60% of the 5% Common Benefit assessments that are due with each NAS claimant payment batch, and 100% of the 5% Common Benefit assessments that are due with each Non-NAS claimant payment batch.

**APPENDIX 2**
**MALLINCKRODT OPIOID PERSONAL INJURY TRUST**
**SCHEDULE OF RECEIPTS COLLECTED,**
**EXPENSES PAID AND CHANGES IN TRUST BALANCE**
**January 1, 2025 - December 31, 2025**
**(On a Modified Cash Basis)**

| | | |
|---|---|---|
| Non-NAS Claimant Payments | $ 2,441,850.32 | $ 8,117,598.28 |
| Outside Financial Audit and Income Tax Return Review (Forvis/Mazars) | | $ 32,203.50 |
| Trust and Claims Administrator Fees and Expenses | | $ 732,500.00 |
| **TOTAL DISBURSEMENTS** | | **$ 9,042,084.28** |
| **TOTAL RECEIPTS OVER (UNDER) TOTAL DISBURSEMENTS OF THE MNK TRUST** | | **$ (4,009,420.29)** |
| **D. TRUST BALANCE:** | | |
| **BEGINNING OF PERIOD** | | **$ 44,626,226.00** |
| **ADD: TOTAL RECEIPTS OVER (UNDER) TOTAL EXPENSES OF THE MNK TRUST** | | **$ (4,009,420.29)** |
| **END OF PERIOD BALANCE OF THE MNK TRUST** | | **$ 40,616,805.71** |

**APPENDIX 3**

**Mallinckrodt Opioid Personal Injury Trust**

**Settlement Administration Budget Excluding NAS and Non-NAS Awards**

**Budget-to-Actual Expense Comparison for Year Zero, Year One, Year Two and Year Three**

| | Advances Plus Year Zero Budget (April 2022 - June 2023) | Revised Year One Budget (July 2023 - June 2024) | Revised Year Two Budget (July 2024 - June 2025) | Revised Year Three Budget (July 2025 - June 2026) [2] | Total Budget Year Zero Through Year 3 | Year Zero, Year One, Year Two and Year Three Actual (April 2022 - December 2025) | Year Zero, Year One, Year Two and Year Three Budget Remaining | Percent of Budget Remaining |
|---|---|---|---|---|---|---|---|---|
| **Trust and Claims Administator Fees and Expenses [1]** | **$ 1,961,829.85** | **$ 847,720.00** | **$ 593,092.00** | **$ 835,083.00** | **$ 4,237,724.85** | **$ 3,740,693.55** | **$ 497,031.30** | 11.73% |
| **Professional Fees/Costs** | | | | | | | | |
| IT Developer (Hagimo) [4] | $ 286,200.00 | $ 120,000.00 | $ 37,500.00 | $ 9,375.00 | $ 453,075.00 | $ 453,075.00 | $ - | 0.00% |
| Econometrician (Nera) [4] | $ 180,000.00 | $ 77,500.00 | $ - | $ 50,000.00 | $ 307,500.00 | $ 307,500.00 | $ - | 0.00% |
| Directors & Officers Liability Insurance | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 40,000.00 | $ 160,000.00 | $ 128,000.00 | $ 32,000.00 | 20.00% |
| Financial Advisor (FTI (Guy Davis)) | $ 200,000.00 | $ 150,000.00 | $ 62,500.00 | $ 15,625.00 | $ 428,125.00 | $ 176,859.00 | $ 251,266.00 | 58.69% |
| Future Claimants' Representative (including FCR Counsel and Forecaster) | $ 600,000.00 | $ 300,000.00 | $ 150,000.00 | $ 150,000.00 | $ 1,200,000.00 | $ 421,303.10 | $ 778,696.90 | 64.89% |
| Lien Administrator (Massive) [1] | $ 4,365,900.00 | $ 2,178,900.00 | $ 1,555,200.00 | $ - | $ 8,100,000.00 | $ 8,034,100.00 | $ 65,900.00 | 0.81% |
| NAS Neonatologist Expert (Dr. Hocker) | $ 15,000.00 | $ - | $ - | $ - | $ 15,000.00 | $ - | $ 15,000.00 | 100.00% |
| NAS Representative (including NAS Representative Counsel) | $ 45,000.00 | $ 22,500.00 | $ 11,250.00 | $ - | $ 78,750.00 | $ - | $ 78,750.00 | 100.00% |
| Nomos | $ 60,000.00 | $ 100,000.00 | $ 100,000.00 | $ - | $ 260,000.00 | $ - | $ 260,000.00 | 100.00% |
| Notice By Publication [3, 4] | $ 41,000.00 | $ - | $ - | $ - | $ 41,000.00 | $ 41,000.00 | $ - | 0.00% |
| Outside Financial Audit and Income Tax Return Review | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 200,000.00 | $ 104,727.00 | $ 95,273.00 | 47.64% |
| Trust Advisory PI Committee | $ 206,479.00 | $ 114,693.00 | $ 71,683.00 | $ 17,921.00 | $ 410,776.00 | $ 127,662.69 | $ 283,113.31 | 68.92% |
| Trustee (Delaware) Fee [4] | $ 6,250.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 36,250.00 | $ 36,250.00 | $ - | 0.00% |
| **Total Professional Fees/Costs** | **$ 6,095,829.00** | **$ 3,163,593.00** | **$ 2,088,133.00** | **$ 342,921.00** | **$ 11,690,476.00** | **$ 9,830,476.79** | **$ 1,859,999.21** | 15.91% |
| **Total Fees and Expenses, All Phases** | **$ 8,057,658.85** | **$ 4,011,313.00** | **$ 2,681,225.00** | **$ 1,178,004.00** | **$ 15,928,200.85** | **$ 13,571,170.34** | **$ 2,357,030.51** | 14.80% |
| **Contingency Reserve for Unknown Expenses [4]** | $ 381,266.69 | $ 200,566.00 | $ 134,061.00 | $ 1,000,000.00 | $ 1,715,893.69 | $ 79,787.89 | $ 1,636,105.80 | 95.35% |
| **Total Fees and Expenses, All Phases, Including Contingency Reserve** | **$ 8,438,925.54** | **$ 4,211,879.00** | **$ 2,815,286.00** | **$ 2,178,004.00** | **$ 17,644,094.54** | **$ 13,650,958.23** | **$ 3,993,136.31** | 22.63% |
| **Expenses Outside of Trust Settlement Administration Budget** | | | | | | | | |
| Ad Hoc Group Counsel and Professional Fees | | | | | | $ 1,129,316.36 | | |
| | | | | | | **$ 14,780,274.59** | | |

[1] The Advances Budget includes $234,000.00 for Trust and Claims Administrator Fees and Expenses and $198,325.00 for Lien Administrator Fees. The Advances Budget was received in two installments, with $216,163.00 being received on April 18, 2022 and $216,162.00 being received on May 2, 2022.

[2] The Revised Year 3 Budget contains an extra $686,810.00 for Trust and Claims Administrator Fees and Expenses, which represents an additional 20% handle on the $3,434,050.00 received by the Trust in November 2025 from the CVR Agreement Termination.

[3] Actual expenses include $9,300.00 in costs associated with the Bar Date Notice mail-out.

[4] The Contingency Reserve was approximately 5% for Years 0 through 2, but raised to 10% in Year 3, plus an additional amount to bring the Year 3 amount to $1,000,000.00. The Year 3 change was due to the shortened life of the Trust, as the defendant made one final deposit in August 2023, with the extra contingency reserve amount being put in place to provide Trust administration funding should the Trust continue three years beyond June 15, 2026, as NERA projects there might be 2,000 future claims filed during the period from 2026 through 2031. The following expenses exceeded their budgeted amounts and were assessed against the Contingency Reserve: (i) $18,980.00 for IT Developer Fees; (ii) $28,417.50 for Econometrician Fees; (iii) $15,100.00 for Notice By Publication Expenses; and (iv) $14,790.39 for Delaware Trustee Fees. The Contingency Reserve also contains an expense of $2,500.00 for a media campaign to try and influence Mallinckrodt's decision in regards to the second payment due under the inital bankruptcy plan, with such expense not being budgeted for.

# Appendix 4

## Independent Auditor's Report as of December 31, 2025 and 2024 (Forvis Mazars)

# The Mallinckrodt Opioid Personal Injury Trust

## Independent Auditor's Report and Financial Statements - Modified Cash Basis

December 31, 2025 and 2024

**The Mallinckrodt Opioid Personal Injury Trust**
**Contents**
**December 31, 2025 and 2024**

**Independent Auditor's Report** .......... 1

**Financial Statements - Modified Cash Basis**

Statements of Assets, Liabilities, and Trust Balance – Modified Cash Basis .......... 4

Statements of Revenue Collected, Claims and Expenses Paid, and Changes in Trust Balance – Modified Cash Basis .......... 5

Notes to Financial Statements – Modified Cash Basis .......... 6

Forvis Mazars, LLP
500 Virginia Street East, Suite 800
Charleston, WV 25301
P 304.343.0168 | F 304.343.1895
forvismazars.us

## Independent Auditor's Report

Edgar C. Gentle, III, Esq., Trustee
Claims Administrator

Sean T. Higgins, Esq.
Andrews & Higgins
Trust Advisory Personal Injury Committee Member

Joseph L. Steinfeld Jr., Esq.
ASK, LLP
Trust Advisory Personal Injury Committee Member

Roger Frankel, Esq.
Frankel Wyron, LLP
Future Claimants' Representative

Richard H. Wyron, Esq.
Frankel Wyron, LLP
Future Claimants' Representative

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
Future Claimants' Representative

Harold D. Israel, Esq.
Levenfeld Pearlstein, LLC
NAS Representative

Donald E. Creadore, Esq.
Creadore Law Firm, PC
NAS Representative

Scott R. Bickford, Esq.
Martzell, Bickford, & Centola
NAS Representative

Kevin W. Thompson, Esq.
Thompson Barney Law
NAS Representative

Stephen H. Wussow, Esq.
Thompson Barney Law
NAS Representative

### *Opinion*

We have audited the financial statements - modified cash basis of The Mallinckrodt Opioid Personal Injury Trust (the "Trust"), which comprise the statements of assets, liabilities, and trust balance - modified cash basis as of December 31, 2025 and 2024, and the related statements of revenue collected, claims and expenses paid, and changes in trust balance - modified cash basis for the years then ended, and the related notes to the financial statements - modified cash basis.

In our opinion, the financial statements - modified cash basis referred to above present fairly, in all material respects, the assets, liabilities, and trust balance of the Trust as of December 31, 2025 and 2024, and its revenue collected, claims and expenses paid, and changes in trust balance for the years then ended, in conformity with the modified cash basis of accounting as described in Note 2 to the financial statements – modified cash basis.

### *Basis for Opinion*

We conducted our audits in accordance with auditing standards generally accepted in the United States of America ("GAAS"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements - Modified Cash Basis section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Basis of Accounting*

We draw attention to Note 2 to the financial statements, which describes the basis of accounting. The financial statements are prepared on the modified cash basis of accounting, which is a basis of accounting other than accounting principles generally accepted in the United States of America. Our opinion is not modified with respect to this matter.

### *Emphasis of Matter*

As discussed in Note 3 to the financial statements - modified cash basis, no future cash fundings will be received from Mallinckrodt PLC, thus limiting the funding available to pay claimants and administrative expenses of the Trust. Our opinion is not modified with respect to this matter.

### *Responsibilities of Management for the Financial Statements - Modified Cash Basis*

Management is responsible for the preparation and fair presentation of the financial statements in accordance with the modified cash basis of accounting described in Note 2 to the financial statements; this includes determining that the modified cash basis of accounting is an acceptable basis for the preparation of the financial statements in the circumstances. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements - modified cash basis that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements – modified cash basis, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern within one year after the date that the financial statements – modified cash basis are available to be issued.

### *Auditor's Responsibilities for the Audit of the Financial Statements - Modified Cash Basis*

Our objectives are to obtain reasonable assurance about whether the financial statements - modified cash basis as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance, but is not absolute assurance, and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists.

The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements - modified cash basis.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the financial statements - modified cash basis, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements - modified cash basis.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements - modified cash basis.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

### *Restriction on Use*

This report is intended solely for the information and use of the Trustee, the addressees, and the United States Bankruptcy Court for the District of Delaware and is not intended to be, and should not be, used by anyone other than these specified parties, unless designated by these parties.

Forvis Mazars, LLP

**Charleston, West Virginia**
**August 17, 2026**

**The Mallinckrodt Opioid Personal Injury Trust**
**Statements of Assets, Liabilities, and Trust Balance – Modified Cash Basis**
**December 31, 2025 and 2024**

| | 2025 | | 2024 | |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | $ | 40,667,338 | $ | 44,668,801 |
| Other current assets | | 495 | | - |
| **Total Assets** | $ | 40,667,833 | $ | 44,668,801 |
| **LIABILITIES AND TRUST BALANCE** | | | | |
| **Current Liabilities** | | | | |
| Accounts payable | $ | 51,027 | $ | 42,575 |
| **Trust Balance** | | 40,616,806 | | 44,626,226 |
| **Total Liabilities and Trust Balance** | $ | 40,667,833 | $ | 44,668,801 |

**The Mallinckrodt Opioid Personal Injury Trust**
**Statements of Revenue Collected, Claims and Expenses Paid, and Changes in Trust Balance – Modified Cash Basis**
**Years Ended December 31, 2025 and 2024**

| | 2025 | 2024 |
|---|---|---|
| **Revenue Collected** | | |
| Debtors funding | $ 3,434,050 | $ - |
| Interest income | 1,598,615 | 2,442,661 |
| **Total Revenues Collected** | 5,032,665 | 2,442,661 |
| **Claims and Expenses Paid or Accrued** | | |
| Claims and claimant expenses | 8,117,598 | 8,545,794 |
| General and administrative expenses | 94,528 | 1,728,605 |
| Professional fees | 61,854 | 36,758 |
| Trustee and Claims Administrator fees | 732,500 | 508,400 |
| Income tax expense | 35,605 | - |
| **Total Claims and Expenses Paid or Accrued** | 9,042,085 | 10,819,557 |
| Deficiency of revenue collected over claims and expenses paid or accrued and decrease in trust balance | (4,009,420) | (8,376,896) |
| **Beginning of Period** | 44,626,226 | 53,003,122 |
| **End of Period** | $ 40,616,806 | $ 44,626,226 |

*See Notes to Financial Statements - Modified Cash Basis*

## Note 1. Description of The Trust

On March 2, 2022, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an Order Confirming the Fourth Amended Joint Plan of Reorganization of Mallinckrodt PLC And Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code[1], dated as of February 18, 2022 (the "Plan"). The Mallinckrodt Opioid Personal Injury Trust (the "Trust") was formally established as a Qualified Settlement Fund on April 7, 2022. The Plan became effective as of June 16, 2022 (the "Effective Date") and allows the Trust to, upon the Effective Date of the Plan, i) assume all liability for the Personal Injury ("PI") and Neonatal Abstinence Syndrome ("NAS") PI claims against Mallinckrodt PLC and its subsidiaries that are channeled to the Trust, ii) collect Plan distributions to be made to the Trust for the Claims Share, iii) administer the PI and NAS Claims, iv) make distributions to Holders of the Claims in accordance with the PI Trust Documents, and v) carry out other matters as set forth in the PI Trust Documents. The Trust is overseen by a Trustee and Claims Administrator who is paid trustee and claims administrator fees as reflected in the statements of revenue collected, claims and expenses paid, and changes in trust balance - modified cash basis.

The Plan called for the establishment of the Opioid Master Disbursement Trust II ("Opioid MDTII"), which was established as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code. Among other things, Opioid MDTII receives payments from the Debtors and makes distributions to the holders of certain beneficial interests in Opioid MDTII. The Trust has a 9.925% beneficial interest in Opioid MDTII. Under the modified cash basis of accounting, described in Note 2, the Trust only records transactions when money is actually received from or paid to Opioid MDTII.

Under the terms of the Plan dated February 18, 2022, the Trust received approximately $432,000 in advanced funding from Mallinckrodt PLC (the "Debtors") in April and May 2022 to be used for Trust fees and expenses incurred before the Plan reached its Effective Date.

On June 17, 2022, the Trust received approximately $36,800,000 of additional funding from Opioid MDTII.

The Plan also called for Opioid MDTII to form a wholly-owned subsidiary, MNK Opioid Abatement Fund, LLC ("MOAF"), which they would designate to be issued the New Opioid Warrants on behalf of the Debtors, and they would distribute ownership interests in MOAF to the Opioid Creditor Trusts. The New Opioid Warrants were a form of consideration received by Opioid MDTII from Mallinckrodt PLC pursuant to the Plan. Upon receipt of the New Opioid Warrants, each interest holder was credited with capital contributions equal to the fair market value of the property deemed to be contributed to MOAF by the applicable interest holder. Per the MOAF Operating Agreement, MOAF was established as a partnership, with the Trust having a 9.925% ownership interest. For tax purposes, the Trust reports 9.925% of MOAF's net profits on its annual income tax return. Under the modified cash basis of accounting, the Trust only records transactions when money is actually received from MOAF or payments are made to MOAF.

In December 2022, the Opioid MDTII Trustees, acting in their capacities as Managers of MOAF, monetized the New Opioid Warrants in exchange for a $4,000,000 cash payment from Mallinckrodt PLC. After certain transaction costs and fees, plus accrued interest, the Trust's share of the cash payment was approximately $360,000. Under the modified cash basis of accounting, the Trust recorded this cash payment when it received the distribution of funds from MOAF on August 29, 2023.

The Trust's ownership interest in MOAF ended in 2023, as MOAF had fulfilled its purpose and was dissolved.

*1 Capitalized terms as defined in the Plan*

Due to the Debtors' deteriorating financial situation since emerging from bankruptcy in June 2022, the seven additional payments to the Trust were cancelled, and the Debtors and Opioid MDTII agreed to a new Restructuring Agreement that changed the original funding terms and liabilities, requiring one final payment, instead of the seven that were originally contemplated. As part of the Restructuring Agreement, the Debtors voluntarily refiled for bankruptcy on August 27, 2023. Under this new Restructuring Agreement, the Trust received one payment of approximately $24,812,500 on August 29, 2023.

In November 2025, Mallinckrodt PLC was involved in a business combination transaction, which had no effect on the legal or operational structure of the Trust. As a result of this transaction, the Trust received a distribution pursuant to the Contingent Value Right ("CVR") arrangement held by Opioid MDTII. Under the CVR agreement, the Trust received a payment of approximately $3,434,000. Based on information available as of December 31, 2025, no future cash fundings to the Trust are expected.

## Note 2. Significant Accounting Policies

### *Basis of Presentation*

The Trust's financial statements are prepared using the modified cash basis of accounting, whereby revenue and claims and expenses are recorded as cash is received or paid, except for the recognition of certain accounts payable incurred but unpaid at period end. Trust receivables, estimated claims liabilities, and claim receivables arising from claim overpayments, if any, which are material to the determination of financial position and results of operations, in conformity with accounting principles generally accepted in the United States of America, have not been estimated and are not recorded in the accounts of the Trust. Accordingly, the financial statements - modified cash basis do not and are not intended to present financial position and results of operations in conformity with accounting principles generally accepted in the United States of America. Additionally, a statement of cash flows has not been included.

### *Use of Estimates*

The preparation of financial statements in conformity with the basis of accounting described above requires the Trustee to make various estimates that affect the reported amounts of assets and liabilities, disclosures of contingent assets and liabilities, as well as the reported amounts of revenues collected and claims and expenses paid. Actual results could differ from those estimates.

### *Cash and Cash Equivalents*

Cash and cash equivalents consist of short-term, highly-liquid investments with original maturities of three months or less. The Trust maintains its cash and cash equivalents in bank deposit accounts which, at times, exceed the federally insured limit. The Trust has not experienced any losses with respect to these deposits and management does not believe the Trust is exposed to any significant credit risk with respect to these amounts.

### *Accounts Payable*

Accounts payable consist of certain Trustee and Claims Administrator fees, general and administrative expenses, and professional fees charged to the Trust during the year and paid after year-end. Accounts payable includes approximately $45,000 and $36,000 payable to the Trustee and Claims Administrator as of December 31, 2025 and 2024, respectively.

### *Tax Status*

The Trust maintains that, for federal income tax purposes, it is a Qualified Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), due to its having been established pursuant to a Court Order to satisfy certain legal claims, with all of its assets having been segregated from the assets of the Debtors to whom these claims relate. As provided by Treasury Regulations promulgated under Section 468B of

the Code, the "modified gross income" of the Trust is subject to federal income tax up to the maximum trust rate in effect under Section 1(e) of the Code, which was 37% for each of the 2025 and 2024 tax years. Modified gross income is gross income computed with several modifications. Amounts transferred to the Trust by, or on behalf of, the Debtors are generally excluded from Trust income. In addition, payments of Plaintiff attorney fees or claimant claims made against the Trust and expenses incurred by, or on behalf of, specific claimants or Debtors are generally not deductible in computing modified gross income for federal income tax purposes. The Trust is required to operate on a calendar year basis and under the accrual method of accounting for federal income tax purposes. At December 31, 2025 and 2024, the Trust had a net operating loss carryforward of approximately $11,627,000 and $12,012,000 for federal income tax purposes. Net operating loss carryforwards for federal are indefinite lived but subject to 80% of taxable income limitation.

The Trust has adopted authoritative guidance on accounting for uncertainty in income taxes. The guidance clarifies the accounting for the recognition and measurement of the benefits of individual tax positions in the financial statements - modified cash basis. Tax positions must meet a recognition threshold of more likely than not in order for the benefit of those tax positions to be recognized in the Trust's financial statements - modified cash basis. The Trust has determined that it does not have any material unrecognized tax benefits or obligations as of December 31, 2025 and 2024. The Trust has identified its federal tax return and its state tax return in Alabama as major tax jurisdictions, as defined.

The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments. The income taxes associated with gains on investments will be recorded in the Trust's financial statements – modified cash basis when the net gains are realized (i.e. the securities are sold) and the income taxes payable become currently payable.

### *Subsequent Events*

The Trust has evaluated the effect subsequent events would have on the financial statements - modified cash basis through August 17, 2026, which is the date the financial statements - modified cash basis were available to be issued. There were no material subsequent events that required recognition or additional disclosures in these financial statements – modified cash basis.

## Note 3. Commitments and Contingencies

### *Funding Sufficiency*

Due to the Debtors' deteriorating financial situation since emerging from bankruptcy in June 2022, the seven additional payments to the Trust under the original funding terms were cancelled, and the Debtors and Opioid MDTII agreed to a new Restructuring Agreement that changed the original funding terms and liabilities, so that the Trust would receive one more payment from the Debtors, instead of the seven that were originally contemplated. As part of the Restructuring Agreement, the Debtors voluntarily refiled for bankruptcy on August 27, 2023.

Under this Restructuring Agreement, the Trust received one final payment of approximately $24,812,500 on August 29, 2023, to compensate approved claimants after paying administrative expenses. Therefore, the total contributions received by the Trust from the Debtors approximated $62,391,000, compared to approximately $170,710,000 that was originally contemplated under the original funding terms. Accordingly, the funding available to pay claimants and expenses of the Trust is limited to amounts previously received from the Debtor, plus additional amounts, if any, distributed from Opioid MDTII.

In August 2023, the Trust received approximately $360,000 from Opioid MDTII.

During the year ended December 31, 2025, the Trust received approximately $3,434,000 from Opioid MDTII related to the CVR agreement, which arose from a business combination transaction involving the Debtor.

Per the terms of the Trust, the Trustee has the ability to establish and modify payment amounts based on the number of claimants and amount of remaining funding available. The Trust may receive additional payments from Opioid MDTII's pursuit of other assets, like insurance, but the amount to be received, if any, is impossible to predict and is unknown.